# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,

      Plaintiff,

vs.

CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC., and JOHN SMITH, an individual,

      Defendants.

No. 24-CV-82-CJW-KEM

**ORDER**

_____

The matter before the Court is a motion to dismiss for want of personal jurisdiction filed by defendant CRST Specialized Transportation, Inc. ("Specialized"). (Docs. 28 & 28-1). Plaintiff filed a resistance. (Doc. 40). Specialized filed a reply (Doc. 42) and plaintiff filed a surreply after being granted leave to do so (Doc. 46).

For the following reasons, Specialized's motion to dismiss is **denied**.

## I. FACTUAL BACKGROUND[1]

Specialized is a transportation company which delivers goods throughout the United States, specializing in high-volume freight and logistics. (Doc. 28-2, at 1–2). Plaintiff is an independent contractor driver who was, and apparently still is, under contract with Specialized. (*Id.*, at 3). Defendant CRST Lincoln Sales, Inc. ("Lincoln

---

[1] The facts are generally taken from plaintiff's complaint. (Doc. 1). Additional facts are taken from affidavits and exhibits submitted by the parties.

Sales") is a "sister company" of Specialized. (*Id.*). Approximately 60 percent of Specialized's new contractors, including plaintiff, lease their equipment from Lincoln Sales. (*Id.*, at 3–4). Defendant CRST Expedited, Inc. ("Expedited") is another sister company of Specialized. (*Id.*, at 2). Defendant John Smith is chairman of the board and partial owner of CRST International Holding Company, Inc., which is the parent company of Specialized, Lincoln Sales, and Expedited. (Docs. 28-4, at 1; 34, at 1–2).[2] Lincoln Sales and Expedited are both incorporated in Iowa and have their principal place of business in Iowa. (Doc. 1, at 3). Smith is an Iowa resident. (*Id.*, at 4).

Specialized is incorporated in Indiana and has its principal place of business in Indiana. (Docs. 1, at 3; 33, at 1; 28-2, at 1). Specialized has been registered to do business in Iowa as a foreign corporation since 2020. (Docs. 40-6 & 40-9). According to its affidavits, Specialized employs its own personnel, including its leadership team, dispatchers, and other operational and support staff—all of whom live and work in the greater Fort Wayne, Indiana area. (Doc. 28-2, at 2). Specialized also employs individuals in various other states—Maryland, Illinois, Ohio, and California—but none in Iowa. (*Id.*). Specialized states that it "does not have a physical presence in Iowa." (*Id.*). Specialized also states that, although Expedited is its "sister company," the two companies each have their own operating authority, personnel, headquarters, and customers. (Docs. 28-2, at 2; 28-3, at 2).

---

[2] Plaintiff alleges that Specialized is a "wholly owned subsidiary" of Expedited. (Doc. 1, at 3). Smith admits this allegation in his answer, but Lincoln Sales and Expedited deny the allegation in their respective answers. (Docs. 25, at 5; 26, at 5; 27, at 4–5). But defendants' other filings appear to show that, in fact, another company is the parent company to both Expedited and Specialized. That company is either named CRST International Holding Company, Inc., (*see* Doc. 28-4, at 1), or CRST International Holdings, LLC, (*see* Doc. 34, at 2), depending on the filing. The Iowa Secretary of State's website appears to reflect the company name as CRST International Holdings, LLC, with a fictitious name of CRST International Holding Company. No matter what entity "owns" Specialized, it ultimately does not control the Court's analysis.

Plaintiff's complaint paints a slightly different picture than Specialized's affidavits on several of these topics. Plaintiff alleges that the various defendants have an "interrelated network" with "common ownership, control, officers, directors, members, managers, office locations, customer databases, and mailing addresses." (Doc. 1, at 4). Plaintiff further alleges that the corporate defendants co-mingle funds, share methods to identify potential drivers, have common marketing and recruiting staffs, share a billing department, and have a common dispatch and customer service staff. (*Id.*). For example, one of the attachments to plaintiff's complaint is an allegedly deceptive advertisement which Expedited allegedly published online on behalf of Specialized. (Docs. 1, at 5; 1-1). Plaintiff also alleges that defendants have a common website which advertises the lease purchase program, and specifically refers to Specialized as a "division" of CRST. (Doc. 1, at 7–9).

The three CRST defendants all apparently share the same CEO, President, secretary, and treasurer. (Docs. 40-8 & 40-13).[3] The three CRST defendants also share the same registered agent in Des Moines, upon whom plaintiff served this lawsuit at the same time for each of the three companies. (*See* Docs. 4, 5, & 6).

Specialized does not have any employee drivers; instead, it contracts with independent contractor drivers. (Doc. 28-2, at 2). New contractors attend a week-long "onboarding program" at Specialized's headquarters in Fort Wayne before driving under Specialized's name. (*Id.*). During the onboarding program, the contractors sign their contracts, and, if the contractor elects to lease their equipment through Lincoln Sales, then the contractor also has the opportunity to inspect and select their truck. (*Id.*, at 2–3).

---

[3] Plaintiff makes this claim in his brief, but the exhibit plaintiff refers to only shows that these individuals hold these director positions at Specialized. (*See* Docs. 40, at 9; 40-13).

Plaintiff, a Florida resident, is an independent contractor with Specialized. (Docs. 1, at 3; 28-2, at 3). In early 2022, plaintiff reached out to Specialized, expressing interest in Specialized's independent contractor program. (Doc. 28-2, at 3). A Specialized recruiter, who lives and works in North Carolina, communicated with plaintiff about the program. (*Id.*). In March 2022, plaintiff traveled to Fort Wayne, attended Specialized's onboarding program, signed his contract with Specialized, and selected a truck to lease from Lincoln Sales. (*Id.*, at 3–4). Plaintiff then began driving with Specialized throughout the United States, including Iowa. (Docs. 28-2, at 4; 1, at 3). Specialized's contractors, presumably including plaintiff, have daily contact with Specialized's dispatchers, who are based in Fort Wayne. (Doc. 28-2, at 4).

On August 23, 2024, plaintiff filed his complaint. (Doc. 1). Plaintiff brought a claim against defendants for "Violation of the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.1–551A.10." (*Id.*, at 14–15). Specialized filed a motion to dismiss for want of personal jurisdiction. (Doc. 28).

## II.    STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)

Before filing an answer, a defendant may move to dismiss a complaint for "lack of personal jurisdiction" under Federal Rule of Civil Procedure 12(b)(2). The Eighth Circuit Court of Appeals has described the standards under which courts must analyze motions to dismiss for lack of personal jurisdiction, providing:

> When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state.")[.] A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion. [*K-V Pharm. Co. v. J. Uriach & CIA,*

*S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).] Where no hearing is held on the motion, [the Court] must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction.

*Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (additional internal citations omitted).

### III.   ANALYSIS

Specialized filed a motion to dismiss, arguing this Court does not have personal jurisdiction over it.  (Doc. 28).  Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005).  Thus, the Court's "inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath*, 760 F.3d at 820.  The focus of the inquiry is "the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)).  "A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath*, 760 F.3d at 820–21.  There are two types of personal jurisdiction: general and specific.

A party is subject to general personal jurisdiction when it is "essentially at home" in the state, and general jurisdiction allows a court in that state to hear "any and all claims" brought against the party. *Ford Motor Co.*, 592 U.S. at 358.

Specific personal jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 359. "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb*, 582 U.S. at 262 (cleaned up). To be subject to specific personal jurisdiction, a defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This concept is often called "purposeful availment." *Id.* The defendant's contacts must not be "random, isolated, or fortuitous," and the contacts "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up and internal citations omitted). The plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). Finally, as noted above, plaintiff has the burden to show that jurisdiction exists over Specialized. *Id.* at 820.

Another way for a court to obtain personal jurisdiction over an out-of-state defendant is by consent. Consent is a "traditional basis of jurisdiction." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990). Because personal jurisdiction "is primarily concerned with fairness to individual parties," personal jurisdiction objections "may be waived, either expressly or by not asserting them in a timely manner." *Id.* Additionally, a "defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it." *Id.* The Eighth Circuit Court of Appeals has stated: "One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State." *Id.*

Plaintiff argues the Court has personal jurisdiction over Specialized because Specialized registered to do business in Iowa and maintains an agent for service of process

in Iowa. (Doc. 40, at 12–13). Consistent with Eighth Circuit and Supreme Court precedent, as well as several decisions from the Northern District of Iowa, plaintiff argues, Specialized has consented to personal jurisdiction in Iowa through these actions.

Specialized argues in response that, unlike the statutes at issue in the Eighth Circuit and Supreme Court cases plaintiff relies on, Iowa statutes do not equate foreign corporation registration or maintenance of an agent for service of process with consent to personal jurisdiction of the Iowa courts. (Doc. 42, at 6–11). For designation of an agent for service of process to constitute consent to personal jurisdiction, Specialized argues, the state's statute must state such consent explicitly. (*Id.*, at 7). Specialized then argues that Iowa's statutes on the subject do not rise to this level—that is, the relevant Iowa statutes are not so clear that a foreign corporation automatically consents to personal jurisdiction by registering to do business in Iowa or maintaining an agent for service in Iowa.

Plaintiff points to *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990) in support of his argument. In *Knowlton*, the plaintiff, Knowlton, was in a car accident with an agent of the defendant, Allied. *Id.* at 1197–98. Allied was a Delaware corporation with its principal place of business in Illinois. *Id.* Allied had appointed a registered agent in Minnesota to receive service of process. *Id.* Knowlton filed suit against Allied in the United States District Court for the District of Minnesota, served Allied's agent for service of process, and later Allied filed a motion to dismiss for lack of personal jurisdiction. *Id.* at 1198.

The Eighth Circuit Court of Appeals held that the Minnesota district court had personal jurisdiction over Allied. *Id.* at 1199–200. The court analyzed the relevant Minnesota statute, which provided that "a foreign corporation shall be subject to service of process by service on its registered agent." *Id.* at 1199 (cleaned up). The court held that, under this statute, foreign corporations consent to jurisdiction by designating an

agent for service of process in the state.  *Id.* at 1199–200.  Notably, the Minnesota Supreme Court had previously interpreted an earlier version of the same statute consistent with the *Knowlton* holding.  *See id.* at 1200 (citing *Erving v. Chi. & N.W. Ry. Co.*, 214 N.W. 12 (Minn. 1927)).

The *Knowlton* court also reasoned, more generally, that the "whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts."  *Id.* at 1199.  Although acknowledging that a United States Supreme Court case—*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982)—did not specifically list appointment of a registered agent as one of the specific types of consent for personal jurisdiction purposes, the *Knowlton* court stated that "it is nevertheless a traditionally recognized and well-accepted species of general consent," and hypothesized that it was "possibly omitted from the Supreme Court's list because it is of such long standing as to be taken for granted."  *Knowlton*, 900 F.2d at 1200.

In *Sondergard v. Miles, Inc.*, 985 F.2d 1389 (8th Cir. 1993), the court held that the appointment of an agent for service of process constituted consent to personal jurisdiction under South Dakota law.  The South Dakota Supreme Court had previously interpreted a similar statute—one exclusively applicable to foreign insurance companies, but with similar language to the statute applicable to all foreign companies—as consent to personal jurisdiction by appointing an agent for service of process.  *See id.* at 1393 (citing *Sharkey v. Washington Nat'l Ins. Co.*, 373 N.W.2d 421 (S.D. 1985)).  The *Sondergard* court noted its decision in *Knowlton*, stating that the court "has presumed that service upon a company's registered agent is sufficient to confer jurisdiction."  *Id.* (citing *Knowlton*, 900 F.2d at 1199).

Neither the Iowa Supreme Court nor the Iowa Court of Appeals, it appears, has resolved this issue under Iowa law.  The parties do not direct the Court to any such authority in their briefs, at least, and the Court could not find any such authority.

Similarly, the Eighth Circuit Court of Appeals has not opined on this issue under Iowa law, so far as this Court is aware, anyway.

Nevertheless, the parties cite several cases (and the Court found others) from the Iowa federal district courts holding that appointing an agent for service of process as a foreign corporation doing business in Iowa equates to consenting to the personal jurisdiction of the Iowa courts. *See Jacobson Distrib. Co. v. Am. Standard, Inc.*, No. 4:07-cv-00208-JAJ, 2007 WL 3208562, at *4–5 (S.D. Iowa Sept. 5, 2007) ("American consented to personal jurisdiction in the Southern District of Iowa because it appointed an agent to accept service in the state."); *Constr. Prods. Distribs., LLC v. Onward Techs., Inc.*, No. 4:07-CV-00343-JAJ, 2007 WL 3287299, at *5–6 (S.D. Iowa Nov. 6, 2007) ("Onward consented to personal jurisdiction in the Southern District of Iowa because it appointed an agent to accept service in the State."); *Daughetee v. CHR Hansen, Inc.*, No. C09-4100-MWB, 2011 WL 1113868, at *7 (N.D. Iowa Mar. 25, 2011) ("Accordingly, because [several defendants] all maintain registered agents for service of process in Iowa, they have consented to jurisdiction here[.]"); *Spanier v. Am. Pop Corn Co.*, No. C15-4071-MWB, 2016 WL 1465400, at *4 (N.D. Iowa Apr. 14, 2016) ("[B]ecause Symrise and CHR. Hansen both maintain registered agents for service of process in Iowa, they have consented to jurisdiction here[.]"); *Scott v. Milosevic*, No. C17-4004-LTS, 2018 WL 11304191, at *7–8 (N.D. Iowa May 2, 2018) ("Because Forward maintains a registered agent in Iowa, it has consented to jurisdiction in this state[.]"). These cases, penned by several different judges, all follow the Eighth Circuit's reasoning in *Knowlton* and *Sondergard*. Generally, these district court cases hold that the Iowa statutes are similar enough to the statutes of the other states at issue in *Knowlton* and *Sondergard*, and are consistent with the general rule under Eighth Circuit law, that a foreign corporation consents to personal jurisdiction when the corporation appoints an agent for service of process in the forum state.

The Iowa federal district court cases generally rely on several sections of the Iowa Code in their analysis. Under Section 490.1502, a foreign corporation may not do business in Iowa until it registers with the Secretary of State as a foreign corporation. The foreign corporation's registration must include the "addresses of the foreign corporation's registered office in this state and the name of its registered agent at that office." Iowa Code § 490.1503(1)(d). Finally, a "corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation." *Id.* § 490.504(1).

The Court agrees with the various other district court decisions that these statutes are similar to, at least, the Minnesota statute at issue in *Knowlton*. *See Knowlton*, 900 F.2d at 1199 ("A foreign corporation shall be subject to service of process by service on its registered agent.") (cleaned up). The Minnesota statute in *Knowlton*, providing that a foreign corporation is "subject to service of process by service on its registered agent," has relatively the same meaning as Iowa Code Section 490.504(1), which states that "a corporation's registered agent is the corporation's agent for service of process[.]"

The Court also must recognize the reasoning employed by the Eight Circuit Court of Appeals that "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." *Sondergard*, 985 F.2d at 1393 (quoting *Knowlton*, 900 F.2d at 1199). The *Sondergard* court specifically noted that the Eight Circuit "has presumed that service upon a company's registered agent is sufficient to confer jurisdiction." *Id.* Given the "controlling circuit law, and the lack of any holding by the Iowa Supreme Court suggesting that Iowa's statutes regarding foreign corporations should be construed otherwise," *Scott*, 2018 WL 11304191, at *8, the Court finds that Specialized consented to personal jurisdiction in the Iowa courts by registering with the secretary of state and designating an agent for service of process in Iowa.

Specialized argues *Knowlton* and *Sondergard* are "not good law following the Supreme Court's more recent personal jurisdiction decisions," generally referring to *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). (Doc. 42, at 9). In *Mallory*, the Court analyzed a Pennsylvania statute which specifically stated that appointing an agent for service of process in the state equated to consenting to personal jurisdiction of the Pennsylvania courts. The Court held that the statute did not violate the foreign corporation's due process rights. *See id.* at 134–36.

There are several problems with Specialized's argument here. First, Specialized does not make a due process argument on this issue. Instead, Specialized only argues that Iowa law does not tie registration to consent to jurisdiction—Specialized is making an argument regarding statutory interpretation, not due process. (*See* Doc. 42, at 6–11). Next, even if a constitutional argument were made here, the Court's hands are likely tied by *Knowlton*. *Mallory* approved a narrower and more specific statute under the due process clause, but it did not purport to make a holding regarding less specific or less explicit statutes. Thus, *Mallory* did not vitiate *Knowlton*. Finally, the Court in *Mallory* admonished the Pennsylvania Supreme Court for its holding that a prior United States Supreme Court case had been "implicitly overruled" by another line of cases. 600 U.S. at 136. The Court explained that, when a case directly controls, courts should leave it to the Supreme Court to overrule its decisions. *Id.* Similarly, here, this Court will leave it to the Eighth Circuit Court of Appeals to overrule its own cases—that is not this Court's place.

To be sure, if the Court were writing on a blank slate, it may well agree with some of Specialized's arguments. The Supreme Court caselaw regarding the due process considerations of this issue appears to generally stand for a narrower rule than what the Court understands the Eighth Circuit precedential rule to be. Iowa statutes do not explicitly state that designating an agent for service of process in Iowa leads to consenting

to personal jurisdiction in the state.[4]  A better rule would seem to be to require clear notice in a statute stating that, by designating an agent for service in a state, the corporation will be consenting to the state's jurisdiction before a corporation can be found to have, in fact, consented.  Also, although the *Knowlton* court stated that the "whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts," 900 F.2d at 1199, this Court can think of at least one other reason to have a designated agent: so plaintiffs and the government can find the correct person to serve if they want to sue the company or send the company notices.  This is a matter of administrative convenience, both for the company—it receives notice of lawsuits from plaintiffs or various other communications, generally from the government—and for plaintiffs and the government—they know where to serve the company or send the company notices.

But this Court must follow the Eight Circuit's reasoning when the case before it is relatively on all fours with an Eighth Circuit case, as this case is with *Knowlton*, whether this Court agrees with the reasoning or not.  Although this Court may well disagree with several aspects of the Eighth Circuit caselaw in this area, including a belief that the broad reading of these statutes is not the best approach to interpretation, and that the broad way the Eighth Circuit has interpreted the statutes may run afoul of the due process clause in certain situations, this Court may not substitute its own reasoning for that of the appeals court above it.  Thus, although Specialized makes several persuasive arguments on this issue, the Court feels it must follow the *Knowlton* reasoning, and therefore finds that

---

[4] Indeed, a leading expert on Iowa business organizations appears to take the approach that appointing an agent for service in Iowa does not necessarily amount to consent to personal jurisdiction.  *See* 6 Matthew G. Doré, *Iowa Practice Series: Business Organizations* § 39:3, Westlaw (database updated Nov. 2024) ("While the issue of jurisdiction over business entities is beyond the scope of this Treatise, it is worth noting that a foreign business entity does not necessarily consent to the general personal jurisdiction of a state's courts by registering to do business in the state and appointing an agent for service of process.").

Specialized has consented to the personal jurisdiction of the Iowa courts by designating an agent for service of process in Iowa.

The Court need not consider the parties' arguments regarding specific personal jurisdiction in light of its conclusion that Specialized has consented to general personal jurisdiction.

Specialized next argues that, if it is considered to have consented to personal jurisdiction by complying with Iowa's registration statutes, then the statutes violate the Dormant Commerce Clause. (Doc. 42, at 11–12). Specialized argues in general that such a scheme would discriminate against out of state companies, while Iowa companies would generally not face a reciprocal burden. (*Id.*). Specialized points in particular to *Davis v. Farmers' Co-op. Equity Co.*, 262 U.S. 312 (1923).

Plaintiff argues in response that the Court should disregard Specialized's argument on this front because Specialized failed to raise it in its opening brief. (Doc. 46, at 5). On the merits, plaintiff argues that the *Davis* holding was a narrow one, and distinguishes the facts here from *Davis*, arguing that this case is more akin to one of the defendants in *Denver & R. G. W. R. Co. v. Terte*, 284 U.S. 284 (1932).

As an initial note, the Court will consider Specialized's argument here. Specialized failed to make this argument in its opening brief because it did not necessarily anticipate the consent-by-registering argument made by plaintiff. Once plaintiff made this argument, Specialized responded that, if true, this scheme violates the dormant commerce clause. There is nothing wrong with what Specialized did here. Further, plaintiff had an opportunity to respond to Specialized's argument by filing a motion to file a surreply—and plaintiff did just that. (Docs. 44 & 46). Thus, because Specialized raised its argument at a proper time, and because both parties had an opportunity to make arguments here, the Court will consider the dormant commerce clause issue.

13

In *Davis*, the defendant railway company had no connections to Minnesota, the forum state, except for maintaining an "agent for solicitation of traffic" in Minnesota. 262 U.S. at 314. An agent for solicitation of traffic appears to have been a sales representative, essentially. The plaintiff, who also had no connection to Minnesota, sued the defendant in Minnesota, for events which did not occur in Minnesota. *Id.* A Minnesota statute at the time provided: "Any foreign corporation having an agent in this state for the solicitation of freight and passenger traffic or either thereof over its lines outside of this state, may be served with summons by delivering a copy thereof to such agent." *Id.* at 313–14. The Minnesota Supreme Court had construed the statute as compelling any foreign railroad carrier to submit to suit in Minnesota so long as the carrier had a soliciting agent within the state. *Id.* at 315. The United States Supreme Court held that the statute "imposes upon interstate commerce a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause," and therefore was unconstitutional as applied to the facts there. *Id.*

As plaintiff points out, there is one major difference between the defendant in *Davis* and Specialized: Specialized was registered to do business in Iowa and had designated a registered agent in Iowa—the same could not be said for the defendant in *Davis*.

Plaintiff points instead to one of the railroad defendants in *Denver & Co.* which owned and operated a railroad line in the forum state, Missouri, was licensed to do business in Missouri, and had an office and agents in Missouri. 284 U.S. at 286. The Court held that a Missouri court exercising jurisdiction over this nonresident defendant was not unconstitutional, presumably resting this conclusion on the facts that the defendant owned railroad lines, was licensed to do business, and had an office in Missouri. *See id.* at 286–87.

14

Specialized is somewhere in between the defendants in *Davis* and *Denver & Co.* Specialized registered to do business in Iowa as a foreign corporation and maintains a registered agent in Iowa, so it has more connections here than the defendant in *Davis* had to the forum state there. But it does not appear that Specialized owns property in Iowa or has an office with employees working in Iowa, so it has less connections with Iowa than the defendant in *Denver & Co.* had to the forum state there.

The fact that Specialized registered to do business in Iowa and maintains a registered agent in the state, meaning it consented to personal jurisdiction in the Iowa courts, brings Specialized closer to the defendant in *Denver & Co.* The defendant in *Davis* and the other defendant in *Denver & Co.* truly had no connection to the forum states except having a sales agent in the state. In that situation, the Court held that interstate commerce was unreasonably burdened by making the companies defend suits in the foreign states. But when there was some connection, even though it was slight, between the defendant company and the forum state, the Court held that interstate commerce was not unreasonably burdened. And one of the significant connections between the defendant subject to jurisdiction and the forum state in *Denver & Co.* was the fact that the defendant was licensed to do business in the forum. *See* 284 U.S. at 286–87. Thus, although it is close, there are enough connections between Specialized and Iowa that forcing it to defend this suit in the Iowa courts does not burden interstate commerce to an unconstitutional degree.

Thus, Specialized's motion to dismiss for lack of personal jurisdiction is **denied**.

### IV.    CONCLUSION

For the reasons stated above, the Court **denies** Specialized's motion to dismiss for lack of personal jurisdiction.  (Doc. 28).

**IT IS SO ORDERED** this 6th day of January, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

Case 1:24-cv-00082-CJW-KEM    Document 53    Filed 01/06/25    Page 16 of 16