# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC., and JOHN SMITH, an individual,<br><br>      Defendants. | No. 24-CV-82-CJW-KEM<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

The matter before the Court is a motion filed by defendant CRST Specialized Transportation, Inc. ("Specialized"). (Doc. 56). Specialized requests that the Court certify its order denying Specialized's motion to dismiss (Doc. 53) for interlocutory appeal to the Eighth Circuit Court of Appeals, or, alternatively, that the Court certify a question to the Iowa Supreme Court. (Doc. 56). Plaintiff filed a resistance. (Doc. 57). Specialized filed a reply. (Doc. 58).

For the following reasons, Specialized's motion to certify an interlocutory appeal is **denied**, but its motion to alternatively certify a question to the Iowa Supreme Court is **granted**.

# I.  FACTUAL BACKGROUND[1]

Specialized is a transportation company which delivers goods throughout the United States, specializing in high-volume freight and logistics.  (Doc. 28-2, at 1–2). Plaintiff is an independent contractor driver who was, and apparently still is, under contract with Specialized.  (*Id.*, at 3).  Defendant CRST Lincoln Sales, Inc. ("Lincoln Sales") is a "sister company" of Specialized.  (*Id.*).  Approximately sixty percent of Specialized's new contractors, including plaintiff, lease their equipment from Lincoln Sales.  (*Id.*, at 3–4).  Defendant CRST Expedited, Inc. ("Expedited") is another sister company of Specialized.  (*Id.*, at 2).  Defendant John Smith is chairman of the board and partial owner of CRST International Holding Company, Inc., which is the parent company of Specialized, Lincoln Sales, and Expedited.  (Docs. 28-4, at 1; 34, at 1–2). Lincoln Sales and Expedited are both incorporated in Iowa and have their principal place of business in Iowa.  (Doc. 1, at 3).  Smith is an Iowa resident.  (*Id.*, at 4).

Specialized is incorporated in Indiana and has its principal place of business in Indiana.  (Docs. 1, at 3; 28-2, at 1; 33, at 1).  Specialized has been registered to do business in Iowa as a foreign corporation since 2020.  (Docs. 40-6 & 40-9).  According to its affidavits, Specialized employs its own personnel, including its leadership team, dispatchers, and other operational and support staff—all of whom live and work in the greater Fort Wayne, Indiana area.  (Doc. 28-2, at 2).  Specialized also employs individuals in various other states—Maryland, Illinois, Ohio, and California—but none in Iowa.  (*Id.*).  Specialized states that it "does not have a physical presence in Iowa." (*Id.*).  Specialized also states that, although Expedited is its "sister company," the two

---

[1] The facts are generally taken from plaintiff's complaint.  (Doc. 1).  Additional facts are taken from affidavits and exhibits submitted by the parties.

companies each have their own operating authority, personnel, headquarters, and customers. (Docs. 28-2, at 2; 28-3, at 2).

Plaintiff's complaint paints a slightly different picture than Specialized's affidavits on several of these topics. Plaintiff alleges that the various defendants have an "interrelated network" with "common ownership, control, officers, directors, members, managers, office locations, customer databases, and mailing addresses." (Doc. 1, at 4). Plaintiff further alleges that the corporate defendants co-mingle funds, share methods to identify potential drivers, have common marketing and recruiting staffs, share a billing department, and have a common dispatch and customer service staff. (*Id.*). For example, one of the attachments to plaintiff's complaint is an allegedly deceptive advertisement which Expedited allegedly published online on behalf of Specialized. (Docs. 1, at 5; 1-1). Plaintiff also alleges that defendants have a common website which advertises the lease purchase program, and specifically refers to Specialized as a "division" of CRST. (Doc. 1, at 7–9).

The three CRST defendants all apparently share the same CEO, President, secretary, and treasurer. (Docs. 40-8 & 40-13).[2] The three CRST defendants also share the same registered agent in Des Moines, upon whom plaintiff served this lawsuit at the same time for each of the three companies. (*See* Docs. 4, 5, & 6).

Specialized does not have any employee drivers; instead, it contracts with independent contractor drivers. (Doc. 28-2, at 2). New contractors attend a week-long "onboarding program" at Specialized's headquarters in Fort Wayne before driving under Specialized's name. (*Id.*). During the onboarding program, the contractors sign their contracts, and, if the contractor elects to lease their equipment through Lincoln Sales,

---

[2] Plaintiff makes this claim in his brief, but the exhibit to which plaintiff refers only shows that these individuals hold these officer positions at Specialized. (*See* Docs. 40, at 9; 40-13).

then the contractor also has the opportunity to inspect and select their truck. (*Id.*, at 2–3).

Plaintiff, a Florida resident, is an independent contractor with Specialized. (Docs. 1, at 3; 28-2, at 3). In early 2022, plaintiff reached out to Specialized, expressing interest in Specialized's independent contractor program. (Doc. 28-2, at 3). A Specialized recruiter, who lives and works in North Carolina, communicated with plaintiff about the program. (*Id.*). In March 2022, plaintiff traveled to Fort Wayne, attended Specialized's onboarding program, signed his contract with Specialized, and selected a truck to lease from Lincoln Sales. (*Id.*, at 3–4). Plaintiff then began driving with Specialized throughout the United States, including Iowa. (Docs. 1, at 3; 28-2, at 4). Specialized's contractors, presumably including plaintiff, have daily contact with Specialized's dispatchers, who are based in Fort Wayne. (Doc. 28-2, at 4).

On August 23, 2024, plaintiff filed his complaint. (Doc. 1). Plaintiff brought a claim against defendants for "Violation of the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.1–551A.10." (*Id.*, at 14–15). Specialized filed a motion to dismiss for want of personal jurisdiction. (Doc. 28).

The Court denied Specialized's motion to dismiss. (Doc. 53). Specialized then filed a motion to certify the Court's order for interlocutory appeal or, alternatively, to certify a question to the Iowa Supreme Court. (Doc. 56).

## II. ANALYSIS

### A. *Certification of Interlocutory Appeal*

In certain situations, district courts can certify a non-final order for interlocutory appeal. Under Title 28, United States Code, Section 1292(b), a district judge can allow an appeal from an order not otherwise appealable if the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance

4

the ultimate termination of the litigation[.]" The Eighth Circuit Court of Appeals has explained that this section "establishes three criteria for certification: the district court must be 'of the opinion that' (1) the order 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion'; and (3) certification will 'materially advance the ultimate termination of the litigation.'" *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994) (quoting *Paschall v. Kan. City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979)). If the district judge files an order allowing such an appeal, the appropriate appellate court—here, of course, the Eighth Circuit Court of Appeals—may, in its discretion, permit an appeal from the order. 28 U.S.C. § 1292(b).

This procedure is reserved for unique cases. "A motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White*, 43 F.3d at 376. The policy behind such a rule is the idea that piece-meal appeals are discouraged because they generally "result in additional burdens on both the court and the litigants." *Id.* (quoting *Control Data Corp. v. Int'l Bus. Machs. Corp.*, 421 F.2d 323, 325 (8th Cir. 1970)). Thus, this procedure is reserved for cases "where a decision on appeal may avoid protracted and expensive litigation[.]" *Id.* (quotation omitted).

Even if this Court finds that each of the three elements are established, it is within the Court's discretion, it appears, to nevertheless decline to certify the order for appeal. Although the statute speaks in what appears to be mandatory language,[3] the Eighth Circuit reviews a district court's decision to certify an appeal under Section 1292(b) for abuse of discretion. *See White*, 43 F.3d at 376–77. This makes sense, given the Eighth Circuit's direction to district courts to use the procedure "sparingly" and only in "exceptional cases." *Id.* at 376, 379. If district courts were required to certify an order for

---

[3] "When a district judge . . . shall be of the opinion" that the three criteria for certification are met, the judge "shall so state in writing in such order." 28 U.S.C. § 1292(b).

interlocutory appeal upon finding the three elements satisfied, then the guidance to use the procedure only sparingly would be superfluous. Other courts have concluded similarly. *See, e.g.*, *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.C.*, 234 F. Supp. 2d 324, 235 (S.D.N.Y. 2002) ("District courts retain unfettered discretion to deny certification of an interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met.") (internal quotations omitted).

Specialized argues that the Court should certify an interlocutory appeal on the three issues confronted in the Court's previous order. (Doc. 56-1). The first issue from the Court's previous order is whether, under Iowa law, a foreign corporation consents to personal jurisdiction by registering to do business and appointing an agent for service of process in Iowa. (*Id.*, at 6). The Court previously held that the corporation consents to personal jurisdiction in this situation. (Doc. 53, at 5–13). The second issue is whether, if the first question is answered in the affirmative, this situation violates the Due Process Clause. (Doc. 56-1, at 6). The Court previously held that Specialized did not raise a Due Process Clause argument, but if it had, the Court would reject Specialized's argument under Eighth Circuit precedent. (Doc. 53, at 11–12). The third issue is whether, if the first question is answered in the affirmative, this situation violates the Dormant Commerce Clause. (Doc. 56-1, at 6). The Court previously held that there is no Dormant Commerce Clause violation here. (Doc. 53, at 13–15).

Specialized argues each of the three issues meet the statutory criteria to certify an interlocutory appeal. Specialized argues that each of the three questions are controlling questions of law. (Doc. 56-1, at 11–12). Next, Specialized argues that substantial grounds for difference of opinion exists, and that immediate appeal will materially advance the ultimate termination of the litigation, at least as applied to Specialized. (*Id.*, at 12–15).

Plaintiff resists on several grounds. Plaintiff generally resists Specialized's

arguments on each of the three statutory criteria for certification of an interlocutory appeal. (Doc. 57, at 10–18). Within his argument, plaintiff notes that the Eighth Circuit has declined to hear similar interlocutory appeals in the past. (*Id.*, at 14).

The Court's previous order likely satisfies all the criteria for certification for interlocutory appeal—but nevertheless the Court will not be certifying such an appeal here. The order includes controlling questions of law. This is especially true of the first and second issues: the statutory interpretation issue and the due process issue. It is a closer call on the dormant commerce clause issue, because it may not be a pure question of law, but the Court need not address that here. Plaintiff argues under this criterion that the issues are not controlling questions of law because the Court did not decide whether the Court has personal jurisdiction over Specialized under the standard minimum contacts analysis. (*Id.*, at 10–12). The Court will discuss that issue below, under the third criterion.

The second criterion is also satisfied here. There is a substantial ground for difference of opinion, again, at least on the first issue, and likely regarding the second issue as well. This is shown by the various cases cited in Specialized's briefing which question the reasoning employed in *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990), either by specifically addressing *Knowlton* or through holdings contrary to *Knowlton*. Several district courts have even certified interlocutory appeals on this very issue. *See, e.g.*, *GreenState Credit Union v. Hy-Vee, Inc.*, 500 F. Supp. 3d 799, 807–08 (D. Minn. 2020) (certifying interlocutory appeal on issue of whether *Knowlton* is still good law). Missouri's supreme court also recently held, unanimously, that Missouri's business registration laws—some of which are identical to Iowa's statutes—do not "provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present." *State ex rel. Norfolk S. Ry. v. Dolan*, 512 S.W.3d 41, 51–

7

52 (Mo. 2017). In other words, the *Dolan* reasoning is contrary, in large part, to the *Knowlton* reasoning. Further, although the Court concluded it had to follow the reasoning of *Knowlton* in its previous order, it noted its discomfort (to put it lightly) with that reasoning. (*See* Doc. 53, at 6–12). In short, there is a substantial ground for difference of opinion here.

Certification would also likely materially advance the ultimate termination of the litigation, at least as applied to Specialized, if the Eighth Circuit were to accept the appeal and hold in favor of Specialized. Of course, if the Eighth Circuit held that this Court does not have jurisdiction over Specialized, then Specialized would need to be dismissed from this case, as any judgment of this Court would have no binding effect on Specialized.

There is also the issue here of plaintiff's other argument regarding personal jurisdiction: that the Court has personal jurisdiction over Specialized under the minimum contacts analysis. The Court punted on this issue in its previous order because it found Specialized consented to general personal jurisdiction. (Doc. 53, at 13). But there is a reason the Court relied on that finding for its disposition—candidly, plaintiff did not have the strongest argument under the minimum contacts analysis. The Court still need not finally resolve this issue, though, because it will be exercising its discretion to deny certification of this interlocutory appeal on another basis. Additionally, plaintiff signals that other information relevant to the minimum contacts issue may be changing hands in discovery which could render the consent question moot.[4] (Doc. 57, at 11–12).

Even though all three Section 1291(b) criteria have been satisfied—at least regarding the first two legal issues—the Court will exercise its discretion and decline to certify an interlocutory appeal. The reasoning here is purely practical. The same issue has been submitted for interlocutory appeal to the Eighth Circuit previously, and the court

---

[4] Specialized disputes plaintiff's claim on this front. (*See* Doc. 58, at 8 n.4).

declined to hear the appeal. *See GreenState Credit Union*, 500 F. Supp. 3d at 807–08 (certifying interlocutory appeal); (Doc. 57-2, at 2) (Eighth Circuit's denial of permission to appeal in *GreenState*). At least one other district court has denied certification of a Section 1291(b) interlocutory appeal using the same reasoning, at least in part. *See Murphy v. Labor Source, LLC*, Case No. 19-cr-1929 (ECW), 2021 WL 527932, at *9 (D. Minn. Feb. 12, 2021). Admittedly, *GreenState* predated *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), which may change the calculation of the Eighth Circuit regarding whether to hear this interlocutory appeal. But, as the Court noted in its previous order, *Mallory* is not necessarily inconsistent with *Knowlton*. (*See* Doc. 53, at 11) ("*Mallory* approved a narrower and more specific statute under the due process clause, but it did not purport to make a holding regarding less specific or less explicit statutes. Thus, *Mallory* did not vitiate *Knowlton*."). Ultimately, this Court believes it would be a long shot for the Eighth Circuit to accept this interlocutory appeal given its previous decisions—and *Mallory* is likely not enough to change that.

Thus, Specialized's motion to certify the Court's order for interlocutory appeal under Section 1292(b) is **denied**.

### B. *Certification to the Iowa Supreme Court*

Under certain circumstances, courts can certify a question of law to the Iowa Supreme Court. Specifically:

> The [Iowa] supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1.  Four elements must be met for the Iowa Supreme Court to have discretion to answer a certified question.  They are: "(1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question may be determinative of the cause pending in the certifying court, and (4) it appears to the certifying court that there is no controlling Iowa precedent."  *Baldwin v. City of Estherville*, 929 N.W.2d 691, 695 (Iowa 2019) (cleaned up).

Only one of the three legal issues discussed in the previous section is in dispute as to whether the Court should certify it as a question of law to the Iowa Supreme Court.  That question is whether, under Iowa law, a foreign corporation consents to personal jurisdiction by registering to do business in Iowa and appointing an agent for service of process in Iowa.

The first two elements are clearly satisfied here.  First, a "proper court" must certify the question.  *Id.*  A "United States district court" is one of the options listed in the statute as a proper court.  *See* Iowa Code § 684A.1.  This Court fits that description.  Thus, the first element is satisfied.  Second, the question must involve a matter of Iowa law.  *Baldwin*, 929 N.W.2d at 695.  Like the first element, there is no disagreement that the second element is met.

The third element is whether the question may be determinative of the cause pending in the certifying court.  Plaintiff argues that this element is not satisfied because the case will continue against Specialized and the other three defendants regardless of the Iowa Supreme Court's decision.  (Doc. 57, at 19).  Specialized argues that an answer to the certified question need not dispose of the entire litigation.  (Doc. 58, at 10 n.9).  Specialized has the better argument.

This element requires that an answer to the question "may be determinative of the cause" pending in this Court.  *Baldwin*, 929 N.W.2d at 695.  If the Iowa Supreme Court sides with Specialized in answering the question, it may be determinative of the cause

pending against Specialized. The issue here is not whether the answer to the question *must* or *will* be determinative, but rather whether it *may* be determinative. Here, there is a possibility that the answer will be determinative of the cause pending against Specialized. Two outcomes are required for this to be the case, both quite plausible. First, the Iowa Supreme Court would have to answer the question in Specialized's favor, finding that Specialized did not consent to personal jurisdiction here. Second, this Court would then have to find that it does not have personal jurisdiction over Specialized on any other basis—namely, under the minimum contacts analysis. Thus, an answer to the certified question may be determinative of the cause now pending before this Court, so the third element is satisfied.

The final issue is whether it appears to this Court that there is no controlling Iowa precedent. The Court already essentially found this element satisfied in its previous order. (*See* Doc. 53, at 8) ("Neither the Iowa Supreme Court nor the Iowa Court of Appeals, it appears, has resolved this issue under Iowa law. The parties do not direct the Court to any such authority in their briefs, at least, and the Court could not find any such authority."). The only cases directly on point come from Iowa federal district courts, which generally have based their reasoning on Eighth Circuit Court of Appeals' decisions analyzing other states' statutes. (*See id.*, at 9–10). This Court followed suit in its previous order. Ultimately, however, this is an issue of state law, meaning the Iowa Supreme Court has the final word.

Additionally, plaintiff's argument that there is controlling authority on point fails here. (Doc. 57, at 18–19). Contrary to plaintiff's argument, the Iowa statutes are less than clear or explicit regarding whether service upon a registered agent of a foreign corporation amounts to consent to personal jurisdiction by the corporation. (*See* Doc. 53, at 11–12) ("Iowa statutes do not explicitly state that designating an agent for service of process in Iowa leads to consenting to personal jurisdiction in the state.").

Plaintiff also points to *Schoulte v. Great Lakes Forwarding Corp.*, 298 N.W. 914 (Iowa 1941) as a controlling case on point. (Doc. 57, at 18–19). But, as Specialized points out, *Schoulte* involved a motor vehicle accident which occurred in Iowa. *See Schoulte*, 298 N.W. at 916 ("[Plaintiff] also alleges that the accident happened in Clayton County, Iowa."). True, the *Schoulte* court appears to have hinged its decision that the Iowa courts had jurisdiction over the foreign corporation on the fact that the plaintiff served the foreign corporation's qualified agent in Iowa. *See id*. The *Schoulte* court's holding was, essentially, that, by appointing an agent for service of process in Iowa, a foreign corporation had the right the carry on business in Iowa, but in return, the corporation was consenting to the jurisdiction of the Iowa courts for the corporation's actions in Iowa. *See id*. (quoting *McClamroch v. S. Sur. Co.*, 187 N.W. 41, 43 (Iowa 1922)). But *Schoulte* and *McClamroch* were decided well before the current statutory scheme was in place. Neither *Schoulte* nor *McClamroch* even cite an Iowa statute in support of the rule handed down. Indeed, *McClamroch* involved a convoluted procedural history involving service or process in North Carolina, not Iowa, and in which the focus of the legal analysis was on whether service on a registered agent was valid after the defendant ceased doing business in the state. In other words, *Schoulte* rests upon the shaky ground of *McClamroch* which procedurally was quite dissimilar to what we have here. Neither case rests upon solid Iowa statutory ground or analysis. Under the current statutory scheme, it appears to the Court that extensive statutory interpretation is necessary to answer the question. There was no such analysis in the World War II-era decision.[5] Thus, these cases do not constitute controlling on point authority.

---

[5] The Court does not mean to criticize *Schoulte* or the line of reasoning employed within the opinion. Indeed, it is consistent on some level with the Eighth Circuit precedent, including *Knowlton*, adopted by this Court in its previous order. (*See* Doc. 53, at 7–13). This line of thinking is a reasonable position to take. This Court simply is of the opinion that *Schoulte* is no

All four elements for certifying a question to the Iowa Supreme Court have been met here. Thus, the Court will certify the following question to the Iowa Supreme Court: Under Iowa law, does a foreign corporation consent to the personal jurisdiction of the Iowa courts by registering to do business in Iowa and appointing an agent for service of process in Iowa when a plaintiff then serves the foreign corporation's designated agent?

### III. CONCLUSION

For the reasons stated above, the Court hereby orders:

1. Specialized's motion to certify order for interlocutory appeal to the Eighth Circuit Court of Appeals (Doc. 56) is **denied**.

2. Specialized's alternative motion to certify a question to the Iowa Supreme Court (Doc. 56) is **granted**.

3. The Court hereby **certifies** the following question to the Iowa Supreme Court: Under Iowa law, does a foreign corporation consent to the personal jurisdiction of the Iowa courts by registering to do business in Iowa and appointing an agent for service of process in Iowa when a plaintiff then serves the foreign corporation's designated agent?

4. Under Iowa Rule of Appellate Procedure 6.302(1)(b)(3), the Court states that defendant CRST Specialized Transportation, Inc. requested submission of the certified question.

5. Under Iowa Code Section 684A.3 and Iowa Rule of Appellate Procedure 6.302(1)(b)(1), the Court adopts the "Factual Background" section of this order, above, as the statement of facts for the purposes of the certified question.

---

longer controlling authority in this situation given the current statutory framework. Persuasive authority from other state high courts adopting contrary positions to the *Knowlton*-type reasoning increases the Court's willingness to certify the question here, showing that the anti-*Knowlton* reasoning is also quite a reasonable position. *See, e.g.*, *Dolan*, 512 S.W.3d at 51–52; *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 446–48 (Ill. 2017); *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 77–80 (Wis. 2017).

6.     The Clerk of Court is **directed** to forward this Order to the Iowa Supreme Court under official seal, as required under Iowa Code Section 684A.4 and Iowa Rule of Appellate Procedure 6.302(1)(a).

7.     Under Iowa Rule of Appellate Procedure 6.302(2), the Clerk of Court is **directed** to attach to this certification order the Court's order denying CRST Specialized Transportation, Inc.'s motion to dismiss for lack of personal jurisdiction (Doc. 53), as well as any additional portions of the record the parties designate by the procedure set out in the next paragraph.

8.     Not later than 21 days from the date of this Order, the parties may designate any additional portions of the record for the Clerk of Court to forward to the Iowa Supreme Court under official seal.

9.     As required by Iowa Rule of Appellate Procedure 6.302(1)(b)(2), the parties and their representatives are as follows:

   a. Plaintiff: Harley Kelchner, represented by Brian O Marty and J Barton Goplerud of Shindler Anderson Goplerud & Weese PC, 5015 Grand Ridge Drive, Suite 100, West Des Moines, IA 50265; Elizabeth A Fegan of Hagens Berman Sobol Shapiro LLP, 1144 West Lake Street, Suite 400, Oak Park, IL 60301; Robert S Boulter, 1101 5th Avenue, Suite 310, San Rafael, CA 94901; and Michael Von Klemperer of Fegan Scott LLC, 1763 Columbia Road NW, Suite 100, Washington, DC 20009.

   b. Defendant CRST Specialized Transportation, Inc., represented by Kevin J Visser of Simmons Perrine Moyer Bergman PLC, 115 3rd Street SE, Suite 1200, Cedar Rapids, IA 52401; and Andrew J Ireland, Angela S Cash, and James H Hanson of Scopelitis Garvin Light Hanson & Feary PC, 10 West Market Street, Suite 1400, Indianapolis, IN 46204.

14

    c.  Other defendants in this suit (who have not made any arguments on this issue and seemingly have no stake in the determination of this issue) are CRST Expedited, Inc.; CRST Lincoln Sales, Inc.; and John Smith: all are represented by the same four attorneys as CRST Specialized Transportation, Inc.

10.    The parties must promptly file a joint status report (1) upon receiving notice of the Iowa Supreme Court's decision to consider or to decline to consider the certified question, and (2) if the Iowa Supreme Court does consider the certified question, upon notice of a decision by the Iowa Supreme Court.

**IT IS SO ORDERED** this 2nd day of April, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa