# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc. and John Smith, an individual<br><br>Defendant(s). | CASE NO. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 20, 22–25 TO DEFENDANT CRST EXPEDITED, INC. AND NOS. 20 TO DEFENDANT CRST LINCOLN SALES, INC. AND FULSOME RESPONSES TO INTERROGATORY NOS. 2 AND 11 TO DEFENDANT CRST EXPEDITED, INC.**

**TABLE OF CONTENTS**

I.      BACKGROUND ............................................................................................................. 1

II.     LEGAL STANDARD ................................................................................................... 3

III.    ARGUMENT................................................................................................................. 5

   A.   Class Member Names and Contact Information Are Relevant and Proportional. .............. 5

   B.   The *Cervantes* Materials Are Relevant and Proportional. ...............................................11

IV.     CONCLUSION............................................................................................................. 14

Case 1:24-cv-00082-CJW-KEM    Document 76-1    Filed 06/02/25    Page 2 of 17

Plaintiff, Harley Kelcher, respectfully moves under Federal Rule of Civil Procedure 37(a) to compel production of documents in response to Requests for Production Nos. 20, 22–25 to Defendant CRST Expedited, Inc., No. 20 to CRST Lincoln Sales, Inc., and fulsome responses to Interrogatory Nos. 2 and 11 to Defendant CRST Expedited Inc.

This motion concerns two categories of discovery: (1) putative class member names and contact information and (2) testimony and discovery materials from *Cervantes v. CRST Int'l, Inc.* No. 20-CV-75-CJW-KEM, a class action by a similarly defined class involving allegations of similarly fraudulent and deceptive practices by Expedited and its parent CRST International, Inc.

The parties have met and conferred extensively regarding this discovery and have reached an impasse.

## I. BACKGROUND

On August 23, 2024, Plaintiff Harley Kelcher, individually and on behalf of all others similarly situated, filed this class action lawsuit against CRST Expedited, Inc., CRST Specialized Transportation, Inc., CRST Lincoln Sales, Inc., and John Smith (collectively "Defendants") for violations of the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.A-551A.10. Specifically, Plaintiff alleges that Defendants directed and implemented deceptive "lease purchase" opportunities which defrauded drivers, like Plaintiff, out of their labor and money. *See* ECF No. 1, Compl. ¶¶ 18–32.

On January 7, 2025, Plaintiff served Defendants with initial sets of Interrogatories and Requests for Production of Documents. *See* Decl. of Michael von Klemperer, **Exs. A, B, C.**[1]

---

[1] All references to Exhibits herein refer to Exhibits to the attached Declaration of Michael von Klemperer.

1

Defendants requested two lengthy extensions to respond. Rather than use this time to conduct a thorough investigation and prepare fulsome responses, Defendants served evasive, incomplete, and largely boilerplate responses and objections on March 14, 17 and 21. *See e.g.,* **Exs. D, E, F**.[2]

As relevant to this motion, Plaintiff served a Request for Production on both Expedited (RFP No. 20) and Lincoln Sales (RFP No. 20) requesting documents sufficient to identify every putative class member. **Ex. B** at 9–10; **Ex. C** at 9–10. Plaintiff also served a corresponding interrogatory to Expedited (Interrogatory No. 2) requesting identification of every putative class member. **Ex. A** at 9. Both Defendants asserted boilerplate objections that the requests were overbroad and unduly burdensome. **Ex. D** at 15**; Ex. E** at 15**; Ex. F** at 6. Defendants also claimed the requests were premature as no class has been certified and that the requests improperly sought personally identifiable information. *Id.*

Plaintiff also served several Requests for Production on CRST Expedited (RFP Nos. 22–25) requesting transcripts of testimony given by CRST employees and experts, CRST's expert's reports, and CRST's interrogatory and request for admission responses from *Cervantes v. CRST Int'l, Inc.* No. 20-CV-75-CJW-KEM. **Ex. B.** at 10. Expedited objected in full to these requests as overboard, unduly burdensome, and not proportional to the needs of the case, claiming that purported legal and factual differences in *Cervantes* rendered the requested materials irrelevant. **Ex. D** at 16–20. Plaintiff also served Expedited with an interrogatory (Interrogatory No. 11) requesting that it identify all witnesses who testified in *Cervantes,* **Ex. A** at 18, which was objected to on the same grounds. **Ex. F** at 11–12.

---

[2] Upon receiving the first set of responses from Specialized on March 14, Plaintiff immediately wrote Defendants (the next business day) reminding them of the impropriety of boilerplate responses. *See* **Ex. G** at 2–3. Unfortunately, the responses received from Expedited and Lincoln Sales later that day and on March 21 were similarly deficient.

On March 31, 2025, and again on April 2, 2025, the parties met and conferred about Defendants' discovery responses. During these calls, the parties addressed, *inter alia*, Plaintiff's discovery requests seeking (1) putative class member identities and contact information and (2) discovery materials in *Cervantes*. Defendants took the position that documents and information identifying putative class members were not required pre-class certification, and that Defendants would only produce an anonymized list of putative class members. Defendants requested that Plaintiff narrow his requests for materials from *Cervantes* but did not propose a coherent way to do so. Defendants indicated that they would follow up in writing regarding these, and other matters, discussed during the March 31 and April 2 meet and confers.

However, when Plaintiff did not hear from Defendants for weeks, he followed up by letter on April 30. **Ex. H** at 2–3. Defendants finally provided the promised follow-up on May 8, confirming that they refused to produce class member identities and contact information and that they refused to produce any of the requested *Cervantes* materials. **Ex. I** at 14–16. During a May 16 meet and confer, Defendants proposed assigning class members litigation-based identification numbers rather than disclosing their identities. Problematically, Defendants do not intend to apply those identification numbers to emails and could not confirm whether they would apply those numbers to class member complaints, exit interviews, and other more formal materials. As Plaintiff explained, this would make tracking class members across multiple documents difficult, if not impossible. Subsequent correspondence confirmed the parties were at an impasse. *See* **Exs. J, K.**

## II.     LEGAL STANDARD

A party may move to compel discovery under Rule 37(a). Under Rule 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance—which is

broader in the discovery context than at trial—"has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citations omitted). This is an "extremely broad" standard—"[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation" so "either party may compel the other to disgorge whatever facts he has in his possession." *Linseth v. Sustayta*, No. 1:21-cv-173, 2022 U.S. Dist. LEXIS 202568, *4 (D.N.D. Nov. 7, 2022) (quoting *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D.S.D. 2015); 8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §§ 2007, 3637 (1970)). "When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1)." *Schaack v. ABCM Corp.*, No. C07-3080, 2008 U.S. Dist. LEXIS 96783, *6 (N.D. Iowa Nov. 26, 2008) (internal citations omitted).

Proportionality is determined by "considering [a] the importance of the issues at stake in the action, [b] the amount in controversy, [c] the parties' relative access to relevant information, [d] the parties' resources, [e] the importance of the discovery in resolving the issues, and [f] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Once relevance is established, the party resisting the discovery bears the burden of demonstrating that it is not proportional. *See Walton v. Medtronic USA, Inc.*, No. 22-CV-50 (PJS/JFD), 2023 U.S. Dist. LEXIS 136520, *5 (D. Minn. Aug. 7, 2023); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). "[M]erely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying how each [interrogatory or] request for production is

4

deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests" simply is not enough." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017) (internal citations omitted).

### III.    ARGUMENT

Plaintiff moves to compel two categories of discovery responsive to the Requests for Production and Interrogatories served on January 7, 2025: (1) putative class member names and contact information and (2) materials from *Cervantes*.

#### A.  Class Member Names and Contact Information Are Relevant and Proportional.

The class is defined as "[a]ll current and former Drivers who lease trucks from CRST Lincoln and drove for CRST Trucking in any week within the United States at any time during the period beginning three years prior to the filing of this Complaint, and continuing through the resolution of this action." ECF No. 1 ¶ 33. Expedited Interrogatory No. 2 requests that Defendants identify every putative class member by name and contact information. *See* **Ex. A** at 9. Request for Production No. 20 to Expedited and Lincoln Sales seeks documents sufficient to identify every putative class member. *See* **Ex. B** at 9–10; **Ex. C** at 9–10. This information is both relevant and proportional, but Defendants refuse to produce it.

As an initial matter—Defendants do not dispute that class member data such as financial data, their average weekly incomes, or their average tenures driving for Defendants is relevant and discoverable. Indeed, while initially asserting wholesale boilerplate objections, Defendants have since agreed to produce class member data of this sort—they just refuse to do so without obfuscating class member names and contact information. But modifying documents and data in this way is impermissible. *See e.g., Burris v. Versa Prods., Inc.,* No. 07-cv-3938 (JRT/JJK), 2013

U.S. Dist. LEXIS 21851, *3 (D. Minn. Feb. 19, 2013) ("The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection.").

Such redactions are also likely significantly to degrade the documents and data's useability. For instance, while Defendants intend to assign class members litigation-based identification numbers in the data they produce, they do not intend to apply those numbers to emails and could not confirm whether they would apply those numbers to complaints, exit interviews, and the like. This would make tracking class members across multiple documents—and telling a coherent story about their experiences—difficult, if not impossible. *See* Fed. R. Civ. P. 34, Comm. Notes on 2006 Amend. (documents may not be produced in a manner that "removes or significantly degrades" useability). This alone warrants rejecting Defendants' intention to anonymize otherwise discoverable documents and data.

Further, the names and contact information are, themselves, highly relevant. Plaintiff seeks this information for several reasons. First, both sides agreed from the very outset of discovery that class members were relevant witnesses, with Plaintiff and all Defendants identifying putative class members on their Initial Disclosures. *See* **Ex. L** (each Defendant listed "Putative class members, including those who provide affidavits, declarations, or any other form of witness statements or testimony," as potential witnesses they may call to support their defense). Given that Defendants intend to call class members to support their defense, Plaintiff is entitled to know who they are— few precepts of discovery are more firmly established. *See* Fed R. Civ. P. 26(a)(1)(A)(i); *Carmody v. Kansas City Board of Police Commissioners*, No. 11-CV-00160-DW, 2012 U.S. Dist. LEXIS 194818, *6 (W.D. Mo. Aug. 27, 2012) (a core purpose of discovery is the identification of relevant

6

witnesses to "avoid surprise and minimize prejudice.") (internal citations omitted); 7 MOORE'S FEDERAL PRACTICE - CIVIL § 33.03 (listing "identifying witnesses" as core purpose of discovery, including through interrogatories).

Second, Plaintiff seeks this information to make the required showing under Rule 23. In a putative class action, a plaintiff is entitled to discover information relevant to Rule 23's class certification requirements. *Gulf Oil v. Bernard*, 452 U.S. 89, 100–04 (1981). "[P]recertification discovery is appropriate concerning Rule 23's threshold requirements of numerosity, common questions/commonality, and adequacy of representation." *Gebka v. Allstate Corp.*, No. 19-cv-06662, 2021 U.S. Dist. LEXIS 41078, *19 (N.D. Ill. Mar. 4, 2021).

Given that "the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification," *id.* at *19–20, courts routinely find that class member names and contact information are both relevant and discoverable. *See, e.g., Cortez v. Target Corp.*, No. 1:23-cv-01435, 2023 U.S. Dist. LEXIS 199321, *6–9 (N.D. Ill. Nov. 7, 2023) (courts "generally grant [pre-certification] motions to compel [contact information] where the plaintiffs lack other means to locate such class members absent the sought-after discovery" and privacy concerns do not bar production); *Drake v. Aerotek, Inc.*, No. 14-cv-216-bbc, 2014 U.S. Dist. LEXIS 178162, *3–8 (W.D. Wis. Dec. 30, 2014) (collecting cases to support pre-certification discovery of names and addresses of potential class members); *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2016 U.S. Dist. LEXIS 138103, *6 (E.D. Mo. Oct. 5, 2016) (finding pre-certification discovery of potential class members' telephone numbers relevant to issues of typicality and commonality); *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 163–64, 168–69 (E.D. Cal. 2022) (collecting cases to support "that class contact information is routinely found to be discoverable" and permitting pre-certification discovery of class member information

7

to assist the analysis and weighing of defendant's defenses to commonality and typicality); *Edwards v. PJ Ops Idaho, LLC*, No. 1:17-cv-00283-DCN, 2024 U.S. Dist. LEXIS 83920, \*12–13 (D. Idaho May 7, 2024) (finding class contact information relevant to questions of commonality and typicality).

Here, once Defendants appropriately identify class members and produce corresponding data and documents, Plaintiff will be able to utilize the information for a wide range of purposes. For instance, Plaintiff will use the information to track class member experiences from initial contact to the end of their tenures with Defendants. This will allow Plaintiff to tell a coherent story and demonstrate both commonality and typicality. Plaintiff will also be able to identify appropriate witnesses for interviews, depositions, declarations, and/or trial.

Finally, ordering Defendants to identify class members would place the parties on an even playing field. Without disclosing the information to Plaintiff, Defendants will have unilateral knowledge of, and access to, the class, to obtain declarations to be used in opposing class certification, pressure class members not to participate, make unilateral decisions on whom to call as witnesses, and so on. This would undermine a central aim of discovery: "[m]utual knowledge of all the relevant facts," *Linseth*, 2022 U.S. Dist. LEXIS 202568, at \*4, and allow Defendants to conduct trial (and class certification) by surprise.

To reiterate, Defendants do not dispute the relevance of data regarding the class—they intend to produce it, but only after the additional delay and expense of making the data less useable by anonymizing it. Defendants' only real objection is their purported concern for the privacy rights of class members and that such discovery is "premature."[3]

---

[3] Defendants' original responses contained various boilerplate objections for breadth, burden, and proportionality. Recognizing that such objections are meritless, Defendants have since abandoned them.

Plaintiff is not seeking sensitive information like medical records or social security numbers—names and contact information raise far fewer privacy concerns. *See, e.g., Thornburg v. Intelifi, Inc.*, No. 5:18-06021-CV-RK, 2019 U.S. Dist. LEXIS 12534, *5–7 (W.D. Mo. Jan. 25, 2019) (finding redaction of social security numbers, financial-account numbers, and the names of minors as necessary to address privacy concerns *but not* contact information of third parties with relevant information). And courts have made clear that privacy concerns do not bar the production of such information. *Cortez*, No. 1:23-cv-01435, at *7–8. Moreover, the existing Stipulated Protective Order (ECF No. 50) should be sufficient to alleviate Defendants' purported privacy concerns. *See, e.g.*, *Fair Isaac Corp. v. Fed. Ins. Co.*, No. 16-cv-1054 (WMW/DTS), 2020 U.S. Dist. LEXIS 260181, *4–5 (D. Minn. Mar. 5, 2020) (holding that existing protective order was sufficient to protect even the most "highly confidential, proprietary trade secret information," and ordering its production); *Bell v. Lombardi,* No. 4:14-CV-0027 (CEJ), 2015 U.S. Dist. LEXIS 9591, *10 (E.D. Mo. Jan. 28, 2015).

Likewise, while Defendants object to Plaintiff's requests as "premature" given that no class has been certified, "[n]othing … prohibits the disclosure of the names and addresses of putative class members merely because class certification has not yet been obtained." *Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2016 U.S. Dist. LEXIS 198011, *25 (W.D. Ky. Jan. 5, 2016). Discovery is not bifurcated—there will be no discovery phase after class certification under the jointly agreed schedule. *See* ECF No. 41, Joint Proposed Scheduling Order. And Plaintiff seeks this discovery now, in part, to make that class certification showing.

Defendants provided Plaintiff with several cases they contend support their argument that pre-certification discovery of class member names and contact information is not appropriate. *See* **Ex. I** at 14–15 (citing *Fausz,* 2016 U.S. Dist. LEXIS 198011; *Velasquez-Monterrosa v. Mi Casita*

*Restaurants,* No. 5:14-CV-448-BO, 2015 U.S. Dist. LEXIS 57385 (E.D.N.C. May 1, 2015); *Swelnis v. Universal Fidelity L.P.*, No. 2:13-CV-104-PRC, 2014 U.S. Dist. LEXIS 53058 (N.D. Ind. Apr. 17, 2014); *Kernats v. COMCAST Corp.*, No. 09 C 3368, 2010 U.S. Dist. LEXIS 20276 (N.D. Ill. Jan. 14, 2010); *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 U.S. Dist. LEXIS 33011 (E.D.N.Y. May 23, 2006)). But these cases are readily distinguishable or actually support Plaintiff's position.

As Plaintiff outlines above, *Fausz* acknowledged that "[n]othing ... prohibits the disclosure of the names and addresses of putative class members merely because class certification has not yet been obtained." 2016 U.S. Dist. LEXIS 198011 at *25. Although the class member records were ultimately redacted due to the privacy interests of non-parties in maintaining confidentiality, this was the plaintiff's suggestion, and the court made no sweeping statement about the proprietary of redacting class member names. *Id.* at *24–28.

*Velasquez-Monterrosa* acknowledged that the district court retains discretion to permit discovery of contact information of prospective class members but, unlike here, found that the plaintiff made "no showing of need particularized to this case." 2015 U.S. Dist. LEXIS 57385 at *17, *20–21.

In *Swelnis,* the court likewise confirmed that such data is discoverable "if it is relevant for Federal Rule of Civil Procedure 23 purposes or where there is good reason to think that communication with class members might yield information bearing on those Rule 23 issues." 2014 U.S. Dist. LEXIS 53058 at *6–7. However, the court found no merit to plaintiff's request for putative class member names/contact information because the plaintiff sought such data only for numerosity purposes and defendants already provided an estimated class size, which the plaintiff did not challenge. *Id.* at *7–8.

Likewise, in *Kernats,* the court determined such discovery was relevant "to help determine whether the class can properly be certified" but found that it was not appropriate in that case because the plaintiff had other means of accessing the information. 2010 U.S. Dist. LEXIS 20276 at *5–6. Plaintiff does not have any other means of accessing class member information and data, which is solely in Defendants' possession.

Finally, in *Dziennik*, the court denied discovery into the identities of putative class members because "plaintiffs have not demonstrated the relevance of the information they seek beyond their argument that the names are necessary to verify defendants' responses." 2006 U.S. Dist. LEXIS 33011 at *6–7. Plaintiff makes no such argument here and has outlined the relevance of such information and data above.

Accordingly, Defendants should be prohibited from redacting class member names and contact information from the data and documents they will be producing and be compelled to provide fulsome responses to RFPs No. 20 and Interrogatory No. 2.

### B.  The *Cervantes* Materials Are Relevant and Proportional.

Expedited Requests for Production Nos. 22–25 seek transcripts of testimony by CRST employees and experts, CRST's expert reports, and CRST's answers to interrogatories and requests for admission in *Cervantes v. CRST Int'l, Inc.* No. 20-CV-75-CJW-KEM. **Ex. B** at 10. Expedited Interrogatory No. 11 requests that Defendants identify all CRST witnesses who testified in *Cervantes.* **Ex. A** at 18. CRST objected in full to each request, refusing even to identify the witnesses who testified in *Cervantes. See* **Ex. D** at 16–20**; Ex. F** at 11–12**.**

As this Court is aware, *Cervantes* is a class action pending in this Court involving a class of independent contractor drivers who participated in the same lease-purchase program at issue in this case. The limited set of publicly available materials from *Cervantes* reflects that the cases involve a wide range of overlapping issues. For example, testimony from *Cervantes* featured

11

prominently in the U.S. Department of Transportation Truck Leasing Task Force's January 2025 scathing report to Congress on the predatory nature of lease-purchase programs. *See* **Ex**. **M** (Kelchner03499-03549). The report included a full page of *Cervantes* testimony from a CRST manager about lease-purchase drivers receiving "negative paychecks." *Id.* at Kelchner03506. Trial testimony likewise reflects that the predatory nature of CRST's lease purchase program was prominently featured in *Cervantes*. *See, e.g.*, ECF 436 at 275:20–276:4, *Cervantes v. CRST Int'l, Inc.* No. 20-CV-75-CJW-KEM ("The paychecks we were getting, the deductions outweighed the income that we were bringing in, which would leave us a negative balance"). The *Cervantes* trial exhibit list indicates that a majority of the exhibits introduced at trial would be relevant here, including CRST's interrogatory responses, lease purchasing program driver data, recruiting and training materials, and leases and independent contractor agreements, further suggesting the overlapping factual issues in both cases. *See* ECF No. 419–3, *Cervantes v. CRST Int'l, Inc.* No. 20-CV-75-CJW-KEM.

The notion that CRST's own testimony, discovery responses, and expert reports from *Cervantes* do not meet the "extremely broad" standard for relevance is, according, baseless. *See Linseth*, 2022 U.S. Dist. LEXIS 202568, at \*4. Certainly, the mere fact that *Cervantes* involved different causes of action and some factual distinctions does not render the evidence produced in *Cervantes* completely irrelevant, particularly given the many overlapping issues. And while CRST has proposed that Plaintiff narrow his requests, CRST has failed (a) to establish that any of the requested materials are irrelevant, and (b) to propose any coherent way for Plaintiff to do so. For instance, CRST has refused even to disclose the identities of the individuals who testified in *Cervantes* in response to Plaintiff's interrogatory. As Plaintiff explained to CRST during the meet

and confer process to no avail, this denied Plaintiff even the most basic information he could use to have a conversation with CRST about narrowing the request.

Production of these materials likewise easily satisfies the proportionality standard and the mandates of Rule 1. Indeed, "federal courts have 'overwhelmingly embraced' [the] practice" of sharing discovery between similar cases "in order to streamline discovery and promote access to court proceedings." *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2011 U.S. Dist. LEXIS 26013, 2011 WL 688871, \*3 (S.D. Tex. Feb. 17, 2011) (collecting cases); *EEOC v. Wal-Mart Stores E. LP*, No. 17-C-70, 2018 U.S. Dist. LEXIS 176656, \*2–3 (E.D. Wis. Oct. 15, 2018). Ordinarily, the use of discovery disclosed in one litigation "to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (citing *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)). As one court aptly explained:

> Rule 1 of the Federal Rules of Civil Procedure requires that the Rules be construed so as to foster the just, speedy, and inexpensive determination of every civil action. Collaborative use of discovery material fosters that purpose; the sharing of discovery materials ultimately may further the goals of Rule 1 by eliminating the time and expense involved in "rediscovery". The efficient administration of justice should encourage such practices. Maintaining a suitably high cost of litigation for future adversaries is not a proper purpose under Rules 1 or 26.

*Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 546–47 (N.D. Ind. 1991) (internal citations omitted).

Other proportionality factors likewise weigh heavily in favor of disclosure. *See* Fed. R. Civ. P. 26(b)(1). This is an important case, involving the rights of thousands of CRST drivers exploited and defrauded through CRST's predatory lease-purchase program. *See* ECF 1 ¶ 37. The amount in controversy is substantial, as each class member is entitled to tens of thousands of dollars in damages and restitution. *See id*. ¶ 51–52 & Prayer for Relief. The materials are

13

exclusively within CRST's possession. The parties' resources are heavily lopsided: Plaintiff is an individual truck driver while Defendants are part of an international trucking conglomerate with millions in yearly revenue.

Finally, there is no conceivable burden (let alone a burden that outweighs the likely benefit) in producing the requested materials: they should be readily available in defense counsel's *Cervantes* case file (CRST is represented by the same counsel in both matters). And given that trial in *Cervantes* just recently concluded, defense counsel should have the requested testimony, reports, and discovery responses at their fingertips.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court prohibit Defendants from redacting class member names and contact information from documents and data, compel CRST Expedited, inc. to produce all documents responsive to Requests for Production Nos. 20, 22–25 and  Interrogatory Nos. 2 and 11, and compel CRST Lincoln Sales, Inc. to produce all documents responsive to Request for Production No. 20.

14

Dated: June 2, 2025

Respectfully Submitted,

**FEGAN SCOTT LLC**

/s/ *Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD,
& WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Robert S. Boulter
LAW OFFICES OF ROBERT S.
BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 233-7100
rsb@boulter-law.com

*Attorneys for Kelchner and the Putative Class*

15