

EXHIBIT A

**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC. CRST LINCOLN SALES, INC. and JOHN SMITH, an individual<br><br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CRST EXPEDITED, INC.** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff hereby request that Defendant CRST Expedited, Inc. ("Defendant") respond to the following interrogatories within 30 days.

**<u>Instructions</u>**

1. Nothing in these interrogatories should be construed as expanding or limiting the responding party's discovery obligations under Federal Rules of Civil Procedure 26 or 33, including Defendant's initial and supplemental disclosure obligations under Rule 26.
2. Defendant shall answer each interrogatory separately and fully under oath. If Defendant objects to any part of the following interrogatories, Defendant shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable.
3. All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless Defendant's failure to object is excused by the Court for good cause shown.
4. If an interrogatory is defined using a term of art or other term that Defendant believes to be incorrect but Defendant understands the nature of the information requested, Defendant shall

respond to the interrogatory notwithstanding the semantic or definitional error.

5. Unless otherwise defined or indicated, the language of the interrogatories should be given its commonsense definition. If you claim that the language of any interrogatory is vague or ambiguous, you must identify the language you believe is vague or ambiguous and describe the interpretation that you will apply to such language. Regardless of any vagueness or ambiguity you claim, you are required to answer each request to the best of your ability.

6. For any response that Defendant states should be derived or ascertained from Defendant's business records, Defendant shall specify the records from which the answer may be derived or ascertained with sufficient detail to permit Plaintiff to locate and to identify the information as readily as Defendant is able to do. In addition, Defendant must produce the record at the same time it provides its response according to the formatting instructions included in Plaintiff's First Set of Requests for Production of Documents, or as otherwise mutually agreed.

7. Defendant's responses shall be signed by the person making them and the objections signed by the attorney making them.

8. If any answer is on information and belief, in whole or in part, so state and identify each Person, Document or oral Communication, which is the source of such information or belief. Where exact data cannot be furnished, estimated data should be supplied and it should be identified as such.

9. Grammar and syntax, as used in these requests, shall be construed and interpreted to give proper meaning and consistency to its context. By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual Person, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any information which might otherwise be construed to be outside their scope.

10. Requests phrased in the present tense shall be construed to refer to the entire time period to which these discovery requests relate. If any answer would be different for any time to

which these requests relate, supply both the current information and such information as may be different for all times for the relevant time period.

11. If you refuse to respond to any interrogatories based on a claim of privilege, pursuant to Federal Rule of Civil Procedure 26(b)(5) provide a statement of the claim of privilege and all facts relied on in support of that claim, including, the parties involved, the identity of any lawyers involved, the dates involved, the relevant subject matter of the privileged material, any documents supporting the privileged information, specifying the dates, authors, recipients, title and subject matter, and present location of any documents involved. In the case of attorney work product privilege, also identify the litigation in connection with which the work product was prepared. If your refusal includes refusing to identify any Document or oral Communication, provide the following information (if applicable) about each document or other item sought to be protected, including a separate entry for each attachment that is numbered or otherwise identified in a manner that allows it to be associated with the correct parent document:

    (a) Bates number;

    (b) Date;

    (c) Subject matter;

    (d) Type of document (e.g. letter, email, text, report, memo);

    (e) Author(s) and relationship to party asserting privilege (e.g. employee, officer, consultant, third party);

    (f) Sender;

    (g) Recipient(s) and relationship to party asserting privilege (e.g. employee, officer, consultant, third party);

    (h) Attorneys and relationship to party asserting privilege (e.g. in-house counsel, outside counsel, counsel for other party);

(i) Nature (e.g. attorney-client, attorney work product) and basis of asserted privilege;

(j) CC;

(k) BCC; and

(l) Custodian.

12. To the extent precise and complete information cannot be furnished, supply such information as is available to you. If first-hand knowledge is not available, you should answer to the best of your information and belief, and any such answer should be so described. Every interrogatory is intended to include knowledge or information you have or that is available to you from your employees, agents, representatives, experts, affiliates, parents, subsidiaries, persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this action, and your attorneys. If you contend that any of the requested information is not available to you, but is available to another CRST entity, identify that entity.

13. Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing requests and require production of all responsive information discovered or prepared after your initial response to this request.

**Definitions**

Without regard to capitalization, the following defines terms used in these interrogatories unless otherwise note in the specific interrogatory:

1. Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. Complaint. The term "complaint" refers to Plaintiff's Complaint on file herein.

3. Contracts. The term "contracts" means the contracts related to the Driving Opportunity as that term is used in the complaint and includes the Lease Agreement and Contractor Agreement as also used in the complaint.

4. Document. The term "document" is defined to be synonymous in meaning and equal in

scope to the usage of this term in Federal Rules of Civil Procedure 34(a), including, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, including ESI of any type, stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the producing party into a reasonably usable form, as well as any tangible things. Documents include, but are not limited to, electronic mail or email, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, telephone usage records or logs, messaging usage records or logs (including text or instant messaging), post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video recordings, audio recordings, computer programs, printouts, and all other written, graphic, or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. A document includes all appendices, schedules, exhibits, and other attachments.

5. Identify (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known physical and/or P.O. Box address, present or last known cellular and/or landline telephone number, present or last known physical and/or email address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

6. Identify (with respect to documents). When referring to documents, "to identify" means to means to either (a) furnish a clear and legible copy of the document in question; or (b) describe the document with sufficient particularity such that a formal request or subpoena for its production may be made, including (1) the identity of the document's custodian; (2) the date(s) that the document was signed; (3) the date the document was produced (if it was 'not signed); (4) the identity of the document's author; (5) a summary of the nature of the

document's contents; and (6) the identity of the Person whose testimony could be used to authenticate each document and who could lay the foundation for its introduction into evidence.

7. Identify (with respect to entities). When used in relation to an entity, "to identify" means to provide sufficient information about the entity to identify the entity and make arrangements for service of a subpoena, including the (a) full name of the entity; (b) legal form of the entity (whether it is a corporation, partnership, etc.); ( c) state of incorporation (if any); ( d) date of incorporation or the date the business relationship was established; (e) address and telephone number of the headquarters; (f) address and telephone number of the principal place of business; (g) person designated for service process; and (h) address designated for service of process.

8. Plaintiff. The term "plaintiff" means Harley Kelchner.

9. Driving Opportunity/Lease Purchase Program. These terms mean the Driving Opportunity and/or Lease Purchase Program that CRST Expedited and/or any of its subsidiaries/divisions/affiliates provided to truck drivers whereby drivers (hereafter, "Drivers") leased trucks from CRST Lincoln Sales and concurrently agreed to provide driving services to CRST Expedited and/or any of its subsidiaries/divisions/affiliates utilizing such trucks.

10. Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

11. Evidence. For the purposes of these interrogatories, the term "evidence" means testimony, documents, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.

12. Concern and concerning. The term "concern(ing)" means relating to, referring to, describing, evidencing or constituting.

13. All/Each. The terms "all" and "each" shall be construed as all and each.

14. And/Or. The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. Number. The use of the singular form of any word includes the plural and vice versa.

16. Answer. As used herein, the term "answer" refers to defendant's answer on file herein.

17. Defendant, you and your. The terms "defendant," "you" and "your" refer to defendant CRST Expedited, Inc., and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

18. Putative class member. Unless the terms of an interrogatory limits this definition, the term "putative class member" means any and all current and former independent contract drivers that participated the Lease Purchase Program between August 23, 2021 and the present time.

19. Class period. Unless the terms of an interrogatory limits this definition, the term "class period" means between August 23, 2021 and the present time.

**Interrogatories**

1. Identify each person who assisted the answering of these interrogatories and include the interrogatory number on which such assistance was rendered.

2. Identify every putative class member by stating the person's name, last known residential addresses, last known residential and/or cellular telephone numbers, last known email addresses, the beginning and end dates they drove for CRST Expedited and/or any of its divisions, subsidiaries, or affiliates, the specific division, subsidiary, or affiliate for which they drove. Ideally, you will provide an electronic database with this information.

3. Describe in detail the Lease Purchase Program made available by CRST Expedited and/or any of its divisions, subsidiaries, or affiliates to Drivers by stating when it was implemented, the purpose of the Lease Purchase Program, and all the various obligations and responsibilities CRST Expedited and/or any of its divisions, subsidiaries, or affiliates owes the Drivers under the Lease Purchase Program.

4. Identify every putative class member that participated in the Lease Purchase Program and ended up taking title to the truck they leased under the Lease Purchase Program.

5. For each year of the class period and two years before, state the weekly averages of the gross and net income earned by Drivers from the Lease Purchase Program.

6. For each year of the class period and two years before, state how long (in weeks or days) the average Driver stayed the Lease Purchase Program.

7. If you contend that you are/were not bound to comply with the Iowa Business Opportunity Promotions Law Act, Iowa Code Title XIII, Subtit. 5, Ch. 551A et seq. vis-à-vis Plaintiff and/or the putative class, describe in detail all your reasons supporting such contention.

8. Provide a detailed description of the organizational structure and nature of the relationships between Yourself, each of the other CRST defendants, and John Smtih, including Your ability to obtain information and/or documents from the other defendants, and the names, titles, responsibilities of all individuals involved in the decision-making process related to Driving Opportunities.

9. Identify each individual, computer system, and database likely to possess (or contain) documents or data responsive to Plaintiff's concurrently served First Requests for Production of Documents and describe, in general terms, the responsive documents or data they are likely to possess (or contain).

10. Describe each computer system and/or database that contains information related to Plaintiff and/or putative class members by stating the name of the database; the type of database (e.g., Microsoft SQL Server); the location of the database servers; the data fields in the database and an explanation of what information is contained in each field; and the software tools used to manage, query, or extract data (e.g., Panorama, TrueDemand); and, identify the person(s) most knowledgeable regarding maintaining and using the computer system and/or database.

11. Identify all witnesses who testified via affidavit, declaration, deposition, or other live testimony in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM by stating their full name, address, telephone number, email address, the type of testimony, and the date of the testimony.

12. Identify all external persons/entities that have engaged in recruiting efforts related to the Lease Purchase Program for you from 2019 to present.

13. Describe in detail all evidence that supports the truth of the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that "In CRST's Specialized Transportation division, we have an incredibly low turnover rate and the average driver tenure is 10 years."

14. Describe in detail all evidence that supports the truth of the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that "The top 25% of our solo drivers gross approximately $4,200/week or more."

15. Describe in detail all evidence that supports the truth of the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that "Flatbed contractors can earn up to $325,000/year!."

16. Describe in detail all evidence that supports the truth of the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that Dry Van Lease Purchase Program Drivers "get the chance to average $200,000/year as an expedited team and solos can earn up to $150,000/year."

17. Describe in detail all evidence that supports the truth of the statement that CRST's Lease Purchase Program is "highly profitable" as that term is used in attached excerpt from CRST's website found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto), to wit "Join our highly profitable CRST Lease Purchase Program & determine your career path with multiple freight types to choose from."

18. Describe in detail every aspect and item of "support" that CRST provides Lease Purchase Program Drivers as that term is used in attached excerpt from CRST's website found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto), to wit "CRST offers Lease Purchase Drivers the support they need to grow their own business."

19. Describe in detail all evidence and calculations that support the truth of the statement found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto) that "Average CRST Lease Purchase drivers earn six-figure pay."

Date: January 7, 2025

Respectfully Submitted,

**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

/s/ J. Barton Goplerud
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Tel: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Michael von Klemperer *(pro hac vice)*
FEGAN SCOTT LLC
1763 Columbia Road, NW, Suite 100
Washington, D.C. 20009
Tel: (202) 921-0002
mike@feganscott.com

Robert S. Boulter (*pro hac vice*)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 233-7100
rsb@boulter-law.com

***Attorneys for Kelchner and the Putative Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2025, a copy of the foregoing was transmitted via email to Defendants' Counsel.

/s/ J. Barton Goplerud