# EXHIBIT B

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br> vs. <br><br> CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC. CRST LINCOLN SALES, INC. and JOHN SMITH, an individual <br><br>     Defendants. | Case No. 1:24-cv-00082-CJW-KEM <br><br> **PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CRST EXPEDITED, INC.** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff hereby requests that Defendant CRST Expedited, Inc. ("Defendant") respond to each of the following requests for production of documents and produce all responsive documents.

### Instructions

1. In accordance with Rule 34(b), Defendant shall provide written responses to the following requests and shall produce requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in the request.

2. Pursuant to Rule 34(b)(1)(B), production should be made on a rolling basis to be completed within 60 days of service of these requests, or within another time to be mutually agreed by the parties. Documents should be produced at the offices of Cohen & Malad, LLP, One Indiana Square, Suite 1400, Indianapolis, IN 46204, electronically, or such other place as the parties may agree.

3. Pursuant to Rule 34(b)(1)(C), unless otherwise mutually agreed, documents should be

produced in the following formats:

a. Unless otherwise stated, electronically stored information ("ESI") should be produced with Bates-numbered, single page .tiff images. Each Tiff Image shall be accompanied by a corresponding text file with text that is extracted from the electronic file (whenever possible) or generated as OCR from the Tiff Image (when extracted text is not possible). These searchable text files will be broken up by document and named according to the first bates number. Accompanying metadata to the Tiff Images shall be produced in a (.DAT) load file accompanying the production. ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone. The .DAT load file should include, at a minimum, the following fields:

  i. Beginning Document number
  ii. Ending Document Number
  iii. Attachment Begin page number
  iv. Attachment end page number
  v. Page Count
  vi. Document type
  vii. Sent Date/Time
  viii. Creation date
  ix. Author/Sender
  x. Recipient
  xi. CC
  xii. BCC
  xiii. Subject/Title
  xiv. Custodian
  xv. File Name
  xvi. Last Modified Date/Time
  xvii. Received Date
  xviii. Location

b. Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields. If any document within a parent-child group is responsive, the entire

2

group must be produced, without redaction or other modification.

c. If an original ESI document contains color text, markings or graphics, the ESI Document shall be produced in color format. Color documents will be provided in JPG format.

d. Presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the Producing Party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.

e. ESI collected from structured databases must be produced in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the parties will meet and confer to address the production format.

f. Hardcopy documents should be scanned and produced as Bates-numbered, single page .tiff images. Each Tiff Image shall be accompanied by a corresponding text file generated as OCR from the Tiff Image. These searchable text files will be broken up by document and named according to the first bates number. In addition, the file folder, envelope, or other container in which the documents are kept shall be scanned and produced, and the .DAT load file shall include, at a minimum, The .DAT load file should include, at a minimum, the following fields:
    i. Beginning Document number
    ii. Ending Document Number
    iii. Attachment Begin page number
    iv. Attachment end page number
    v. Page Count
    vi. Custodian
    vii. Location
    viii. File folder, envelope, or container name

4. If a document is responsive to these requests, it must be produced in full, including any

3

parents and/or children. Redactions may not be applied to portions Defendant contends are non-responsive or not relevant.  Redactions may only be applied to portions of documents that contain privileged information or work product, in which case the redaction shall be logged as forth in the following instruction.

5.      Pursuant to Rule 26(b)(5), if Defendant withholds the production of any document, or any portion of a document, which is responsive to these requests on the grounds that the document is privileged or otherwise protected, Defendant shall provide the following information (if applicable) about each document or other item sought to be protected, including a separate entry for each attachment that is numbered or otherwise identified in a manner that allows it to be associated with the correct parent document:

(a)     Bates number;
(b)     Date;
(c)     Subject matter;
(d)     Type of document (e.g. letter, email, text, report, memo);
(e)     Author(s) and relationship to party asserting privilege (e.g. employee, officer, consultant, third party);
(f)     Sender;
(g)     Recipient(s) and relationship to party asserting privilege (e.g. employee, officer, consultant, third party);
(h)     Attorneys and relationship to party asserting privilege (e.g. in-house counsel, outside counsel, counsel for other party);
(i)     Nature (e.g. attorney-client, attorney work product) and basis of asserted privilege;
(j)     CC;
(k)     BCC; and
(l)     Custodian.

6.      If any request is defined using a term of art or other term that Defendant believes to be incorrect, but Defendant understands the nature of the document requested, Defendant shall produce the document notwithstanding the semantic or definitional error.

7.      Pursuant to Rule 34(b)(2)(B)-(C), objections must be stated with specificity and must state whether any responsive materials are being withheld on the basis of the objection. If your objection recognizes that some part of the request is appropriate, you must identify the part objected to, the part not objected to, and you must produce documents responsive to the non-

4

objected to part.

8. Unless otherwise defined or indicated, the language of the requests should be given its commonsense definition. If you claim that the language of any request is vague or ambiguous, you must identify the language you believe is vague or ambiguous and describe the interpretation that you will apply to such language. Regardless of any vagueness or ambiguity you claim, you are required to answer each request to the best of your ability.

9. If any requested document is known by Defendant to have existed, but no longer exists or is no longer in Defendant's possession, custody, or control, Defendant is required to identify the last known custodian thereof and state the date upon which it was lost, destroyed, or otherwise became unavailable. If the document still exists but is unavailable to Defendant, Defendant is requested to identify its present custodian and location.

10. All computerized data are to be produced in a computer-readable format with keys for interpretation of the data and/or a glossary or index of terms.

11. Any documents produced electronically shall be produced in native format, with all metadata.

12. Unless otherwise indicated, responsive documents shall be produced for the relevant time period beginning August 23, 2020 to the present.

13. Defendant's responses shall be signed by the person making them and the objections signed by the attorney making them.

14. This request extends to all documents within your possession, custody or control. A document is deemed within your possession, custody or control if you have the legal right to obtain it, whether or not you now have physical possession of it. Thus, you must obtain and produce all documents within the possession or custody of people or entities over whom you have control, such as directors, officers, secretaries, employees, attorneys, experts, accountants, agents, subsidiaries, affiliates, or others.

15. Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing requests and require production of all responsive information discovered or prepared after your initial

5

response to this request.

## Definitions

Without regard to capitalization, the following defines terms used in these interrogatories unless otherwise note in the specific interrogatory:

1. Communication.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. Complaint.  The term "complaint" refers to Plaintiff's Complaint on file herein.

3. Contracts.  The term "contracts" means the contracts related to the Driving Opportunity as that term is used in the complaint and includes the Lease Agreement and Contractor Agreement as also used in the complaint.

4. Driving Opportunity/Lease Purchase Program.  These terms mean the Driving Opportunity and Lease Purchase Program that CRST Expedited and/or any of its subsidiaries/divisions/affiliates provided to truck drivers whereby drivers (hereafter, "Drivers") leased trucks from CRST Lincoln Sales and concurrently agreed to provide driving services to CRST Expedited and/or any of its subsidiaries/divisions/affiliates utilizing such trucks.

5. Document.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 34(a), including, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, including ESI of any type, stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the producing party into a reasonably usable form, as well as any tangible things. Documents include, but are not limited to, electronic mail or email, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, telephone usage records or logs, messaging usage records or logs (including text or instant messaging), post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video

6

recordings, audio recordings, computer programs, printouts, and all other written, graphic, or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. A document includes all appendices, schedules, exhibits, and other attachments.

6.    Plaintiff.  The term "plaintiff" means Harley Kelchner.

7.    Person.  The term "person" is defined as any natural person or business, legal or governmental entity or association.

8.    Concern and concerning.  The term "concern(ing)" means relating to, referring to, describing, evidencing or constituting.

9.    All/Each.  The terms "all" and "each" shall be construed as all and each.

10.    "Any" includes and encompasses the term "all."

11.    And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.    Number.  The use of the singular form of any word includes the plural and vice versa.

13.    Answer. As used herein, the term "answer" refers to Defendant's answer on file herein.

14.    Defendant, you and your.  The terms "defendant," "you," and "your" refer to defendant CRST Expedited, Inc., and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

15.    Putative class member or Drivers.  The term "putative class member" or "Drivers" means all current and former independent contractor drivers for defendant CRST Expedited and/or any of its subsidiaries/divisions/affiliates and that leased trucks from CRST Lincoln Sales. between August 23, 2021 and the present time.

16.    Settlement Statements. The term "settlement statements" means the statements related to Drivers reflecting income, expenses, and deductions and includes but is not limited to Commission Statements, Fuel Card Detail statements, Mileage Compensation and Expense

7

Voucher statements, and Contract Activity statements.

17. Class period.  Unless the terms of a request limits this definition, the term "class period" means between August 23, 2021 and the present time.

18. "Metadata" means the data found within documents. It includes all electronically stored information that describes or defines the document that is not generally visible in the ordinary electronic display or printing of the document. Common examples include comments, revisions, author/owner name, names of those who have edited the document, creation dates, edit dates, and other information, including but not limited to records of past versions and drafts.

19. "Native format," as it relates to the production of electronic data, means the file format in which the document is ordinarily read and written by its related software application. For example, a Microsoft Word has a native format of .doc while and Adobe Acrobat document has a native format of .pdf.

**REQUESTS FOR PRODUCTION**

1. All documents identified by you in your answers to Kelchner's First Set of Interrogatories to CRST Expedited, Inc., as well as all documents reviewed by you in preparing your answers to the Plaintiff's First Set of Interrogatories to you, whether identified in your answers or not.

2. All documents referenced in your initial disclosures, including any supplements thereto.

3. All documents from each individual you identify in your initial disclosures, including any supplements thereto, concerning the subject matter of their discoverable information. If a particular individual's documents are not within your possession, custody, or control, please identify each such individual.

4. All documents you obtain in response to any subpoena you serve in this case.

5. All documents you obtain from any witness in this case (whether by subpoena, voluntary production, or otherwise).

6. All documents concerning any communications between Plaintiff on one hand and you on the other.

7. All documents that were used or consulted in preparing your Answer to the Complaint.

8. All documents that support each denial or affirmative defense in your Answer to the Complaint.

9. All statements (written or taped) taken by you, your attorney, your investigator or representative from any witness to any of the incidents referred to in the complaint herein.

10. All of Plaintiff's settlement statements (as defined above).

11. The complete database from which you derive/prepare settlement statements for Lease Purchase Program Drivers for the entire class period and three years prior.

12. All files and documents you possess and/or maintain concerning Plaintiff.

13. All recordings of conversations made by and between Plaintiff and any and all representatives of the Defendants at any point in time.

14. All investigative reports conducted by you or others on your behalf related to Plaintiff.

15. All forms of written leases between CRST Lincoln Sales and putative class members used during the class period.

16. All forms of written independent contractor agreements between you and putative class members used during the class period.

17. All other contracts or agreements between you and putative class members used during the class period.

18. All documents concerning the acquisition, cost, and ownership (i.e. title, registration, purchase order, invoice, lease agreement etc.) of the truck leased to Harley Kelchner.

19. All documents concerning any master contracts with third party vendors related to the acquisition, cost, and ownership (i.e. title, registration, purchase order, invoice, lease agreement etc.) of trucks leased to putative class members.

20. Documents sufficient to identify every putative class member by stating the person's name, last known residential addresses, last known residential and/or cellular telephone numbers, last known email addresses, the beginning and end dates they drove for CRST Expedited

9

and/or any of its divisions, subsidiaries, or affiliates, and the specific division, subsidiary, or affiliate for which they drove.

21. All audited and/or unaudited financial statements including balance sheets, income statements, statements of cash flows, and accountants' notes, for You for the period January 2019 to present.

22. All transcripts for depositions given by your employees in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM.

23. All transcripts for depositions and expert reports given by your experts in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM.

24. All answers to interrogatories given by you in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM.

25. All responses to requests for admission given by you in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM.

26. All "Contractor recruiting and orientation materials" as referenced in your Amended Initial Disclosures (ECF Doc 380-4 p.5) given by you in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM in effect from January 1, 2019 to present.

27. All "CRST's driver handbook and safety handbook[s]" as referenced in your Amended Initial Disclosures (ECF Doc 380-4 p.5) given by you in the case of *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM in effect from January 1, 2019 to present.

28. All documents concerning internal reports, summaries, analysis, studies, presentations, meeting minutes, meeting summaries, Board of Director minutes, and/or PowerPoint style presentations concerning the income (gross and/or net) Drivers derived from the Lease Purchase Program from 2019 to present.

29. All of your organizational charts from January 1, 2019 to the present date.

30. Copies of any liability insurance policies which could compensate and/or potentially pay for the claims of the Plaintiffs in these proceedings.

31. All documents concerning complaints and/or communications from putative class members

10

about the amount of miles or the amount of income derived from the Lease Purchase Program from 2019 to present.

32. All documents concerning any type of turnover or failure rate analysis of Drivers in the Lease Purchase Program from 2019 to present.

33. All documents concerning any investigations, studies, audits, or analysis by you (or any third party acting on your behalf) whether the putative class members were properly classified by you as independent contractors as opposed to statutory and/or common law employees.

34. All documents concerning your retention policies for documents and electronic files, including but not limited to record-keeping and filing policies, document maintenance and/or destruction polices, since 2019.

35. All documents concerning any training materials, including but not limited to manuals, video or audiotapes, handouts, scripts, terminology, instructions, memoranda, tips, and suggestions, used to train putative class members, since 2019.

36. All documents concerning the recruitment of drivers into the Lease Purchase Program including but not limited to manuals, video or audiotapes, handouts, scripts, terminology, instructions, emails, parameters, memoranda, tips, and suggestions, provided to your internal employees or external recruiters since 2019.

37. Documents sufficient to identify from 2019 forward: all employees or external recruiters responsible for recruiting drivers into the Lease Purchase Program.

38. All documents concerning any Lease Purchase Program Driver surveys and/or exit interviews from 2019 to present.

39. Advertisements prepared by you or on your behalf during the period from January 2019 to the present seeking applicants/candidates for the Lease Purchase Program.

40. Documents sufficient to show the identity of all advertising agencies utilized by you since 2019.

41. Web pages (including any social media pages) prepared by you or on your behalf during the period from January 2019 to the present concerning the Lease Purchase Program.

11

42. All documents concerning the determination of the weekly truck lease fees and variable mileage fees charged the putative class and any formulas related thereto.

43. All documents concerning the determination of the weekly truck insurance fees charged the putative class and any formulas related thereto.

44. All documents reflecting actual payments from you to CRST Lincoln Sales of the weekly truck lease fees and variable mileage fees charged to the putative class.

45. All documents reflecting the total amount of the variable mileage payments paid to you and/or CRST Lincoln Sales by the putative class.

46. All audited and/or unaudited financial statements including balance sheets, income statements, statements of cash flows, and accountants' notes, for the period January 2019 to present.

47. All documents describing in whole or part the Lease Purchase Program including but not limited to final and draft business plans, loan applications, and any internal or external analysis, studies, recommendations, communications, and/or presentations related to the implementation or continuation of the Lease Purchase Program from 2019 to present.

48. All documents describing in whole or part your initial implementation of the Lease Purchase Program including but not limited to final and draft business plans, any internal or external analysis, studies, recommendations, communications, and/or presentations.

49. All documents concerning any comparative analysis of the profitability to you utilizing the Lease Purchase Program vis a vis utilizing company employee drivers from 2019 to present.

50. All documents concerning any analysis of, or description of, the benefit(s) (potential or actual) to you by utilizing the Lease Purchase Program from 2019 to present.

51. All documents concerning any analysis of, or description of, the benefit(s) (potential or actual) to Drivers by participating in the Lease Purchase Program from 2019 to present.

52. All documents concerning orientation for Lease Purchase Program Drivers including but not limited to operations or procedures manuals, memoranda, instructions to instructors, guidelines, proformas, in effect from 2019 to present.

53. All documents concerning "Lease Purchase Information Packets" (see *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM trial exhibit 13) including but not limited to final and draft versions as well as emails concerning the same from 2019 to present.

54. All documents concerning "Operations Overviews" (see *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM trial exhibit 212) including but not limited to final and draft versions as well as emails concerning the same from 2019 to present.

55. All documents concerning Orientation/Onboarding Activities/Scheduling (see *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM trial exhibit 89) including but not limited to final and draft versions as well as emails concerning the same from 2019 to present.

56. All documents concerning Revenue and Cost charts/projections (see *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM trial exhibit 46) including but not limited to final and draft versions as well as emails concerning the same from 2019 to present.

57. All documents concerning "Weekly Fixed Costs/Deductions" (see *Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM trial exhibit 38) including but not limited to final and draft versions as well as emails concerning the same from 2019 to present.

58. All documents concerning any investigations, studies, audits, or analysis by you (or any third party acting on your behalf) concerning whether the Lease Purchase Program was a business opportunity under any state or federal law.

59. All documents concerning the job duties and/or job descriptions for all of your employees that recruited Lease Purchase Program Drivers including training materials and any applicable commission/compensation policies.

60. All documents, writings, charts and/or lists that refer or relate to your procedures for compliance with the any state or federal franchise or business opportunity statutes or regulations.

61. For the period between January 1, 2019 to the present, all reports and/or presentations made to your Board of Directors related to the Lease Purchase Program, and any related meeting minutes, notes, documents, or communications.

62. For the period between January 1, 2019 to the present, all reports, presentations, proposals, business plans, studies, analysis, meeting minutes, meeting summaries, meeting recaps, PowerPoint or other slides, related to the Lease Purchase Program made by and/or received by:

   a. Defendant John Smith,

   b. Lee Coblentz - on information and belief, the Vice President of Network Performance for CRST Expedited,

   c. Chad Brueck - on information and belief, the President of CRST Expedited,

   d. Michael Gannon - on information and belief, the Chief Operating Officer for CRST International,

   e. Jenny Abernathy - on information and belief, the Vice President Enterprise Recruiting for CRST International,

   f. Ben Lizer - on information and belief, the Director of Operations, Independent Contractors for CRST Expedited,

   g. Phil Reges - on information and belief, the, former Vice President of Operations for CRST Expedited, and

   h. Lisa Seipel - on information and belief, Driver Manager for CRST Expedited.

63. For the period between January 1, 2019 to the present, all reports and/or presentations made to or by John Smith and/or his family and/or the Smith Family Office related to the Lease Purchase Program.

64. For the period January 1, 2019 to present, all "Key Performance Indicator" (KPI) Reports concerning the Lease Purchase Program.

65. For the period between January 1, 2019 to present and the present, all minutes of any of your Board of Directors (including the Board of any division, affiliate, or subsidiary) concerning and/or mentioning the Lease Purchase Program.

66. All documents that support the truth of, or contradict, the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/

14

(attached as the Exhibit 1 hereto) that "In CRST's Specialized Transportation division, we have an incredibly low turnover rate and the average driver tenure is 10 years."

67. All documents that support the truth of, or contradict, the statement contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that "The top 25% of our solo drivers gross approximately $4,200/week or more."

68. All documents that support the truth of, or contradict, the statement contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that "Flatbed contractors can earn up to $325,000/year!."

69. All documents that support the truth of, or contradict, the statements contained in attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as the Exhibit 1 hereto) that Dry Van Lease Purchase Program Drivers "get the chance to average $200,000/year as an expedited team and solos can earn up to $150,000/year."

70. All documents that support the truth of, or contradict, the statement that CRST's Lease Purchase Program is "highly profitable" as that term is used in attached excerpt from CRST's website found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto), to wit "Join our highly profitable CRST Lease Purchase Program & determine your career path with multiple freight types to choose from."

71. All documents describing and/or sufficient to identify all the items of "support" that CRST provides Lease Purchase Program Drivers as that term is used in attached excerpt from CRST's website found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto), to wit, "CRST offers Lease Purchase Drivers the support they need to grow their own business."

72. All documents that support the truth of, or contradict, the statement found at https://careers.crst.com/lease-purchase (attached as the Exhibit 2 hereto) that "Average CRST Lease Purchase drivers earn six-figure pay."

Date: January 7, 2025

Respectfully Submitted,

**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

/s/ J. Barton Goplerud
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Tel: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Michael von Klemperer *(pro hac vice)*
FEGAN SCOTT LLC
1763 Columbia Road, NW, Suite 100
Washington, D.C. 20009
Tel: (202) 921-0002
mike@feganscott.com

Robert S. Boulter (*pro hac vice*)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 233-7100
rsb@boulter-law.com

***Attorneys for Kelchner and the Putative Class***

16

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2025, a copy of the foregoing was transmitted via email to Defendants' Counsel.

/s/ J. Barton Goplerud