# EXHIBIT I



**JAMES H. HANSON**
jhanson@scopelitis.com
Direct Dial: 317.492.9205

**ANGELA S. CASH**
acash@scopelitis.com
Direct Dial: 317.637.1777

May 8, 2025

VIA EMAIL mike@feganscott.com

Mike von Klemperer
FeganScott LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009

> Re: *Kelchner v. CRST Expedited, Inc., et al., Case No. 1:24-cv-00082-CJW-KEM (N.D. Iowa); Discovery Letter*

Dear Counsel:

We write on behalf of Defendants CRST Expedited, Inc. ("Expedited"), CRST Specialized Transportation, Inc. ("Specialized"), and CRST Lincoln Sales, Inc. ("Lincoln Sales") (collectively, "Defendants") to respond to your March 17, 2025 letter regarding Defendants' discovery responses and productions and your April 30, 2025 letter regarding proposing amendments to the ESI searches and custodians that Defendants had proposed.

## I.    Plaintiff's March 17, 2025 Deficiency Letter

### A.  Production Format

Defendants acknowledge Plaintiff's concerns regarding Specialized's initial production format. Defendants re-produced documents Bates-stamped as SPEC000001–1496 with accompanying load files and basic metadata fields, including file name, custodian, and date metadata, consistent with Instruction No. 3. Defendants reserve their objections that certain metadata demands are

SERVICES OUTSIDE CALIFORNIA AND MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL CORPORATION
SERVICES IN MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL LIMITED LIABILITY COMPANY
SERVICES IN CALIFORNIA PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LIMITED LIABILITY PARTNERSHIP

disproportionate under Rule 26(b)(1) but agree to produce metadata necessary for usability under Rule 34(b)(2)(E).

### B. Redactions for Non-Responsiveness

Defendants continue to object to Plaintiff's blanket prohibition on redactions for non-responsive material (Instruction No. 4). Nevertheless, Defendants are willing to meet and confer further to identify appropriate categories where redactions may be justified (*e.g.*, sensitive personal information such as medical or financial records unrelated to the Lease Purchase Program, the names and contact information of putative class members, and the names and contact information of other drivers not included in the scope of this case).

### C. Specialized's RFP Set One

**Specialized RFP Set One, No. 1** (Documents Referenced in Initial Disclosures). Plaintiff's characterization of Specialized's objections to RFP No. 1 misstates both the content of the objections and the requirements of the Federal Rules. Specialized properly objected that RFP 1 is vague, overbroad, unduly burdensome, and improperly seeks information protected by the attorney-client privilege and work product doctrine. *See* Fed. R. Civ. P. 26(b)(1), 26(b)(5)(A), and 34(b)(2)(B)-(C). Nevertheless, Specialized produced documents referenced in its initial disclosures within Bates range SPEC000001–SPEC000201. Further, as noted in Specialized's written response, investigation remains ongoing, and Specialized has reserved its right to supplement its production in accordance with its obligations under Rules 26(e) and 34.

Contrary to Plaintiff's assertion, the Federal Rules do not require a responding party to produce every document that might relate in any way to its disclosures or to speculate about documents not intended for use in the litigation. Specialized has complied fully with Rule 26(a)(1)(A)(ii), which only requires identification of documents that a party may use to support its claims or defenses. Plaintiff's request, to the extent it seeks to require production of every document conceivably referenced or reviewed, improperly expands that obligation and seeks discovery beyond the permissible scope of Rule 26(b)(1).

Moreover, Plaintiff's demand that Specialized categorically withdraw all objections is improper and unsupported by the case law cited. Specialized is entitled to preserve

objections to protect privileged material and to avoid undue burden or disproportionate discovery, consistent with Rules 26(b)(1) and 26(b)(5).

Finally, Plaintiff fails to identify any specific deficiency in the production or any specific documents that they believe are missing. If Plaintiff contends that Specialized's disclosures reference a particular document or category of documents not yet produced, Plaintiff must identify those documents with specificity so that the parties can meet and confer meaningfully. *See* Fed. R. Civ. P. 26(g)(1)(B)(i) (requiring reasonable inquiry before raising discovery disputes).

Accordingly, Specialized will not withdraw its properly stated objections. Specialized has produced all non-privileged, responsive documents identified to date and will supplement as appropriate if additional materials are located. No documents are being withheld on the basis of the objections asserted, except for those protected by the attorney-client privilege or work product doctrine, which Specialized is entitled to withhold without a privilege log at this initial stage unless and until otherwise ordered or agreed upon.

**Specialized RFP Set One, No. 2** (Documents from Individuals Identified in Initial Disclosures). Plaintiff's complaints regarding Specialized response to RFP 2 are similarly misplaced. RFP 2 is facially overbroad and seeks, without limitation, *all documents* from each individual identified in Specialized's initial disclosures "concerning the subject matter of their discoverable information." This sweeping demand is not proportional to the needs of the case under Rule 26(b)(1) and improperly seeks documents far beyond what Specialized may rely upon in support of its defenses. Plaintiff's approach would require Specialized to collect and produce every document even tangentially related to the disclosed individuals' knowledge — without regard to relevance, burden, or privilege.

Specialized properly objected to the breadth, burden, vagueness, and privilege implications of this request, as expressly permitted under the Federal Rules. Specialized also produced non-privileged, responsive documents within the Bates range SPEC000001–SPEC000080, consistent with its obligations under Rules 26 and 34. Specialized's response explicitly states that its investigation is ongoing, and it has reserved its right to supplement should additional non-privileged, responsive documents be identified.

Plaintiff incorrectly asserts that Specialized must withdraw its objections wholesale. The law does not require such a waiver. Specialized's objections are proper, are tailored to avoid unnecessary burden and protect privileged material, and do not prevent or obstruct the production of non-privileged, responsive documents.

Additionally, Plaintiff demands confirmation that "no documents are being withheld" without any effort to identify specific concerns or alleged gaps. Specialized has clearly indicated that non-privileged documents have been produced, and it is not obligated to produce irrelevant, duplicative, or privileged material. *See* Fed. R. Civ. P. 26(b)(1); 26(b)(5). To the extent Plaintiff believes any particular documents referenced in Specialized's initial disclosures have not been produced, Plaintiff must identify such documents with reasonable specificity before burden-shifting further discussions or motion practice.

Accordingly, Specialized will not withdraw its properly asserted objections. Specialized has produced all non-privileged, responsive documents identified to date and will continue to meet its discovery obligations consistent with the Federal Rules.

**Specialized RFP Set One, No. 5** (Documents Used or Consulted in Preparing the Answer). Plaintiff's comments on RFP 5 are also unfounded and mischaracterize Specialized's obligations under the Federal Rules.

RFP 5 seeks "[a]ll documents that were used or consulted in preparing [Specialized's] Answer to the Complaint," without limitation. As Specialized properly objected, this request is facially overbroad, vague, and unduly burdensome. It also impermissibly seeks information protected by the attorney-client privilege and attorney work product doctrine, including internal legal analyses, attorney communications, and documents prepared in anticipation of litigation.

Specialized's objections are entirely consistent with Rules 26(b)(1) and 26(b)(3). Plaintiff's assertion that documents reviewed as part of counsel's pre-filing investigation must be produced ignores the distinction between *factual* bases and *protected legal analyses*. Specialized is not obligated to identify or produce documents reflecting attorney mental impressions or litigation strategy, which are protected as core work product. *See Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

Moreover, contrary to Plaintiff's suggestion, the Federal Rules do not require Specialized to undertake a document search to confirm or deny every factual

Scopelitis
Scopelitis, Garvin, Light, Hanson & Feary

assertion in a pleading. Rule 11 requires only a reasonable inquiry under the circumstances, not the creation of a record for Plaintiff's benefit.

Plaintiff's broad demand for "all documents consulted" improperly blurs the line between permissible discovery of *facts* and impermissible discovery of *attorney thought processes*. *See* Fed. R. Civ. P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 397–402 (1981).

In light of the privilege and burden issues inherent in RFP 5, Specialized appropriately objected and, based on those objections, indicated that no responsive non-privileged documents have been searched for or produced. If Plaintiff believes there are specific categories of factual documents, distinct from protected work product, that it contends were reviewed and should be produced, Plaintiff must identify them with specificity to allow a targeted and proportional inquiry.

Accordingly, Specialized will not withdraw its properly asserted objections. Specialized has fully complied with its discovery obligations, and no further response to RFP 5 is warranted.

**Specialized RFP Set One, No. 6** (All Documents that Support Denial/Affirmative Defenses). Plaintiff's criticisms of Specialized's response to RFP 6 lack merit and ignore the proper scope of discovery under the Federal Rules. RFP 6 demands "[a]ll documents that support each denial or affirmative defense" asserted in Specialized's Answer. As Specialized properly objected, the request is facially overbroad, unduly burdensome, vague, and compound. It would require Specialized to speculate as to every conceivable document that could "support" each aspect of every denial or defense, regardless of whether Specialized actually intends to rely on such documents, and regardless of whether the documents are cumulative or marginally relevant. Such an expansive demand exceeds the scope of discovery authorized under Rule 26(b)(1), which requires proportionality to the needs of the case, and Rule 26(b)(3), which protects materials prepared in anticipation of litigation.

Specialized also properly asserted privilege and work product objections, as documents supporting defenses may include internal legal analyses, strategy documents, or attorney communications—materials plainly shielded from disclosure. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

Nevertheless, without waiving these objections, Specialized produced non-privileged, responsive documents within Bates range SPEC000001–SPEC001263. Specialized's response also explicitly states that its investigation is ongoing and reserves the right to supplement if additional non-privileged materials are identified.

Plaintiff's demand that Specialized withdraw its objections wholesale and affirmatively state that no documents are being withheld is improper. Specialized is entitled to preserve appropriate privilege objections and has complied with its obligations under Rule 34 by clearly stating the scope of its production and the basis for any withholding. Further, if Plaintiff believes that any specific denials or defenses are unsupported or that certain categories of documents should have been produced, Plaintiff must articulate those issues with reasonable specificity, rather than relying on generalized accusations. Accordingly, Specialized will not withdraw its properly stated objections. Specialized has produced all non-privileged, responsive documents identified to date and will continue to meet its obligations consistent with the Federal Rules of Civil Procedure.

**Specialized RFP Set One, No. 8** (Organizational Charts). Plaintiff's objections to Specialized's response to RFP 8 misstate both the scope of discovery and the obligations imposed by the Federal Rules. RFP 8 broadly seeks "[a]ll of [Specialized's] organizational charts from January 1, 2019 to the present." Specialized properly objected that this request is overbroad, unduly burdensome, and not reasonably limited in scope or relevance. Organizational charts spanning a six-year period, regardless of subject matter, department, or relevance to any issue in dispute, plainly exceed what is proportional to the needs of this case under Rule 26(b)(1).

Contrary to Plaintiff's assertion, organizational charts are not categorically discoverable. Their relevance depends on the particular claims and defenses at issue. Plaintiff's complaint does not concern the corporate structure of Specialized generally, but instead concerns specific allegations related to particular practices and individuals. Plaintiff's refusal to tailor RFP 8 to time periods, business units, or roles relevant to those allegations renders the request improper. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34(b)(2)(B).

Moreover, Specialized appropriately raised confidentiality concerns. Organizational charts may contain sensitive non-public information about internal reporting structures that is competitively valuable. Even the existence of a protective order

does not automatically render all sensitive documents discoverable where burden and relevance concerns remain.

Notwithstanding these objections, Specialized has produced non-privileged, responsive organizational charts within Bates range SPEC001284–SPEC001496, covering the relevant periods and individuals implicated by Plaintiff's allegations. Specialized's response also explicitly reserved its right to supplement if additional responsive documents are identified.

Accordingly, Specialized will not withdraw its properly stated objections. Specialized has produced all non-privileged, responsive documents identified to date and has satisfied its obligations under Rules 26 and 34.

## II.     Plaintiff's April 30, 2025 Proposed ESI Revisions

### A.  Custodians

Defendants agree to add Lyndsay Perez Navarro and Brooke McGivern as additional custodians. We continue to evaluate potential custodians and reserve the right to supplement the list, if appropriate. However, with respect to "non-custodial repositories," assuming any exist, your request for a broad identification of "any" such sources is premature and not supported by the current scope of discovery.

### B.  Search Fields (Subject/Body)

Your concern regarding limiting searches to "subject" or "body" fields appears to be based on a misunderstanding. Where searches specify "subject" and/or "body," these terms apply to the metadata and body fields of emails, as is standard in structured email collections. These fields are not being used to exclude other document types or search locations. Non-email documents (*e.g.*, PDFs, Word files, presentations) will be searched as full text without any such field limitation. The field designations were intended only to reflect how email searches are typically structured, not to restrict collection.

### C.  Search Terms

Defendants have proposed a tailored set of search terms that directly correspond to specific discovery requests. This request-specific approach ensures that searches are both relevant and proportional to the needs of the case under Rule 26(b)(1). Subject to testing for burden and responsiveness based on the results of a hit report,

Defendants are amenable to Plaintiff's revisions to the specific searches proposed. While we understand Plaintiff also seeks to expand the ESI protocol to a broad range of requests—or discovery in general—Defendants maintain that any search should be tied to specific discovery requests.

We have also evaluated the specific additional RFPs identified in Plaintiff's letter for a potential ESI search and respond to each as follows:

- **RFP 3** (*documents and communications concerning persons disclosed in initial disclosures*). No standalone ESI search is warranted. Responsive documents from relevant custodians are already being captured through targeted searches tied to specific RFPs. This request is too broad to support an independent search protocol.

- **RFP 6** (*documents and communications between Defendant and Plaintiff*). No additional search is needed. These communications are limited and have already been identified and are being produced through direct mailbox review.

- **RFP 12** (*documents concerning Plaintiff*). No ESI search is warranted. This request overlaps with RFPs 6, 13, and 14 among others and thus can be accomplished with more narrow searches.

- **RFP 13** (*recordings of conversations made by and between Plaintiff*). Not appropriate for ESI. Any recordings will be produced manually; however, we understand that neither Specialized nor Expedited record conversations.

- **RFP 14** (*investigative reports related to Plaintiff*). We agree to a limited search subject to hit report review as follows:

*("Kelchner") AND (investigation OR complaint OR incident OR conduct OR discipline)*

- **RFP 28** (*documents concerning internal reports, summaries, analysis, studies, presentations, meeting minutes, meeting summaries, Board of Director minutes, and/or PowerPoint style presentations concerning the income (gross and/or net) Drivers derived from the Lease Purchase Program*). No additional search is needed. This request overlaps with RFPs 50 and 51, which are already subject to targeted ESI searches using terms related to profitability, benefits, and earnings.

- **RFP 32** (*documents concerning turnover or failure rate analysis of Drivers in the Lease Purchase Program*). We agree to a limited search subject to hit report review as follows:

*("Lease Purchase Program" OR "LP program") AND (turnover OR retention OR "failure rate") AND (analysis OR evaluat\* OR report)*

- **RFP 33** (*documents concerning investigations, studies, audits, or analysis by you (or any third party acting on your behalf) whether the putative class members were properly classified by you as independent contractors*). The parties are at an impasse. Defendants object that this request seeks privileged legal analyses and documents not relevant to Plaintiff's individual claims. Please confirm if Plaintiff intends to narrow his request.

- **RFP 38** (*documents concerning any Lease Purchase Program Driver surveys and/or exit interviews*). Defendants are still confirming whether any internal surveys were conducted for independent contractors and will provide a supplemental response based on that investigation.

- **RFP 49** (*documents concerning any comparative analysis of the profitability to you utilizing the Lease Purchase Program vis a vis utilizing company employee drivers from 2019 to present*). Defendants are investigating whether responsive documents exist and will provide a supplemental response.

- **RFP 55** (*documents concerning Orientation/Onboarding Activities/Scheduling*). No ESI search is warranted. This request is better addressed through centralized HR and training documents, which are more appropriately collected and reviewed manually.

- **RFP 56** (*documents concerning Revenue and Cost charts/projections*). No standalone ESI search is needed. This request overlaps with RFPs 50 and 51, which already include searches directed at profitability, benefits, and financial analysis.

- **RFP 57** (*documents concerning "Weekly Fixed Costs/Deductions"*). We agree to a limited search subject to hit report review as follows:

*("Lease Purchase Program" OR "LP program") AND ("weekly fixed cost\*" OR "weekly deduct\*")*

- **RFP 58** (*documents concerning any investigations, studies, audits, or analysis by you (or any third party acting on your behalf) concerning whether the Lease Purchase Program was a business opportunity under any state or federal law*). No ESI search is warranted. This request is inherently legal and privileged in nature and otherwise directed at regulatory characterizations unlikely to be addressed in custodial communications.

- **RFP 60** (*documents, writings, charts and/or lists that refer or relate to your procedures for compliance with the any state or federal franchise or business opportunity statutes or regulations*). No ESI search is warranted. This request is inherently legal and privileged in nature and otherwise directed at regulatory characterizations unlikely to be addressed in custodial communications.

- **RFP 62** (*all reports, presentations, proposals, business plans, studies, analysis, meeting minutes, meeting summaries, meeting recaps, PowerPoint or other slides, related to the Lease Purchase Program made by and/or received by certain custodians*). No standalone ESI search is warranted. This request is substantively covered by the existing search terms associated with RFPs 47, 48, 50, 51, 61, and 63, which collectively encompass business plans, presentations, analyses, and meeting materials related to the Lease Purchase Program.

- **RFP 65** (*Board meeting minutes referencing the Lease Purchase Program*). No additional ESI search is warranted. This request is fully addressed by the Board-level search terms already proposed for RFP 61.

- **RFP 66** (*documents that support the truth of, or contradict, the statements that "In CRST's Specialized Transportation division, we have an incredibly low turnover rate and the average driver tenure is 10 years."*). No ESI search is warranted. This request is cumulative of RFP 32 (turnover analysis) and RFP 61 (Board-level evaluations). Any responsive materials will already be captured through those search protocols.

- **RFP 67** (*documents that support the truth of, or contradict, the statement that "The top 25% of our solo drivers gross approximately $4,200/week or more."*). No standalone search is needed. This request overlaps with existing financial

and performance-related searches under RFPs 50, 51, and 64, which already capture earnings-related representations.

- **RFP 68** (*documents that support the truth of, or contradict, the statement that "Flatbed contractors can earn up to $325,000/year!."*). No standalone ESI search is warranted. This request is already addressed by the targeted search terms proposed for RFPs 50 and 51, which capture earnings-related analyses and benefit descriptions tied to the Lease Purchase Program.

- **RFP 69** (*documents that support the truth of, or contradict, the statements that Dry Van Lease Purchase Program Drivers "get the chance to average $200,000/year as an expedited team and solos can earn up to $150,000/year."*). No standalone ESI search is warranted. This request is already addressed by the targeted search terms proposed for RFPs 50 and 51, which capture earnings-related analyses and benefit descriptions tied to the Lease Purchase Program.

- **RFP 70** (*documents that support the truth of, or contradict, the statement that CRST's Lease Purchase Program is "highly profitable"*). No standalone ESI search is warranted. This request is already addressed by the targeted search terms proposed for RFPs 50 and 51, which capture earnings-related analyses and benefit descriptions tied to the Lease Purchase Program.

- **RFP 71** (*documents describing and/or sufficient to identify all the items of "support" that CRST provides Lease Purchase Program Drivers*). No standalone ESI search is warranted. This request is already addressed by the targeted search terms proposed for RFPs 50 and 51, which capture earnings-related analyses and benefit descriptions tied to the Lease Purchase Program.

- **RFP 72** (*documents that support the truth of, or contradict, the statement that "Average CRST Lease Purchase drivers earn six-figure pay."*). No standalone ESI search is warranted. This request is already addressed by the targeted search terms proposed for RFPs 50 and 51, which capture earnings-related analyses and benefit descriptions tied to the Lease Purchase Program.

If Plaintiff believes that other specific requests are not being adequately covered by existing search parameters or that any other requests were omitted, then we invite a targeted discussion on those items rather than a blanket expansion. "Plaintiff's

Additional Terms" are also not tied to any requests and are not reasonably limited by topic, timeframe, or relevance. Defendants cannot agree to implement vague or overbroad terms without further information about the particular requests or custodians to which they might relate. We are open to further meet-and-confer discussions regarding discrete additions supported by specific requests or evidence of responsiveness.

### III. Supplemental Responses Following the Parties' Meet and Confer Efforts on Plaintiff's Other Discovery Requests

Based on the parties' meet and confer efforts, including the calls on March 31, 2025 and April 2, 2025, Defendants respond as follows:[1]

> *Expedited RFP No. 3: All documents from each individual you identify in your initial disclosures, including any supplements thereto, concerning the subject matter of their discoverable information. If a particular individual's documents are not within your possession, custody, or control, please identify each such individual.*

**Status Following Meet and Confer:** The parties are at an impasse. Plaintiff seeks broad discovery from all individuals listed in initial disclosures, while Defendants maintain their objections as to burden, relevance, and proportionality. Please confirm if Plaintiff intends to narrow his request.

> *Expedited RFP No. 4: All documents you obtain in response to any subpoena you serve in this case.*

**Status Following Meet and Confer:** No subpoenas have been served in this case.

> *Expedited RFP No. 7: All documents that were used or consulted in preparing your Answer to the Complaint.*

---

[1] While Specialized was initially served with only a limited set of Requests for Production, it has agreed to treat the requests served on Expedited as if they had been properly served on Specialized as a second set of requests. For its responses, Specialized has incorporated all objections to instructions, definitions, and individual requests for production previously asserted by Expedited and will continue to respond accordingly to avoid unnecessary disputes and to advance discovery. For that reason, responses to the requests served on Specialized on May 6, 2025 will be referred to as a third set of requests.

**Status Following Meet and Confer:** The parties are at an impasse. Defendants maintain their objection that this request invades attorney work product and seeks irrelevant or privileged material. Plaintiff continues to seek broader production than Defendants are willing to provide. Please confirm if Plaintiff intends to narrow his request.

> *Expedited RFP No. 8: All documents that support each denial or affirmative defense in your Answer to the Complaint.*

**Status Following Meet and Confer:** The parties are at an impasse. Defendants maintain that the request is overbroad and premature and object to producing "all" supporting documents without limitation. Please confirm if Plaintiff intends to narrow his request.

> *Expedited RFP Nos. 11–14:*

- *RFP 11: The complete database from which you derive/prepare settlement statements for Lease Purchase Program Drivers for the entire class period and three years prior.*

- *RFP 12: All files and documents you possess and/or maintain concerning Plaintiff.*

- *RFP 13: All recordings of conversations made by and between Plaintiff and any and all representatives of the Defendants at any point in time.*

- *RFP 14: All investigative reports conducted by you or others on your behalf related to Plaintiff.*

**Status Following Meet and Confer:** Specialized will produce any documents responsive to RFP Nos. 11–14 concerning Plaintiff individually.

> *Expedited RFP No. 15: All forms of written leases between CRST Lincoln Sales and putative class members used during the class period.*

**Status Following Meet and Confer:** Lincoln Sales will produce representative exemplars of lease agreements used with putative class members during the relevant period. These exemplars will reflect the different versions in use, consistent with the parties' agreement to limit production to samples rather than every executed lease.

Scopelitis
Scopelitis Garvin Light Hanson & Feary

> *Expedited RFP No. 17: All other contracts or agreements between you and putative class members used during the class period.*

**Status Following Meet and Confer:** During the call, Defendants requested that Plaintiff narrow the scope of this request. The term "contracts or agreements" is overly broad and could include a wide range of documents beyond the relevant policy documents or agreements signed by putative class members. The parties moved on without resolution, and the issue remains open. Please confirm whether Plaintiff intends to narrow his request.

> *Expedited RFP No. 18: All documents concerning the acquisition, cost, and ownership (i.e. title, registration, purchase order, invoice, lease agreement etc.) of the truck leased to Harley Kelchner.*

**Status Following Meet and Confer:** Defendants confirmed that Lincoln Sales will search for and produce any responsive documents reflecting the acquisition costs and ownership records for the truck leased to Plaintiff.

> *Expedited RFP No. 19: All documents concerning any master contracts with third party vendors related to the acquisition, cost, and ownership (i.e. title, registration, purchase order, invoice, lease agreement etc.) of trucks leased to putative class members.*

**Status Following Meet and Confer:** Defendants confirmed that Lincoln Sales will search for and produce any responsive master contracts with third-party vendors reflecting the acquisition costs and ownership of leased trucks. Lincoln Sales will not search for or produce documents relating to individual trucks leased to specific putative class members, consistent with its proportionality objections.

> *Expedited RFP No. 20: Documents sufficient to identify every putative class member by stating the person's name, last known residential addresses, last known residential and/or cellular telephone numbers, last known email addresses, the beginning and end dates they drove for CRST Expedited and/or any of its divisions, subsidiaries, or affiliates, and the specific division, subsidiary, or affiliate for which they drove.*

**Status Following Meet and Confer:** Defendants stated that they would be willing to produce an anonymized list of putative class members but will not provide class member identifying or contact information prior to class certification. The parties

agreed to exchange authorities for their respective positions. Defendants' authority includes: *Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2016 WL 11658797, at \*10 (W.D. Ky. Jan. 5, 2016) (limiting pre-certification discovery of putative class members' identities to anonymized productions); *Velasquez-Monterrosa v. Mi Casita Restaurants*, Case No. 5:14-CV-448-BO, 2015 WL 1964400, at \*5–\*8 (E.D.N.C. May 1, 2015) (denying pre-certification discovery of putative class members' identities and contact information and denying plaintiff's motion to compel production of class and collective member names and contact information prior to certification ruling); *Swelnis v. Universal Fid. L.P.*, No. 2:13-CV-104-PRC, 2014 WL 1571323, at \*3 (N.D. Ind. Apr. 17, 2014) (plaintiff not entitled to names and contact information for potential class members); *Kernats vs. Comcast Corp.*, No. 09 C 3368, 2010 WL 8742753, at \*3 (N.D. Ill. Jan. 14, 2010) (denying discovery in class action and stating that "[t]he full employee list will be necessary and relevant after class certification in order to allow for class notification, but Plaintiffs need not rely upon it at this stage in order to show that they are entitled to class certification"); *Dziennik v. Sealift, Inc.*, No. 05–CV–4659 (DLI)(MDG), 2006 WL 1455464, at \*1 (E.D.N.Y. May 23, 2006) (denying production of contact information and noting that "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification"). Please provide Plaintiff's authority that he is entitled to discovery of all putative class members' names and contact information.

> *Expedited RFP No. 21: All audited and/or unaudited financial statements including balance sheets, income statements, statements of cash flows, and accountants' notes, for You for the period January 2019 to present.*

**Status Following Meet and Confer:** Plaintiff argued that these financial statements are required under Iowa law and are relevant to their disgorgement theory, including for establishing the profitability of the company and the Lease Purchase Program. Defendants requested that Plaintiff serve an interrogatory or a narrowed document request identifying the specific statements or metrics sought. As another alternate proposal, we could confirm with Defendants whether any financial statements were provided to putative class member prior to leasing. The parties remain at an impasse on this Request and the duplicate Request, RFP 46

Expedited RFP Nos. 22–25:

- *RFP 22: All transcripts for depositions given by your employees in the case of Cervantes v. CRST Int'l, Inc., No. 20-CV-75-CJW-KEM.*

- *RFP 23: All transcripts for depositions and expert reports given by your experts in the case of Cervantes v. CRST Int'l, Inc., No. 20-CV-75-CJW-KEM.*

- *RFP 24: All answers to interrogatories given by you in the case of Cervantes v. CRST Int'l, Inc., No. 20-CV-75-CJW-KEM.*

- *RFP 25: All responses to requests for admission given by you in the case of Cervantes v. CRST Int'l, Inc., No. 20-CV-75-CJW-KEM.*

**Status Following Meet and Confer:** Defendants stand on their objections. The authority cited by Plaintiff on this issue in his April 1, 2025 email does not support production. The *CRST Expedited, Inc. v. Transam Trucking, Inc.,* case involved the unsealing of summary judgment filings in a prior case, not wholesale production in unrelated litigation. The 2018 Wisconsin case, *EEOC v. Wal-Mart Stores, E. LP,* involved a stipulated protective order and does not speak to the appropriateness of cross-litigation discovery. The final case cited, *Foltz v. State Farm Mut. Auto. Ins. Co.*, from 1987, addressed video depositions being shared across counsel in pending, related cases, and is both outdated and inapplicable here. Accordingly, consistent with the authority cited in the objections to these requests, no further production will be made in response to these requests.

> *Expedited RFP No. 28: All documents concerning internal reports, summaries, analysis, studies, presentations, meeting minutes, meeting summaries, Board of Director minutes, and/or PowerPoint style presentations concerning the income (gross and/or net) Drivers derived from the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** While Defendants expressed a willingness to search for profitability documents and have produced some responsive documents, the scope and framing of the request remain in dispute. Plaintiff seeks broader internal strategic materials than Defendants believe are relevant or proportional. Please confirm if Plaintiff intends to narrow the scope of his request.

> *Expedited RFP No. 31: All documents concerning complaints and/or communications from putative class members about the amount of miles or the*

*amount of income derived from the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** Defendants have agreed to an ESI search.

*Expedited RFP No. 32: All documents concerning any type of turnover or failure rate analysis of Drivers in the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** Defendants are investigating whether responsive documents exist concerning turnover or failure rate analyses related to Lease Purchase Program drivers.

*Expedited RFP No. 33: All documents concerning any investigations, studies, audits, or analysis by you (or any third party acting on your behalf) whether the putative class members were properly classified by you as independent contractors as opposed to statutory and/or common law employees.*

**Status Following Meet and Confer:** The parties are at an impasse. Defendants object that this request seeks privileged legal analyses and documents not relevant to Plaintiff's individual claims. Please confirm if Plaintiff intends to narrow his request.

*Expedited RFP No. 34: All documents concerning your retention policies for documents and electronic files, including but not limited to record-keeping and filing policies, document maintenance and/or destruction polices, since 2019.*

**Status Following Meet and Confer:** Defendants agreed to search for and produce responsive materials concerning document retention policies, based on the parties' agreed narrowing of the phrase "all documents concerning" to focus on formal record retention and destruction policies, rather than informal or incidental documents.

*Expedited RFP No. 38: All documents concerning any Lease Purchase Program Driver surveys and/or exit interviews from 2019 to present.*

**Status Following Meet and Confer:** Defendants are still confirming whether any internal surveys were conducted for independent contractors and will provide a supplemental response based on that investigation. To the extent any third-party vendors were engaged to conduct such interviews or surveys, Defendants acknowledge that those materials would also fall within the scope of this request.

*Expedited RFP No. 41: Web pages (including any social media pages) prepared by you or on your behalf during the period from January 2019 to the present concerning the Lease Purchase Program.*

**Status Following Meet and Confer:** Defendants agree to provide copies of web pages, to the extent they are archived, along with social media posts made by accounts controlled by Defendants from 2019 to the present that reference or advertise the lease purchase program.

*Expedited RFP Nos. 44 & 45:*

- *RFP 44: All documents reflecting actual payments from you to CRST Lincoln Sales of the weekly truck lease fees and variable mileage fees charged to the putative class.*
- *RFP 45: All documents reflecting the total amount of the variable mileage payments paid to you and/or CRST Lincoln Sales by the putative class.*

**Status Following Meet and Confer:** Defendants agree that, to the extent responsive data exists, they will produce anonymized summaries reflecting actual payment flows between Expedited or Specialized and Lincoln Sales related to lease and mileage fees.

*Expedited RFP Nos. 47 & 48:*

- *RFP 47: All documents describing in whole or part the Lease Purchase Program including but not limited to final and draft business plans, loan applications, and any internal or external analysis, studies, recommendations, communications, and/or presentations related to the implementation or continuation of the Lease Purchase Program from 2019 to present.*
- *RFP 48: All documents describing in whole or part your initial implementation of the Lease Purchase Program including but not limited to final and draft business plans, any internal or external analysis, studies, recommendations, communications, and/or presentations.*

**Status Following Meet and Confer:** Defendants have confirmed that the Lease Purchase Program was initially implemented by Specialized in 2014 and Expedited in 2003—well before the relevant claims period. To the extent responsive documents on program implementation exist, they are dated long before the actionable time

frame in this case. Defendants therefore stand on their objections and do not intend to produce additional documents in response to these requests.

> *Expedited RFP No. 49: All documents concerning any comparative analysis of the profitability to you utilizing the Lease Purchase Program vis-à-vis utilizing company employee drivers from 2019 to present.*

**Status Following Meet and Confer:** Defendants are investigating whether responsive documents exist and will provide a supplemental response.

> *Expedited RFP No. 50: All documents concerning any analysis of, or description of, the benefit(s) (potential or actual) to you by utilizing the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** The parties are at an impasse. Plaintiff contends this evidence is relevant to Defendants' motivation for promoting the Lease Purchase Program. Defendants argue that their intent is not an element of the claims at issue and continue to stand on their objections. Please confirm if Plaintiff intends to narrow his request.

> *Expedited RFP No. 51: All documents concerning any analysis of, or description of, the benefit(s) (potential or actual) to Drivers by participating in the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** The parties are at an impasse. Plaintiff argues that this information is relevant to whether the program is fairly marketed and administered. Defendants maintain their objections that such internal analyses are not relevant or proportional. Please confirm if Plaintiff intends to narrow his request.

> *Expedited RFP Nos. 61 & 62:*
>
> - *RFP 61: All Board of Director minutes, summaries, and presentations relating to the Lease Purchase Program.*
> - *RFP 62: All reports and presentations prepared for any board, committee, or governing body concerning the Lease Purchase Program from 2019 to present.*

**Status Following Meet and Confer:** During the call, Defendants explained that Expedited does not have a Board of Directors and that the only relevant governing

body is the board of CRST International Holdings, LLC. Plaintiff requested that these RFPs be construed as directed to that parent board and stated that he is seeking presentations or summaries—such as PowerPoints—presented to decision-makers at the board level regarding the Lease Purchase Program. Defendants are willing to construe the request accordingly, but continue to maintain that the requests, as framed, are overbroad and unduly burdensome. To facilitate resolution, Defendants propose further narrowing the scope to Board-level documents that *focus on or are primarily related to* the Lease Purchase Program, rather than materials that merely reference it. Defendants will produce responsive audit documents consistent with this framing. Please confirm whether Plaintiff is agreeable to this narrowing.

> *Expedited RFP Nos. 68 & 69:*

- *RFP 68: All documents supporting your representation in advertisements that drivers "can make up to $325,000/year."*
- *RFP 69: All documents that support the truth of, or contradict, the statements contained in the attached excerpt from CRST's website found at https://crst.com/driving-careers/leasepurchase/ (attached as Exhibit 1 hereto) that Dry Van Lease Purchase Program Drivers "get the chance to average $200,000/year as an expedited team and solos can earn up to $150,000/year.*

**Status Following Meet and Confer:** Defendants will search for and produce documents supporting the representations referenced in these requests limited to the period when the statements were actively used in advertisements.

> *Expedited RFP No. 70: All documents that support the truth of, or contradict, the statement that CRST's Lease Purchase Program is "highly profitable" as that term is used in the attached excerpt from CRST's website found at https://careers.crst.com/lease-purchase (attached as Exhibit 2 hereto), to wit "Join our highly profitable CRST Lease Purchase Program & determine your career path with multiple freight types to choose from."*

**Status Following Meet and Confer:** Defendants are investigating whether any financial models or analyses exist that were created in connection with that specific representation, including for promotional or marketing purposes. Defendants will supplement their response to the extent such documents are identified, but otherwise

stand on their objections as to the scope and subjectivity of the term "highly profitable."

## IV.    Plaintiff's Obligations and Required Responses

To facilitate continued progress, Defendants request that Plaintiff:

- Serve a Notice of Deposition for the deposition of CRST's President and Chief Executive Officer, Michael Gannon, that the parties have agreed will take place on May 29, 2025.

- Provide a written response on the ESI search terms no later than May 15, 2025, specifically identifying any objections, proposed modifications, or additional custodians Plaintiff believes are necessary.

- Confirm whether Plaintiff will agree to reasonable narrowing of RFPs identified above and identify any authority Plaintiff relies on to justify the expansive scope of his requests including his requests for putative class member names and contact information.

## V.    Additional Items

Despite ongoing efforts to identify and produce additional responsive information, Defendants do not believe that they will be able to meet the deadline of May 21, 2025 for substantial completion of document production to Plaintiff's initial discovery requests as agreed at the March 6, 2025 status conference, particularly as the parties are still negotiating search terms for additional document searches. Defendants propose extending the substantial completion of document production date until June 20, 2025.  Please advise if you are in agreement to this adjustment.

Finally, should Plaintiff disagree with any of the above positions or wish to propose additional adjustments, Defendants are available to meet and confer early next week.

Sincerely,

*/s/ James H. Hanson*
*/s/ Angela S. Cash*

