

# EXHIBIT K



**The Transportation Law Firm**

10 West Market Street
Suite 1400
Indianapolis, IN 46204

**Main:** 317.637.1777
**Fax:** 317.687.2414
scopelitis.com

**JAMES H. HANSON**
jhanson@scopelitis.com
Direct Dial: 317.492.9205

**ANGELA S. CASH**
acash@scopelitis.com
Direct Dial: 317.637.1777

May 28, 2025

VIA EMAIL mike@feganscott.com

Mr. Mike von Klemperer
FeganScott LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009

> Re: *Kelchner v. CRST Expedited, Inc.* May 19, 2025 Discovery Correspondence

Dear Counsel:

Thank you for your May 19 follow-up email following the most recent meet and confer. We address each of the outstanding issues below. Also attached is a hit report for documents retrieved from the ESI search of Mike Gannon ahead of his deposition scheduled for Thursday.

## I. Interrogatory Data Sets

We are currently compiling the data sets referenced in our responses to Plaintiff's interrogatories. At this time, we do not have a firm timeline that we can provide with confidence. We can confirm, however, that we are working to complete this as quickly as possible.

## II. Redactions

We appreciate Plaintiff's agreement on redactions for social security numbers, financial account numbers, medical/mental health records, and non-class-member contact information. However, we continue to object to the production of class member

SERVICES OUTSIDE CALIFORNIA AND MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL CORPORATION
SERVICES IN MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL LIMITED LIABILITY COMPANY
SERVICES IN CALIFORNIA PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LIMITED LIABILITY PARTNERSHIP

Mike von Klemperer
May 28, 2025
Page 2

names and contact information at this stage, as pre-certification discovery of such data is not required. As we identified in our previous letter, courts regularly deny discovery of this type of information at this stage. *See, e.g.*, *Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2016 WL 11658797, at *10 (W.D. Ky. Jan. 5, 2016) (limiting pre-certification discovery of putative class members' identities to anonymized productions); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2015 WL 1964400, at *5–*8 (E.D.N.C. May 1, 2015) (denying pre-certification discovery of putative class members' identities and contact information and denying plaintiff's motion to compel production of class and collective member names and contact information prior to certification ruling); *Swelnis v. Universal Fid. L.P.*, No. 2:13-CV-104-PRC, 2014 WL 1571323, at *3 (N.D. Ind. Apr. 17, 2014) (plaintiff not entitled to names and contact information for potential class members); *Kernats vs. Comcast Corp.*, No. 09 C 3368, 2010 WL 8742753, at *3 (N.D. Ill. 14 Jan. 2010) (denying discovery in class action and stating that "[t]he full employee list will be necessary and relevant after class certification in order to allow for class notification, but Plaintiffs need not rely upon it at this stage in order to show that they are entitled to class certification*"); Dziennik v. Sealift, Inc.*, No. 05–CV–4659 (DLI)(MDG), 2006 WL 1455464, at *1 (E.D.N.Y. 23 May 2006) (denying production of contact information and noting that "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification").

We understand that Plaintiff contends that class member contact information is generally discoverable without any additional showing. However, the authority you have provided does not support that position and is readily distinguishable. Indeed, Plaintiff's assertion that "[c]lass members are relevant witnesses and Defendants have no legitimate basis for unilateral access to these individuals" misstates the applicable law and fails to account for the substantial discretion courts retain in regulating precertification discovery. *See* Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978) (district courts must exercise discretion in controlling discovery to ensure it remains proportional).

Specifically:
- **Cortez v. Target Corp.** involved a situation where plaintiffs "list[ed] the specific information they hope to acquire from their ensuing contacts pursuant to Rule 23," and the same data sought had already been produced in another

case. *See Cortez v. Target Corp.*, No. 1:23-CV-01435, 2023 WL 7325965, at *2, *4 (N.D. Ill. Nov. 7, 2023). The court also acknowledged that "courts are split on whether plaintiffs are entitled to contact information of putative class members in advance of certification." *Id.* at *2. Unlike the plaintiffs in *Cortez*, Plaintiff here has made no tailored showing of why specifically class member contact information is relevant or necessary to class certification of a BOPA claim.

- **Drake v. Aerotek, Inc.** similarly recognized that "in some situations access to putative class members' information is unnecessary and even intrusive" and that courts have "wide discretion to limit the scope of discovery." *Drake v. Aerotek, Inc.*, No. 14-CV-216-BBC, 2014 WL 7408715, at *1-2 (W.D. Wis. Dec. 30, 2014). Notably, *Drake* involved only 270 potential class members, and the court observed that defendant failed to propose a random sampling approach to avoid an "all or nothing" production. *Id.* at *2. It implied, however, that it would have entertained a smaller sampling if the defendant had asked for it.

- **Golan v. Veritas Entm't, LLC** is from within the Eighth Circuit but involved a TCPA claim where class member contact information was directly relevant to consent to phone calls—an issue central to certification. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2016 WL 5811292, at *2 (E.D. Mo. Oct. 5, 2016). There, the court noted that the state court previously rejected this same request. *Id.* The federal court, however, reversed course because the defendant's only argument was the law of the case.

- **Holland-Hewitt v. Allstate Life Ins. Co.** notes that a plaintiff must show that class member contact information "is likely to produce substantiation of class allegations." 343 F.R.D. 154, 168 (E.D. Cal. 2022). The court found the plaintiff there had met that threshold because the "violation [was] largely undisputed" and the requested information would allow confirmation of the defendant's conduct. *Id.* at 168-69. No such showing has been made here.

- **Edwards v. PJ Ops Idaho, LLC** is inapposite because it addressed spoliation and sanctions, not discovery of class member contact information. *Edwards v. PJ Ops Idaho, LLC*, No. 1:17-CV-00283-DCN, 2024 WL 2060503, at *4 (D. Idaho May 7, 2024). The brief mention of class contact information was merely dicta relying on *Holland-Hewitt*.

- **Fausz v. NPAS, Inc.**, which we also cited, only supports our position. There, the court approved redacting class member names from account records until after class certification was resolved, aligning with the approach we have offered here. *See Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2016 WL 11658797, at *10 (W.D. Ky. Jan. 5, 2016).

In short, Plaintiff's cases do not establish a blanket rule of discoverability. Rather, courts retain broad discretion to manage discovery in a proportional manner, taking into account the privacy interests of putative class members and the burdens of producing this information pre-certification. In this case, Plaintiff has not articulated a specific showing of why class member contact information is necessary or how it relates to the Rule 23 analysis. Accordingly, we maintain our objections to disclosing this information pre-certification. As a potential middle ground, Defendant is willing to discuss the production of contact information related to a small sample of drivers who entered into lease purchase agreements with CRST Specialized only. Please let us know if you would like to discuss this possibility.

As to Plaintiff's concerns about usability, we are still assessing the feasibility of applying consistent litigation ID numbers across all document types, including emails, complaints, and exit interviews. We are open to considering this approach; however, there are significant questions about whether it is feasible for certain document types—particularly emails with BCC email strings. **<u>Would Plaintiff agree that anonymizers are unnecessary for BCC emails and that such documents need not be separately anonymized?</u>**

### III.    Document Families

We confirm that Defendants have not and will not split document families.

### IV.    Non-Custodial Sources

We are finalizing a description of the non-custodial sources to be searched and will provide that list in later correspondence. For the individual custodians proposed for an ESI search, we anticipate searching at least the following repositories: all documents stored in cloud drive storage systems (the primary repository for employee documents); all emails to/from/cc/bcc (including attachments); and all Microsoft Teams messages.

**Scopelitis**®

## V.    Search Terms

**RFP 14**: We have incorporated the proposed changes into the master search list.

**RFP 32**: We have incorporated the proposed changes into the master search list.

**RFP 57**: While duplicative of the existing search, we are willing to run a hit report with the proposed additional search.

**Independent Contractor Alternative Strings**: We are willing to run searches using the requested substitution of the Lease Purchase Program-related terms with "independent contractor." However, as discussed below, the existing searches are already significantly overbroad, and we do not anticipate agreeing to this blanket expansion across all proposed searches.

## VI.    Outstanding RFPs

**RFPs 38, 49, 70**: We are continuing our investigation and expect to provide an update next week.

**RFP 21 (narrowed)**: We appreciate Plaintiff's proposal to narrow this request; however, we propose further narrowing it to say "All audited and/or unaudited financial statements including balance sheets, income statements, statements of cash flows, and accountants' notes, for You that ~~reflect~~ **show or describe** revenue derived from the Lease Purchase Program from August 23, 2020~~through the present.~~ ~~for the period January 2019 to present~~."

**RFPs 47, 48, 50, 51**: At this time, we intend to stand on our objections, particularly as to burden and relevance. However, we remain willing to run hit reports for ESI searches and will reconsider our objections in the context of those results and Plaintiff's willingness to appropriately narrow their requests.

**RFPs 60, 61**: We remain concerned that a request for all board-level documents that merely "reference" the Lease Purchase Program risks overreach. However, we are open to proposals to refine the proposed search strings to ensure proportionality and relevance.

## VII.  Hit Report for Mike Gannon

Consistent with our discussions and our ongoing efforts to cooperate in discovery, we ran a comprehensive hit report using all of the proposed search strings on the ESI for custodian Mike Gannon including for his emails, Teams messages, and OneDrive files. Our initial search yielded approximately 9,000 unique documents for Mr. Gannon alone. As Mr. Gannon is just one of the 26 custodians we have agreed to search, it is clear that applying these broad proposed terms across all custodians would lead to an enormous and disproportionate volume of documents.

Recognizing this challenge, we also took steps to refine the search terms to better target documents. Using narrowed search terms, we ran a new hit report for Gannon, which still produced approximately 1,300 unique content hits and over 3,200 family hits. This significant reduction from the original 9,000 family hits demonstrates that the refined search logic helps eliminate noise from the broader proposed terms. Nonetheless, the narrowed hit count for Mr. Gannon alone suggests that, even with these refinements, further tailoring will be needed to ensure the search remains proportional across all custodians and focuses on the claims and defenses at issue.

We are continuing to import and index ESI for the other 25 custodians, and we expect the same dynamic to apply. While the refined search terms will help reduce the overall burden, additional refinement and ongoing cooperation will be needed to bring the resulting volume to a truly proportional level. We have attached both reports for your review and would welcome a discussion on further modifications or refinements that Plaintiff would like to propose while we continue to onboard the other custodian's data.

Sincerely,

*/s/ James H. Hanson*
*/s/ Angela S. Cash*

Enc: Gannon Hit Report (All Proposed Terms) 5.27.25; Gannon Hit Report (Narrowed Terms) 5.27.25

4923-4349-6007, v. 7

