**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually
and on behalf of all others
similarly situated,

      Plaintiff,

  vs.                       No. C24-0082-CJW

CRST EXPEDITED, INC., et al.,    TRANSCRIPT OF
                              STATUS CONFERENCE

      Defendants.
_____/


The Status Conference held before the Honorable Kelly K.E. Mahoney, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, April 4, 2025, commencing at 11:30 a.m.

APPEARANCES:

For the Plaintiff:      J. BARTON GOPLERUD, ESQ.
                        Shindler, Anderson,
                          Goplerud & Weese
                        Suite 100
                        5015 Grand Ridge Drive
                        West Des Moines, IA 50265-5749

                        MICHAEL VON KLEMPERER, ESQ.
                        Fegan Scott
                        Suite 100
                        1763 Columbia Road Northwest
                        Washington, DC 20009

For the Defendants:     KEVIN J. VISSER, ESQ.
                        Simmons, Perrine, Moyer & Bergman
                        Suite 1200
                        115 Third Street Southeast
                        Cedar Rapids, IA 52401

                        ANGELA S. CASH, ESQ.
                        Scopelitis, Garvin, Light,
                          Hanson & Feary
                        Suite 1400
                        10 West Market Street
                        Indianapolis, IN 46204

Transcribed from        Shelly Semmler, RDR, CRR
digital recording by:   320 Sixth Street
                        Sioux City, IA 51101
                        (712) 233-3846

(The following transcript was prepared from a digital recording.)

* * * *

P R O C E E D I N G S

THE COURT: Good morning. This is Kelchner versus CRST Expedited, Inc., et al., Case Number 24-CV-82. Who do I have on behalf of plaintiff, Harley Kelchner?

MR. VON KLEMPERER: Good morning, Your Honor. This is Mike von Klemperer for the plaintiff.

THE COURT: And for --

MR. GOPLERUD: Morning, Your Honor. Bart Goplerud also for the plaintiffs.

THE COURT: All right. And then for defendants?

MS. CASH: Angela Cash. Good morning, Your Honor.

THE COURT: Good morning.

MR. VISSER: And Kevin Visser as well, Your Honor.

THE COURT: Very good. Anybody we missed? Okay. We are here for a status conference in this matter. I did review the parties' joint notice in advance of the status conference. That's document 67. And we set this previously after having a prior status

conference in the matter.

I guess I will start with plaintiffs on -- I understand the concerns that both parties -- or the issues both parties have raised regarding discovery responses, then also the deposition scheduling. What can I help you with in that regard today, either Mr. Goplerud or Mr. von Klemperer -- Klemperer?

MR. VON KLEMPERER: Yeah. Thank you, Your Honor. And we appreciate your time, and I'll do my best to be as concise as possible because I don't think we necessarily have ripe disputes today, but we wanted to keep the Court appraised of the situation and just note a few percolating issues --

THE COURT: Sure.

MR. VON KLEMPERER: -- that may be coming up in short order.

So, Your Honor, as you know, we issued discovery in early January. The defendants requested several fairly lengthy extensions to respond to that. We didn't receive the responses until the middle of March. We were hopeful the defendants would take that time to thoroughly investigate and prepare thorough answers to our requests. Unfortunately, that's not really what we got.

As we mentioned in the notice, over half of the RFPs were objected to in full, or they're refusing even to

search for responsive documents, and essentially every single response includes largely boilerplate objections.

And as a result of that, you know, we had to take many hours this week to essentially walk through every request and understand what is the true basis for the objection to the requests, what were they objecting to, are they standing on those objections.

And one of the things that are left now is we're largely waiting on a written follow-up from the defendants on, you know, what are their true objections and where can we go from here.

We're also still waiting on proposed search terms from them.  It's been -- you know, we raised this issue (phone static), and we're still waiting on search terms. And so as I mentioned (phone static) few issues --

THE COURT:  Mr. -- I'm going to stop you really quick.  There's some feedback over the phone.  I don't know -- if the other parties who are on the phone, if you can mute.  I don't know if it's -- and is this Mr. von Klemperer?

MR. VON KLEMPERER:  Yes.

THE COURT:  Okay.

MR. VON KLEMPERER:  I think it's Bart.  Can you go on mute?

THE COURT:  All right.

MR. VON KLEMPERER:  Bart's on mute.

UNIDENTIFIED SPEAKER:  Has been.

THE COURT:  Okay.  All right.  You can continue.

MR. VON KLEMPERER:  Okay.  Thank you, Judge.

So there's just a few issues that I want to touch on briefly.  So, you know, one of the -- one of the complaints that we've heard from the defendants and one of the reasons that they cited for needing more time is the number of the requests, the number of individual RFPs and interrogatories at issue.

We actually tried really hard to keep that number low.  We tried to tar -- you know, target the appropriate entity, the appropriate corporate defendant.  And so rather than just copying and pasting the same request to each of the defendants, we tried to target those.

Unfortunately, what we kind of received as a result of that is now we're receiving responses where one of the defendants will say, well, you served the wrong entity, and so we don't have the documents.  It's in the possession of a different defendant.

And, you know, there's no question that the documents exist.  There's no question that one of the defendants in the case has it.  They're just saying that, you know, we served the wrong entity.

I think we're still waiting to hear back from them on if that's really going to be their final position in this case. You know, we could simply just serve, you know, for example, Specialized. We served them with the fewest number of document requests. We could simply serve them all of the same requests again, but that's just going to create more delay.

So we're hope -- we're hopeful that we can come to an agreement on that issue so that we don't just simply have to duplicate all of the requests to all of the defendants.

A second issue is we requested a very targeted set of documents from the Cervantes matter that Your Honor's familiar with. We requested the transcripts of the defendant's -- of the defendant's employees from depositions and trial. We've also requested the defendant's discovery responses. And they've essentially objected in full to producing those documents.

I don't think there's really much of a question that that material is relevant, that it meets the low -- low threshold for relevance. And I think it's very easy for them to produce. I mean, they should be able to pull those documents and get them over to us in 20 minutes if they wanted to. And so we're really hopeful that they'll reconsider those objections and provide that discovery

quickly to us.

And then a final issue I'll note, Judge, is that in response to many of our requests, they object that the request is, quote, premature because a class has not yet been certified in this case. Well, Your Honor, that objection doesn't really make sense here because under the schedule that the parties have stipulated to, discovery is not bifurcated in this case. There's only a single discovery period followed by class certification followed by dispositive briefing. And so, you know, we're hopeful that they're not going to stand on that objection either.

And then just sort of as a final housekeeping matter, Your Honor, you know, we anticipate that there's going to be a number of disputes coming up in the near future. We reviewed Your Honor's preferences, and I believe you prefer to have a -- sort of an informal conference before the parties file discovery disputes. And I just want to confirm that that's the approach you'd like to take here.

THE COURT: Yes. And actually looking at the notice from the parties, this is the type of case where I think that there's going to need to be Court participation with the parties in the matter. So it's probably going to make sense at this point to set a

deadline -- or just set another status conference down the road so you guys can work through these issues. We can try to narrow some of these down hopefully today. But I think we need to go ahead and just set another status conference so we can check in and see where things are at, also give you that way a deadline to try to move the case forward and keep narrowing issues until we can get to the point if motion practice is necessary that it would get to that point quickly rather than waiting till later and it being a huge issue that could have been narrowed earlier on.

So I'd be happy to hear, I guess, in response to those three issues that the plaintiffs have raised from the defense?

MS. CASH: Certainly, Your Honor. Thank you for the opportunity.

To start with, the first issue which I understand to be the concern is that documents that are in the possession of one defendant that weren't requested will not be produced. And so as a little context for that, Mr. Kelchner, the only named plaintiff, worked for CRST Specialized and only for CRST Specialized as a contractor. And so all of the documents that we believe are related to plaintiff's claims would be under CRST Specialized.

Despite that, they only asked for 8 requests for production for CRST Specialized, and they asked for -- I don't have them in front of me -- but something like 60 plus or 70 plus requests for production from CRST Expedited even though Mr. Kelchner never worked as a contractor for CRST Expedited.

They also asked for the same -- primarily the same set of documents from Lincoln Sales, the third defendant here. To stay -- to stay with Lincoln Sales for a minute, as we explained to plaintiff's counsel in our meet-and-confer calls, many of the requests that are directed to Lincoln Sales simply don't apply to Lincoln Sales. Lincoln Sales is just the arm of the company that leases or makes available for purchase trucks. And so many of the requests about advertising, et cetera, just simply don't apply to Lincoln Sales, and we think that they're not responsive. So I don't think that piece is an issue but wanted to point that out.

And then as far as if a document was requested from Expedited but Expedited doesn't have it but Specialized has it and it wasn't requested from Specialized, we've made clear that we'll produce those documents. But we also make clear that we want to produce them under the proper custodian because that would prevent miscon -- misunderstandings going forward with regard to who might

be the right person to talk about those documents.

So we're willing to work with plaintiff. We've explained to plaintiff that we're not trying to withhold any Specialized documents that are relevant to the case. It's our intent to produce those as long as we can produce them in a way that makes clear who's producing it, and we'll have to have some mechanism to do that because we weren't formally asked for it. But we intend to do that and make that production of the documents that are pertinent and relate to Specialized.

THE COURT: And I guess how long do you anticipate that taking? I know that the -- your portion of the notice indicated you had, I think, some significant additional disclosures you plan to make. What timeframe are you looking at on that?

MS. CASH: So we are working very diligently, Your Honor, to make these productions. I anticipate we'll have another production to them in the next seven to ten days. It won't be everything, but it will be another significant production. We did have a production yesterday as well on behalf of CRST Expedited.

THE COURT: Okay. And I guess, Mr. von Klemperer, does that -- well, I guess let me just go ahead and get to the rest of your responses. For -- so the second point that Mr. von Klemperer raised was

about information like transcripts and productions in the Cervantes case.

MS. CASH: Yes. And so we believe and we've provided documentation and evidentiary support, case law support -- I'm sorry, not evidentiary support -- case law support for our arguments with regard to why they're not entitled to wholesale get documents related to the depositions and discovery in the Cervantes case. They this week provided some additional authority in response to that which we're reviewing, and we'll make a final decision on that.

To the extent that they have asked for some other kinds of requests related to Cervantes -- for example, they would have several requests that they cite to a particular type of document and ask for that document and documents like that. And so we're working to provide a response to that.

But it's our position and we believe we've got good case law support on it subject to looking at what they have sent over in the last couple of days that says that, you know, they can't just wholesale get all the discovery from this other case. They need to be targeted and ask for things that are pertinent and relevant to this particular case which is a claim that's different than any claim that was advanced in Cervantes.

THE COURT:  Okay.

MS. CASH:  It's also --

THE COURT:  Or go ahead.

MS. CASH:  Cervantes -- I'm sorry, Your Honor.

THE COURT:  No.  Go ahead.

MS. CASH:  Go ahead.

THE COURT:  No, you can proceed.

MS. CASH:  In Cervantes -- okay.  I apologize.

THE COURT:  Sorry.

MS. CASH:  In Cervantes it was only CRST Expedited, and again, Mr. Kelchner never worked for CRST Expedited.  So all those documents would relate to a company that he's never worked for.  Now they're attempting to bring a class action against CRST Expedited as well, but again, we believe that's a distinction here that is pertinent to the discovery requests.

THE COURT:  Let me ask you on that piece where you were talking about the second part of that that more specific document requests in the Cervantes matter you are working on.  Why have those not already been produced?

MS. CASH:  The short answer to that is because many of those materials have been archived, and there's a cost to bring them back.  And so I probably made the wrong choice when I said we're not going to incur that

cost to bring them back because I thought we could grab them in a different way. And that's turned out to be a little more difficult. So we're in the process of bringing back that archived material. And so that's -- that's delayed the response.

Plus, you know, I -- I appreciate Mike's compliment to us that we can work this together in 20 minutes. But there were multiple levels of discovery responses and multiple supplements. And so it is a bit more involved in terms of just grabbing all that. So those are the main reasons that it's taken a bit.

THE COURT: All right. And what about his argument that there's no bifurcated discovery here so saying that things are premature because there's no class certification yet is a proper discovery response?

MS. CASH: We've also asserted, Your Honor, that objection, and primarily that relates to requests for information that includes the identity and contact information for class members who are, you know, not yet part of any certified class. And we believe we have a good basis to stand on not producing that information to them prior to class certification. We've advised and are working on producing the information that's requested in an anonymized fashion. And so they'll have the pay data and the deduction data that they need to do any sort of

analysis. It's just that contact information that we are arguing should not be produced in a precertification discovery.

THE COURT: Okay. So you don't want to produce content. But what is it you are producing in this vein?

MS. CASH: Sure. The full set of information regarding their pay and deductions for all putative class members in an anonymized fashion.

THE COURT: All right. I guess, Mr. von Klemperer, any response?

MR. VON KLEMPERER: Just -- just briefly, Your Honor. I just want to clarify for the Cervantes issue, we are not asking for every scrap of paper that was exchanged in that matter. We are asking for targeted discovery which is the transcripts from depositions of their own employees and their own experts and their own discovery responses. So this is not a massive volume of documents that we imagine.

And on the prematurity objection, the class certification issue, you know, we disagree that withholding the identities of class members and their contact information is appropriate. That's a separate issue that I think we may need to bring to the Court in short order. But just to clarify, they're asserting that objection in response to dozens of requests, not just

requests for class member identification.

THE COURT: Okay. Any response to that, Miss Cash?

MS. CASH: Your Honor, I -- I don't believe it's dozens. I can't tell you exactly what it is. We, as Mike indicated, worked through all of the requests and have a plan for what we'll be looking at again. And so it's our intent to review those as we discussed in the meet-and-confer. And I just -- I apologize. I don't have recollection off the top of my head what other ones we might have asserted that on. But we, as I said, agreed to look at that and provide a written response. So that might be an issue that we look at at another day.

THE COURT: Okay. Well, you know, just reviewing in preparation for this, during the last status conference we had on March 6, there were deadlines set for production of discovery responses by March 14, objections by March 17, and written discovery responses for all defendants by March 21. It's now April 4. There has been, it looks like, progress made on discovery.

I have kind of a thumbnail sketch of the issues you guys are working through, and I commend you for working on that and continue to do so. But I will just flat say -- and I think that if you're not aware you should be very aware -- if there are boilerplate objections to

discovery responses, those are sanctionable. I -- that just won't be tolerated.

I understand this is a big case. I understand these are separate entities that ha -- are defendants. But the case has gotta get moved forward. Discovery's gotta move forward. And having the quick thumbnail I have of it, it seems like defendants may be being a little bit ticky tacky on some things here. Just flat out that's where I -- kind of looks like to me.

So I am happy to -- I don't really have a ton of information to weigh in on these things. I am glad to hear that CR -- that defendants agree that if a request is made for one entity and that entity doesn't have those documents, another entity does, those will be produced in the other entity. I understand the need to clarify which entity it is producing which documents. I'm hopeful that can be done in an efficient and timely manner. That's why I was asking about timeframes as to why that hasn't been done yet, when's that going to be done because, again, we've already had extensions in this matter.

On the issue of the Cervantes discovery requests, again, all of this, it seems like the parties need to talk through a bit more. But if it is specific requests that are made that can be produced, they should be produced.

And as far as the premature -- the class certification thing, this seems to be, too, something hopefully you guys can work through. Beyond that, I mean, again, we're here just some very brief information highlighting issues that may become an issue they're trying to still work through. So they're not ripe.

Again, I think we're just going to have to set some periodic status conferences in this case. So I'd be interested to hear when you think we should have the next status conference. And then what else specifically do you want to talk about or things can I help you with today?

So, Mr. von Klemperer, I'll start with you.

MR. VON KLEMPERER: Your Honor, the only other sort of outstanding issue -- well, one, we'd like to get a sense of when we can expect to receive defendant's search terms. That's going to be, I'm sure, a back-and-forth. And so getting those doc -- that list quickly is, I think, going to be important in moving discovery forward and meeting that substantial completion deadline that the parties agreed to.

THE COURT: And I guess --

MR. VON KLEMPERER: And the other thing that we --

THE COURT: -- on that real quick, Miss --

Miss Cash, what are your thoughts on when you can get that?

MS. CASH: By next Friday.

THE COURT: Okay. And so, Mr. von Klemperer, does that help at all?

MR. VON KLEMPERER: That is helpful.

THE COURT: Okay.

MR. VON KLEMPERER: Thank you, Judge.

THE COURT: Second issue.

MR. VON KLEMPERER: The only other -- sorry. The only other thing was the scheduling of the deposition. We emailed them over --

THE COURT: Yes.

MR. VON KLEMPERER: -- a week ago. We're still waiting on the availability of that person.

THE COURT: Miss Cash?

MS. CASH: Your Honor, I am still waiting to hear back from our client on that. We promptly made the request. Obviously Mr. Gannon's calendar is set a bit farther in advance than two weeks, and we're hopeful to get some dates by next week to get it on the calendar for early May.

THE COURT: All right. And I would just encourage you to reach out to him again today and keep doing it daily until you get a response from him.

What are your thoughts, Mr. von Klemperer, on when a status conference might make sense?

MR. VON KLEMPERER: I think that perhaps if the Court is available April 25 which is 3 weeks from today, that would work for us or any time the following week after, the week of April 28.

THE COURT: And Miss Cash?

MS. CASH: That would work, Your Honor. Earlier on the 25th would be better if possible, and then the 29th doesn't work. But other than that . . .

THE COURT: Okay.

MS. CASH: Actually no. I'm sorry. The twenty -- the 28th is good, earlier on the 25th. But then I've got other things going that weekend. I'm sorry.

THE COURT: No.

MS. CASH: Or that week of April 28.

THE COURT: No problem.

MS. CASH: Apologize.

THE COURT: How about we just shoot for April -- you said April 28 does work?

MS. CASH: Yes, ma'am.

THE COURT: Would -- morning or afternoon better? One or the other?

MS. CASH: I'm wide open that day.

THE COURT: Okay. And, Mr. von Klemperer, does --

MR. VON KLEMPERER: As am I, Your Honor.

THE COURT: Okay. Does 11:30 work again?

MR. VON KLEMPERER: Yes.

THE COURT: Okay.

MS. CASH: Okay. Thank you.

THE COURT: Yeah. So we'll set the next status conference for -- that is Monday, April 28, at 11:30 a.m. We'll send connection instructions for that separately. And I'll include that in the minutes from this hearing or maybe in a separate order setting the hearing.

I want to circle back to Miss Cash. I kind of didn't give you a chance. What other issues do you think we should talk about today or anything else you want to add or discuss?

MS. CASH: Thank you, Your Honor. I think we're good. I do think we are making progress, albeit slower than anyone would like, and we'll continue to push forward and get this moving as quickly as we can.

THE COURT: Okay. Anything else, Mr. von Klemperer?

MR. VON KLEMPERER: Not from me, Your Honor. Thank you.

THE COURT: All right. Thank you, counsel.

That will conclude this status conference.

MS. CASH:  Thank you.

(The foregoing hearing was

concluded at 11:53 a.m.)

* * * *

(This concludes the transcript of the audio recording.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital recording system.

_____S/Shelly Semmler_____        6-6-25
Shelly Semmler, RDR, CRR          Date

**1**

**10** [1] - 2:13
**100** [2] - 2:3, 2:6
**115** [1] - 2:10
**11:30** [3] - 1:13, 21:4, 21:9
**11:53** [1] - 22:4
**1200** [1] - 2:9
**14** [1] - 16:17
**1400** [1] - 2:13
**17** [1] - 16:18
**1763** [1] - 2:7

**2**

**20** [2] - 7:23, 14:7
**20009** [1] - 2:7
**2025** [1] - 1:13
**21** [1] - 16:19
**233-3846** [1] - 2:16
**24-CV-82** [1] - 3:7
**25** [1] - 20:4
**25th** [2] - 20:9, 20:13
**28** [4] - 20:6, 20:17, 20:21, 21:9
**28th** [1] - 20:13
**29th** [1] - 20:10

**3**

**3** [1] - 20:4
**320** [2] - 1:12, 2:15

**4**

**4** [2] - 1:13, 16:19
**46204** [1] - 2:14

**5**

**5015** [1] - 2:4
**50265-5749** [1] - 2:4
**51101** [1] - 2:16
**52401** [1] - 2:10

**6**

**6** [1] - 16:16
**6-6-25** [1] - 22:24
**60** [1] - 10:3
**67** [1] - 3:24

**7**

**70** [1] - 10:4
**712** [1] - 2:16

**8**

**8** [1] - 10:1

**A**

**a.m** [3] - 1:13, 21:9, 22:4
**ability** [1] - 22:22
**able** [1] - 7:22
**above-entitled** [1] - 22:22
**action** [1] - 13:14
**add** [1] - 21:16
**additional** [2] - 11:14, 12:9
**advance** [2] - 3:24, 19:20
**advanced** [1] - 12:25
**advertising** [1] - 10:15
**advised** [1] - 14:22
**afternoon** [1] - 20:23
**ago** [1] - 19:14
**agree** [1] - 17:12
**agreed** [2] - 16:12, 18:21
**agreement** [1] - 7:9
**ahead** [5] - 9:4, 11:24, 13:3, 13:5, 13:6
**al** [2] - 1:8, 3:6
**albeit** [1] - 21:18
**analysis** [1] - 15:1
**Anderson** [1] - 2:2
**Angela** [1] - 3:16
**ANGELA** [1] - 2:11
**anonymized** [2] - 14:24, 15:8
**answer** [1] - 13:22
**answers** [1] - 4:22
**anticipate** [3] - 8:14, 11:12, 11:17
**apologize** [3] - 13:8, 16:9, 20:19
**APPEARANCES** [1] - 2:1
**apply** [2] - 10:12, 10:16
**appraised** [1] - 4:12
**appreciate** [2] - 4:9, 14:6
**approach** [1] - 8:19
**appropriate** [3] - 6:13, 6:14, 15:22
**April** [8] - 1:13, 16:19, 20:4, 20:6, 20:17, 20:21, 21:9
**archived** [2] - 13:23, 14:4
**arguing** [1] - 15:2
**argument** [1] - 14:13

**arguments** [1] - 12:6
**arm** [1] - 10:13
**asserted** [2] - 14:16, 16:11
**asserting** [1] - 15:24
**attempting** [1] - 13:14
**audio** [1] - 22:6
**authority** [1] - 12:9
**availability** [1] - 19:15
**available** [2] - 10:14, 20:4
**aware** [2] - 16:24, 16:25

**B**

**back-and-forth** [1] - 18:18
**Bart** [2] - 3:12, 5:23
**Bart's** [1] - 6:1
**BARTON** [1] - 2:2
**basis** [2] - 5:5, 14:21
**become** [1] - 18:5
**behalf** [3] - 1:4, 3:7, 11:21
**Bergman** [1] - 2:9
**best** [2] - 4:9, 22:22
**better** [2] - 20:9, 20:24
**beyond** [1] - 18:3
**bifurcated** [2] - 8:8, 14:13
**big** [1] - 17:3
**bit** [5] - 14:9, 14:11, 17:7, 17:23, 19:19
**boilerplate** [2] - 5:2, 16:25
**brief** [1] - 18:4
**briefing** [1] - 8:10
**briefly** [2] - 6:7, 15:11
**bring** [4] - 13:14, 13:24, 14:1, 15:23
**bringing** [1] - 14:4

**C**

**C24-0082-CJW** [1] - 1:7
**calendar** [2] - 19:19, 19:21
**Case** [1] - 3:6
**case** [17] - 6:24, 7:3, 8:5, 8:8, 8:22, 9:7, 11:4, 12:2, 12:4, 12:5, 12:8, 12:19, 12:22, 12:24, 17:3, 17:5, 18:8
**CASH** [25] - 2:11, 3:16, 9:15, 11:16, 12:3, 13:2, 13:4, 13:6, 13:8, 13:10,

13:22, 14:16, 15:6, 16:4, 19:3, 19:17, 20:8, 20:12, 20:17, 20:19, 20:22, 20:25, 21:7, 21:17, 22:2
**Cash** [6] - 3:16, 16:3, 19:1, 19:16, 20:7, 21:13
**Cedar** [1] - 2:10
**CEDAR** [1] - 1:3
**certainly** [1] - 9:15
**CERTIFICATE** [1] - 22:19
**certification** [5] - 8:9, 14:15, 14:22, 15:20, 18:2
**certified** [2] - 8:5, 14:20
**certify** [1] - 22:20
**Cervantes** [11] - 7:13, 12:2, 12:8, 12:13, 12:25, 13:4, 13:8, 13:10, 13:19, 15:12, 17:21
**cetera** [1] - 10:15
**chance** [1] - 21:14
**check** [1] - 9:5
**Chief** [1] - 1:11
**choice** [1] - 13:25
**circle** [1] - 21:13
**cite** [1] - 12:14
**cited** [1] - 6:9
**City** [2] - 1:12, 2:16
**claim** [2] - 12:24, 12:25
**claims** [1] - 9:24
**clarify** [3] - 15:12, 15:24, 17:15
**class** [12] - 8:4, 8:9, 13:14, 14:14, 14:19, 14:20, 14:22, 15:7, 15:19, 15:21, 16:1, 18:1
**clear** [3] - 10:22, 10:23, 11:6
**client** [1] - 19:18
**Columbia** [1] - 2:7
**coming** [2] - 4:15, 8:15
**commencing** [1] - 1:13
**commend** [1] - 16:22
**company** [2] - 10:13, 13:13
**complaints** [1] - 6:8
**completion** [1] - 18:20
**compliment** [1] - 14:6
**concern** [1] - 9:18
**concerns** [1] - 4:3
**concise** [1] - 4:10

**conclude** [1] - 22:1
**concluded** [1] - 22:4
**concludes** [1] - 22:6
**confer** [2] - 10:11, 16:9
**CONFERENCE** [1] - 1:8
**conference** [11] - 3:22, 3:24, 4:1, 8:18, 9:1, 9:5, 16:16, 18:10, 20:2, 21:9, 22:1
**Conference** [1] - 1:11
**conferences** [1] - 18:8
**confirm** [1] - 8:19
**connection** [1] - 21:10
**contact** [3] - 14:18, 15:1, 15:22
**content** [1] - 15:5
**context** [1] - 9:20
**continue** [3] - 6:4, 16:23, 21:19
**contractor** [2] - 9:23, 10:6
**copying** [1] - 6:15
**corporate** [1] - 6:14
**correct** [1] - 22:20
**cost** [2] - 13:24, 14:1
**counsel** [2] - 10:10, 21:25
**couple** [1] - 12:20
**COURT** [45] - 1:2, 3:5, 3:11, 3:14, 3:18, 3:21, 4:14, 5:16, 5:22, 5:25, 6:3, 8:21, 11:11, 11:22, 13:1, 13:3, 13:5, 13:7, 13:9, 13:17, 14:12, 15:4, 15:9, 16:2, 16:14, 18:22, 18:25, 19:4, 19:7, 19:9, 19:13, 19:16, 19:23, 20:7, 20:11, 20:16, 20:18, 20:20, 20:23, 21:1, 21:4, 21:6, 21:8, 21:21, 21:25
**Court** [5] - 1:12, 4:12, 8:23, 15:23, 20:4
**Courthouse** [1] - 1:12
**CR** [1] - 17:12
**create** [1] - 7:7
**CRR** [2] - 2:15, 22:24
**CRST** [12] - 1:8, 3:6, 9:21, 9:22, 9:24, 10:2, 10:4, 10:6, 11:21, 13:10, 13:11, 13:14
**custodian** [1] - 10:24

**D**

daily [1] - 19:25
data [2] - 14:24, 14:25
Date [1] - 22:24
dates [1] - 19:21
days [2] - 11:19, 12:20
DC [1] - 2:7
deadline [3] - 9:1, 9:6, 18:21
deadlines [1] - 16:16
decision [1] - 12:11
deduction [1] - 14:25
deductions [1] - 15:7
defendant [4] - 6:14, 6:21, 9:19, 10:8
defendant's [4] - 7:15, 7:17, 18:16
Defendants [2] - 1:9, 2:8
defendants [13] - 3:15, 4:18, 4:21, 5:10, 6:8, 6:16, 6:19, 6:24, 7:11, 16:19, 17:4, 17:7, 17:12
defense [1] - 9:14
delay [1] - 7:7
delayed [1] - 14:5
deposition [2] - 4:5, 19:12
depositions [3] - 7:16, 12:8, 15:15
Des [1] - 2:4
despite [1] - 10:1
different [3] - 6:21, 12:24, 14:2
difficult [1] - 14:3
DIGITAL [1] - 1:1
digital [4] - 2:15, 3:1, 22:21, 22:23
diligently [1] - 11:16
directed [1] - 10:12
disagree [1] - 15:20
disclosures [1] - 11:14
discovery [22] - 4:4, 4:17, 7:17, 7:25, 8:8, 8:9, 8:18, 12:8, 12:21, 13:16, 14:8, 14:13, 14:15, 15:3, 15:15, 15:17, 16:17, 16:18, 16:20, 17:1, 17:21, 18:20
discovery's [1] - 17:5
discuss [1] - 21:16
discussed [1] - 16:8
dispositive [1] - 8:10
disputes [3] - 4:11, 8:15, 8:18
distinction [1] - 13:15

DISTRICT [2] - 1:2, 1:2
District [2] - 1:12
DIVISION [1] - 1:3
doc [1] - 18:18
document [6] - 3:24, 7:5, 10:19, 12:15, 13:19
documentation [1] - 12:4
documents [19] - 5:1, 6:20, 6:23, 7:13, 7:18, 7:23, 9:18, 9:23, 10:8, 10:22, 11:1, 11:4, 11:9, 12:7, 12:16, 13:12, 15:18, 17:14, 17:16
done [3] - 17:17, 17:19
down [2] - 9:1, 9:3
dozens [2] - 15:25, 16:5
Drive [1] - 2:4
duplicate [1] - 7:10
during [1] - 16:15

**E**

early [2] - 4:18, 19:22
easy [1] - 7:21
efficient [1] - 17:17
either [2] - 4:6, 8:12
emailed [1] - 19:12
employees [2] - 7:15, 15:16
encourage [1] - 19:24
entities [1] - 17:4
entitled [2] - 12:7, 22:22
entity [8] - 6:14, 6:19, 6:25, 17:13, 17:14, 17:15, 17:16
ESQ [4] - 2:2, 2:5, 2:8, 2:11
essentially [3] - 5:1, 5:4, 7:17
et [3] - 1:8, 3:6, 10:15
evidentiary [2] - 12:4, 12:5
exactly [1] - 16:5
example [2] - 7:4, 12:13
exchanged [1] - 15:14
exist [1] - 6:23
expect [1] - 18:16
Expedited [9] - 3:6, 10:5, 10:6, 10:20, 11:21, 13:11, 13:12, 13:14
EXPEDITED [1] - 1:8
experts [1] - 15:16

explained [2] - 10:10, 11:3
extensions [2] - 4:19, 17:20
extent [1] - 12:12

**F**

fairly [1] - 4:18
familiar [1] - 7:14
far [2] - 10:19, 18:1
fashion [2] - 14:24, 15:8
Feary [1] - 2:12
Federal [1] - 1:12
feedback [1] - 5:17
Fegan [1] - 2:6
few [3] - 4:13, 5:15, 6:6
fewest [1] - 7:5
file [1] - 8:18
final [4] - 7:2, 8:2, 8:13, 12:10
first [1] - 9:17
flat [2] - 16:23, 17:8
follow [1] - 5:9
follow-up [1] - 5:9
followed [2] - 8:9, 8:10
following [2] - 3:1, 20:5
FOR [1] - 1:2
foregoing [2] - 22:3, 22:20
formally [1] - 11:8
forth [1] - 18:18
forward [6] - 9:7, 10:25, 17:5, 17:6, 18:20, 21:20
Friday [1] - 19:3
FROM [1] - 1:1
front [1] - 10:3
full [3] - 4:25, 7:18, 15:6
future [1] - 8:16

**G**

Gannon's [1] - 19:19
Garvin [1] - 2:12
given [1] - 22:23
glad [1] - 17:11
GOPLERUD [2] - 2:2, 3:12
Goplerud [3] - 2:3, 3:13, 4:6
gotta [2] - 17:5
grab [1] - 14:1
grabbing [1] - 14:10
Grand [1] - 2:4

guess [7] - 4:2, 9:12, 11:11, 11:22, 11:23, 15:9, 18:22
guys [3] - 9:2, 16:22, 18:3

**H**

half [1] - 4:24
Hanson [1] - 2:12
happy [2] - 9:12, 17:10
hard [1] - 6:12
Harley [1] - 3:7
HARLEY [1] - 1:4
head [1] - 16:10
hear [5] - 7:1, 9:12, 17:12, 18:9, 19:18
heard [1] - 6:8
hearing [3] - 21:11, 21:12, 22:3
held [1] - 1:11
help [3] - 4:6, 18:11, 19:5
helpful [1] - 19:6
highlighting [1] - 18:5
Honor [20] - 3:9, 3:12, 3:17, 3:20, 4:9, 4:17, 8:5, 8:14, 9:15, 11:17, 13:4, 14:16, 15:12, 16:4, 18:14, 19:17, 20:8, 21:3, 21:17, 21:23
Honor's [2] - 7:13, 8:16
Honorable [1] - 1:11
hope [1] - 7:8
hopeful [6] - 4:20, 7:8, 7:24, 8:11, 17:16, 19:20
hopefully [2] - 9:3, 18:3
hours [1] - 5:4
housekeeping [1] - 8:13
huge [1] - 9:10

**I**

IA [3] - 2:4, 2:10, 2:16
identification [1] - 16:1
identities [1] - 15:21
identity [1] - 14:18
imagine [1] - 15:18
important [1] - 18:19
IN [2] - 1:2, 2:14
Inc [1] - 3:6
INC [1] - 1:8
include [1] - 21:11
includes [2] - 5:2,

14:18
incur [1] - 13:25
Indianapolis [1] - 2:14
indicated [2] - 11:13, 16:6
individual [1] - 6:10
individually [1] - 1:4
informal [1] - 8:17
information [10] - 12:1, 14:18, 14:19, 14:21, 14:23, 15:1, 15:6, 15:22, 17:11, 18:4
instructions [1] - 21:10
intend [1] - 11:8
intent [2] - 11:5, 16:8
interested [1] - 18:9
interrogatories [1] - 6:11
investigate [1] - 4:22
involved [1] - 14:9
IOWA [1] - 1:2
Iowa [2] - 1:12, 1:13
issue [16] - 5:13, 6:11, 7:9, 7:12, 8:2, 9:10, 9:17, 10:18, 15:12, 15:20, 15:23, 16:13, 17:21, 18:5, 18:15, 19:9
issued [1] - 4:17
issues [10] - 4:4, 4:13, 5:15, 6:6, 9:2, 9:7, 9:13, 16:21, 18:5, 21:14

**J**

January [1] - 4:18
joint [1] - 3:23
Judge [4] - 1:11, 6:5, 8:2, 19:8

**K**

K.E [1] - 1:11
keep [4] - 4:12, 6:12, 9:7, 19:24
KELCHNER [1] - 1:4
Kelchner [5] - 3:5, 3:8, 9:21, 10:5, 13:11
Kelly [1] - 1:11
KEVIN [1] - 2:8
Kevin [1] - 3:19
kind [4] - 6:17, 16:21, 17:9, 21:13
kinds [1] - 12:13
Klemperer [12] - 3:10, 4:7, 5:20, 11:23, 11:25, 15:10, 18:13,

19:4, 20:1, 21:1, 21:22
**KLEMPERER** [19] - 2:5, 3:9, 4:8, 4:15, 5:21, 5:23, 6:1, 6:5, 15:11, 18:14, 18:23, 19:6, 19:8, 19:10, 19:14, 20:3, 21:3, 21:5, 21:23

**L**

**largely** [2] - 5:2, 5:9
**last** [2] - 12:20, 16:15
**law** [3] - 12:4, 12:5, 12:19
**leases** [1] - 10:14
**left** [1] - 5:8
**lengthy** [1] - 4:19
**levels** [1] - 14:8
**Light** [1] - 2:12
**limitation** [1] - 22:23
**Lincoln** [6] - 10:8, 10:9, 10:12, 10:13, 10:16
**list** [1] - 18:18
**look** [2] - 16:12, 16:13
**looking** [4] - 8:21, 11:15, 12:19, 16:7
**looks** [2] - 16:20, 17:9
**low** [3] - 6:13, 7:20

**M**

**ma'am** [1] - 20:22
**Magistrate** [1] - 1:11
**Mahoney** [1] - 1:11
**main** [1] - 14:11
**manner** [1] - 17:17
**March** [5] - 4:20, 16:16, 16:17, 16:18, 16:19
**Market** [1] - 2:13
**massive** [1] - 15:17
**material** [2] - 7:20, 14:4
**materials** [1] - 13:23
**matter** [9] - 3:23, 4:1, 7:13, 8:14, 8:24, 13:19, 15:14, 17:20, 22:22
**mean** [2] - 7:22, 18:4
**mechanism** [1] - 11:7
**meet** [2] - 10:11, 16:9
**meet-and-confer** [2] - 10:11, 16:9
**meeting** [1] - 18:20
**meets** [1] - 7:20
**member** [1] - 16:1
**members** [3] - 14:19,

15:8, 15:21
**mentioned** [2] - 4:24, 5:15
**MICHAEL** [1] - 2:5
**middle** [1] - 4:20
**might** [4] - 10:25, 16:11, 16:13, 20:2
**Mike** [2] - 3:10, 16:6
**Mike's** [1] - 14:6
**minute** [1] - 10:10
**minutes** [3] - 7:23, 14:7, 21:11
**miscon** [1] - 10:24
**Miss** [6] - 16:3, 18:25, 19:1, 19:16, 20:7, 21:13
**missed** [1] - 3:21
**misunderstandings** [1] - 10:25
**Moines** [1] - 2:4
**Monday** [1] - 21:9
**morning** [6] - 3:5, 3:9, 3:12, 3:16, 3:18, 20:23
**motion** [1] - 9:8
**move** [2] - 9:6, 17:5
**moved** [1] - 17:5
**moving** [2] - 18:19, 21:20
**Moyer** [1] - 2:9
**MR** [20] - 3:9, 3:12, 3:19, 4:8, 4:15, 5:21, 5:23, 6:1, 6:5, 15:11, 18:14, 18:23, 19:6, 19:8, 19:10, 19:14, 20:3, 21:3, 21:5, 21:23
**MS** [24] - 3:16, 9:15, 11:16, 12:3, 13:2, 13:4, 13:6, 13:8, 13:10, 13:22, 14:16, 15:6, 16:4, 19:3, 19:17, 20:8, 20:12, 20:17, 20:19, 20:22, 20:25, 21:7, 21:17, 22:2
**multiple** [2] - 14:8, 14:9
**mute** [3] - 5:19, 5:24, 6:1

**N**

**named** [1] - 9:21
**narrow** [1] - 9:3
**narrowed** [1] - 9:11
**narrowing** [1] - 9:7
**near** [1] - 8:15
**necessarily** [1] - 4:11
**necessary** [1] - 9:8

**need** [7] - 8:23, 9:4, 12:22, 14:25, 15:23, 17:15, 17:22
**needing** [1] - 6:9
**never** [3] - 10:5, 13:11, 13:13
**next** [5] - 11:18, 18:9, 19:3, 19:21, 21:8
**NORTHERN** [1] - 1:2
**Northern** [1] - 1:12
**Northwest** [1] - 2:7
**note** [2] - 4:12, 8:2
**notice** [4] - 3:23, 4:24, 8:22, 11:13
**number** [5] - 6:10, 6:12, 7:5, 8:15
**Number** [1] - 3:6

**O**

**object** [1] - 8:3
**objected** [2] - 4:25, 7:18
**objecting** [1] - 5:6
**objection** [6] - 5:6, 8:6, 8:12, 14:17, 15:19, 15:25
**objections** [6] - 5:2, 5:7, 5:10, 7:25, 16:18, 16:25
**obviously** [1] - 19:19
**OF** [2] - 1:2, 1:8
**one** [10] - 5:8, 6:7, 6:8, 6:18, 6:23, 9:19, 17:13, 18:15, 20:24
**ones** [1] - 16:10
**open** [1] - 20:25
**opportunity** [1] - 9:16
**order** [3] - 4:16, 15:24, 21:12
**outstanding** [1] - 18:15
**own** [3] - 15:16

**P**

**paper** [1] - 15:13
**part** [2] - 13:18, 14:20
**participation** [1] - 8:24
**particular** [2] - 12:15, 12:24
**parties** [9] - 4:3, 4:4, 5:18, 8:7, 8:18, 8:22, 8:24, 17:22, 18:21
**parties'** [1] - 3:23
**pasting** [1] - 6:15
**pay** [2] - 14:24, 15:7
**percolating** [1] - 4:13
**perhaps** [1] - 20:3

**period** [1] - 8:9
**periodic** [1] - 18:8
**Perrine** [1] - 2:9
**person** [2] - 11:1, 19:15
**pertinent** [3] - 11:10, 12:23, 13:16
**phone** [4] - 5:14, 5:15, 5:17, 5:18
**piece** [2] - 10:17, 13:17
**plaintiff** [5] - 3:7, 3:10, 9:21, 11:2, 11:3
**Plaintiff** [2] - 1:6, 2:2
**plaintiff's** [2] - 9:24, 10:10
**plaintiffs** [3] - 3:13, 4:2, 9:13
**plan** [2] - 11:14, 16:7
**plus** [3] - 10:4, 14:6
**point** [5] - 8:25, 9:8, 9:9, 10:18, 11:25
**portion** [1] - 11:12
**position** [2] - 7:2, 12:18
**possession** [2] - 6:21, 9:19
**possible** [2] - 4:10, 20:9
**practice** [1] - 9:8
**precertification** [1] - 15:2
**prefer** [1] - 8:17
**preferences** [1] - 8:16
**premature** [3] - 8:4, 14:14, 18:1
**prematurity** [1] - 15:19
**preparation** [1] - 16:15
**prepare** [1] - 4:22
**prepared** [1] - 3:1
**prevent** [1] - 10:24
**previously** [1] - 3:25
**primarily** [2] - 10:7, 14:17
**problem** [1] - 20:18
**proceed** [1] - 13:7
**proceedings** [1] - 22:21
**process** [1] - 14:3
**produce** [6] - 7:22, 10:22, 10:23, 11:5, 11:6, 15:4
**produced** [6] - 9:20, 13:21, 15:2, 17:14, 17:24, 17:25
**producing** [6] - 7:18, 11:6, 14:21, 14:23, 15:5, 17:16

**production** [7] - 10:2, 10:4, 11:9, 11:18, 11:20, 16:17
**productions** [2] - 11:17, 12:1
**progress** [2] - 16:20, 21:18
**promptly** [1] - 19:18
**proper** [2] - 10:24, 14:15
**proposed** [1] - 5:12
**provide** [3] - 7:25, 12:16, 16:12
**provided** [2] - 12:4, 12:9
**pull** [1] - 7:22
**purchase** [1] - 10:14
**push** [1] - 21:19
**putative** [1] - 15:7

**Q**

**quick** [3] - 5:17, 17:6, 18:25
**quickly** [4] - 8:1, 9:9, 18:19, 21:20
**quote** [1] - 8:4

**R**

**raised** [4] - 4:4, 5:13, 9:13, 11:25
**RAPIDS** [1] - 1:3
**Rapids** [1] - 2:10
**rather** [2] - 6:15, 9:9
**RDR** [2] - 2:15, 22:24
**reach** [1] - 19:24
**real** [1] - 18:25
**really** [8] - 4:23, 5:16, 6:12, 7:2, 7:19, 7:24, 8:6, 17:10
**reasons** [2] - 6:9, 14:11
**receive** [2] - 4:19, 18:16
**received** [1] - 6:17
**receiving** [1] - 6:18
**recollection** [1] - 16:10
**reconsider** [1] - 7:25
**recording** [5] - 2:15, 3:2, 22:6, 22:21, 22:23
**RECORDING** [1] - 1:1
**refusing** [1] - 4:25
**regard** [3] - 4:6, 10:25, 12:6
**regarding** [2] - 4:4, 15:7
**relate** [2] - 11:10,

13:12
**related** [3] - 9:24, 12:7, 12:13
**relates** [1] - 14:17
**relevance** [1] - 7:21
**relevant** [3] - 7:20, 11:4, 12:23
**request** [5] - 5:5, 6:15, 8:4, 17:12, 19:19
**requested** [8] - 4:18, 7:12, 7:14, 7:16, 9:19, 10:19, 10:21, 14:23
**requests** [21] - 4:22, 5:6, 6:10, 7:5, 7:6, 7:10, 8:3, 10:1, 10:4, 10:11, 10:15, 12:13, 12:14, 13:16, 13:19, 14:17, 15:25, 16:1, 16:6, 17:21, 17:23
**respond** [1] - 4:19
**response** [12] - 5:2, 8:3, 9:12, 12:9, 12:17, 14:5, 14:15, 15:10, 15:25, 16:2, 16:12, 19:25
**responses** [10] - 4:5, 4:20, 6:18, 7:17, 11:24, 14:8, 15:17, 16:17, 16:18, 17:1
**responsive** [2] - 5:1, 10:17
**rest** [1] - 11:24
**result** [2] - 5:3, 6:17
**review** [2] - 3:23, 16:8
**reviewed** [1] - 8:16
**reviewing** [2] - 12:10, 16:15
**RFPs** [2] - 4:24, 6:10
**Ridge** [1] - 2:4
**ripe** [2] - 4:11, 18:6
**road** [1] - 9:2
**Road** [1] - 2:7

### S

**s/Shelly** [1] - 22:24
**Sales** [6] - 10:8, 10:9, 10:12, 10:13, 10:16
**sanctionable** [1] - 17:1
**schedule** [1] - 8:7
**scheduling** [2] - 4:5, 19:11
**Scopelitis** [1] - 2:12
**Scott** [1] - 2:6
**scrap** [1] - 15:13
**search** [4] - 5:1, 5:12, 5:14, 18:17
**second** [4] - 7:12,

11:25, 13:18, 19:9
**see** [1] - 9:5
**Semmler** [3] - 2:15, 22:24, 22:24
**send** [1] - 21:10
**sense** [4] - 8:6, 8:25, 18:16, 20:2
**sent** [1] - 12:20
**separate** [3] - 15:22, 17:4, 21:12
**separately** [1] - 21:10
**serve** [2] - 7:3, 7:6
**served** [3] - 6:19, 6:25, 7:4
**set** [11] - 3:25, 7:12, 8:25, 9:1, 9:4, 10:8, 15:6, 16:16, 18:7, 19:19, 21:8
**setting** [1] - 21:12
**seven** [1] - 11:18
**several** [2] - 4:18, 12:14
**Shelly** [2] - 2:15, 22:24
**Shindler** [1] - 2:2
**shoot** [1] - 20:20
**short** [3] - 4:16, 13:22, 15:24
**significant** [2] - 11:14, 11:20
**similarly** [1] - 1:5
**Simmons** [1] - 2:9
**simply** [5] - 7:3, 7:5, 7:9, 10:12, 10:16
**single** [2] - 5:2, 8:9
**Sioux** [2] - 1:12, 2:16
**situated** [1] - 1:5
**situation** [1] - 4:12
**Sixth** [2] - 1:12, 2:15
**sketch** [1] - 16:21
**slower** [1] - 21:19
**sorry** [6] - 12:5, 13:4, 13:9, 19:10, 20:12, 20:15
**sort** [4] - 8:13, 8:17, 14:25, 18:15
**Southeast** [1] - 2:10
**SPEAKER** [1] - 6:2
**Specialized** [9] - 7:4, 9:22, 9:25, 10:2, 10:20, 10:21, 11:4, 11:10
**specific** [2] - 13:19, 17:23
**specifically** [1] - 18:10
**stand** [2] - 8:11, 14:21
**standing** [1] - 5:7
**start** [3] - 4:2, 9:17, 18:13
**STATES** [1] - 1:2
**States** [1] - 1:12

**static** [2] - 5:14, 5:15
**status** [11] - 3:22, 3:24, 3:25, 9:1, 9:5, 16:15, 18:8, 18:10, 20:2, 21:8, 22:1
**STATUS** [1] - 1:8
**Status** [1] - 1:11
**stay** [2] - 10:9
**still** [6] - 5:12, 5:14, 7:1, 18:6, 19:14, 19:17
**stipulated** [1] - 8:7
**stop** [1] - 5:16
**Street** [4] - 1:12, 2:10, 2:13, 2:15
**subject** [1] - 12:19
**substantial** [1] - 18:20
**Suite** [4] - 2:3, 2:6, 2:9, 2:13
**supplements** [1] - 14:9
**support** [5] - 12:4, 12:5, 12:6, 12:19
**system** [1] - 22:23

### T

**tacky** [1] - 17:8
**tar** [1] - 6:13
**target** [2] - 6:13, 6:16
**targeted** [3] - 7:12, 12:22, 15:14
**ten** [1] - 11:19
**terms** [4] - 5:12, 5:14, 14:10, 18:17
**they've** [1] - 7:17
**Third** [1] - 2:10
**third** [1] - 10:8
**thorough** [1] - 4:22
**thoroughly** [1] - 4:21
**thoughts** [2] - 19:1, 20:1
**three** [1] - 9:13
**threshold** [1] - 7:21
**thumbnail** [2] - 16:21, 17:6
**ticky** [1] - 17:7
**timeframe** [1] - 11:15
**timeframes** [1] - 17:18
**timely** [1] - 17:17
**today** [7] - 4:6, 4:11, 9:3, 18:12, 19:24, 20:4, 21:15
**together** [1] - 14:7
**tolerated** [1] - 17:2
**ton** [1] - 17:10
**top** [1] - 16:10
**touch** [1] - 6:6
**Transcribed** [1] - 2:15
**TRANSCRIBED** [1] -

1:1
**transcript** [3] - 3:1, 22:6, 22:21
**TRANSCRIPT** [1] - 1:8
**transcripts** [3] - 7:14, 12:1, 15:15
**trial** [1] - 7:16
**tried** [3] - 6:12, 6:13, 6:16
**trucks** [1] - 10:14
**true** [2] - 5:5, 5:10
**try** [2] - 9:3, 9:6
**trying** [2] - 11:3, 18:6
**turned** [1] - 14:2
**twenty** [1] - 20:13
**two** [1] - 19:20
**type** [2] - 8:22, 12:15

### U

**under** [3] - 8:6, 9:24, 10:23
**unfortunately** [2] - 4:23, 6:17
**UNIDENTIFIED** [1] - 6:2
**UNITED** [1] - 1:2
**United** [1] - 1:11
**up** [3] - 4:15, 5:9, 8:15

### V

**vein** [1] - 15:5
**versus** [1] - 3:6
**VISSER** [2] - 2:8, 3:19
**Visser** [1] - 3:19
**volume** [1] - 15:17
**VON** [19] - 2:5, 3:9, 4:8, 4:15, 5:21, 5:23, 6:1, 6:5, 15:11, 18:14, 18:23, 19:6, 19:8, 19:10, 19:14, 20:3, 21:3, 21:5, 21:23
**von** [11] - 3:10, 4:7, 5:20, 11:23, 11:25, 15:10, 18:13, 19:4, 20:1, 21:1, 21:22
**vs** [1] - 1:7

### W

**waiting** [7] - 5:9, 5:12, 5:14, 7:1, 9:9, 19:15, 19:17
**walk** [1] - 5:4
**Washington** [1] - 2:7
**week** [7] - 5:4, 12:9, 19:14, 19:21, 20:5, 20:6, 20:17

**weekend** [1] - 20:14
**weeks** [2] - 19:20, 20:4
**Weese** [1] - 2:3
**weigh** [1] - 17:11
**West** [2] - 2:4, 2:13
**wholesale** [2] - 12:7, 12:21
**wide** [1] - 20:25
**willing** [1] - 11:2
**withhold** [1] - 11:3
**withholding** [1] - 15:21
**written** [3] - 5:9, 16:12, 16:18

### Y

**yesterday** [1] - 11:21