**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually
and on behalf of all others
similarly situated,

      Plaintiff,

  vs.                       No. C24-0082-CJW

CRST EXPEDITED, INC., et al.,     TRANSCRIPT OF
                            STATUS CONFERENCE

      Defendants.
_____/

      The Status Conference held before the Honorable Kelly K.E. Mahoney, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, May 12, 2025, commencing at 11:30 a.m.

```
APPEARANCES:

For the Plaintiff:      J. BARTON GOPLERUD, ESQ.
                        Shindler, Anderson,
                          Goplerud & Weese
                        Suite 100
                        5015 Grand Ridge Drive
                        West Des Moines, IA 50265-5749

                        MICHAEL VON KLEMPERER, ESQ.
                        Fegan Scott
                        Suite 100
                        1763 Columbia Road Northwest
                        Washington, DC 20009

For the Defendants:     KEVIN J. VISSER, ESQ.
                        Simmons, Perrine, Moyer & Bergman
                        Suite 1200
                        115 Third Street Southeast
                        Cedar Rapids, IA 52401

                        ANGELA S. CASH, ESQ.
                        ANDREW J. IRELAND, ESQ.
                        JAMES H. HANSON, ESQ.
                        Scopelitis, Garvin, Light,
                          Hanson & Feary
                        Suite 1400
                        10 West Market Street
                        Indianapolis, IN 46204

Transcribed from        Shelly Semmler, RDR, CRR
digital recording by:   320 Sixth Street
                        Sioux City, IA 51101
                        (712) 233-3846
```

(The following transcript was prepared from a digital recording and commences when the recorder was turned on.)

\* \* \* \*

P R O C E E D I N G S

THE COURT:  -- versus CRST Expedited, et al., Case Number 24-CV-82.  Who do we have on behalf of plaintiff?

MR. VON KLEMPERER:  Good morning, Your Honor.  This is Mike von Klemperer for the plaintiffs.

THE COURT:  Good morning.  And for --

MR. GOPLERUD:  Good morning, Your Honor.

THE COURT:  Yes.  Go ahead.

MR. GOPLERUD:  Bart Goplerud also for the plaintiffs.

THE COURT:  All right.  And for defendant -- or defendants.

MS. CASH:  Good morning, Your Honor.  Angela Cash, and Andrew Ireland is with me.  Mr. Hanson may also be joining.

MR. VISSER:  This is Kevin Visser.  I'm also here, Your Honor.

THE COURT:  All right.  We're here for a status conference in this matter.  I did review your joint submission filed as document 72.  Defendants are asking for an additional 30 days for substantial completion of

discovery. I guess what's plaintiff's position on that?

MR. VON KLEMPERER: Yes, Your Honor. The plaintiff can agree to the extension, but we have a few concerns.

As we note in our notice, the parties are in the middle of negotiating ESI protocol. We largely agree on custodians, and we're in the process now of negotiating search terms. And we have a meet-and-confer scheduled for later this week to follow up on that.

In terms of the extension of the substantial completion deadline, we would just like an assurance from the defendants that they will continue rolling production throughout that entire period. Obviously we'd like to avoid a scenario where we receive, you know, essentially a document dump on the last day.

And then the second concern we have with extending that deadline is that, you know, we are -- as I mentioned, we're negotiating search terms. There are some search terms the defendants have proposed and that are agreed upon, that they've, you know -- they've agreed to run. And we would ask that they apply those search terms to the custodial files they've collected and begin that final review process now as we're negotiating search terms. Of course, if we later agree to add additional search terms, that may increase the number of documents

in the review set. But we don't want their review to be stalled or not even begin as we're conducting that negotiation process.

So what we -- I've seen in other cases is a party will say we can't even begin the review process until we have resolution on every disagreement on the scope of the search terms, for example.

PHONE OPERATOR: Jim Hanson joined the meeting.

THE COURT: Hello, Mr. Hanson. Judge Mahoney. We started without you.

Counsel, you can continue.

MR. VON KLEMPERER: Okay. Thank you. So we would just like to avoid that scenario. And if they can provide assurances that that's agreeable to them, then we're fine with the 30-day extension.

THE COURT: And who was just speaking? Was that Mr. von Klemperer or Mr. Goplerud?

MR. VON KLEMPERER: That was me, Mr. Von Klemperer, Your Honor.

THE COURT: I'm sorry. Mr. Who?

MR. VON KLEMPERER: Mr. Von Klemperer.

THE COURT: Okay. Thank you.

So any opposition to that on behalf of defendants?

MS. CASH: Thank you, Your Honor. We don't have any concern and certainly intend to continue

producing documents as they are identified and collected, so no concern about the rolling production.

With the ESI search process, I do have one concern. We've -- we've -- we proposed terms. Plaintiff responded to those terms, made proposed modifications, and we sent back one more set. So I think we're pretty close on that.

But in addition to that, plaintiffs proposed 26 generally single-word terms or two-word terms untethered to any request such as retention, attrition, turnover, those sorts of things. And we've responded to that and suggested that we will not search for those terms.

And so I think we need to have resolution on their proposed additional terms before we do the initial run. This search protocol is going to yield an extremely high number of responses, I believe. And to add in 26 terms that are single or, you know, maybe two- to three-word phrases would substantially increase the cost and burden to us. So we would like to get resolution with the plaintiffs on that before we do the initial search.

We certainly understand that there will be further search terms, further refinement of the terms, and negotiations if something is overly broad or perhaps too narrow. But to add those terms in later would be duplicative and at a substantial cost both in time and

expense to the defendant.

So we would want to have a resolution with the plaintiffs which we can further discuss with them in our scheduled call before we begin the actual search of the agreed-upon 26 custodians' email boxes and documents.

THE COURT: Okay. I guess to actually just run the search for terms you have agreed to on the 26 custodians, how much does it cost just to run the search without reviewing -- to get a hit list?

MS. CASH: Well, it's done by an outside vendor. The volume of these mailboxes I don't have, but it's 26 mailboxes for 5, probably 6 years total. So just to get them into the system to be reviewed would be probably at a cost of over a hundred thousand dollars. And so the additional cost for those 26 terms, I can't tell you exactly what that would be, but it's not insubstantial.

THE COURT: Okay. And I guess I'm just trying to understand. Well, I guess, Mr. von Klemperer, what's your response to all of this?

MR. VON KLEMPERER: I have two responses, Your Honor. I think for -- you know, my understanding of the process is they will collect the custodial files from these custodians, input them into their ESI software, and then they will run search terms to narrow the universe of

documents that need to be reviewed.

If there are search terms that they themselves have proposed and they agree are appropriate, we would like that -- those search terms to be run and the review to begin immediately.

It's true that we have proposed additional terms, and that's, you know, another issue that I wanted to discuss with the Court today. We understand that search term negotiations are an iterative process. We've proposed some terms. They have some concerns over their scope. I agree that some of them will likely need to be narrowed.

An issue that we're running into, Your Honor, is we've requested that they provide hit counts for those terms or that we have some data points from which we can have those negotiations. And they have simply refused to produce hit counts. And so without that basic information, it's very hard for us to even have an informed discussion with them on what needs to be changed or narrowed, what's appropriate.

We've also asked that they provide hit counts for the entire universe of documents but also on a custodian-by-custodian basis because for a particular individual, a search term may not be overly burdensome, and for another individual it may be, just depending on

what documents they have in their possession.

And so we would ask the Court to essentially instruct the defendants to provide these hit counts so we can have that informed discussion. The process of actually running a hit count report which is all we're asking for at this point is -- in my understanding is very easy and not very costly. Any modern ESI software can produce those reports in a matter of minutes. And so we -- you know, we would ask that they provide those reports as a first step in that negotiation.

THE COURT: Well, and that was, Miss Cash, what I was going to ask is you're talking about the cost of loading the documents in and doing the searches. But regardless of what search terms you guys end up agreeing to or not agreeing to, that information has to get loaded. That seems like that could happen sooner rather than later or not, I guess?

MS. CASH: Absolutely. And we just agreed to the 26 custodians, so we're in the process of getting that done. And we certainly agreed to provide the hit counts, Your Honor. I'm not sure where the disconnect was between counsel. But we've certainly agreed to provide that, don't have any objection to it and anticipated doing that all along.

THE COURT: Okay. So it sounds like that's not

an issue.  Sure.  Go ahead.

MR. VON KLEMPERER:  Well, Your Honor, that's -- that's news to me.  I'm just reviewing my correspondence with Miss Cash from last Friday where she said they outright rejected our search terms and are not agreeing to provide hit counts on them.

So I understand that they're agreeing to provide hit counts on the terms that they themselves developed.  But it's my understanding from our correspondence that she was not agreeing to provide hit counts on the plaintiff's additional proposed terms.  So if they're agreeing to that, then that's great.  We're happy to hear that.

THE COURT:  I'm just --

MS. CASH:  We aren't agreeing to search for -- I'm sorry.

THE COURT:  No.  Go ahead.  You can finish, Miss Cash.

MS. CASH:  All right.  Thank you.  You know, what we rejected, Your Honor, was the plaintiff's proposed search terms like attrition, turnover, those things, and to provide hit counts on those.  We did agree -- or we did refuse to provide the -- or run the search on those terms.  That is correct.

THE COURT:  Okay.  Well, and this is -- sometimes things get lost in writing which is why it's

helpful -- the more you guys can actually talk on the phone that's helpful to make sure you're all on the same page.

So I guess, Miss Cash, what specifically, I guess -- you've given me generally you're concerned about the cost and things. But how costly would it be to just run a hit count or get a hit count on the terms that you -- your clients have proposed?

MS. CASH: Sorry, Your Honor. I can't -- I can't answer that. I can get that information and supplement that and have a further discussion with the plaintiff's counsel about that, but I just don't know the answer today.

THE COURT: Okay. How about -- that would probably be a good idea. It sounds like, too, the parties are talking yet this week about search terms and such. Hopefully you can get those resolved.

I guess I don't know, Mr. von Klemperer, at this point what more specifically -- I guess are you satisfied with what defendants have said, or do you want more assurances to agree to the 30-day extension?

MR. VON KLEMPERER: Well, Your Honor, it sounds like Miss Cash will be looking into the cost of providing a hit count report on the terms that she herself proposed but will not be looking into that on the terms that the

plaintiffs have proposed. You know, we'd like the report. I don't think that running the report is particularly expensive. These are produced in litigation all the time as a regular matter of negotiation. So it's going to be very difficult for us to have those negotiations over plaintiff's terms without even having a hit count report.

But, I mean, in terms of the assurance that the productions will -- will continue on a rolling basis, we're happy to hear that. Miss Cash did say that they won't run -- you know, they won't even begin to review until the resolution over plaintiff's terms has been -- you know, until there's a resolution of plaintiff's terms. I'm not sure how quickly that resolution's gonna -- gonna come. I mean, we're having that call on Friday. If we can't reach a resolution, it's possible that that may result in motion practice which will further delay the process. I think that at a bare minimum they should be reviewing the documents that hit on the terms that they themselves have proposed, and that process should begin immediately.

THE COURT: All right. I think it's a little premature for me really to give you much more guidance on that. I do think that it's completely reasonable to produce hit counts. I think, frankly, it's not going to

be that expensive to get hit counts on the terms that are agreed to and to continue to do that rather than waiting until all terms are agreed on to do a hit count and to do a search for that information. Probably would be -- I understand the concerns with not wanting to review things once and then have to go back and review again once there's additional terms agreed to. But to the extent, I guess, defendants can review -- start reviewing things, that's obviously good.

I'm just going to tell you straight up. I mean, this is the kind of case we're going to need to continue to have status conferences because even today, I mean, you guys aren't on the same page of what you're agreeing to or not agreeing to. Everything -- there seems to be surprises in that. So communication can certainly improve between counsel. I'm happy to be involved to the extent I need to be. We will continue to have status conferences to make sure you guys are on track.

But I'll just tell you when it comes down to this, if you're not able to reach agreement on things, that's fine. Contact chambers. We'll have a status conference to talk it through before you file any motions. Hopefully we can narrow the issue or perhaps resolve it. If there's motion practice, it's going to be at least probably three weeks before you get a ruling, so

certainly that slows it down.

So I just encourage you strongly to work it out yourselves. But if you do need to involve the Court if you can't reach an agreement, then request a status conference, and we'll talk it through before you file any formal motions.

So I will extend the substantial completion deadline by 30 days to June 30. What else do we -- or sorry, June 20, 2025.

What else do we need to talk about, Mr. von Klemperer?

MR. VON KLEMPERER: Your Honor, the only other thing that I wanted to note for the Court was you may recall that in the last status conference plaintiffs had requested dates for the deposition of CRST executive Mike Gannon. We had made that request, I believe, at the very end of March, proposing dates in early April. The Court during the April 4 status conference encouraged the defendants to push their client to get dates to us as soon as possible.

Unfortunately, defendants weren't able to offer Mr. Gannon for a deposition until the end of May. I -- we're hopeful that this is a one-time issue related to Mr. Gannon personally. Obviously having a two-month delay from the request for a deposition and the actual

scheduling of that deposition is concerning.

So we just wanted -- we just want to provide that additional information as follow-up to the Court because it was discussed during the last status conference.

THE COURT: Okay. Anything else, Mr. von Klemperer?

MR. VON KLEMPERER: Nothing else, Your Honor. I think it would be probably helpful to schedule the next follow-up conference.

THE COURT: Sure. And before we get to that, anything else you want to talk about, Miss Cash?

MS. CASH: No, Your Honor. Thank you.

THE COURT: All right. I guess how long do you think you guys -- when would make sense to have the next status conference? Do you want to have it after the substantial completion deadline, bef -- before the substantial completion deadline? I guess, Mr. von Klemperer, what are your thoughts?

MR. VON KLEMPERER: Well, Your Honor, we -- the parties have a meet-and-confer scheduled for Friday. I imagine there may be some follow-up work one or both sides need to take the following week. So perhaps the week of May 26 would be a good time for a conference if that works for the Court?

THE COURT: Sure. I actually might --

MR. VON KLEMPERER: We may have some dispute, though, of search terms at that point.

THE COURT: Sure. I actually might look at actually instead the week of June 2. I guess does that -- any concerns with that, Mr. von Klemperer?

MR. VON KLEMPERER: No. That works as well. Thank you.

THE COURT: Okay. Miss Cash?

MS. CASH: That's fine, Your Honor.

THE COURT: All right. And as I say that, let me pull up the calendar. How about -- how about either Monday or Tuesday, June 2 or 3? We could do 11:30 again?

MR. VON KLEMPERER: The 3rd works well for me, Your Honor. This is Mike von Klemperer.

THE COURT: Okay. Miss Cash?

MS. CASH: The 3rd is fine, Your Honor. Thank you.

THE COURT: Okay. We will have our next status conference then. That is Tuesday, June 3, at 11:30 p.m.

MS. CASH: a.m.? (Unintelligible).

THE COURT: Sorry. 11:30 a.m. Yes. Yes. Yeah. Thank you.

MS. CASH: I'm a night owl, but most people don't want to be up with me.

THE COURT: Yeah. No. Thank you for that.

All right.  Anything else, Mr. von Klemperer?

MR. VON KLEMPERER:  Not from the plaintiff. Thank you, Your Honor.

THE COURT:  And Miss Cash.

MS. CASH:  Nothing.  Thank you.

THE COURT:  All right.  That will conclude this hearing.  Thank you.

(The foregoing hearing was concluded at 11:49 a.m.)

* * * *

(This concludes the transcript of the audio recording.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital recording system.

<u>    S/Shelly Semmler        </u>         <u>6-6-25</u>
    Shelly Semmler, RDR, CRR          Date

**1**

**10** [1] - 2:14
**100** [2] - 2:3, 2:6
**115** [1] - 2:10
**11:30** [4] - 1:13, 16:12, 16:19, 16:21
**11:49** [1] - 17:9
**12** [1] - 1:13
**1200** [1] - 2:9
**1400** [1] - 2:14
**1763** [1] - 2:7

**2**

**2** [2] - 16:4, 16:12
**20** [1] - 14:9
**20009** [1] - 2:7
**2025** [2] - 1:13, 14:9
**233-3846** [1] - 2:17
**24-CV-82** [1] - 3:6
**26** [8] - 6:8, 6:16, 7:5, 7:7, 7:12, 7:15, 9:19, 15:23

**3**

**3** [2] - 16:12, 16:19
**30** [3] - 3:25, 14:8
**30-day** [2] - 5:15, 11:21
**320** [2] - 1:12, 2:16
**3rd** [2] - 16:13, 16:16

**4**

**4** [1] - 14:18
**46204** [1] - 2:15

**5**

**5** [1] - 7:12
**5015** [1] - 2:4
**50265-5749** [1] - 2:4
**51101** [1] - 2:17
**52401** [1] - 2:10

**6**

**6** [1] - 7:12
**6-6-25** [1] - 17:24

**7**

**712** [1] - 2:17
**72** [1] - 3:24

**A**

**a.m** [4] - 1:13, 16:20, 16:21, 17:9
**ability** [1] - 17:22
**able** [2] - 13:20, 14:21
**above-entitled** [1] - 17:22
**absolutely** [1] - 9:18
**actual** [2] - 7:4, 14:25
**add** [3] - 4:24, 6:16, 6:24
**addition** [1] - 6:8
**additional** [8] - 3:25, 4:24, 6:14, 7:15, 8:6, 10:11, 13:7, 15:3
**agree** [7] - 4:3, 4:6, 4:24, 8:3, 8:11, 10:22, 11:21
**agreeable** [1] - 5:14
**agreed** [10] - 4:20, 7:5, 7:7, 9:18, 9:20, 9:22, 13:2, 13:3, 13:7
**agreed-upon** [1] - 7:5
**agreeing** [9] - 9:14, 9:15, 10:5, 10:7, 10:10, 10:11, 10:14, 13:13, 13:14
**agreement** [2] - 13:20, 14:4
**ahead** [3] - 3:12, 10:1, 10:16
**al** [2] - 1:8, 3:5
**Anderson** [1] - 2:2
**Andrew** [1] - 3:18
**ANDREW** [1] - 2:12
**Angela** [1] - 3:17
**ANGELA** [1] - 2:11
**answer** [2] - 11:10, 11:13
**anticipated** [1] - 9:24
**APPEARANCES** [1] - 2:1
**apply** [1] - 4:21
**appropriate** [2] - 8:3, 8:20
**April** [2] - 14:17, 14:18
**assurance** [2] - 4:11, 12:8
**assurances** [2] - 5:14, 11:21
**attrition** [2] - 6:10, 10:20
**audio** [1] - 17:11
**avoid** [2] - 4:14, 5:13

**B**

**bare** [1] - 12:18
**Bart** [1] - 3:13
**BARTON** [1] - 2:2
**basic** [1] - 8:17
**basis** [2] - 8:23, 12:9
**bef** [1] - 15:16
**begin** [7] - 4:22, 5:2, 5:5, 7:4, 8:5, 12:11, 12:21
**behalf** [3] - 1:4, 3:6, 5:23
**Bergman** [1] - 2:9
**best** [1] - 17:22
**between** [2] - 9:22, 13:16
**boxes** [1] - 7:5
**broad** [1] - 6:23
**burden** [1] - 6:18
**burdensome** [1] - 8:24

**C**

**C24-0082-CJW** [1] - 1:7
**calendar** [1] - 16:11
**case** [1] - 13:11
**Case** [1] - 3:6
**cases** [1] - 5:4
**Cash** [11] - 3:18, 9:11, 10:4, 10:17, 11:4, 11:23, 12:10, 15:11, 16:8, 16:15, 17:4
**CASH** [14] - 2:11, 3:17, 5:24, 7:10, 9:18, 10:14, 10:18, 11:9, 15:12, 16:9, 16:16, 16:20, 16:23, 17:5
**CEDAR** [1] - 1:3
**Cedar** [1] - 2:10
**certainly** [6] - 5:25, 6:21, 9:20, 9:22, 13:15, 14:1
**CERTIFICATE** [1] - 17:19
**certify** [1] - 17:20
**chambers** [1] - 13:21
**changed** [1] - 8:19
**Chief** [1] - 1:11
**City** [2] - 1:12, 2:17
**client** [1] - 14:19
**clients** [1] - 11:8
**close** [1] - 6:6
**collect** [1] - 7:23
**collected** [2] - 4:22, 6:1
**Columbia** [1] - 2:7
**commences** [1] - 3:2
**commencing** [1] - 1:13
**communication** [1] - 13:15
**completely** [1] - 12:24
**completion** [5] - 3:25,
4:11, 14:7, 15:16, 15:17
**concern** [4] - 4:16, 5:25, 6:2, 6:3
**concerned** [1] - 11:5
**concerning** [1] - 15:1
**concerns** [4] - 4:4, 8:10, 13:5, 16:5
**conclude** [1] - 17:6
**concluded** [1] - 17:9
**concludes** [1] - 17:11
**conducting** [1] - 5:2
**confer** [2] - 4:8, 15:20
**conference** [10] - 3:23, 13:21, 14:5, 14:14, 14:18, 15:4, 15:9, 15:15, 15:23, 16:19
**CONFERENCE** [1] - 1:8
**Conference** [1] - 1:11
**conferences** [2] - 13:12, 13:18
**contact** [1] - 13:21
**continue** [7] - 4:12, 5:11, 5:25, 12:9, 13:2, 13:11, 13:17
**correct** [2] - 10:23, 17:20
**correspondence** [2] - 10:3, 10:9
**cost** [8] - 6:18, 6:25, 7:8, 7:14, 7:15, 9:12, 11:5, 11:23
**costly** [2] - 9:7, 11:6
**counsel** [4] - 5:11, 9:22, 11:12, 13:16
**count** [6] - 9:5, 11:7, 11:24, 12:7, 13:3
**counts** [11] - 8:14, 8:17, 8:21, 9:3, 9:21, 10:6, 10:8, 10:10, 10:21, 12:25, 13:1
**course** [1] - 4:24
**COURT** [32] - 1:2, 3:5, 3:10, 3:12, 3:15, 3:22, 5:9, 5:16, 5:20, 5:22, 7:6, 7:18, 9:11, 9:25, 10:13, 10:16, 10:24, 11:14, 12:22, 15:5, 15:10, 15:13, 15:25, 16:3, 16:8, 16:10, 16:15, 16:18, 16:21, 16:25, 17:4, 17:6
**Court** [8] - 1:12, 8:8, 9:2, 14:3, 14:13, 14:17, 15:3, 15:24
**Courthouse** [1] - 1:12
**CRR** [2] - 2:16, 17:24
**CRST** [3] - 1:8, 3:5, 14:15
**custodial** [2] - 4:22, 7:23
**custodian** [2] - 8:23
**custodian-by-custodian** [1] - 8:23
**custodians** [4] - 4:7, 7:8, 7:24, 9:19
**custodians'** [1] - 7:5

**D**

**data** [1] - 8:15
**Date** [1] - 17:24
**dates** [3] - 14:15, 14:17, 14:19
**days** [2] - 3:25, 14:8
**DC** [1] - 2:7
**deadline** [5] - 4:11, 4:17, 14:7, 15:16, 15:17
**defendant** [2] - 3:15, 7:1
**Defendants** [2] - 1:9, 2:8
**defendants** [10] - 3:16, 3:24, 4:12, 4:19, 5:23, 9:3, 11:20, 13:8, 14:19, 14:21
**delay** [2] - 12:18, 14:25
**deposition** [4] - 14:15, 14:22, 14:25, 15:1
**Des** [1] - 2:4
**developed** [1] - 10:8
**difficult** [1] - 12:5
**DIGITAL** [1] - 1:1
**digital** [4] - 2:16, 3:1, 17:21, 17:23
**disagreement** [1] - 5:6
**disconnect** [1] - 9:21
**discovery** [1] - 4:1
**discuss** [2] - 7:3, 8:8
**discussed** [1] - 15:4
**discussion** [3] - 8:19, 9:4, 11:11
**dispute** [1] - 16:1
**DISTRICT** [2] - 1:2, 1:2
**District** [2] - 1:12
**DIVISION** [1] - 1:3
**document** [2] - 3:24, 4:15
**documents** [8] - 4:25, 6:1, 7:5, 8:1, 8:22, 9:1, 9:13, 12:19
**dollars** [1] - 7:14
**done** [2] - 7:10, 9:20
**down** [2] - 13:19, 14:1

**Drive** [1] - 2:4
**dump** [1] - 4:15
**duplicative** [1] - 6:25
**during** [2] - 14:18, 15:4

## E

**early** [1] - 14:17
**easy** [1] - 9:7
**either** [1] - 16:11
**email** [1] - 7:5
**encourage** [1] - 14:2
**encouraged** [1] - 14:18
**end** [3] - 9:14, 14:17, 14:22
**entire** [2] - 4:13, 8:22
**entitled** [1] - 17:22
**ESI** [4] - 4:6, 6:3, 7:24, 9:7
**ESQ** [6] - 2:2, 2:5, 2:8, 2:11, 2:12, 2:12
**essentially** [2] - 4:14, 9:2
**et** [2] - 1:8, 3:5
**exactly** [1] - 7:16
**example** [1] - 5:7
**executive** [1] - 14:15
**Expedited** [2] - 1:8, 3:5
**expense** [1] - 7:1
**expensive** [2] - 12:3, 13:1
**extend** [1] - 14:7
**extending** [1] - 4:16
**extension** [4] - 4:3, 4:10, 5:15, 11:21
**extent** [2] - 13:7, 13:17
**extremely** [1] - 6:15

## F

**Feary** [1] - 2:13
**Federal** [1] - 1:12
**Fegan** [1] - 2:6
**few** [1] - 4:3
**file** [2] - 13:22, 14:5
**filed** [1] - 3:24
**files** [2] - 4:22, 7:23
**final** [1] - 4:23
**fine** [4] - 5:15, 13:21, 16:9, 16:16
**finish** [1] - 10:16
**first** [1] - 9:10
**follow** [4] - 4:9, 15:3, 15:9, 15:21
**follow-up** [3] - 15:3, 15:9, 15:21

**following** [2] - 3:1, 15:22
**FOR** [1] - 1:2
**foregoing** [2] - 17:8, 17:20
**formal** [1] - 14:6
**frankly** [1] - 12:25
**Friday** [3] - 10:4, 12:16, 15:20
**FROM** [1] - 1:1

## G

**Gannon** [3] - 14:16, 14:22, 14:24
**Garvin** [1] - 2:13
**generally** [2] - 6:9, 11:5
**given** [2] - 11:5, 17:23
**gonna** [2] - 12:15
**GOPLERUD** [3] - 2:2, 3:11, 3:13
**Goplerud** [3] - 2:3, 3:13, 5:17
**Grand** [1] - 2:4
**great** [1] - 10:12
**guess** [13] - 4:1, 7:6, 7:18, 7:19, 9:17, 11:4, 11:18, 11:19, 13:8, 15:13, 15:17, 16:4
**guidance** [1] - 12:23
**guys** [5] - 9:14, 11:1, 13:13, 13:18, 15:14

## H

**HANSON** [1] - 2:12
**Hanson** [4] - 2:13, 3:18, 5:8, 5:9
**happy** [3] - 10:12, 12:10, 13:16
**hard** [1] - 8:18
**HARLEY** [1] - 1:4
**hear** [2] - 10:12, 12:10
**hearing** [2] - 17:7, 17:8
**held** [1] - 1:11
**hello** [1] - 5:9
**helpful** [3] - 11:1, 11:2, 15:8
**herself** [1] - 11:24
**high** [1] - 6:15
**hit** [19] - 7:9, 8:14, 8:17, 8:21, 9:3, 9:5, 9:20, 10:6, 10:7, 10:10, 10:21, 11:6, 11:7, 11:24, 12:7, 12:19, 12:25, 13:1, 13:3

**Honor** [22] - 3:8, 3:11, 3:17, 3:21, 4:2, 5:19, 5:24, 7:22, 8:13, 9:21, 10:2, 10:19, 11:9, 11:22, 14:12, 15:7, 15:12, 15:19, 16:9, 16:14, 16:16, 17:3
**Honorable** [1] - 1:11
**hopeful** [1] - 14:23
**hopefully** [2] - 11:17, 13:23
**hundred** [1] - 7:14

## I

**IA** [3] - 2:4, 2:10, 2:17
**idea** [1] - 11:15
**identified** [1] - 6:1
**imagine** [1] - 15:21
**immediately** [2] - 8:5, 12:21
**improve** [1] - 13:16
**IN** [2] - 1:2, 2:15
**INC** [1] - 1:8
**increase** [2] - 4:25, 6:18
**Indianapolis** [1] - 2:15
**individual** [2] - 8:24, 8:25
**individually** [1] - 1:4
**information** [5] - 8:18, 9:15, 11:10, 13:4, 15:3
**informed** [2] - 8:19, 9:4
**initial** [2] - 6:14, 6:20
**input** [1] - 7:24
**instead** [1] - 16:4
**instruct** [1] - 9:3
**insubstantial** [1] - 7:17
**intend** [1] - 5:25
**involve** [1] - 14:3
**involved** [1] - 13:16
**IOWA** [1] - 1:2
**Iowa** [2] - 1:12, 1:13
**Ireland** [1] - 3:18
**IRELAND** [1] - 2:12
**issue** [5] - 8:7, 8:13, 10:1, 13:23, 14:23
**iterative** [1] - 8:9

## J

**JAMES** [1] - 2:12
**Jim** [1] - 5:8
**joined** [1] - 5:8
**joining** [1] - 3:19
**joint** [1] - 3:23

**Judge** [2] - 1:11, 5:9
**June** [5] - 14:8, 16:4, 16:12, 16:19

## K

**K.E** [1] - 1:11
**KELCHNER** [1] - 1:4
**Kelly** [1] - 1:11
**KEVIN** [1] - 2:8
**Kevin** [1] - 3:20
**kind** [1] - 13:11
**KLEMPERER** [16] - 2:5, 3:8, 4:2, 5:12, 5:18, 5:21, 7:21, 10:2, 11:22, 14:12, 15:7, 15:19, 16:1, 16:6, 16:13, 17:2
**Klemperer** [12] - 3:9, 5:17, 5:19, 5:21, 7:19, 11:18, 14:11, 15:6, 15:18, 16:5, 16:14, 17:1

## L

**largely** [1] - 4:6
**last** [4] - 4:15, 10:4, 14:14, 15:4
**least** [1] - 13:24
**Light** [1] - 2:13
**likely** [1] - 8:11
**limitation** [1] - 17:23
**list** [1] - 7:9
**litigation** [1] - 12:3
**loaded** [1] - 9:16
**loading** [1] - 9:13
**look** [1] - 16:3
**looking** [2] - 11:23, 11:25
**lost** [1] - 10:25

## M

**Magistrate** [1] - 1:11
**Mahoney** [2] - 1:11, 5:9
**mailboxes** [2] - 7:11, 7:12
**March** [1] - 14:17
**Market** [1] - 2:14
**matter** [4] - 3:23, 9:8, 12:4, 17:22
**mean** [4] - 12:8, 12:15, 13:10, 13:12
**meet** [2] - 4:8, 15:20
**meet-and-confer** [2] - 4:8, 15:20
**meeting** [1] - 5:8
**mentioned** [1] - 4:18

**MICHAEL** [1] - 2:5
**middle** [1] - 4:6
**might** [2] - 15:25, 16:3
**Mike** [3] - 3:9, 14:15, 16:14
**minimum** [1] - 12:19
**minutes** [1] - 9:8
**Miss** [10] - 9:11, 10:4, 10:17, 11:4, 11:23, 12:10, 15:11, 16:8, 16:15, 17:4
**modern** [1] - 9:7
**modifications** [1] - 6:5
**Moines** [1] - 2:4
**Monday** [1] - 16:12
**month** [1] - 14:24
**morning** [4] - 3:8, 3:10, 3:11, 3:17
**most** [1] - 16:23
**motion** [2] - 12:17, 13:24
**motions** [2] - 13:22, 14:6
**Moyer** [1] - 2:9
**MR** [18] - 3:8, 3:11, 3:13, 3:20, 4:2, 5:12, 5:18, 5:21, 7:21, 10:2, 11:22, 14:12, 15:7, 15:19, 16:1, 16:6, 16:13, 17:2
**MS** [13] - 3:17, 5:24, 7:10, 9:18, 10:14, 10:18, 11:9, 15:12, 16:9, 16:16, 16:20, 16:23, 17:5

## N

**narrow** [3] - 6:24, 7:25, 13:23
**narrowed** [2] - 8:12, 8:20
**need** [8] - 6:13, 8:1, 8:11, 13:11, 13:17, 14:3, 14:10, 15:22
**needs** [1] - 8:19
**negotiating** [4] - 4:6, 4:7, 4:18, 4:23
**negotiation** [3] - 5:3, 9:10, 12:4
**negotiations** [4] - 6:23, 8:9, 8:16, 12:6
**news** [1] - 10:3
**next** [3] - 15:8, 15:14, 16:18
**night** [1] - 16:23
**NORTHERN** [1] - 1:2
**Northern** [1] - 1:12
**Northwest** [1] - 2:7
**note** [2] - 4:5, 14:13

**nothing** [2] - 15:7, 17:5
**notice** [1] - 4:5
**number** [2] - 4:25, 6:16
**Number** [1] - 3:6

### O

**objection** [1] - 9:23
**obviously** [3] - 4:13, 13:9, 14:24
**OF** [2] - 1:2, 1:8
**offer** [1] - 14:21
**once** [2] - 13:6
**one** [4] - 6:3, 6:6, 14:23, 15:21
**one-time** [1] - 14:23
**OPERATOR** [1] - 5:8
**opposition** [1] - 5:23
**outright** [1] - 10:5
**outside** [1] - 7:10
**overly** [2] - 6:23, 8:24
**owl** [1] - 16:23

### P

**p.m** [1] - 16:19
**page** [2] - 11:3, 13:13
**particular** [1] - 8:23
**particularly** [1] - 12:3
**parties** [3] - 4:5, 11:16, 15:20
**party** [1] - 5:4
**people** [1] - 16:23
**perhaps** [3] - 6:23, 13:23, 15:22
**period** [1] - 4:13
**Perrine** [1] - 2:9
**personally** [1] - 14:24
**phone** [1] - 11:2
**PHONE** [1] - 5:8
**phrases** [1] - 6:18
**plaintiff** [4] - 3:7, 4:3, 6:4, 17:2
**Plaintiff** [2] - 1:6, 2:2
**plaintiff's** [7] - 4:1, 10:10, 10:19, 11:12, 12:6, 12:12, 12:13
**plaintiffs** [7] - 3:9, 3:14, 6:8, 6:20, 7:3, 12:1, 14:14
**point** [3] - 9:6, 11:19, 16:2
**points** [1] - 8:15
**position** [1] - 4:1
**possession** [1] - 9:1
**possible** [2] - 12:16, 14:20
**practice** [2] - 12:17,

13:24
**premature** [1] - 12:23
**prepared** [1] - 3:1
**pretty** [1] - 6:6
**proceedings** [1] - 17:21
**process** [11] - 4:7, 4:23, 5:3, 5:5, 6:3, 7:23, 8:9, 9:4, 9:19, 12:18, 12:21
**produce** [3] - 8:17, 9:8, 12:25
**produced** [1] - 12:3
**producing** [1] - 6:1
**production** [2] - 4:12, 6:2
**productions** [1] - 12:9
**proposed** [14] - 4:19, 6:4, 6:5, 6:8, 6:14, 8:3, 8:6, 8:10, 10:11, 10:20, 11:8, 11:24, 12:1, 12:20
**proposing** [1] - 14:17
**protocol** [2] - 4:6, 6:15
**provide** [13] - 5:14, 8:14, 8:21, 9:3, 9:9, 9:20, 9:23, 10:6, 10:7, 10:10, 10:21, 10:22, 15:2
**providing** [1] - 11:23
**pull** [1] - 16:11
**push** [1] - 14:19

### Q

**quickly** [1] - 12:14

### R

**RAPIDS** [1] - 1:3
**Rapids** [1] - 2:10
**rather** [2] - 9:16, 13:2
**RDR** [2] - 2:16, 17:24
**reach** [3] - 12:16, 13:20, 14:4
**really** [1] - 12:23
**reasonable** [1] - 12:24
**receive** [1] - 4:14
**recorder** [1] - 3:2
**RECORDING** [1] - 1:1
**recording** [5] - 2:16, 3:2, 17:11, 17:21, 17:23
**refinement** [1] - 6:22
**refuse** [1] - 10:22
**refused** [1] - 8:16
**regardless** [1] - 9:14
**regular** [1] - 12:4
**rejected** [2] - 10:5, 10:19

**related** [1] - 14:23
**report** [5] - 9:5, 11:24, 12:2, 12:7
**reports** [2] - 9:8, 9:10
**request** [4] - 6:10, 14:4, 14:16, 14:25
**requested** [2] - 8:14, 14:15
**resolution** [7] - 5:6, 6:13, 6:19, 7:2, 12:12, 12:13, 12:16
**resolution's** [1] - 12:14
**resolve** [1] - 13:23
**resolved** [1] - 11:17
**responded** [2] - 6:4, 6:11
**response** [1] - 7:20
**responses** [2] - 6:16, 7:21
**result** [1] - 12:17
**retention** [1] - 6:10
**review** [10] - 3:23, 4:23, 5:1, 5:5, 8:4, 12:11, 13:5, 13:6, 13:8
**reviewed** [2] - 7:13, 8:1
**reviewing** [4] - 7:9, 10:3, 12:19, 13:8
**Ridge** [1] - 2:4
**Road** [1] - 2:7
**rolling** [3] - 4:12, 6:2, 12:9
**ruling** [1] - 13:25
**run** [9] - 4:21, 6:14, 7:6, 7:8, 7:25, 8:4, 10:22, 11:6, 12:11
**running** [3] - 8:13, 9:5, 12:2

### S

**s/Shelly** [1] - 17:24
**satisfied** [1] - 11:19
**scenario** [2] - 4:14, 5:13
**schedule** [1] - 15:8
**scheduled** [3] - 4:8, 7:4, 15:20
**scheduling** [1] - 15:1
**scope** [2] - 5:6, 8:11
**Scopelitis** [1] - 2:13
**Scott** [1] - 2:6
**search** [28] - 4:8, 4:18, 4:19, 4:21, 4:23, 4:25, 5:7, 6:3, 6:12, 6:15, 6:20, 6:22, 7:4, 7:7, 7:8, 7:25, 8:2, 8:4, 8:8, 8:24, 9:14,

10:5, 10:14, 10:20, 10:23, 11:16, 13:4, 16:2
**searches** [1] - 9:13
**second** [1] - 4:16
**Semmler** [3] - 2:16, 17:24, 17:24
**sense** [1] - 15:14
**sent** [1] - 6:5
**set** [2] - 5:1, 6:6
**Shelly** [2] - 2:16, 17:24
**Shindler** [1] - 2:2
**sides** [1] - 15:22
**similarly** [1] - 1:5
**Simmons** [1] - 2:9
**simply** [1] - 8:16
**single** [2] - 6:9, 6:17
**single-word** [1] - 6:9
**Sioux** [2] - 1:12, 2:17
**situated** [1] - 1:5
**Sixth** [2] - 1:12, 2:16
**slows** [1] - 14:1
**software** [2] - 7:24, 9:7
**sometimes** [1] - 10:25
**soon** [1] - 14:20
**sooner** [1] - 9:16
**sorry** [5] - 5:20, 10:15, 11:9, 14:8, 16:21
**sorts** [1] - 6:11
**sounds** [3] - 9:25, 11:15, 11:22
**Southeast** [1] - 2:10
**speaking** [1] - 5:16
**specifically** [2] - 11:4, 11:19
**stalled** [1] - 5:2
**start** [1] - 13:8
**started** [1] - 5:10
**STATES** [1] - 1:2
**States** [1] - 1:12
**status** [10] - 3:22, 13:12, 13:17, 13:21, 14:4, 14:14, 14:18, 15:4, 15:15, 16:18
**STATUS** [1] - 1:8
**Status** [1] - 1:11
**step** [1] - 9:10
**straight** [1] - 13:10
**Street** [4] - 1:12, 2:10, 2:14, 2:16
**strongly** [1] - 14:2
**submission** [1] - 3:24
**substantial** [6] - 3:25, 4:10, 6:25, 14:7, 15:16, 15:17
**substantially** [1] - 6:18
**suggested** [1] - 6:12

**Suite** [4] - 2:3, 2:6, 2:9, 2:14
**supplement** [1] - 11:11
**surprises** [1] - 13:15
**system** [2] - 7:13, 17:23

### T

**term** [2] - 8:9, 8:24
**terms** [45] - 4:8, 4:10, 4:18, 4:19, 4:22, 4:24, 4:25, 5:7, 6:4, 6:5, 6:9, 6:12, 6:14, 6:16, 6:22, 6:24, 7:7, 7:15, 7:25, 8:2, 8:4, 8:6, 8:10, 8:15, 9:14, 10:5, 10:8, 10:11, 10:20, 10:23, 11:7, 11:16, 11:24, 11:25, 12:6, 12:8, 12:12, 12:14, 12:20, 13:1, 13:3, 13:7, 16:2
**themselves** [3] - 8:2, 10:8, 12:20
**they've** [3] - 4:20, 4:22
**Third** [1] - 2:10
**thoughts** [1] - 15:18
**thousand** [1] - 7:14
**three** [2] - 6:17, 13:25
**three-word** [1] - 6:17
**throughout** [1] - 4:13
**today** [3] - 8:8, 11:13, 13:12
**total** [1] - 7:12
**track** [1] - 13:18
**Transcribed** [1] - 2:16
**TRANSCRIBED** [1] - 1:1
**transcript** [3] - 3:1, 17:11, 17:21
**TRANSCRIPT** [1] - 1:8
**true** [1] - 8:6
**trying** [1] - 7:18
**Tuesday** [2] - 16:12, 16:19
**turned** [1] - 3:2
**turnover** [2] - 6:10, 10:20
**two** [4] - 6:9, 6:17, 7:21, 14:24
**two-month** [1] - 14:24
**two-word** [1] - 6:9

### U

**unfortunately** [1] - 14:21
**unintelligible)** [1] -

16:20
**UNITED** [1] - 1:2
**United** [1] - 1:11
**universe** [2] - 7:25, 8:22
**untethered** [1] - 6:9
**up** [8] - 4:9, 9:14, 13:10, 15:3, 15:9, 15:21, 16:11, 16:24

## V

**vendor** [1] - 7:11
**versus** [1] - 3:5
**VISSER** [2] - 2:8, 3:20
**Visser** [1] - 3:20
**volume** [1] - 7:11
**VON** [16] - 2:5, 3:8, 4:2, 5:12, 5:18, 5:21, 7:21, 10:2, 11:22, 14:12, 15:7, 15:19, 16:1, 16:6, 16:13, 17:2
**von** [12] - 3:9, 5:17, 5:19, 5:21, 7:19, 11:18, 14:11, 15:6, 15:18, 16:5, 16:14, 17:1
**vs** [1] - 1:7

## W

**waiting** [1] - 13:2
**Washington** [1] - 2:7
**week** [5] - 4:9, 11:16, 15:22, 15:23, 16:4
**weeks** [1] - 13:25
**Weese** [1] - 2:3
**West** [2] - 2:4, 2:14
**word** [3] - 6:9, 6:17
**works** [3] - 15:24, 16:6, 16:13
**writing** [1] - 10:25

## Y

**years** [1] - 7:12
**yield** [1] - 6:15
**yourselves** [1] - 14:3