**TRANSCRIBED FROM DIGITAL RECORDING.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

No. C24-0082-CJW

CRST EXPEDITED, INC., et al.,

Defendants.
___________________________________/

TRANSCRIPT OF STATUS CONFERENCE

The Status Conference held before the Honorable Kelly K.E. Mahoney, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, June 3, 2025, commencing at 11:30 a.m.

APPEARANCES:

For the Plaintiff: BRIAN O. MARTY, ESQ.
Shindler, Anderson, Goplerud & Weese
Suite 100
5015 Grand Ridge Drive
West Des Moines, IA 50265-5749

MICHAEL VON KLEMPERER, ESQ.
Fegan Scott
Suite 100
1763 Columbia Road Northwest
Washington, DC 20009

For the Defendants: ANGELA S. CASH, ESQ.
ANDREW J. IRELAND, ESQ.
JAMES H. HANSON, ESQ.
Scopelitis, Garvin, Light, Hanson & Feary
Suite 1400
10 West Market Street
Indianapolis, IN 46204

Transcribed from digital recording by: Shelly Semmler, RDR, CRR
320 Sixth Street
Sioux City, IA 51101
(712) 233-3846

(The following transcript was prepared from a digital recording.)

* * * *

P R O C E E D I N G S

THE COURT: This is Kelchner v. CRST Expedited, Inc., et al., Case Number 24-CV-82. We're here for a status conference. As we wait for Mr. Hanson to join, I do have just a couple questions to start out with for counsel so you can kind of be thinking about those.

The first one is I know that the submission you provided indicates you've been working to meet and confer. I know there have been letters going back and forth. I am curious to how many phone calls you guys have had to try to work through those issues aside from those letters.

I do know there was the motion to compel filed yesterday. I haven't really reviewed it. It does look like it addresses some of the issues that were on the topics to discuss today, so we can just kind of table those, I think, until -- well, I guess we can talk about it and see if defendants want to do a formal response and things. But that's kind of where we're at on that.

And also I had questions on defendants' -- I assume that you're using and I think you're using but I wanted to confirm you're using a third-party vendor to handle

the ESI. I'd like to know when you estimate you'll have the -- all of the custodian information loaded in and when you think you'll have the hit count reports because that's going to help determine pretty much everything else.

So I guess, Miss Cash, do you want to go ahead and move forward without Mr. Hanson, or do you want to wait for him?

MS. CASH: I think we could start with the latter and --

THE COURT: Okay. Sure.

MS. CASH: -- move forward on the ESI piece. We are currently using a system called Casepoint which is a vendor that we regularly use for this. This is truly an enormous amount of data. We are still collecting from the custodians. There were 25, just to remind the Court. And as of now, we already have 2.35 terabytes of information collected. We have over half or right at half of the collection in that 2.35 terabytes, and the rest is still being pulled.

THE COURT: All right. And I think was it 26 or 25 custodians? I thought it was 26 agreed-upon custodians.

MS. CASH: You're correct, Your Honor, so I apologize.

THE COURT: Okay.

MS. CASH: So I apologize for the 25. I have another one and -- with 25, and I just mixed them up. Thank you.

THE COURT: Sure.

MS. CASH: So we have just about half of the custodians who have been collected by the client, at least emails. We're still working to collect shared drives and Team messages for some of these. But we did have that collection completed with shared drives, Teams messages, and emails for Mr. Gannon who was kind of our primary one that we were using to get the ball rolling. And then we have shared hit counts with the plaintiff's counsel regarding Mr. Gannon's collection. We provided the hit count to them with the detailed information as had been requested and discussed previously.

In our view, the hits for Mr. Gannon were still too voluminous and would result in a massive amount of information to be reviewed if we did the same process for all the custodians. Plaintiff's counsel responded with -- well, we had asked them to narrow the terms, and plaintiff's counsel responded but didn't narrow the terms and, in fact, provided broader terms which would result in more hits using the terms that were provided. I believe that was provided on Friday of last week, and

we're working to at least see what those proposed terms --

PHONE OPERATOR: James Hanson joined the meeting.

THE COURT: Hi, Mr. Hanson. We -- hi, Mr. Hanson. We started without you. Miss Cash was kind of answering some of my initials questions.

I actually am just going to at this point, Miss Cash, back up for a moment. So your -- your -- I guess -- okay. So of the roughly over half of the ESI you've collected from the client, how much of that has been uploaded by the third-party vendor?

MS. CASH: I don't know if they've completed all of it, but all of it that we have gathered and are in the process of having uploaded to the vendor is 2.3 terabytes.

THE COURT: I -- I understand how big it is. I don't want to hear any more about how big it is. I get that point. My question is how much has been uploaded by the vendor, and how long is it going to take to get -- I guess we're backing up even now not just uploading. How long is it going to take you to collect the rest of the data? Any sort of guess?

MS. CASH: Yeah. I'm reluctant to give you a guess on exactly how long it's going to take the client

to pull the data. I can tell you that every day I'm receiving data from the client. I know they've dedicated resources to this process.

THE COURT: Sure. And I'm just -- I -- you probably can sense a bit of my frustration. I'm a little frustrated because just me myself in my eight years on the bench, I've had multiple cases of lawsuits filed against your clients. This is not new for them. I understand there are multiple entities under the umbrella essentially of CRST, but this isn't new. I mean, they should be pretty familiar and adept at gathering information for litigation because they're involved in it quite a bit.

So I'm kind of at a loss. The lawsuit was filed in August. Initial discovery requests went out in January. We're almost exactly a month later from our last status conference, and you're still in the process of gathering information. So really we're not even in a position really to talk about a lot of the stuff because I don't want to hear anything about anything being too burdensome to produce discovery because you haven't even collected the information to run the initial phase of getting a hit count to be able to have that conversation.

So, frankly, I mean, CRST needs to speed up its work on getting this stuff done. We're really just not even

at a point we can discuss this stuff. And I under -- and I am not trying to make light of the fact that it's a lot of information. I get that. But, I mean, that's all I'm hearing, and there doesn't seem to be a lot of progress being made.

I guess when did you start collecting the information from -- when did your client start gathering their ESI? When did that process start?

MS. CASH: Your Honor, I don't have the date right in front of me. I can get that for you, but --

THE COURT: Sure. Your best estimate.

MS. CASH: The actual collection, probably 30 days.

THE COURT: Okay. So 30 days you've gathered over half of it. So we probably -- let's say another month you should have it all gathered, hopefully uploaded. Okay. So that's helpful framework, rough framework. I'm not holding you to it exactly.

I guess I'll just jump to you, too, on my question of how many phone calls have you had with opposing counsel aside from the letters that have gone back and forth?

MS. CASH: We're looking at our calendar, Your Honor, but I think it's four.

THE COURT: Okay. I just want to make sure

too --

MS. CASH: (Unintelligible).

THE COURT: Sure. Okay. Good. I just want to make sure it wasn't just letters.

MS. CASH: (Unintelligible).

THE COURT: Yeah.

MS. CASH: And we actually even looked at each other.

THE COURT: Very good. Very good. Letters are helpful because you can lay out the nitty-gritty and some things that really -- to really make progress, and mailing letters back and forth isn't that helpful. So that's good to hear. So --

MR. HANSON: And Your --

THE COURT: Yes. Go ahead.

MR. HANSON: Your Honor, just if I can interject, and it's not just a 10-, 15-minute phone call. One of them was about two and a half hours, and I know Angie's had more than that or longer periods -- or not necessarily longer than two and a half hours but has had multiple calls that have been more than just a short 15-, 20-minute conversation.

THE COURT: Okay. Very good. And who was speaking just for the record?

MR. HANSON: This is Jim Hanson.

THE COURT: Very good. Okay. So I think as far as search terms, it looks like you guys are still trying to work that out. I guess from Mr. von Klemperer or different counsel -- if so, just identify yourself for plaintiffs -- are you adding terms? What are you doing to try to narrow the terms that you're proposing?

MR. VON KLEMPERER: Your Honor, this is Mike von Klemperer. Thank you.

So, you know, I think Your Honor hit the nail on the head. I mean, we -- and we share your frustration in the pace of this collection effort.

You know, we served the RFPs in the beginning of January. I immediately reached out to the defendants about a week later and said let's start talking about search terms and custodians. I sent them a letter on January 17. We didn't even receive their proposed hit search term until April 30. And we didn't receive hit counts on those terms until May 28. And, you know, when we received those, they had proposed some revisions because they claim that they are too burdensome. But these terms were only run on a single custodian. And for about half of the revisions that they proposed, they eliminated 100 percent of the hits, the terms. And so they were hitting on zero documents.

And so the very next day I responded and sent them

some proposed revisions where -- you know, saying these revisions aren't reasonable. You eliminated a hundred percent of the hits. And so, like, here's a slightly broader proposal based on, you know, hit counts on these new revisions.

We haven't heard from them since then. We are entirely willing to be reasonable and to engage in good faith on the negotiations regarding the search terms. But the progress has just been incredibly slow. You know, we met with Your Honor at the beginning of last month. We had a meet-and-confer about search terms about four days later. We were promised hit counts the next week, but we didn't receive them for about two weeks or a week and a half. And so every step of the process has just been incredibly slow which -- which is leading to, you know, our frustration, of course.

And Your Honor will recall that the defendants asked for an extension of the substantial completion deadline during the last conference. It was originally May 21. They asked to move it to June 20. In that -- and we agreed provided they would provide some rolling production of custodial documents. But in that time we've received zero documents. And it sounds like from the status of their collection, you know, they're not even going to begin producing documents by the current

June 28 deadline let alone substantially complete their production by that deadline.

So, you know, in many ways it seems like we're going to have to go back to the drawing board on the case schedule.

THE COURT: No, I don't disagree.

So -- and I guess, Miss Cash, I guess in response, too, on the hit terms -- and that's why I guess I'm trying to understand because the broadbrush strokes I think that, you know, both parties use is hard -- and I don't want to be in the nitty-gritty of discovery, but I think this is the kind of case I'm going to have to be.

So is it -- I guess is that accurate, that when you ran your proposed hit count or your proposed terms there were zero hits that came up?

MS. CASH: I'm going to ask Andrew to help me --

THE COURT: Sure.

MS. CASH: -- here because he's much more familiar with that than I. But I think the concept was that -- that there were small hits for some of those and removing those because it appeared those were outliers, not helpful, not responsive. Is that right, Andrew?

MR. IRELAND: That's correct, Your Honor. I mean, I think that by the most recent set of revisions

from plaintiff's counsel, there were about 50 different strings of searches that plaintiffs had proposed. Some of those have had a modifier that we had removed and some of those (unintelligible) limiting terms, and that took some of the riffraff out. It would take the number of (unintelligible) from (unintelligible) hits to zero. But at the same time, again, the vast majority of the -- the more substantive searches are still there.

THE COURT: And I guess for the one custodian you run a hit count on, like I -- I guess running the proposed terms by the plaintiff, roughly what kind of hit did you get, hit count?

MR. IRELAND: I believe from plaintiff's most recent proposal that about 4,500 responsive documents identified.

THE COURT: Okay.

UNIDENTIFIED SPEAKER: For one -- for one person.

THE COURT: Yes. Okay. And when you narrowed terms, I guess, more in line with what you think is reasonable, what was your hit count roughly?

MS. CASH: So just to clarify, that's -- that's one that we've done since Friday; right? That's 4,500. Okay. So I think you need to (unintelligible) that.

MR. IRELAND: Yes, Your Honor. So when we ran

the initial hit report, the number was 9,000 using plaintiff's terms. We provided an alternative set of searches that in a sense you'd narrow the types of scope there to (unintelligible) what plaintiff was looking for I think too in the first place.

Those revised terms got us down to 3,000, and in our cover letter we noted to plaintiff's counsel that, you know, given the number of affiliates that, frankly, there would be -- further narrowing would be needed until we could get to a point where the ESI terms would get to something that we could agree to. But instead plaintiff's counsel came back to us, and then that's where we got that -- that new set of terms that we're at 4,500 now.

THE COURT: Okay.

MR. IRELAND: (Unintelligible) to narrow further.

THE COURT: How long is it going to take you, do you think -- will it take to roughly review 4,500 hits? I mean, it doesn't seem crazy to me, so I guess I'm curious what your thoughts are on that.

MS. CASH: Your Honor, without -- without knowing exactly what the documents are, it's difficult to predict. I will tell you that, you know, a lot of these things may come with multiple attachments that list all

sorts of drivers that might not be relevant to this class definition. And so that review can be fairly painstaking to make sure what's related to the class definition here which is independent contractors versus other types of drivers that they have, employees and different companies, et cetera.

THE COURT: All right. Well, I guess kind of on the issues of search terms, custodial ESI production, I mean, frankly, we're not even able to have meaningful conversations at this point because we're still back at the point of gathering information and noting it to be able to run those things. I don't know that I'm able to give you much help right now as far as hit counts and things.

I understand litigation's just burdensome. It just is. The good news is is that the defendants and plaintiffs both have multiple lawyers on the case, so that's kind of what's needed in these kinds of cases, so you should be able to get the work done.

I guess is there anything specific you want me to help you with on hit counts or, like, on search terms and things at this point? Or it sounds like you're still working through it. I just -- I, frankly, am a little flabbergasted we're at this point in the case and no further along in collecting information. This didn't

start till 30 days ago. It's kind of mind blowing.

So I would expect that, again, all of that information should be collected and uploaded to the vendor within the next 30 days if not sooner. And obviously the sooner the better. Really until you get to that point and you can start running some hit counts and things, you really can't even have, I think, a meaningful discussion probably on search terms.

But from what I'm hearing, it doesn't necessarily sound like what plaintiffs are requesting is unreasonable. I just don't have enough information really to be able to help you more beyond that.

I guess, Mr. von Klemperer, any thoughts?

MR. VON KLEMPERER: Your Honor, I think that's right. Until we have all of the custodians loaded, the, you know, hit counts on a single person are not that informative for a variety of reasons including that, you know, as you add additional custodians, you're not necessarily exponentially increasing the number of hits because if one custodian emails another person, that's only one document. They don't need to review that same document twice. And so just because one person has a large number of hits, it doesn't necessarily mean that every custodian is going to add the same number of additional hits.

And I would also just add that, you know, the numbers that opposing counsel is mentioning just now are the hits (unintelligible) family, so it's not just direct hits. It's the number of hits plus the attachments to those emails.

THE COURT: Okay.

MR. VON KLEMPERER: So the number can be a bit misleading.

And then, you know, it would be -- it would be wonderful to have a deadline to -- I haven't even received the hit count that they were just reading from, the 4,500 hits. I haven't seen that. And we haven't had a meet-and-confer about that. So I'd like to receive that, and I'd like to receive a hit count on the total universe of custodians as soon as possible.

And then just one other thing that I would react to from what Miss Cash mentioned is that the review is going to be slow because they need to -- there's going to be names of irrelevant drivers in there. And from what I take from that comment is she plans to redact all of those names from people that are purportedly irrelevant to the case.

And if that process is going to substantially delay the production, we are very concerned about that. You know, redacting is an issue that we mentioned -- that we

raised in our motion to compel that we filed yesterday, you know, specifically redactions to names of class members. But if redactions to anyone, anyone's name or any conflict, is going to substantially delay production, we're very concerned about that. And I think that in general redactions to documents for relevance are not appropriate under the case law. And so we'd like to hear more about that if that's going to be a problem.

THE COURT: Yeah. And I guess that is a question I have is it -- are defendants agreeing to produce documents and are just doing a review for privilege, or are you reviewing for relevance as well?

MS. CASH: Your Honor, we'd be reviewing for relevance as well.

THE COURT: Why?

MR. HANSON: Your Honor, this is Jim Hanson. If something doesn't relate to the case, we're not going to produce that. But you've gotta review it in order to determine. They don't have a right to things that don't relate to this case, that aren't within the subject of what they've requested. And if we limit -- if we eliminate those, we have a right to do that under the rules because it's not either within the scope of what's been requested; or, number two, it doesn't relate to the claims in the case. I'm not sure, you know, why we would

be precluded from eliminating those things.

THE COURT: Well, I guess -- and really the main concern is that it is the glacial pace at which you guys are moving. I mean, have you -- have you started reviewing any of the documents for the one custodian, Mr. Gannon, or not?

MS. CASH: Your Honor, we have not. Until we got terms agreed upon, we're trying to be as efficient as possible because obviously, as you pointed out, it's going to take a lot of lawyer review time, and it's -- given the size of the documents, the cost is going to be quite substantial. And so we didn't want to start moving with that while we're still finalizing these terms. And certainly we intend to provide plaintiff's counsel with the hit list very promptly.

THE COURT: I guess -- I guess my concern is if we're -- like let's say we're a month out before you guys get everything collected and uploaded and then you run hit counts and you're still trying to negotiate search terms. It's probably going to be the end of the summer before you're even at a point where you're starting to review documents. I guess that's -- I mean, that just -- that's my concern.

So I guess what's your response to that from the defendant's perspective?

UNIDENTIFIED SPEAKER: I mean, I don't know how you do a review of documents if you don't have an agreement on what's considered a hit. I mean, we're just going to be duplicating effort and looking at things that don't matter if the documents will be eliminated through the search terms.

MS. CASH: Your Honor --

THE COURT: Yeah.

MS. CASH: -- I think -- go ahead.

THE COURT: No. Go ahead.

MS. CASH: I think we can certainly do things to try to keep moving along. Mike's suggestion of running the hit terms -- the hit search terms against what we have, we can do that. We can get that process going. And I think that we're probably going to be in a position to get to review of the documents sooner than the end of the summer. Whether that's 30 days or not, I don't know. But certainly mid summer seems more reasonable.

THE COURT: Yeah. I -- I am, frankly, just kind of at a loss as to how to really help you guys at this point because, you know, defendants are really behind in the process.

I guess I don't have a sense of how far off you guys are on agreeing to search terms. And you may not be -- I

guess, Mr. von Klemperer, do you know how far off you guys are on that? Are you waiting to get a better sense from hit counts to make that determination?

MR. VON KLEMPERER: You know, Your Honor, as I mentioned, I sent back a proposed revision. You know, some of the terms on the original strings that defendant proposed returned something like 700 document hits. And then when they revised those terms, it returned zero hits. And so we made a very minor tweak to expand the scope of the terms. We think it's very reasonable. We don't think it's reasonable to eliminate a hundred percent of hits from a search string. And so --

THE COURT: That seems reasonable. No, I would agree.

UNIDENTIFIED SPEAKER: (Unintelligible).

THE COURT: I would agree that's not reasonable. Sorry. Sorry. Go ahead.

UNIDENTIFIED SPEAKER: (Unintelligible) I would say, you know, their revised search terms increased it by 50 percent. Went from 3,000 to 4,500. That's not helpful.

THE COURT: No, but I guess I'm not -- I'm not clear that having defendants have to review 4,500 documents is unreasonable or overly burdensome. I just -- I don't have enough information to know that at

this point.

UNIDENTIFIED SPEAKER: Your Honor, that's only for one person.

THE COURT: Right. But don't talk to me about other people because you don't even have all that information collected enough (unintelligible) to run yet. So I mean, I -- we just don't know, I guess.

So I think that if documents are truly irrelevant, then really there's no harm in CRST producing them.

UNIDENTIFIED SPEAKER: That's -- I disagree with you.

THE COURT: Yeah.

UNIDENTIFIED SPEAKER: That's . . .

THE COURT: I don't know. I just -- I guess what I'm saying is, like, since it's going to take this long and it's going to be that expensive for your client to do that, you could just review for privilege and see kind of -- start doing that and see kind of where you're at on that and I guess doing kind -- I mean, you don't even know at this point, like, how hard it's going to be to review for relevance. I don't know. We're just not even at that point.

I think we're -- I think we're going to have to table a lot of these issues until plaintiffs -- or defendants get everything gathered, loaded, and can start

doing some of that basic work, and then -- then we can maybe have a more meaningful discussion about what timeframes are we looking at, where are the real disagreements at, you know. I don't know.

I -- I guess I welcome any -- any additional thoughts from plaintiffs on this.

MR. VON KLEMPERER: Your Honor, I think your suggestion of reviewing for privilege makes a lot of sense. At a certain point, you know, how many substantial completion deadlines are they going to blow through before there's some kind of consequence? And I think limiting the review for privilege makes a lot of sense. Of course, we can come to a clawback agreement. I mean, if they produce documents that are truly irrelevant, then it doesn't hurt -- it doesn't harm them in any way. It just shifts the burden to plaintiff to find the relevant documents.

THE COURT: Yeah.

MR. VON KLEMPERER: You know, there's a protective order in place. Those documents can be produced under the confidential designation. So really there's no harm to the defendants. And it will move the production process along exponentially it sounds like.

THE COURT: And I guess that's from defendants.

MR. HANSON: Your Honor, until we get to

reviewing the -- you know, what we may consider to be irrelevant, it's hard to say. But we don't necessarily want to turn over information that has no relevance for the case and may deal with -- you know, I realize that there's a protective order in place. But that doesn't mean that we have to pull our pants down and strip naked in front of the plaintiff so they can review everything even if it's irrelevant. And I -- and I just -- that's not -- that's not -- that's why the rules have limits on what you have to produce.

And, you know, we've got to begin the review of the documents, no question. And we can do that. And if -- and if there have been 3,000 that we were reviewing based on our -- our hit count, you know, we can begin that process for the one -- for the one custodian that we have got the hit count based on our terms. If you add another 1,500, you know, I don't know how long that's going to take. It's going to take some time because you've gotta segregate them, put them into a location where we can either mark them as responsive, mark them as nonresponsive, and then those that are questionable that have to have a second review by another attorney. And obviously we assign that down. But there -- you know, despite the size of our firm, we don't have -- we can't just take 25 lawyers and put them on this and take them

off everything else that they're doing because they're all involved in other cases, in other transaction matters and what not.

So it's difficult to say. We can begin on the 3,000 that we found on our hit count and -- and I'm, you know, kind of speaking for Mr. Ireland. The additional 1,500 could be added if that was the search terms we came to agreement on and just do the extra 1,500 if that was necessary.

THE COURT: Well, I guess --

MR. HANSON: The plaintiff (unintelligible) reasonable in terms of the search terms on ESI because it becomes overwhelming. You know, if we end up with 250,000 ESI, you know, emails and what not, that's going to take some time. I don't care how many lawyers you have. It's going to take some time and some expense and whether it's -- it is cost prohibitive versus the value for the case.

THE COURT: No, and I don't -- I think you're making some good points, and I actually especially like your analogy of not having to stand with your pants down. I don't disagree with those things.

I guess my frustration comes from -- so let's say the 3,000 hits that you got, plaintiff -- did plaintiff agree to those terms? Plaintiff wants more terms than

that, I understand. But -- and in essence agreed to at least those -- those terms that led to the 3,000 hit count? Would that be a fair statement or no?

MR. HANSON: Mr. Ireland or Mr. -- or Miss Cash will have to speak to that.

MS. CASH: We -- we're not aware of them agreeing to that. They sent their counterproposal on Friday, and I was out with a funeral yesterday, so we're working on that today.

THE COURT: Okay. I guess one -- kind of what I'm getting at here is if there are -- you know, you haven't agreed to all the terms, but is there at least some common terms that you've agreed to or ones that you think are, you know, reasonable that they proposed even if you don't agree to all of them?

I guess where I'm getting to is why haven't you guys started reviewing those 3,000 documents that you think are reasonable at least? I mean, we're not even at that point. Like that's where I guess my frustration comes in is that we're trying to have this conversation and you really haven't even started that process. I don't think that we can at this point just sit here and wait until everyone agrees on everything a hundred percent to start the process to start review. We're going to be here for four years just doing discovery in the case if that's

what we're going to do.

So I guess I want to see what defendants can do to maybe start review processes now. I don't know. And I'm not really in a place to give you better insight or better thoughts than that.

One thing -- and I guess here's the thing is that defendants are entitled -- I mean, if you -- you can review for relevance. Parties don't always do that. Sometimes you just agree -- if you agree the relevance of the hit terms and things, you just review for privilege. But I guess if you're wanting to review for relevance and things, I understand that. But I'm just trying to balance if you want to do that full review process, that's fine. But I'm going to have to start setting some time limits for when you get that done. And obviously that's burdensome to your client either way. But -- and to the lawyers in particular. I don't -- that's what I'm trying to balance is getting this case -- keeping it moving. So I think these are things the parties need to talk to or talk through more.

I guess it's one of those, too, that like you -- you just have to start the process because we can't even have this conversation because you don't know how burdensome it really is or how long it's going to take because you haven't even started the process. I mean, it's one of

those, too, we can set a deadline. You can review for privilege and relevance. But, like, if you're coming up on the deadline and you're not even making any progress, it may get to the point where you're going to have to make a choice between the thoroughness of the review you're doing, I mean, just trying to do more of a broad -- you have a better sense at least at that point of knowing here how -- here's how long this is taking. Of this review, we're finding a certain how ever much percentage you're finding that aren't relevant. And if it's a high percentage, well, then, you know, maybe you revisit search terms and things.

So I don't know. I think maybe an agreement with a clawback provision may make sense. I think the parties are just going to have to talk this through more, but at this point, I mean, we just need to get the documents collected, loaded, and start doing those processes before we can really have a meaningful discussion on that.

I think the information about interrogatory -- and I could be wrong on this, but the ti -- sections that you listed as ripe disputes and interrogatory data sets, is that covered by the motion to compel that was just filed, Mr. von Klemperer?

MR. VON KLEMPERER: The interrogatory data set is not covered by the motion to comp -- I mean, it's

partially covered because one of the things that they're proposing to do when they produce that data is to anonymize the class member names and contact information. So in a sense it is covered. But we haven't even received the anonymized data that they've agreed to produce.

THE COURT: Okay.

MR. VON KLEMPERER: So --

THE COURT: And that was one thing I noted. They were looking into the compromise of doing the anonymized documents or a sampling of class members. I guess is that something that you think might be feasible or not?

MR. VON KLEMPERER: We certainly don't agree that anonymizing class member information is appropriate as we lay out in the motion that we just filed. I -- I haven't heard from them about a proposal to provide a sampling. I don't think we discussed that or heard any -- any proposal from them on that topic. I could be --

THE COURT: Okay.

MR. VON KLEMPERER: -- misremembering, but I don't remember ever discussing that.

MS. CASH: So we did propose that, Mike, in -- on May 28 about providing a sample for Specialized, and I

don't think you guys responded to it. And then it was in the -- attached to the motion to compel. So there's certainly more ground to cover there if you guys didn't notice that offer.

THE COURT: All right. So it's something I think you guys need to talk through. I understand defendants are really wanting to focus this on just CRST Specialized since that was the only entity that plaintiffs contracted with. So, I mean, that's a good starting point is to look at Specialized and then try to figure out kind of where you're at on that. Then that may help the discussion as to other entities as to whether or not that's something that should be produced.

I guess I'm really -- what -- what -- I'm kind of honestly at a loss at this point of what we should talk about or how best to help you guys forward. And I'm not sure I'm -- I'm -- I've really been much help here today.

I guess, Mr. von Klemperer, what are your thoughts about what else we need to talk about and how best to help? I know there's -- the personal jurisdiction discovery issue was flagged, the Cervantes case discovery. What do you want to talk about next?

MR. VON KLEMPERER: The Cervantes discovery issue in our motion to compel. I'm obviously happy to discuss --

THE COURT: Okay.

MR. VON KLEMPERER: -- that, but, you know, the defendants haven't responded to the motion, of course.

THE COURT: No, that's helpful.

MR. VON KLEMPERER: The personal jurisdiction-related discovery, we served it about maybe five days ago or so, and we haven't received responses. We haven't received a request from the defendants to meet and confer. I'm not really sure what they want to discuss. I'm happy to meet and confer with them, but we haven't received that request. So it seems like a premature issue to discuss today on that call -- on this call.

THE COURT: All right.

MS. CASH: We're (unintelligible) out on that.

THE COURT: Okay. I guess from the defendant's perspective, what else do you think we need to talk about here today?

MS. CASH: Your Honor, I think the compliance deadline of June 20 is -- it seems like everyone's recognizing that that's probably not going to be something that can be complied with. So I wonder if we were to come back around that time and give an updated report on collecting all the information and then maybe look at some deadlines at that time?

THE COURT: No, that's fine. I think what I'm going to do at this point is I can set another status conference date, or maybe at that point you guys confer and then propose one if you need it. And you may have a better idea of timing of when you might need one. I guess what are your thoughts on that, Miss Cash?

MS. CASH: I think that makes sense. And around June 20 would work.

THE COURT: I guess to have a status conference or for you guys to talk more?

MS. CASH: So that's 17 days. Maybe pushing that out just a little bit more makes sense, and we'll certainly be talking in the meantime.

THE COURT: Okay. I guess, Mr. von Klemperer, what are your thoughts?

MR. VON KLEMPERER: Well, Your Honor, it would be wonderful to receive hit counts from the defendants on a broader set of custodians and hopefully come to an agreement or a ripe dispute in the next week or two on the search terms so we can all move on with our lives, and then having a conference after that I think makes sense. So if it's the week of the 23rd or the 30th, I think that would -- that would make sense.

THE COURT: Okay. The week of the 23rd is pretty open for me and the week of the 30th as well.

Well, it's a little bit busier. But yeah. So I guess do you guys want to go ahead and get something on the books today? Do you want to talk and -- how about we just go ahead and get something on the books today, and if we need to continue it, we can?

So I guess, Miss Cash, what's your preference for timing for our next -- another status conference?

MS. CASH: Yeah. I have a series of depositions the week of the 23rd. So the week of the 30th would be better.

THE COURT: Okay. How about Tuesday, July 1? Does that date work for -- we'll start there, I guess -- for defense counsel?

MS. CASH: It does, Your Honor.

THE COURT: All right. Mr. von Klemperer for plaintiff's counsel?

MR. VON KLEMPERER: That should also work well for me. Thank you.

THE COURT: Okay. Do you guys have a preference on time of day? I'm open all day that day except for 11:00. (Unintelligible).

MS. CASH: That's a good time.

THE COURT: Okay.

MS. CASH: The 12:30 Eastern, 11:30 Central is good.

THE COURT: All right. And Mr. --

MS. CASH: (Unintelligible).

THE COURT: Go ahead. You can finish. I didn't hear.

MS. CASH: I said I just realized you had an 11:00. But if that's enough time for you. Sorry.

THE COURT: No. I just do criminal initial appearances at 11, so those are usually done by 11:30. So 11:30 works. I guess Mr. von Klemperer?

MR. VON KLEMPERER: Yes. That also works for me. Thank you.

THE COURT: Okay. We will have our next status conference then on Tuesday, July 1, at 11:30 a.m. Central Standard Time. I do expect by that point we've got all the data collected, uploaded, and you guys are making some progress on search terms, hit counts, and reviewing docs.

So anything else we need to talk about today? Mr. von Klemperer?

MR. VON KLEMPERER: I don't believe from the plaintiff's perspective. Thank you, Your Honor.

THE COURT: And from defendant's perspective?

MS. CASH: Your Honor, one question if I might. And if the answer is not appropriate for now, fine.

THE COURT: Sure.

MS. CASH: On the motion to compel, we're -- we're planning to respond to it. We understand we have 14 days. There will be another reply brief I'm sure. Is that something that Your Honor hears?

THE COURT: Yes, yeah. So I will hear basically discovery disputes, any nondispositive matters. Motions to dismiss, motions for summary judgment, and usual trial-related motions and things the district judge will hear. So that's how we work together on cases.

MS. CASH: And then are you -- are -- you typically like to have a hearing on the motion to compel, or just what is your normal practice?

THE COURT: If parties request a hearing, I usually will grant that. But, I mean, if it looks like a pretty straightforward issue and I can just get you a ruling absent a hearing, then I might do that. It's helpful, though, if you guys want to have a hearing to let me know that.

Also I know that there are fewer opportunities to argue in federal court, so especially if you have less-experienced lawyers that would participate in some of the argument, you can indicate that, and I would almost certainly grant oral argument on that. But if it's not needed, then let's not waste our time and money -- or your client's money. But yeah. It just kind

of depends on what the parties request and if I think it's needed or not.

MS. CASH: Right. Thank you so much. Appreciate that insight.

THE COURT: Yeah. I'm always happy to answer those type of logistical questions if I can because I get what it's like to practice. I mean, you don't know (unintelligible) to guess, and it can help your work as a practitioner if you -- if you know those things.

Also, too, if you have questions just about the district judge's practice, I'm happy -- you can always ask me those things too, and I'll answer them if I can, or if I can't, I'll let you know that.

So anything else, Miss Cash?

MS. CASH: No. Thank you.

THE COURT: Anything else, Mr. von Klemperer?

MR. VON KLEMPERER: No thank you.

THE COURT: Anything from anybody else? All right. Thank you, counsel. That will conclude this hearing.

(The hearing was concluded at 12:13 p.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital recording system.

S/Shelly Semmler — 6-6-25

Shelly Semmler, RDR, CRR — Date

## 1

**1** [2] - 33:11, 34:13
**1,500** [3] - 24:17, 25:6, 25:8
**10** [2] - 2:11, 9:17
**100** [3] - 2:3, 2:6, 10:23
**11** [1] - 34:8
**11:00** [2] - 33:21, 34:6
**11:30** [5] - 1:13, 33:24, 34:8, 34:9, 34:13
**12:13** [1] - 36:21
**12:30** [1] - 33:24
**14** [1] - 35:3
**1400** [1] - 2:11
**15** [1] - 9:21
**15-minute** [1] - 9:17
**17** [2] - 10:16, 32:11
**1763** [1] - 2:7

## 2

**2.3** [1] - 6:15
**2.35** [2] - 4:17, 4:19
**20** [3] - 11:20, 31:20, 32:8
**20-minute** [1] - 9:22
**20009** [1] - 2:7
**2025** [1] - 1:13
**21** [1] - 11:19
**233-3846** [1] - 2:14
**23rd** [3] - 32:22, 32:24, 33:9
**24-CV-82** [1] - 3:6
**25** [5] - 4:16, 4:22, 5:2, 5:3, 24:25
**250,000** [1] - 25:14
**26** [2] - 4:21, 4:22
**28** [3] - 10:18, 12:1, 29:25

## 3

**3** [1] - 1:13
**3,000** [7] - 14:6, 21:20, 24:13, 25:4, 25:24, 26:2, 26:17
**30** [6] - 8:12, 8:14, 10:17, 16:1, 16:4, 20:17
**30th** [3] - 32:22, 32:25, 33:10
**320** [2] - 1:12, 2:13

## 4

**4,500** [7] - 13:14, 13:23, 14:14, 14:19, 17:12, 21:20, 21:23
**46204** [1] - 2:12

## 5

**50** [2] - 13:1, 21:20
**5015** [1] - 2:4
**50265-5749** [1] - 2:4
**51101** [1] - 2:14

## 6

**6-6-25** [1] - 36:24

## 7

**700** [1] - 21:7
**712** [1] - 2:14

## 9

**9,000** [1] - 14:1

## A

**a.m** [2] - 1:13, 34:13
**ability** [1] - 36:23
**able** [6] - 7:23, 15:9, 15:12, 15:19, 16:12
**above-entitled** [1] - 36:23
**absent** [1] - 35:16
**accurate** [1] - 12:13
**actual** [1] - 8:12
**add** [4] - 16:18, 16:24, 17:1, 24:16
**added** [1] - 25:7
**adding** [1] - 10:5
**additional** [4] - 16:18, 16:25, 23:5, 25:6
**addresses** [1] - 3:18
**adept** [1] - 7:11
**affiliates** [1] - 14:8
**ago** [2] - 16:1, 31:7
**agree** [8] - 14:11, 21:14, 21:16, 25:25, 26:15, 27:9, 29:14
**agreed** [7] - 4:22, 11:21, 19:8, 26:1, 26:12, 26:13, 29:5
**agreed-upon** [1] - 4:22
**agreeing** [3] - 18:10, 20:25, 26:7
**agreement** [5] - 20:3, 23:13, 25:8, 28:13, 32:19
**agrees** [1] - 26:23
**ahead** [8] - 4:6, 9:15, 20:9, 20:10, 21:17, 33:2, 33:4, 34:3
**al** [2] - 1:8, 3:6
**almost** [2] - 7:16, 35:23
**alone** [1] - 12:1
**alternative** [1] - 14:2
**amount** [2] - 4:15, 5:18
**analogy** [1] - 25:21
**Anderson** [1] - 2:2
**Andrew** [2] - 12:16, 12:23
**ANDREW** [1] - 2:9
**ANGELA** [1] - 2:8
**Angie's** [1] - 9:19
**anonymize** [1] - 29:3
**anonymized** [2] - 29:5, 29:11
**anonymizing** [1] - 29:15
**answer** [3] - 34:24, 36:5, 36:12
**answering** [1] - 6:7
**apologize** [2] - 4:25, 5:2
**appearances** [1] - 34:8
**APPEARANCES** [1] - 2:1
**appeared** [1] - 12:22
**appreciate** [1] - 36:4
**appropriate** [3] - 18:7, 29:15, 34:24
**April** [1] - 10:17
**argue** [1] - 35:20
**argument** [2] - 35:22, 35:23
**aside** [2] - 3:14, 8:21
**assign** [1] - 24:23
**assume** [1] - 3:23
**attached** [1] - 30:2
**attachments** [2] - 14:25, 17:4
**attorney** [1] - 24:22
**August** [1] - 7:15
**aware** [1] - 26:6

## B

**backing** [1] - 6:21
**balance** [2] - 27:13, 27:18
**ball** [1] - 5:12
**based** [3] - 11:4, 24:13, 24:16
**basic** [1] - 23:1
**becomes** [1] - 25:13
**begin** [4] - 11:25, 24:11, 24:14, 25:4
**beginning** [2] - 10:12, 11:10
**behalf** [1] - 1:4
**behind** [1] - 20:23
**bench** [1] - 7:7
**best** [4] - 8:11, 30:16, 30:19, 36:23
**better** [7] - 16:5, 21:2, 27:4, 27:5, 28:7, 32:5, 33:10
**between** [1] - 28:5
**beyond** [1] - 16:12
**big** [2] - 6:17, 6:18
**bit** [5] - 7:5, 7:13, 17:7, 32:12, 33:1
**blow** [1] - 23:10
**blowing** [1] - 16:1
**board** [1] - 12:4
**books** [2] - 33:2, 33:4
**BRIAN** [1] - 2:2
**brief** [1] - 35:3
**broad** [1] - 28:7
**broadbrush** [1] - 12:9
**broader** [3] - 5:23, 11:4, 32:18
**burden** [1] - 23:16
**burdensome** [6] - 7:20, 10:20, 15:15, 21:24, 27:16, 27:23
**busier** [1] - 33:1

## C

**C24-0082-CJW** [1] - 1:7
**calendar** [1] - 8:23
**care** [1] - 25:15
**Case** [1] - 3:6
**case** [14] - 12:4, 12:12, 15:17, 15:24, 17:22, 18:7, 18:17, 18:20, 18:25, 24:4, 25:18, 26:25, 27:18, 30:21
**Casepoint** [1] - 4:13
**cases** [4] - 7:7, 15:18, 25:2, 35:9
**CASH** [40] - 2:8, 4:9, 4:12, 4:24, 5:2, 5:6, 6:13, 6:24, 8:9, 8:12, 8:23, 9:2, 9:5, 9:7, 12:16, 12:19, 13:22, 14:22, 18:13, 19:7, 20:7, 20:9, 20:11, 26:6, 29:24, 31:15, 31:19, 32:7, 32:11, 33:8, 33:14, 33:22, 33:24, 34:2, 34:5, 34:23, 35:1, 35:10, 36:3, 36:15
**Cash** [9] - 4:6, 6:6, 6:9, 12:7, 17:17, 26:4, 32:6, 33:6, 36:14
**CEDAR** [1] - 1:3
**Central** [2] - 33:24, 34:13
**certain** [2] - 23:9, 28:9
**certainly** [7] - 19:14, 20:11, 20:18, 29:14, 30:3, 32:13, 35:23
**CERTIFICATE** [1] - 36:21
**certify** [1] - 36:22
**Cervantes** [2] - 30:21, 30:23
**cetera** [1] - 15:6
**Chief** [1] - 1:11
**choice** [1] - 28:5
**City** [2] - 1:12, 2:14
**claim** [1] - 10:20
**claims** [1] - 18:25
**clarify** [1] - 13:22
**class** [6] - 15:1, 15:3, 18:2, 29:3, 29:11, 29:15
**clawback** [2] - 23:13, 28:14
**clear** [1] - 21:23
**client** [7] - 5:7, 6:11, 6:25, 7:2, 8:7, 22:16, 27:16
**client's** [1] - 35:25
**clients** [1] - 7:8
**collect** [2] - 5:8, 6:22
**collected** [9] - 4:18, 5:7, 6:11, 7:21, 16:3, 19:18, 22:6, 28:17, 34:15
**collecting** [4] - 4:15, 8:6, 15:25, 31:24
**collection** [6] - 4:19, 5:10, 5:14, 8:12, 10:11, 11:24
**Columbia** [1] - 2:7
**coming** [1] - 28:2
**commencing** [1] - 1:13
**comment** [1] - 17:20
**common** [1] - 26:13
**comp** [1] - 28:25
**companies** [1] - 15:6
**compel** [7] - 3:16, 18:1, 28:22, 30:2, 30:24, 35:1, 35:11
**complete** [1] - 12:1
**completed** [2] - 5:10, 6:13
**completion** [2] - 11:18, 23:10
**compliance** [1] - 31:19
**complied** [1] - 31:22

**compromise** [1] - 29:10
**concept** [1] - 12:20
**concern** [3] - 19:3, 19:16, 19:23
**concerned** [2] - 17:24, 18:5
**conclude** [1] - 36:19
**concluded** [1] - 36:21
**confer** [6] - 3:12, 11:11, 17:13, 31:9, 31:10, 32:3
**CONFERENCE** [1] - 1:8
**conference** [8] - 3:7, 7:17, 11:19, 32:3, 32:9, 32:21, 33:7, 34:13
**Conference** [1] - 1:11
**confidential** [1] - 23:21
**confirm** [1] - 3:25
**conflict** [1] - 18:4
**consequence** [1] - 23:11
**consider** [1] - 24:1
**considered** [1] - 20:3
**contact** [1] - 29:3
**continue** [1] - 33:5
**contracted** [1] - 30:9
**contractors** [1] - 15:4
**conversation** [4] - 7:23, 9:22, 26:20, 27:23
**conversations** [1] - 15:10
**correct** [3] - 4:24, 12:24, 36:22
**cost** [2] - 19:11, 25:17
**counsel** [14] - 3:9, 5:14, 5:20, 5:22, 8:21, 10:4, 13:1, 14:7, 14:12, 17:2, 19:14, 33:13, 33:16, 36:19
**count** [13] - 4:3, 5:15, 7:23, 12:14, 13:10, 13:12, 13:21, 17:11, 17:14, 24:14, 24:16, 25:5, 26:3
**counterproposal** [1] - 26:7
**counts** [12] - 5:13, 10:18, 11:4, 11:12, 15:13, 15:21, 16:6, 16:16, 19:19, 21:3, 32:17, 34:16
**couple** [1] - 3:8
**course** [3] - 11:16, 23:13, 31:3
**court** [1] - 35:20
**COURT** [72] - 1:2, 3:5, 4:11, 4:21, 5:1, 5:5, 6:5, 6:17, 7:4, 8:11, 8:14, 8:25, 9:3, 9:6, 9:9, 9:15, 9:23, 10:1, 12:6, 12:18, 13:9, 13:16, 13:19, 14:15, 14:18, 15:7, 17:6, 18:9, 18:15, 19:2, 19:16, 20:8, 20:10, 20:20, 21:13, 21:16, 21:22, 22:4, 22:12, 22:14, 23:18, 23:24, 25:10, 25:19, 26:10, 29:7, 29:9, 29:21, 30:5, 31:1, 31:4, 31:14, 31:16, 32:1, 32:9, 32:14, 32:24, 33:11, 33:15, 33:19, 33:23, 34:1, 34:3, 34:7, 34:12, 34:22, 34:25, 35:5, 35:13, 36:5, 36:16, 36:18
**Court** [2] - 1:12, 4:16
**Courthouse** [1] - 1:12
**cover** [2] - 14:7, 30:3
**covered** [4] - 28:22, 28:25, 29:1, 29:4
**crazy** [1] - 14:20
**criminal** [1] - 34:7
**CRR** [2] - 2:13, 36:24
**CRST** [6] - 1:8, 3:5, 7:10, 7:24, 22:9, 30:7
**curious** [2] - 3:13, 14:21
**current** [1] - 11:25
**custodial** [2] - 11:22, 15:8
**custodian** [7] - 4:2, 10:21, 13:9, 16:20, 16:24, 19:5, 24:15
**custodians** [10] - 4:16, 4:22, 4:23, 5:7, 5:20, 10:15, 16:15, 16:18, 17:15, 32:18


## D


**data** [9] - 4:15, 6:23, 7:1, 7:2, 28:21, 28:24, 29:2, 29:5, 34:15
**date** [3] - 8:9, 32:3, 33:12
**Date** [1] - 36:24
**days** [9] - 8:13, 8:14, 11:12, 16:1, 16:4, 20:17, 31:7, 32:11, 35:3
**DC** [1] - 2:7
**deadline** [7] - 11:18, 12:1, 12:2, 17:10, 28:1, 28:3, 31:20
**deadlines** [2] - 23:10, 31:25
**deal** [1] - 24:4
**dedicated** [1] - 7:2
**defendant** [1] - 21:6
**defendant's** [3] - 19:25, 31:16, 34:22
**defendants** [16] - 3:21, 10:13, 11:17, 15:16, 18:10, 20:22, 21:23, 22:25, 23:22, 23:24, 27:2, 27:7, 30:7, 31:3, 31:8, 32:17
**Defendants** [2] - 1:9, 2:8
**defendants'** [1] - 3:23
**defense** [1] - 33:13
**definition** [2] - 15:2, 15:3
**delay** [2] - 17:23, 18:4
**depositions** [1] - 33:9
**Des** [1] - 2:4
**designation** [1] - 23:21
**despite** [1] - 24:24
**detailed** [1] - 5:15
**determination** [1] - 21:3
**determine** [2] - 4:4, 18:19
**different** [3] - 10:4, 13:1, 15:5
**difficult** [2] - 14:23, 25:4
**digital** [4] - 2:13, 3:1, 36:22, 36:23
**DIGITAL** [1] - 1:1
**direct** [1] - 17:3
**disagree** [3] - 12:6, 22:10, 25:22
**disagreements** [1] - 23:4
**discovery** [9] - 7:15, 7:21, 12:11, 26:25, 30:21, 30:22, 30:23, 31:6, 35:6
**discuss** [5] - 3:19, 8:1, 30:25, 31:10, 31:12
**discussed** [2] - 5:16, 29:18
**discussing** [1] - 29:23
**discussion** [4] - 16:8, 23:2, 28:18, 30:12
**dismiss** [1] - 35:7
**dispute** [1] - 32:19
**disputes** [2] - 28:21, 35:6
**DISTRICT** [2] - 1:2, 1:2
**district** [2] - 35:8, 36:11
**District** [2] - 1:12
**DIVISION** [1] - 1:3
**docs** [1] - 34:17
**document** [3] - 16:21, 16:22, 21:7
**documents** [23] - 10:24, 11:22, 11:23, 11:25, 13:14, 14:23, 18:6, 18:11, 19:5, 19:11, 19:22, 20:2, 20:5, 20:16, 21:24, 22:8, 23:14, 23:17, 23:20, 24:12, 26:17, 28:16, 29:11
**done** [5] - 7:25, 13:23, 15:19, 27:15, 34:8
**down** [4] - 14:6, 24:6, 24:23, 25:21
**drawing** [1] - 12:4
**Drive** [1] - 2:4
**drivers** [3] - 15:1, 15:5, 17:19
**drives** [2] - 5:9, 5:10
**duplicating** [1] - 20:4
**during** [1] - 11:19


## E


**Eastern** [1] - 33:24
**efficient** [1] - 19:8
**effort** [2] - 10:11, 20:4
**eight** [1] - 7:6
**either** [3] - 18:23, 24:20, 27:16
**eliminate** [2] - 18:22, 21:11
**eliminated** [3] - 10:23, 11:2, 20:5
**eliminating** [1] - 19:1
**emails** [5] - 5:8, 5:11, 16:20, 17:5, 25:14
**employees** [1] - 15:5
**end** [3] - 19:20, 20:17, 25:13
**engage** [1] - 11:7
**enormous** [1] - 4:15
**entirely** [1] - 11:7
**entities** [2] - 7:9, 30:12
**entitled** [2] - 27:7, 36:23
**entity** [1] - 30:8
**ESI** [8] - 4:1, 4:12, 6:10, 8:8, 14:10, 15:8, 25:12, 25:14
**especially** [2] - 25:20, 35:20
**ESQ** [5] - 2:2, 2:5, 2:8, 2:9, 2:9
**essence** [1] - 26:1
**essentially** [1] - 7:10
**estimate** [2] - 4:1, 8:11
**et** [3] - 1:8, 3:6, 15:6
**exactly** [4] - 6:25, 7:16, 8:18, 14:23
**except** [1] - 33:21
**expand** [1] - 21:9
**expect** [2] - 16:2, 34:14
**Expedited** [2] - 1:8, 3:5
**expense** [1] - 25:16
**expensive** [1] - 22:16
**experienced** [1] - 35:21
**exponentially** [2] - 16:19, 23:23
**extension** [1] - 11:18
**extra** [1] - 25:8


## F


**fact** [2] - 5:23, 8:2
**fair** [1] - 26:3
**fairly** [1] - 15:2
**faith** [1] - 11:8
**familiar** [2] - 7:11, 12:20
**family** [1] - 17:3
**far** [4] - 10:2, 15:13, 20:24, 21:1
**Feary** [1] - 2:10
**feasible** [1] - 29:12
**Federal** [1] - 1:12
**federal** [1] - 35:20
**Fegan** [1] - 2:6
**fewer** [1] - 35:19
**figure** [1] - 30:11
**filed** [6] - 3:16, 7:7, 7:14, 18:1, 28:22, 29:16
**finalizing** [1] - 19:13
**fine** [3] - 27:14, 32:1, 34:24
**finish** [1] - 34:3
**firm** [1] - 24:24
**first** [2] - 3:10, 14:5
**five** [1] - 31:7
**flabbergasted** [1] - 15:24
**flagged** [1] - 30:21
**focus** [1] - 30:7
**following** [1] - 3:1

**FOR** [1] - 1:2
**foregoing** [1] - 36:22
**formal** [1] - 3:21
**forth** [3] - 3:13, 8:22, 9:12
**forward** [3] - 4:7, 4:12, 30:16
**four** [3] - 8:24, 11:12, 26:25
**framework** [2] - 8:17, 8:18
**frankly** [5] - 7:24, 14:8, 15:9, 15:23, 20:20
**Friday** [3] - 5:25, 13:23, 26:8
**FROM** [1] - 1:1
**front** [2] - 8:10, 24:7
**frustrated** [1] - 7:6
**frustration** [5] - 7:5, 10:10, 11:16, 25:23, 26:19
**full** [1] - 27:13
**funeral** [1] - 26:8

**G**

**Gannon** [3] - 5:11, 5:17, 19:6
**Gannon's** [1] - 5:14
**Garvin** [1] - 2:10
**gathered** [4] - 6:14, 8:14, 8:16, 22:25
**gathering** [4] - 7:11, 7:17, 8:7, 15:11
**general** [1] - 18:6
**given** [3] - 14:8, 19:11, 36:23
**glacial** [1] - 19:3
**Goplerud** [1] - 2:3
**gotta** [2] - 18:18, 24:18
**Grand** [1] - 2:4
**grant** [2] - 35:14, 35:23
**gritty** [2] - 9:10, 12:11
**ground** [1] - 30:3
**guess** [55] - 3:20, 4:6, 6:10, 6:21, 6:23, 6:25, 8:6, 8:19, 10:3, 12:7, 12:8, 12:13, 13:9, 13:10, 13:20, 14:20, 15:7, 15:20, 16:13, 18:9, 19:2, 19:16, 19:22, 19:24, 20:24, 21:1, 21:22, 22:7, 22:14, 22:19, 23:5, 23:24, 25:10, 25:23, 26:10, 26:16, 26:19, 27:2, 27:6, 27:11, 27:21, 29:12, 30:14, 30:18, 31:16, 32:6, 32:9, 32:14, 33:1, 33:6, 33:12, 34:9, 36:8
**guys** [18] - 3:13, 10:2, 19:4, 19:17, 20:21, 20:24, 21:2, 26:16, 30:1, 30:3, 30:6, 30:16, 32:3, 32:10, 33:2, 33:19, 34:15, 35:17

**H**

**half** [9] - 4:18, 4:19, 5:6, 6:10, 8:15, 9:18, 9:20, 10:22, 11:14
**handle** [1] - 3:25
**HANSON** [8] - 2:9, 9:14, 9:16, 9:25, 18:16, 23:25, 25:11, 26:4
**Hanson** [8] - 2:10, 3:7, 4:7, 6:3, 6:5, 6:6, 9:25, 18:16
**happy** [4] - 30:24, 31:10, 36:5, 36:11
**hard** [3] - 12:10, 22:20, 24:2
**HARLEY** [1] - 1:4
**harm** [3] - 22:9, 23:15, 23:22
**head** [1] - 10:10
**hear** [7] - 6:18, 7:20, 9:13, 18:7, 34:4, 35:5, 35:9
**heard** [3] - 11:6, 29:17, 29:18
**hearing** [8] - 8:4, 16:9, 35:11, 35:13, 35:16, 35:17, 36:20, 36:21
**hears** [1] - 35:4
**held** [1] - 1:11
**help** [11] - 4:4, 12:16, 15:13, 15:21, 16:12, 20:21, 30:12, 30:16, 30:17, 30:20, 36:8
**helpful** [7] - 8:17, 9:10, 9:12, 12:23, 21:21, 31:4, 35:17
**hi** [2] - 6:5
**high** [1] - 28:11
**hit** [35] - 4:3, 5:13, 5:15, 7:22, 10:9, 10:16, 10:17, 11:4, 11:12, 12:8, 12:14, 13:10, 13:11, 13:12, 13:21, 14:1, 15:13, 15:21, 16:6, 16:16, 17:11, 17:14, 19:15, 19:19, 20:3, 20:13, 21:3, 24:14, 24:16, 25:5, 26:2, 27:10, 32:17, 34:16
**hits** [19] - 5:17, 5:24, 10:23, 11:3, 12:15, 12:21, 13:6, 14:20, 16:19, 16:23, 16:25, 17:3, 17:4, 17:12, 21:7, 21:9, 21:12, 25:24
**hitting** [1] - 10:24
**holding** [1] - 8:18
**honestly** [1] - 30:15
**Honor** [26] - 4:24, 8:9, 8:24, 9:16, 10:7, 10:9, 11:10, 11:17, 12:24, 13:25, 14:22, 16:14, 18:13, 18:16, 19:7, 20:7, 21:4, 22:2, 23:7, 23:25, 31:19, 32:16, 33:14, 34:21, 34:23, 35:4
**Honorable** [1] - 1:11
**hopefully** [2] - 8:16, 32:18
**hours** [2] - 9:18, 9:20
**hundred** [3] - 11:2, 21:11, 26:23
**hurt** [1] - 23:15

**I**

**IA** [2] - 2:4, 2:14
**idea** [1] - 32:5
**identified** [1] - 13:15
**identify** [1] - 10:4
**immediately** [1] - 10:13
**IN** [2] - 1:2, 2:12
**Inc** [1] - 3:6
**INC** [1] - 1:8
**including** [1] - 16:17
**increased** [1] - 21:19
**increasing** [1] - 16:19
**incredibly** [2] - 11:9, 11:15
**independent** [1] - 15:4
**Indianapolis** [1] - 2:12
**indicate** [1] - 35:22
**indicates** [1] - 3:11
**individually** [1] - 1:4
**information** [20] - 4:2, 4:18, 5:15, 5:19, 7:12, 7:18, 7:22, 8:3, 8:7, 15:11, 15:25, 16:3, 16:11, 21:25, 22:6, 24:3, 28:19, 29:3, 29:15, 31:24
**informative** [1] - 16:17
**initial** [4] - 7:15, 7:22, 14:1, 34:7
**initials** [1] - 6:7
**insight** [2] - 27:4, 36:4
**instead** [1] - 14:11
**intend** [1] - 19:14
**interject** [1] - 9:17
**interrogatory** [3] - 28:19, 28:21, 28:24
**involved** [2] - 7:12, 25:2
**IOWA** [1] - 1:2
**Iowa** [2] - 1:12, 1:13
**IRELAND** [5] - 2:9, 12:24, 13:13, 13:25, 14:16
**Ireland** [2] - 25:6, 26:4
**irrelevant** [6] - 17:19, 17:21, 22:8, 23:15, 24:2, 24:8
**issue** [5] - 17:25, 30:21, 30:24, 31:12, 35:15
**issues** [4] - 3:14, 3:18, 15:8, 22:24

**J**

**James** [1] - 6:3
**JAMES** [1] - 2:9
**January** [3] - 7:15, 10:13, 10:16
**Jim** [2] - 9:25, 18:16
**join** [1] - 3:7
**joined** [1] - 6:3
**Judge** [1] - 1:11
**judge** [1] - 35:8
**judge's** [1] - 36:11
**judgment** [1] - 35:7
**July** [2] - 33:11, 34:13
**jump** [1] - 8:19
**June** [5] - 1:13, 11:20, 12:1, 31:20, 32:8
**jurisdiction** [2] - 30:20, 31:6
**jurisdiction-related** [1] - 31:6

**K**

**K.E** [1] - 1:11
**keep** [1] - 20:12
**keeping** [1] - 27:18
**KELCHNER** [1] - 1:4
**Kelchner** [1] - 3:5
**Kelly** [1] - 1:11
**kind** [21] - 3:9, 3:19, 3:22, 5:11, 6:6, 7:14, 12:12, 13:11, 15:7, 15:18, 16:1, 20:21, 22:18, 22:19, 23:11, 25:6, 26:10, 30:11, 30:14, 35:25
**kinds** [1] - 15:18
**Klemperer** [11] - 10:3, 10:8, 16:13, 21:1, 28:23, 30:18, 32:14, 33:15, 34:9, 34:19, 36:16
**KLEMPERER** [19] - 2:5, 10:7, 16:14, 17:7, 21:4, 23:7, 23:19, 28:24, 29:8, 29:14, 29:22, 30:23, 31:2, 31:5, 32:16, 33:17, 34:10, 34:20, 36:17
**knowing** [2] - 14:23, 28:8

**L**

**large** [1] - 16:23
**last** [4] - 5:25, 7:16, 11:10, 11:19
**latter** [1] - 4:10
**law** [1] - 18:7
**lawsuit** [1] - 7:14
**lawsuits** [1] - 7:7
**lawyer** [1] - 19:10
**lawyers** [5] - 15:17, 24:25, 25:15, 27:17, 35:21
**lay** [2] - 9:10, 29:16
**leading** [1] - 11:15
**least** [6] - 5:8, 6:1, 26:2, 26:12, 26:18, 28:7
**led** [1] - 26:2
**less** [1] - 35:21
**less-experienced** [1] - 35:21
**letter** [2] - 10:15, 14:7
**letters** [6] - 3:12, 3:15, 8:21, 9:4, 9:9, 9:12
**light** [1] - 8:2
**Light** [1] - 2:10
**limit** [1] - 18:21
**limitation** [1] - 36:23
**limiting** [2] - 13:4, 23:12
**limits** [2] - 24:9, 27:15
**line** [1] - 13:20
**list** [2] - 14:25, 19:15
**listed** [1] - 28:21
**litigation** [1] - 7:12
**litigation's** [1] - 15:15
**lives** [1] - 32:20
**loaded** [4] - 4:2,

16:15, 22:25, 28:17
**location** [1] - 24:19
**logistical** [1] - 36:6
**look** [3] - 3:17, 30:10, 31:25
**looked** [1] - 9:7
**looking** [5] - 8:23, 14:4, 20:4, 23:3, 29:10
**looks** [2] - 10:2, 35:14
**loss** [3] - 7:14, 20:21, 30:15

## M

**Magistrate** [1] - 1:11
**Mahoney** [1] - 1:11
**mailing** [1] - 9:12
**main** [1] - 19:3
**majority** [1] - 13:7
**mark** [2] - 24:20
**Market** [1] - 2:11
**MARTY** [1] - 2:2
**massive** [1] - 5:18
**matter** [2] - 20:5, 36:23
**matters** [2] - 25:2, 35:6
**mean** [25] - 7:10, 7:24, 8:3, 10:10, 12:25, 14:20, 15:9, 16:23, 19:4, 19:22, 20:1, 20:3, 22:7, 22:19, 23:14, 24:6, 26:18, 27:7, 27:25, 28:6, 28:16, 28:25, 30:9, 35:14, 36:7
**meaningful** [4] - 15:9, 16:7, 23:2, 28:18
**meantime** [1] - 32:13
**meet** [5] - 3:11, 11:11, 17:13, 31:8, 31:10
**meet-and-confer** [2] - 11:11, 17:13
**meeting** [1] - 6:4
**member** [2] - 29:3, 29:15
**members** [2] - 18:3, 29:11
**mentioned** [3] - 17:17, 17:25, 21:5
**mentioning** [1] - 17:2
**messages** [2] - 5:9, 5:11
**met** [1] - 11:10
**MICHAEL** [1] - 2:5
**mid** [1] - 20:18
**might** [5] - 15:1, 29:12, 32:5, 34:23, 35:16
**Mike** [2] - 10:7, 29:24
**Mike's** [1] - 20:12
**mind** [1] - 16:1
**minor** [1] - 21:9
**misleading** [1] - 17:8
**misremembering** [1] - 29:22
**Miss** [9] - 4:6, 6:6, 6:9, 12:7, 17:17, 26:4, 32:6, 33:6, 36:14
**mixed** [1] - 5:3
**modifier** [1] - 13:3
**Moines** [1] - 2:4
**moment** [1] - 6:9
**money** [2] - 35:25
**month** [4] - 7:16, 8:16, 11:11, 19:17
**most** [2] - 12:25, 13:13
**motion** [10] - 3:16, 18:1, 28:22, 28:25, 29:16, 30:2, 30:24, 31:3, 35:1, 35:11
**motions** [3] - 35:7, 35:8
**move** [5] - 4:7, 4:12, 11:20, 23:22, 32:20
**moving** [4] - 19:4, 19:12, 20:12, 27:19
**MR** [29] - 9:14, 9:16, 9:25, 10:7, 12:24, 13:13, 13:25, 14:16, 16:14, 17:7, 18:16, 21:4, 23:7, 23:19, 23:25, 25:11, 26:4, 28:24, 29:8, 29:14, 29:22, 30:23, 31:2, 31:5, 32:16, 33:17, 34:10, 34:20, 36:17
**MS** [39] - 4:9, 4:12, 4:24, 5:2, 5:6, 6:13, 6:24, 8:9, 8:12, 8:23, 9:2, 9:5, 9:7, 12:16, 12:19, 13:22, 14:22, 18:13, 19:7, 20:7, 20:9, 20:11, 26:6, 29:24, 31:15, 31:19, 32:7, 32:11, 33:8, 33:14, 33:22, 33:24, 34:2, 34:5, 34:23, 35:1, 35:10, 36:3, 36:15
**multiple** [5] - 7:7, 7:9, 9:21, 14:25, 15:17

## N

**nail** [1] - 10:9
**naked** [1] - 24:6
**name** [1] - 18:3
**names** [4] - 17:19, 17:21, 18:2, 29:3
**narrow** [5] - 5:21, 5:22, 10:6, 14:3, 14:16
**narrowed** [1] - 13:19
**narrowing** [1] - 14:9
**necessarily** [5] - 9:20, 16:9, 16:19, 16:23, 24:2
**necessary** [1] - 25:9
**need** [12] - 13:24, 16:21, 17:18, 27:19, 28:16, 30:6, 30:19, 31:17, 32:4, 32:5, 33:5, 34:18
**needed** [4] - 14:9, 15:18, 35:24, 36:2
**needs** [1] - 7:24
**negotiate** [1] - 19:19
**negotiations** [1] - 11:8
**new** [4] - 7:8, 7:10, 11:5, 14:13
**news** [1] - 15:16
**next** [7] - 10:25, 11:12, 16:4, 30:22, 32:19, 33:7, 34:12
**nitty** [2] - 9:10, 12:11
**nitty-gritty** [2] - 9:10, 12:11
**nondispositive** [1] - 35:6
**nonresponsive** [1] - 24:21
**normal** [1] - 35:12
**NORTHERN** [1] - 1:2
**Northern** [1] - 1:12
**Northwest** [1] - 2:7
**noted** [2] - 14:7, 29:9
**notice** [1] - 30:4
**noting** [1] - 15:11
**number** [9] - 13:5, 14:1, 14:8, 16:19, 16:23, 16:24, 17:4, 17:7, 18:24
**Number** [1] - 3:6
**numbers** [1] - 17:2

## O

**obviously** [5] - 16:5, 19:9, 24:23, 27:15, 30:24
**OF** [2] - 1:2, 1:8
**offer** [1] - 30:4
**one** [25] - 3:10, 5:3, 5:12, 9:18, 13:9, 13:17, 13:23, 16:20, 16:21, 16:22, 17:16, 19:5, 22:3, 24:15, 26:10, 27:6, 27:21, 27:25, 29:1, 29:9, 32:4, 32:5, 34:23
**ones** [1] - 26:13
**open** [2] - 32:25, 33:20
**OPERATOR** [1] - 6:3
**opportunities** [1] - 35:19
**opposing** [2] - 8:20, 17:2
**oral** [1] - 35:23
**order** [3] - 18:18, 23:20, 24:5
**original** [1] - 21:6
**originally** [1] - 11:19
**outliers** [1] - 12:22
**overly** [1] - 21:24
**overwhelming** [1] - 25:13

## P

**p.m** [1] - 36:21
**pace** [2] - 10:11, 19:3
**painstaking** [1] - 15:2
**pants** [2] - 24:6, 25:21
**partially** [1] - 29:1
**participate** [1] - 35:21
**particular** [1] - 27:17
**parties** [6] - 12:10, 27:8, 27:19, 28:14, 35:13, 36:1
**party** [2] - 3:25, 6:12
**people** [2] - 17:21, 22:5
**percent** [5] - 10:23, 11:3, 21:12, 21:20, 26:23
**percentage** [2] - 28:10, 28:11
**periods** [1] - 9:19
**person** [5] - 13:18, 16:16, 16:20, 16:22, 22:3
**personal** [2] - 30:20, 31:5
**perspective** [4] - 19:25, 31:17, 34:21, 34:22
**phase** [1] - 7:22
**PHONE** [1] - 6:3
**phone** [3] - 3:13, 8:20, 9:17
**piece** [1] - 4:12
**place** [4] - 14:5, 23:20, 24:5, 27:4
**Plaintiff** [2] - 1:6, 2:2
**plaintiff** [8] - 13:11, 14:4, 23:16, 24:7, 25:11, 25:24, 25:25
**plaintiff's** [11] - 5:13, 5:20, 5:22, 13:1, 13:13, 14:2, 14:7, 14:12, 19:14, 33:16, 34:21
**plaintiffs** [7] - 10:5, 13:2, 15:17, 16:10, 22:24, 23:6, 30:9
**planning** [1] - 35:2
**plans** [1] - 17:20
**plus** [1] - 17:4
**point** [25] - 6:8, 6:19, 8:1, 14:10, 15:10, 15:11, 15:22, 15:24, 16:6, 19:21, 20:22, 22:1, 22:20, 22:22, 23:9, 26:19, 26:22, 28:4, 28:7, 28:16, 30:10, 30:15, 32:2, 32:3, 34:14
**pointed** [1] - 19:9
**points** [1] - 25:20
**position** [2] - 7:18, 20:16
**possible** [2] - 17:15, 19:9
**practice** [3] - 35:12, 36:7, 36:11
**practitioner** [1] - 36:9
**precluded** [1] - 19:1
**predict** [1] - 14:24
**preference** [2] - 33:6, 33:20
**premature** [1] - 31:12
**prepared** [1] - 3:1
**pretty** [4] - 4:4, 7:11, 32:25, 35:15
**previously** [1] - 5:16
**primary** [1] - 5:12
**privilege** [6] - 18:12, 22:17, 23:8, 23:12, 27:10, 28:2
**problem** [1] - 18:8
**proceedings** [1] - 36:22
**process** [16] - 5:19, 6:15, 7:3, 7:17, 8:8, 11:14, 17:23, 20:14, 20:23, 23:23, 24:15, 26:21, 26:24, 27:13, 27:22, 27:25
**processes** [2] - 27:3, 28:17
**produce** [7] - 7:21, 18:11, 18:18, 23:14, 24:10, 29:2, 29:6
**produced** [2] - 23:21, 30:13
**producing** [2] - 11:25,

22:9
**production** [6] - 11:22, 12:2, 15:8, 17:24, 18:4, 23:23
**progress** [5] - 8:4, 9:11, 11:9, 28:3, 34:16
**prohibitive** [1] - 25:17
**promised** [1] - 11:12
**promptly** [1] - 19:15
**proposal** [4] - 11:4, 13:14, 29:17, 29:19
**propose** [2] - 29:24, 32:4
**proposed** [12] - 6:1, 10:16, 10:19, 10:22, 11:1, 12:14, 13:2, 13:11, 21:5, 21:7, 26:14
**proposing** [2] - 10:6, 29:2
**protective** [2] - 23:20, 24:5
**provide** [3] - 11:21, 19:14, 29:17
**provided** [7] - 3:11, 5:14, 5:23, 5:24, 5:25, 11:21, 14:2
**providing** [1] - 29:25
**provision** [1] - 28:14
**pull** [2] - 7:1, 24:6
**pulled** [1] - 4:20
**purportedly** [1] - 17:21
**pushing** [1] - 32:11
**put** [2] - 24:19, 24:25

**Q**

**questionable** [1] - 24:21
**questions** [5] - 3:8, 3:23, 6:7, 36:6, 36:10
**quite** [2] - 7:13, 19:12

**R**

**raised** [1] - 18:1
**ran** [2] - 12:14, 13:25
**RAPIDS** [1] - 1:3
**RDR** [2] - 2:13, 36:24
**reached** [1] - 10:13
**react** [1] - 17:16
**reading** [1] - 17:11
**real** [1] - 23:3
**realize** [1] - 24:4
**realized** [1] - 34:5
**really** [22] - 3:17, 7:18, 7:19, 7:25, 9:11, 16:5, 16:7, 16:12, 19:2, 20:21, 20:22, 22:9, 23:21, 26:21, 27:4, 27:24, 28:18, 30:7, 30:14, 30:17, 31:9
**reasonable** [11] - 11:2, 11:7, 13:21, 20:19, 21:10, 21:11, 21:13, 21:17, 25:12, 26:14, 26:18
**reasons** [1] - 16:17
**receive** [6] - 10:16, 10:17, 11:13, 17:13, 17:14, 32:17
**received** [7] - 10:19, 11:23, 17:11, 29:5, 31:7, 31:8, 31:11
**receiving** [1] - 7:2
**recent** [2] - 12:25, 13:14
**recognizing** [1] - 31:21
**record** [1] - 9:24
**RECORDING** [1] - 1:1
**recording** [4] - 2:13, 3:2, 36:22, 36:23
**redact** [1] - 17:20
**redacting** [1] - 17:25
**redactions** [3] - 18:2, 18:3, 18:6
**regarding** [2] - 5:14, 11:8
**regularly** [1] - 4:14
**relate** [3] - 18:17, 18:20, 18:24
**related** [3] - 15:3, 31:6, 35:8
**relevance** [9] - 18:6, 18:12, 18:14, 22:21, 24:3, 27:8, 27:9, 27:11, 28:2
**relevant** [3] - 15:1, 23:17, 28:10
**reluctant** [1] - 6:24
**remember** [1] - 29:23
**remind** [1] - 4:16
**removed** [1] - 13:3
**removing** [1] - 12:22
**reply** [1] - 35:3
**report** [2] - 14:1, 31:24
**reports** [1] - 4:3
**request** [4] - 31:8, 31:11, 35:13, 36:1
**requested** [3] - 5:16, 18:21, 18:24
**requesting** [1] - 16:10
**requests** [1] - 7:15
**resources** [1] - 7:3
**respond** [1] - 35:2
**responded** [5] - 5:20, 5:22, 10:25, 30:1, 31:3
**response** [3] - 3:21, 12:7, 19:24
**responses** [1] - 31:7
**responsive** [3] - 12:23, 13:14, 24:20
**rest** [2] - 4:20, 6:22
**result** [2] - 5:18, 5:23
**returned** [2] - 21:7, 21:8
**review** [26] - 14:19, 15:2, 16:21, 17:17, 18:11, 18:18, 19:10, 19:22, 20:2, 20:16, 21:23, 22:17, 22:21, 23:12, 24:7, 24:11, 24:22, 26:24, 27:3, 27:8, 27:10, 27:11, 27:13, 28:1, 28:5, 28:9
**reviewed** [2] - 3:17, 5:19
**reviewing** [8] - 18:12, 18:13, 19:5, 23:8, 24:1, 24:13, 26:17, 34:16
**revised** [3] - 14:6, 21:8, 21:19
**revision** [1] - 21:5
**revisions** [6] - 10:19, 10:22, 11:1, 11:2, 11:5, 12:25
**revisit** [1] - 28:12
**RFPs** [1] - 10:12
**Ridge** [1] - 2:4
**riffraff** [1] - 13:5
**ripe** [2] - 28:21, 32:19
**Road** [1] - 2:7
**rolling** [2] - 5:12, 11:21
**rough** [1] - 8:17
**roughly** [4] - 6:10, 13:11, 13:21, 14:19
**rules** [2] - 18:23, 24:9
**ruling** [1] - 35:16
**run** [6] - 7:22, 10:21, 13:10, 15:12, 19:18, 22:6
**running** [3] - 13:10, 16:6, 20:13

**S**

**s/Shelly** [1] - 36:24
**sample** [1] - 29:25
**sampling** [2] - 29:11, 29:18
**schedule** [1] - 12:5
**scope** [3] - 14:3, 18:23, 21:10
**Scopelitis** [1] - 2:10
**Scott** [1] - 2:6
**search** [19] - 10:2, 10:15, 10:17, 11:8, 11:11, 15:8, 15:21, 16:8, 19:19, 20:6, 20:13, 20:25, 21:12, 21:19, 25:7, 25:12, 28:12, 32:20, 34:16
**searches** [3] - 13:2, 13:8, 14:3
**second** [1] - 24:22
**sections** [1] - 28:20
**see** [5] - 3:21, 6:1, 22:17, 22:18, 27:2
**seem** [2] - 8:4, 14:20
**segregate** [1] - 24:19
**Semmler** [3] - 2:13, 36:24, 36:24
**sense** [13] - 7:5, 14:3, 20:24, 21:2, 23:9, 23:13, 28:7, 28:14, 29:4, 32:7, 32:12, 32:22, 32:23
**sent** [4] - 10:15, 10:25, 21:5, 26:7
**series** [1] - 33:8
**served** [2] - 10:12, 31:6
**set** [7] - 12:25, 14:2, 14:13, 28:1, 28:24, 32:2, 32:18
**sets** [1] - 28:21
**setting** [1] - 27:14
**share** [1] - 10:10
**shared** [3] - 5:8, 5:10, 5:13
**Shelly** [2] - 2:13, 36:24
**shifts** [1] - 23:16
**Shindler** [1] - 2:2
**short** [1] - 9:21
**similarly** [1] - 1:5
**single** [2] - 10:21, 16:16
**Sioux** [2] - 1:12, 2:14
**sit** [1] - 26:22
**situated** [1] - 1:5
**Sixth** [2] - 1:12, 2:13
**size** [2] - 19:11, 24:24
**slightly** [1] - 11:3
**slow** [3] - 11:9, 11:15, 17:18
**small** [1] - 12:21
**sometimes** [1] - 27:9
**soon** [1] - 17:15
**sooner** [3] - 16:4, 16:5, 20:16
**sorry** [3] - 21:17, 34:6
**sort** [1] - 6:23
**sorts** [1] - 15:1
**sound** [1] - 16:10
**sounds** [3] - 11:23, 15:22, 23:23
**SPEAKER** [7] - 13:17, 20:1, 21:15, 21:18, 22:2, 22:10, 22:13
**speaking** [2] - 9:24, 25:6
**Specialized** [3] - 29:25, 30:8, 30:10
**specific** [1] - 15:20
**specifically** [1] - 18:2
**speed** [1] - 7:24
**stand** [1] - 25:21
**Standard** [1] - 34:14
**start** [18] - 3:8, 4:9, 8:6, 8:7, 8:8, 10:14, 16:1, 16:6, 19:12, 22:18, 22:25, 26:23, 26:24, 27:3, 27:14, 27:22, 28:17, 33:12
**started** [5] - 6:6, 19:4, 26:17, 26:21, 27:25
**starting** [2] - 19:21, 30:10
**statement** [1] - 26:3
**STATES** [1] - 1:2
**States** [1] - 1:12
**status** [7] - 3:7, 7:16, 11:24, 32:2, 32:9, 33:7, 34:12
**STATUS** [1] - 1:8
**Status** [1] - 1:11
**step** [1] - 11:14
**still** [11] - 4:15, 4:20, 5:8, 5:17, 7:17, 10:2, 13:8, 15:10, 15:22, 19:13, 19:19
**straightforward** [1] - 35:15
**Street** [3] - 1:12, 2:11, 2:13
**string** [1] - 21:12
**strings** [2] - 13:2, 21:6
**strip** [1] - 24:6
**strokes** [1] - 12:9
**stuff** [3] - 7:19, 7:25, 8:1
**subject** [1] - 18:20
**submission** [1] - 3:10
**substantial** [3] - 11:18, 19:12, 23:10
**substantially** [3] - 12:1, 17:23, 18:4
**substantive** [1] - 13:8
**suggestion** [2] - 20:12, 23:8
**Suite** [3] - 2:3, 2:6,

2:11
**summary** [1] - 35:7
**summer** [3] - 19:20, 20:17, 20:18
**system** [2] - 4:13, 36:23

## T

**table** [2] - 3:19, 22:24
**Team** [1] - 5:9
**Teams** [1] - 5:10
**terabytes** [3] - 4:17, 4:19, 6:16
**term** [1] - 10:17
**terms** [50] - 5:21, 5:22, 5:23, 5:24, 6:2, 10:2, 10:5, 10:6, 10:15, 10:18, 10:21, 10:23, 11:8, 11:11, 12:8, 12:14, 13:4, 13:11, 13:20, 14:2, 14:6, 14:10, 14:13, 15:8, 15:21, 16:8, 19:8, 19:13, 19:20, 20:6, 20:13, 20:25, 21:6, 21:8, 21:10, 21:19, 24:16, 25:7, 25:12, 25:25, 26:2, 26:12, 26:13, 27:10, 28:12, 32:20, 34:16
**they've** [4] - 6:13, 7:2, 18:21, 29:5
**thinking** [1] - 3:9
**third** [2] - 3:25, 6:12
**third-party** [2] - 3:25, 6:12
**thoroughness** [1] - 28:5
**thoughts** [7] - 14:21, 16:13, 23:6, 27:5, 30:18, 32:6, 32:15
**ti** [1] - 28:20
**timeframes** [1] - 23:3
**timing** [2] - 32:5, 33:7
**today** [8] - 3:19, 26:9, 30:17, 31:12, 31:18, 33:3, 33:4, 34:18
**together** [1] - 35:9
**took** [1] - 13:4
**topic** [1] - 29:19
**topics** [1] - 3:19
**total** [1] - 17:14
**transaction** [1] - 25:2
**Transcribed** [1] - 2:13
**TRANSCRIBED** [1] - 1:1
**transcript** [2] - 3:1, 36:22
**TRANSCRIPT** [1] - 1:8
**trial** [1] - 35:8
**trial-related** [1] - 35:8
**truly** [3] - 4:14, 22:8, 23:14
**try** [4] - 3:14, 10:6, 20:12, 30:10
**trying** [9] - 8:2, 10:3, 12:9, 19:8, 19:19, 26:20, 27:12, 27:18, 28:6
**Tuesday** [2] - 33:11, 34:13
**turn** [1] - 24:3
**tweak** [1] - 21:9
**twice** [1] - 16:22
**two** [5] - 9:18, 9:20, 11:13, 18:24, 32:19
**type** [1] - 36:6
**types** [2] - 14:3, 15:4
**typically** [1] - 35:11

## U

**umbrella** [1] - 7:9
**under** [5] - 7:9, 8:1, 18:7, 18:22, 23:21
**UNIDENTIFIED** [7] - 13:17, 20:1, 21:15, 21:18, 22:2, 22:10, 22:13
**Unintelligible** [1] - 14:16
**unintelligible** [11] - 13:4, 13:6, 13:24, 14:4, 17:3, 21:18, 22:6, 25:11, 31:15, 36:8
**unintelligible)** [5] - 9:2, 9:5, 21:15, 33:21, 34:2
**UNITED** [1] - 1:2
**United** [1] - 1:11
**universe** [1] - 17:15
**unreasonable** [2] - 16:11, 21:24
**up** [7] - 5:3, 6:9, 6:21, 7:24, 12:15, 25:13, 28:2
**updated** [1] - 31:23
**uploaded** [7] - 6:12, 6:15, 6:19, 8:17, 16:3, 19:18, 34:15
**uploading** [1] - 6:21
**usual** [1] - 35:8

## V

**value** [1] - 25:17
**variety** [1] - 16:17
**vast** [1] - 13:7
**vendor** [6] - 3:25, 4:14, 6:12, 6:15, 6:20, 16:4
**versus** [2] - 15:4, 25:17
**view** [1] - 5:17
**voluminous** [1] - 5:18
**von** [11] - 10:3, 10:8, 16:13, 21:1, 28:23, 30:18, 32:14, 33:15, 34:9, 34:19, 36:16
**VON** [19] - 2:5, 10:7, 16:14, 17:7, 21:4, 23:7, 23:19, 28:24, 29:8, 29:14, 29:22, 30:23, 31:2, 31:5, 32:16, 33:17, 34:10, 34:20, 36:17
**vs** [1] - 1:7

## W

**wait** [3] - 3:7, 4:7, 26:22
**waiting** [1] - 21:2
**wants** [1] - 25:25
**Washington** [1] - 2:7
**waste** [1] - 35:24
**ways** [1] - 12:3
**week** [10] - 5:25, 10:14, 11:13, 11:14, 32:19, 32:22, 32:24, 32:25, 33:9
**weeks** [1] - 11:13
**Weese** [1] - 2:3
**welcome** [1] - 23:5
**West** [2] - 2:4, 2:11
**willing** [1] - 11:7
**wonder** [1] - 31:22
**wonderful** [2] - 17:10, 32:17
**works** [2] - 34:9, 34:10

## Y

**years** [2] - 7:6, 26:25
**yesterday** [3] - 3:17, 18:1, 26:8
**yourself** [1] - 10:4

## Z

**zero** [5] - 10:24, 11:23, 12:15, 13:6, 21:8