# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> vs. <br><br> CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc. and John Smith, an individual <br><br> Defendant(s). | CASE NO. 1:24-cv-00082-CJW-KEM <br><br> Honorable Judge C.J. Williams |

## JOINT NOTICE IN ADVANCE OF STATUS CONFERENCE HEARING

Pursuant to the Court's Order on June 4, 2025 (ECF No. 78), Plaintiff, Harley Kelcher, and Defendants, CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. (Expedited), CRST Lincoln Sales, Inc., CRST Specialized Transportation, Inc. (Specialized) and John Smith, hereby jointly submit a notice summarizing the issues, deadlines, and matters they would like to address during the July 1, 2025 status conference hearing:

**Plaintiff's Position**

1. **CRST's Production of ESI**

   a. <u>Plaintiff's Position:</u>

      i. On June 4, the Court found that Defendants had not "acted diligently" in producing discovery. ECF 79. For instance, "Defendants should have started gathering ESI from known relevant custodians as soon as the discovery requests

1

were served in January; instead, Defendants waited until roughly May—despite the fact that they agreed on March 6 to have substantial completion of discovery by May 21." The Court ordered Defendants to ramp up their collection, review, and production efforts, with rolling productions from agreed upon document custodians. Unfortunately, since that time, Defendants:

- Have not made a single production of custodial documents;

- Have reviewed only 70% of a single custodian's files (Mike Gannon), with none yet produced;[1]

- Misled Plaintiff into believing they were utilizing Plaintiff's slightly broader search terms in the review of Gannon's files but disclosed for the first time on June 27 (and only in response to Plaintiff's direct question) that they were in fact using their narrower set of terms;[2]

- Only completed collection and processing for the remaining 25 custodians on June 26;

---

[1] Defendants' counsel stated they needed client signoff before making productions because even responsive documents may be withheld if production was objectionable to the client. Counsel identified financial documents as a category of documents that may be withheld. Counsel assured Plaintiff that any categories of withheld documents would be identified so that Plaintiff could challenge the withholding if appropriate.

[2] Problems with Defendants' narrowed terms include reducing the number of hits for some strings from over 700 to 0, something the Court agreed was not reasonable during the June 3 conference. After the June 3 conference, Defendants provided Plaintiff with hit counts on Plaintiff's slightly broader terms. On June 4, Plaintiff wrote to Defendants:

> So, to summarize, with our revisions the direct hits went from 1307 to 1794 (an increase of only 487 documents), and the hits plus families went from 3235 to 4570 (an increase of only 1335 documents). These numbers are very modest and we don't see why there would be any reason for further modifications at this point. As the Court made clear yesterday, Defendants need to begin their review and proceed with all deliberate speed. Please confirm Defendants will do so.

Defendants responded the next day:

> Yes, we can confirm that we will begin reviewing documents for Mike Gannon and will provide a rolling productions of documents.

- Have not reviewed a single document from these remaining 25 custodians;

During the parties' June 27 meet and confer, Defendants stated that for the remaining 25 custodians, Plaintiff's narrowed set of terms hit on approximately 61,000 documents. Plaintiff responded that this number sounded reasonable given the number of custodians and scope of the case.[3] Defendants suggested engaging in a further round of search term negotiations and stated they would be providing Plaintiff with hit reports on June 27 and June 30. Defendants were unable to provide any further information about "false positives," such as broad categories of irrelevant documents that hit on terms but could be easily excluded from the review. Defendants proposed having until August 25 to complete production of custodial files.[4]

ii. In Plaintiff's view, Defendants should not be rewarded for their own dilatory conduct by further narrowing the scope of their review and receiving a lengthy additional extension of the substantial completion deadline. Custodial collection should have started in January, review should have started shortly thereafter, and productions should have been provided on a rolling basis every few weeks. Instead, <u>Plaintiff has yet to receive a single custodial document</u>. Plaintiff respectfully proposes that Defendants be ordered to (1) utilize

---

[3] 61,000 hits for 25 custodians is only 2,440 documents per custodian. Only a subset of these documents will be responsive. By way of comparison, Plaintiff Kelchner, a single individual who does not engage in extensive written communication as part of his job, has *produced* nearly 2,000 documents.

[4] Defendants also disclosed during the June 27 meet and confer that three custodians had zero ESI retained after they left Defendants' employment. At a minimum, this will likely require agreement on substitute custodians.

Plaintiff's narrowed set of search terms for review (provided May 29), and (2) complete production of custodial documents by August 12 (6 weeks from the July 1 conference) with bi-weekly rolling productions in the interim. If Defendants' review is not complete by August 12, they should be further ordered to produce any remaining custodial documents that hit on a search term by August 15 without review, subject to a non-waiver claw back agreement under Federal Rule of Evidence 502.

2. **Specialized's Responses to Plaintiff's Second Set of RFPs and First Set of Interrogatories[5]**

   i. On May 6, 2025, Plaintiff served Specialized with RFPs and interrogatories related to their Iowa ties and their interrelated operations with the other Defendants. Specialized requested an extension to respond and served its responses on June 19. The responses included numerous deficiencies and Specialized has produced a mere 14 responsive documents. The parties are scheduled to meet and confer on June 30. There is no ripe dispute at this time.

3. **Plaintiff's Discovery Responses**

   i. Without awaiting discovery requests from Defendants, Plaintiff made an initial production of 351 documents on March 19, 2025, consistent with his obligations under Rule 26(a)(1). Defendants did not serve Plaintiff with discovery until May 12. Plaintiff responded 30 days later. Contrary to Defendants' characterization below, Plaintiff asserts very few objections, none

---

[5] Below, Defendants describe these sets as "jurisdiction discovery." While these requests are certainly related to Specialized's personal jurisdiction defense, many are also highly relevant to the merits of Plaintiff's claims

4

of which were boilerplate. Moreover, unlike Defendants' objections, and consistent with his obligations under Rule 34, Plaintiff's objections noted whether documents were being withheld on their basis. For instance, while Plaintiff noted that numerous requests asked for documents that Defendants already had (e.g., "All documents related to any communications between Plaintiff and each Defendant."), his responses noted that he "is not withholding documents on the basis of this objection." Plaintiff engaged in a reasonable search and produced an additional 1,541 documents on June 25. Plaintiff has therefore produced nearly as many documents as Defendants (who have produced only 3,042 to date), despite being a single individual truck driver who received RFPs four months later than Defendants. There is no ripe dispute concerning these requests, as the parties have not yet even met and conferred, and Plaintiff only just received Defendant's letter. Plaintiff has not "refused" to do anything, as Defendants contend below. In fact, though he has only just received Defendants' letter, Plaintiff anticipates agreeing to supplement a number of responses to address Defendants' concerns.

**<u>Defendants' Position</u>**

1.     **Plaintiff's Deficient Discovery Responses.** On May 12, 2025, Defendants served their Initial Requests for Production of Documents and Interrogatories to Plaintiff. Plaintiff served written responses on June 11, 2025 and served a production of documents on June 25, 2025. On June 26, 2025, Defendants served a deficiency letter outlining a variety of issues with Plaintiff's responses. As outlined in Defendants' letter, Plaintiff's responses are procedurally and substantively deficient including byrelying on boilerplate objections and improper burden-shifting

arguments and refusing to identify which documents correspond to which requests. He also withheld basic factual information concerning his own damages, work history, alleged reliance, and the factual basis for his claims. The parties have agreed to meet and confer on these issues on June 30, 2025.

2. **Plaintiff's Personal Jurisdiction Discovery**. On May 6, 2025, Plaintiff served Specialized with an additional 10 Interrogatories (Set One) and 17 Requests for Production (Set Three) related to Plaintiff's personal jurisdiction theories. Pursuant to the parties' agreement, Specialized responded with its written objections to the requests and interrogatories on June 12, 2025, and it served substantive responses and an initial production of responsive documents on June 19, 2025. Plaintiff's counsel advised that they have issues they wish to meet and confer about regarding Defendants' responses, and the parties have agreed to meet and confer on June 30, 2025 prior to the Status Conference.

3. **Plaintiff's Initial Requests for Production and Interrogatories**. Plaintiff initially served 244 requests for production and interrogatories, many of which were unmoored to his Iowa law claim in this case, unduly burdensome in nature, sought categorically privileged documents, or were admitted to be entirely duplicative of other requests.[6] Despite this, Defendants have worked diligently and in good faith to respond to and appropriately narrow Plaintiff's requests without involving the Court. Consistent with the Court's orders, Defendants timely served written responses and objections to Plaintiff's initial sets of document requests and interrogatories, have

---

[6] On January 7, 2025, Plaintiffs served the following discovery requests: (1) Expedited 19 Interrogatories (Set One); (2) Expedited 72 Requests for Production (Set One); (3) Specialized 8 Requests for Production (Sets One & Two); (4) Lincoln Sales 5 Interrogatories (Set One); and (5) Lincoln Sales 68 Requests for Production (Set One). During meet and confer efforts, the parties further agreed that the 72 requests served on Expedited would also be treated as a second set of requests for Specialized. Specialized has made multiple productions consistent with that agreement.

produced more than 6,000 pages of responsive documents, anticipate producing another tranche of documents prior to the Status Conference, and further anticipate additional productions over the next several weeks in response to the parties' meet and confer efforts and Defendants' ongoing collection of responsive documents.

4. **E-Discovery**

   a. **Hit Report & Negotiations.** On June 10, 2025, Defendants completed their pull of all available ESI—including all emails and attachments, Microsoft OneDrive files (cloud storage for files), and Microsoft Teams messages for the 26 custodians identified by the parties, which totaled terabytes of data and some 4.5 million unique documents (and millions more when including duplicates).[7] And on June 26, 2025, Defendants' e-discovery vendor completed processing and importing the last piece of this sizeable amount of documents and data so that a comprehensive hit report could be generated. Defendants then immediately began running a hit report using Plaintiff's latest proposed search terms, which was completed on June 27, 2025 and provided it to Plaintiff's counsel. Defendants are also processing a more granular hit report that shows the count of unique documents, hits, and families by individual custodian and by document class (e.g., emails, OneDrive files, or Microsoft Teams messages) and anticipate producing that to Plaintiff's counsel no later than June 30, 2025. Using Plaintiff's most recent proposed search terms, the hit report showed

---

[7] Three of the proposed custodians did not have any ESI; all were terminated or resigned prior to the filing of this case and were not subject to any litigation holds at the time. Their data was therefore deleted according to Defendants and their software vendors' respective ordinary document retention practices.

61,060 unique documents including families that would require review. Defendants contend that certain search terms are overbroad and that the total sum of the proposed ESI search is unduly burdensome, disproportionate to the needs of the case, and unlikely to yield discovery that will materially advance Plaintiff's ability to certify a class—particularly given the undisputed fact that he did not contract with Expedited. Based on prior ESI searches in other matters, Defendants estimate that review for privilege and responsiveness to Plaintiff's requests for 61,060 documents would require 1,300 attorney hours or more to complete. To that end, the parties met and conferred on June 27, 2025, and Defendants have asked Plaintiff's counsel to provide a revised set of terms within a week from receipt of the granular hit report and have agreed to respond to any narrowing proposal by Plaintiff no later than a week after receipt.

b. **Review of ESI for Michael Gannon.** On June 4, 2025, the Court ordered Defendants to "begin reviewing ESI now using the agreed-upon search terms and custodians, rather than waiting until the parties complete search-term negotiations." ECF No. 79 at 4. Accordingly, Defendants have actively been reviewing the one previously agreed upon custodian and set of search terms, which includes 3,235 documents for Michael Gannon. Defendants are nearing completion of that tranche of documents and anticipate finalizing their review prior to the Status Conference.

Although Plaintiff suggests that Defendants had misled him about the scope of this review, that is not the case. Plaintiff appears to have conflated Defendants'

efforts to confirm his various suggested edits were incorporated in the hit reports moving forward because Plaintiff's counsel had sent various, unstructured notes in an Excel sheet and emails instead of direct revisions to the terms. Defendants provided this for the purpose of ensuring that the future hit report would accurately reflect Plaintiff's request; however, nowhere did it suggest it somehow conceded that it had agreed to Plaintiff's proposed terms. Following the last Status Conference, Defendants' counsel emailed Plaintiff's counsel with the hit report discussed by the parties, writing "As discussed during today's status conference, attached please find a hit report for Mike Gannon using Plaintiff's latest revised search terms. So we're working from the same list, can you please review and confirm that the attached covers all of the searches you intended?"

Plaintiff also misstates the client involvement for the documents in this review discussed during the latest meet and confer. Defendants served objections to certain classes of documents for the specific requests made and have maintained these positions throughout meet and confer efforts—including, for example, various reasonable objections to the production of certain confidential financial records and reports that have no bearing on Plaintiff's claims or ability to certify a class. Counsel for Defendants noted, however, that they were conferring with their client on whether they are willing to withdraw objections to certain categories of documents in lieu of further motion practice.

c. **Substantial Completion Deadline.** In light of the ongoing collection efforts,

9

conferral over ESI, and other continuing negotiations regarding the scope of Plaintiff's discovery requests, <u>Defendants ask that the Court set a target substantial completion deadline for August 25, 2025 for productions related to Plaintiff's first sets of discovery requests, including for any ESI-related productions</u>. This will allow the parties approximately two weeks to finalize search terms and custodians for ESI and Defendants six weeks which they estimate will be needed to complete review of the ESI.

Dated: June 27, 2025

Respectfully Submitted,

/s/ *Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

/s/ *James H. Hanson*
James H. Hanson (pro hac vice)
Angela S. Cash (pro hac vice)
Andrew J. Ireland (pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON
& FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN
PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
kvisser@spmblaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

*Attorneys for Defendants*

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 233-7100
rsb@boulter-law.com

*Attorneys for Plaintiff Kelchner and the
Putative Class*

4932-3825-7745, v. 4

11