**TRANSCRIBED FROM DIGITAL RECORDING.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually
and on behalf of all others
similarly situated,

      Plaintiff,

  vs.                          No. C24-0082-CJW

CRST EXPEDITED, INC., et al.,    TRANSCRIPT OF
                             STATUS CONFERENCE

      Defendants.
_____/

The Status Conference held before the Honorable Kelly K.E. Mahoney, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, July 1, 2025, commencing at 11:33 a.m.

APPEARANCES:

For the Plaintiff:      BRIAN O. MARTY, ESQ.
                        BARTON GOPLERUD, ESQ.
                        Shindler, Anderson,
                          Goplerud & Weese
                        Suite 100
                        5015 Grand Ridge Drive
                        West Des Moines, IA 50265-5749

                        MICHAEL VON KLEMPERER, ESQ.
                        Fegan Scott
                        Suite 100
                        1763 Columbia Road Northwest
                        Washington, DC 20009

For the Defendants:     ANGELA S. CASH, ESQ.
                        ANDREW J. IRELAND, ESQ.
                        JAMES H. HANSON, ESQ.
                        Scopelitis, Garvin, Light,
                          Hanson & Feary
                        Suite 1400
                        10 West Market Street
                        Indianapolis, IN 46204

Transcribed from        Shelly Semmler, RDR, CRR
digital recording by:   320 Sixth Street
                        Sioux City, IA 51101
                        (712) 233-3846

(The following transcript was prepared from a digital recording.)

* * * *

P R O C E E D I N G S

THE COURT:  This is Case Number 24-CV-82, Kelchner versus CRST Expedited, Inc., et al.  Here for a status conference.  I did review the parties' joint submission in advance of this hearing.  That's, I think, document 85.

I guess the question I have for defendants is you're proposing a deadline of six weeks down the road for substantial completion.  Is that what I understand?

MS. CASH:  Yes, Your Honor.

THE COURT:  And then my follow-up question is just, frankly, how in the world do you think that you're possibly going to have substantial completion on reviewing documents from 25 additional custodians in 6 weeks?

MS. CASH:  At 60,000 hits.  It's going to be ridiculously difficult, Your Honor, but we're trying to address concerns raised by the plaintiff.  We had hoped and we're still having conversations about at the time we filed the document having further review of the search terms.  I think that was contemplated by our discussions and the Court's order after the following -- or after the

last conference that there would be further negotiations on the search terms, so we were hopeful at the time we proposed that deadline that there would be some further review of that and a reduction in the amount of search terms that were going to be used.

We had proposed 30,000 as the goal for hits as something that could be reviewed, and then plaintiff's counsel have since conveyed that they are unwilling to further negotiate on the terms as we requested.  They've asked if we have any proposals for narrowing them.  And, you know, we haven't identified anything that would comply with what we think they're after.

So I think there's going to have to be some further negotiation on that after we have the opportunity to get into the documents and see what we can identify that may shed some additional light on (unintelligible) to be conducted within that timeframe.

THE COURT:  And since our last hearing and after that, I did an order directing you to go ahead and start review of the one custodian whose documents you had.  That was June 4.  How many of those documents have you disclosed to plaintiff?

MS. CASH:  We have not disclosed any of the documents to the plaintiff, but our review is underway. We have reviewed approximately 75 percent of the agreed

terms that we interpreted as what we should be reviewing. And we're in the process of reviewing those with the client, the ones that we've identified as potentially responsive. We're reviewing those with the client for production.

THE COURT: For the additional new custodians whose documents have been list -- added or are now available for searching, how many hit reports have you run for those custodians?

MS. CASH: We have run the hit report for all custodians, and then we have run a hit report, and we've shared that with the plaintiff's counsel. We have run a hit report for all custodians but specifying the hits per custodian or search term.

THE COURT: And what's the range of hits you have per custodian on those, like ballpark?

MS. CASH: The range is very small. I think there are some with content hits of 1 to content hits of multiple thousands, almost 20,000.

Andrew, correct me if I misspeak.

MR. IRELAND: That's right. Your Honor, I would just note that I believe that the way the report breaks it down is by search. I think certainly we could try to provide a total unique count by custodian as well to plaintiff's counsel, but we don't have that currently.

THE COURT: So of the hit reports that you've run on these additional 25 or so custodians, how many of the hit reports have you disclosed to plaintiff?

MS. CASH: We provided --

THE COURT: I'm sorry? I guess, Mr. Ireland, how many --

MS. CASH: All of them.

THE COURT: All of them, Miss Cash. Okay. Okay. I'm sure that you can understand -- well, maybe you don't understand. Frankly, defendants have zero credibility with me when they propose any sort of deadline, and that stems from the fact that you proposed a substantial completion deadline over a month ago, and at that point you still hadn't even obtained all of the ESI that you were going to need to have loaded to be able to search, to be able to produce stuff. It's been, well, at least since June 4 let's say that you started actually reviewing the one custodian's information. It's now July 1, so roughly a month, and you've disclosed zero documents from that custodian. There's no way in six weeks you guys are going to be able to produce -- I mean, I just -- that's just reality. And I -- frankly, it's a little disingenuous, I think, to even propose a deadline of six weeks to get all of this done.

What is your -- I know you don't agree, I'm sure,

with plaintiff's response or proposal in the joint status or notes that we set a deadline you disclose -- you know, you have until then to disclose what you can and after that you disclose everything else, and then with the protective order you could claw back anything that might have been privileged that would need to be clawed back. I guess why should the Court not do that is my real question?

MS. CASH: Well, Your Honor, I think as Mr. Hanson identified in terms that I wouldn't have used but struck the Court I think, you know, we're not required to strip naked in front of the plaintiffs and give them our documents. As I mentioned to the plaintiff's counsel this morning when we were discussing it, that would seem to me to be the equivalent of in the old days that we'd just have movers come in and get a dolly and roll out our file cabinets.

So we don't think that's the standard that we are responsible to provide documents to. And so we would object and, were the Court to order that, seek further review I think at that point. That seems to be something that's far beyond the bounds of discovery.

I understand that the Court thinks that we haven't been as quick to this practice as would be hopeful, and I apologize if the Court thinks that we're being

disingenuous by trying to peg a date when we anticipate we could get the bulk of the documents that are related to this completed.

I think there's a number of issues here, Your Honor, one of which is that they've named a defendant for whom they do not have a plaintiff. Scope of documentswise, that substantially increases the amount of review and probably substantially decreases the relevant documents.

So one of the things we proposed this morning when we further discussed this with the plaintiff's counsel is --

MR. HANSON: James Hanson.

MS. CASH: -- to prioritize our review by --

CONFERENCE OPERATOR: Joined the meeting.

THE COURT: Okay. So we have Jim Hanson just joined the meeting just for the record.

Okay. Go ahead, Miss Cash.

MS. CASH: We would prioritize our review of the documents that are tied to custodians who are directly employed by CRST Specialized which is the company that Mr. Kelchner had a contract with. And so it's our hope that we'll be able to identify and get on the rolling production those documents that are most likely related to the plaintiff's claims in the case.

THE COURT: When do you think you will be able

to disclose documents from the single custodian that you have started to review?

MS. CASH:  By the end of next week.  And we do have a holiday this week so -- and this is going to require our client's signoff because a number of these documents -- and these are things that we've discussed with our -- in our meet-and-confer.  A number of these documents are spreadsheets with financial information on companies unrelated and programs unrelated to the matters at issue.  And so that information is confidential to this information, and we need to have client review on that before it's produced pursuant to our protective order.

THE COURT:  Of the remaining -- I guess of -- let's just say of the 26 custodians, how many of those do you believe have information for CRST Specialized?

MS. CASH:  Give me just a moment, Your Honor. Five to six.

THE COURT:  When will you have their information ready for disclosure?

MS. CASH:  Your Honor, I don't know that I can give you an informed answer to that because I don't know exactly off the top of my head who has what documents, you know, how many these particular custodians have, for example.  And so I would be reluctant to give you a

timeline, but they --

THE COURT: Sure.

MS. CASH: -- will be the priority.

THE COURT: Have you -- so what do the hit counts look like for those custodians, those five or six custodians?

MS. CASH: So I have the hit counts by topic and custodian, so I'm going to -- I'll have to do some math right now.

THE COURT: Okay. That's okay. I guess what does plaintiff -- if anything, what do you want to weigh in on at this point on what I've asked so far? And just identify who's speaking if you would.

MR. VON KLEMPERER: Your Honor, this is Mike Von Klemperer for the plaintiff. It's -- I think we share the Court's frustration on the timeline here, Your Honor. As you mentioned, there was originally a substantial completion deadline in May, and the defendants hadn't even completed the (unintelligible) for a single custodian at that point. And at that time we hadn't received a single custodial document.

You know, for Mike Gannon, the one custodian they reviewed, they haven't even completed their review. We would like to believe that they were going to be using our search terms, our proposed narrow search terms. And

we found out last week that, in fact, they were using their own narrower search terms even though the search terms, you know, cut down some of the hits from 700 documents to 0 documents. And so there -- you know, entire categories of documents were excluded. We also learned last week that they haven't even started their review for a single other custodian.

And so, Your Honor, I think that the parties have both proposed deadlines for their production in August. We're a bit agnostic about which of those two deadlines we are going to go with. They're only a couple weeks apart. Ours was August 12. The defendants had proposed August 25.

I think that our main concern and our main proposal at this point, Your Honor, is that if they do not meet that, you know, third extended substantial completion deadline, there should be a consequence, and we've laid out what the consequence should be. I think it'd be well within the Court's authority to have that consequence of just producing everything subject to the clawback if they can't meet the deadline. And, you know, I'd be happy to talk about the number of hits, for example, but I don't know if there's really a purpose to do that at this point.

THE COURT: And I guess, Mr. Von Klemperer, do

you know who the five or six custodians are that they are talking about for CRST Specialized?

MR. VON KLEMPERER:  I don't.  They only proposed it to me about 30 minutes before this call started, so I hadn't heard anything about that before. And we've asked them to send us the list of names and we would consider it.

And I would also just add that our plaintiff, Mr. Kelchner, has also contracted with CRST Lincoln Sales.  So there's no question that they would have documents that are specifically relevant to his individual circumstance.

And as to the third defendant, Expedited, they are a defendant in this case.  They've answered the complaints. They've been served discovery.  I think that they had relevant documents.  They're very much involved in this -- the underlying scheme that's alleged in the case. And so we certainly would not concede that they don't have relevant documents.

We're -- we're fine with them staging, you know, the production by a particular custodian as long as we ultimately get all of the custodial documents.  I don't think it really matters which ones come first or which ones come second.

THE COURT:  So, Miss Cash, I guess, could the

Court -- I just think that there just has to be a lot of oversight here.  And, frankly, I'm a little concerned about what would have happened if we weren't having these status conferences because, frankly, even with the status conferences, there's been really little -- little movement by defendants.  And I know you've done work, but, I mean, at the pace you're going, this case is going to be pending for six years so . . .

MS. CASH:  Your Honor, may I respond to Mr. Von Klemperer's comments?

THE COURT:  Sure.

MS. CASH:  I just want to make sure that the Court's aware that we have produced documents in -- within the last 30 days.  We produced noncustodial documents for Expedited which were supplemental responses to prior discovery responses.  And we've also responded to the request to Specialized that was served shortly -- I believe shortly before the June 4 conference.  So we've made two productions of documents as well as multiple meet-and-confer opportunities with regard to discovery since June 4.

We've also started our review of the custodial documents looking for large categories to identify false positives, again, to see if we could find some, you know, primary piece that would narrow the review.  But we

haven't been able to locate anything like that. And we did advise the plaintiffs about that.

So it's not as if we have not been working toward the goal of getting this produced as quickly as possible. Thank you for allowing me to respond.

THE COURT: No, and I appreciate that. I guess, I mean, we're still talking about search terms. And I guess why are plaintiff's proposed search terms unreasonable or not proportional at this point?

MS. CASH: Your Honor, I think that even in the order that you issued after the last conference you were envisioning that we would send our hit counts to them and that the parties would still need to negotiate search terms. And I think that was our view of this because we anticipated that it would be a burdensome amount of documents. And that is what, in fact, it's turned out to be. It's 61,000 documents, going to require around 1,500 hours of attorney time based upon our estimates on time that it takes based upon prior cases.

And so if we use that at a billable rate at $250 an hour, that's $381,000 in discovery review costs. That to us seems to be an unreasonable burden for this case.

And so it's our hope that we can, you know, jump in and find more information as we extend the review and have further conversations with plaintiff's counsel and

have those negotiations on the hit terms that -- or hit counts that the Court anticipated and we can further refine this review that -- at least try to make it more manageable.

THE COURT: I guess the things that I would be interested in hearing are, okay, so perhaps there's going to be -- staged discovery might make sense for CRST Specialized, CRST Lincoln, making those priorities maybe in that order. I guess what do the hit counts look like for those custodians for those defendants? And I -- you know, does there need to be further negotiation on those or not? Are the hit counts reasonable for those? I don't know if that's possible to look at it that way.

How long do you think negotiations for hit terms are going to take, because I'm pretty sure if I have a status conference in a month you're still going to be talking about you need to negotiate search terms or you're still negotiating them? How long do you think that will take?

MS. CASH: We had proposed that the plaintiffs get back to us with any proposal by July the 7th and that we would respond by the 14th, but that -- that wasn't something the plaintiffs thought was appropriate.

THE COURT: And I guess why not on behalf of plaintiffs?

MR. VON KLEMPERER: Your Honor, so we just

received the hit count report from Friday, and then we received a custodian-by-custodian report yesterday. The hits -- our search terms hit on only 25,000 documents, just over 25,000 documents, 61,000 when you include the families. For 26 custodians, that's just over 2,000 documents per custodian. We think that's a very reasonable and modest number. We have asked them if they are seeing broad categories of irrelevant material within that, and they haven't been able to identify any such categories like Miss Cash said.

We're happy to -- if they do identify a category like that, we're happy to exclude that if we can come up with a way to do so. But we just don't think there's anything unreasonable about the search term that -- the hits that we have so far. And, you know, they haven't, for example, shown us that the documents that are hitting on these terms are irrelevant. The numbers alone don't prove that they're returning something irrelevant. It -- you know, the numbers are not that huge. We haven't been shown any evidence that they're returning irrelevant information. And so we think that it's a reasonable ask that they produce this.

I understand Miss Cash's position that this is disproportionate, but this is a major class action that involves thousands of class members. It has tens of

thousands of dollars in damages, and I think it's proportional for them to review this body of documents and even for these custodians, almost all of whom they themselves have proposed.

So, you know, at this point, you know, it ties together with the various delays. I think it's reasonable to just move forward with the review at (unintelligible) search terms they have. And if they identify specific problems during the review process, we're happy to look at that and consider those too (unintelligible) irrelevant material.

THE COURT: Okay. And I'm assuming this is Mr. Von Klemperer?

MR. VON KLEMPERER: Yes.

THE COURT: Yeah. I'm just going to assume that. If it's somebody for plaintiff that's not Mr. Von Klemperer, just let us know that.

I just want to make sure I understand for families of document -- or for families, is that the attachments that go with?

MR. VON KLEMPERER: Yeah, that would be --

THE COURT: Yeah.

MR. VON KLEMPERER: So --

THE COURT: Okay. So it's roughly 2,000 hits per custodian, and then there's plus attachments.

MR. VON KLEMPERER:  It's about 25,000 hits.

THE COURT:  25,000.

MR. VON KLEMPERER:  So it's about a thousand hits per custodian.  And then when you look in the family members, so like you said, the email attachments, then the number goes to around 61,000.

THE COURT:  So --

MR. VON KLEMPERER:  Which is still just over 2,000 documents per custodian.

THE COURT:  So, Miss Cash, why is 2,000 documents per custodian -- why are you opposed to that?

MS. CASH:  Because in the aggregate -- and just to be clear, many of the documents in the family are spreadsheets with multiple worksheets on them, many of which have nothing to do with any of the defendants here or the lease purchase program.

And so that in itself makes each document hit substantially heavier than just an email that has a term lease purchase within 15 benefits.  You know, that's an easier review than multiple pages of spreadsheets that you've got to review, you know, not to mention how many lines are on a spreadsheet.

So I think that the scope of documents in aggregate is what makes it unduly burdensome.

THE COURT:  Okay.  Well, let me ask you this.

For example, when you were looking at a custodian and you're looking at an email that has an attachment, how much time is it -- or how difficult is it to look at that email to determine, you know, this isn't related to this case or it's not going to, you know, be applicable even if it has the term lease agreement, it doesn't apply to these plaintiff or plaintiffs potentially?

MS. CASH:  Yeah, I think it kind of depends the type of document; right?  If it's an email about our marketing strategy, it might be obvious whether it would fall within the responsive terms or not.  But if it's a generic email and it's either very prevalent in what we've already reviewed that talks about financial reports in general and that will have multiple topics within the email, 1 of -- 1 of 20 might refer to lease purchase. The other 19 have absolutely nothing to do with it. They've got to sort out all of that, and then you've got to go to the spreadsheet that's attached to that, and that's a common way that the company communicates, by emailing attachment -- or emailing attached financial reports in spreadsheet form to multiple key individuals who are part of this custodian search.

THE COURT:  So I'm just trying to make sure I understand.  So in that example you gave, if there's only 1 out of 20 of those that are really applicable or

relevant so then you need to look at the attachments or the spreadsheet for the 1 of the 20, like, I mean, how much time are we talking about here for that?  I mean, I'm just trying to understand, because to me it doesn't seem like you're going to have to review -- some of these reviews you do, you're going to be able to quickly determine, oh, that document doesn't -- we don't have to review it any further; it doesn't apply.  So it's not like you're having to go through every single one of the 61,000 hits in detail.

MS. CASH:  Right.  We have done a review for this client in another case, and the average was 30 seconds per document.  And that -- that case was less, in my opinion, heavy on the financial documents.

And so just to make sure that I explain myself correctly, so on the email that I was mentioning where the substance of the email might have 20 numbered topics, you have to find -- it's not always 7 is related to lease purchase.  It's a commentary about the attached financial documents.

So the one I'm thinking of in particular, item 11 was one sentence about lease purchase.  But I have to read all 30 on it, right, to make sure what's responsive, if there's anything else that we're tagging these in response to certain requests.  And then I have to go to

the multi-spreadsheet, worksheet, workbook and identify what in there is relevant as well.

THE COURT: Okay. So -- but I guess, you know, 30 seconds per document, earlier you were talking about 40 documents per hour. I mean, 61,000, you know, documents, you know, divided by 1,500 attorney hours is, like, 40 documents an hour. So what's -- what am I missing there?

MS. CASH: I think that it -- you know, the difference in the documents, right? It's much more heavier in the financial documents whereas the 30 seconds for an email to review that, that's a much easier list, and that's the statistics that we have those documents on.

THE COURT: So what are you seeing -- of the emails you're looking at, not the financial documents attached, you know, so roughly how many emails are you seeing out of -- you know, that are relevant, and how many are not? Like kind of what's the balance of that?

MS. CASH: So, you know, the detailed review that we've done is only for Mr. Gannon who is the president of the company; right? And I would say that of his email documents, many of them are not related. I can't give you a percentage. We intend to provide documentation to the plaintiff's counsel once we've

completed our review about what those -- that review shows because they agreed that would be helpful information.

THE COURT: So, I mean, roughly so far in your review, what are you -- what are you estimating? And I'm not going to hold you to it. You haven't finished the review. But what are you estimating that's going to be, it's going to look like for the production for Gannon, for example?

MS. CASH: I'm not sure I know the answer to how many documents we're going to produce. I would say less than half of the documents that are arguably responsive.

THE COURT: So roughly how many total documents are there?

MS. CASH: 3,000.

THE COURT: Okay.

MS. CASH: Hits, right, so there could be some duplication in the document count there, all right, if it's got three hits on the same document.

THE COURT: I guess --

MS. CASH: I may have misspoken there. I'm not s -- I may have misspoken there.

THE COURT: Okay. Well, I guess here's -- here's a thought. Defendants proposed August 25 the

substantial completion. What if I gave you till -- that's a Monday. What if I gave you till Friday, August 29, for substantial completion and anything that's not reviewed at that point you get it done and anything else then you just have to turn over? I'm giving you more time than you're asking for. Does that seem reasonable?

MS. CASH: Your Honor, I don't have -- I can't agree to that on behalf of our client. I'm sorry. That's -- that's -- the position is we don't believe we should have to turn it over without review. We're going to devote resources to completing them prior to that.

THE COURT: But you think you can have that done --

MS. CASH: And -- and --

THE COURT: Go ahead.

MS. CASH: And I guess I'm struggling with the concept of reviewing because -- I guess I don't understand how it's that much helpful for them to have those documents because they still have to go through the review; right? So to give them unreviewed documents or give us more time to complete the review, it's still going to be attorney time to get it reviewed.

THE COURT: Oh, I think they'd probably be willing to do the review themselves. Mr. Von Klemperer?

MS. CASH: I understand. I understand. I

think that we're not required to do that, but I guess it doesn't help move the ball faster if we give it to them to review because they still have to devote resources to review.  There's still a time delay for that review to happen, so it's not going to advance the process.

THE COURT:  Well, I would -- I would tend to disagree because I think they would -- they'll have the documents.  They can review.  I think it would.  But you think August 25 then you can have substantial completion.

MS. CASH:  That -- that was our suggestion, and we believe we can.  We're hopeful that there will be further negotiation on the terms as was contemplated when we proposed that date.  Again, when we proposed it, we had hoped and had discussions with them about trying to reduce it to a review of half that size.  They ultimately elected not to agree to any of those further negotiations.

So we -- as I said, Your Honor, we're devoting additional resources for this process, and we'll be working as quickly as we can.  If it makes sense to have a report midway, that's -- we can report on our progress, or we can certainly report to plaintiff's counsel our progress as we move forward so everyone knows that the process is working and we're doing our best to meet that deadline.

THE COURT: Mr. Von Klemperer, they're wanting to negotiate search terms. They kind of said the ball's in your court. It kind of sounded like to me you're saying the ball's in their court. What are you -- what is your position on that? And I understand your ultimate position is they don't need to be negotiated, that they're already reasonable. But are you willing to talk to them further about that, or what are your thoughts?

MR. VON KLEMPERER: Your Honor, you're right. Our position is that we think they're already reasonable. If they come to us and say, look, we're finding this broad category of documents because, remember, they haven't reviewed anyone's documents other than the president of the company. So they may learn things once they actually start to review.

If they come to us and say, look, we're finding all these incredibly irrelevant documents, here's a proposal on how to exclude them, we're more than happy to consider that. I think that they should begin the review with the terms that we have now. And, you know, if they come to us with that kind of information during the process, we're totally willing to be reasonable on something like that. But as it stands right now, we have no idea -- maybe every single one of the hits is an incredibly relevant document. We have no reason to believe

otherwise at this point.

THE COURT: And I guess, Miss Cash, that seems reasonable to me, that you start reviewing documents in particular for the CRST Specialized custodians and see where you're at on that, and if it's becoming -- it does appear that of the hits you have that it's burdensome to get through them, if they're, you know, not responsive and such, then that's a further discussion for negotiation of hit terms.

I don't think you're really in a position at this point to be able to say -- I know you have the hit counts, which is helpful. It would have been very helpful to have had those a month and a half ago. But does that seem reasonable, that you can start reviewing CRST Specialized custodians and kind of see where you're at on things and then further negotiate if need be?

MS. CASH: Your Honor, it does, and I think that we -- certainly not to suggest that we would do that very thing and share with them information that we learn from that review which I guess maybe there will be places where we can cut things out or identify completely useless terms as far as finding relevant documents.

We did also talk with them about two particular search strings that are in our minds problematic because they produced approximately 10,000 hits each on those 2

search strings. And they're basically, to give you a flavor -- and I don't have it in front of me. I'm struggling to find it.

But, Andrew, maybe you can help me if I don't have the right language.

But, for example, it's a situation where it has a few terms that are strung together by "or" within 15 of a few other terms that are strung together by "or." I found it. Actually no. Still looking. My apologies.

But -- so say something like -- there we go. I'm finding it. Lease purchase program or lease purchase with a hyphen or without a hyphen or LP program or LPC or LPA or equipment lease or truck lease. So any of those terms within 15 of benefit or advantage or gain or profit or upside or incentive.

And so yes, while it might generate documents that are quite relevant to the plaintiff's claims, it also has the potential and we believe the likelihood to generate wildly unrelated documents to their claim. And so it's going to take some time if we're going to focus on those particular topics as well so that we can get information to the plaintiff about that.

And so we're happy to continue to give information to them. We would just ask that they not take a strong line to say that they are unwilling to look at the terms.

And let me just add one other thing.  The second one of those is the same type of strings, but it's just independent contractor instead of lease purchase.  So, for example, Specialized has approximately 50 percent lease purchase and 50 percent independent contractors who own their own trucks.  And so that string is even -- that's likely to generate relevant documents.

So, you know, there are some ways that we can focus the review and share that information with the plaintiff's counsel in hopes that there are ways that they can help us narrow down this review.  So we're happy to do that, Your Honor.

THE COURT:  All right.  Well, I think at this point you've indicated you can have the Gannon ESI produced by the end of next week, so July 1, so you -- I think that that's appropriate that that be set as a deadline, so Friday, July 11, produce the Gannon ESI.

Frankly, we're talking in hypotheticals still at this point.  At this point I think defendants need to start reviewing the CRST Specialized custodians.  It's five to six total.  I don't know if that five to six includes Gannon or not.  Start reviewing it with the defendant's -- or with plaintiff's search terms.  And if you're finding that it is a large number of nonresponsive documents or other issues with it that you are concerned

it will be, talk to plaintiff about that, and then you'll have the information to explain why those search terms are not reasonable and should be modified.

But at this point we're not there because you don't know. It's just that there's a lot of documents to review. And I don't think that's enough to say that, okay, then you need to modify search terms.

So I think then you need to prioritize review of the CRST Specialized document custodians, then CRST Lincoln document custodians, and then we'll kind of go from there.

It's kinda hard for me. I'd like to set some more specific deadlines for you guys, but it's kinda hard for me to do. I think that I'd like to just have a status report 2 weeks from today which would be July 15 to see where defendants are at in the process. And then we'll hopefully have a better idea from that.

I think at this point that's about -- and I -- at this point defendants need to be working for substantial completion by August 25. I'd be willing to give you August 25 rather than August 12, but you need to be working towards it. I'm not going to issue anything other than that, but just know that if progress isn't being made, I am not going to get to August 25 and find out we still have half of the discovery to review and

things.  That's just not going to happen.

So I'd like a status report in two weeks to let me know kind of where things are at on this process confirming Gannon ESI's been disclosed and where you're at in the process on the rest, if you guys are negotiating search terms or if it's been determined that that's not necessary for the custodians you're looking at based upon the reviews you've done so far.

I guess what else would you like to talk about or anything on that?  Mr. Von Klemperer?

MR. VON KLEMPERER:  Your Honor, I don't think I have much to add.  I mean, I think -- I think the proposal makes sense, Your Honor, and we're happy to look at -- you know, I would just comment on Miss Cash's suggestion that the search -- the search string would turn up, as she said, wildly unrelated documents.  And the only thing I would say is there's no evidence that they would be wildly unrelated.  We have no idea if they're wildly unrelated or not.

And so we're happy to look at any kind of evidence or information that she could provide down the road once the review actually gets underway.  And I think that the search terms themselves are good to go right now and they should begin the review with the existing search terms.

THE COURT:  I agree, and I think that's -- I

think I'm at the same place. But I can't say that the search terms need to be negotiated or modified because defendants don't have really any useful information about -- to show that the search terms as is as prop -- the plaintiff's search terms are -- other than they produced a large number of hits, that the review is showing that those documents aren't -- aren't -- shouldn't be disclosed.

So I guess, Miss Cash, any thoughts on any of this or anything else you want to talk about?

MS. CASH: No, Your Honor. I understand the proposal, and I think that makes sense, and further information will help both parties as well.

THE COURT: All right. Okay. Well, then Gannon ESI disclosed by next Friday, July 11. Status report 2 weeks from now, July 15. And then I will take a look at it, and we'll go from there.

Anything else we need to talk about, Mr. Von Klemperer?

MR. VON KLEMPERER: Not from the plaintiffs, Your Honor. Thank you.

THE COURT: And Miss Cash?

MS. CASH: Nothing from the defendants. Thank you.

THE COURT: Thank you. That will conclude this

hearing.

(The foregoing hearing was

concluded at 12:14 p.m.)

* * * *

(This concludes the transcript of the audio recording.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital recording system.

___S/Shelly Semmler_____     7-5-25
Shelly Semmler, RDR, CRR          Date

**$**

**$250** [1] - 14:20
**$381,000** [1] - 14:21

**0**

**0** [1] - 11:4

**1**

**1** [8] - 1:13, 5:18, 6:19, 19:15, 19:25, 20:2, 28:15
**1,500** [2] - 14:17, 21:6
**10** [1] - 2:12
**10,000** [1] - 26:25
**100** [2] - 2:4, 2:7
**11** [3] - 20:21, 28:17, 31:15
**11:33** [1] - 1:13
**12** [2] - 11:12, 29:21
**12:14** [1] - 32:3
**1400** [1] - 2:11
**14th** [1] - 15:21
**15** [5] - 18:19, 27:7, 27:14, 29:15, 31:16
**1763** [1] - 2:7
**19** [1] - 19:16

**2**

**2** [3] - 26:25, 29:15, 31:16
**2,000** [4] - 16:5, 17:24, 18:9, 18:10
**20** [4] - 19:15, 19:25, 20:2, 20:17
**20,000** [1] - 5:19
**20009** [1] - 2:8
**2025** [1] - 1:13
**233-3846** [1] - 2:15
**24-CV-82** [1] - 3:5
**25** [8] - 3:17, 6:2, 11:13, 22:25, 24:9, 29:20, 29:21, 29:24
**25,000** [4] - 16:3, 16:4, 18:1, 18:2
**26** [2] - 9:15, 16:5
**29** [1] - 23:3

**3**

**3,000** [1] - 22:16
**30** [6] - 12:4, 13:14, 20:12, 20:23, 21:4, 21:11
**30,000** [1] - 4:6
**320** [2] - 1:12, 2:14

**4**

**4** [4] - 4:21, 6:17, 13:18, 13:21
**40** [2] - 21:5, 21:7
**46204** [1] - 2:12

**5**

**50** [2] - 28:4, 28:5
**5015** [1] - 2:4
**50265-5749** [1] - 2:5
**51101** [1] - 2:14

**6**

**6** [1] - 3:17
**60,000** [1] - 3:19
**61,000** [5] - 14:17, 16:4, 18:6, 20:10, 21:5

**7**

**7** [1] - 20:18
**7-5-25** [1] - 32:24
**700** [1] - 11:3
**712** [1] - 2:15
**75** [1] - 4:25
**7th** [1] - 15:20

**8**

**85** [1] - 3:9

**A**

**a.m** [1] - 1:13
**ability** [1] - 32:22
**able** [9] - 6:15, 6:16, 6:21, 8:22, 8:25, 14:1, 16:9, 20:6, 26:11
**above-entitled** [1] - 32:22
**absolutely** [1] - 19:16
**action** [1] - 16:24
**add** [3] - 12:8, 28:1, 30:12
**added** [1] - 5:7
**additional** [5] - 3:17, 4:16, 5:6, 6:2, 24:19
**address** [1] - 3:21
**advance** [2] - 3:8, 24:5
**advantage** [1] - 27:14
**advise** [1] - 14:2
**aggregate** [2] - 18:12, 18:23
**agnostic** [1] - 11:10
**ago** [2] - 6:13, 26:13
**agree** [4] - 6:25, 23:8, 24:16, 30:25
**agreed** [2] - 4:25, 22:2
**agreement** [1] - 19:6
**ahead** [3] - 4:19, 8:17, 23:15
**al** [2] - 1:8, 3:6
**alleged** [1] - 12:17
**allowing** [1] - 14:5
**almost** [2] - 5:19, 17:3
**alone** [1] - 16:17
**amount** [3] - 4:4, 8:7, 14:15
**Anderson** [1] - 2:3
**Andrew** [2] - 5:20, 27:4
**ANDREW** [1] - 2:9
**ANGELA** [1] - 2:9
**answer** [2] - 9:22, 22:10
**answered** [1] - 12:14
**anticipate** [1] - 8:1
**anticipated** [2] - 14:15, 15:2
**apart** [1] - 11:12
**apologies** [1] - 27:9
**apologize** [1] - 7:25
**appear** [1] - 26:6
**APPEARANCES** [1] - 2:1
**applicable** [2] - 19:5, 19:25
**apply** [2] - 19:6, 20:8
**appreciate** [1] - 14:6
**appropriate** [2] - 15:22, 28:16
**arguably** [1] - 22:12
**assume** [1] - 17:15
**assuming** [1] - 17:12
**attached** [4] - 19:18, 19:20, 20:19, 21:17
**attachment** [2] - 19:2, 19:20
**attachments** [4] - 17:19, 17:25, 18:5, 20:1
**attorney** [3] - 14:18, 21:6, 23:22
**audio** [1] - 32:5
**August** [10] - 11:9, 11:12, 11:13, 22:25, 23:2, 24:9, 29:20, 29:21, 29:24
**authority** [1] - 11:19
**available** [1] - 5:8
**average** [1] - 20:12
**aware** [1] - 13:13

**B**

**balance** [1] - 21:19
**ball** [1] - 24:2
**ball's** [2] - 25:2, 25:4
**ballpark** [1] - 5:16
**BARTON** [1] - 2:2
**based** [3] - 14:18, 14:19, 30:8
**becoming** [1] - 26:5
**begin** [2] - 25:19, 30:24
**behalf** [3] - 1:4, 15:23, 23:8
**benefit** [1] - 27:14
**benefits** [1] - 18:19
**best** [2] - 24:24, 32:22
**better** [1] - 29:17
**beyond** [1] - 7:22
**billable** [1] - 14:20
**bit** [1] - 11:10
**body** [1] - 17:2
**bounds** [1] - 7:22
**breaks** [1] - 5:23
**BRIAN** [1] - 2:2
**broad** [2] - 16:8, 25:12
**bulk** [1] - 8:2
**burden** [1] - 14:22
**burdensome** [3] - 14:15, 18:24, 26:6

**C**

**C24-0082-CJW** [1] - 1:7
**cabinets** [1] - 7:17
**Case** [1] - 3:5
**case** [8] - 8:24, 12:14, 12:17, 13:7, 14:22, 19:5, 20:12, 20:13
**cases** [1] - 14:19
**Cash** [8] - 6:8, 8:17, 12:25, 16:10, 18:10, 26:2, 31:9, 31:22
**CASH** [37] - 2:9, 3:13, 3:19, 4:23, 5:10, 5:17, 6:4, 6:7, 7:9, 8:13, 8:18, 9:3, 9:17, 9:21, 10:3, 10:7, 13:9, 13:12, 14:10, 15:19, 18:12, 19:8, 20:11, 21:9, 21:20, 22:10, 22:16, 22:18, 22:22, 23:7, 23:14, 23:16, 23:25, 24:10, 26:17, 31:11, 31:23
**Cash's** [2] - 16:23, 30:14
**categories** [4] - 11:5, 13:23, 16:8, 16:10
**category** [2] - 16:11, 25:12
**CEDAR** [1] - 1:3
**certain** [1] - 20:25
**certainly** [4] - 5:23, 12:18, 24:22, 26:18
**CERTIFICATE** [1] - 32:19
**certify** [1] - 32:20
**Chief** [1] - 1:11
**circumstance** [1] - 12:12
**City** [2] - 1:12, 2:14
**claim** [1] - 27:19
**claims** [2] - 8:24, 27:17
**class** [2] - 16:24, 16:25
**claw** [1] - 7:5
**clawback** [1] - 11:20
**clawed** [1] - 7:6
**clear** [1] - 18:13
**client** [5] - 5:3, 5:4, 9:11, 20:12, 23:8
**client's** [1] - 9:5
**Columbia** [1] - 2:7
**commencing** [1] - 1:13
**comment** [1] - 30:14
**commentary** [1] - 20:19
**comments** [1] - 13:10
**common** [1] - 19:19
**communicates** [1] - 19:19
**companies** [1] - 9:9
**company** [4] - 8:21, 19:19, 21:22, 25:14
**complaints** [1] - 12:14
**complete** [1] - 23:21
**completed** [4] - 8:3, 10:19, 10:23, 22:1
**completely** [1] - 26:21
**completing** [1] - 23:11
**completion** [9] - 3:12, 3:16, 6:13, 10:18, 11:16, 23:1, 23:3, 24:9, 29:20
**comply** [1] - 4:12
**concede** [1] - 12:18
**concept** [1] - 23:17
**concern** [1] - 11:14
**concerned** [2] - 13:2, 28:25
**concerns** [1] - 3:21
**conclude** [1] - 31:25
**concluded** [1] - 32:3
**concludes** [1] - 32:5
**conducted** [1] - 4:17

**confer** [2] - 9:7, 13:20
**CONFERENCE** [2] - 1:8, 8:14
**conference** [5] - 3:7, 4:1, 13:18, 14:11, 15:16
**Conference** [1] - 1:11
**conferences** [2] - 13:4, 13:5
**confidential** [1] - 9:10
**confirming** [1] - 30:4
**consequence** [3] - 11:17, 11:18, 11:19
**consider** [3] - 12:7, 17:10, 25:18
**contemplated** [2] - 3:24, 24:12
**content** [2] - 5:18
**continue** [1] - 27:23
**contract** [1] - 8:21
**contracted** [1] - 12:9
**contractor** [1] - 28:3
**contractors** [1] - 28:5
**conversations** [2] - 3:22, 14:25
**conveyed** [1] - 4:8
**correct** [2] - 5:20, 32:20
**correctly** [1] - 20:16
**costs** [1] - 14:21
**counsel** [9] - 4:8, 5:12, 5:25, 7:14, 8:10, 14:25, 21:25, 24:22, 28:10
**count** [3] - 5:24, 16:1, 22:19
**counts** [7] - 10:5, 10:7, 14:12, 15:2, 15:9, 15:12, 26:12
**couple** [1] - 11:11
**COURT** [49] - 1:2, 3:5, 3:14, 4:18, 5:6, 5:15, 6:1, 6:5, 6:8, 8:15, 8:25, 9:14, 9:19, 10:2, 10:4, 10:10, 11:25, 12:25, 13:11, 14:6, 15:5, 15:23, 17:12, 17:15, 17:22, 17:24, 18:2, 18:7, 18:10, 18:25, 19:23, 21:3, 21:15, 22:4, 22:14, 22:17, 22:21, 22:24, 23:12, 23:15, 23:23, 24:6, 25:1, 26:2, 28:13, 30:25, 31:14, 31:22, 31:25
**court** [2] - 25:3, 25:4
**Court** [8] - 1:12, 7:7, 7:11, 7:20, 7:23, 7:25, 13:1, 15:2

**Court's** [4] - 3:25, 10:16, 11:19, 13:13
**Courthouse** [1] - 1:12
**credibility** [1] - 6:11
**CRR** [2] - 2:13, 32:24
**CRST** [13] - 1:8, 3:6, 8:20, 9:16, 12:2, 12:9, 15:7, 15:8, 26:4, 26:15, 28:20, 29:9
**custodial** [3] - 10:21, 12:22, 13:22
**custodian** [20] - 4:20, 5:14, 5:16, 5:24, 6:20, 9:1, 10:8, 10:20, 10:22, 11:7, 12:21, 16:2, 16:6, 17:25, 18:4, 18:9, 18:11, 19:1, 19:22
**custodian's** [1] - 6:18
**custodian-by-custodian** [1] - 16:2
**custodians** [21] - 3:17, 5:6, 5:9, 5:11, 5:13, 6:2, 8:19, 9:15, 9:24, 10:5, 10:6, 12:1, 15:10, 16:5, 17:3, 26:4, 26:15, 28:20, 29:9, 29:10, 30:7
**cut** [2] - 11:3, 26:21

### D

**damages** [1] - 17:1
**Date** [1] - 32:24
**date** [2] - 8:1, 24:13
**days** [2] - 7:16, 13:14
**DC** [1] - 2:8
**deadline** [11] - 3:11, 4:3, 6:12, 6:13, 6:23, 7:2, 10:18, 11:17, 11:21, 24:25, 28:17
**deadlines** [3] - 11:9, 11:10, 29:13
**decreases** [1] - 8:8
**defendant** [3] - 8:5, 12:13, 12:14
**defendant's** [1] - 28:23
**Defendants** [2] - 1:9, 2:9
**defendants** [13] - 3:10, 6:10, 10:19, 11:12, 13:6, 15:10, 18:15, 22:25, 28:19, 29:16, 29:19, 31:3, 31:23
**delay** [1] - 24:4
**delays** [1] - 17:6
**Des** [1] - 2:5

**detail** [1] - 20:10
**detailed** [1] - 21:20
**determine** [2] - 19:4, 20:7
**determined** [1] - 30:6
**devote** [2] - 23:11, 24:3
**devoting** [1] - 24:18
**difference** [1] - 21:10
**difficult** [2] - 3:20, 19:3
**DIGITAL** [1] - 1:1
**digital** [4] - 2:14, 3:1, 32:21, 32:23
**directing** [1] - 4:19
**directly** [1] - 8:20
**disagree** [1] - 24:7
**disclose** [4] - 7:2, 7:3, 7:4, 9:1
**disclosed** [7] - 4:22, 4:23, 6:3, 6:19, 30:4, 31:8, 31:15
**disclosure** [1] - 9:20
**discovery** [7] - 7:22, 12:15, 13:16, 13:20, 14:21, 15:7, 29:25
**discussed** [2] - 8:10, 9:6
**discussing** [1] - 7:14
**discussion** [1] - 26:8
**discussions** [2] - 3:24, 24:14
**disingenuous** [2] - 6:23, 8:1
**disproportionate** [1] - 16:24
**DISTRICT** [2] - 1:2, 1:2
**District** [2] - 1:12
**divided** [1] - 21:6
**DIVISION** [1] - 1:3
**document** [14] - 3:9, 3:23, 10:21, 17:19, 18:17, 19:9, 20:7, 20:13, 21:4, 22:19, 22:20, 25:25, 29:9, 29:10
**documentation** [1] - 21:25
**documents** [67] - 3:17, 4:15, 4:20, 4:21, 4:24, 5:7, 6:20, 7:13, 7:19, 8:2, 8:8, 8:19, 8:23, 9:1, 9:6, 9:8, 9:23, 11:4, 11:5, 12:11, 12:16, 12:19, 12:22, 13:13, 13:15, 13:19, 13:23, 14:16, 14:17, 16:3, 16:4, 16:6, 16:16, 17:2, 18:9, 18:11, 18:13,

18:23, 20:14, 20:20, 21:5, 21:6, 21:7, 21:10, 21:11, 21:13, 21:16, 21:23, 22:11, 22:12, 22:14, 23:19, 23:20, 24:8, 25:12, 25:13, 25:17, 26:3, 26:22, 27:16, 27:19, 28:7, 28:25, 29:5, 30:16, 31:7
**documentswise** [1] - 8:6
**dollars** [1] - 17:1
**dolly** [1] - 7:17
**done** [7] - 6:24, 13:6, 20:11, 21:21, 23:4, 23:13, 30:8
**down** [5] - 3:11, 5:23, 11:3, 28:11, 30:21
**Drive** [1] - 2:4
**duplication** [1] - 22:19
**during** [2] - 17:9, 25:21

### E

**easier** [2] - 18:20, 21:12
**either** [1] - 19:12
**elected** [1] - 24:16
**email** [11] - 18:5, 18:18, 19:2, 19:4, 19:9, 19:12, 19:15, 20:16, 20:17, 21:12, 21:23
**emailing** [2] - 19:20
**emails** [2] - 21:16, 21:17
**employed** [1] - 8:20
**end** [2] - 9:3, 28:15
**entire** [1] - 11:5
**entitled** [1] - 32:22
**envisioning** [1] - 14:12
**equipment** [1] - 27:13
**equivalent** [1] - 7:15
**ESI** [4] - 6:15, 28:14, 28:17, 31:15
**ESI's** [1] - 30:4
**ESQ** [6] - 2:2, 2:2, 2:6, 2:9, 2:9, 2:10
**estimates** [1] - 14:18
**estimating** [2] - 22:5, 22:7
**et** [2] - 1:8, 3:6
**evidence** [3] - 16:20, 30:17, 30:20
**exactly** [1] - 9:23
**example** [8] - 9:25, 11:22, 16:16, 19:1,

19:24, 22:9, 27:6, 28:4
**exclude** [2] - 16:12, 25:18
**excluded** [1] - 11:5
**existing** [1] - 30:24
**Expedited** [3] - 3:6, 12:13, 13:15
**EXPEDITED** [1] - 1:8
**explain** [2] - 20:15, 29:2
**extend** [1] - 14:24
**extended** [1] - 11:16

### F

**fact** [3] - 6:12, 11:1, 14:16
**fall** [1] - 19:11
**false** [1] - 13:23
**families** [3] - 16:5, 17:18, 17:19
**family** [2] - 18:4, 18:13
**far** [6] - 7:22, 10:12, 16:15, 22:4, 26:22, 30:8
**faster** [1] - 24:2
**Feary** [1] - 2:11
**Federal** [1] - 1:12
**Fegan** [1] - 2:6
**few** [2] - 27:7, 27:8
**file** [1] - 7:17
**filed** [1] - 3:23
**financial** [7] - 9:8, 19:13, 19:20, 20:14, 20:19, 21:11, 21:16
**fine** [1] - 12:20
**finished** [1] - 22:6
**first** [1] - 12:23
**five** [5] - 9:18, 10:5, 12:1, 28:21
**flavor** [1] - 27:2
**focus** [2] - 27:20, 28:8
**follow** [1] - 3:14
**follow-up** [1] - 3:14
**following** [2] - 3:1, 3:25
**FOR** [1] - 1:2
**foregoing** [2] - 32:2, 32:20
**form** [1] - 19:21
**forward** [2] - 17:7, 24:23
**frankly** [6] - 3:15, 6:10, 6:22, 13:2, 13:4, 28:18
**Friday** [4] - 16:1, 23:2, 28:17, 31:15
**FROM** [1] - 1:1
**front** [2] - 7:12, 27:2

**frustration** [1] - 10:16

**G**

**gain** [1] - 27:14
**Gannon** [8] - 10:22, 21:21, 22:8, 28:14, 28:17, 28:22, 30:4, 31:15
**Garvin** [1] - 2:10
**general** [1] - 19:14
**generate** [3] - 27:16, 27:18, 28:7
**generic** [1] - 19:12
**given** [1] - 32:23
**goal** [2] - 4:6, 14:4
**GOPLERUD** [1] - 2:2
**Goplerud** [1] - 2:3
**Grand** [1] - 2:4
**guess** [22] - 3:10, 6:5, 7:7, 9:14, 10:10, 11:25, 12:25, 14:7, 14:8, 15:5, 15:9, 15:23, 21:3, 22:21, 22:24, 23:16, 23:17, 24:1, 26:2, 26:20, 30:9, 31:9
**guys** [3] - 6:21, 29:13, 30:5

**H**

**half** [4] - 22:12, 24:15, 26:13, 29:25
**HANSON** [2] - 2:10, 8:12
**Hanson** [4] - 2:11, 7:10, 8:12, 8:15
**happy** [9] - 11:21, 16:11, 16:12, 17:10, 25:18, 27:23, 28:11, 30:13, 30:20
**hard** [2] - 29:12, 29:13
**HARLEY** [1] - 1:4
**head** [1] - 9:23
**heard** [1] - 12:5
**hearing** [5] - 3:8, 4:18, 15:6, 32:1, 32:2
**heavier** [2] - 18:18, 21:11
**heavy** [1] - 20:14
**held** [1] - 1:11
**help** [4] - 24:2, 27:4, 28:11, 31:13
**helpful** [4] - 22:2, 23:18, 26:12, 26:13
**hit** [19] - 5:8, 5:10, 5:11, 5:13, 6:1, 6:3, 10:4, 10:7, 14:12, 15:1, 15:9, 15:12,

15:14, 16:1, 16:3, 18:17, 26:9, 26:11
**hits** [20] - 3:19, 4:6, 5:13, 5:15, 5:18, 11:3, 11:22, 16:3, 16:15, 17:24, 18:1, 18:4, 20:10, 22:18, 22:20, 25:24, 26:6, 26:25, 31:6
**hitting** [1] - 16:16
**hold** [1] - 22:6
**holiday** [1] - 9:4
**Honor** [23] - 3:13, 3:20, 5:21, 7:9, 8:4, 9:17, 9:21, 10:14, 10:17, 11:8, 11:15, 13:9, 14:10, 15:25, 23:7, 24:18, 25:9, 26:17, 28:12, 30:11, 30:13, 31:11, 31:21
**Honorable** [1] - 1:11
**hope** [2] - 8:22, 14:23
**hoped** [2] - 3:21, 24:14
**hopeful** [3] - 4:2, 7:24, 24:11
**hopefully** [1] - 29:17
**hopes** [1] - 28:10
**hour** [3] - 14:21, 21:5, 21:7
**hours** [2] - 14:18, 21:6
**huge** [1] - 16:19
**hyphen** [2] - 27:12
**hypotheticals** [1] - 28:18

**I**

**IA** [2] - 2:5, 2:14
**idea** [3] - 25:23, 29:17, 30:18
**identified** [3] - 4:11, 5:3, 7:10
**identify** [9] - 4:15, 8:22, 10:13, 13:23, 16:9, 16:11, 17:9, 21:1, 26:21
**IN** [2] - 1:2, 2:12
**Inc** [1] - 3:6
**INC** [1] - 1:8
**incentive** [1] - 27:15
**include** [1] - 16:4
**includes** [1] - 28:22
**increases** [1] - 8:7
**incredibly** [2] - 25:17, 25:24
**independent** [2] - 28:3, 28:5
**Indianapolis** [1] - 2:12
**indicated** [1] - 28:14

**individual** [1] - 12:12
**individually** [1] - 1:4
**individuals** [1] - 19:21
**information** [18] - 6:18, 9:8, 9:10, 9:11, 9:16, 9:20, 14:24, 16:21, 22:3, 25:21, 26:19, 27:21, 27:23, 28:9, 29:2, 30:21, 31:3, 31:13
**informed** [1] - 9:22
**instead** [1] - 28:3
**intend** [1] - 21:24
**interested** [1] - 15:6
**interpreted** [1] - 5:1
**involved** [1] - 12:16
**involves** [1] - 16:25
**IOWA** [1] - 1:2
**Iowa** [2] - 1:12, 1:13
**Ireland** [1] - 6:5
**IRELAND** [2] - 2:9, 5:21
**irrelevant** [6] - 16:8, 16:17, 16:18, 16:20, 17:11, 25:17
**issue** [2] - 9:10, 29:22
**issued** [1] - 14:11
**issues** [2] - 8:4, 28:25
**it'd** [1] - 11:18
**item** [1] - 20:21
**itself** [1] - 18:17

**J**

**JAMES** [1] - 2:10
**James** [1] - 8:12
**Jim** [1] - 8:15
**joined** [2] - 8:14, 8:16
**joint** [2] - 3:7, 7:1
**Judge** [1] - 1:11
**July** [8] - 1:13, 6:18, 15:20, 28:15, 28:17, 29:15, 31:15, 31:16
**jump** [1] - 14:23
**June** [4] - 4:21, 6:17, 13:18, 13:21

**K**

**K.E** [1] - 1:11
**Kelchner** [3] - 3:6, 8:21, 12:9
**KELCHNER** [1] - 1:4
**Kelly** [1] - 1:11
**key** [1] - 19:21
**kind** [9] - 19:8, 21:19, 25:2, 25:3, 25:21, 26:15, 29:10, 30:3, 30:20
**kinda** [2] - 29:12,

29:13
**Klemperer** [8] - 10:15, 11:25, 17:13, 17:17, 23:24, 25:1, 30:10, 31:19
**KLEMPERER** [13] - 2:6, 10:14, 12:3, 15:25, 17:14, 17:21, 17:23, 18:1, 18:3, 18:8, 25:9, 30:11, 31:20
**Klemperer's** [1] - 13:10
**knows** [1] - 24:23

**L**

**laid** [1] - 11:17
**language** [1] - 27:5
**large** [3] - 13:23, 28:24, 31:6
**last** [6] - 4:1, 4:18, 11:1, 11:6, 13:14, 14:11
**learn** [2] - 25:14, 26:19
**learned** [1] - 11:6
**lease** [12] - 18:16, 18:19, 19:6, 19:15, 20:18, 20:22, 27:11, 27:13, 28:3, 28:5
**least** [2] - 6:17, 15:3
**less** [2] - 20:13, 22:12
**Light** [1] - 2:10
**light** [1] - 4:16
**likelihood** [1] - 27:18
**likely** [2] - 8:24, 28:7
**limitation** [1] - 32:23
**Lincoln** [3] - 12:9, 15:8, 29:9
**line** [1] - 27:25
**lines** [1] - 18:22
**list** [3] - 5:7, 12:6, 21:12
**loaded** [1] - 6:15
**locate** [1] - 14:1
**look** [14] - 10:5, 15:9, 15:13, 17:10, 18:4, 19:3, 20:1, 22:8, 25:11, 25:16, 27:25, 30:13, 30:20, 31:17
**looking** [6] - 13:23, 19:1, 19:2, 21:16, 27:9, 30:7
**LP** [1] - 27:12
**LPA** [1] - 27:13
**LPC** [1] - 27:12

**M**

**Magistrate** [1] - 1:11
**Mahoney** [1] - 1:11
**main** [2] - 11:14
**major** [1] - 16:24
**manageable** [1] - 15:4
**Market** [1] - 2:12
**marketing** [1] - 19:10
**MARTY** [1] - 2:2
**material** [2] - 16:8, 17:11
**math** [1] - 10:9
**matter** [1] - 32:22
**matters** [2] - 9:9, 12:23
**mean** [8] - 6:21, 13:7, 14:7, 20:2, 20:3, 21:5, 22:4, 30:12
**meet** [5] - 9:7, 11:15, 11:21, 13:20, 24:24
**meet-and-confer** [2] - 9:7, 13:20
**meeting** [2] - 8:14, 8:16
**members** [2] - 16:25, 18:5
**mention** [1] - 18:21
**mentioned** [2] - 7:13, 10:17
**mentioning** [1] - 20:16
**MICHAEL** [1] - 2:6
**midway** [1] - 24:21
**might** [6] - 7:5, 15:7, 19:10, 19:15, 20:17, 27:16
**Mike** [2] - 10:14, 10:22
**minds** [1] - 26:24
**minutes** [1] - 12:4
**Miss** [10] - 6:8, 8:17, 12:25, 16:10, 16:23, 18:10, 26:2, 30:14, 31:9, 31:22
**missing** [1] - 21:8
**misspeak** [1] - 5:20
**misspoken** [2] - 22:22, 22:23
**modest** [1] - 16:7
**modified** [2] - 29:3, 31:2
**modify** [1] - 29:7
**Moines** [1] - 2:5
**moment** [1] - 9:17
**Monday** [1] - 23:2
**month** [4] - 6:13, 6:19, 15:16, 26:13
**morning** [2] - 7:14, 8:9
**most** [1] - 8:23
**move** [3] - 17:7, 24:2,

24:23
**movement** [1] - 13:6
**movers** [1] - 7:16
**MR** [14] - 5:21, 8:12, 10:14, 12:3, 15:25, 17:14, 17:21, 17:23, 18:1, 18:3, 18:8, 25:9, 30:11, 31:20
**MS** [36] - 3:13, 3:19, 4:23, 5:10, 5:17, 6:4, 6:7, 7:9, 8:13, 8:18, 9:3, 9:17, 9:21, 10:3, 10:7, 13:9, 13:12, 14:10, 15:19, 18:12, 19:8, 20:11, 21:9, 21:20, 22:10, 22:16, 22:18, 22:22, 23:7, 23:14, 23:16, 23:25, 24:10, 26:17, 31:11, 31:23
**multi** [1] - 21:1
**multi-spreadsheet** [1] - 21:1
**multiple** [6] - 5:19, 13:19, 18:14, 18:20, 19:14, 19:21

**N**

**naked** [1] - 7:12
**named** [1] - 8:5
**names** [1] - 12:6
**narrow** [3] - 10:25, 13:25, 28:11
**narrower** [1] - 11:2
**narrowing** [1] - 4:10
**necessary** [1] - 30:7
**need** [16] - 6:15, 7:6, 9:11, 14:13, 15:11, 15:17, 20:1, 25:6, 26:16, 28:19, 29:7, 29:8, 29:19, 29:21, 31:2, 31:18
**negotiate** [5] - 4:9, 14:13, 15:17, 25:2, 26:16
**negotiated** [2] - 25:6, 31:2
**negotiating** [2] - 15:18, 30:6
**negotiation** [4] - 4:14, 15:11, 24:12, 26:9
**negotiations** [4] - 4:1, 15:1, 15:14, 24:17
**new** [1] - 5:6
**next** [3] - 9:3, 28:15, 31:15
**noncustodial** [1] - 13:14
**nonresponsive** [1] -

28:24
**NORTHERN** [1] - 1:2
**Northern** [1] - 1:12
**Northwest** [1] - 2:7
**note** [1] - 5:22
**notes** [1] - 7:2
**nothing** [3] - 18:15, 19:16, 31:23
**number** [8] - 8:4, 9:5, 9:7, 11:22, 16:7, 18:6, 28:24, 31:6
**Number** [1] - 3:5
**numbered** [1] - 20:17
**numbers** [2] - 16:17, 16:19

**O**

**object** [1] - 7:20
**obtained** [1] - 6:14
**obvious** [1] - 19:10
**OF** [2] - 1:2, 1:8
**old** [1] - 7:16
**once** [3] - 21:25, 25:14, 30:21
**one** [11] - 4:20, 6:18, 8:5, 8:9, 10:22, 20:9, 20:21, 20:22, 25:24, 28:1
**ones** [3] - 5:3, 12:23, 12:24
**OPERATOR** [1] - 8:14
**opinion** [1] - 20:14
**opportunities** [1] - 13:20
**opportunity** [1] - 4:14
**opposed** [1] - 18:11
**order** [7] - 3:25, 4:19, 7:5, 7:20, 9:13, 14:11, 15:9
**originally** [1] - 10:17
**otherwise** [1] - 26:1
**oversight** [1] - 13:2
**own** [3] - 11:2, 28:6

**P**

**p.m** [1] - 32:3
**pace** [1] - 13:7
**pages** [1] - 18:20
**part** [1] - 19:22
**particular** [6] - 9:24, 12:21, 20:21, 26:4, 26:23, 27:21
**parties** [3] - 11:8, 14:13, 31:13
**parties'** [1] - 3:7
**peg** [1] - 8:1
**pending** [1] - 13:8
**per** [10] - 5:13, 5:16,

16:6, 17:25, 18:4, 18:9, 18:11, 20:13, 21:4, 21:5
**percent** [3] - 4:25, 28:4, 28:5
**percentage** [1] - 21:24
**perhaps** [1] - 15:6
**piece** [1] - 13:25
**place** [1] - 31:1
**places** [1] - 26:20
**Plaintiff** [2] - 1:6, 2:2
**plaintiff** [12] - 3:21, 4:22, 4:24, 6:3, 8:6, 10:11, 10:15, 12:8, 17:16, 19:7, 27:22, 29:1
**plaintiff's** [15] - 4:7, 5:12, 5:25, 7:1, 7:14, 8:10, 8:24, 14:8, 14:25, 21:25, 24:22, 27:17, 28:10, 28:23, 31:5
**plaintiffs** [7] - 7:12, 14:2, 15:19, 15:22, 15:24, 19:7, 31:20
**plus** [1] - 17:25
**point** [17] - 6:14, 7:21, 10:12, 10:20, 11:15, 11:24, 14:9, 17:5, 23:4, 26:1, 26:11, 28:14, 28:19, 29:4, 29:18, 29:19
**position** [6] - 16:23, 23:9, 25:5, 25:6, 25:10, 26:10
**positives** [1] - 13:24
**possible** [2] - 14:4, 15:13
**possibly** [1] - 3:16
**potential** [1] - 27:18
**potentially** [2] - 5:3, 19:7
**practice** [1] - 7:24
**prepared** [1] - 3:1
**president** [2] - 21:22, 25:14
**pretty** [1] - 15:15
**prevalent** [1] - 19:12
**primary** [1] - 13:25
**priorities** [1] - 15:8
**prioritize** [3] - 8:13, 8:18, 29:8
**priority** [1] - 10:3
**privileged** [1] - 7:6
**problematic** [1] - 26:24
**problems** [1] - 17:9
**proceedings** [1] - 32:21
**process** [9] - 5:2,

17:9, 24:5, 24:19, 24:24, 25:21, 29:16, 30:3, 30:5
**produce** [5] - 6:16, 6:21, 16:22, 22:11, 28:17
**produced** [7] - 9:12, 13:13, 13:14, 14:4, 26:25, 28:15, 31:6
**producing** [1] - 11:20
**production** [5] - 5:5, 8:23, 11:9, 12:21, 22:8
**productions** [1] - 13:19
**profit** [1] - 27:14
**program** [3] - 18:16, 27:11, 27:12
**programs** [1] - 9:9
**progress** [3] - 24:21, 24:23, 29:23
**prop** [1] - 31:4
**proportional** [2] - 14:9, 17:2
**proposal** [6] - 7:1, 11:14, 15:20, 25:17, 30:13, 31:12
**proposals** [1] - 4:10
**propose** [2] - 6:11, 6:23
**proposed** [14] - 4:3, 4:6, 6:12, 8:9, 10:25, 11:9, 11:12, 12:4, 14:8, 15:19, 17:4, 22:25, 24:13
**proposing** [1] - 3:11
**protective** [2] - 7:5, 9:12
**prove** [1] - 16:18
**provide** [4] - 5:24, 7:19, 21:24, 30:21
**provided** [1] - 6:4
**purchase** [9] - 18:16, 18:19, 19:15, 20:19, 20:22, 27:11, 28:3, 28:5
**purpose** [1] - 11:23
**pursuant** [1] - 9:12

**Q**

**quick** [1] - 7:24
**quickly** [3] - 14:4, 20:6, 24:20
**quite** [1] - 27:17

**R**

**raised** [1] - 3:21
**range** [2] - 5:15, 5:17

**RAPIDS** [1] - 1:3
**rate** [1] - 14:20
**rather** [1] - 29:21
**RDR** [2] - 2:13, 32:24
**read** [1] - 20:23
**ready** [1] - 9:20
**real** [1] - 7:7
**reality** [1] - 6:22
**really** [6] - 11:23, 12:23, 13:5, 19:25, 26:10, 31:3
**reason** [1] - 25:25
**reasonable** [11] - 15:12, 16:7, 16:21, 17:7, 23:6, 25:7, 25:10, 25:22, 26:3, 26:14, 29:3
**received** [3] - 10:21, 16:1, 16:2
**record** [1] - 8:16
**recording** [5] - 2:14, 3:2, 32:5, 32:21, 32:23
**RECORDING** [1] - 1:1
**reduce** [1] - 24:15
**reduction** [1] - 4:4
**refer** [1] - 19:15
**refine** [1] - 15:3
**regard** [1] - 13:20
**related** [5] - 8:2, 8:24, 19:4, 20:18, 21:23
**relevant** [11] - 8:8, 12:11, 12:16, 12:19, 20:1, 21:2, 21:18, 25:25, 26:22, 27:17, 28:7
**reluctant** [1] - 9:25
**remaining** [1] - 9:14
**remember** [1] - 25:12
**report** [12] - 5:10, 5:11, 5:13, 5:22, 16:1, 16:2, 24:21, 24:22, 29:15, 30:2, 31:16
**reports** [5] - 5:8, 6:1, 6:3, 19:13, 19:21
**request** [1] - 13:17
**requested** [1] - 4:9
**requests** [1] - 20:25
**require** [2] - 9:5, 14:17
**required** [2] - 7:12, 24:1
**resources** [3] - 23:11, 24:3, 24:19
**respond** [3] - 13:9, 14:5, 15:21
**responded** [1] - 13:16
**response** [2] - 7:1, 20:25
**responses** [2] - 13:15,

13:16
**responsible** [1] - 7:19
**responsive** [5] - 5:4, 19:11, 20:23, 22:13, 26:7
**rest** [1] - 30:5
**returning** [2] - 16:18, 16:20
**review** [52] - 3:7, 3:23, 4:4, 4:20, 4:24, 7:21, 8:7, 8:13, 8:18, 9:2, 9:11, 10:23, 11:7, 13:22, 13:25, 14:21, 14:24, 15:3, 17:2, 17:7, 17:9, 18:20, 18:21, 20:5, 20:8, 20:11, 21:12, 21:20, 22:1, 22:5, 22:7, 23:10, 23:20, 23:21, 23:24, 24:3, 24:4, 24:8, 24:15, 25:15, 25:19, 26:20, 28:9, 28:11, 29:6, 29:8, 29:25, 30:22, 30:24, 31:6
**reviewed** [7] - 4:7, 4:25, 10:23, 19:13, 23:4, 23:22, 25:13
**reviewing** [10] - 3:17, 5:1, 5:2, 5:4, 6:18, 23:17, 26:3, 26:14, 28:20, 28:22
**reviews** [2] - 20:6, 30:8
**Ridge** [1] - 2:4
**ridiculously** [1] - 3:20
**Road** [1] - 2:7
**road** [2] - 3:11, 30:21
**roll** [1] - 7:17
**rolling** [1] - 8:23
**roughly** [5] - 6:19, 17:24, 21:17, 22:4, 22:14
**run** [5] - 5:9, 5:10, 5:11, 5:12, 6:2

## S

**s/Shelly** [1] - 32:24
**Sales** [1] - 12:10
**scheme** [1] - 12:17
**scope** [2] - 8:6, 18:23
**Scopelitis** [1] - 2:10
**Scott** [1] - 2:6
**search** [32] - 3:23, 4:2, 4:4, 5:14, 5:23, 6:16, 10:25, 11:2, 14:7, 14:8, 14:13, 15:17, 16:3, 16:14, 17:8, 19:22, 25:2, 26:24,

27:1, 28:23, 29:2, 29:7, 30:6, 30:15, 30:23, 30:24, 31:2, 31:4, 31:5
**searching** [1] - 5:8
**second** [2] - 12:24, 28:1
**seconds** [3] - 20:13, 21:4, 21:11
**see** [5] - 4:15, 13:24, 26:4, 26:15, 29:15
**seeing** [3] - 16:8, 21:15, 21:18
**seek** [1] - 7:20
**seem** [4] - 7:15, 20:5, 23:6, 26:14
**Semmler** [3] - 2:13, 32:24, 32:24
**send** [2] - 12:6, 14:12
**sense** [4] - 15:7, 24:20, 30:13, 31:12
**sentence** [1] - 20:22
**served** [2] - 12:15, 13:17
**set** [3] - 7:2, 28:16, 29:12
**share** [3] - 10:16, 26:19, 28:9
**shared** [1] - 5:12
**shed** [1] - 4:16
**Shelly** [2] - 2:13, 32:24
**Shindler** [1] - 2:3
**shortly** [2] - 13:17, 13:18
**show** [1] - 31:4
**showing** [1] - 31:7
**shown** [2] - 16:16, 16:20
**shows** [1] - 22:2
**signoff** [1] - 9:5
**similarly** [1] - 1:5
**single** [6] - 9:1, 10:20, 10:21, 11:7, 20:9, 25:24
**Sioux** [2] - 1:12, 2:14
**situated** [1] - 1:5
**situation** [1] - 27:6
**six** [9] - 3:11, 6:20, 6:24, 9:18, 10:5, 12:1, 13:8, 28:21
**Sixth** [2] - 1:12, 2:14
**size** [1] - 24:15
**small** [1] - 5:17
**sorry** [2] - 6:5, 23:8
**sort** [2] - 6:11, 19:17
**sounded** [1] - 25:3
**speaking** [1] - 10:13
**Specialized** [10] - 8:20, 9:16, 12:2, 13:17, 15:8, 26:4,

26:15, 28:4, 28:20, 29:9
**specific** [2] - 17:9, 29:13
**specifically** [1] - 12:11
**specifying** [1] - 5:13
**spreadsheet** [5] - 18:22, 19:18, 19:21, 20:2, 21:1
**spreadsheets** [3] - 9:8, 18:14, 18:20
**staged** [1] - 15:7
**staging** [1] - 12:20
**standard** [1] - 7:18
**stands** [1] - 25:23
**start** [6] - 4:20, 25:15, 26:3, 26:14, 28:20, 28:22
**started** [5] - 6:17, 9:2, 11:6, 12:5, 13:22
**STATES** [1] - 1:2
**States** [1] - 1:12
**statistics** [1] - 21:13
**status** [8] - 3:7, 7:1, 13:4, 15:15, 29:14, 30:2, 31:15
**STATUS** [1] - 1:8
**Status** [1] - 1:11
**stems** [1] - 6:12
**still** [14] - 3:22, 6:14, 14:7, 14:13, 15:16, 15:17, 18:8, 23:19, 23:21, 24:3, 24:4, 27:9, 28:18, 29:25
**strategy** [1] - 19:10
**Street** [3] - 1:12, 2:12, 2:14
**string** [2] - 28:6, 30:15
**strings** [3] - 26:24, 27:1, 28:2
**strip** [1] - 7:12
**strong** [1] - 27:24
**struck** [1] - 7:11
**struggling** [2] - 23:16, 27:3
**strung** [2] - 27:7, 27:8
**stuff** [1] - 6:16
**subject** [1] - 11:20
**submission** [1] - 3:8
**substance** [1] - 20:17
**substantial** [9] - 3:12, 3:16, 6:13, 10:18, 11:16, 23:1, 23:3, 24:9, 29:19
**substantially** [3] - 8:7, 8:8, 18:18
**suggest** [1] - 26:18
**suggestion** [2] - 24:10, 30:15
**Suite** [3] - 2:4, 2:7,

2:11
**supplemental** [1] - 13:15
**system** [1] - 32:23

## T

**tagging** [1] - 20:24
**talks** [1] - 19:13
**tend** [1] - 24:6
**tens** [1] - 16:25
**term** [4] - 5:14, 16:14, 18:18, 19:6
**terms** [38] - 3:24, 4:2, 4:5, 4:9, 5:1, 7:10, 10:25, 11:2, 11:3, 14:7, 14:8, 14:14, 15:1, 15:14, 15:17, 16:3, 16:17, 17:8, 19:11, 24:12, 25:2, 25:20, 26:9, 26:22, 27:7, 27:8, 27:14, 27:25, 28:23, 29:2, 29:7, 30:6, 30:23, 30:24, 31:2, 31:4, 31:5
**themselves** [3] - 17:4, 23:24, 30:23
**they've** [5] - 4:9, 8:5, 12:14, 12:15, 19:17
**thinking** [1] - 20:21
**thinks** [2] - 7:23, 7:25
**third** [2] - 11:16, 12:13
**thoughts** [2] - 25:8, 31:9
**thousand** [1] - 18:3
**thousands** [3] - 5:19, 16:25, 17:1
**three** [1] - 22:20
**tied** [1] - 8:19
**ties** [1] - 17:5
**timeframe** [1] - 4:17
**timeline** [2] - 10:1, 10:16
**today** [1] - 29:15
**together** [3] - 17:6, 27:7, 27:8
**top** [1] - 9:23
**topic** [1] - 10:7
**topics** [3] - 19:14, 20:17, 27:21
**total** [3] - 5:24, 22:14, 28:21
**totally** [1] - 25:22
**toward** [1] - 14:3
**towards** [1] - 29:22
**TRANSCRIBED** [1] - 1:1
**Transcribed** [1] - 2:13
**TRANSCRIPT** [1] - 1:8

**transcript** [3] - 3:1, 32:5, 32:21
**truck** [1] - 27:13
**trucks** [1] - 28:6
**try** [2] - 5:24, 15:3
**trying** [5] - 3:20, 8:1, 19:23, 20:4, 24:14
**turn** [3] - 23:5, 23:10, 30:16
**turned** [1] - 14:16
**two** [4] - 11:10, 13:19, 26:23, 30:2
**type** [2] - 19:9, 28:2

## U

**ultimate** [1] - 25:5
**ultimately** [2] - 12:22, 24:15
**underlying** [1] - 12:17
**underway** [2] - 4:24, 30:22
**unduly** [1] - 18:24
**unintelligible** [4] - 4:16, 10:19, 17:8, 17:11
**unique** [1] - 5:24
**UNITED** [1] - 1:2
**United** [1] - 1:11
**unreasonable** [3] - 14:9, 14:22, 16:14
**unrelated** [6] - 9:9, 27:19, 30:16, 30:18, 30:19
**unreviewed** [1] - 23:20
**unwilling** [2] - 4:8, 27:25
**up** [3] - 3:14, 16:12, 30:16
**upside** [1] - 27:15
**useful** [1] - 31:3
**useless** [1] - 26:22

## V

**various** [1] - 17:6
**versus** [1] - 3:6
**view** [1] - 14:14
**VON** [13] - 2:6, 10:14, 12:3, 15:25, 17:14, 17:21, 17:23, 18:1, 18:3, 18:8, 25:9, 30:11, 31:20
**Von** [9] - 10:15, 11:25, 13:10, 17:13, 17:17, 23:24, 25:1, 30:10, 31:19
**vs** [1] - 1:7

## W

**Washington** [1] - 2:8
**ways** [2] - 28:8, 28:10
**week** [5] - 9:3, 9:4, 11:1, 11:6, 28:15
**weeks** [8] - 3:11, 3:18, 6:21, 6:24, 11:11, 29:15, 30:2, 31:16
**Weese** [1] - 2:3
**weigh** [1] - 10:11
**West** [2] - 2:5, 2:12
**whereas** [1] - 21:11
**wildly** [4] - 27:19, 30:16, 30:18, 30:19
**willing** [4] - 23:24, 25:7, 25:22, 29:20
**workbook** [1] - 21:1
**worksheet** [1] - 21:1
**worksheets** [1] - 18:14
**world** [1] - 3:15

## Y

**years** [1] - 13:8
**yesterday** [1] - 16:2

## Z

**zero** [2] - 6:10, 6:19