# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> vs. <br><br> CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc. and John Smith, an individual <br><br> Defendant(s). | Case No. 1:24-cv-00082-CJW-KEM <br><br> Honorable Judge C.J. Williams |

## JOINT STATUS REPORT

Pursuant to the Court's Order during the July 1, 2025 Status Conference (*see* ECF No. 86), Plaintiff, Harley Kelcher, and Defendants, CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. (Expedited), CRST Lincoln Sales, Inc. (Lincoln Sales), CRST Specialized Transportation, Inc. (Specialized), and John Smith, hereby jointly submit this status report summarizing the status of Defendants' custodial ESI review:

**<u>Defendants' Position</u>**

***Production of Gannon Custodial ESI***. Consistent with the Court's order, on July 11, 2025, Defendants completed review of CEO and President Michael Gannon's ESI—which included a review using Plaintiff's proposed 58 search term strings against all of Mr. Gannon's emails, Microsoft Teams messages, and Microsoft OneDrive (document storage). Defendants produced 1749 unique documents, spanning approximately 3,000 unique pages, as responsive—including 877 documents for Specialized, 1749 for Expedited, and 486 for Lincoln Sales.

1

With their production, Defendants noted that there is a tranche of 192 documents including families that were flagged for attorney-client and/or work-product privilege. Defendants are in the process of preparing a privilege log and intend to make a small, supplemental production redacting just for the privileged content to the extent that other, non-privileged content within the family of documents is responsive to any of Plaintiff's requests for production.

***Review of Other Custodial ESI***. As of July 15, 2025, Defendants have reviewed approximately 15,108 of the 61,060 documents including families that have hit for any of Plaintiff's 58 proposed search term strings across the 23 ESI custodians. Defendants anticipate making rolling productions of responsive documents on a biweekly basis.

***Negotiation of Search Terms***. The parties have not further negotiated search terms following the July 1, 2025 Status Conference. However, Defendants maintain that further narrowing is appropriate.

As Mr. Gannon's custodial ESI review indicates, Plaintiff's proposed search terms strings are overly broad and unduly burdensome—and far broader than the underlying requests themselves, which Defendants also objected to as overly broad. For example, half of the search term strings do not even require the mention of lease purchase (or similar derivatives); instead, Plaintiff's requests were expanded out to all independent contractors even though a significant share of contractors own their own equipment and therefore could not be part of Plaintiff's proposed class of lease purchase contractors. Confirming Defendants' objections, more than half of all of Mr. Gannon's custodial ESI documents were found to be entirely non-responsive—despite Defendants taking a liberal construction for the scope of Plaintiff's various requests for production. Moreover, as explained below, none of the documents produced appear to actually relate to the merits of Plaintiff's claim or his ability to certify a class. Defendants have therefore asked

2

Plaintiff's counsel to confirm whether the documents received from Mr. Gannon's custodial ESI are within the scope of what they are seeking and to further narrow the proposed search terms.

Defendants are particularly concerned with Plaintiff's proposed searches related to his set of requests seeking any documents "concerning any analysis of, or description of, the benefit(s) (potential or actual) to" lease purchase contractors or Defendants.[1] Plaintiff's proposed search terms for these requests hit for approximately 32,782 documents including families—more than half of all 61,060 documents in the custodial ESI review using Plaintiff's latest proposed search terms (a similar share to Mr. Gannon's custodial ESI).[2] To make clear, Defendants have not agreed to Plaintiff's proposed search terms.[3] Nevertheless, even applying a broad construction of Plaintiff's requests, in reviewing Mr. Gannon's custodial ESI, Defendants did not identify any documents concerning an analysis or description of the benefits *to lease purchase contractors*

---

[1] Specialized Requests (Set Two) Nos. 50-51; Expedited Requests (Set One) Nos. 50-51; Lincoln Sales Requests (Set One) Nos. 46-47.

[2] Plaintiff's latest proposed search term strings for these requests include:
- ("Lease Purchase Program" OR "lease-purchase" OR "lease purchase" OR "LP program" OR "LPC" OR "LPA" OR "Equipment Lease" OR "Truck Lease") W/15 (benefit* OR advantage* OR gain* OR profit* OR upside OR incentive*)
- ("Lease Purchase Program" OR "lease-purchase" OR "lease purchase" OR "LP program" OR "LPC" OR "LPA" OR "Equipment Lease" OR "Truck Lease") W/30 ((benefit* OR advantage* OR gain* OR profit* OR upside OR incentive*) W/30 (analy* OR evaluat* OR review OR assessment OR "cost-benefit"))
- ("Independent Contractor") W/15 (benefit* OR advantage* OR gain* OR profit* OR upside OR incentive*) AND (analy* OR evaluat* OR review OR assessment OR "cost-benefit")
- ("Independent Contractor") W/25 (benefit* OR advantage* OR gain* OR profit* OR upside OR incentive*)

[3] Below, Plaintiff incorrectly suggests that Defendants previously agreed to conduct a review based on certain search terms strings. While Defendants did draft a handful of the proposed searches and identified potential ESI custodians, they did so at Plaintiff's request and strictly for the purpose of running a hit report. But Defendants have not agreed to Plaintiff's search terms and have consistently objected to any unduly burdensome custodial ESI review—particularly if dominated by requests and searches with little or no relevance to his BOPA claim or his ability to certify a class—and that is exactly what Plaintiff's proposed search appears to be.

3

using Plaintiff's proposed search terms. Moreover, nearly all the documents that "concern[ed] any analysis of, or description of, the benefit(s) (potential or actual) to" Defendants and therefore were produced were a variety of financial models and reports that merely note, in passing, profitability (or loss) for lease-purchase programs—nearly all from the use of the search term "profit*." These documents are otherwise replete with confidential financial information and analyses not relevant to this case—including for several business lines and divisions that do not even utilize lease-purchase contractors. And even assuming that Defendants' profit (or loss) related to lease-purchase contractors could somehow be relevant to certifying a class of lease purchase contractors for a fraudulent inducement claim under Iowa's Business Opportunity Promotions Act—something Plaintiff appears to concede does not actually go to the merits of his claim or class certification but rather merely colors the Defendants[4]—there are far narrower, more cost-effective means for the parties to discover that information than further review of custodial ESI using Plaintiff's proposed terms. Indeed, Defendants have already produced profit-loss statements to Plaintiff's counsel. *See* SPEC004160-61, EXPEDITED003061-62 (profit and loss statements produced in response to Specialized (Set Two) and Expedited (Set One) RFP Nos. 21, 28, 46, 50). Plaintiff does not offer any reason why further discovery of the same facts in a far more burdensome method is necessary.

Although Defendants would prefer to work collaboratively to narrow the scope of the search without Court intervention, Plaintiff has suggested that no further narrowing is needed. Accordingly, given the significant burden and cost posed by Defendants' review of the remaining approximately 50,000 documents, Defendants respectfully ask that the Court order that further

---

[4] Nowhere does Plaintiff even suggest that a BOPA claim requires a showing of motive or intent; rather, he vaguely suggests all of these thousands of financial analyses must be searched for and produced because, if they show profitability to Defendants, they could "lend[] credibility and narrative richness to Plaintiff's case." *See ante* at 6 ("[E]vidence that the program was profitable to Defendants goes to their motive in carrying out a scheme despite violating Iowa law, lending credibility and narrative richness to Plaintiff's case.").

4

review based on Plaintiff's proposed search terms be narrowed by (1) removing the term "profit*" from each search term string and (2) limiting review to the 7 ESI custodians affiliated with CRST Specialized and 2 affiliated with Lincoln Sales (the only entities Plaintiff's counsel has a class representative for and the only entities that Plaintiff signed an Independent Contractor Operating Agreement or Lease Purchase Agreement with—which, as discovery has already showed, are unique agreements to CRST Specialized contractors. CRST Expedited contractors do not sign the same agreements). Alternatively, Defendants request that the Court limit the custodial ESI review based on these search terms strings to a limited random sample of documents.

**Plaintiff's Position**

Defendants produced Mr. Gannon's documents late on the evening of July 11. Plaintiff provided the documents to his ESI vendor on Monday morning to import into the review platform, and only just gained access to them. Accordingly, Plaintiff's review of these documents is only just beginning. Significantly, over 38% of the Gannon documents that hit on a search term were responsive to a request (1,749 produced documents compared to 4,570 hits including families). This is far higher than in most cases and highlights the propriety of the existing search terms.

Further, while CRST refers to the search terms as "Plaintiff's proposed search terms strings," it is important to recall that the terms were actually developed collaboratively, with multiple rounds of back-and-forth revisions.[5] CRST refers to these terms as "Plaintiff's" merely

---

[5] For instance, CRST calls out four search strings in fn.2 above but leaves out critical context:

(1) CRST proposed the string in its first bullet on May 28 and Plaintiff agreed to it without modification;

(2) CRST's May 28 revisions to the string in its second bullet reduced document hits from 728 to 13 and Plaintiff merely expanded the connectors from w/15 and w/25 to w/30 to address CRST's overcorrection; and

(3) the "independent contractor" terms hit very few unique documents, indicating substantial overlap with other search strings and negating the suggestion that these strings add any substantial burden to CRST's review. Nevertheless, Plaintiff unilaterally agreed to

because Plaintiff made the final round of fairly marginal revisions, primarily where CRST's revisions had eliminated all, or nearly all, hits. Plaintiff remains willing to entertain proposals to lessen Defendants' review burden, such as bulk-tagging as non-responsive particular recurring reports that both sides agree are irrelevant, thereby eliminating the need for document-by-document review. But to date, CRST has not presented Plaintiff with such a proposal.

Instead, in the form of a status report, CRST makes two sweeping requests, neither of which were discussed with Plaintiff's counsel before we received a draft of the report on the morning of July 15. The Court should reject both as procedurally improper and meritless.

First, CRST proposes eliminating the word "profit" from every search string. As a threshold matter, documents addressing the profitability of the lease purchase program to class members and CRST itself are relevant to a host of issues. For instance, representations to class members about prospective earnings (and internal discussions about what those representations will be) go to the heart of Plaintiff's BOPA claim. Comparing those representations to the class's actual earnings go to both liability (deceptive conduct, material omissions) and damages (including disgorgement). As a final example, evidence that the program was profitable to Defendants goes to their motive in carrying out a scheme despite violating Iowa law, lending credibility and narrative richness to Plaintiff's case.[6] Turning to CRST's proposal, CRST has failed to establish that the inclusion of

---

narrow every "independent contractor" string by replacing AND connectors with w/15 connectors. Documents produced to date reveal that the inclusion of "independent contractor" search strings was appropriate: CRST employees regularly refer to lease purchase drivers using the phrase "independent contractor" or "IC." And, while not every independent contractor at CRST is in the lease purchase program, every lease purchase program driver is an independent contract.

[6] Inexplicably, above, CRST suggests that Plaintiff "concede[s]" that evidence related to profitability "does not actually go to the merits of his claims." But as Plaintiff's list of examples makes clear, the profitability of the program, and CRST's representations, discussions, and analyses about profitability, go to the heart of Plaintiff's claim.

the word "profit" in search strings is leading to a disproportionate number of false positives. For instance, it has never provided a hit report isolating "profit" from other terms: i.e., it does not explain how many documents would be excluded from review by eliminating "profit." Nor has it identified particular irrelevant documents, or even categories of documents that only hit on this term, to allow the parties to weigh the pros and cons of eliminating the term. While CRST asserts that Mr. Gannon's files included a variety of financial models that address profitability only in passing, it does not identify them by bates number, explain why they are irrelevant, or establish how many of the remaining custodians' documents consist of similar financial models.

Second, CRST proposes eliminating nearly two thirds of its document custodians. CRST itself proposed nearly all of these custodians after a lengthy investigation (Plaintiff requested CRST add only two additional custodians). CRST makes no effort to explain why these individuals' documents are suddenly irrelevant and disproportionate. Rather, CRST simply makes the bald assertion that Plaintiff can only represent a class of Specialized drivers and is therefore not entitled to discovery from Expedited-associated personnel. But a party "cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014). Plaintiff seeks to represent a class of both Specialized and Expedited drivers, all of whom were victimized by Defendants' coordinated scheme, were duped by Defendants' unified marketing, and were subjected to substantially similar contract terms and unfair fees. *See* Compl. ¶ 33 (ECF 1) (defining class); *id.* ¶¶ 16-31 (discussing interrelated operations and common scheme). Plaintiff is entitled to discovery to certify this class and prove the merits of its claims. Even setting aside Plaintiff's class allegations, CRST's position ignores the deeply integrated nature of its operations, the many services and functions shared among entities, and the fluidity with which their personnel transition between entities or wear multiple hats. Indeed, from the discovery produced to date, it

7

is clear the Defendants' parent, CRST International Holdings, LLC, manages its subsidiaries more as divisions within a single company than as independent entities.

Accordingly, while Plaintiff remains willing to engage in further evidence-based discussions with CRST to address reasonable concerns, the requests it makes in this report should be rejected.

Dated: July 15, 2025

Respectfully Submitted,

/s/ *Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: 202-921-0002 | Fax: 312-264-0100
mike@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: 515-223-4567 | Fax: 515-223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312-741-1019 | Fax: 312-264-0100
beth@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: 415-233-7100
rsb@boulter-law.com

*Attorneys for Plaintiff Kelchner and the Putative Class*

/s/ *James H. Hanson*
James H. Hanson (pro hac vice)
Angela S. Cash (pro hac vice)
Andrew J. Ireland (pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON
& FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205 | F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN
PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641 | F: 319-366-1917
kvisser@spmblaw.com

*Attorneys for Defendants*