# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

CRST EXPEDITED, INC., et al.,

Defendants.

No. 24-CV-82-CJW-KEM

**ORDER**

_____

Plaintiff Harley Kelchner brings a putative class action against three CRST entities[1] and their owner, John Smith (collectively, CRST), alleging CRST's lease-driver program violated the Iowa Business Opportunity Promotions Act. Doc. 1. Currently pending before the court is a motion to compel raising two discovery disputes. Doc. 76. Plaintiff seeks (1) pre-certification names and contact information for members of the putative class and (2) witness lists, deposition transcripts, expert reports, and responses to interrogatories and requests for admissions in another class action case against CRST alleging unfair wage claims based on the lease-driver program. *Id.* CRST filed a resistance (Doc. 83), and Plaintiff filed a reply (Doc. 84). For the reasons that follow, I **grant in part and deny in part** the motion to compel.

## I. BACKGROUND

Through the lease-driver program, CRST leases trucks to drivers (through Defendant CRST Lincoln Sales), then has them drive loads for CRST Expedited or CRST Specialized as independent contractors. Doc. 1. Plaintiff alleges that CRST used

---

[1] CRST Expedited, Inc; CRST Specialized Transportation, Inc.; and CRST Lincoln Sales, Inc.

misleading advertisements to recruit drivers to the lease-driver program. *Id.* Plaintiff alleges that CRST controlled the rates paid to drivers and the loads they could transport; improperly deducted drivers' pay (for insurance, tolls, fuel, fuel tax, Electronic Fund fees, truck maintenance and repairs, and miscellaneous expenses); and collected fuel surcharges from customers without passing those funds along to the drivers. *Id.* Plaintiff alleges that the lease-driver program violated the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.1-551A.10, because CRST used misleading advertisements and failed to make required disclosures—including misrepresenting the amount drivers would earn while concealing the high turnover rate, low average income and miles, and excessive charges and deductions. *Id.* Plaintiff Kelchner drives for CRST Specialized through the lease-driver program, but he seeks to represent a class of lease drivers who drive for either CRST Specialized or CRST Expedited. *Id.*

As part of its initial disclosures, CRST disclosed witnesses it might use to support its case and included "[p]utative class members, including those who provide affidavits, declarations, or any other form of witness statements or testimony." Doc. 76-14. In January 2025, Plaintiff served interrogatories and requests for production on CRST. Plaintiff requested that CRST identify the putative class members by name, address, telephone number, email address, the dates they drove for CRST, and which CRST entity they drove for (Plaintiff requested this information via Interrogatory 2, "ideally" provided as an electronic database; and via Request for Production 20 for "documents sufficient to identify" this information). Docs. 76-6–76-8. CRST listed boilerplate objections of overbreadth, irrelevance, disproportionality, and undue burden; raised privacy concerns on behalf of members of the putative class; and asserted the request was premature, since the class had not yet been certified. In its interrogatory response, CRST additionally explained that it "may not" keep "a single, comprehensive database" with the requested information, making compiling, verifying, and formatting the data unduly burdensome. *Id.*

2

Plaintiff also requested information and documents related to a pending class action against CRST Expedited, *Cervantes v. CRST International, Inc.*[2] The class in that case covers those in the lease-driver program who drove for CRST Expedited (but not those who drove for CRST Specialized), excluding those who leased more than one truck at a time.[3] The *Cervantes* plaintiffs alleged that CRST misclassified lease drivers as independent contractors instead of employees, resulting in CRST's failure to pay them the minimum wage required by the Iowa Minimum Wage Law and the Fair Labor Standards Act (FLSA).[4] Relevant factors to that determination include CRST's control over the drivers, the parties' relative investments, the drivers' opportunity for profit and loss, the skill and initiative necessary to perform the job, the permanency of the relationship between the drivers and CRST, and whether the drivers were integral to CRST's business.[5] The *Cervantes* plaintiffs also brought a claim under the Truth and Leasing Act based on CRST's failure to disclose the freight bill to drivers, resulting in at least some drivers being underpaid.[6] The named plaintiffs brought additional claims that were ultimately not certified to proceed as a class action.[7] Named plaintiffs argued that CRST's deductions from their paychecks for operating expenses and the like violated the Iowa Wage Payment Collection Law and caused unjust enrichment (the court dismissed the latter claim at summary judgment).[8] The *Cervantes* named plaintiffs' fraud claim,

---

[2] No. 20-CV-75 (N.D. Iowa).

[3] *Id.*, Doc. 368 (May 28, 2024) (summary judgment ruling).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*, Doc. 276 (June 14, 2022).

[8] *Id.*, Doc. 368.

based on CRST's advertisements of the salaries they would earn as part of the lease-driver program, survived summary judgment.[9]  The claims proceeded to a bench trial (the trial transcripts are publicly available), and the court's ruling is pending.

Plaintiff seeks the following related to the *Cervantes* case:  the identification (as an interrogatory response) of "all witnesses who testified via affidavit, declaration, deposition, or other live testimony" (Interrogatory 11); deposition transcripts for CRST employees; CRST's expert reports and their deposition transcripts; CRST's interrogatory responses; and CRST's responses to requests for admission (Requests for Production 22-25).  Docs. 76-6–76-8.  CRST raised boilerplate objections of overbreadth, undue burden, disproportionality, confidentiality, and privilege.  *Id.*  CRST objected that the cases were not similar because *Cervantes* involved different causes of action; did not include CRST Specialized, CRST Lincoln Sales, or Smith as defendants; and revolved around the legal issue of whether the drivers were improperly classified as independent contractors, rather than business opportunities and promotions.  *Id.*  CRST cited cases in which courts rejected "cloned" requests for the entire discovery file from a previous case and argued that Plaintiff's requests would result in the production of cumulative and duplicative evidence.  *Id.*  CRST stated it was willing to meet and confer to narrow the requests, however.  *Id.*

On March 17, 2025, Plaintiff sent CRST a deficiency letter.  Doc. 76-9.  The letter did not specifically mention CRST's objections to identifying putative class members or producing the *Cervantes* materials.  *Id.*  Plaintiff emailed on April 1 with cases they argued supported their request for the *Cervantes* materials.  Docs. 76-10, 83-1.  The parties spoke by telephone on March 21 and April 2, during which time CRST offered the compromise of producing an anonymized list of putative class members (listing their dates of employment and the CRST entity they worked for).  Doc. 76-2.

---

[9] *Id.*

4

CRST also requested that Plaintiff narrow the *Cervantes* request without proposing a way to do so. *Id.*

The court held a status conference with the parties on April 4. Doc. 80. The parties talked through both discovery disputes with the court (as well as other issues). *Id.* Plaintiff noted that CRST was not only refusing to provide class contact information in response to the specific requests asking for that information, but CRST had also objected to numerous requests on the basis that they would reveal putative class members' names. CRST ultimately agreed to provide pay and deductions data for all putative class members in an anonymized fashion, which CRST argued would be sufficient for analysis. *Id.* Plaintiff noted that discovery was not bifurcated; all discovery (including expert discovery) was occurring now, then the parties would file class-certification and dispositive motions (with no discovery to be conducted afterward). *Id.* CRST indicated it needed to look at the cases recently cited by Plaintiff and provide a written response. *Id.* Plaintiff also raised the issue of the *Cervantes* transcripts and discovery responses, stating the request met threshold relevance requirements and should not be hard for CRST to comply with, given that the case was still active. *Id.* CRST responded that the claims were different, that Plaintiff never worked for the defendant in that case (CRST Expedited, a named Defendant here), and that some of the documents had been archived and there would be a cost to restore them. *Id.* CRST stated they had good caselaw support for their position that a party could not obtain discovery wholesale from another case, but rather, must make targeted requests. *Id.* Plaintiff responded that they had made targeted requests and noted they were not asking for everything produced in *Cervantes* as CRST made it seem. *Id.* The court noted the parties needed to further discuss both discovery disputes. *Id.* The court did advise that to the extent CRST agreed certain *Cervantes* material was relevant, it should be produced. *Id.*

Plaintiff sent a deficiency letter on April 30, noting that CRST had agreed to follow-up in writing about the class name issue (and other issues) after the meet-and-

5

confer calls.  Doc. 76-10.  Plaintiff set out several discovery disputes they believed were "ripe," including "that Defendants refuse to produce class member names and contact information."  *Id*.  Plaintiff also said they received no response to the April 1 email with cases to support their request for the *Cervantes* materials, and therefore would "assume we are at an impasse on these requests as well."  *Id*.  Plaintiff asked CRST to let counsel know if incorrect.  *Id*.

CRST responded by letter on May 8.  Doc. 76-11.  CRST stated it "would be willing to produce an anonymized list of putative class members" but would not provide "identifying or contact information prior to class certification."  *Id*.  CRST noted the parties agreed to exchange supporting authority; it cited cases to support its position, requesting Plaintiff do the same.  *Id*.  CRST also stated it would stand on its objections to producing the *Cervantes* materials, distinguishing the cases cited by Plaintiff.  *Id*.

The parties spoke by phone on May 16.  Docs. 76, 76-2.  For putative class members, CRST proposed assigning them an identification number, but it would not use identification numbers in emails, and it could not confirm whether it would apply the identification number to complaints, exit interviews, and "other more formal materials." *Id*.  According to Plaintiff, during the phone call, CRST confirmed they were at an impasse regarding the discoverability of class member contact information and the *Cervantes* materials.  *Id*.

Plaintiff sent an email follow-up on May 19.  Doc. 76-12.  Plaintiff objected to CRST redacting class member names or contact information from document productions. *Id*.  Plaintiff cited cases it argued supported pre-certification discovery of class member contact information.  Plaintiff suggested it was unfair for CRST to have unilateral access to putative class members as potential witnesses.  *Id*.  Plaintiff additionally argued that CRST's redactions would make the documents less useable and make it harder to track class members across multiple documents, since CRST intended to replace names with litigation numbers in some instances but not others.  *Id*.

6

On May 28, CRST responded.  Doc. 76-13.  CRST noted its understanding "that Plaintiff contends that class member contact information is generally discoverable without any additional showing."  *Id*.  CRST disagreed Plaintiff's cited cases "establish[ed] a blanket rule of discoverability."  *Id*.  CRST stated it maintained its objections because "Plaintiff has not articulated a specific showing of why class member contact information is necessary or how it relates to the Rule 23 analysis."  *Id*.  CRST proposed "a potential middle ground" of producing "contact information related to a small sample of drivers who entered into lease purchase agreements with CRST Specialized only."  *Id*.  In terms of redactions, CRST stated it was "still assessing the feasibility of applying consistent litigation ID numbers across all document types, including emails, complaints, and exit interviews."  *Id*.  CRST noted this approach might not work for emails with BCC email strings, so it asked whether Plaintiff would "agree that anonymizers are unnecessary for BCC emails" and "need not be separately anonymized."  *Id*.

On May 30, the parties submitted a joint notice of issues to discuss at an upcoming status conference.  Doc. 75.  Plaintiff indicated the parties were at an impasse over class contact information and the *Cervantes* documents, so Plaintiff anticipated filing a motion to compel.  *Id*.  CRST disagreed that these disputes were ripe, stating that "continued discussions can resolve many issues."  *Id*.  CRST stated Plaintiff had not shown particular need for class contact information pre-certification nor cited any caselaw supporting its position (that such discovery is automatic).  *Id*.  CRST also noted it had offered several compromises—producing anonymized documents, providing a sampling of class member data for CRST Specialized—but Plaintiff had not budged from its position.  *Id*.  As for the *Cervantes* materials, CRST stated it was "willing to provide certain discovery relevant to Plaintiff's claims from the *Cervantes* case," and it has "worked to compile those specific type of documents identified in Plaintiff's requests."  *Id*.  But CRST continued to assert that Plaintiff's "sweeping" request was inappropriate.  *Id*.

Plaintiff filed the pending motion to compel on June 2, 2025.  Doc. 76.  The court

held a status conference with the parties the next day. Doc. 82. In connection with talking about issues with ESI, Plaintiff noted they had not yet received even the anonymized data CRST had agreed to produce. *Id*. The court noted that CRST had suggested sampling class members and asked Plaintiff about that compromise. Plaintiff responded that they did not remember discussing sampling as an option. *Id*. CRST noted they offered sampling as part of a written response shortly before Plaintiff filed the motion to compel. *Id*. The court noted the parties could further discuss sampling. *Id*. The court asked whether Plaintiff wanted to discuss the *Cervantes* discovery dispute, and Plaintiff noted CRST had not yet responded to the motion to compel; CRST did not otherwise raise the issue.

## II.    DISCUSSION

As an initial matter, CRST argues that Plaintiff did not properly meet-and-confer about the discovery disputes before filing the motion to compel, pointing to Local Rule 37(a) that requires more than an exchange of written communications before resorting to motion practice. Frankly, I find this argument ridiculous. The parties spoke by phone about the disputes at least three times—during a meet-and-confer call March 21 continued to April 2, an April 4 status conference, and a meet-and-confer call May 16. Plaintiff sent written communications about the disputes on April 1, April 30, and May 19; and CRST responded on May 8 and May 28. CRST argues that the motion is not ripe because Plaintiff never responded to the "sampling" compromise CRST proposed in its May 28 letter and because that letter indicated CRST was still trying to determine the feasibility of using anonymized data in emails. I do not find that CRST can prevent Plaintiff from filing a motion to compel by raising a last-ditch compromise offer by writing *after* the parties have already discussed the matter three times (and no such offer was made) and Plaintiff has indicated they intend to file a motion to compel. Neither do I find CRST still trying to figure out—two months later—whether it can use anonymizers in emails is

8

a reason for Plaintiff to have to wait to file a motion.  I agree with CRST that it does not seem to the court that the parties worked at real compromise to resolve these disputes, but that applies to *both* sides.  I will not deny the motion to compel based on a failure to meet and confer.

CRST also argues that the motion to compel should be denied because Plaintiff filed full discovery responses as exhibits in support of the motion, rather than the relevant portion of those discovery responses.  Although it may be the better practice to file an excerpt, nothing in the rules requires it[10] (and even if they did, I do not think such a mistake would necessitate denying a ripe motion).

As for the merits, Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[11]

"[E]vidence is relevant at trial if 'it has any tendency to make a fact' that 'is of consequence' to the 'determination of the action' any 'more or less probable.'"[12]  "'Broad discovery' is the norm."[13]  But a party seeking discovery "should be able to explain the

---

[10] CRST argues that "answers or responses to discovery requests" are not to be filed on the docket under Local Rule 26.  This rule applies to the initial service of discovery.  As part of a motion to compel, a party must file the discovery at issue.  *See* **LR 37(b)** (a party filing a motion to compel must "attach to the motion a copy of the disputed request and any response").

[11] **Fed. R. Civ. P. 26(b)(1)**.

[12] ***Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.***, 113 F.4th 858, 861 (8th Cir. 2024) (cleaned up) (quoting **Fed. R. Evid. 401**).

[13] ***Id.*** (quoting ***WWP, Inc. v. Wounded Warriors Fam. Support, Inc.***, 628 F.3d 1032, 1039 (8th Cir. 2011)).

9

ways in which the underlying information bears on the issues as that party understands them"[14]; "fishing expedition[s]" are generally not allowed.[15] "Requested information . . . must clear a 'threshold of relevance.'"[16]

### A. Class Contact Information

By both interrogatory and request for production, Plaintiff seeks information on the putative class members: their names, whether they worked for CRST Specialized or CRST Expedited, their dates of employment, and how to contact them (mailing addresses, email addresses, and telephone numbers). CRST agreed to produce a list of class members in an anonymized fashion (replacing their names with numbers) that includes where they worked and for how long. CRST also intends to redact class member name and contact information from other responsive documents it produces. For example, for pay and deductions data for putative class members (needed for use by the experts), CRST will redact names and replace them with the anonymized numbers. It is not clear whether CRST intends to redact putative class members' names from emails, and if so, whether those names will be replaced with the anonymized numbers (CRST is still determining "feasibility" two months into the meet-and-confer process).

Whether Plaintiff is entitled to putative class members' names and contact information in response to their targeted requests is a separate issue from whether CRST can redact names from otherwise responsive discovery. The parties' cases largely focus on the first issue. Plaintiff argues that their cases show class contact information is relevant and discoverable pre-certification, while CRST states such discovery is not

---

[14] **Fed. R. Civ. P. 26, advisory committee notes to 2015 amendment**.

[15] *Stecklein & Rapp*, 113 F.4th at 862 (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).

[16] *Id.* at 861 (cleaned up) (quoting *Hofer*, 981 F.2d at 380).

10

automatic and must be supported by a particularized showing of relevance to class certification.

CRST has the better reading. Both sides' cases largely say the same thing: a plaintiff is entitled to class contact information pre-certification when the plaintiff provides a reason for needing to contact class members for evidence to support its class-certification motion (such as to prove commonality or typicality).[17] Here, Plaintiff argues

---

[17] *Cortez v. Target Corp.*, No. 1:23-cv-01435, 2023 WL 7325965, at *1, *3 (N.D. Ill. Nov. 7, 2023) (granting motion to compel class contact information when named plaintiffs worked at two of the five distribution centers at issue, would not be able to locate other class members' contact information on their own, and "list[ed] the specific information they hope[d] to acquire from their ensuing contacts [with putative class members]" to support their motion for class certification); *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 158, 164, 169 (E.D. Cal. 2022) (granting motion to compel class contact information when plaintiff argued it needed to contact class members to support its arguments for typicality and commonality in case involving claims defendant wrongfully terminated life insurance policies without adequate notice; plaintiff noted defendant raised a causation defense that some class members would have missed their premium payments even with proper notice—because they did not have funds or did not want to maintain the policy—and plaintiff argued contact with class members would be needed to rebut this argument); *Golan v. Veritas Ent., LLC*, No. 14CV00069, 2016 WL 5811292, at *2 (E.D. Mo. Oct. 5, 2016) (granting motion to compel contact information of putative class members when "key issue" to commonality and typicality was whether they consented to be called, which could only be determined by contacting members of the putative class); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 14-CV-448-BO, 2015 WL 1964400, at *1, *8 (E.D.N.C. May 1, 2015) (denying motion to compel class contact information when plaintiff "ma[de] no showing of need particularized to this case"; plaintiff generally argued he needed contact information to show that he and other putative class members—cooks and other non-tipped restaurant workers—"were subject to a single[] decision, policy, or plan" with regard to not being paid for all time worked); *Drake v. Aerotek, Inc.*, No. 14-cv-216, 2014 WL 7408715, at *1-2 (W.D. Wis. Dec. 30, 2014) (granting motion to compel class contact information when plaintiff alleged defendant had informal policy allowing work without overtime pay, and plaintiff could only show "that this case meets the requirements for certification under [Rule 23], and particularly the requirements of typicality and commonality, [by] . . . contact[ing] individual class members"; rejecting defendant's argument that plaintiff "surely knows a number of current and former . . . recruiters" as "mere speculation"); *Swelnis v. Universal Fid. L.P.*, No. 13-CV-104, 2014 WL 1571323, at *3 (N.D. Ind. Apr. 17, 2014) (recognizing that class contact information "may be discoverable . . . if it is relevant for [Rule 23] purposes or where there is good reason to think that communication with class members might yield information bearing on those Rule 23 issues"; and denying motion to compel discovery when plaintiff's only relevancy argument related to numerosity, and plaintiff already knew the size of the estimated class);

11

that they need to be able to "track class member experiences from initial contact to the end of their tenures with [CRST]," so as "to tell a coherent story and demonstrate both commonality and typicality." Doc. 76-1 at 10. This argument goes to CRST's ability to use anonymizers and redact class member names from documents; it does not show that Plaintiff needs to be able to contact putative class members before class certification. Plaintiff generally argues that they need class contact information to "identify appropriate witnesses for interviews, depositions, declarations, and/or trial," but they do not explain what information they need from putative class members to establish commonality or typicality. *See also* Doc. 84 at 5 (in response to CRST's argument that Plaintiff has not made a particularized showing of relevance, Plaintiff replied, "Plaintiff makes a clear showing of relevance and outlines how he anticipates using class information to support class certification," citing the original brief).

Finally, Plaintiff argues that it is unfair for CRST to have unilateral access to the class "to obtain declarations to be used in opposing class certification." *Id.* Again, Plaintiff does not specify the types of information they are envisioning being contained in these declarations and how they would support (or contradict) commonality or typicality. CRST does not respond to this argument, but it does admit that it named "putative class members" as potential witnesses in its initial disclosures and states it will

---

*Kernats v. Comcast Corp.*, No. 09 C 3368, 2010 WL 8742753, at *1-2 (N.D. Ill. Jan. 14, 2010) (denying plaintiff's request for class contact information when plaintiff did not provide "any reason to find that the requested information will be relevant to the litigation"; plaintiff argued it was unfair that defendant had access to class members and was interviewing some of them; the court noted three of the named plaintiffs still worked in defendant's call center and therefore plaintiffs had similar access to "at least some class members"); *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2006 WL 1455464, at *1-2 (E.D.N.Y. May 23, 2006) (denying motion to compel unredacted contracts with class member information when plaintiff's only relevance argument was that he needed to verify defendant's other discovery responses because of prior misrepresentations in discovery, but the court found plaintiff had not shown defendant made misrepresentations, and the court was concerned plaintiff's "attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification").

update its initial disclosures with specific names "if Plaintiff demonstrates class certification under Rule 23" (i.e., CRST does not state it intends to rely on declarations from putative class members to oppose class certification). Doc. 83. At this time, it is not clear that CRST intends to rely on declarations or other information gleaned from interviewing putative class members to oppose class certification. I agree with Plaintiff, however, that if CRST does intend to use information from contacting class members, "fairness requires reciprocal access to this information."[18] Plaintiff largely works apart from other putative class members, driving a leased truck as an "independent contractor"; therefore, it does not seem that Plaintiff would be able to identify many class members without discovery. CRST's intent to use information from putative class members to *oppose* class certification would demonstrate the relevance of Plaintiff being able to contact putative class members for information to *support* class certification. Therefore, if CRST has or is planning to interview putative class members to obtain information for use in opposing the class-certification motion, I find that CRST must disclose class contact information to Plaintiff. CRST will be precluded from relying on such information to oppose class certification unless CRST discloses class contact information by **August 15, 2025**. Otherwise, I do not find that Plaintiff has provided any reason why they need to contact putative class members for information to support their class-certification arguments.

Redacting putative class members' names from otherwise responsive documents is a separate issue. Plaintiff cites a case noting "[t]he practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document

---

[18] *Cosgrove v. OS Rest. Servs., Inc.*, No. 10-CV-1937, 2010 WL 11575055, at *3 (D. Minn. Aug. 31, 2010) (granting motion to compel class contact information when defendant "identif[ied] a group of 95 [putative class members] of its own selection, from whom it obtained informal discovery with the intent of using this information to defeat classwide certification").

in the Rules are claims of privilege or work-product protection."[19] That case did not involve class contact information, however. In *Coe v. Cross-Lines Retirement Center., Inc.*, the court held (in the context of redacting class contact information) that the ordinary rule against redactions applied, and the defendant could not redact class contact information unless it showed "good cause . . . by establishing specific, significant harm that would result from disclosure" of the unredacted information.[20] On the other hand, at least one of the parties' cited cases on pre-certification class contact information dealt with redacted documents and did not apply a different standard than the cases requesting contact information via interrogatory.[21]

Ultimately, here, Plaintiff's main proffered reason for needing the names of putative class members is to be able to track class members across multiple documents to support its class-certification arguments. CRST agrees that Plaintiff is entitled to information showing the number of putative class members, which entity they worked for, and their dates of employment, as well as documents reflecting pay data (their hours worked, their earned wages, any deductions, etc.). CRST wants to replace putative class members' names with anonymized numbers. But after months of meeting and conferring, CRST cannot say whether it will use these same anonymized numbers in any email productions that mention putative class members, which would make it difficult for

---

[19] ***Burris v. Versa Prods., Inc.***, No. CV. 07-3938, 2013 WL 608742, at \*3 (D. Minn. Feb. 19, 2013).

[20] 342 F.R.D. 539, 548 (D. Kan. 2022) (holding that defendant's "vague 'concern of solicitation'" by plaintiff's counsel for clients did not justify defendants redacting putative class members' names from rent rolls).

[21] *See Dziennik*, 2006 WL 1455464, at \*1-2; *see also **Bilek v. Nat'l Cong. of Emps., Inc.***, No. 18 C 3083, 2022 WL 523108, at \*1 (N.D. Ill. Feb. 22, 2022) (allowing defendant to redact putative class members' names and addresses from relevant class data when plaintiff did not argue class members' names were relevant); ***Mervyn v. Atlas Van Lines, Inc.***, No. 13 C 3587, 2015 WL 12826474, at \*2-3 (N.D. Ill. Oct. 23, 2015) (ordering production of unredacted documents because plaintiff articulated a need for class members' names to show commonality).

14

Plaintiff to synthesize relevant discovery for its experts and class certification. I agree with Plaintiff that he needs to be able to track class members across multiple documents. In addition, given the extreme delays by CRST in producing ESI, I am hesitant to endorse redaction-and-replacement, which would surely take some time.

I find that Plaintiff has established the threshold relevance of having access to the putative class members' names (especially because CRST may not be able to use the anonymized numbers across all documents). In this way, Plaintiff may compare emails to the information Plaintiff has about pay data and the length of a class member's employment. CRST offers no burdensome argument, resisting solely on irrelevance grounds.

Accordingly, I **grant in part and deny in part** Plaintiff's motion to compel related to class contact information. In response to Interrogatory 1 and Request for Production 20, CRST must include putative class members' names, the CRST entity they drove for, and the dates they drove for CRST; CRST does not need to disclose last known addresses, telephone numbers, or email addresses. CRST may redact contact information from other relevant discovery, but it may not redact names.

### B. Cervantes Materials

The *Cervantes* case is another class action involving CRST's lease-driver program, currently pending in this court after a bench trial. Plaintiff seeks the following discovery from that case: a list of witnesses, CRST's expert reports, deposition transcripts for CRST employees and experts, CRST's interrogatory responses, and CRST's responses to requests for admission.

CRST cites cases in which courts have rejected requests for "cloned" or "piggybacked" discovery, where the request seeks every scrap of material produced in

discovery in the prior case.[22]  These cases are inapposite.  Here, Plaintiff does not seek to avoid having to do his own discovery by receiving the documents produced in *Cervantes*; instead, he seeks documents created as part of the *Cervantes* litigation (not documents simply produced during it).  CRST also cites *In re Hardiplank Fiber Cement Siding Litigation*,[23] in which the court granted the motion to compel (a fact CRST misses). In that case, plaintiff sought all filings and pleadings; transcripts from trial, motion hearings, and depositions; expert reports; and discovery produced by defendant from any case brought against the defendant involving the quality or durability of its siding products.[24]  The court recognized cloned or piggyback requests are denied "when the requesting party has not shown that the fact that particular documents were produced in another case is relevant to the subject matter of the current case."[25]  Because that case and the other cases involved the same issues (defective siding), and defendant raised no burdensome argument, the court found the discovery relevant and ordered it produced.[26]

CRST emphasizes that *Cervantes* involves different claims—the certified class claim is for unpaid wages based on the drivers' misclassification as independent contractors, not a claim under the Iowa Business Opportunity Promotions Act.  But both

---

[22] *Humana Inc. v. Teva Pharms. USA, Inc.*, No. 21-cv-72, 2021 WL 8651837, at *1 (M.D. Fla. Oct. 19, 2021); *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 18-cv-153, 2020 WL 698538, at *2 (E.D. Tex. Jan. 16, 2020); *Town of Westport v. Monsanto Co.*, No. CV 14-12041, 2015 WL 13685105, at *2-3 (D. Mass. Nov. 5, 2015); *Wollam v. Wright Med. Grp., Inc.*, No. 10-CV-03104-DME-BNB, 2011 WL 1899774, at *1 (D. Colo. May 18, 2011); *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 393, 396 (N.D. Iowa 2009) (additionally distinguishable because the similar cases were from 35 to 44 years ago, making them less relevant and it more burdensome for the defendant to compile discovery information).

[23] No. 12-md-2359, 2014 WL 5654318, at *2-3 (D. Minn. Jan 28, 2014).

[24] *Id.* at *2.

[25] *Id.*

[26] *Id.* at *3.

cases involve overlapping issues with CRST Expedited's lease-driver program.[27]  Plaintiff here alleges that CRST's recruitment advertisements for the lease-driver program violated the Iowa Business Opportunity Promotions Act through false statements about the amount drivers would earn and omissions about excessive charges and deductions by CRST; Plaintiff also alleges an excessive amount of control by CRST in operating under the lease-driver program.  CRST's control of drivers and their opportunity for profit were both key issues in *Cervantes* to determine whether drivers were employees or independent contractors.  In addition, the *Cervantes* plaintiffs brought claims specifically challenging CRST's paycheck deductions and the misleading advertisements about the amount drivers would earn (even though neither claim was certified for class adjudication).

Ultimately, I find that Plaintiff has established the threshold relevance of the requested materials from *Cervantes*.  Although the claims are not exactly the same, the *Cervantes* plaintiffs made many of the same allegations that Plaintiff makes here.  Given the degree of overlap, it seems highly likely that issues relevant to Plaintiff's claim were discussed by CRST employees during depositions, by CRST's experts in their reports and depositions, and in CRST's answers to written discovery.  Indeed, during the meet-and-confer process, CRST seemingly acknowledged the relevance of some of the requested discovery but proposed no way to narrow the request (despite CRST being the one with information on, for example, the issues discussed in each deposition).  It would aid in the "speedy and inexpensive determination" of this matter to allow Plaintiff to avoid conducting "the same numerous lengthy depositions . . . when the transcripts of the previous examinations might indicate that certain witnesses need not be questioned and might help focus and thereby shorten the inquiry directed to others."[28]  Just because witnesses may have been asked about other, irrelevant matters as well does not show that

---

[27] CRST argues that CRST Specialized is not a defendant in *Cervantes*; but what matters is that CRST Expedited is a defendant in both.

[28] *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981).

17

their deposition transcripts are irrelevant.

CRST raises no burdensome argument. I agree with Plaintiff that it does not seem that it would be particularly time-consuming for CRST to produce the requested materials. I find that Plaintiff has shown the relevance of the requests and production would be proportional.[29]

I **GRANT** Plaintiff's motion to compel CRST to respond to Interrogatory 11 and Requests for Production 22 through 25.

### III. CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the motion to compel (Doc. 76). By **August 15, 2025**, CRST must produce: (1) a list of putative class members' names, the dates they drove for CRST, and the CRST entity they drove for; and (2) the requested materials from the *Cervantes* case. By that same date, CRST must disclose class contact information or else be precluded from relying on information obtained from its own contact with putative class members to oppose class certification.

**SO ORDERED** on July 16, 2025.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[29] ***Quinonez-Castellanos v. Performance Contractors Inc.***, No. 16-CV-4097-LTS, 2018 WL 10015527, at *5-6 (N.D. Iowa Oct. 9, 2018) (collecting cases and denying request for all discovery produced in other discrimination cases against the same defendant but ordering defendant to produce its interrogatory responses and deposition transcripts from those cases because of overlapping issues in the three cases).