| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC. and JOHN SMITH, an individual,<br><br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**DEFENDANTS' OBJECTIONS TO ORDER REGARDING
PLAINTIFF'S MOTION TO COMPEL DISCOVERY (ECF NO. 89)**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................... 3

    A.  Plaintiff is a former CRST Specialized lease-purchase contractor who seeks to represent a class predominantly comprised of lease-purchase contractors from another entity. ................................................................. 3

    B.  Plaintiff moved to compel production of all putative class member names and contact information, including for the more than 3,000 who did not contract with CRST Specialized (and the 350 who did). ........................................ 4

    C.  The Magistrate Judge ordered Defendants to produce and not redact putative class members' names so that Plaintiff could track individuals across documents but denied his request for contact information. ........................ 5

    D.  Plaintiff also moved to compel CRST Expedited's written discovery responses, expert reports, and deposition transcripts from *Cervantes*. ................... 6

    E.  The Magistrate Judge compelled the tag-along discovery from *Cervantes*. ........... 7

III.  ARGUMENT ....................................................................................................... 8

    A.  The Order misapplies Rule 26 and permits improper representative shopping. .............................................................................................................. 8

        1.  Plaintiff is not a proper representative for CRST Expedited drivers. ......... 8

        2.  This is precisely the kind of fishing expedition Rule 26 is meant to prevent. ............................................................................................... 10

        3.  The Order overlooks a superior alternative: consistent anonymization. ........................................................................................ 10

        4.  Alternatively, the Court Should Prohibit Plaintiff from Using the Names to Solicit New Clients or Identify a Class Representatives ......... 11

    B.  The Order also permits improper tag-along discovery for a class of individuals Plaintiff cannot represent. ................................................................. 12

IV.  CONCLUSION ................................................................................................... 14

i

# TABLE OF AUTHORITIES

## Cases

*Brant v. Principal Life & Disability Ins. Co.*,
195 F.Supp.2d 1100 (N.D. Iowa 2002) .................................................................................. 18

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*,
No. 16-CV-1004, 2018 WL 3650219 (N.D. Iowa 2018) ........................................................ 17

*Dziennik v. Sealift, Inc.*,
No. 05–CV–4659 (DLI)(MDG), 2006 WL 1455464 (E.D.N.Y. May 23, 2006) .............. 10, 14

*EEOC v. Wal-Mart Stores*,
No. 17-C-70, 2018 WL 4923046 (E.D. Wis. Oct. 15, 2018) .................................................. 17

*Fausz v. NPAS, Inc.*,
No. 3:15-CV-00145-CRS, 2016 WL 11658797 (W.D. Ky. Jan. 5, 2016) ............................... 13

*Ferguson v. United States*,
484 F.3d 1068 (8th Cir. 2007) .................................................................................................. 9

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ........................................................................................... 17, 18

*Golden v. Stein*,
No. 418CV00331JAJCFB, 2020 WL 13553710 (S.D. Iowa Apr. 14, 2020) ........................... 9

*Gomez v. Massey*,
No. 3:18-CV-00348, 2020 WL 2104700 (S.D. Tex. Apr. 23, 2020) ...................................... 18

*In re Hardieplank Fiber Cement Siding Litig.*,
No. 12-MD-2359, 2014 WL 5654318 (D. Minn. Jan. 28, 2014) .............................................. 6

*Kernats v. Comcast Corp.*,
No. 09 C 3368, 2010 WL 8742753 (N.D. Ill. Jan. 14, 2010) ................................................. 11

*Marook v. State Farm Mut. Auto. Ins. Co.*,
259 F.R.D. 388 (N.D. Iowa 2009) ...................................................................................... 7, 16

*McMillion v. Rash Curtis & Assocs.*,
No. 16-CV-03396-YGR, 2019 WL 2894 (N.D. Cal. Jan. 23, 2019) ...................................... 12

*Sermuks v. Orion Caterers, Inc.*,
No. 15 CV 6461, 2017 WL 5714087 n.1 (E.D.N.Y. Nov. 28, 2017) ...................................... 11

*Swelnis v. Universal Fid. L.P.*,
No. 2:13-CV-104-PRC, 2014 WL 1571323 (N.D. Ind. Apr. 17, 2014) ................................. 11

*Town of Westport v. Monsanto Co.*,
   No. CV 14-12041-DJC, 2015 WL 13685105 (D. Mass. Nov. 5, 2015) ............................... 7, 16

*United States v. Cummings*,
   395 F.3d 392 (7th Cir. 2005) ..................................................................................... 11

*Velasquez-Monterrosa v. Mi Casita Restaurants*,
   2015 WL 1964400 (E.D.N.C. May 1, 2015) ............................................................... 11

*Wauchop v. Domino's Pizza, Inc.*,
   138 F.R.D. 539 (N.D. Ind. 1991) ................................................................................ 17

*Young v. United Parcel Serv., Inc.*,
   No. DKC 08-2586, 2014 WL 08-2586, 2014 WL 858330 (D. Md. Mar. 4, 2014) .................. 18

## Statutes

Iowa Code § 551A.1 ....................................................................................................... 1, 3

## Rules

Fed. R. Civ. P. 72(a) ........................................................................................................ 8

N.D. Iowa L.R. 72A........................................................................................................... 8

Defendants, CRST Expedited, Inc. (CRST Expedited), CRST Specialized Transportation, Inc. (CRST Specialized), CRST Lincoln Sales, Inc. (Lincoln Sales), and John Smith, respectfully submit their objections to the Magistrate's July 16, 2025 Order regarding the Motion to Compel Discovery of Plaintiff, Harley Kelchner (ECF No. 89) as follows:

## I. INTRODUCTION

This case arises under the Iowa Business Opportunity Promotions Act (BOPA), Iowa Code § 551A.1 *et seq.* Plaintiff—a former independent contractor for CRST Specialized—claims that the lease-purchase arrangement he voluntarily entered into with CRST Specialized and Lincoln Sales violated BOPA. Plaintiff traveled from his home in Florida to Fort Wayne, Indiana and signed a Specialized-specific Independent Contractor Operating Agreement (ICOA) and Lease Purchase Agreement (LPA), drove exclusively for Specialized, and never had any contractual relationship or communication with CRST Expedited—a different operating entity with its own personnel, headquarters, and agreements. Nevertheless, Plaintiff now seeks to represent a sweeping class that includes thousands of contractors who contracted only with CRST Expedited.

Plaintiff moved to compel two broad categories of discovery aimed primarily at CRST Expedited: (1) Putative class member names and contact information, including for individuals who contracted only with CRST Expedited and (2) sweeping "tag-along" discovery from the case, *Cervantes v. CRST International, Inc.*, Case No. 1:20-cv-00075-CJW-KEM (N.D. Iowa) (*Cervantes*), including all of CRST Expedited's expert reports, deposition transcripts, interrogatory responses, and responses to requests for admission.

The Magistrate Judge's July 16, 2025 Order (ECF No. 89) granted Plaintiff's requests in part. First, it compelled Defendants to produce the names of all putative class members. But the Magistrate Judge denied Plaintiff's request for putative class member contact information. Second, the Order compelled wholesale production of discovery from *Cervantes* based on a generalized

finding that the case "involve[s] overlapping issues with CRST Expedited's lease-driver program" and that Plaintiff met a "threshold relevance" standard. *Id.* at 16–17.

Both rulings are erroneous. With respect to putative class member names, the Magistrate Judge's decision effectively gives Plaintiff access to the very class member contact information the Magistrate Judge refused to compel. Armed with class member names, Plaintiff can readily locate and contact the contractors using skip-tracing and other tools. This is also easily avoidable: As Defendants have consistently proposed, they can instead produce documents and data with consistent anonymized identifiers (*e.g.*, replacing John Doe with "CM1001" and Jane Doe with "CM1002")—an approach that notably fully satisfies the only need for this information that the Magistrate Judge actually credited to Plaintiff, which was to "track class members across multiple documents." *Id.* at 14–15. Although the Magistrate Judge questioned the feasibility of Defendants' proposal, Defendants have confirmed that they can apply consistent anonymizers, including across the large ESI corpus they have been ordered to review.

As for the *Cervantes* discovery, courts routinely reject "cloned" discovery from unrelated litigation, particularly when, as here, the requesting party was never part of the prior case and cannot show a substantial overlap in facts, parties, or issues. *Cervantes* is a certified class case that was filed more than five years ago, involved only CRST Expedited (and its former entity, CRST International, Inc.), addressed federal minimum wage and misclassification claims, and was recently largely resolved at trial. The plaintiffs there never alleged an Iowa BOPA claim, and the Court declined to certify an Iowa common law fraud claim. Plaintiff was not a class member in *Cervantes* and has made no particularized showing of how years-old *Cervantes* depositions, expert reports, or written discovery are all relevant to his Iowa BOPA claim or any class certification here.

Because Plaintiff seeks discovery about individuals he cannot represent and from litigation

2

he was never part of, the Court should set aside the Magistrate Judge's July 16, 2025 Order, adopt Defendants' anonymization proposal, and reject the compelled production of *Cervantes* materials.

## II. BACKGROUND

### A. Plaintiff is a former CRST Specialized lease-purchase contractor who seeks to represent a class predominantly comprised of lease-purchase contractors from another entity.

Plaintiff is a Florida resident and former independent contractor for CRST Specialized, an Indiana-based motor carrier. ECF No. 1, ¶¶ 10, 13.[1] Though not required to contract with CRST Specialized, Plaintiff also elected to lease his equipment through a separate sister entity, Lincoln Sales.

Plaintiff filed this action on March 4, 2024, asserting a single cause of action under BOPA, Iowa Code § 551A.1 *et seq. Id.*, ¶¶ 43–52. He alleges that his contractual arrangements with CRST Specialized and Lincoln Sales constituted a "business opportunity" subject to BOPA and that Defendants failed to comply with the statute's disclosure requirements—therefore entitling him and his alleged class to rescission of all ICOAs and LPAs and disgorgement of Defendants' profits, plus a host of other remedies. *Id.*, ¶¶ 6, 51–52.

Notwithstanding that Plaintiff contracted exclusively with CRST Specialized—and not CRST Expedited, a separate, Iowa-based entity with its own unique contractual agreements— Plaintiff seeks to represent a putative class that includes contractors for both CRST Specialized and CRST Expedited even though he had no business or other relationship with CRST Expedited. *Id.*, ¶ 33 (defining his class to include "[a]ll current and former Drivers who leased trucks from [Lincoln Sales] and drove for CRST Trucking in any week within the United States at any time

---

[1] Plaintiff successfully completed his lease term in March 2025, purchased his truck from Lincoln Sales in May 2025, and in June 2025, voluntarily terminated his ICOA with CRST Specialized. Since then, he has sought to perform similar services for at least one other motor carrier. *See* **Exhibit A** – *Declaration of Angela S. Cash* (Cash Decl.), ¶¶ 5–7.

during the period beginning three years prior to the filing of this Complaint, and continuing through the resolution of this action").[2]

Plaintiff's proposed class, to date, would include approximately 3,000 CRST Expedited contractors and 350 CRST Specialized contractors. *See* Cash Decl., ¶ 2.

**B.      Plaintiff moved to compel production of all putative class member names and contact information, including for the more than 3,000 who did not contract with CRST Specialized (and the 350 who did).**

Plaintiff moved to compel responses to several of his discovery requests, including Interrogatory No. 2 and Request for Production No. 20 to CRST Expedited and Lincoln Sales (but not the entity he performed services for, CRST Specialized), which sought putative class members' names, the entities that they worked for, and their dates of service along with contact information for putative class members (*i.e.*, mailing addresses, telephone numbers, and email addresses).

Defendants objected to producing putative class member names and contact information on proportionality and relevance grounds, particularly where Plaintiff had not made a particularized showing of need to support class certification. ECF No. 83 at 7–9. Instead, Defendants offered to provide a list with consistent anonymized identifiers in lieu of names, the putative class members' dates of service, and their entity affiliations. *Id.* Defendants also proposed redacting names and contact details from other responsive documents and instead applying the consistent anonymizers. *Id.* at 12–13.[3] Alternatively, Defendants had also offered to provide a

---

[2] Plaintiff tries to hide the fact that he had no relationship with CRST Expedited by short forming the named defendants as "CRST Trucking" throughout his Complaint, which he defines as including both CRST Expedited and CRST Specialized. *Id.*, ¶ 1.

[3] Because Defendants were still ingesting millions of ESI documents at the time of conferring over and briefing the issue, Defendants were unable to confirm if anonymized redactions could be applied across *all* documents and further questioned the need for anonymizers in certain documents—including BCC lines of mass internal emails. *Id.* at 12–13. However, since that time, Defendants have confirmed with their ESI vendors that bulk anonymization of this information is feasible. *See Cash Decl.*, ¶ 3.

4

reasonable sample of contact information and unredacted documents for CRST Specialized contractors. *Id.*

**C. The Magistrate Judge ordered Defendants to produce and not redact putative class members' names so that Plaintiff could track individuals across documents but denied his request for contact information.**

In her July 16, 2025 order, the Magistrate Judge granted in part and denied in part Plaintiff's motion. ECF No. 89. As to class member identities, the Court ordered Defendants to produce, by August 15, 2025, "a list of putative class members' names, the dates they drove for CRST, and the CRST entity they drove for." *Id.* at 18. However, the Magistrate Judge denied Plaintiff's request for class contact information, holding that Defendants "do[] not need to disclose last known addresses, telephone numbers, or email addresses." *Id.* at 15.

The Magistrate Judge found that Plaintiff had not shown "any reason why they need to contact putative class members for information to support their class-certification arguments." *Id.* at 13. While Plaintiff argued that the information was needed "'to identify appropriate witnesses for interviews, depositions, declarations, and/or trial,'" the Magistrate Judge concluded that "they do not explain what information they need from putative class members to establish commonality or typicality." *Id.* at 12.

The Magistrate Judge expressly distinguished between the ability to contact class members and the ability to track them across documents, observing that "Plaintiff's main proffered reason for needing the names of putative class members is to be able to track class members across multiple documents to support its class-certification arguments." *Id.* at 14. The Magistrate Judge found that Defendants' inability to confirm at that time whether it could apply consistent anonymized identifiers across document types would "make it difficult for Plaintiff to synthesize relevant discovery." *Id.* at 14–15. Accordingly, while the Magistrate Judge rejected Plaintiff's bid for class contact information, it required Defendants to produce putative class member names (for

both CRST Specialized and CRST Expedited) in response to Interrogatory 2 and Request for Production 20, and it barred Defendants from redacting names from responsive documents (while contact information and other identifiers could be redacted). *Id.* at 15, 18.

Finally, citing Plaintiff's concerns that Defendants could be at a strategic advantage, the Magistrate Judge imposed a conditional disclosure requirement: That Defendants "must disclose class contact information or else be precluded from relying on information obtained from its own contact with putative class members to oppose class certification." *Id.* at 1, 13.

### D. Plaintiff also moved to compel CRST Expedited's written discovery responses, expert reports, and deposition transcripts from *Cervantes*.

Defendants objected to Plaintiff's Requests for Production to CRST Expedited and Lincoln Sales (Set One) Nos. 22–25 and Requests for Production to CRST Specialized (Set Two) Nos. 22–25, which sought wholesale production from *Cervantes* of "transcripts for depositions given by your employees," "transcripts for depositions and expert reports given by your experts," "answers to interrogatories," and "responses to requests for admission."

Defendants explained that these sweeping requests were overbroad, unduly burdensome, and disproportionate because *Cervantes* involved different causes of action, claims, parties, and time periods. ECF No. 76-6 at Obj. to RFP Nos. 22–25. Specifically, *Cervantes*—filed more than five years earlier—focused on federal minimum wage and misclassification claims and involved only CRST Expedited and its former entity, CRST International, Inc. It did not include CRST Specialized or Lincoln Sales and generally raised different legal and factual issues. *Id.* (citing *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, at \*\*2–3 (D. Minn. Jan. 28, 2014); *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 393–94 (N.D. Iowa 2009); *Town of Westport v. Monsanto Co.*, No. CV 14-12041-DJC, 2015 WL 13685105, at \*3–4 (D. Mass. Nov. 5, 2015)).

Defendants further objected to the requests "as cumulative and duplicative," explaining

that "Plaintiff can obtain relevant information through more targeted discovery methods directly related to the claims and defense[s] at issue in this case." *Id.* Defendants indicated that they were willing to meet and confer "to discuss whether a narrower, more tailored request may be appropriate," (ECF No. 76-6 at Obj. to RFP Nos. 22–25), but Plaintiff refused to narrow his requests. ECF No. 76-10 at 4; ECF No. 76-11 at 17. Defendants have also agreed to (and have) produced a series of targeted materials from *Cervantes*. *See* ECF No. 75 at 5–6 (agreeing to produce, *inter alia*, from *Cervantes* all recruiting and orientation materials, handbooks, lease purchase packets, operations overviews, onboarding schedules, cost projections, and deduction schedules, as specifically identified in Plaintiff's other requests). But Defendants opposed Plaintiff's blanket demand for all written discovery, expert reports, and deposition transcripts from *Cervantes* because his requests sweep far beyond the claims at issue in this case and are untethered to any particularized showing of relevance.

**E.** **The Magistrate Judge compelled the tag-along discovery from *Cervantes*.**

In her Order, the Magistrate Judge rejected Defendants' argument that Plaintiff was seeking impermissible "cloned" or "piggybacked" discovery, finding that "Plaintiff does not seek to avoid having to do his own discovery by receiving the documents produced in *Cervantes*; instead, he seeks documents created as part of the *Cervantes* litigation (not documents simply produced during it)." ECF No. 89 at 16. Moreover, while acknowledging the differences in the legal claims, the Magistrate Judge concluded that the *Cervantes* case "involve[s] overlapping issues with CRST Expedited's lease-driver program," including CRST Expedited's control of drivers, opportunity for profit, paycheck deductions, and recruitment advertisements. *Id.* at 16–17. The Magistrate Judge therefore found that Plaintiff had shown "the threshold relevance of the requested materials," emphasizing that "it seems highly likely that issues relevant to Plaintiff's claim were discussed by CRST employees during depositions, by CRST's experts in their reports and

7

depositions, and in CRST's answers to written discovery." *Id.* at 17. As the Order reasoned, production of the requested documents would promote "the speedy and inexpensive determination" of the case. *Id.* at 17.

## III.    ARGUMENT

Under Federal Rule of Civil Procedure 72(a) and Local Rule 72A, the Court "must consider timely objections" to a magistrate judge's non-dispositive ruling and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See* Fed. R. Civ. P. 72(a); N.D. Iowa L.R. 72A; *see also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law."). While the "'clearly erroneous' standard is deferential . . . the 'contrary to law' standard permits plenary review as to matters of law." *Golden v. Stein*, No. 418CV00331JAJCFB, 2020 WL 13553710, at *2 (S.D. Iowa Apr. 14, 2020) (cleaned up).

### A.    The Order misapplies Rule 26 and permits improper representative shopping.

This Court should set aside the portion of the Magistrate Judge's Order requiring disclosure of putative class member names and instead permit the use of consistent anonymizers (*e.g.*, John Doe is "CM1001," Jane Doe is "CM1002"). First, Plaintiff contracted solely with CRST Specialized and cannot demonstrate any need for the names of individuals who contracted only with CRST Expedited. Moreover, Plaintiff's only credited objective by the Magistrate Judge— tracking putative class members across all documents—can be satisfied by using anonymizers.

### 1.    Plaintiff is not a proper representative for CRST Expedited drivers.

Plaintiff contracted only with CRST Specialized, not with CRST Expedited; to that end, the Order correctly recognizes that Plaintiff "largely works apart from other putative class members." ECF No. 89 at 13. But the Order compelled disclosure of names of *all* putative class

8

members—including those who contracted with and only ever performed services for CRST Expedited—despite Plaintiff's lack of any contractual relationship, personal experience, or factual basis to represent those individuals as a class.[4]

The Order does not meaningfully address this mismatch and assumes that Plaintiff's proposed class definition controls the relevance inquiry under Rule 26. But as Defendants argued below, Plaintiff cannot manufacture a need to identify CRST Expedited drivers by unilaterally defining a class that includes them. *See* ECF No. 83 at 10–11 (explaining that Plaintiff never drove for or communicated with CRST Expedited). Courts routinely reject attempts to obtain discovery about individuals a named plaintiff has no basis to represent—particularly where discovery of class member identities appears to only "be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05–CV–4659 (DLI)(MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006).[5]

Here, the Order's compelled production of CRST Expedited driver names facilitates precisely that impermissible purpose: Plaintiffs' counsel can easily obtain contact information through skip tracing, for example, a "relatively uncomplicated" process that allows individuals to use public or private databases to find phone numbers, address, and email information with nothing more than a list of names. *United States v. Cummings*, 395 F.3d 392, 393 (7th Cir. 2005); *Sermuks*

---

[4] Given these distinctions and the Court's judgment in favor of CRST Expedited in *Cervantes*, including on the named plaintiffs' similar fraudulent misrepresentation claims, Defendants intend to promptly file a motion to dismiss or strike the allegations against CRST Expedited. *Cash Decl.*, ¶ 8.

[5] *See also, e.g.*, *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2015 WL 1964400, at **5–8 (E.D.N.C. May 1, 2015) (denying pre-certification discovery of putative class members' identities and contact information where plaintiff made no showing of tailored need); *Swelnis v. Universal Fid. L.P.*, No. 2:13-CV-104-PRC, 2014 WL 1571323, at *3 (N.D. Ind. Apr. 17, 2014) (denying pre-certification discovery absent demonstration of relevance to Rule 23); *Kernats v. Comcast Corp.*, No. 09 C 3368, 2010 WL 8742753, at *3 (N.D. Ill. Jan. 14, 2010) ("The full employee list will be necessary and relevant after class certification in order to allow for class notification, but Plaintiffs need not rely upon it at this stage.").

*v. Orion Caterers, Inc.*, No. 15 CV 6461, 2017 WL 5714087, at *2 n.1 (E.D.N.Y. Nov. 28, 2017); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2019 WL 289482, at *2 (N.D. Cal. Jan. 23, 2019). That information, in turn, would enable Plaintiff to conduct third-party outreach in search of a viable class representative for a company he never contracted with.

### 2. This is precisely the kind of fishing expedition Rule 26 is meant to prevent.

In his motion, Plaintiff contended he had a generalized interest in "track[ing] class member experiences" and identifying "appropriate witnesses for interviews, depositions, declarations, and/or trial." ECF No. 76-1 at 10; ECF No. 89 at 12. But the Magistrate Judge found that his counsel failed to "explain what information they need from putative class members to establish commonality or typicality." ECF No. 89 at 12. This deficiency is dispositive. As the Order itself states, Defendants had the better reading that class contact discovery "is not automatic and must be supported by a particularized showing of relevance to class certification." *Id.* at 9–10. By compelling production absent such a showing, the Order effectively lowers the Rule 26 threshold and endorses a strategic use of discovery untethered from Plaintiff's evidentiary needs. The Court should set aside the Magistrate Judge's Order for this reason, as well.

### 3. The Order overlooks a superior alternative: consistent anonymization.

Finally, Rule 26(b)(1) requires that discovery be both relevant and "proportional to the needs of the case." The compelled disclosure of personally identifying information—when the same discovery objectives can be achieved through a non-intrusive alternative—exceeds what Rule 26 permits. Even when class contact information may be discoverable in some cases, courts have discretion to deny disclosure where the information is available by other means. *See, e.g.*, *Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2016 WL 11658797, at *10 (W.D. Ky. Jan. 5, 2016) (limiting pre-certification discovery to anonymized productions, precisely what Defendants offered here).

That is the case here. Defendants have consistently proposed producing documents and data with consistent anonymizers (*e.g.*, CM1001, CM1002) in lieu of producing class member names and other information. ECF No. 83 at 8–9. To be sure, at the time of the parties' meet-and-confer and briefing on the issue, Defendants had not completed processing an ESI corpus of millions of documents and therefore reserved their position regarding whether bulk anonymization could be applied consistently across *every* document type (without doing so manually). ECF No. 83 at 13. And the Magistrate Judge's Order suggested the proposal was untenable for that reason. ECF No. 89 at 10. Since that time, however, Defendants have confirmed with their vendors the feasibility of consistent anonymizers across the more than 61,000 internal emails and documents the Magistrate Judge ordered it to review as part of an ESI search. ECF No. 79; *Cash Decl.*, ¶ 3. This directly addresses Plaintiff's concern that redactions would "make the documents less useable and make it harder to track class members across multiple documents." ECF No. 89 at 6; ECF No. 76-1 at 10.

Because consistent anonymization is a feasible alternative, Plaintiff's interest in tracking individuals across documents does not justify overriding the privacy interests of thousands of non-party drivers for Defendants—particularly those whom Plaintiff cannot credibly represent.

4. **Alternatively, the Court Should Prohibit Plaintiff from Using the Names to Solicit New Clients or Identify a Class Representatives**

The Court's compelled disclosure of driver names from both entities enables precisely the type of "representative shopping" that courts discourage. *See, e.g.*, *Dziennik*, 2006 WL 1455464, at *2. But as the Magistrate Judge correctly found, Plaintiff has offered no particularized reason for needing to contact putative class members pre-certification. ECF No. 89 at 12. The only interest in putative class member names that the Magistrate Judge credited in her Order was to "track class members across multiple documents." *Id.* at 15. Accordingly, if the Court declines to set aside the Order and permit the use of consistent anonymizers, then it should prohibit Plaintiff from using

11

the putative class members names for any other purposes.[6]

<h3>B. The Order also permits improper tag-along discovery for a class of individuals Plaintiff cannot represent.</h3>

The Magistrate Judge's order also compelled Defendants to produce sweeping categories of discovery from the *Cervantes* case, including all of CRST Expedited's "witness lists, deposition transcripts, expert reports, and responses to interrogatories and requests for admissions." ECF No. 89 at 1. There, the Magistrate Judge concluded that these materials were relevant because *Cervantes* "involve[s] overlapping issues with CRST Expedited's lease-driver program," including "CRST's control of drivers and their opportunity for profit," and found that Plaintiff had shown the "threshold relevance" of the discovery. *Id.* at 16–17. But the Order overlooks a critical threshold issue: Plaintiff himself has no connection to CRST Expedited, was not a class member in *Cervantes*, and cannot credibly represent individuals who contracted exclusively with that separate entity.

Again, Plaintiff's own Iowa BOPA claim arises from his agreements with CRST Specialized and Lincoln Sales—which he executed in Fort Wayne, Indiana after traveling from his home in Florida. He drove exclusively for CRST Specialized, was subject only to CRST Specialized's agreements and personnel, and was never a contractor for CRST Expedited—a distinct sister operating entity with separate headquarters, management, and contracts. *Cervantes*, by contrast, was filed in January 2020, involved only CRST Expedited (and the former entity CRST International, Inc.), and focused on misclassification and wage claims under federal law. *See Cervantes*, ECF No. 155 (noting that CRST International, Inc. and CRST Expedited merged effective January 2, 2021). The *Cervantes* court also declined to certify the plaintiff's Iowa

---

[6] Potential ethical issues further warrant restraint. For example, Iowa Rule of Professional Conduct 32:7.3(a) prohibits attorneys from soliciting prospective clients through live or electronic contact when the motive is pecuniary gain, and Comment [2] to the Rule warns of "undue influence" and "overreaching" in such scenarios.

common law fraud claim, and the plaintiff there never alleged an Iowa BOPA claim. *See Cervantes*, ECF No. 276 at 54.

These are fundamental distinctions, yet Plaintiff has never articulated how wholesale discovery from *Cervantes*—a case he was never a part of and that predates the putative class period here—could be relevant to his own Iowa BOPA claim or any class certification arguments. Indeed, the Order's reasoning improperly conflates two separate operating entities and effectively permits Plaintiff to seek discovery for a class of individuals he cannot represent.

The Magistrate Judge's suggestion that tag-along discovery would promote "the speedy and inexpensive determination" of this matter (ECF No. 89 at 17) only underscores the error. Allowing Plaintiff to piggyback on a separate case against a separate entity would excuse him from his own discovery obligations and improperly broaden the scope of this litigation. Courts routinely reject this sort of shortcut. *See, e.g.*, *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 393–96 (N.D. Iowa 2009); *Town of Westport v. Monsanto Co.*, No. CV 14-12041-DJC, 2015 WL 13685105, at **3–4 (D. Mass. Nov. 5, 2015).

Tellingly, neither the Magistrate Judge's Order nor Plaintiff has cited a single case compelling wholesale production of discovery from separate litigation involving a different entity and different claims. Plaintiff's cited authorities only highlight the flaws in his position. For example, *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, No. 16-CV-1004, 2018 WL 3650219 (N.D. Iowa 2018), addressed the unsealing of filings, not compelled cross-litigation discovery. *EEOC v. Wal-Mart Stores, E. LP*, No. 17-C-70, 2018 WL 4923046 (E.D. Wis. Oct. 15, 2018), concerned the terms of a stipulated protective order. *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 546–47 (N.D. Ind. 1991), involved a protective order and in fact granted protection for "confidential proprietary information." *Id.* at 547. And *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), made clear that collateral litigants must "demonstrate the relevance

of the protected discovery to the collateral proceedings" and that relevance "hinges on the degree of overlap in facts, parties, and issues between the cases." *Id.* at 1132 (citation omitted).

Absent any particularized showing of relevance or necessity, Plaintiff's sweeping tag-along discovery demands amount to an improper fishing expedition. This Court should therefore set aside this portion of the Magistrate Judge's Order.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court should set aside the portion of the Magistrate Judge's July 16, 2025 Order compelling production of class member names and adopt Defendants' proposal to use consistent anonymized identifiers.

 Dated: July 30, 2025                                    Respectfully submitted,


                                                        */s/ Angela S. Cash*
                                                        James H. Hanson (*pro hac vice*)
                                                        Angela S. Cash (*pro hac vice*)
                                                        Andrew J. Ireland (*pro hac vice*)
                                                        SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
                                                        10 West Market Street, Suite 1400
                                                        Indianapolis, IN 46204
                                                        P: 317-492-9205
                                                        F: 317-684-2414
                                                        jhanson@scopelitis.com
                                                        acash@scopelitis.com
                                                        aireland@scopelitis.com

---

[7] To the extent that the Court does not set aside the Magistrate Judge's Order, it should order that Plaintiff obtain copies of any deposition transcripts from the respective court reporting services and pay any associated costs. Under Rule 30(f)(3), deposition transcripts are furnished "when paid reasonable charges." Courts consistently follow that principle, and it is "the norm that both parties pay the costs associated with deposition transcripts." *Young v. United Parcel Serv., Inc.*, No. DKC 08-2586, 2014 WL 858330, at *3 (D. Md. Mar. 4, 2014). Providing free copies would be unfair to the court reporters who prepared them. *See Gomez v. Massey*, No. 3:18-CV-00348, 2020 WL 2104700, at *2 (S.D. Tex. Apr. 23, 2020) (court reporters are entitled to fees and shifting costs "would set a dangerous precedent"); *Brant v. Principal Life & Disability Ins. Co.*, 195 F.Supp.2d 1100, 1108 (N.D. Iowa 2002) (Rule 30 "undermines" the notion of a free copy and plaintiff was not entitled to a transcript without payment).

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
kvisser@spmblaw.com

*Attorneys for Defendants,*
*CRST Expedited, Inc., CRST Specialized*
*Transportation, Inc., CRST Lincoln Sales, Inc.*
*and John Smith*

15