## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> vs. <br><br> CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc. and John Smith, an individual <br><br> Defendant(s). | Case No. 1:24-cv-00082-CJW-KEM <br><br> Honorable Judge C.J. Williams |

## JOINT STATUS REPORT

Pursuant to the Court's July 16, 2025 Order (ECF No. 90), Plaintiff, Harley Kelcher, and Defendants, CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. (Expedited), CRST Lincoln Sales, Inc. (Lincoln Sales), CRST Specialized Transportation, Inc. (Specialized), and John Smith, hereby jointly submit this status report summarizing the status of Defendants' custodial ESI review and other discovery matters:

**Plaintiff's Position**

***Status of Custodial ESI Review.*** Plaintiff is glad to hear that Defendants are making progress in their review of custodial ESI. However, despite reviewing approximately half of the custodial ESI to date and being ordered to produce documents on a rolling basis, Defendants have not made an additional production of custodial ESI since they produced Michael Gannon's ESI on July 11. Plaintiff is hopeful that the rate of production will increase.

***Search Term Negotiations.*** Below, Defendants continue to contend that the search terms are too broad, citing a 13% responsiveness rate for the documents they have reviewed to date. This

is surprising given that Defendants themselves identified almost every one of the document custodians (presumably because they were the individuals likely to have responsive documents), that the search terms were negotiated cooperatively through multiple rounds of back-and-forth revisions with Plaintiff making only marginal edits to the final set Defendants are currently utilizing, and that the responsiveness rate for Michael Gannon's documents was over 38% (*see* Joint Status Report (Doc. 88 at 5)).

Defendants further contend that Plaintiff is at fault for failing to negotiate further edits to the search terms since the parties last submitted a Status Report to the Court on July 15. But since that time, Defendants have provided none of the information Plaintiff explained on July 15 he would need to have an informed conversation on further revisions:

> the word "profit" in search strings is leading to a disproportionate number of false positives. For instance, it has never provided a hit report isolating "profit" from other terms: i.e., it does not explain how many documents would be excluded from review by eliminating "profit." Nor has it identified particular irrelevant documents, or even categories of documents that only hit on this term, to allow the parties to weigh the pros and cons of eliminating the term. While CRST asserts that Mr. Gannon's files included a variety of financial models that address profitability only in passing, it does not identify them by bates number, explain why they are irrelevant, or establish how many of the remaining custodians' documents consist of similar financial models.

Joint Status Report (Doc. 88 at 7). What Plaintiff stated then remains true. The Court should reject Defendants' proposed elimination of search terms and custodians for the same reasons stated by Plaintiff in the prior Joint Status Report (Doc. 88 at 6-8).

2

***Replacement Custodians.*** On April 11, Defendants proposed 24 document custodians, including Andrew Hadland (former CRST Specialized President), David Malinowski (former Asset Administrator), and Alysha Patterson (former Internal Audit Analyst for CRST Specialized). On June 27, Defendants disclosed that it had retained no documents for those three individuals. Plaintiff assumed Defendants would be investigating methods to remedy this loss of documents. But, since June 27, Defendants have provided no additional information, proposed methods of restoring or replacing the lost documents, or proposed substitute custodians. Accordingly, on July 22, Plaintiff wrote Defendants, asking the following:

- Can their ESI be restored or replaced through other discovery? *See* Fed. R. Civ. P. 37(e). For instance, can it be restored from backup tapes, a prior collection in another matter, or their old laptops? If not, can their ESI be recreated by collecting email they sent to or received from other individuals by querying the CRST email server or another source? Does CRST's IT team or ESI vendor have alternative suggestions?

- What were the dates and circumstances surrounding the destruction of their ESI? Is there a memo or other documentation of that process? Can you provide a copy of CRST's document retention policy?

- Whom does CRST recommend as substitute custodians? If so, please identify them and explain why they are appropriate substitutes.

- Has ESI been collected from the substitutes yet? If so, is their ESI under review along with that of CRST's other custodians? If not, what is CRST's timeline for collection and review?

Plaintiff continues to await a response.

Surprisingly, below, Defendants contend that the onus is on Plaintiff to "articulate[] a need" for discovery from these individuals or substitutes when it was Defendants themselves who proposed them as custodians, presumably after the thorough investigation required under Rule

26(g). Plaintiff looks forward to receiving responses to the questions above. The parties can then confer on next steps, and, if necessary, seek relief from the Court.

***Supplementation of Prior Responses.*** Below, Defendants state they are preparing a response to Plaintiff's July 22 discovery letter. Defendants also lob various potshots at Plaintiff, accusing Plaintiff of seeking discovery "untethered to his claims" and the like. Plaintiff sees no need to respond to these baseless accusations about unripe disputes and looks forward to receiving Defendants' response.

***Objections to Magistrate Judge's Order.*** On July 30, Defendants filed Objections to the Court's Order on Plaintiff's Motion to Compel. *See* Doc. 91. Plaintiff intends to file a Response in due course. Plaintiff's position is that the Magistrate Judge acted well within her discretion, and that Defendants have not and cannot demonstrate that the Order is clearly erroneous or contrary to law.

Below, Defendants state they are "particularly concerned" that Plaintiff's counsel will contact putative class members. But notably, they cite no rule, case, or other authority that prohibits counsel for contacting putative class members. On the contrary, "[i]n a class-action lawsuit, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Coop. v. Farmland Indus.*, 59 F.3d 764, 766 (8th Cir. 1995); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981) (finding an abuse of discretion in prohibiting contact with class members absent "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"). Here, both sides agree that putative class members are relevant witnesses—Defendants themselves identified "putative class members" on their initial disclosures, as did Plaintiff. There is nothing inherently improper about counsel contacting relevant witnesses and

Defendants have zero basis to assert the existence of "actual or threatened misconduct of a serious nature." *See Great Rivers Coop.*, 59 F.3d at 766.

Late in the afternoon on the date this report was due, Defendants added another accusation against Plaintiff's counsel: that they are seeking discovery from Defendants for "the purpose of soliciting clients." Defendants followed the accusation with a lengthy string cite of out-of-circuit authority. Plaintiff's counsel will not dignify Defendants' baseless ad hominin attack with a response.

**<u>Defendants' Position</u>**

***Status of Custodial ESI Review.*** Following the July 1, 2025 Status Conference, Defendants completed their review of CEO and President Michael Gannon's custodial ESI. Consistent with the Court's instruction, Defendants ran the 58 search strings proposed by Plaintiff against Mr. Gannon's e-mails, Microsoft Teams messages, and OneDrive documents and produced 1,749 unique documents (approximately 3,000 pages) on July 11, 2025, while withholding about 192 document families that contained privileged communications for a forthcoming privilege log. Defendants have since moved into the second, larger phase of custodial ESI review. As of July 30, 2025, Defendants have reviewed approximately 35,000 of the 61,060 document families that hit on any of Plaintiff's search terms. In their search, Defendants have identified only approximately 2,800 additional unique responsive documents along with the 1,941 for Gannon.

***Search-Term Negotiations.*** Defendants had hoped that Plaintiff's review of Mr. Gannon's production would inform a narrowing of his proposed search terms. Notably, in the last Joint Status Report, Plaintiff stated that he was "willing to engage in further evidence-based discussions with CRST to address reasonable concerns," ECF No. 88 at 8, yet he insisted that all of the various narrowing proposals made by Defendants should be rejected. Since then, however, Plaintiff has still offered no alternatives and also has not substantively responded to Defendants' request that

he review the 1,749 Gannon documents produced and give some indication of whether those documents are within the scope of his requests or further narrowing is possible—particularly the significant batch of sensitive financial analyses that were only minimally responsive and have no actual bearing on his individual claims or certifying a class.

Defendants' review since the last Status Report reinforces the need for further narrowing. Of the approximately 35,000 documents reviewed to date, less than 13 percent have been marked as responsive to Plaintiff's requests—many of those only marginally so. And of those responsive documents, few are actually relevant to the merits of Plaintiff's individual claims or his ability to certify or represent his proposed class. Approximately two-thirds of all the documents reviewed to date also only involve CRST Expedited or custodians from CRST Expedited rather than custodians and contents related to CRST Specialized or Lincoln Sales.[1] This too reinforces Defendants' longstanding concern that Plaintiff's discovery is largely untethered to the only class of individuals Plaintiff has any connection to: The approximately 350 other CRST Specialized contractors within his class definition. Instead, Plaintiff has narrowly focused his attention on the more than 3,000 CRST Expedited contractors he cannot credibly represent.

The burden imposed by this review has also been and will continue to be significant and disproportionate. In July alone, Defendants have devoted hundreds of attorney hours across more than ten lawyers to conduct the ESI review. This comes as a substantial cost to the client, but it is also a significant impediment to producing other, non-ESI discovery, briefing early motions, and reviewing and conferring over Plaintiff's own deficient discovery responses. Plaintiff, meanwhile, has not offered any insight on whether the 1,749 documents produced three weeks ago for Mr.

---

[1] As Defendants shared during the last Status Conference, they initially anticipated tiering their review of documents by focusing on CRST Specialized custodians. However, in an effort to provide Plaintiff more insight on the scope of the search earlier in the process, Defendants ultimately decided to batch out the review in a way that includes all custodians and entities.

6

Gannon are actually within the scope of his broad requests or if the search could be further narrowed to remove certain materials—despite being asked to do so and submitting that he would.

Defendants will continue their review and make rolling productions of non-privileged responsive documents but respectfully submit that further narrowing is warranted. Federal Rule of Civil Procedure 26(b)(1) requires discovery to be proportional to the needs of the case, and courts routinely limit overbroad ESI searches. Even when search terms might capture some relevant information, courts will curtail discovery when the volume is disproportionate to the needs of the case. In *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742–47 (8th Cir. 2018), for example, the Eighth Circuit affirmed an order limiting a plaintiff's request for 206 search terms to just 15 after the court found the broader search obviously overbroad and unduly burdensome. Similarly, here Plaintiff's search terms sweep in tens of thousands of documents unrelated to Plaintiff's claims and disproportionately target custodians from CRST Expedited—again, an entity for which Plaintiff has no class representative.

Defendants therefore respectfully request that the Court order Plaintiff to meaningfully limit the scope of his requests, including by narrowing the terms and proposed custodians. As they outlined in the prior Status Report, two reasonable limitations would be to: (1) remove the term "profit*" from each search term string and (2) limit further review to the 7 ESI custodians affiliated with CRST Specialized and 2 affiliated with Lincoln Sales (the only entities Plaintiff's counsel has a class representative for and the only entities that Plaintiff signed an Independent Contractor Operating Agreement or Lease Purchase Agreement with—which, as discovery has already showed, are unique agreements to CRST Specialized contractors. CRST Expedited contractors do not sign the same agreements). Alternatively, Defendants request that the Court limit further review to a randomized set of 5,000 additional documents, which is more than a statistically valid sample of the remaining unreviewed documents.

***Replacement Custodians.*** Despite the substantial ongoing review of documents, in a July 22, 2025 letter, Plaintiff requested that Defendants add additional custodians to replace the 3 initially discussed potential custodians (out of 26) whom Defendants no longer maintain ESI: Andrew Hadland, David Malinowski, and Alysha Patterson.[2] As Defendants have explained, these three individuals all left Defendants before this litigation was initiated and none were subject to a litigation hold, so their ESI was destroyed pursuant to Defendants' ordinary retention policies. Defendants are not aware of any alternative archives of the ESI for those custodians. However, any communications involving those individuals and any of the other 23 custodians would still be captured by the current ESI search;[3] thus, adding new custodians would only expand the burden without a corresponding benefit. Moreover, Plaintiff has not articulated a need for these additional custodians—particularly a need that would outweigh the substantial burden of potentially ingesting and reviewing thousands of additional documents on top of what he has already requested.

***Supplementation of Prior Responses.*** Plaintiff's July 22, 2025 letter also raises other issues related to supplemental interrogatory responses and CRST Specialized's ongoing collection of certain records for specific requests for production. Defendants are preparing a written response to Plaintiff's letter, are continuing to collect and review non privileged responsive documents for certain requests, will supplement those responses as additional documents are identified, and will continue to meet and confer on these issues in good faith. However, many of these requests also

---

[2] Although Defendant had initially identified these three individuals and others to Plaintiff in response to the initial list of custodians Plaintiff's counsel proposed, subject to his request for ESI discovery, Defendants did so for the purpose of facilitating running a hit report and ultimately negotiating a reasonable search tethered to Plaintiff's claims. Defendants have never agreed to the sweeping ESI Plaintiff seeks.

[3] Approximately 1,800 of the 61,060 documents are emails and attachments to or from these three custodians, which is particularly sizeable given Hadland and Malinowski left their employment with Defendants in 2021 and therefore would only have communications from a small portion of the class period

underscore that Plaintiff's approach to discovery to date has often been untethered to his claims and well outside the scope of reasonable or even permissible discovery—for example, he seeks obviously privileged legal analyses of whether the lease purchase program is subject to and complies with Iowa's business opportunity statute along with business opportunity laws for *other* states. Plaintiff also seeks a list of prior lawsuits involving CRST Specialized in Iowa along with descriptions of those cases and CRST Specialized's legal position on personal jurisdiction—all despite CRST Specialized having already provided significant legal authority finding that prior litigation conduct has no bearing on consent to jurisdiction.

***Non-ESI Productions.*** On July 30, 2025, CRST Specialized and Lincoln Sales served a small production of non-ESI documents. These records show that Plaintiff recently completed his Lease Purchase Agreement, purchased and received title to his tractor from Lincoln Sales, voluntarily terminated his Independent Contractor Operating Agreement with CRST Specialized, and has sought to work for other motor carriers (presumably with the same tractor). Defendants continue to collect and review non-ESI discovery and anticipate making additional productions on a rolling basis.

***Objections to Magistrate's Order***. On July 30, 2025, Defendants timely filed objections to the Magistrate Judge's discovery order. ECF No. 91. Among other issues, Defendants appealed the order insofar as it compelled the production of putative class member names and tag along discovery from the *Cervantes* case. Defendants are particularly concerned that, while Plaintiff is not being given putative class member contact information, his counsel will nevertheless use the lists of drivers' names to attempt to identify and contact witnesses. Of course, this is a purpose the Order specifically rejected and why it did not require the production of the contact information. Nevertheless, Plaintiff's counsel recently stated during a meet and confer call that they intend to use the names to identify and contact putative class members. *See* ECF No. 91-1, ¶ 4 ("During the

call, Plaintiff's counsel, Mike von Klemperer, explained that, in addition to tracking purposes, Plaintiff would continue to seek the production of all putative class member names in lieu of consistent anonymous identifiers across all document types and that the information was needed to identify witnesses, who to depose, possible declarants, and any number of things of that nature."). Plaintiff's statements above confirm this intention.

Plaintiff also suggests above that, once discovery is produced that includes putative class member names, his use of it cannot be limited by the Court absent a showing of some abuse or impropriety. But Plaintiff's authority is inapposite; indeed, the *Great Rivers* case he cites involved corrective notice concerning a *defendant's* communications with class members. Contrary to Plaintiff's arguments, a number of courts have specifically found that the practice of using similar identifying information for the purpose of soliciting clients[4]—particularly when it was produced for some other purpose—is impermissible. *See, e.g.*, *Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1093 (10th Cir. 2010) (affirming district court order finding the plaintiff's use of discovery that contained identifying information to solicit clients violated the protective order and was an abuse of discovery); *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 160 (6th Cir. 2010) ("Plaintiffs' counsel cannot use the Federal Rules of Civil Procedure as a device to force defendant to assist them in finding a plaintiff and establishing subject matter jurisdiction so they can sue defendant."); *Hogan v. Cleveland Ave Rest., Inc.*, No. 2:15-CV-2883, 2023 WL 2568299, at *5 (S.D. Ohio Mar. 20, 2023), *aff'd in relevant part*, No. 2:15-CV-2883, 2023 WL 4925296 (S.D. Ohio Aug. 2, 2023) ("[W]hat sets this case apart from Plaintiffs' relied-upon authority is the fact that Plaintiffs aren't merely asking to communicate with potential clients: they are asking

---

[4] To be sure, Defendants do not intend to suggest that Plaintiff will use the information to solicit new clients or class representatives; however, these decisions suggest that affirmative intervention by the Court is often reasonable to ensure it does not happen.

Defendants to find potential clients for them. But as Defendants note, courts routinely decline to order defendants to identify potential clients for plaintiff's counsel." (collecting cases)); *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG, 2006 WL 1455464, at \*1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." (collecting cases)); *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:14-MN-00001-DCN, 2014 WL 12622421, at \*3 (D.S.C. Nov. 20, 2014) (clarifying that "solicitation using confidential information" produced in discovery is not permitted under the Court's protective order and this limitation "protects the interests of [defendant] and its customers without burdening plaintiffs' ability to vindicate their legal rights"). Defendants have therefore respectfully filed their objections and instead seek to use anonymous identifiers or for the Court to limit Plaintiff's use of the names of putative class members that are produced.[5]

Dated: August 1, 2025

Respectfully Submitted,

/s/ *Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: 202-921-0002 | Fax: 312-264-0100
mike@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100

/s/ *Angela S. Cash*
James H. Hanson (pro hac vice)
Angela S. Cash (pro hac vice)
Andrew J. Ireland (pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205 | F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

---

[5] Defendants circulated their position at 10:53 PM ET the evening before this filing, and Plaintiff returned a copy with his positions at 3:00 PM ET the day of the filing (local time for counsel for both parties). Defendants returned their edits by 4:30 PM ET, adding this paragraph as responsive to Plaintiff's comments.

West Des Moines, IA 50265
Ph: 515-223-4567 | Fax: 515-223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Ph: 312-741-1019 | Fax: 312-264-0100
beth@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Avenue #310
San Rafael, CA 94901
Ph: 415-233-7100
rsb@boulter-law.com

*Attorneys for Plaintiff Kelchner and the
Putative Class*

Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641 | F: 319-366-1917
kvisser@spmblaw.com

*Attorneys for Defendants*