# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc. and John Smith, an individual<br><br>Defendant(s). | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Chief Judge C.J. Williams<br><br>Honorable Chief Magistrate Judge Kelly K.E. Mahoney |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS REGARDING PLAINTIFF'S MOTION TO COMPEL DISCOVERY (ECF NO. 89)**

1

## I.  INTRODUCTION

Plaintiff Harley Kelchner respectfully responds in opposition to Defendants' Objections Regarding Plaintiff's Motion to Compel Discovery. ECF No. 91.

Plaintiff's Motion to Compel sought (1) names and contact information for members of the putative class and (2) deposition transcripts, expert reports, and responses to interrogatories and requests for admission in another class action case against CRST, *Cervantes v. CRST International, Inc.* No. 20-CV-75 (N.D. Iowa), alleging unfair wage claims based on the lease-purchase program. *See* ECF No. 76-1. In ruling on this motion, Magistrate Judge Mahoney found that Plaintiff was entitled to class member names and, to the extent CRST has or is planning to interview putative class members to obtain information for use in opposing Plaintiff's class-certification motion, CRST must disclose class contact information to Plaintiff. ECF No. 89 at 13, 15. Judge Mahoney also rejected Defendants' proposal of replacing class members' names with anonymized numbers given that (a) CRST was unable to confirm that this would be applied across all document types and (b) CRST's discovery delays would only be exacerbated by redaction-and-replacement. *Id.* at 14-15. As to the *Cervantes* materials, Judge Mahoney found that Plaintiff had established the threshold relevance of the requested materials (as acknowledged by CRST) and that CRST had raised no argument as to burden. *Id.* at 17-18. Judge Mahoney set a deadline of August 15, 2025, for CRST to produce the requested materials.

As reflected by the extremely thorough order, Judge Mahoney exercised her discretion in reaching those decisions after discussing the issues with the parties during two status conferences, carefully considering the parties' briefing, and fully reviewing and applying the relevant authority. Critically, Judge Mahoney's decision was informed by her close oversight of all discovery in this case to date, which has involved no less than five status conferences over five months. For instance, in prohibiting CRST from engaging in the time-consuming process of redacting class members'

1

names from every document it intends to produce in this case, Judge Mahoney emphasized the extreme delays by CRST in producing ESI that she had observed in overseeing discovery in this case for months. *Id.* at 14-15; *see also* ESI Order at 3-4, ECF No. 79 (ordering, *sua sponte*, that CRST immediately begin reviewing ESI with rolling production of any responsive documents in light of CRST's failure to "act[] diligently" and its "delay in producing any ESI in this case.")

Defendants' objections should be overruled in full.

## II. PROCEDURAL HISTORY

On August 23, 2024, Plaintiff, individually and behalf of all others similarly situated, filed this class action lawsuit against CRST Expedited, Inc., CRST Specialized Transportation, Inc., CRST Lincoln Sales, Inc., and John Smith (collectively, "Defendants") for violations of the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.A-551A.10 ("Iowa BOPA"). Specifically, Plaintiff alleged (and discovery to date has borne out) that Defendants—companies subject to unified management and that operate and function as a common enterprise—directed and implemented deceptive "lease purchase" opportunities which defrauded drivers, like Plaintiff, out of their labor and money. *See* ECF No. 1, Compl. ¶¶ 16-32.

On October 17, 2024, CRST Expedited, Inc. ("Expedited"), CRST Lincoln Sales, Inc. ("Lincoln Sales"), and John Smith filed their respective answers to Plaintiff's complaint. ECF Nos. 25-27. On January 21, 2025, CRST Specialized Transportation, Inc. ("Specialized") filed its answer to Plaintiff's complaint. ECF No. 55.

On December 19, 2024, the Court entered the Scheduling Order and Discovery Plan, setting an August 22, 2025, deadline for the completion of fact discovery, with subsequent deadlines (e.g., expert disclosures) tied to the completion of fact discovery. ECF No. 47.

Defendants' attempts to obstruct discovery have necessitated numerous requests to extend case deadlines. *See* ECF Nos. 64, 72. On January 7, 2025, Plaintiff served Defendants with initial

2

sets of Document Requests and Interrogatories, with written responses due on February 6, 2025. ECF No. 61 ¶ 3. Pursuant to Rule 34(b)(1)(B), Plaintiff's Document Requests also set a 60-day (March 10, 2025) deadline for Defendants to complete their production of documents. *Id.* On February 6, 2025, Defendants requested a 30-day extension to their written responses, assuring Plaintiff that a sizeable production would accompany. *Id.* ¶ 4. Plaintiff agreed to the extension but, on February 27, 2025, Defendants requested an additional 21-day extension until March 24, 2024. *Id.* ¶ 5. This required the parties to request a six-month extension and a new substantial completion deadline for document production of May 21, 2025, *id.* ¶ 9, which the court granted. ECF No. 64.

Rather than use this time to conduct a thorough investigation and prepare fulsome responses, Defendants served evasive, incomplete, and largely boilerplate responses on March 14, 17, and 21. *See* ECF No. 72 at 1-2. This substantially delayed Plaintiff's receipt of discovery and impeded meet and confer efforts, requiring another request to extend the substantial completion deadline. *Id.* The Court agreed to a 30-day extension (until June 20, 2025) provided that Defendants made rolling productions in the interim, noting that CRST had not "acted diligently" in producing discovery. ECF No. 79. The Court also ordered Defendants to ramp up their collection, review, and production efforts, but, as of June 27, 2025, there had not been a single production of custodial documents, ECF No. 85 at 2, and Defendants continued to dispute search terms as of August 1, 2025. ECF No. 92 at 1-2.

Judge Mahoney is well aware of Defendants' discovery delays. *See e.g.*, Declaration of Michael von Klemperer ("MvK Decl."), Ex. A, June 3 Status Conference Tr. at 15:23-24 ("I, frankly, am a little flabbergasted we're at this point in the case and no further along in collecting information"); *id.* at 19:2-4 ("the main concern ... is the glacial pace at which [Defendants] are moving."). As such, the Magistrate Judge has exercised close management and oversight of

3

discovery issues, including holding monthly status conferences, and explicitly instructing CRST when to begin reviewing ESI "given the delay in producing any ESI in this case and the need to keep the case on track." *See* ECF No. 79 at 3.

On June 2, 2025, Plaintiff filed a motion to compel, related to discovery requests served almost five months earlier, seeking (1) putative class member names and contact information and (2) testimony and discovery materials from the related *Cervantes* case. ECF No. 76-1. Plaintiff argued that CRST refused to produce class member data without obfuscating names and contact information but could not confirm that the proposed redactions would be applied across all document types, making tracking class member experiences impossible. *Id.* at 4-5. Plaintiff also argued that CRST's unilateral access to the class prevented Plaintiff from both accessing relevant witnesses to make the required showing under Rule 23 and obtaining declarations to be used to support class certification. *Id.* at 6-8. In opposition, CRST argued that Plaintiff had not made a showing of relevance and proportionality to justify use of such discovery to support Rule 23 requirements. ECF No. 83 at 12-13. CRST also focused on two proposals that would avoid disclosure of all class member data: anonymized data with consistent litigation IDs across all document types wherever feasible and reasonable sampling of actual contact information limited to drivers for Specialized. *Id.* at 13. CRST did not argue that such discovery was improper because Plaintiff is not an adequate representative of Expedited drivers. Neither did CRST argue that it was inappropriate for Plaintiff's counsel to contact relevant witnesses.

As to the *Cervantes* materials, Plaintiff explained that the publicly available materials in *Cervantes* reflect a wide range of overlapping issues with this case, including the predatory nature of the lease-purchase program. ECF No. 76-1 at 11-12. Plaintiff also outlined various proportionality factors that weigh heavily in favor of disclosure, particularly given that there is no

4

conceivable burden to CRST in producing the materials (CRST is represented by the same counsel in both matters). *Id.* at 13-14. In response, CRST characterized Plaintiff's request as "tag-along" discovery and claimed that Plaintiff had not made a particularized showing of relevance or necessity because *Cervantes* is not a substantially similar case (including because Plaintiff did not contract with Expedited and was not a class member in *Cervantes*). ECF No. 83 at 16-17. CRST did not argue that Plaintiff should be responsible for the cost of *Cervantes* deposition transcripts were the motion to compel granted, making no argument whatsoever as to burden.

In ruling on this motion, the Court carefully considered and addressed the parties' arguments, evidence, and authorities. As to class discovery, Judge Mahoney rejected the redaction proposal given CRST's inability to assess whether anonymized identifiers would be applied across *all* documents, thereby preventing Plaintiff from tracking class member experiences. ECF No. 89 at 14-15. She also noted an unwillingness to endorse the time-consuming redaction-and-replacement approach given CRST's extreme delays in producing ESI to date. *Id.* Finally, Judge Mahoney considered how CRST's unilateral access to the class ensured that Plaintiff was entitled to class contact information should CRST rely on putative class members to oppose class certification. *Id.* at 13. As to the *Cervantes* materials, Judge Mahoney—who oversaw discovery in *Cervantes*—rejected CRST's conclusion that this was "piggyback" or "tag-along" discovery, *id.* at 15-16, and determined that such discovery materials were relevant to Plaintiff's claims given the overlap of issues and allegations. *Id.* at 17-18. The Court also noted that CRST had made no argument as to burden. *Id.* at 18. Thus, the Order was carefully drawn and well-reasoned.

## III.    LEGAL STANDARD

"A magistrate judge has broad discretion when supervising discovery matters." *United States v. NGL Crude Logistics, LLC*, No. 16-CV-1038-LRR, 2018 U.S. Dist. LEXIS 110972, at *6 (N.D. Iowa Apr. 11, 2018). Accordingly, a magistrate judge's discovery order should only be

modified or set aside upon a showing it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A). This is a "highly deferential standard of review," and the party seeking to overturn a discovery order "bears a heavy burden." *Haviland v. Catholic Health Initiatives - Iowa, Corp.*, 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010).

A decision is "clearly erroneous" "when 'the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'" *United States v. NGL Crude Logistics, LLC*, No. 16-CV-1038-LRR, 2018 U.S. Dist. LEXIS 110972, at *7 (N.D. Iowa Apr. 11, 2018) (quoting *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 314 (N.D. Iowa 2005)); *id.* ("Stated differently," the decision must "strike [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish.") (citation omitted). A party may not simply reargue the merits hoping for a different result, and, in light of the broad discretion afforded magistrate judges, an order is not clearly erroneous merely because the district judge "would have decided the matter differently." *Clayton Int'l, Inc. v. Neb. Armes Aviation, LLC*, No. 8:21CV309, 2024 U.S. Dist. LEXIS 182534, at *2 (D. Neb. Oct. 7, 2024) (cleaned up); *Bepex Int'l, LLC v. Hosokawa Micron, BV*, No. 19-cv-2997 (KMM/JFD), 2022 U.S. Dist. LEXIS 101165, at *5 (D. Minn. June 7, 2022) (review by district judge "is not a vehicle to reargue the merits of the underlying motion").

"A decision is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *NGL Crude Logistics, LLC*, 2018 U.S. Dist. LEXIS 110972, at *7 (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1092 (N.D. Iowa 2008)). Mere disagreement with the way a magistrate judge weighed or decided the party's arguments does not meet this standard. *See, e.g.*, *Lindsay v. Clear Wireless LLC*, No. 13-834(DSD/FLN), 2014 U.S. Dist. LEXIS 26698, at *5 (D. Minn. Mar. 3, 2014).

6

Finally, a party must "present all of his arguments to the magistrate judge" or they are "waived." *Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (affirming district court's refusal to consider argument not raised first before magistrate judge). "Parties must take before the magistrate, not only their 'best shot' but all of their shots." *Id.* (cleaned up); *accord Rose v. Kijakazi*, No. 20-CV-4062 CJW-MAR, 2022 U.S. Dist. LEXIS 158922, at *13 (N.D. Iowa Sep. 2, 2022) (Williams, C.J.). Accordingly, "[a] party cannot, in his objections . . . raise arguments that were not clearly presented to the magistrate judge." *Ridenour*, 679 F.3d at 1067 (quoting *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006); *see also Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (holding that a party "must present all his claims squarely to the magistrate judge, that is, the first adversarial forum"). Nor can a party attach new evidence in support of its arguments. *Rose*, 2022 U.S. Dist. LEXIS 158922, at *13 (finding that attaching a new exhibit "is not permitted" and "the Court will disregard it").

## IV.    ARGUMENT

Frustrated with Judge Mahoney's Order on Plaintiff's Motion to Compel, CRST improperly advances new arguments that were never raised to avoid producing class member names. Even if the Court considers these waived arguments, it is clear that Judge Mahoney's decision was neither clearly erroneous nor contrary to law—she carefully considered the parties' arguments and discovery to date and applied the appropriate law. The same is true for Judge Mahoney's ruling on the *Cervantes* discovery materials. Rather than meet its heavy burden of demonstrating a grave error, CRST simply reargues the merits of the relevance of the *Cervantes* materials hoping for a different result. Considering these arguments, Judge Mahoney—who is intimately familiar with *Cervantes* given her role overseeing discovery there as well—found that such materials were both relevant and proportionate. CRST's mere disagreement with Judge

7

Mahoney's exercise of discretion cannot support setting aside her well-reasoned order, particularly when CRST's own objections confirm that the *Cervantes* materials are relevant to this case.

> **A.  CRST Does Not Carry Its Heavy Burden to Demonstrate that Magistrate Judge Mahoney's Order Requiring It to Provide Plaintiff With Class Member Data and Discovery Was Clearly Erroneous or Contrary to Law.**

CRST agrees that Plaintiff is entitled to class member data and discovery. *See* ECF No. 89 at 14. As such, the only issue in dispute was whether CRST could redact class member names from that data and discovery and whether CRST would be required to produce class contact information. In resolving these disputes, the Court ordered that CRST (1) not redact names from otherwise discoverable documents and (2) provide contact information for class members, but only if CRST intended to rely on information obtained from class members in opposing Plaintiff's class certification motion. In reaching these decisions, Judge Mahoney considered CRST's inability to assess the feasibility of a proposal that applied anonymized identifiers across all document types and, in any event, was hesitant to endorse a time-consuming redaction-and-replacement approach given CRST's extreme delays in producing ESI to date. ECF No. 89 at 14-15. She also considered CRST's unilateral access to the class, finding that fairness required reciprocal access should CRST rely on class members to oppose class certification. *Id.* at 13.

Judge Mahoney's decision was well within her discretion: the Court carefully weighed the parties' arguments, took account of her experience and oversight of discovery in this case to date, considered the relevant authorities, and came to a carefully drawn, well-reasoned, and thoroughly explained conclusion. Unsatisfied with this reasonable decision, CRST starts from scratch, advancing arguments that share almost no relation with those advanced in opposing Plaintiff's Motion to Compel and citing new exhibits in support. This is contrary to black-letter Eighth Circuit law and CRST's objections should be overruled.

**1. Discovery Regarding All Putative Class Members Is Appropriate And CRST's Argument to The Contrary Is Waived.**

In objecting to Judge Mahoney's Order that CRST produce class member names, CRST argues that Plaintiff is not a proper class representative of Expedited drivers. This is a totally improper argument to advance in a discovery dispute—Plaintiff Kelchner seeks to represent a class of both Specialized and Expedited drivers, and CRST will be free to oppose his role as class representative during class certification briefing. Moreover, this argument was never clearly presented to the Magistrate Judge. Despite serving lengthy objections to discovery requests and participating in numerous meet and confers and status conferences, CRST failed to raise this point and then elected not to argue it in opposing Plaintiff's Motion to Compel. Under black letter law, "[a] party cannot, in his objections . . . raise arguments that were not clearly presented to the magistrate judge." *Ridenour,* 679 F.3d at 1067; *see also Rose*, 2022 U.S. Dist. LEXIS 158922, at *13 (same). Nor can a party raise new objections not timely asserted in response to a discovery request. *See Sellars v. CRST Expedited, Inc*., No. C15-0117, 2016 U.S. Dist. LEXIS 125026, *5 (N.D. Iowa Sep. 12, 2016). The same is true for the new exhibits that CRST cites to support its argument. *See Rose*, 2022 U.S. Dist. LEXIS 158922, at *13 (finding that attaching a new exhibit "is not permitted" and "the Court will disregard it").

The record is clear: CRST objects generally to precertification class discovery. During the April 4 status conference, and in response to Plaintiff's concerns about Defendants' extreme delays in responding to initial discovery requests, CRST claimed that Expedited was unlikely to have documents relevant to Plaintiff, who worked for Specialized. MvK Decl., Ex. B, April 4 Status Conference Tr. at 9:17-11:1. Then, when asked about the precise issue of class member discovery, CRST merely stated that such information was not appropriate pre-certification. *Id.* at 14:16-15:3. In opposing Plaintiff's Motion to Compel, CRST argued *again* that pre-certification class

discovery was not automatic and that Plaintiff had not made a particularized showing of relevance and proportionality to justify use of the discovery to support class certification. At no point did CRST argue that Plaintiff was not a proper representative of Expedited drivers. In fact, the only mention of Expedited was one brief sentence to support CRST's concerns over the "overbreadth and improper fishing nature" of Plaintiff's request. *See* ECF No. 83 at 15. CRST's failure to timely raise this argument is particularly improper since it is premised on information CRST had since the filing of this case in 2024. Thus, this argument is waived, and the Court should overrule the objection.

To further support waiver, CRST's objections to Plaintiff's initial discovery requests also failed to argue that Plaintiff was not a proper representative of Expedited drivers. Indeed, general objections to precertification class discovery and concerns over the disclosure of PII as to individuals not yet established as class members were the *only* objections raised in Expedited and Lincoln Sales objections to RFP 20 and Interrogatory 2, the class discovery requests at issue here. *See Sellars v. CRST Expedited, Inc.*, No. C15-0117, 2016 U.S. Dist. LEXIS 125026, *5 (N.D. Iowa Sep. 12, 2016) (failure to timely object to discovery request constitutes a waiver of the objections).

Even if the Court considers CRST's improper new argument, CRST improperly references new exhibits regarding Plaintiff's employment background in support. *See* ECF 91 at 3; Cash Decl. ¶¶ 5-7. Such exhibits must be disregarded. *See Rose*, 2022 U.S. Dist. LEXIS 158922, at *13 (finding that attaching a new exhibit "is not permitted" and "the Court will disregard it"). Moreover, it is not a legitimate basis to oppose discovery. Expedited is a defendant in this case (ECF No. 1); Expedited answered the complaint (ECF No. 25); and Expedited responded to Plaintiff's discovery requests (*see* ECF 72 at 1-2; ECF 76-8). Plaintiff is entitled to discovery to make his class certification showing and prove the claim in this case. Moreover, Plaintiff's

10

allegations and all available evidence show that Defendants operate as a single entity to induce individual commercial drivers to enter a fraudulent business opportunity. Defendants are part of a family of Cedar Rapids-based trucking companies founded as Cedar Rapids Steel Transport. ECF No. 40-3 at 5 (Our History, CRST.com); ECF No. 34 (Specialized Corp. Disclosure Statement); ECF No. 36 (Expedited Corp. Disclosure Statement); ECF No. 38 (Lincoln Sales Corp. Disclosure Statement). Defendants share common officers and directors, ECF No. 40-9, and the parent company, CRST International Holdings LLC, has a board which oversees all of the holding company's subsidiaries. Defendants co-mingle funds, share methods to identify potential drivers, have common marketing and recruiting staff, share a billing department, and have common dispatch and customer service staff. Compl. ¶ 16. Indeed, the advertisements used to ensnare drivers are also prepared by their common recruiters and posted to their common website (CRST.com). *See, e.g.*, *id*. ¶ 18 (quoting ECF 1-1).

Thus, Plaintiff challenges all iterations and versions of CRST's lease-purchase program regardless of what entity a driver drove for, on the exact same legal theory—that the subject offers, solicitations, and transactions violate the Iowa BOPA. *See Liles v. Am. Corrective Counseling Servs.*, 231 F.R.D. 565, 574 (S.D. Iowa 2005) (a shared legal theory satisfies the minimal burden to show typicality). Had CRST properly raised this argument in its opposition to Plaintiff's Motion to Compel, Plaintiff would have attached voluminous evidence rebutting their arguments, including that (1) all class members signed the same Equipment Lease Agreement with Lincoln Sales, (2) all class members received substantially similar "Lease Purchase Information Packets" describing the program regardless of whether they drove for Specialized or Expedited and (3) the Expedited and Specialized Independent Contractor Operating Agreements are virtually identical. As such, this objection is without merit and should be overruled.

11

**2. There Is Nothing Inappropriate About Contacting Relevant Witnesses and The Magistrate Judge's Order Addressed Any Concerns of An Improper Fishing Expedition.**

The Magistrate Judge's Order only requires production of class member names (and contact information should CRST use putative class members to oppose class certification). Nevertheless, CRST now expresses concern—for the first time—that Plaintiff's counsel will use driver names to identify and contact witnesses. *See* ECF No. 91 at 14. In opposing Plaintiff's Motion to Compel, CRST did not argue that contacting relevant witnesses was impermissible. In fact, CRST recognized that class members may be relevant witnesses who would be timely identified. *See* ECF No. 83 at 17-18. CRST cannot now take the contrary position that it should not be compelled to produce class member names out of newfound concern that Plaintiff will contact relevant witnesses. *Ridenour*, 679 F.3d at 1067 (argument waived if not presented to magistrate).

Even if the Court considers this improper new argument, Judge Mahoney carefully weighed the parties' arguments regarding identifying and contacting class members. As Plaintiff explained, class member names are relevant to tracking class member experiences, identifying relevant witnesses, and cross-checking information obtained from other sources of discovery. ECF No. 76-1 at 6-8. Judge Mahoney likewise recognized that class member names were crucial to Plaintiff's ability to track class member experiences while at CRST and that "fairness requires reciprocal access" to relevant class member witnesses. ECF No. 89 at 13 ("[I]t does not seem that Plaintiff would be able to identify many class members without discovery"). To dispel any concerns regarding a fishing expedition, Judge Mahoney only compelled disclosure of class member *contact information* "if CRST has or is planning to interview putative class members to obtain information for use in opposing the class-certification motion." *Id.*

12

In any event, there is nothing impermissible about contacting relevant witnesses. On the contrary, "[i]n a class-action lawsuit, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Coop. v. Farmland Indus.*, 59 F.3d 764, 766 (8th Cir. 1995); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104(1981) (finding an abuse of discretion in prohibiting contact with class members absent "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"). Here, both sides agree that putative class members are relevant witnesses—CRST identified "putative class members" on their initial disclosures, as did Plaintiff. Certainly, CRST has never even suggested, let alone demonstrated, a risk of "actual or threatened misconduct of a serious nature." *See Great Rivers Coop.*, 59 F.3d at 766.

Judge Mahoney's Order even addressed this issue, citing *Cosgrove v. OS Rest. Servs.,* No. 10-CV-1937 (JNE/SRN), 2010 U.S. Dist. LEXIS 158886 (D. Minn. Aug. 31, 2010). In that case, following the defendants' initial disclosures (identifying approximately 1600 class members and the names of 95 class members who provided defendant with signed declarations during witness), plaintiff sought to compel the defendant to identify and provide contact information for, *inter alia*, all members of the putative class so that plaintiff could interview these persons to support class certification. *Id.* at *3-4. The Court granted this motion, finding that "Defendant has opened the door to this discovery by identifying a group of 95 employees of its own selection … [others] may also have relevant information, and Defendant should identify them.") *Id.* at *9. Simply put, Judge Mahoney's decision was carefully reasoned and in accordance with relevant case law. This objection must too be overruled.

13

**3. CRST's Objection That Consistent Class Member Anonymizers Are Now Feasible Is Waived, and the Magistrate Judge Rejected Redaction-by-Replacement Given CRST's Discovery Delays to Date.**

CRST seeks to overturn the Magistrate Judge's Order because they believe it is now feasible to apply consistent class member anonymizers across *every* document type. This form of redaction was not disclosed to the Magistrate Judge, making these inappropriate facts to raise now. *See Roberts,* 222 F.3d at 470. Indeed, Judge Mahoney recognized that "after months of meeting and conferring, CRST cannot say whether it will use these same anonymized numbers" across all document types. ECF No. 89 at 14. In opposing Plaintiff's Motion to Compel, CRST focused on two proposals: (1) consistent anonymizers across document types where feasible and (2) reasonable sampling of actual contact information of drivers for CRST Specialized. ECF No. 83 at 13. As to the first proposal, CRST did not intend to apply those numbers to emails and could not confirm whether they would apply those numbers to complaints, exit interviews, and the like. *See* ECF No. 76-1 at 6. Thus, the proposal of consistent class member anonymizers across *every* document type was not raised and is now waived. *Ridenour*, 679 F.3d at 1067.

Even if the Court considers this objection, Judge Mahoney's decision was not clearly erroneous or contrary to law. Rather, she carefully evaluated the parties' arguments and relevant authorities and her experience overseeing discovery to date and used her discretion to reject redaction of class member names.

Referencing CRST's two proposals, Plaintiff explained that redactions are not supported by the Federal Rules of Civil Procedure. ECF No. 76-1 at 5-6. Indeed, redactions "breed suspicions" particularly where, as CRST proposes, they are unilateral, "thereby depriving their opponents of an opportunity to see information in its full context and fueling mistrust about the redactions' propriety." *See e.g.*, *Burris v. Versa Prods., Inc.*, No. 07-cv-3938 (JRT/JJK), 2013 U.S. Dist. LEXIS 21851, *9-10 (D. Minn. Feb. 19, 2013). Judge Mahoney engaged directly with

14

this argument, citing *Coe v. Cross-Lines Retirement Center, Inc.* for the proposition that class contact information could not be redacted unless a defendant showed "good cause … by establishing specific, significant harm that would result from disclosure" of unredacted information. ECF No. 89 at 13. In opposing Plaintiff's Motion to Compel, CRST did not even attempt to identify harm that would result from disclosure of class member information. During the parties' most recent meet and confer, Plaintiff asked what legitimate harm would come from disclosing class members' names, but CRST again was unable to articulate any.

Plaintiff also argued that redactions degrade the documents and data's useability, making it impossible for Plaintiff to track class member experiences across documents or identify appropriate witnesses, declarations, or deponents. For instance, if Plaintiff learned of an individual from another source (e.g., a deposition, from a contact, etc.), he would be unable to locate them in the documents to verify and bolster his story. CRST did not address such concern in opposition. Judge Mahoney, however, agreed that Plaintiff needed to be able to "synthesize relevant discovery for its experts and class certification … [and] track class members across multiple documents," making CRST's proposal impractical. ECF No. 89 at 15.

Notwithstanding the infeasibility of the redaction proposal, the Magistrate Judge cited CRST's discovery delays as an additional reason for not allowing redaction of class member names. Specifically, the Order noted that "after months of meeting and conferring, CRST cannot say whether it will use these same anonymized numbers" across all document types. *Id.* at 14. The fact that, dissatisfied with the Court's order, CRST has now determined that they *can* apply anonymizers across all documents cannot justify lengthy delays or CRST's failure to raise this argument in opposition to Plaintiff's Motion to Compel. As Judge Mahoney made clear: "given the extreme delays by CRST in producing ESI, I am hesitant to endorse redaction-and-

15

replacement, which would surely take some time." *Id.* at 15. Indeed, as CRST explained to Plaintiff recently, its intention of redacting class member names would necessitate the retention of a secondary, specialized vendor. This would almost certainly result in considerable additional discovery delays, as every document would need to be processed twice. Accordingly, the Order was not clearly erroneous or contrary to law, and CRST's objections should be overruled.

**B.      CRST Does Not Carry its Heavy Burden of Demonstrating that the Magistrate Judge Mahoney's Order Compelling Production of the *Cervantes* Materials Was Clearly Erroneous or Contrary to Law.**

Rather than point to any failure to consider applicable law or manifest error, CRST attempts to relitigate the merits of the *Cervantes* discovery requests out of mere disagreement with the Magistrate Judge's Order. Such disagreement is not grounds to set aside an order, *Clayton Int'l, Inc.*, 2024 U.S. Dist. LEXIS 182534, *2; *Lindsay* 2014 U.S. Dist. LEXIS 26698 at *5, particularly given that CRST does not identify any rule or argument that the Magistrate Judge did not consider. In fact, CRST's objection is extraordinary given that CRST itself admits the relevance of *Cervantes* in its own objections. *See* Cash Decl. ¶ 8 and Objs at 9, n.4 (citing Court's decision in *Cervantes* as a basis to seek relief in this matter).

Notwithstanding the agreed relevance of the *Cervantes* materials, CRST's objections present the same arguments as their opposition to Plaintiff's Motion to Compel hoping for a different result. For example, CRST argues that the request for *Cervantes* materials is "piggyback" discovery, despite the fact that Judge Mahoney rejected this argument (and found CRST's case law to be inapposite) because "Plaintiff does not seek to avoid having to do his own discovery by receiving the documents produced in *Cervantes;* instead, he seeks documents created as part of the *Cervantes* litigation." ECF No. 89 at 16. CRST also argues that the Order "overlooks" the fact that Plaintiff "has no connection to CRST Expedited, was not a class member in *Cervantes*," and has not articulated the relevance of *Cervantes* to his Iowa BOPA claims. *See* ECF No. 91 at 12-13. On

16

the contrary, Judge Mahoney was fully aware of Plaintiff's employment history and carefully considered—and rejected—these arguments in her Order. *See* ECF No. 89 at 15-18 (considering the parties' arguments and finding a degree of overlap of relevant issues and that the *Cervantes* plaintiffs "made many of the same allegations that Plaintiff makes here.")

Given that Judge Mahoney oversaw discovery in *Cervantes*, she is well versed with its subject matter, the evidence that was developed and tendered there, and its relevance to Plaintiff's claims. Indeed, Plaintiff seeks the *Cervantes* discovery materials because CRST's defenses and admissions in that case walk them directly into BOPA liability in this case. Plaintiff fully expects that the record of discovery materials developed in *Cervantes* will contain material relevant to this case because just a sliver of CRST's various judicial admissions and tendered evidence in *Cervantes*, as cited in Plaintiff's Motion to Compel, are relevant to establishing how elements of the lease purchase program satisfy BOPA liability. *See* ECF No. 76-1 at 11-12. As such, there is nothing clearly erroneous or contrary to law in the Order—CRST just does not like how the Magistrate Judge exercised her discretion. Thus, CRST's objections should be overruled.

As a final point, CRST argues that, should the Court not set aside the Magistrate Judge's Order, Plaintiff should be required to obtain copies of any deposition transcripts and pay any associated costs. ECF No. 91 at 14, fn. 7. As with most of its other arguments, CRST never raised this argument, either to Judge Mahoney or in its discovery responses. It is therefore waived. *Ridenour*, 679 F.3d at 1067 (argument waived if not clearly presented to magistrate judge); *Sellars*, 2016 U.S. Dist. LEXIS 125026 at *5 (objections not timely asserted in response to discovery request are waived). *Rose*, 2022 U.S. Dist. LEXIS 158922, at *13 (new evidence "is not permitted" and "the Court will disregard it").

It is also legally baseless: CRST has possession of the transcripts and has been ordered to produce them directly. Requiring Plaintiff to pay fees for transcripts it has never seen would be directly contrary to Rule 1's mandate of "just, speedy, and inexpensive determination of every action and proceeding." *See* ECF No. 76-1 (citing *Wauchop v. Dominos Pizza, Inc.*, 138 F.R.D. 539, 547-47 (N.D. Ind.).) (Sharing discovery materials in other cases "further[s] the goals of Rule 1 by eliminating the time and expense involved in 'rediscovery.' … Maintaining a suitably high cost of litigation for future adversaries is not a proper purpose under Rules 1 or 26."). CRST's caselaw is also easily distinguishable. Two of the cited cases are irrelevant in that they deal with the cost of party depositions in the same case. *See Gomez v. Massey*, No. 3:18-CV-00348, 2020 U.S. Dist. LEXIS 74818 (S.D. Tex. Apr. 23, 2020) (finding no obligation for Plaintiff to provide Defendant with a copy of his deposition transcript); *Brant v. Principal Life & Disability Ins. Co.*, 195 F. Supp. 2d 1100, 1107-1108 (N.D. Iowa 2002) (same for Plaintiff seeking free copy of own deposition transcript from Defendant). Likewise, *Young v. United Parcel Serv., Inc.,* No. DKC 08-2586, 2014 U.S. Dist. LEXIS 27118 (D. Md. Mar. 4, 2014), which CRST cites for the principle that both parties should pay the costs associated with deposition transcripts, is inapplicable. In that case, the plaintiff proposed sharing deposition transcripts. *Id.* at *5. The defendant elected to pay for his own transcripts and, following a successful summary judgment motion, sought to recover costs related to the taking of depositions in that case. *Id.* at *2. The Court found that this award of costs was appropriate and there was no inherent injustice in the defendant choosing to pay for his own copy rather than sharing with the plaintiff. *Id.* at *8-9. Neither the award of costs nor depositions taken in the present case are at issue here. More significantly, none of CRST's cases support that Plaintiff should be required to pay for the costs associated with deposition transcripts he has never seen in a case in which he was not a party, but CRST was. CRST's inappropriate new

18

argument therefore seems to be nothing more than an improper effort to drive up Plaintiff's litigation costs and/or prevent his access to relevant and likely highly damaging admissions.

## V. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court overrule Defendants' Objections in full.

Dated: August 13, 2025

Respectfully Submitted,

/s/ *Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD,
& WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Robert S. Boulter
LAW OFFICES OF ROBERT S.
BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 233-7100
rsb@boulter-law.com

*Attorneys for Kelchner and the Putative Class*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

/s/*Michael von Klemperer*
Michael von Klemperer

1