# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, individually and on behalf of all others similarly situated, | No. 24-CV-82-CJW-KEM |
| Plaintiff, | **ORDER** |
| vs. | |
| CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC., and JOHN SMITH, an individual, | |
| Defendants. | |

_____

## *I.* *INTRODUCTION*

This matter is before the Court on defendants' objections (Doc. 91) to an order (Doc. 89) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. Judge Mahoney granted in part and denied in part plaintiff's motion to compel (Doc. 76) regarding the disclosure of (1) pre-certification names and contact information for members of the putative class and (2) witness lists, deposition transcripts, expert reports, and responses to interrogatories and requests for admission in another class action against CRST alleging unfair wage claims based on the lease-driver program.

Defendants filed objections to Judge Mahoney's order. (Doc. 91). Plaintiff filed a response (Docs. 96 & 97), and defendants filed a reply (Doc. 102).

For the following reasons, the Court **overrules** defendants' objections.

1

## II.    BACKGROUND[1]

Through the lease-driver program, defendants lease trucks to drivers (through defendant CRST Lincoln Sales), then has them drive loads for CRST Expedited or CRST Specialized as independent contractors.  (Doc. 1).  Plaintiff alleges that defendants used misleading advertisements to recruit drivers to the lease-driver program.  (*Id.*)  Plaintiff alleges that defendants controlled the rates paid to drivers and the loads they could transport; improperly deducted drivers' pay (for insurance, tolls, fuel, fuel tax, Electronic Fund fees, truck maintenance and repairs, and miscellaneous expenses); and collected fuel surcharges from customers without passing those funds along to the drivers.  (*Id.*).  Plaintiff alleges that the lease-driver program violated the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.1–.10, because defendants used misleading advertisements and failed to make required disclosures—including misrepresenting the amount drivers would earn while concealing the high turnover rate, low average income and miles, and excessive charges and deductions.  (*Id.*).  Plaintiff drives for CRST Specialized through the lease-driver program, but he seeks to represent a class of lease drivers who drive for either CRST Specialized or CRST Expedited.  (*Id.*).

As part of their initial disclosures, defendants disclosed witnesses they might use to support their case and included "[p]utative class members, including those who provide affidavits, declarations, or any other form of witness statements or testimony."  (Doc. 76-14).  In January 2025, plaintiff served interrogatories and requests for production on defendants.  Plaintiff requested that defendants identify the putative class members by name, address, telephone number, email address, the dates they drove for defendants, and which CRST entity they drove for (plaintiff requested this information via Interrogatory 2, "ideally" provided as an electronic database; and via Request for

---

[1] Neither party objected to Judge Mahoney's findings of fact (Doc. 89, at 1–8), so they are repeated here verbatim with minor citation and formatting modifications.

Production 20 for "documents sufficient to identify" this information). (Docs. 76-6–76-8). Defendants listed boilerplate objections of overbreadth, irrelevance, disproportionality, and undue burden; raised privacy concerns on behalf of members of the putative class; and asserted the request was premature, since the class had not yet been certified. In their interrogatory response, defendants additionally explained that they "may not" keep "a single, comprehensive database" with the requested information, making compiling, verifying, and formatting the data unduly burdensome. (*Id.*).

Plaintiff also requested information and documents related to a pending class action against CRST Expedited, *Cervantes v. CRST International, Inc*. (No. 20-CV-75 (N.D. Iowa). The class in that case covers those in the lease-driver program who drove for CRST Expedited (but not those who drove for CRST Specialized), excluding those who leased more than one truck at a time. (*Id.*, at Doc. 368 (May 28, 2024) (summary judgement ruling). The *Cervantes* plaintiffs alleged that CRST misclassified lease drivers as independent contractors instead of employees, resulting in CRST's failure to pay them the minimum wage required by the Iowa Minimum Wage Law and the Fair Labor Standards Act (FLSA). (*Id.*). Relevant factors to that determination include CRST's control over the drivers, the parties' relative investments, the drivers' opportunity for profit and loss, the skill and initiative necessary to perform the job, the permanency of the relationship between the drivers and CRST, and whether the drivers were integral to CRST's business. (*Id.*). The *Cervantes* plaintiffs also brought a claim under the Truth in Leasing Act based on CRST's failure to disclose the freight bill to drivers, resulting in at least some drivers being underpaid. (*Id.*). The named plaintiffs brought additional claims that were ultimately not certified to proceed as a class action. (*Id.*, at Doc. 276 (June 14, 2022). Named plaintiffs argued that CRST's deductions from their paychecks for operating expenses and the like violated the Iowa Wage Payment Collection Law and caused unjust enrichment (the court dismissed the latter claim at summary judgment).

3

(*Id.*, at Doc. 368). The *Cervantes* named plaintiffs' fraud claim, based on CRST's advertisements of the salaries they would earn as part of the lease driver program, survived summary judgment. (*Id.*). The claims proceeded to a bench trial (the trial transcripts are publicly available), and the Court's ruling is pending.[2]

Plaintiff seeks the following related to the *Cervantes* case: the identification (as an interrogatory response) of "all witnesses who testified via affidavit, declaration, deposition, or other live testimony" (Interrogatory 11); deposition transcripts for CRST employees; CRST's expert reports and their deposition transcripts; CRST's interrogatory responses; and CRST's responses to requests for admission (Requests for Production 22-25). (Docs. 76-6–76-8). Defendants raised boilerplate objections of overbreadth, undue burden, disproportionality, confidentiality, and privilege. (*Id.*). Defendants objected that the cases were not similar because *Cervantes* involved different causes of action; did not include CRST Specialized, CRST Lincoln Sales, or Smith as defendants; and revolved around the legal issue of whether the drivers were improperly classified as independent contractors, rather than business opportunities and promotions. (*Id.*). Defendants cited cases in which courts rejected "cloned" requests for the entire discovery file from a previous case and argued that plaintiff's requests would result in the production of cumulative and duplicative evidence. (*Id.*). Defendants stated they were willing to meet and confer to narrow the requests, however. (*Id.*).

On March 17, 2025, plaintiff sent defendants a deficiency letter. (Doc. 76-9). The letter did not specifically mention defendants' objections to identifying putative class members or producing the *Cervantes* materials. (*Id.*). Plaintiff emailed on April 1 with cases he argued supported his request for the *Cervantes* materials. (Docs. 76-10, 83-1). The parties spoke by telephone on March 31 and April 2, during which time defendants

---

[2] The Court's post-trial ruling in the *Cervantes* case is no longer pending. *See Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM, 2025 WL 2210773 (N.D. Iowa July 25, 2025).

offered the compromise of producing an anonymized list of putative class members (listing their dates of employment and the CRST entity they worked for). (Doc. 76-2). Defendants also requested that plaintiff narrow the *Cervantes* request without proposing a way to do so. (*Id.*).

The Court held a status conference with the parties on April 4, 2025. (Doc. 80). The parties talked through both discovery disputes with the Court (as well as other issues). (*Id.*). Plaintiff noted that defendants were not only refusing to provide class contact information in response to the specific requests asking for that information, but defendants had also objected to numerous requests on the basis that they would reveal putative class members' names. Defendants ultimately agreed to provide pay and deductions data for all putative class members in an anonymized fashion, which defendants argued would be sufficient for analysis. (*Id.*). Plaintiff noted that discovery was not bifurcated; all discovery (including expert discovery) was occurring now, then the parties would file class-certification and dispositive motions (with no discovery to be conducted afterward). (*Id.*). Defendants indicated they needed to look at the cases recently cited by plaintiff and provide a written response. (*Id.*). Plaintiff also raised the issue of the *Cervantes* transcripts and discovery responses, stating the request met threshold relevance requirements and should not be hard for defendants to comply with, given that the case was still active. (*Id.*). Defendants responded that the claims were different, that plaintiff never worked for the defendant in that case (CRST Expedited, a named defendant here), and that some of the documents had been archived and there would be a cost to restore them. (*Id.*). Defendants stated they had good caselaw support for their position that a party could not obtain discovery wholesale from another case, but rather, must make targeted requests. (*Id.*). Plaintiff responded that he had made targeted requests and noted he was not asking for everything produced in *Cervantes* as defendants made it seem. (*Id.*). The Court noted the parties needed to further discuss

5

both discovery disputes. (*Id.*). The Court did advise that to the extent defendants agreed certain *Cervantes* material was relevant, it should be produced. (*Id.*).

Plaintiff sent a deficiency letter on April 30, 2025, noting that defendants had agreed to follow-up in writing about the class name issue (and other issues) after the meet-and-confer calls. (Doc. 76-10). Plaintiff set out several discovery disputes he believed were "ripe," including "that Defendants refuse to produce class member names and contact information." (*Id.*). Plaintiff also said he received no response to the April 1, 2025 email with cases to support his request for the *Cervantes* materials, and therefore would "assume we are at an impasse on these requests as well." (*Id.*). Plaintiff asked defendants to let counsel know if incorrect. (*Id.*).

Defendants responded by letter on May 8, 2025. (Doc. 76-11). Defendants stated they "would be willing to produce an anonymized list of putative class members" but would not provide "identifying or contact information prior to class certification." (*Id.*). Defendants noted the parties agreed to exchange supporting authority; they cited cases to support their position, requesting plaintiff do the same. (*Id.*). Defendants also stated they would stand on their objections to producing the *Cervantes* materials, distinguishing the cases cited by plaintiff. (*Id.*).

The parties spoke by phone on May 16, 2025. (Docs. 76, 76-2). For putative class members, defendants proposed assigning them an identification number, but they would not use identification numbers in emails, and could not confirm whether they would apply the identification number to complaints, exit interviews, and "other more formal materials." (*Id.*). According to plaintiff, during the phone call, defendants confirmed they were at an impasse regarding the discoverability of class member contact information and the *Cervantes* materials. (*Id.*).

Plaintiff sent an email follow-up on May 19, 2025. (Doc. 76-12). Plaintiff objected to defendants redacting class member names or contact information from

document productions.  (*Id.*).  Plaintiff cited cases he argued supported pre-certification discovery of class member contact information.  Plaintiff suggested it was unfair for defendants to have unilateral access to putative class members as potential witnesses.  (*Id.*).  Plaintiff additionally argued that defendants' redactions would make the documents less useable and make it harder to track class members across multiple documents, since defendants intended to replace names with litigation numbers in some instances but not others.  (*Id.*).

On May 28, 2025, defendants responded.  (Doc. 76-13).  Defendants noted their understanding "that Plaintiff contends that class member contact information is generally discoverable without any additional showing."  (*Id.*).  Defendants disagreed plaintiff's cited cases "establish[ed] a blanket rule of discoverability."  (*Id.*).  Defendants stated they maintained their objections because "Plaintiff has not articulated a specific showing of why class member contact information is necessary or how it relates to the Rule 23 analysis."  (*Id.*).  Defendants proposed "a potential middle ground" of producing "contact information related to a small sample of drivers who entered into lease purchase agreements with CRST Specialized only."  (*Id.*).  In terms of redactions, defendants stated they were "still assessing the feasibility of applying consistent litigation ID numbers across all document types, including emails, complaints, and exit interviews."  (*Id.*).  Defendants noted this approach might not work for emails with BCC email strings, so they asked whether plaintiff would "agree that anonymizers are unnecessary for BCC emails" and "need not be separately anonymized."  (*Id.*).

On May 30, 2025, the parties submitted a joint notice of issues to discuss at an upcoming status conference.  (Doc. 75).  Plaintiff indicated the parties were at an impasse over class contact information and the *Cervantes* documents, so plaintiff anticipated filing a motion to compel.  (*Id.*).  Defendants disagreed that these disputes were ripe, stating that "continued discussions can resolve many issues."  (*Id.*).  Defendants stated plaintiff

had not shown particular need for class contact information pre-certification nor cited any caselaw supporting his position (that such discovery is automatic). (*Id.*). Defendants also noted they had offered several compromises—producing anonymized documents, providing a sampling of class member data for CRST Specialized—but plaintiff had not budged from its position. (*Id.*). As for the *Cervantes* materials, defendants stated they were "willing to provide certain discovery relevant to Plaintiff's claims from the *Cervantes* case," and they have "worked to compile those specific type of documents identified in Plaintiff's requests." (*Id.*). But defendants continued to assert that plaintiff's "sweeping" request was inappropriate. (*Id.*).

Plaintiff filed his motion to compel on June 2, 2025. (Doc. 76). Judge Mahoney held a status conference with the parties the next day. (Doc. 82). In connection with talking about issues with ESI, plaintiff noted he had not yet received even the anonymized data defendants had agreed to produce. (*Id.*). Judge Mahoney noted that defendants had suggested sampling class members and asked plaintiff about that compromise. Plaintiff responded that he did not remember discussing sampling as an option. (*Id.*). Defendants noted they offered sampling as part of a written response shortly before plaintiff filed the motion to compel. (*Id.*). Judge Mahoney noted the parties could further discuss sampling. (*Id.*). Judge Mahoney asked whether plaintiff wanted to discuss the *Cervantes* discovery dispute, and plaintiff noted defendants had not yet responded to the motion to compel; defendants did not otherwise raise the issue.

### III.    *DEFENDANTS' OBJECTIONS*

On July 16, 2025, Judge Mahoney entered an order requiring (a) defendants to provide putative class members' names, the CRST entity they drove for, and the dates they drove for defendants, (and additionally their contact information only if defendants intend to rely on the information obtained from putative members in opposing plaintiff's certification motion) and (b) defendants to produce the requested materials from the

8

*Cervantes* case (N.D. Iowa Case No. 20-CV-75). (Doc. 89, at 15, 18). Regarding the putative class information, defendants argue compelling discovery is a misapplication of Rule 26 and permits "improper representative shopping." (Doc. 91, at 12). Defendants offer consistent anonymization of the information—i.e., assigning each person a number which is consistent across all materials—or a prohibition on the plaintiff from using the names to solicit new clients or identify class representatives, as alternatives. (*Id.*, at 14–16). Defendants also object to the production of material from *Cervantes*, reasoning that plaintiff has no connection to CRST Expedited, the defendant in *Cervantes*, and is not a member of the class in *Cervantes*. (*Id.*, at 16–18). Defendants argue that Judge Mahoney's resolution therefore permits improper tag-along discovery because plaintiff is not able to credibly represent individuals who contracted exclusively with CRST Expedited. (*Id.*). In the event defendants are required to produce the requested material from *Cervantes*, they request that plaintiff obtain copies of any deposition transcripts from the respective court reporting services and pay any associated costs. (*Id.*, at 18 n.7).

## IV. STANDARD OF REVIEW

A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1042 (S.D. Iowa 2010). A ruling is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Haviland*, 692 F. Supp. 2d at 1043 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is contrary to law when "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1092 (N.D. Iowa 2008) (quotations omitted). Parties are required to "present

9

all of [their] arguments to the magistrate judge, lest they be waived." *Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012).

## *V.    DISCUSSION*

The Court is not persuaded by defendants' arguments.  Defendants raise several new arguments and alternative remedies which they did not raise before Judge Mahoney. The Court will not address those arguments or alternative remedies.  The arguments on the merits which are properly before the Court are, appropriately, quite similar to the arguments the parties made before Judge Mahoney. The Court has reviewed the arguments and Judge Mahoney's order, and is satisfied that Judge Mahoney got it right. At the very least, her holdings were not clearly erroneous or contrary to law.  There is no need here for the Court to expand this order and provide a detailed analysis—the Court could not put it better than Judge Mahoney did.  Instead, the Court will overrule defendants' objections for the reasons stated by Judge Mahoney in her order.  (*See* Doc. 89).

## *VI.    CONCLUSION*

For the reasons stated, the Court **overrules** defendants' objections.  (Doc. 91). Defendants must produce by the close of business on **October 3, 2025** (1) a list of putative class members' names, the dates they drove for CRST, and the CRST entity they drove for; and (2) the requested materials from the *Cervantes* case.  By that same date, CRST must disclose class contact information or else be precluded from relying on information obtained from its own contact with putative class members to oppose class certification.

**IT IS SO ORDERED** this 11th day of September, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

10