IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually, )
and on behalf of all others )
similarly situated, )
)
Plaintiff, )
)
vs. ) 24-CV-0082
)
CRST EXPEDITED, INC., et al., )
)
Defendants. )

* * * * *

TELEPHONIC STATUS CONFERENCE,

HELD BEFORE THE HON. KELLY K.E. MAHONEY,

on the 8th day of October, 2025, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, commencing at 4:01 p.m., and prepared from an audio recording by Patrice A. Murray, Certified Shorthand Reporter.

Transcript Ordered: 10/9/25
Transcript Completed: 10/16/25

Patrice A. Murray, CSR, RMR, FCRR
Court Reporter
PO Box 10541
Cedar Rapids, Iowa 52410
PAMurrayReporting@gmail.com

*Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.*

2

**APPEARANCES:**

**For the Plaintiff:**

ATTORNEY J. BARTON GOPLERUD
Shindler, Anderson, Goplerud & Weese, PC
5015 Grand Ridge Drive
Suite 100
West Des Moines, IA 50265-5749

ATTORNEY MICHAEL VON KLEMPERER
Fegan Scott LLC
1763 Columbia Road N.W.
Suite 100
Washington, DC 20009

ATTTORNEY GEORGIA J. ZACEST
Fegan Scott LLC
708 Main Street
10th Floor
Houston, TX 77002

**For the Defendants:**

ATTORNEY ANGELA S. CASH
Scopelitis Garvin Light Hanson & Feary PC
10 West Market Street
Suite 1400
Indianapolis, IN 46204

ATTORNEY ANDREW J. IRELAND
Scopelitis Garvin Light Hanson & Feary PC
10 West Market Street
Suite 1400
Indianapolis, IN 46204

*Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.*

(The following transcript was prepared from an audio recording.)

* * * * *

(The following proceedings were held in chambers before the Honorable Kelly K.E. Mahoney.)

* * * * *

P R O C E E D I N G S

THE COURT: Good afternoon. We're here in the matter of Kelchner versus CRST Expedited, Inc., et al. This is case number 24-CV-82.

On behalf of Harley Kelchner, do we have Barton Goplerud?

MR. GOPLERUD: Yes, Your Honor.

THE COURT: Are you expecting anyone else on behalf of plaintiffs?

MR. GOPLERUD: Yes, Your Honor. My co-counsel are both on.

THE COURT: Is that Mr. Von Klemperer?

MR. VON KLEMPERER: Yes, Your Honor. This is Mike Von Klemperer. And I have with me Georgia Zacest from my firm as well.

THE COURT: All right. And anyone else you are expecting, Mr. Von Klemperer or Mr. Goplerud?

MR. VON KLEMPERER: I don't believe so, for the plaintiffs.

MR. GOPLERUD: No, Your Honor.

THE COURT: Okay. For the defendants, do we have Mr. Wolle?

MS. CASH: I don't believe so, Your Honor. This is Angela Cash, and Andrew Ireland is on. I don't believe Mr. Wolle is joining. Mr. Hanson may be joining, but we can certainly proceed.

THE COURT: All right. So we are here at the request of the parties for a status conference to discuss discovery, case schedule, and a forthcoming motion to amend complaint and the impact that might have in the case.

So, Mr. -- excuse me -- I guess, Mr. Von Klemperer, you sent the email. I'll start with you.

MR. VON KLEMPERER: Yes, Your Honor. Good afternoon. Thank you. So there's -- there's kind of two buckets of things that we'd like to discuss today. One is the case schedule, and one is the -- the forthcoming motion to amend and the impact that might have.

So I'll start with the case schedule. As you know, the fact discovery is scheduled to close in this case in February of 2026. At the time that the parties agreed to that schedule, we had also stipulated that the defendants would complete their document production by May 21st. The end of fact discovery was contingent on them actually completing production by that date and -- so that we would

have time to take depositions after the production was complete. Of course, that didn't happen here.

First, the Court granted the defendants' request to extend their deadline to June 20th. And then, when they failed to meet that deadline, the Court moved it again to August 25th. Unfortunately, the defendants haven't met that deadline either and have continued producing documents throughout September, and we believe there's at least one additional production on the way. In fact, in September alone they produced over 4,000 documents, which is over 35 percent of their total production so far.

And so, Your Honor, we approached them, and, you know, we said, look, we could -- we would be well within our rights to move for sanctions for missing court deadlines. We don't want to do that. Instead, we propose simply taking the same amount of time from the original deadline of May 21st to complete the document production until the close of fact discovery and moving the schedule by the same number of days. And so what we originally agreed to is 280 days from the completion of production until the end of fact discovery, and we suggested moving the current schedule by the same amount. So that would be a five-month extension from the current February deadline, which would put us in around the middle of July. And this way we would have enough time to complete review of the documents, to take

depositions, to take any necessary follow-up discovery.

We had that meet and confer with them last week, and they sent us an email a few days ago in which they agreed to only a 60-day extension. They didn't provide any discovery -- they didn't provide an explanation for that proposal, but we don't think it's adequate. We originally agreed to this amount of time between the completion of production and the end of fact discovery, and we think we should stick with what the parties originally agreed.

THE COURT: Okay. And I guess, Ms. Cash, what's your position?

MS. CASH: Your Honor, thank you. Our position is that we moved forward with the discovery as best as we've been able. And with regards to the months -- excuse me, the months requested, the five months, our position is that this is a discovery cutoff date that isn't happening until February of 2026, so we have multiple months to go here. It's the end of February, so we've got four months before that even happens. And so to extend it now by an additional five months would be premature and unnecessary to address concerns that the plaintiff's counsel raised with us about whether they would be able to get depositions conducted that they needed. We offered a 60-day extension, and then, you know, that would put us out until the end of April. And we think at this point it's premature to be looking at anything

farther than that.

THE COURT: All right. I guess, Mr. Von Klemperer -- well, I guess let me back up.

First, Ms. Cash, when is document production going to be complete, since it's now October and it's still not done?

MS. CASH: Your Honor, I appreciate that. We have one set of documents that needs to have contact information redacted. We're using a third party to assist us with that. We have that process in place and was being done when the Court's ruling on the discovery objection with regard to the production of the names of the class members was entered, and so that process had to be tweaked to address that. And then we've been working with them, but the practice has not been flawless. And so we got an update today, and, unfortunately, the practice is still not working appropriately, so we're going to pivot to a different way to get that information redacted. And we anticipate that we would have that information redacted and provided within about the next three to four business days.

THE COURT: Okay. And --

MS. CASH: And that's a set of about 4,000 documents, I believe, including Excel spreadsheets.

THE COURT: Okay. All right.

Mr. Von Klemperer -- and let me just weigh in at this point. I think certainly the discovery deadline -- the

completion of the discovery deadline's probably going to have to get pushed, and that is due to the fact that defendants have completely just kind of bumbled discovery in this case. Frankly, I'm inclined to give plaintiffs the time they think they need. But at this point, you know, we don't close discovery right now until February. It is only October, so I think the parties can have a little more time to work through this. And I'm hesitant to, frankly, move any discovery deadlines until actually document production is completed by defendants, because even setting deadlines, they're blown.

And as far as the deadline in August, there wasn't a motion to extend that deadline, so defendants are not in compliance with that. But I think it may be premature to move the deadline at this point.

So, I guess, what else would you like to talk about on that, Mr. Von Klemperer?

MR. VON KLEMPERER: Well, Your Honor, I guess we'd be happy to come back to you in a few weeks once the production is complete, and we could potentially just have more discussions with the defendants about what the schedule looks like. You know, I would just note -- you know, reiterate that the current deadline, of course, was set with the expectation that document production would be done in May, and here we are in October and we still don't know when

it's going to be done. And I'm just hearing for the first time that there's going to be another 4,000 documents produced. That's a substantial volume of documents, and it's a substantial percentage of the total document production. So, of course, it's going to take time to review those and prepare for depositions. And so I think --

THE COURT: Well --

MR. VON KLEMPERER: -- we'll be happy to come back to the Court --

THE COURT: Sure.

MR. VON KLEMPERER: -- in a few weeks if you prefer.

THE COURT: That makes sense.

I guess, Ms. Cash, what is the harm in going ahead and extending the discovery completion deadline by five months?

MS. CASH: Your Honor, I think that this is a case that needs to keep moving. We have been --

(Laughter.)

THE COURT: Okay.

MS. CASH: -- producing documents -- may I address just one thing? I've certainly been taken to the woodshed multiple times for not getting the things produced as quickly as we had hoped. I see there's also some responsibility on plaintiff's counsel because we produced documents and have heard through the process that they

haven't even reviewed them. So, for example, we produced Mr. Gannon's documents in production, and I think that they revealed to us in a conversation that they hadn't looked at them 30 days after we had produced them. So I think that there's responsibility on both sides. It is a document-intensive case now, and it's obviously going to take some time to complete. We don't believe that extending these deadlines, which would put us well into 2027 with other deadlines that are in the case, is necessary or appropriate at this time.

THE COURT: Okay. Anything else, Mr. Von Klemperer?

MR. VON KLEMPERER: Well, Your Honor, I could move on to my next topic. I think coming back to the Court in a few weeks once the production is complete makes sense on the schedule.

THE COURT: And that's fine. And if it is more efficient to go ahead and move a deadline now, I am happy to consider that. That might be more efficient for the parties, unless, Mr. Von Klemperer, you do prefer to kind of wait and see what this final production looks like.

MR. VON KLEMPERER: Well, I'm a little hesitant, Your Honor, just given that, you know, we've been promised to receive this production for several weeks now and we still don't have it. If it does, in fact, come next -- in

***Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.***

four business days, I think we'd be in a position to propose a very firm schedule at that point.

THE COURT: Okay.

MR. VON KLEMPERER: So it may make sense to just come back to the Court once the production is complete.

THE COURT: That makes sense.

MR. VON KLEMPERER: Okay.

THE COURT: Okay. And I -- I do take Ms. Cash's point that it took defendants 30 days or more to start looking at the Gannon documents -- if it wasn't already reflected in the record, I did laugh out loud when Ms. -- or guffaw I guess is maybe the better word -- when Ms. Cash talked about the case needing to move forward, and that is despite delays caused by plaintiff, defendants did not even start to gather discovery until basically the discovery deadline was there. So I'm really hesitant to not give plaintiff the time they think they need -- he needs to conduct discovery due to the delays caused by defendants. But we'll wait and address that after document production is indeed completed, especially in light of the volume of additional production that is still anticipated.

Anything else we need to talk about on the deadline, Mr. Von Klemperer?

MR. VON KLEMPERER: No, Your Honor. I think I would just note for the record that I don't recall the

specific conversation that Ms. Cash was referencing about the Gannon documents. We've been very actively reviewing these documents as they come in.

THE COURT: Okay. Anything else on that, Ms. Cash?

MS. CASH: Your Honor, I think that the next topic, the amendment of the complaint and the motion practice that relates to that may also have an impact on the deadlines, so perhaps addressing the deadlines with the next topic may be (unintelligible audio) approach as well.

THE COURT: Okay. Mr. Von Klemperer, do you want to take the lead on that or --

MR. VON KLEMPERER: Yes, Your Honor. I appreciate it. So, as Your Honor may recall, after the plaintiff filed its -- the complaint in August of last year, three of the four defendants answered the complaint. The fourth defendant, Specialized, moved to dismiss but raised only personal jurisdiction grounds, and when that was denied, also answered the complaint. We then litigated the case for about a year, and both sides have produced a tremendous amount of discovery. We've learned a lot.

But we were surprised when the defendants filed a motion for judgment on the pleadings in September directed to a complaint we filed over a year ago. They argue that the complaint wasn't pled with particularity, and they

raised for the first time that plaintiff Kelchner can't represent a class involving Expedited drivers and so his class allegations should be stricken. And so we said, you know, that's fine, we'll amend the complaint; we've learned a lot.

We met and conferred then last week. We told them we plan to amend. We provided the proposed amended complaint to them yesterday. I'm sure they haven't had a chance to fully review it and digest it yet. But I'll just note for the record that the original complaint was 15 pages. The new complaint is 45 pages. And so we've added about 30 pages of additional facts that we've learned in discovery. And we also plan to add two additional named plaintiffs. They challenge plaintiff Kelchner's adequacy to represent class. That includes Expedited drivers and these two named plaintiffs who drove for Expedited. So we think that resolves that issue.

And when we met and conferred with them, we asked them two questions, basically: Will they stipulate to the amendment? And, if not, will they at least agree to stay briefing on the motion for judgment on the pleadings until plaintiff's motion to amend is decided?

We think that makes a lot of sense for everyone, to stay the briefing. If the amendment is granted, it's going to moot the motion for judgment on the pleadings because

that motion is directed to a pleading that will then have been superseded. And many of our amendments actually would moot many of the individual arguments they raise in that motion as well; for example, their particularity arguments. And so we don't think it's a productive use of the parties' time, to be briefing a motion that might well be moot.

We haven't heard back from them on their position on either of those questions, whether they would consent to the amendment, and, if not, whether they would agree to at least stay the briefing on the motion for judgment on the pleadings in the interim. If they won't agree to that, I think the plaintiffs would ask the Court to enter an order to that effect. So we would be happy to submit a formal motion on that, if Your Honor would believe that's necessary or if you believe that's something that Judge Williams would need to decide; we could get that on file very promptly, if necessary.

THE COURT: You mean a written motion to stay briefing?

MR. VON KLEMPERER: Yes.

THE COURT: Okay. I guess, Ms. Cash, what's the defendants' position on the briefing -- or request to stay briefing?

MS. CASH: Thank you, Your Honor. We initially granted the three-week extension of time for the plaintiff

to respond to the motion for judgment on the pleadings. And that response is now due on the 14th. And we did have a meet-and-confer call with them where they explained to us that they intended to amend the complaint, I believe is the first time that we heard of that, and their position that they believe that it will moot many of the arguments in the motion for judgment on the pleadings. We asked them if they could a provide a copy of the amended complaint. They advised initially that it could take longer to get that done than the deadline. And we said, well, you know, we can't really just do it based upon your representation. We need to review it and make an informed decision on whether we think it would be appropriate to consider any changes to the motion for judgment on the pleadings, which is something that our client is interested in having ruled upon. And so we did receive it yesterday and have not had a chance to review it in great detail but are certainly working on that.

I don't think in the abstract that we can agree to their premise that it will moot the motion for judgment on the pleadings. I think we need to have an opportunity to review that. And we also believe that it would potentially be appropriate for the motion for leave to amend and the motion for judgment on the pleadings to be reviewed in tandem, so a completely briefed set of motions might make sense. So we need some more time to be able to evaluate

***Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.***

that.

I wonder if one proposal would be to give them a further extension on their response to the motion for judgment on the pleadings.

THE COURT: Okay. And, I guess, how long of an extension are you thinking of, or is it easiest just to do until further order of the Court?

MS. CASH: I'm sorry, Your Honor. I couldn't understand you.

THE COURT: Sure. If we just agree to a -- another extension at this point to give you time to review the amended complaint, as well you should be able to do, do you have a set time period you're thinking at this point we should extend the briefing deadline by or, I guess -- that's the question, I guess.

MS. CASH: Sure. I'm sorry I didn't get it the first time. I think they've asked us to stipulate to some or all of the amended complaint, and so I think if we -- if we looked at a two-week further extension, that would be appropriate. That would, I think, put their response due on the 28th.

THE COURT: Okay. Mr. Von Klemperer, what are your thoughts?

MR. VON KLEMPERER: We -- a limited extension is obviously helpful, but I think the underlying premise of

***Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.***

our -- of our position is that it -- it just doesn't make sense to brief a motion for judgment on the pleadings at all if -- if the motion -- until the motion to amend is decided, because that -- that pleading will obviously supersede the pleading that the motion is directed to. A two-week extension is certainly helpful, and we want to give them as much time as they need to review the amended complaint that we proposed to them, so I suppose in the interim that's better than nothing. And maybe we can come back to the Court in a week or so after we've had further discussion with them.

THE COURT: Here's what I think -- here's what I'm going to just do on this, is I am going to extend the plaintiff's response deadline or briefing deadline on the pending motion. I will reset it by separate order. And again we have another moving target. The motion to amend has not been filed yet, and certainly defendants need time to review the proposed amended complaint before they can provide what their position may be on the amendment. So as part of that, I think once they've had a time to look -- to look at that and take a position on if they oppose or don't oppose amending the complaint, the parties will be in a better position to address timing for briefing and whether it should be stayed or not. So that can be, I think, better addressed at the time when the amended complaint's ready to

be filed. So -- and at this point I'm just going to stay briefing, I guess, with the understanding that that motion to amend will be filed within two weeks. I'm not going to really set a deadline for that or hold you to it, but, of course, I don't want the case just sitting there because it's not been filed. I think that makes more sense than extending it two weeks and then coming back and having to discuss this again. I want the parties to be able to confer about it once they make -- have more informed conferral now that defendants have received the proposed amended complaint just yesterday. So I will -- I'm going to continue the deadline or extend it, but I'll reset it by separate order.

Any additional thoughts on that, Ms. Cash?

MS. CASH: No, Your Honor.

THE COURT: And Mr. Von Klemperer?

MR. VON KLEMPERER: No, Your Honor. We appreciate the Court's input and involvement, and we're looking forward to hearing back from the defendants. And once we hear, if they don't consent, you know, we're happy to move to amend on short notice, so that shouldn't be a problem.

THE COURT: Okay. What else do we need to talk about in the case, Mr. Von Klemperer?

MR. VON KLEMPERER: Those are the two issues that I wanted to discuss. We appreciate your time, Your Honor.

THE COURT: Sure.

***Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.***

Ms. Cash, anything you would like -- anything more we need to discuss?

MS. CASH: Your Honor, just for clarification and moving forward, is the motion for (unintelligible audio) to amend something that's before you, or is that a motion that goes to Judge Williams?

THE COURT: Which motion? Is that the motion to amend?

MS. CASH: Yes, ma'am.

THE COURT: Yeah, usually it would be something I would handle.

MS. CASH: That's what I figured. Okay.

THE COURT: No, good question, though. Yeah.

MS. CASH: Okay.

THE COURT: Anything else, Ms. Cash?

MS. CASH: No, Your Honor. Thank you.

THE COURT: Anything else, Mr. Von Klemperer?

MR. VON KLEMPERER: No, Your Honor. Thank you for your time.

THE COURT: All right. Thank you. That will conclude this status conference.

(Proceedings concluded at 4:24 p.m.)

* * * * *

(This concludes the transcription of the audio recording.)

C E R T I F I C A T E

I, Patrice A. Murray, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that at the time and place heretofore indicated, a status conference was held before the Honorable Kelly K.E. Mahoney; that I transcribed from an audio recording to the best of my ability the proceedings of said status conference, given the limitation of using a digital-recording system; and that the foregoing transcript is a true record of all proceedings had on the taking of said status conference at the above time and place.

I further certify that I am not related to or employed by any of the parties to this action, and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have set my hand this 16th day of October, 2025.

/s/ Patrice A. Murray

Patrice A. Murray, CSR, RMR, FCRR
Court Reporter
PO Box 10541
Cedar Rapids, Iowa 52410

## /

**/s** [1] - 20:13

## 1

**10** [2] - 2:15, 2:18
**10/16/25** [1] - 1:18
**10/9/25** [1] - 1:18
**100** [2] - 2:4, 2:7
**10541** [2] - 1:24, 20:14
**10th** [1] - 2:10
**1400** [2] - 2:15, 2:18
**14th** [1] - 15:2
**15** [1] - 13:10
**16th** [1] - 20:10
**1763** [1] - 2:7

## 2

**20009** [1] - 2:8
**2025** [2] - 1:14, 20:11
**2026** [2] - 4:21, 6:17
**2027** [1] - 10:8
**20th** [1] - 5:4
**21st** [2] - 4:23, 5:17
**24-CV-0082** [1] - 1:6
**24-CV-82** [1] - 3:10
**25th** [1] - 5:6
**280** [1] - 5:19
**28th** [1] - 16:21

## 3

**30** [3] - 10:4, 11:9, 13:11
**320** [1] - 1:15
**35** [1] - 5:11

## 4

**4,000** [3] - 5:10, 7:21, 9:2
**45** [1] - 13:11
**46204** [2] - 2:16, 2:19
**4:01** [1] - 1:15
**4:24** [1] - 19:22

## 5

**5015** [1] - 2:4
**50265-5749** [1] - 2:5
**52410** [2] - 1:24, 20:15

## 6

**60-day** [2] - 6:4, 6:23

## 7

**708** [1] - 2:10
**77002** [1] - 2:11

## 8

**8th** [1] - 1:14

## A

**ability** [1] - 20:4
**able** [5] - 6:14, 6:22, 15:25, 16:12, 18:8
**abstract** [1] - 15:18
**action** [2] - 20:8, 20:9
**actively** [1] - 12:2
**actually** [3] - 4:24, 8:9, 14:2
**add** [1] - 13:13
**added** [1] - 13:11
**additional** [6] - 5:9, 6:19, 11:21, 13:12, 13:13, 18:13
**address** [5] - 6:20, 7:12, 9:20, 11:19, 17:23
**addressed** [1] - 17:25
**addressing** [1] - 12:9
**adequacy** [1] - 13:14
**adequate** [1] - 6:6
**advised** [1] - 15:9
**afternoon** [2] - 3:8, 4:15
**ago** [2] - 6:3, 12:24
**agree** [5] - 13:20, 14:9, 14:11, 15:18, 16:10
**agreed** [5] - 4:21, 5:19, 6:3, 6:7, 6:9
**ahead** [2] - 9:14, 10:18
**al** [2] - 1:7, 3:9
**allegations** [1] - 13:3
**alone** [1] - 5:10
**already** [1] - 11:10
**also** [6] - 4:22, 9:23, 12:8, 12:19, 13:13, 15:21
**amend** [13] - 4:10, 4:18, 13:4, 13:7, 13:22, 15:4, 15:22, 17:3, 17:16, 18:3, 18:19, 19:5, 19:8
**amended** [8] - 13:7, 15:8, 16:12, 16:18, 17:7, 17:18, 17:25, 18:10
**amending** [1] - 17:22
**amendment** [5] - 12:7, 13:20, 13:24, 14:9, 17:19
**amendments** [1] - 14:2
**amount** [4] - 5:16, 5:22, 6:7, 12:21
**Anderson** [1] - 2:3
**ANDREW** [1] - 2:17
**Andrew** [1] - 4:5
**ANGELA** [1] - 2:14
**Angela** [1] - 4:5
**answered** [2] - 12:16, 12:19
**anticipate** [1] - 7:17
**anticipated** [1] - 11:21
**anyone** [2] - 3:14, 3:22
**anything** [8] - 6:25, 10:11, 11:22, 12:4, 19:1, 19:15, 19:17
**APPEARANCES** [1] - 2:1
**appreciate** [4] - 7:6, 12:13, 18:16, 18:24
**approach** [1] - 12:10
**approached** [1] - 5:12
**appropriate** [4] - 10:10, 15:13, 15:22, 16:20
**appropriately** [1] - 7:16
**April** [1] - 6:24
**argue** [1] - 12:24
**arguments** [3] - 14:3, 14:4, 15:6
**assist** [1] - 7:8
**attorney** [1] - 20:8
**ATTORNEY** [4] - 2:3, 2:6, 2:14, 2:17
**ATTTORNEY** [1] - 2:9
**audio** [6] - 1:16, 3:1, 12:10, 19:4, 19:24, 20:4
**August** [3] - 5:6, 8:12, 12:15

## B

**Barton** [1] - 3:11
**BARTON** [1] - 2:3
**based** [1] - 15:11
**basically** [2] - 11:15, 13:19
**BEFORE** [1] - 1:13
**behalf** [3] - 1:3, 3:11, 3:15
**believe** [11] - 3:24, 4:4, 4:5, 5:8, 7:22, 10:7, 14:14, 14:15, 15:4, 15:6, 15:21
**best** [2] - 6:13, 20:4
**better** [4] - 11:12, 17:9, 17:23, 17:24
**between** [1] - 6:7
**blown** [1] - 8:11
**Box** [2] - 1:24, 20:14
**brief** [1] - 17:2
**briefed** [1] - 15:24
**briefing** [11] - 13:21, 13:24, 14:6, 14:10, 14:19, 14:22, 14:23, 16:14, 17:14, 17:23, 18:2
**buckets** [1] - 4:16
**bumbled** [1] - 8:3
**business** [2] - 7:19, 11:1

## C

**call** [1] - 15:3
**can't** [2] - 13:1, 15:10
**case** [14] - 3:10, 4:10, 4:11, 4:17, 4:19, 4:20, 8:4, 9:16, 10:6, 10:9, 11:13, 12:19, 18:5, 18:22
**cash** [10] - 6:10, 7:4, 9:14, 11:12, 12:1, 12:5, 14:21, 18:13, 19:1, 19:15
**Cash** [1] - 4:5
**CASH** [17] - 2:14, 4:4, 6:12, 7:6, 7:21, 9:16, 9:20, 12:6, 14:24, 16:8, 16:16, 18:14, 19:3, 19:9, 19:12, 19:14, 19:16
**Cash's** [1] - 11:8
**caused** [2] - 11:14, 11:18
**Cedar** [2] - 1:24, 20:15
**CEDAR** [1] - 1:2
**certainly** [6] - 4:7, 7:25, 9:21, 15:17, 17:6, 17:17
**Certified** [2] - 1:17, 20:2
**certify** [2] - 20:2, 20:7
**challenge** [1] - 13:14
**chambers** [1] - 3:4
**chance** [2] - 13:8, 15:16
**changes** [1] - 15:13
**City** [1] - 1:15
**clarification** [1] - 19:3
**class** [4] - 7:11, 13:2, 13:3, 13:15
**client** [1] - 15:15
**close** [3] - 4:20, 5:17, 8:6
**co** [1] - 3:16
**co-counsel** [1] - 3:16
**Columbia** [1] - 2:7
**come** [6] - 8:19, 9:8, 10:25, 11:5, 12:3, 17:9
**coming** [2] - 10:14, 18:7
**commencing** [1] - 1:15
**complaint** [19] - 4:11, 12:7, 12:15, 12:16, 12:19, 12:24, 12:25, 13:4, 13:7, 13:10, 13:11, 15:4, 15:8, 16:12, 16:18, 17:7, 17:18, 17:22, 18:10
**complaint's** [1] - 17:25
**complete** [9] - 4:23, 5:2, 5:17, 5:25, 7:5, 8:20, 10:7, 10:15, 11:5
**completed** [2] - 8:10, 11:20
**Completed** [1] - 1:18
**completely** [2] - 8:3, 15:24
**completing** [1] - 4:25
**completion** [4] - 5:20, 6:7, 8:1, 9:15
**compliance** [1] - 8:14
**concerns** [1] - 6:21
**conclude** [1] - 19:21
**concluded** [1] - 19:22
**concludes** [1] - 19:24
**conduct** [1] - 11:18

*Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.*

**conducted** [1] - 6:22
**confer** [3] - 6:2, 15:3, 18:8
**conference** [5] - 4:9, 19:21, 20:3, 20:4, 20:6
**CONFERENCE** [1] - 1:12
**conferral** [1] - 18:9
**conferred** [2] - 13:6, 13:18
**consent** [2] - 14:8, 18:19
**consider** [2] - 10:19, 15:13
**contact** [1] - 7:7
**contingent** [1] - 4:24
**continue** [1] - 18:11
**continued** [1] - 5:7
**conversation** [2] - 10:3, 12:1
**copy** [1] - 15:8
**could** [6] - 5:13, 8:20, 10:13, 14:16, 15:8, 15:9
**couldn't** [1] - 16:8
**counsel** [4] - 3:16, 6:21, 9:24, 20:9
**course** [4] - 5:2, 8:23, 9:5, 18:5
**Court** [10] - 1:23, 5:3, 5:5, 9:9, 10:14, 11:5, 14:12, 16:7, 17:10, 20:14
**court** [1] - 5:14
**COURT** [37] - 1:1, 3:8, 3:14, 3:18, 3:22, 4:2, 4:8, 6:10, 7:2, 7:20, 7:23, 9:7, 9:10, 9:13, 9:19, 10:11, 10:17, 11:3, 11:6, 11:8, 12:4, 12:11, 14:18, 14:21, 16:5, 16:10, 16:22, 17:12, 18:15, 18:21, 18:25, 19:7, 19:10, 19:13, 19:15, 19:17, 19:20
**Court's** [2] - 7:10, 18:17
**Courthouse** [1] - 1:14
**CRST** [2] - 1:7, 3:9
**CSR** [2] - 1:23, 20:13
**current** [3] - 5:21, 5:23, 8:23
**cutoff** [1] - 6:16

**D**

**date** [2] - 4:25, 6:16
**days** [7] - 5:19, 6:3, 7:19, 10:4, 11:1, 11:9
**DC** [1] - 2:8
**deadline** [20] - 5:4, 5:5, 5:7, 5:16, 5:23, 7:25, 8:12, 8:13, 8:15, 8:23, 9:15, 10:18, 11:16, 11:22, 15:10, 16:14, 17:14, 18:4, 18:12
**deadline's** [1] - 8:1
**deadlines** [7] - 5:14, 8:9, 8:10, 10:8, 10:9, 12:9
**decide** [1] - 14:16
**decided** [2] - 13:22, 17:3
**decision** [1] - 15:12
**defendant** [1] - 12:17

**Defendants** [2] - 1:8, 2:13
**defendants** [15] - 4:2, 4:22, 5:6, 8:3, 8:10, 8:13, 8:21, 11:9, 11:14, 11:18, 12:16, 12:22, 17:17, 18:10, 18:18
**defendants'** [2] - 5:3, 14:22
**delays** [2] - 11:14, 11:18
**denied** [1] - 12:18
**depositions** [4] - 5:1, 6:1, 6:22, 9:6
**Des** [1] - 2:5
**despite** [1] - 11:14
**detail** [1] - 15:17
**did** [4] - 11:11, 11:14, 15:2, 15:16
**didn't** [4] - 5:2, 6:4, 6:5, 16:16
**different** [1] - 7:16
**digest** [1] - 13:9
**digital** [1] - 20:5
**digital-recording** [1] - 20:5
**directed** [3] - 12:23, 14:1, 17:5
**discovery** [22] - 4:10, 4:20, 4:24, 5:18, 5:21, 6:1, 6:5, 6:8, 6:13, 6:16, 7:10, 7:25, 8:1, 8:3, 8:6, 8:9, 9:15, 11:15, 11:18, 12:21, 13:12
**discuss** [5] - 4:9, 4:16, 18:8, 18:24, 19:2
**discussion** [1] - 17:10
**discussions** [1] - 8:21
**dismiss** [1] - 12:17
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**do** [13] - 3:11, 4:2, 5:15, 10:20, 11:8, 12:11, 15:11, 16:6, 16:12, 17:13, 18:21, 20:2
**document** [8] - 4:23, 5:17, 7:4, 8:9, 8:24, 9:4, 10:6, 11:19
**document-intensive** [1] - 10:6
**documents** [13] - 5:7, 5:10, 5:25, 7:7, 7:22, 9:2, 9:3, 9:20, 9:25, 10:2, 11:10, 12:2, 12:3
**does** [1] - 10:25
**doesn't** [1] - 17:1
**don't** [15] - 3:24, 4:4, 4:5, 5:15, 6:6, 8:6, 8:25, 10:7, 10:25, 11:25, 14:5, 15:18, 17:21, 18:5, 18:19
**done** [5] - 7:5, 7:9, 8:24, 9:1, 15:9
**Drive** [1] - 2:4
**drivers** [2] - 13:2, 13:15
**drove** [1] - 13:16
**due** [4] - 8:2, 11:18, 15:2, 16:20

**E**

**easiest** [1] - 16:6
**effect** [1] - 14:13
**efficient** [2] - 10:18, 10:19
**either** [2] - 5:7, 14:8
**else** [9] - 3:14, 3:22, 8:16, 10:11, 11:22, 12:4, 18:21, 19:15, 19:17
**email** [2] - 4:13, 6:3
**employed** [2] - 20:8, 20:9
**employee** [1] - 20:8
**end** [5] - 4:24, 5:20, 6:8, 6:18, 6:24
**enough** [1] - 5:25
**enter** [1] - 14:12
**entered** [1] - 7:11
**especially** [1] - 11:20
**et** [2] - 1:7, 3:9
**evaluate** [1] - 15:25
**even** [4] - 6:19, 8:10, 10:1, 11:14
**everyone** [1] - 13:23
**example** [2] - 10:1, 14:4
**Excel** [1] - 7:22
**excuse** [2] - 4:12, 6:14
**expectation** [1] - 8:24
**expecting** [2] - 3:14, 3:23
**EXPEDITED** [1] - 1:7
**Expedited** [4] - 3:9, 13:2, 13:15, 13:16
**explained** [1] - 15:3
**explanation** [1] - 6:5
**extend** [6] - 5:4, 6:19, 8:13, 16:14, 17:13, 18:12
**extending** [3] - 9:15, 10:7, 18:7
**extension** [10] - 5:22, 6:4, 6:23, 14:25, 16:3, 16:6, 16:11, 16:19, 16:24, 17:6

**F**

**fact** [8] - 4:20, 4:24, 5:9, 5:18, 5:20, 6:8, 8:2, 10:25
**facts** [1] - 13:12
**failed** [1] - 5:5
**far** [2] - 5:11, 8:12
**farther** [1] - 7:1
**FCRR** [2] - 1:23, 20:13
**Feary** [2] - 2:14, 2:17
**February** [5] - 4:21, 5:23, 6:17, 6:18, 8:6
**Federal** [1] - 1:14
**Fegan** [2] - 2:6, 2:9
**few** [4] - 6:3, 8:19, 9:11, 10:15
**figured** [1] - 19:12
**file** [1] - 14:16

**filed** [7] - 12:14, 12:22, 12:24, 17:17, 18:1, 18:3, 18:6
**final** [1] - 10:21
**financially** [1] - 20:9
**fine** [2] - 10:17, 13:4
**firm** [2] - 3:21, 11:2
**first** [6] - 5:3, 7:4, 9:1, 13:1, 15:5, 16:17
**five** [4] - 5:22, 6:15, 6:20, 9:15
**five-month** [1] - 5:22
**flawless** [1] - 7:14
**Floor** [1] - 2:10
**follow** [1] - 6:1
**follow-up** [1] - 6:1
**following** [2] - 3:1, 3:4
**FOR** [1] - 1:1
**foregoing** [1] - 20:5
**formal** [1] - 14:13
**forthcoming** [2] - 4:10, 4:17
**forward** [4] - 6:13, 11:13, 18:17, 19:4
**four** [4] - 6:18, 7:19, 11:1, 12:16
**fourth** [1] - 12:16
**frankly** [2] - 8:4, 8:8
**from** [9] - 1:16, 3:1, 3:20, 5:16, 5:20, 5:23, 14:7, 18:18, 20:4
**fully** [1] - 13:9
**further** [6] - 16:3, 16:7, 16:19, 17:10, 20:7, 20:8

**G**

**Gannon** [2] - 11:10, 12:2
**Gannon's** [1] - 10:2
**Garvin** [2] - 2:14, 2:17
**gather** [1] - 11:15
**Georgia** [1] - 3:20
**GEORGIA** [1] - 2:9
**get** [6] - 6:22, 7:17, 8:2, 14:16, 15:9, 16:16
**getting** [1] - 9:22
**give** [5] - 8:4, 11:16, 16:2, 16:11, 17:6
**given** [2] - 10:23, 20:4
**good** [3] - 3:8, 4:14, 19:13
**GOPLERUD** [4] - 2:3, 3:13, 3:16, 4:1
**Goplerud** [3] - 2:3, 3:12, 3:23
**Grand** [1] - 2:4
**granted** [3] - 5:3, 13:24, 14:25
**great** [1] - 15:17
**grounds** [1] - 12:18
**guess** [13] - 4:12, 6:10, 7:2, 7:3, 8:16, 8:18, 9:14, 11:12, 14:21, 16:5, 16:14, 16:15,

18:2
**guffaw** [1] - 11:12

**H**

**had** [10] - 4:22, 6:2, 7:12, 9:23, 10:4, 13:8, 15:16, 17:10, 17:20, 20:5
**hadn't** [1] - 10:3
**hand** [1] - 20:10
**handle** [1] - 19:11
**Hanson** [3] - 2:14, 2:17, 4:6
**happen** [1] - 5:2
**happening** [1] - 6:16
**happens** [1] - 6:19
**happy** [5] - 8:19, 9:8, 10:18, 14:13, 18:19
**HARLEY** [1] - 1:3
**Harley** [1] - 3:11
**harm** [1] - 9:14
**has** [2] - 7:13, 17:17
**haven't** [4] - 5:6, 10:1, 13:8, 14:7
**having** [2] - 15:15, 18:7
**hear** [1] - 18:18
**heard** [3] - 9:25, 14:7, 15:5
**hearing** [2] - 9:1, 18:18
**held** [2] - 3:4, 20:3
**HELD** [1] - 1:13
**helpful** [2] - 16:25, 17:6
**hereby** [1] - 20:2
**hereto** [1] - 20:9
**heretofore** [1] - 20:3
**hesitant** [3] - 8:8, 10:22, 11:16
**hold** [1] - 18:4
**HON** [1] - 1:13
**Honor** [26] - 3:13, 3:16, 3:19, 4:1, 4:4, 4:14, 5:12, 6:12, 7:6, 8:18, 9:16, 10:13, 10:23, 11:24, 12:6, 12:13, 12:14, 14:14, 14:24, 16:8, 18:14, 18:16, 18:24, 19:3, 19:16, 19:18
**Honorable** [2] - 3:5, 20:3
**hoped** [1] - 9:23
**Houston** [1] - 2:11

**I**

**IA** [1] - 2:5
**impact** [3] - 4:11, 4:18, 12:8
**IN** [4] - 1:1, 2:16, 2:19, 20:10
**Inc** [1] - 3:9
**INC** [1] - 1:7
**inclined** [1] - 8:4
**includes** [1] - 13:15
**including** [1] - 7:22
**indeed** [1] - 11:20
**Indianapolis** [2] - 2:16, 2:19
**indicated** [1] - 20:3
**individual** [1] - 14:3
**individually** [1] - 1:3
**information** [3] - 7:7, 7:17, 7:18
**informed** [2] - 15:12, 18:9
**initially** [2] - 14:24, 15:9
**input** [1] - 18:17
**instead** [1] - 5:15
**intended** [1] - 15:4
**intensive** [1] - 10:6
**interested** [2] - 15:15, 20:9
**interim** [2] - 14:11, 17:8
**involvement** [1] - 18:17
**involving** [1] - 13:2
**IOWA** [1] - 1:1
**Iowa** [4] - 1:15, 1:24, 20:2, 20:15
**IRELAND** [1] - 2:17
**Ireland** [1] - 4:5
**issue** [1] - 13:17
**issues** [1] - 18:23

**J**

**joining** [2] - 4:6
**Judge** [2] - 14:15, 19:6
**judgment** [11] - 12:23, 13:21, 13:25, 14:10, 15:1, 15:7, 15:14, 15:19, 15:23, 16:4, 17:2
**July** [1] - 5:24
**June** [1] - 5:4
**jurisdiction** [1] - 12:18

**K**

**K.E** [3] - 1:13, 3:5, 20:3
**keep** [1] - 9:17
**KELCHNER** [1] - 1:3
**Kelchner** [3] - 3:9, 3:11, 13:1
**Kelchner's** [1] - 13:14
**Kelly** [2] - 3:5, 20:3
**KELLY** [1] - 1:13
**kind** [3] - 4:15, 8:3, 10:20
**KLEMPERER** [18] - 2:6, 3:19, 3:24, 4:14, 8:18, 9:8, 9:11, 10:13, 10:22, 11:4, 11:7, 11:24, 12:13, 14:20, 16:24, 18:16, 18:23, 19:18
**Klemperer** [15] - 3:18, 3:20, 3:23, 4:12, 7:3, 7:24, 8:17, 10:12, 10:20, 11:23, 12:11, 16:22, 18:15, 18:22, 19:17

**L**

**last** [3] - 6:2, 12:15, 13:6
**laugh** [1] - 11:11
**Laughter** [1] - 9:18
**lead** [1] - 12:12
**learned** [3] - 12:21, 13:4, 13:12
**least** [3] - 5:8, 13:20, 14:9
**leave** [1] - 15:22
**light** [1] - 11:20
**Light** [2] - 2:14, 2:17
**limitation** [1] - 20:5
**limited** [1] - 16:24
**litigated** [1] - 12:19
**LLC** [2] - 2:6, 2:9
**longer** [1] - 15:9
**look** [3] - 5:13, 17:20, 17:21
**looked** [2] - 10:3, 16:19
**looking** [3] - 6:25, 11:10, 18:17
**looks** [2] - 8:22, 10:21
**loud** [1] - 11:11

**M**

**ma'am** [1] - 19:9
**MAHONEY** [1] - 1:13
**Mahoney** [2] - 3:5, 20:3
**Main** [1] - 2:10
**make** [5] - 11:4, 15:12, 15:24, 17:1, 18:9
**makes** [5] - 9:13, 10:15, 11:6, 13:23, 18:6
**Market** [2] - 2:15, 2:18
**matter** [1] - 3:9
**mean** [1] - 14:18
**meet** [3] - 5:5, 6:2, 15:3
**meet-and-confer** [1] - 15:3
**members** [1] - 7:11
**met** [3] - 5:6, 13:6, 13:18
**MICHAEL** [1] - 2:6
**middle** [1] - 5:24
**might** [5] - 4:11, 4:18, 10:19, 14:6, 15:24
**Mike** [1] - 3:19
**missing** [1] - 5:14
**Moines** [1] - 2:5
**month** [1] - 5:22
**months** [7] - 6:14, 6:15, 6:17, 6:18, 6:20, 9:15
**moot** [5] - 13:25, 14:3, 14:6, 15:6, 15:19
**motion** [32] - 4:10, 4:18, 8:13, 12:7, 12:23, 13:21, 13:22, 13:25, 14:1, 14:4, 14:6, 14:10, 14:14, 14:18, 15:1, 15:7, 15:14, 15:19, 15:22, 15:23, 16:3, 17:2, 17:3, 17:5, 17:15, 17:16, 18:2, 19:4, 19:5, 19:7
**motions** [1] - 15:24
**move** [7] - 5:14, 8:8, 8:15, 10:13, 10:18, 11:13, 18:19
**moved** [3] - 5:5, 6:13, 12:17
**moving** [5] - 5:18, 5:21, 9:17, 17:16, 19:4
**MR** [20] - 3:13, 3:16, 3:19, 3:24, 4:1, 4:14, 8:18, 9:8, 9:11, 10:13, 10:22, 11:4, 11:7, 11:24, 12:13, 14:20, 16:24, 18:16, 18:23, 19:18
**MS** [16] - 4:4, 6:12, 7:6, 7:21, 9:16, 9:20, 12:6, 14:24, 16:8, 16:16, 18:14, 19:3, 19:9, 19:12, 19:14, 19:16
**multiple** [2] - 6:17, 9:22
**Murray** [5] - 1:16, 1:23, 20:2, 20:13, 20:13

**N**

**N.W** [1] - 2:7
**named** [2] - 13:13, 13:15
**names** [1] - 7:11
**necessary** [4] - 6:1, 10:9, 14:14, 14:17
**need** [11] - 8:5, 11:17, 11:22, 14:16, 15:11, 15:20, 15:25, 17:7, 17:17, 18:21, 19:2
**needed** [1] - 6:23
**needing** [1] - 11:13
**needs** [3] - 7:7, 9:17, 11:17
**new** [1] - 13:11
**next** [5] - 7:19, 10:14, 10:25, 12:6, 12:9
**NORTHERN** [1] - 1:1
**note** [3] - 8:22, 11:25, 13:9
**nothing** [1] - 17:9
**notice** [1] - 18:20
**number** [2] - 3:10, 5:18

**O**

**objection** [1] - 7:10
**obviously** [3] - 10:6, 16:25, 17:4
**October** [5] - 1:14, 7:5, 8:7, 8:25, 20:11
**OF** [1] - 1:1
**offered** [1] - 6:23
**once** [6] - 8:19, 10:15, 11:5, 17:20, 18:9, 18:18
**one** [6] - 4:16, 4:17, 5:8, 7:7, 9:21, 16:2
**only** [3] - 6:4, 8:6, 12:17
**opportunity** [1] - 15:20
**oppose** [2] - 17:21, 17:22
**order** [4] - 14:12, 16:7, 17:15, 18:12
**Ordered** [1] - 1:18
**original** [2] - 5:16, 13:10
**originally** [3] - 5:19, 6:6, 6:9

**over** [3] - 5:10, 12:24

## P

**p.m** [2] - 1:15, 19:22
**pages** [3] - 13:10, 13:11, 13:12
**PAMurrayReporting@gmail.com** [1] - 1:25
**part** [1] - 17:20
**particularity** [2] - 12:25, 14:4
**parties** [9] - 4:9, 4:21, 6:9, 8:7, 10:20, 17:22, 18:8, 20:8, 20:9
**parties'** [1] - 14:5
**party** [1] - 7:8
**Patrice** [5] - 1:16, 1:23, 20:2, 20:13, 20:13
**PC** [3] - 2:3, 2:14, 2:17
**pending** [1] - 17:15
**percent** [1] - 5:11
**percentage** [1] - 9:4
**perhaps** [1] - 12:9
**period** [1] - 16:13
**personal** [1] - 12:18
**pivot** [1] - 7:16
**place** [3] - 7:9, 20:3, 20:6
**Plaintiff** [2] - 1:5, 2:2
**plaintiff** [6] - 11:14, 11:17, 12:14, 13:1, 13:14, 14:25
**plaintiff's** [4] - 6:21, 9:24, 13:22, 17:14
**plaintiffs** [6] - 3:15, 3:25, 8:4, 13:13, 13:16, 14:12
**plan** [2] - 13:7, 13:13
**pleading** [3] - 14:1, 17:4, 17:5
**pleadings** [11] - 12:23, 13:21, 13:25, 14:11, 15:1, 15:7, 15:14, 15:20, 15:23, 16:4, 17:2
**pled** [1] - 12:25
**PO** [2] - 1:24, 20:14
**point** [9] - 6:25, 7:25, 8:5, 8:15, 11:2, 11:9, 16:11, 16:13, 18:1
**position** [11] - 6:11, 6:12, 6:15, 11:1, 14:7, 14:22, 15:5, 17:1, 17:19, 17:21, 17:23
**potentially** [2] - 8:20, 15:21
**practice** [3] - 7:13, 7:15, 12:8
**prefer** [2] - 9:12, 10:20
**premature** [3] - 6:20, 6:25, 8:14
**premise** [2] - 15:19, 16:25
**prepare** [1] - 9:6
**prepared** [2] - 1:16, 3:1
**probably** [1] - 8:1
**problem** [1] - 18:20
**proceed** [1] - 4:7
**Proceedings** [1] - 19:22
**proceedings** [3] - 3:4, 20:4, 20:5
**process** [3] - 7:9, 7:12, 9:25
**produced** [7] - 5:10, 9:3, 9:22, 9:24, 10:1, 10:4, 12:20
**producing** [2] - 5:7, 9:20
**production** [21] - 4:23, 4:25, 5:1, 5:9, 5:11, 5:17, 5:20, 6:8, 7:4, 7:11, 8:9, 8:20, 8:24, 9:5, 10:2, 10:15, 10:21, 10:24, 11:5, 11:19, 11:21
**productive** [1] - 14:5
**promised** [1] - 10:23
**promptly** [1] - 14:16
**proposal** [2] - 6:6, 16:2
**propose** [2] - 5:15, 11:1
**proposed** [4] - 13:7, 17:8, 17:18, 18:10
**provide** [4] - 6:4, 6:5, 15:8, 17:19
**provided** [2] - 7:18, 13:7
**pushed** [1] - 8:2
**put** [4] - 5:23, 6:24, 10:8, 16:20

## Q

**questions** [2] - 13:19, 14:8
**quickly** [1] - 9:23

## R

**raise** [1] - 14:3
**raised** [3] - 6:21, 12:17, 13:1
**RAPIDS** [1] - 1:2
**Rapids** [2] - 1:24, 20:15
**ready** [1] - 17:25
**really** [3] - 11:16, 15:11, 18:4
**receive** [2] - 10:24, 15:16
**received** [1] - 18:10
**record** [4] - 11:11, 11:25, 13:10, 20:5
**recording** [5] - 1:16, 3:2, 19:25, 20:4, 20:5
**redacted** [3] - 7:8, 7:17, 7:18
**referencing** [1] - 12:1
**reflected** [1] - 11:11
**regard** [1] - 7:10
**regards** [1] - 6:14
**reiterate** [1] - 8:23
**related** [1] - 20:7
**relates** [1] - 12:8
**relative** [1] - 20:8
**Reporter** [4] - 1:17, 1:23, 20:2, 20:14
**represent** [2] - 13:2, 13:14
**representation** [1] - 15:11
**request** [3] - 4:9, 5:3, 14:22
**requested** [1] - 6:15
**reset** [2] - 17:15, 18:12
**resolves** [1] - 13:17
**respond** [1] - 15:1
**response** [4] - 15:2, 16:3, 16:20, 17:14
**responsibility** [2] - 9:24, 10:5
**revealed** [1] - 10:3
**review** [9] - 5:25, 9:6, 13:9, 15:12, 15:17, 15:21, 16:11, 17:7, 17:18
**reviewed** [2] - 10:1, 15:23
**reviewing** [1] - 12:2
**Ridge** [1] - 2:4
**rights** [1] - 5:14
**RMR** [2] - 1:23, 20:13
**Road** [1] - 2:7
**ruled** [1] - 15:15
**ruling** [1] - 7:10

## S

**sanctions** [1] - 5:14
**schedule** [9] - 4:10, 4:17, 4:19, 4:22, 5:18, 5:21, 8:21, 10:16, 11:2
**scheduled** [1] - 4:20
**Scopelitis** [2] - 2:14, 2:17
**Scott** [2] - 2:6, 2:9
**see** [2] - 9:23, 10:21
**sense** [8] - 9:13, 10:15, 11:4, 11:6, 13:23, 15:25, 17:2, 18:6
**sent** [2] - 4:13, 6:3
**separate** [2] - 17:15, 18:12
**September** [3] - 5:8, 5:9, 12:23
**set** [7] - 7:7, 7:21, 8:23, 15:24, 16:13, 18:4, 20:10
**setting** [1] - 8:10
**several** [1] - 10:24
**Shindler** [1] - 2:3
**short** [1] - 18:20
**Shorthand** [2] - 1:17, 20:2
**should** [5] - 6:9, 13:3, 16:12, 16:14, 17:24
**shouldn't** [1] - 18:20
**sides** [2] - 10:5, 12:20
**similarly** [1] - 1:4
**simply** [1] - 5:15
**Sioux** [1] - 1:15
**sitting** [1] - 18:5
**situated** [1] - 1:4
**Sixth** [1] - 1:15
**something** [4] - 14:15, 15:14, 19:5, 19:10
**sorry** [2] - 16:8, 16:16
**Specialized** [1] - 12:17
**specific** [1] - 12:1
**spreadsheets** [1] - 7:22
**start** [4] - 4:13, 4:19, 11:9, 11:15
**State** [1] - 20:2
**STATES** [1] - 1:1
**status** [5] - 4:9, 19:21, 20:3, 20:4, 20:6
**STATUS** [1] - 1:12
**stay** [6] - 13:20, 13:24, 14:10, 14:18, 14:22, 18:1
**stayed** [1] - 17:24
**stick** [1] - 6:9
**still** [5] - 7:5, 7:15, 8:25, 10:25, 11:21
**stipulate** [2] - 13:19, 16:17
**stipulated** [1] - 4:22
**Street** [4] - 1:15, 2:10, 2:15, 2:18
**stricken** [1] - 13:3
**submit** [1] - 14:13
**substantial** [2] - 9:3, 9:4
**suggested** [1] - 5:21
**Suite** [4] - 2:4, 2:7, 2:15, 2:18
**supersede** [1] - 17:4
**superseded** [1] - 14:2
**suppose** [1] - 17:8
**sure** [5] - 9:10, 13:8, 16:10, 16:16, 18:25
**surprised** [1] - 12:22
**system** [1] - 20:5

## T

**talk** [3] - 8:16, 11:22, 18:21
**talked** [1] - 11:13
**tandem** [1] - 15:24
**target** [1] - 17:16
**TELEPHONIC** [1] - 1:12
**THE** [39] - 1:1, 1:1, 1:13, 3:8, 3:14, 3:18, 3:22, 4:2, 4:8, 6:10, 7:2, 7:20, 7:23, 9:7, 9:10, 9:13, 9:19, 10:11, 10:17, 11:3, 11:6, 11:8, 12:4, 12:11, 14:18, 14:21, 16:5, 16:10, 16:22, 17:12, 18:15, 18:21, 18:25, 19:7, 19:10, 19:13, 19:15, 19:17, 19:20
**they've** [2] - 16:17, 17:20
**thinking** [2] - 16:6, 16:13
**third** [1] - 7:8
**thoughts** [2] - 16:23, 18:13
**three** [3] - 7:19, 12:15, 14:25
**three-week** [1] - 14:25
**throughout** [1] - 5:8
**timing** [1] - 17:23
**today** [2] - 4:16, 7:14
**told** [1] - 13:6
**took** [1] - 11:9
**topic** [3] - 10:14, 12:7, 12:10
**total** [2] - 5:11, 9:4
**transcribed** [1] - 20:4

**transcript** [2] - 3:1, 20:5
**Transcript** [2] - 1:18, 1:18
**transcription** [1] - 19:24
**tremendous** [1] - 12:20
**true** [1] - 20:5
**tweaked** [1] - 7:12
**two** [9] - 4:16, 13:13, 13:15, 13:19, 16:19, 17:5, 18:3, 18:7, 18:23
**two-week** [2] - 16:19, 17:5
**TX** [1] - 2:11

## U

**underlying** [1] - 16:25
**unfortunately** [2] - 5:6, 7:15
**unintelligible** [2] - 12:10, 19:4
**UNITED** [1] - 1:1
**unless** [1] - 10:20
**unnecessary** [1] - 6:20
**up** [2] - 6:1, 7:3
**update** [1] - 7:14
**use** [1] - 14:5
**using** [2] - 7:8, 20:5
**usually** [1] - 19:10

## V

**versus** [1] - 3:9
**very** [3] - 11:2, 12:2, 14:16
**volume** [2] - 9:3, 11:20
**Von** [15] - 3:18, 3:20, 3:23, 4:12, 7:3, 7:24, 8:17, 10:12, 10:20, 11:23, 12:11, 16:22, 18:15, 18:22, 19:17
**VON** [18] - 2:6, 3:19, 3:24, 4:14, 8:18, 9:8, 9:11, 10:13, 10:22, 11:4, 11:7, 11:24, 12:13, 14:20, 16:24, 18:16, 18:23, 19:18
**VS** [1] - 1:6

## W

**wait** [2] - 10:21, 11:19
**want** [5] - 5:15, 12:11, 17:6, 18:5, 18:8
**wanted** [1] - 18:24
**Washington** [1] - 2:8
**week** [6] - 6:2, 13:6, 14:25, 16:19, 17:5, 17:10
**weeks** [6] - 8:19, 9:11, 10:15, 10:24, 18:3, 18:7
**Weese** [1] - 2:3
**weigh** [1] - 7:24
**West** [3] - 2:5, 2:15, 2:18
**WHEREOF** [1] - 20:10
**Williams** [2] - 14:15, 19:6
**WITNESS** [1] - 20:10
**Wolle** [2] - 4:3, 4:6
**wonder** [1] - 16:2
**woodshed** [1] - 9:21
**word** [1] - 11:12
**work** [1] - 8:8
**working** [3] - 7:13, 7:15, 15:17
**written** [1] - 14:18

## Y

**year** [3] - 12:15, 12:20, 12:24
**yesterday** [3] - 13:8, 15:16, 18:11

## Z

**ZACEST** [1] - 2:9
**Zacest** [1] - 3:20