UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-00082-CJW-KEM |
| | Honorable Judge C.J. Williams |
| Plaintiffs, | |
| v. | |
| CRST INTERNATIONAL HOLDINGS LLC, CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC., JOHN SMITH, an individual, and MICHAEL GANNON, an individual, | |
| Defendants. | |

**CORPORATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

III.  ARGUMENT ....................................................................................................... 5

     A.    Plaintiffs lack Article III standing to pursue registration or disclosure theories. ........................................................................................................ 5

     B.    None of Plaintiffs' BOPA theories are pleaded with particularity. ........................ 7

     C.    Plaintiffs' transactions fall outside BOPA's express extraterritorial reach. ......... 12

     D.    Plaintiffs' claims are preempted by federal law. .................................................. 14

          1.    Plaintiffs' BOPA claims are expressly preempted by the FAAAA. .......... 14

          2.    Plaintiffs' BOPA claims are also preempted by the Federal Leasing Regulations. ............................................................................................... 18

     E.    Plaintiffs lack standing to pursue injunctive or declaratory relief. ...................... 19

IV.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Arsenault v. One Call Logistics, LLC*,
No. 2:24-cv-00022-JAW, 2024 WL 4134845 (D. Me. Sept. 10, 2024) ................................... 15

*Besette v. AT&T Corp.*,
No. 03-0830-CV-W-HFS, 2006 WL 2927561 (W.D. Mo. Oct. 11, 2006) .............................. 20

*Beyer v. Acme Truck Line, Inc.*,
802 So.2d 798 (La. Ct. App. 2001) .......................................................................................... 15

*Bigfoot Coop A Inc. v. Nationwide Mut. Ins. Co.*,
No. 23-CV-1016-CJW-MAR, 2024 WL 3445007 (N.D. Iowa July 16, 2024) ................... 8, 12

*Buergofol GmbH v. Omega Liner Co., Inc.*,
No. 4:22-CV-04112-KES, 2024 WL 3541248 (D.S.D. July 25, 2024) ................................... 11

*Custom Stud, Inc. v. Meadow Lark Agency, Inc.*,
566 F.Supp.3d 950 (D. Minn. 2021) ....................................................................................... 17

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) .......................................................................................................... 15, 17

*Davis v. FEC*,
554 U.S. 724 (2008) ............................................................................................................ 5, 19

*Ever Better Eating, Inc. v. Jama's Express LLC*,
No. 8:21-cv-1798-CEH-CPT, 2022 WL 17782391 (M.D. Fla. Dec. 19, 2022) ...................... 15

*Fox v. Saginaw Cnty., Mich.*,
67 F.4th 284 (6th Cir. 2023) ................................................................................................... 20

*Frontier Leasing Corp. v. Waterford Golf Assocs., L.L.C.*,
791 N.W.2d 710 (Iowa Ct. App. 2010) ..................................................................................... 6

*Great Plains Tr. Co. v. Union Pac. R.R.*,
492 F.3d 986 (8th Cir. 2007) ..................................................................................................... 8

*Grim v. Centrum Valley Farms, L.L.P.*,
No. C15-3167-MWB, 2016 WL 1090575 (N.D. Iowa Mar. 18, 2016) ............................... 7, 13

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999) ................................................................................................... 20

*Iwatani Corp. of Am. v. Nel ASA*,
No. 8:24-CV-00192-JVS-KES, 2024 WL 3915177 (C.D. Cal. July 10, 2024) ...................... 10

*Jahnke v. Deere & Co.*,
  912 N.W.2d 136, 142–43 (Iowa 2018) .................................................................. 13

*Karlen v. Jones Lang LaSalle Americas, Inc.*,
  766 F.3d 863 (8th Cir. 2014) ............................................................................... 14

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) ................................................................................. 8

*Ledet v. Freightbull, Inc.*,
  No. 24-cv-10974, 2025 WL 1505406 (N.D. Ill. May 27, 2025) ............................ 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................... 5

*Martin v. Pilot Indus., Inc.*,
  632 F.2d 271 (4th Cir. 1980) .................................................................................. 6

*Matter of Kaster*,
  454 N.W.2d 876 (Iowa 1990) ............................................................................ 8, 14

*Merceron v. The Bank of New York Mellon Tr.*,
  No. 1:11-CV-2831-WSD-AJB, 2012 WL 12281610 (N.D. Ga. May 15, 2012) ...... 10

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ............................................................................................. 15

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ................................................................................................. 5

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ......................................................................................... 19, 20

*Olin v. Dakota Access, LLC*,
  910 F.3d 1072 (8th Cir. 2018) ................................................................................ 8

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*,
  622 F.3d 1307 (11th Cir. 2010) ........................................................................ 18, 19

*Parnes v. Gateway 2000, Inc.*,
  122 F.3d 539 (8th Cir. 1997) ............................................................................... 11

*Remmes v. Int'l Flavors & Fragrances, Inc.*,
  389 F.Supp.2d 1080 (N.D. Iowa 2005) .............................................................. 8, 11

*Roberson v. Kan. City S. Ry. Co.*,
  No. 4:22-CV-00358-RK, 2024 WL 4502281 (W.D. Mo. Oct. 16, 2024) ............... 20

*Rowe v. New Hampshire Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ............................................................................................. 15

*Saia Motor Freight Line, LLC v. Serampore Indus. Priv. (Ltd.), Inc.*,
No. 2:24-cv-164-RWS, 2025 WL 3113720 (N.D. Ga. June 30, 2025) .................................. 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................... 6, 7

*State v. Anderson*,
782 N.W.2d 155 (Iowa 2010) ........................................................................... 8, 13

*Tanali Fam. Tr. v. United Parcel Serv., Inc.*,
No. 1:22-CV-154, 2024 WL 2946576 (S.D. Tex. June 11, 2024).......................... 15

*Tatone v. SunTrust Mortg., Inc.*,
857 F.Supp.2d 821 (D. Minn. 2012)................................................................. 8, 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......................................................................................... 5, 6

*Zhukovskiy v. Nat'l Bank of Ukraine*,
No. 1:21-CV-20019, 2022 WL 526468 (S.D. Fla. Feb. 9, 2022) .......................... 10

## Statutes

49 U.S.C. § 14102 ........................................................................................................ 18

49 U.S.C. § 14501 ................................................................................................. 2, 15, 17

49 U.S.C. § 14704 ............................................................................................... 6, 18, 19

49 U.S.C. § 41713 ........................................................................................................ 15

Iowa Code § 551A ........................................................... 6, 7, 8, 12, 13, 14, 16, 17, 19

## Rules

Fed. R. Civ. P. 17 .......................................................................................................... 7

Fed. R. Civ. P. 9 ............................................................................... 7, 8, 9, 10, 11, 12

## Regulations

49 C.F.R. Part § 376......................................................................................... 2, 18, 19

Defendants, CRST International Holdings LLC (CRST International Holdings), CRST Expedited, Inc. (CRST Expedited), CRST Specialized Transportation, Inc. (CRST Specialized), CRST Lincoln Sales, Inc. (Lincoln Sales), respectfully submit this memorandum of points and authorities in support of their Motion to Dismiss.

## I. INTRODUCTION

In their First Amended Complaint,[1] Plaintiffs, Harley Kelchner, Daniel Weche, and Anthony Hicks, package a series of grievances about CRST Expedited and CRST Specialized's lease-purchase programs as a single count under Iowa's Business Opportunity Promotions Act (BOPA), Iowa Code ch. 551A. They allege the programs are regulated business opportunities, and Defendants failed to properly register and provide a statutorily-prescribed disclosure document. They further allege Defendants made vague "fraudulent" misrepresentations about earnings, turnover, and profitability in connection with the programs. And these former contractors—none of whom reside in Iowa, operate a business there, or allege an offer or acceptance occurred in Iowa—seek to certify a nationwide class of anyone who leased trucks from Lincoln Sales and drove for CRST Expedited or CRST Specialized "in any week within the United States."

Plaintiffs' BOPA claims should be dismissed for several reasons. To begin, Plaintiffs lack Article III standing to pursue their "strict liability" registration and disclosure theories because they plead no concrete injury from any failure to register the "Driving Opportunity" or any failure to provide a state-prescribed disclosure form on a state-prescribed timetable. Their remaining BOPA theories "sound in fraud" but do not come close to satisfying Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of any misrepresentation or omission for each Plaintiff and each Defendant. The Complaint also fails at the threshold because Plaintiffs do not

---

[1] Plaintiff Kelchner filed his original complaint (ECF No. 1) in this action on August 23, 2024. On October 29, 2025, Plaintiffs filed their operative First Amended Complaint (Complaint) (ECF No. 113), which added two named Plaintiffs, Weche and Hicks, and three named Defendants, CRST International Holdings, John Smith, and Michael Gannon. *See Compl.*, ¶ 1.

1

plausibly allege that their transactions fall within BOPA's limited territorial reach.

Layered on top of those pleading and jurisdictional defects are fundamental conflicts with federal law. As pleaded, Plaintiffs seek to use BOPA as a state-law vehicle to regulate and unwind the pricing, structure, and documentation of interstate motor carrier's owner-operator arrangements that Congress has already occupied through the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501(c), and the Federal Leasing Regulations, 49 C.F.R. Part 376. Finally, because Plaintiffs are all former contractors with no ongoing relationship with any Defendant, they lack standing to pursue injunctive or declaratory relief for themselves or on behalf of any putative class. For these reasons, the Court should dismiss Plaintiffs' BOPA claims and associated class allegations in their entirety.

## II. BACKGROUND

Plaintiffs Kelchner and Weche are residents of Florida, and Hicks is a resident of North Carolina. *Compl.*, ¶¶ 12–14. Each alleges that he performed work as a "Driver" for "CRST Trucking" for a defined period and then stopped driving for Defendants well before filing the operative complaint. *Id.* Specifically, Kelchner alleges that he drove from approximately March 2, 2022, to June 3, 2025; Hicks alleges that he drove from approximately January 13, 2025, to March 21, 2025; and Weche alleges that he drove from approximately May 5, 2025, to August 18, 2025. *Id.*, ¶¶ 7, 12–14. Plaintiffs further allege that they, and the putative class members they call "Drivers," are "former Drivers for CRST Trucking and lessees of CRST Lincoln Sales." *Id.*, ¶ 3.

In their Complaint, Plaintiffs are suing a group of entities and two individual executives they collectively define as "CRST Trucking": CRST International Holdings, CRST Expedited, CRST Specialized, CRST Lincoln Sales, Smith, and Gannon. *Id.*, ¶ 1. CRST International Holdings is an Iowa limited liability company with its principal place of business in Cedar Rapids, Iowa; CRST Expedited is an Iowa corporation with its principal place of business in Cedar Rapids;

CRST Specialized is an Indiana corporation with its principal place of business in Fort Wayne, Indiana; and Lincoln Sales is an Iowa corporation with its principal place of business in Cedar Rapids. *Id.*, ¶¶ 15–18. Plaintiffs allege that these "Corporate Defendants" are overseen by a corporate holding company, CRST International Holdings, and operate "as an interrelated network of companies that have common ownership, control, officers, directors, members, managers, office locations, customer databases, and mailing addresses," and that "[e]ach Corporate Defendant is and has been an agent of the other in the acts and conduct alleged herein." *Id.*, ¶ 21.

At the core of the case is what Plaintiffs refer to as the "lease purchase business opportunity program" or "Driving Opportunity," under which contractors lease trucks from Lincoln Sales and "simultaneously agree[] to provide driving services to CRST Trucking utilizing such trucks." *Id.*, ¶ 1. Plaintiffs allege contractors are licensed commercial drivers who operate commercial vehicles and transport Defendants' customers' cargo, and that the Driving Opportunity is implemented across multiple entities, including CRST Specialized and CRST Expedited. *Id.*, ¶¶ 1–2. Plaintiffs contend the lease-purchase programs are "business opportunities" under BOPA that must comply with its registration, disclosure, and anti-fraud provisions. *Id.*, ¶¶ 4–6, 96–103.

In particular, Plaintiffs allege, "[i]n connection with the offer, sale, and/or operation of the Driving Opportunity," Defendants violated BOPA by: (1) failing to register and file the required irrevocable consent with the Iowa Secretary of State; (2) failing to deliver a "fulsome disclosure statement" and related contracts "ten days in advance of signing contracts or paying consideration"; and (3) making untrue or misleading statements and omissions in advertising, recruiting, and contract-related communications about turnover, expected earnings, costs, and the viability of the Driving Opportunity as a way to start a business. *Id.*, ¶¶ 4–6, 96–103. Plaintiffs claim Defendants' failure to provide the required disclosure document renders them "strictly liable" for restitution under BOPA, and Defendants' alleged misrepresentations and omissions

trigger BOPA's anti-fraud provisions. *Id.*, ¶¶ 5–6, 96–103. Plaintiffs further allege, under BOPA's remedial scheme, "[p]urchasers injured by a violation of BOPA's anti-fraud provisions have access to a broad panoply of statutory remedies," and they seek "return of monies paid into the opportunity, damages, interest, equitable, and injunctive relief, as well as available attorneys' fees and costs" on behalf of themselves and the putative class. *Id.*, ¶¶ 4, 6, 8.

Although Plaintiffs allege they are all former drivers whose individual driving relationships with Defendants ended in 2025, *id.*, ¶¶ 3, 7, 12–14, they assert forward-looking concerns and seek prospective relief. Plaintiffs allege that, as professional truck drivers, they "expect to have years of professional driving ahead of them and will constantly be on the lookout for better and improved driving opportunities" and are "certain that CRST Trucking . . . will continue to advertise and improve its driving opportunity offerings to attract and secure drivers." *Id.*, ¶ 79. They allege that they "would like to drive and/or consider driving with CRST as Driving Opportunity contractors again in the future" but claim they are "not confident that they could rely on CRST Trucking's advertising, recruiting, and promotional efforts" to accurately present a viable economic opportunity or the represented income levels. *Id.*, ¶ 79. They also allege Defendants will continue to subject them to promotional efforts via public online media and direct email. *Id.*, ¶ 80.

Finally, Plaintiffs allege that, when drivers leave the Driving Opportunity "on account of its inability to provide an economically viable and sustainable income," Defendants "regularly report[] (and/or retain[] the right to report)" that drivers have "abandoned" their trucks or quit, or otherwise report derogatory information to trucking-specific reporting agencies, which they allege harms drivers' reputations and job prospects. *Id.*, ¶ 83. Plaintiffs assert they are "concerned that CRST Trucking will do this to them" and seek to enjoin Defendants' from filing such reports and to require Defendants to reverse any adverse credit reporting. *Id.*

## III. ARGUMENT[2]

### A. Plaintiffs lack Article III standing to pursue registration or disclosure theories.

Article III "standing is not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation omitted). A plaintiff must demonstrate standing for each claim and each form of relief as to each defendant. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (faulting the Fifth Circuit for treating "the defendants, plaintiffs, and platforms each as a unified whole" and reiterating that "plaintiffs must demonstrate standing for each claim they press" against each defendant "and for each form of relief they seek").

The "irreducible constitutional minimum" of Article III standing requires plaintiffs to show (1) that an "injury in fact"—an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'"—occurred; (2) that the it is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). That requirement applies

---

[2] CRST Specialized previously moved to dismiss for lack of personal jurisdiction. ECF No. 28. Although the Court denied that motion based on consent, ECF No. 53, it certified the consent issue to the Iowa Supreme Court, ECF No. 66, which heard oral argument on November 13, 2025 but has not yet issued an opinion. Plaintiff already agreed that "the amendment of the Complaint . . . does not moot Defendants' pending appeal at the Iowa Supreme Court challenging the District Court for the Northern District of Iowa's jurisdiction over [CRST] Specialized." ECF No. 111 ¶ 10. CRST Specialized continues to contest both general and specific personal jurisdiction for the reasons set forth in its initial motion to dismiss and in its appellate filings. ECF Nos. 28, 28-1, 42, 56, 56-1, 58; App. Dkt. Nos. 22, 35. But given the Court's prior ruling and the pending appeal in the Iowa Supreme Court, it would be a waste of the parties' and judicial resources to re-brief those issues. To that end, and only to the extent necessary to formally preserve its personal jurisdiction defense under Rule 12(h), CRST Specialized incorporates by reference its prior arguments on personal jurisdiction with the understanding that the Court will continue to follow its original ruling on consent (at least until the appeal is resolved) and therefore will not address whether an alternative basis for personal jurisdiction exists—*i.e.*, specific personal jurisdiction. ECF No. 53 at 13 ("The Court need not consider the parties' arguments regarding specific personal jurisdiction in light of its conclusion that Specialized has consented to general personal jurisdiction."). CRST Specialized respectfully suggests that, in the event the Iowa Supreme Court agrees with its position on consent and answers the certified question "No," then the most efficient path would be for the parties to confer on whether additional briefing is needed on the specific personal jurisdiction issue and, if so, submit a proposed supplemental briefing schedule to the Court.

even if a statute creates a cause of action; a bare "injury in law" is not enough but instead plaintiffs must plead a concrete "injury in fact." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–42 (2016) (even where the legislature "elevates" certain interests, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue"); *TransUnion*, 594 U.S. at 428–30. Thus, "a bare procedural violation, divorced from any concrete harm" cannot satisfy Article III. *Spokeo*, 578 U.S. at 341.[3]

Plaintiffs' registration and "strict liability" disclosure theories do not satisfy Article III. Plaintiffs seek, among other things, to premise liability on Defendants' alleged failure to "register" or otherwise comply with BOPA's administrative requirements, including not filing an irrevocable consent with the Iowa Secretary of State and failing to provide the required formal "disclosure statement" ten days before any contracts were executed. *Compl.*, ¶¶ 4–8. But Plaintiffs do not plead any concrete injury suffered because of these purported violations.

For Plaintiffs' registration-based theory in particular, the Complaint pleads no facts suggesting that Plaintiffs were even aware of, let alone relied on or were harmed by, any failure to register the "Driving Opportunity" or file an irrevocable consent. There is no allegation, for example, that the lack of registration deprived them of access to information, impeded suit, or otherwise changed the terms of their participation. The alleged harm—negative pay, inability to

---

[3] Aside from Article III, BOPA itself also presupposes an injury, not mere technical noncompliance. For example, "[a] person who violates the requirements for disclosure or for the contents of a business opportunity contract pursuant to section 551A.3 is liable to the purchaser in an action for rescission of the contract, or for recovery of all money or other valuable consideration paid for the business opportunity, and for actual damages together with interest . . . reasonable attorney fees, and court costs." Iowa Code § 551A.8(1). And more broadly, "[i]n addition to any remedies provided by law, a person *injured* by a violation of this chapter may bring a civil action and recover damages or obtain other appropriate relief including injunctive or other equitable relief." Iowa Code § 551A.8(4) (emphasis added). The Iowa Court of Appeals has also recognized that a violation "simply authorizes rescission of the agreement and other remedies," not automatic voidness ab initio. *Frontier Leasing Corp. v. Waterford Golf Assocs., L.L.C.*, 791 N.W.2d 710 (Iowa Ct. App. 2010) (citing § 551A.8(1)). In other words, BOPA on its face creates remedies for persons "injured by a violation," not free-standing penalties for abstract regulatory defects. *Cf. Martin v. Pilot Indus., Inc.*, 632 F.2d 271, 277–78 (4th Cir. 1980) (under a similar business-opportunities statute, plaintiff must demonstrate "injury" to recover attorney's fees).

6

profit, failure to acquire equity, etc.—would have occurred in precisely the same way whether or not Defendants had filed the correct paperwork with the Secretary of State. That is the quintessential "bare procedural violation, divorced from any concrete harm," that cannot sustain Article III standing. *Spokeo*, 578 U.S. at 341.

The same is true to the extent Plaintiffs seek to treat failure to deliver a state-prescribed disclosure document ten days in advance as an independent, strict-liability claim. Plaintiffs do not allege that they were deprived of any specific piece of information that BOPA uniquely requires, as opposed to complaining about the substance of Defendants' alleged marketing statements and omissions—claims that are already captured by their misrepresentation theories. Nor do they plausibly allege non-speculative harm attributable to the timing or format of a disclosure document (as opposed to the content of Defendants' representations). Their assertion that they "almost certainly would not have purchased the Driving Opportunity" had they received a compliant document, *Compl.*, ¶ 72, is both conjectural and indistinguishable from their generalized fraud theory; it does not identify a separate injury flowing from the mere failure to follow BOPA's procedural disclosure mechanism. Accordingly, while Plaintiffs' independent fraudulent misrepresentation theories may suffice for standing, Article III requires more for their registration- and disclosure-based BOPA theories. The Court should therefore dismiss those theories.[4]

### B. None of Plaintiffs' BOPA theories are pleaded with particularity.

The Federal Rules impose a heightened pleading standard on all averments of fraud. Fed.

---

[4] Hicks' claims should also be dismissed because he is not a "purchaser" under BOPA. BOPA authorizes remedies only in favor of "the purchaser." Iowa Code § 551A.8(1). And it defines "purchaser" as "a person who enters into a contract" to acquire the alleged business opportunity, and "person" includes business entities such as LLCs. Iowa Code § 551A.1(9)–(10). However, Hicks executed the relevant agreements on behalf of his business entity, W & J Brooke Transport LLC. *See* Declaration of Angela Cash (*Cash. Decl.*), Exs. A–B (business entity's signed leases); *see also Compl.*, ¶¶ 27, 72, 81 (referencing ICOAs and leases); *Grim v. Centrum Valley Farms, L.L.P.*, No. C15-3167-MWB, 2016 WL 1090575, at *3 n.2 (N.D. Iowa Mar. 18, 2016) (documents referenced by a complaint are incorporated). The LLC—not Hicks individually—therefore is the statutory "purchaser" (and the real party in interest under Federal Rule of Civil Procedure 17).

R. Civ. P. 9(b). When a plaintiff alleges fraud, he "must state with particularity the circumstances constituting fraud," which means pleading "the who, what, when, where, and how: the first paragraph of any newspaper story." *Bigfoot Coop A Inc. v. Nationwide Mut. Ins. Co.*, No. 23-CV-1016-CJW-MAR, 2024 WL 3445007, at *5 (N.D. Iowa July 16, 2024) (quoting *Great Plains Tr. Co. v. Union Pac. R.R.*, 492 F.3d 986, 995 (8th Cir. 2007)). Courts "need not accept conclusory legal allegations as true," and "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient." *Id.* Rule 9(b) also requires particularized allegations as to each defendant; "lumping" multiple together is especially improper in fraud cases. *See Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F.Supp.2d 1080, 1088–90 (N.D. Iowa 2005); *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 831 (D. Minn. 2012).

Rule 9(b) applies whenever a state-law claim "sounds in fraud," even if the statute also reaches non-fraudulent conduct. *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718–19 (8th Cir. 2017). As in *Olin*, where the plaintiff's statute-based claim "repeatedly assert[ed] that [defendant's] representations were false and amounted to fraud" and thus triggered Rule 9(b), *id.*, Plaintiffs' allegations here are framed as a "fraudulent scheme" of misrepresentations and concealments about the Driving Opportunity's viability, turnover, and earnings. *See, e.g.*, *Compl.*, ¶¶ 34–57, 68–71, 102. Plaintiffs therefore must satisfy Rule 9(b)'s heightened standard. They have not.[5]

The Complaint falls short in several ways. First, it opens with a sweeping "fraudulent business opportunity scheme" narrative covering "hundreds, if not thousands" of ads, scripts, packets, and presentations. *Id.*, ¶ 34. Plaintiffs describe LinkedIn and other online ads that tout six-

---

[5] Notably, BOPA is also a penal statute; certain violations are punishable as a Class D felony and others as an aggravated misdemeanor. Iowa Code § 551A.10. Under Iowa law, penal statutes "must be strictly construed, with any doubt resolved against the State and in favor of the accused." *State v. Anderson*, 782 N.W.2d 155, 158 (Iowa 2010); *Matter of Kaster*, 454 N.W.2d 876, 877 (Iowa 1990) (explaining civil "forfeiture statutes . . . are penal in nature and must be strictly construed.").

figure incomes, sign-on bonuses, and "Lease Purchase drivers earn an average of $215,000/year," but the Complaint never alleges that any of the three named Plaintiffs actually saw any of those particular ads, when they saw them, or that they ever relied on those specific statements in deciding to enter the program. *Id.*, ¶¶ 36–38. They also note website content listing supposed earnings for lease purchase contractors for multiple divisions, but again never say that Kelchner, Hicks, or Weche reviewed those pages, when, or in what context. *Id.*, ¶ 39. Their *only* reliance allegation is a collective statement that "Plaintiffs and Drivers relied on Defendants' false and misleading information and representations and travelled to and attended classroom orientation sessions." *Id.*, ¶ 50. That kind of group, conclusory assertion—without specifying which Plaintiff relied on which statement made by which Defendant, nor the "when, where, and how"—does not satisfy Rule 9(b).

To be sure, Plaintiffs' Complaint includes somewhat more specific allegations for certain, isolated communications: For example, Kelchner notes a Lease Purchase Information Packet emailed to him "on or about February 23, 2022" with various bullet-pointed earnings projections, and Plaintiffs also cite a similar packet emailed to Hicks "in July 2024," a series of recruiting emails to Hicks at various dates in late 2025 listing purported annual earnings and revenue splits, and that phone calls were made to Weche by a recruiter in "mid-to-late April 2025" with rough assurances that he would make "$2500–$3000 per week," "never" be in a deficit, and have "consistent mileage" with "3 loads per week." *Id.*, ¶¶ 41–42, 47–48. But even in these passages, Plaintiffs still do not allege the full "who, what, when, where, and how" required. They do not plead: Who the specific Defendant was that made the misrepresentation (*e.g.*, Indiana-based CRST Specialized or Iowa-based CRST Expedited); where each Plaintiff was when he received the communication; which representations in any of the emails, packets, or calls were false when made, and why; how each Plaintiff actually relied on the specific statements in deciding to sign their leases; or what injury each Plaintiff suffered as a result of each particular misrepresentation,

as opposed to the alleged general economic consequences of entering the lease-purchase program. Instead, Plaintiffs' Complaint chalks these up as having the "overall net impression that the Corporate Defendants were offering an economically viable business opportunity," and that this "net impression" was false. *Id.*, ¶ 53. Plaintiffs' allegations concerning a "net impression" is the antithesis of the specificity Rule 9(b) requires.[6]

Second, the Complaint further obscures the "who" by collapsing six distinct Defendants into amorphous collective labels. Plaintiffs define "CRST Trucking" to include CRST International Holdings and its subsidiaries CRST Expedited, CRST Specialized, and Lincoln Sales. *Compl.*, ¶ 1. The Complaint then alleges "CRST Trucking—at the direction and under the control of CRST International, its Board of Directors, and common officers and executives, including Gannon and Smith—from within Iowa—directed and implemented a fraudulent business opportunity scheme." *Id.*, ¶ 34. Plaintiffs allege the "Corporate Defendants have conducted, and continue to conduct, the business practices described herein as an interrelated network of companies," that "each Corporate Defendant is and has been an agent of the other," and that "Defendants Smith and Gannon, together with the Corporate Defendants, have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants." *Id.*, ¶¶ 21, 32. Likewise, "CRST Trucking—at the direction and under the

---

[6] *See, e.g.*, *Zhukovskiy v. Nat'l Bank of Ukraine*, No. 1:21-CV-20019, 2022 WL 526468, at *5 (S.D. Fla. Feb. 9, 2022) ("[T]he allegations in the Amended Complaint are lengthy, but when analyzed as to how the fraud relates to NBU, they are short on specificity and substance and often consist of conclusory allegations that are insufficient); *Merceron v. The Bank of New York Mellon Tr.*, No. 1:11-CV-2831-WSD-AJB, 2012 WL 12281610, at *7 (N.D. Ga. May 15, 2012) ("[D]espite the lengthy exposition regarding the fraud claim, Plaintiffs' amended complaint lacks the specificity required by Rule 9(b) . . . Plaintiffs do not specifically allege a false representation made to them, nor do they allege by whom the statement was made, or when. . . . [or] that they relied on the alleged false representation, or how such reliance was justifiable."); *Iwatani Corp. of Am. v. Nel ASA*, No. 8:24-CV-00192-JVS-KES, 2024 WL 3915177, at *18 & n.7 (C.D. Cal. July 10, 2024) ("Although the FAC enumerates 'withheld facts,' 'false promises,' and 'deceptive acts,' none are attributed to any specific Defendant. The ninety-plus page FAC already stretches the bounds of 'short and plain statement' under Rule 8. In declaring the FAC light on details, the Court does not suggest that the shortcoming concerns length. To the contrary, the FAC lacks the requisite specificity of the various alleged misrepresentations and who made them." (cleaned up)).

control of CRST International, its Board of Directors, and common officers and executives, including Gannon and Smith—charged Drivers by way of deductions or set offs", all of which Plaintiffs allege "upon information and belief" to be excessive or improper. *Id.*, ¶¶ 58–65.

Plaintiffs' "shotgun" style pleading—referring to "CRST Trucking," "Corporate Defendants," and "Defendants Smith and Gannon, together with the Corporate Defendants" as the actors—is insufficient even under Rule 8, let alone Rule 9(b). *See Tatone*, 857 F.Supp.2d at 831 ("[A] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."); *Remmes*, 389 F.Supp.2d at 1088–90 (dismissing fraud claims where plaintiffs "collectively describe[d]" defendants' conduct). The Complaint does not identify which entity or individual authored which advertisement, drafted which script, approved which email, delivered which orientation slide, or made which deduction from which Plaintiff's settlement statement. That is fatal under Rule 9(b).

Finally, Rule 9(b) allows some allegations on information and belief where "essential information lies uniquely within [defendant's] control," but "only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Buergofol GmbH v. Omega Liner Co.*, Inc., No. 4:22-CV-04112-KES, 2024 WL 3541248, at *5 (D.S.D. July 25, 2024) (citation omitted); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (when "allegations of fraud are explicitly or . . . implicitly based only on information and belief, the complaint must set forth the source of the information and the reason for the belief"). Here, the Complaint does the opposite: It repeatedly pleads sweeping conclusions on information and belief with no underlying factual basis. For example, Plaintiffs allege "upon information and belief" that Defendants over-charged for insurance premiums, tolls, fuel, and taxes and "improperly retained all or part" of fuel surcharges, yet offer no particularized factual examples—no specific invoice, no exemplar week

showing actual versus charged amounts, and no identified surcharge that was retained. *Id.*, ¶ 66. These "information and belief" allegations are classic "labels and conclusions" that fail both Rule 9(b) and *Twombly*/*Iqbal*'s plausibility standard. *See Bigfoot*, 2024 WL 3445007, at *5–6.

**C.** **Plaintiffs' transactions fall outside BOPA's express extraterritorial reach.**

Plaintiffs' claims also fail at the threshold because the statute does not reach their out-of-state transactions. BOPA's scope provision, Iowa Code § 551A.2, makes clear that the statute applies only to "persons who sell or offer to sell a business opportunity" when one of three specific Iowa nexuses is present: (a) "[a]n offer to sell is made in this state"; (b) "[a]n offer to purchase is made and accepted in this state"; or (c) "[t]he purchaser is domiciled in this state and the business opportunity is or will be operated in this state." Iowa Code § 551A.2(1)(a)–(c). The statute then carefully defines when an offer is "made in this state" and when an acceptance occurs "in this state," tying both concepts to communications that originate from, are directed to, and are received in Iowa. *Id.* § 551A.2(2)–(4). Section 551A.2 thus functions as a territorial limitation on BOPA's reach, not as a mere venue or jurisdiction provision.

Plaintiffs' Complaint does not plead facts that satisfy any of § 551A.2's three triggers. The named Plaintiffs expressly allege that they are domiciled in Florida and North Carolina, not Iowa. *Compl.*, ¶¶ 12–14. They allege that they drove for Defendants throughout the United States, not that they operated their purported business opportunity in Iowa. *Id.*, ¶ 85. While Plaintiffs describe the lease-purchase program as "directed and implemented" "from within Iowa" and make generalized allegations about Defendants' corporate presence here—despite admitting CRST Specialized is an Indiana corporation headquartered in Indiana—they never allege that any specific offer to sell the supposed "Driving Opportunity" to Plaintiffs was made in Iowa, that any offer to purchase was made and accepted in Iowa, or that any purchaser was domiciled in Iowa operating

a business here. *Id.*, ¶¶ 15–20, 22, 34–35.[7] Plaintiffs therefore have not plausibly alleged that their transactions fall within BOPA's territorial scope, and their BOPA claim must be dismissed.

Iowa law confirms that § 551A.2's territorial limits must be enforced as written. Absent express language indicating extraterritorial effect of a law, Iowa courts will not permit extraterritorial application. *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 142–43 (Iowa 2018) (declining to extend the Iowa Civil Rights Act to out-of-state employment, citing "presumption that a statute does not apply extraterritorially" and explaining that "when the Iowa legislature has intended for a statute to operate extraterritorially, it has explicitly indicated this intent"). In *Jahnke*, the Iowa Supreme Court emphasized that imposing Iowa's policy choices on "practices of [] sister states should be done with great prudence and caution out of respect for the sovereignty of other states, and to avoid running afoul of the Commerce Clause of the United States Constitution." *Id.* at 144. The same principles apply here. BOPA contains no express statement of extraterritorial application that would reach Plaintiffs' allegations. To the contrary, the legislature chose to delimit its reach to three concrete Iowa nexuses in § 551A.2(1)(a)–(c). The Court must respect those limits and decline Plaintiffs' invitation to transform BOPA into a nationwide regime governing business-opportunity transactions between non-Iowa residents and non-Iowa operations.

BOPA's penal character further underscores the need for a narrow construction of its territorial scope. Certain violations are punishable as a Class D felony, and all others constitute an aggravated misdemeanor. Iowa Code § 551A.10. Because BOPA is penal, it must be "strictly construed, with any doubt resolved against the State and in favor of the accused." *State v.*

---

[7] Hicks (on behalf of his business entity) and Weche, who contracted with CRST Expedited, signed their agreements in Tennessee and Alabama and took possession of their trucks in states other than Iowa. *Cash Decl.*, Exs. A–C at 10, 18 (leases showing location of equipment deliveries and e-signatures for both parties); *Compl.*, ¶¶ 27, 72, 81 (referencing ICOAs and leases); *Grim*, 2016 WL 1090575, at *3 n.2 (documents referenced by a complaint are incorporated). Kelchner contracted with CRST Specialized and signed his agreements and took possession of his truck in Indiana. ECF No. 91-1 at 21–22 (lease executed in and equipment delivered to Indiana).

*Anderson*, 782 N.W.2d at 158. While Plaintiffs invoke BOPA's civil remedy provision, the same strict-construction principle applies: Courts must not expand the scope of a penal statute beyond its clear terms. *Cf. Matter of Kaster*, 454 N.W.2d at 877 ("Although forfeiture statutes are not criminal statutes, they are penal in nature and must be strictly construed."); *Karlen v. Jones Lang LaSalle Americas, Inc.*, 766 F.3d 863, 867 (8th Cir. 2014) ("Because [the Minnesota Payment of Wages Act] creates a civil penalty, it must be strictly construed."). At a minimum, any ambiguity about whether BOPA reaches extraterritorial transactions between non-Iowa purchasers and non-Iowa business operations must be resolved in favor of non-application.

Plaintiffs' apparent theory—that because CRST Expedited is headquartered in Iowa and "developed, marketed, and implemented" its lease-purchase program from Iowa, every offer made to every driver nationwide (including by Indiana-based CRST Specialized) should be deemed to "originate" from Iowa and therefore constitute an "offer to sell . . . made in this state"—would nullify § 551A.2's careful structure and raise precisely the Commerce Clause and comity concerns *Jahnke* warns against. On Plaintiffs' reading, any Iowa-based seller of business opportunities would be subject to BOPA with respect to every transaction anywhere in the country, regardless of where the purchaser resides, where the contract is executed, or where the business is operated. That construction would render superfluous § 551A.2(1)(b) and (c) and extend BOPA far beyond Iowa's borders. The Court should instead give effect to § 551A.2's plain text and hold that an "offer to sell" is "made in this state" only when the offer is actually made from or into Iowa within the meaning of § 551A.2(2), and that the statute applies only where one of the three enumerated Iowa nexuses is plausibly alleged.

### D.    Plaintiffs' claims are preempted by federal law.

#### 1.    Plaintiffs' BOPA claims are expressly preempted by the FAAAA.

Congress enacted the FAAAA to ensure that motor carriers may provide transportation

services pursuant to uniform federal rules rather than a patchwork of state economic regulations. *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008). To that end, the statute provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has instructed that "related to" in this provision is "deliberately expansive," capturing state laws that have a connection with, or reference to, carrier prices, routes, or services, even if the effect is indirect or economic rather than operational. *See, e.g.*, *Rowe*, 552 U.S. at 370–71; *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260–61 (2013). In doing so, the Court has relied on the same "related to" formulation in the Airline Deregulation Act, holding in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), that state-law consumer protection enforcement actions challenging airline advertising guidelines were preempted because they bore an impermissible connection to airlines' fares and marketing practices. *Id.* at 384–90.[8] And federal courts applying this standard have repeatedly held that state-law claims imposing "state-imposed obligations" on how a carrier or broker structures and prices its services are preempted.[9] *See also Morales*, 504 U.S. at 388–89

---

[8] The FAAAA's preemption clause was modeled on the Airline Deregulation Act's "related to" language, and Congress used materially identical phrasing to extend the same deregulatory principles to motor carriers. *See* 49 U.S.C. § 41713(b)(1) (ADA); 49 U.S.C. § 14501(c)(1) (FAAAA). Accordingly, courts routinely treat ADA preemption decisions—such as *Morales*—as persuasive authority when analyzing whether state laws "relate to" carrier prices, routes, or services. *See, e.g.*, *Rowe*, 552 U.S. at 370–71 (relying on *Morales* in construing § 14501(c)(1)).

[9] *See, e.g.*, *Arsenault v. One Call Logistics, LLC*, No. 2:24-cv-00022-JAW, 2024 WL 4134845, at *13 (D. Me. Sept. 10, 2024) (Maine Unfair Trade Practices Act claim against broker preempted by FAAAA because the "additional due diligence required to corroborate claims about motor carriers' certifications would markedly change the service the broker is providing from broker to guarantor"); *Saia Motor Freight Line, LLC v. Serampore Indus. Priv. (Ltd.), Inc.*, No. 2:24-cv-164-RWS, 2025 WL 3113720, at **7–8 (N.D. Ga. June 30, 2025) (fraudulent inducement and civil conspiracy counterclaims on carrier's pricing/billing practices preempted by FAAAA); *Ever Better Eating, Inc. v. Jama's Express LLC*, No. 8:21-cv-1798-CEH-CPT, 2022 WL 17782391, at **7–8 (M.D. Fla. Dec. 19, 2022) (Florida Deceptive or Unfair Trade Practices Act claim on misrepresentations on brokering services preempted by the FAAAA); *Tanali Fam. Tr. v. United Parcel Serv., Inc.*, No. 1:22-CV-154, 2024 WL 2946576, at **4–5 (S.D. Tex. June 11, 2024) (Texas Deceptive Trade Practices Act and fraud claims based on delivery-service representations preempted by FAAAA); *Beyer v. Acme Truck Line, Inc.*, 802 So.2d 798, 799–800 (La. Ct. App.

(explaining even "indirect" state regulation through generally applicable consumer protection laws is preempted where it "relate[s] to" carrier prices or marketing practices).

Plaintiffs' BOPA claims do not merely allege generic consumer fraud or contract claims. Rather, Plaintiffs expressly contend that the "Driving Opportunity"—the lease-purchase program through which drivers lease trucks from Lincoln Sales and contract to haul freight for CRST Expedited or CRST Specialized's customers—is itself a "business opportunity" regulated by BOPA. *Compl.*, ¶ 34. According to Plaintiffs, Defendants (1) require an initial investment exceeding $500; (2) furnish the equipment, operational infrastructure, and so-called "marketing plan" including access to Defendants' load boards, negotiated freight contracts, routing and fuel-optimization tools, and advance/settlement administration; and (3) represent that participants will derive income sufficient to cover those payments and generate profit. *See, e.g., id.*, ¶¶ 34, 48, 52–53, 76, 97. Plaintiffs then invoke BOPA seeking to mandate that Defendants fundamentally restructure how they market, document, and implement that capacity-procurement model. They allege Defendants were required to deliver a "fulsome" statutory disclosure statement at least ten days before signing any agreement or paying any consideration; attach all contracts "related to the business opportunity"; provide extensive earnings, turnover, and risk-factor disclosures; and include BOPA-mandated terms in the underlying contracts. *See* Iowa Code § 551A.3; *Compl.*, ¶¶ 4, 5, 34, 72. Plaintiffs seek class-wide recovery of any money paid into the program, together with interest, fees, and injunctive relief compelling future compliance. *Compl.*, ¶ 8; *id.* at 46 (Prayer).

As wielded by Plaintiffs, BOPA is not a neutral, background law; it is a specialized, unwaivable, economic regulation that (1) dictates how Defendants must structure and market their

---

2001) (class unfair trade practices claim against trucking companies by independent owner-operators preempted by FAAAA).

lease-purchase programs, (2) prescribes the content and timing of driver-facing contracts and marketing materials, and (3) imposes sweeping restitution and injunctive remedies on that business model. Plaintiffs seek to use BOPA to regulate "prices" (how and on what terms Defendants may charge for equipment and services and recover their investments) and "services" (how Defendants structure and provide freight-hauling opportunities) within the meaning of § 14501(c)(1). That is exactly the type of state-imposed regime Congress intended to preempt, and allowing Iowa to overlay an unwaivable "business opportunity" regime on Defendants' nationwide lease-purchase programs would fracture the uniform competitive framework FAAAA was designed to protect.

Even if the Court were to view BOPA as a species of "consumer protection," Plaintiffs' requested remedies confirm that its effect on Defendants' prices and services is anything but "tenuous, remote, or peripheral." *Dan's City*, 569 U.S. at 261–62. Under Iowa Code § 551A.8(1), any violation of BOPA's disclosure or contract-content requirements entitles the purchaser to restitution of "all sums paid" for the business opportunity, plus interest, reasonable attorneys' fees, and costs—regardless of any showing of actual loss caused by the challenged omission. Plaintiffs plead those statutory remedies and seek a permanent injunction restricting how Defendants may structure and offer the program going forward. *See Compl.*, ¶ 8; *id.* at 46 (Prayer). Of course, those remedies would directly constrain Defendants' ability to design and offer lease-purchase arrangements on economically viable terms. Faced with strict liability rescission and fee exposure under a state-law regime that mandates specific contract language and pre-contract timing, Defendants would be forced to either abandon or materially alter the lease-purchase model Plaintiffs admit underlies Defendants' freight services. That is precisely the kind of non-tenuous, non-incidental economic impact courts have found sufficient to trigger preemption. *See, e.g.*, *Custom Stud, Inc. v. Meadow Lark Agency, Inc.*, 566 F.Supp.3d 950, 956 (D. Minn. 2021) (treating purely economic counterclaims as "precisely what Congress intended the FAAAA to preempt").

17

## 2. Plaintiffs' BOPA claims are also preempted by the Federal Leasing Regulations.

Plaintiffs' attempt to use BOPA to regulate the terms and remedies of lease-purchase and owner-operator arrangements also conflicts with the comprehensive federal leasing scheme codified in 49 U.S.C. § 14102 and implemented by 49 C.F.R. Part 376. Under that regime, when a motor carrier uses equipment that it does not own to transport property, federal law directs the terms of the lease—including control, compensation, charge-backs, documentation, and settlement practices[10]—and provides a private cause of action for "damages sustained . . . as a result of" violations of those regulations. 49 U.S.C. § 14704(a)(2); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325–26 (11th Cir. 2010) (§ 14704(a)(2) requires proof of injury "as a result of" the violation). This carefully calibrated, causation-based remedial scheme reflects Congress's decision to regulate leases in a uniform, nationwide way.

BOPA overlays a second, conflicting set of requirements on that same relationship. As pleaded, Plaintiffs contend that, because the Driving Opportunity is a "business opportunity," Defendants were required to: deliver a separate, BOPA-mandated "disclosure statement" at least ten days before any agreement is signed or any payment is made; include within that disclosure audited financial statements, risk-factor language, earnings representations, numbers of purchasers and cancellations, and other non-lease-specific information; and include specific BOPA-prescribed terms and font-size in the "business opportunity contract," on pain of statutory

---

[10] Among other things, the regulations require: A written lease that identifies the parties, the equipment, the duration of the lease, and the carrier's exclusive possession and control of the equipment for the term of the lease, 49 C.F.R. § 376.12(b), (c); a written specification of the compensation to be paid to the lessor, including how it will be calculated (*e.g.*, percentage of freight revenue, mileage, or flat rate), *id.* § 376.12(d); disclosure of all charge-backs and items initially paid by the carrier but ultimately deducted from the lessor's compensation, *id.* § 376.12(h); and provision of freight-bill or equivalent documentation when compensation is based on a percentage of revenue, and the lessor's right to inspect supporting materials, *id.* § 376.12(g).

rescission and fee-shifting. Iowa Code §§ 551A.3, 551A.4; *Compl.*, ¶ 4. Thus, for the very same carrier-owner-operator arrangements that Part 376 already regulates, BOPA would require Defendants to adopt a second, state-specific disclosure and contract-content regime that is unwaivable and tailored to Iowa's "business opportunity" policy goals.

The conflict is even starker at the remedial level. Again, under the federal scheme, a driver may recover only "damages sustained . . . as a result of" a carrier's violation of the leasing regulations. 49 U.S.C. § 14704(a)(2). Courts construing that provision have required proof of causation and actual injury; a technical regulatory violation does not automatically entitle the driver to disgorgement of all sums paid under the lease. *See, e.g.*, *Landstar*, 622 F.3d at 1325–26 (requiring proof that plaintiff "sustained an injury as a result of [the] failure to comply with § 376.12"). Meanwhile, BOPA, as Plaintiffs construe it in their Complaint, provides that *any* violation of its disclosure or registration provisions entitles the purchaser to, among other remedies, rescission and recovery of all sums paid for the business opportunity—plus interest, attorneys' fees, and costs—without regard to whether those sums were lost "as a result of" the particular omission or misrepresentation. Iowa Code § 551A.8(1). Allowing Plaintiffs to circumvent § 14704(a)(2)'s causation-based damages scheme by re-pleading leasing-related grievances as BOPA claims would frustrate Congress's choice of a uniform remedial standard.

### E.    Plaintiffs lack standing to pursue injunctive or declaratory relief.

Article III requires a plaintiff seeking forward-looking relief "demonstrate standing for each claim he seeks to press and for each form of relief that is sought," including a concrete, particularized, and "real and immediate" threat of future injury traceable to each defendant and likely to be redressed by the requested relief. *Davis*, 554 U.S. at 734; *O'Shea v. Littleton*, 414 U.S. 488, 493–95 (1974). Plaintiffs cannot "piggyback off the injuries 'suffered by other, unidentified members of the class'" to obtain prospective relief; they must allege their own continuing case or

controversy. *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 294 (6th Cir. 2023) (citation omitted).

Plaintiffs' Complaint forecloses any contention they face a real and immediate threat of harm again by Defendants' alleged practices. Plaintiffs expressly allege they "are former Drivers for CRST Trucking and lessees of CRST Lincoln Sales," and they plead closed-ended driving periods that ended months before the Complaint was filed. *Compl.*, ¶ 3, 12–14. They do not allege that they currently contract with any Defendant, they are presently subject to the challenged recruiting, leasing, or deduction practices, or Defendants are currently enforcing any lease, ICOA, or related provision against them. At most, Plaintiffs allege that they "would like to drive and/or consider driving with CRST . . . again in the future," that they "expect" Defendants will advertise and send them promotional emails, and that they are "concerned" Defendants may in the future engage in various reporting or collection practices. *Id.*, ¶¶ 79–81.

Such "some day" intentions and speculative fears about what Defendants "will" do are, insufficient to establish the kind of certainly impending, non-hypothetical future injury required for injunctive or declaratory relief. *See O'Shea*, 414 U.S. at 496–98. Indeed, courts routinely hold former workers lack standing to seek prospective relief when they face no ongoing or imminent exposure to the alleged violative practices.[11] Moreover, because the named Plaintiffs lack standing to pursue injunctive or declaratory relief individually, they also cannot represent a class seeking such relief. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999). The Court should therefore strike Plaintiffs' prayer for declaratory and injunctive relief.

## IV.    CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint.

---

[11] *See, e.g., Ledet v. Freightbull, Inc.*, No. 24-cv-10974, 2025 WL 1505406, at *7 (N.D. Ill. May 27, 2025) (truck driver who "no longer work[ed]" for defendant lacked standing for injunctive relief); *Roberson v. Kan. City S. Ry. Co.*, No. 4:22-CV-00358-RK, 2024 WL 4502281, at *6 (W.D. Mo. Oct. 16, 2024) ("Generally, former employees do not have standing to request injunctive or declaratory relief against a former employer."); *Besette v. AT&T Corp.*, No. 03-0830-CV-W-HFS, 2006 WL 2927561, at *1 (W.D. Mo. Oct. 11, 2006) (declaratory-judgment claim moot where plaintiff no longer had a live controversy).

Dated: December 15, 2025           Respectfully submitted,

*/s/ James H. Hanson*
James H. Hanson (*pro hac vice*)
Angela S. Cash (*pro hac vice*)
Andrew J. Ireland (*pro hac vice*)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas Wolle
SIMMONS PERRINE PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
twolle@sp.law

*Attorneys for Defendants,*
*CRST International Holdings, LLC, CRST Expedited,*
*Inc., CRST Specialized Transportation, Inc., and*
*CRST Lincoln Sales, Inc.*