# In the Iowa Supreme Court

No. 25–0607

Submitted November 13, 2025—Filed December 19, 2025

**Harley Kelchner,** individually and on behalf of all others similarly situated,

Appellee,

vs.

**CRST Expedited Inc., CRST Specialized Transportation, Inc., CRST Lincoln Sales, Inc.,** and **John Smith,**

Appellants.

Certified question of law from the United States District Court for the Northern District of Iowa, C.J. Williams, United States District Court Chief Judge.

A federal district court certified the question of whether Iowa law requires registering foreign corporations to consent to personal jurisdiction in Iowa. **Certified Question Answered.**

May, J., delivered the opinion of the court, in which all justices joined.

James A. Eckhart (argued), Angela S. Cash, and James H. Hanson of Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, Indiana, and Thomas D. Wolle and Kevin J. Visser (until withdrawal) of Simmons, Perrine, Moyer, Bergman, PLC, Cedar Rapids, for appellants.

Michael von Klemperer (argued) of Fegan Scott LLC, Washington, D.C., and J. Barton Goplerud and Brian O. Marty of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

CLERK OF SUPREME COURT

DEC 19, 2025

ELECTRONICALLY FILED

Brenna Bird, Attorney General; Eric Wessan (argued), Solicitor General; and Ian M. Jongewaard (until withdrawal), Assistant Solicitor General, for amicus curiae State of Iowa.

**May, Justice.**

An Indiana trucking company was sued by a Florida truck driver in an Iowa-based federal district court. Some Iowa defendants were sued as well. The Indiana company moved to dismiss for lack of personal jurisdiction in Iowa. The federal district court denied that motion but granted the company's request to certify a related question of Iowa law to our court. The question is this:

> Under Iowa law, does a foreign corporation consent to the personal jurisdiction of the Iowa courts by registering to do business in Iowa and appointing an agent for service of process in Iowa when a plaintiff then serves the foreign corporation's designated agent?

We find the answer to this question in the text of the Iowa Code, the words chosen by our legislature. Iowa Code chapter 490 requires foreign corporations that register in Iowa to appoint an "agent for service of process, notice, or demand required or permitted by law to be served on the corporation." Iowa Code § 490.504(1) (2025). But the Code does not mention—much less require—any "consent" to "personal jurisdiction" by registering foreign corporations. And this court cannot create a consent-to-jurisdiction requirement that our legislature chose not to impose.

So we answer the certified question in the negative. Under Iowa law, a foreign corporation *does not* consent to personal jurisdiction by registering to do business in Iowa, appointing an agent for service of process in Iowa, or receiving service through that agent.

## I. Background Facts and Proceedings.

"When we answer a certified question, we rely upon the facts provided with the certified question." *Wagner v. State*, 952 N.W.2d 843, 848 (Iowa 2020) (quoting *Baldwin v. City of Estherville*, 915 N.W.2d 259, 261 (Iowa 2018)). Here is a summary of the facts provided.

CRST Specialized Transportation, Inc. (Specialized) is a transportation company that delivers goods throughout the United States. Harley Kelchner is an independent contractor driver who was, and apparently still is, under contract with Specialized.

Specialized is incorporated in Indiana and has its principal place of business in Indiana. Specialized has been registered to do business in Iowa as a foreign corporation since 2020. The parties disagree about the extent of Specialized's other contacts with Iowa. Specialized claims to have no employees in Iowa and, indeed, no "physical presence in Iowa." Although Specialized acknowledges that it has a sister company in Iowa, Specialized claims that each company has its own operating authority, personnel, headquarters, and customers. Kelchner, on the other hand, claims that there are far more extensive contacts between Specialized and the Iowa-based defendants. Kelchner characterizes the companies as an interrelated network with common ownership, control, management, operations, agents, and so on.

Kelchner is a Florida resident. In 2022, Kelchner reached out to Specialized and expressed interest in Specialized's program for independent contractor drivers. Later, Kelchner began driving with Specialized throughout the United States. At some point, a dispute arose. And in 2024, Kelchner filed the suit at issue in the United States District Court for the Northern District of Iowa, which we refer to here as the federal district court. Kelchner claims the defendants violated Iowa's business opportunity promotions statutes. *See* Iowa Code ch. 551A.

Specialized filed a motion to dismiss for want of personal jurisdiction. Kelchner resisted on three grounds: (1) Specialized consented to personal jurisdiction by registering as a foreign corporation and designating an agent for

service of process in Iowa; (2) in any event, Specialized's other ties with Iowa are sufficient to establish personal jurisdiction; and (3) at a minimum, Kelchner should be allowed to conduct jurisdictional discovery prior to a ruling on Specialized's motion to dismiss.

The federal district court concluded that Specialized "consented to personal jurisdiction in the Iowa courts by registering with the secretary of state and designating an agent for service of process in Iowa." And so the court denied Specialized's motion to dismiss.

Specialized then asked the court to either (1) certify its motion to dismiss order for interlocutory appeal to the United States Court of Appeals for the Eighth Circuit or, alternatively, (2) certify a question of state law to our court. The court declined to certify an interlocutory appeal but instead certified a question to our court.

## II. Should We Answer the Certified Question?

Iowa Code section 684A.1 governs our power to answer certified questions. It provides:

> The supreme court [of Iowa] may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

*Id.*

Accordingly, we have discretion to answer certified questions when four criteria are met:

1.    A proper court has certified the question.

2.  The question concerns the "law of this state," that is, Iowa law.

3.  The question "may be determinative of the cause then pending in the certifying court."

4.  It appears to the certifying court that there is no controlling Iowa precedent.

*Id.*; *see Wagner*, 952 N.W.2d at 849–50.

In this case, all four criteria are met. The first criterion is met because the question has been certified by "a United States district court," which is one of the proper courts under the statute. Iowa Code § 684A.1. The second criterion is met because the certifying court is expressly asking us to answer a question of Iowa law, the "law of this state." *Id.* The third criterion is met because the answer to the certified question "*may* be determinative" of whether the federal district court has personal jurisdiction over a defendant, Specialized. *Id.* (emphasis added.) We appreciate Kelchner's point that he also has an alternative jurisdictional argument, namely, his contention that Specialized's business activities create sufficient contacts with Iowa to satisfy a minimum contacts analysis.[1] But if that argument fails in federal court, the answer to the certified question could determine the personal jurisdiction issue. Finally, the fourth criterion is met because it appeared to the federal district court that there is no controlling Iowa precedent on the issue. *Id.*

Because the four criteria are met, we have discretion to answer the question. *Wagner*, 952 N.W.2d at 849–50. We choose to do so.

---

[1]Nothing in this opinion should be read as a comment on the merits of Kelchner's alternative argument.

### III. The Question Presented.

Again, here is the question certified:

Under Iowa law, does a foreign corporation consent to the personal jurisdiction of the Iowa courts by registering to do business in Iowa and appointing an agent for service of process in Iowa when a plaintiff then serves the foreign corporation's designated agent?

**A. Overview.** We begin our analysis of this question with some general discussion about jurisdiction. Although "jurisdiction" has more than one definition, the jurisdiction at issue here is "[a] court's power to decide" a particular case. *Jurisdiction, Black's Law Dictionary* 1014 (12th ed. 2024). For a court to have power to decide a particular case, the court must have both (1) power to decide the kind of claim that is before the court, which is called subject matter jurisdiction; and (2) "power over the parties before" the court, which is called personal jurisdiction. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). In this case, we focus on personal jurisdiction—a court's power over a particular party, Specialized.

1. *Personal jurisdiction.* For a court to exert personal jurisdiction over a nonresident corporate defendant like Specialized, three requirements usually must be met. *See, e.g., Waldman v. Pal. Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (discussing a three-requirement model). The three requirements are: (1) the satisfaction of constitutional due-process limitations; (2) the existence of an independent source of law that authorizes the court's exercise of personal jurisdiction on the defendant; and (3) the completion of lawful service of process on the defendant. *Id.* We briefly discuss each. We also mention some exceptions.

a. *Due process.* We start with the first and best-known requirement: a court's assertion of personal jurisdiction must not violate the "individual liberty

interest" that is protected by the due-process provisions of the United States Constitution. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).[2] This due-process requirement is satisfied when "general (sometimes called all-purpose) jurisdiction" exists or "specific (sometimes called case-linked) jurisdiction" exists. *Harding v. Sasso*, 2 N.W.3d 260, 264 (Iowa 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

For "specific jurisdiction" to exist, the foreign defendant must have directed its activities toward the forum state in a way that amounts to "purposeful availment" of the right to do business there; moreover, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see Harding*, 2 N.W.3d at 265. So, as the name suggests, *specific*-jurisdiction claims usually require a fact-intensive, case-by-case analysis of the relationship among the defendant's actions, the forum state, and the claims brought. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Conversely, general jurisdiction is not case specific. Rather, when general jurisdiction exists, a court may "adjudicate any and all claims against a defendant without regard to whether the claims relate to the forum state or the defendant's activities in the forum state." *Harding*, 2 N.W.3d at 264. Ordinarily, though, general jurisdiction exists only when the defendant is "essentially at home" in the forum state. *Id.* For a corporate defendant, this essentially-at-home

---

[2]For state court cases, this liberty interest is protected by the Due Process Clause in the Fourteenth Amendment. *Harding v. Sasso*, 2 N.W.3d 260, 264 (Iowa 2023). For federal court cases, this liberty interest is protected by the Due Process Clause in the Fifth Amendment. *Fuld v. Pal. Liberation Org.*, 606 U.S. 1, 11 (2025). As the Supreme Court recently explained in *Fuld v. Palestine Liberation Organization*, however, this distinction *usually* makes no difference. *Id.*

requirement is usually met only in two places: the state of incorporation and the state of the principal place of business. Anthony J. Gaughan, *The Unsettled State of Corporate General Personal Jurisdiction*, 103 Neb. L. Rev. 131, 133 (2024) (discussing *BNSF Ry. v. Tyrrell*, 581 U.S. 402 (2017); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), collectively referred to as the "*Goodyear* Trilogy").

b. *Independent source of law.* Even when these due-process requirements are met, however, there must also be an independent "source of law" that authorizes the court to exercise personal jurisdiction. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 382 (3d Cir. 2022) ("[I]f no source of law authorizing service of process permits the exercise of personal jurisdiction with regard to the claims at issue, we are unable to exercise personal jurisdiction over those claims, regardless of what the outer limits of the Constitution might theoretically permit."). For Iowa state courts, this source of law is Iowa Rule of Civil Procedure 1.306, which "allows for the exercise of personal jurisdiction up to the federal constitutional limit." *Harding*, 2 N.W.3d at 264 (citing *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 583 (Iowa 2015); *Sioux Pharm, Inc. v. Summit Nutritionals Int'l Inc.*, 859 N.W.2d 182, 188 (Iowa 2015); *Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 891 (Iowa 2014)). For federal courts in Iowa, Federal Rule of Civil Procedure 4(k)(1)(A) has the same effect. As a practical matter, then, the first two requirements of the jurisdictional analysis (due process and independent source of law) generally collapse into a single due-process inquiry. *See Harding*, 2 N.W.3d at 264.

c. *Lawful service of process.* Finally, even when the due-process and source-of-law requirements are satisfied, the court still cannot exercise personal jurisdiction unless and until the service-of-process requirement is fulfilled. *Omni*

*Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). While the due-process and source-of-law requirements tell us whether a foreign defendant *can be* brought within a court's power, lawful service of process is what actually *brings* that defendant into court. *Lucas v. Warhol*, 23 N.W.3d 19, 23 (Iowa 2025) ("[T]he defendant is officially brought into court and required to defend against the lawsuit[] when the plaintiff personally serves the defendant with the original notice and a copy of the petition."); *Sioux County v. Kosters*, 191 N.W. 315, 316 (Iowa 1922) ("The function of [service of] an original notice is to bring the defendant into court to answer to a petition duly filed . . . ."); *Diltz v. Chambers*, 2 Greene 479, 480 (Iowa 1850) ("It is the service which brings the defendant into court."); *Tillman v. Hinson*, No. 23–1255, 2025 WL 546741, at *3 (Iowa Ct. App. Feb. 19, 2025) ("A lawsuit 'is commenced by filing a petition with the court.' But before things can really get going, a plaintiff must bring the defendant into court by serving an original notice and copy of the petition on the defendant." (quoting Iowa R. Civ. P. 1.301(1))).

2. *Exceptions.* There are, of course, some circumstances in which elements of this multi-part analysis can become unnecessary. *See, e.g., Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610, 616 (1990) (holding that due process requires no connection between the litigation and the forum state if the defendant is a natural person and is "physically present in the State at the time process is served upon him"). For example, it is common for defendants to simply waive the formal service requirement by voluntarily appearing. Along similar lines, because due-process restrictions on personal jurisdiction are—essentially—"an individual right" to be free from judicial power, those restrictions can also be waived. *Ins. Corp. of Ir.*, 456 U.S. at 703. Indeed, as the court noted in *Insurance Corp. of Ireland, Ltd.*, "[a] variety of legal arrangements

have been taken to represent express or implied consent to the personal jurisdiction of the court." *Id.*

Jurisdiction-by-consent was the topic of the Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Co.,* 600 U.S. 122, 127 (2023). The plaintiff, Robert Mallory, had worked in Ohio and Virginia for a railroad company that was incorporated in Virginia and had its headquarters there too. *Id.* at 126. After leaving the company, Mallory hired Pennsylvania lawyers to sue the railroad in Pennsylvania state court under a federal workers' compensation program for railroad employees. *Id.* The railroad moved to dismiss on personal jurisdiction grounds. *Id.* Mallory resisted, arguing that "Pennsylvania requires out-of-state companies that register to do business in the Commonwealth to agree to appear in its courts on 'any cause of action' against them." *Id.* at 127 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i), (b) (2019)). "By complying with this statutory scheme, Mr. Mallory contended, Norfolk Southern had consented to suit in Pennsylvania on claims just like his." *Id.*

The Pennsylvania Supreme Court agreed with Mallory that, indeed, Pennsylvania law "requires an out-of-state firm to answer any suits against it [in Pennsylvania courts] in exchange for status as a registered foreign corporation and the benefits that entails." *Id.* (discussing *Mallory v. Norfolk S. Ry.*, 266 A.3d 542, 561–63 (Pa. 2021), *vacated*, 600 U.S. 122). Even so, the court held, Mallory "could not invoke that [Pennsylvania] law because it violates" constitutional due-process limits. *Id.*

The United States Supreme Court then agreed to decide whether—as the Pennsylvania court had held—"the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id.* The Court concluded

that it did not. *Id.* at 146. Following its 1917 decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, the *Mallory* Court held that statutes like Pennsylvania's—which require out-of-state corporations to "consent[] to in-state suits in order to do business in" Pennsylvania—do not violate the Due Process Clause. *Mallory*, 600 U.S. at 138 (citing *Pennsylvania Fire Ins. Co.*, 243 U.S. 93 (1917)).

In the matter before us now, both parties suggest that the Supreme Court's decision in *Mallory* is important to our analysis. But we think the issues here are very different. In *Mallory*, the fight wasn't really about state law. Indeed, it seemed pretty well agreed that Pennsylvania's statute *did* require foreign corporations to consent to personal jurisdiction in Pennsylvania. *Mallory*, 600 U.S. at 127. Rather, the fight in *Mallory* was about whether it was *constitutional* for Pennsylvania to impose that requirement. *Id.* Conversely, in this case, we are not asked to decide a constitutional question. We are not asked to decide whether Iowa *could* constitutionally require foreign corporations to consent to personal jurisdiction in Iowa. Rather, the question before us is whether the Iowa Code *actually* imposes such a requirement. We turn to that state-law question now.

**B. Statutory Interpretation.** Iowa Code chapter 490 is the Iowa Business Corporation Act. It governs the registration of foreign corporations and requires them to appoint agents for service. *See* Iowa Code §§ 490.504, .1502. To decide whether that registration and appointment involve consent to personal jurisdiction, we must interpret chapter 490.

1. *Interpretive principles.* As with all statutes, our interpretation of chapter 490 is governed by the statutory text, the words that were "enacted into law" by the people's elected representatives. *Doe v. State*, 943 N.W.2d 608, 610

(Iowa 2020); *see King v. Burwell*, 576 U.S. 473, 498 (2015) ("In a democracy, the power to make the law rests with those chosen by the people."). Usually, we give statutory words "their common, ordinary meaning in the context within which they are used." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016) (quoting *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014)). But when the legislature defines its words, we apply those definitions. *Jorgensen v. Smith*, 2 N.W.3d 868, 873 (Iowa 2024). And when a statute uses technical terms, we apply their technical meaning. *Id.* at 876; *see* Iowa Code § 4.1(38). And when a statute includes words that have acquired special meaning in the law, we apply their legal meaning. Iowa Code § 4.1(38); *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 682 (Iowa 2022).

Finally, we note a special rule that may be relevant here. Our court has recognized the "strongly held and frequently repeated principle that we strictly construe statutes providing extraordinary methods of securing jurisdiction over nonresidents." *L.F. Noll Inc. v. Eviglo*, 816 N.W.2d 391, 393–94 (Iowa 2012) (citing *Buena Vista Manor v. Century Mfg. Co.*, 221 N.W.2d 286, 288 (Iowa 1974)); *see also Morris & Co. v. Skandinavia Ins.*, 279 U.S. 405, 409 (1929) ("And, in the absence of language compelling it, such a statute [requiring appointment of an agent for service] ought not to be construed to impose upon the courts of the state the duty, or to give them power, to take cases arising out of transactions so foreign to its interests."); *Mo. Pac. R. Co. v. Clarendon Boat Oar Co.*, 257 U.S. 533, 535 (1922) ("[I]n dealing with statutes providing for service upon foreign corporations doing business in the state upon agents whose designation as such is especially required, this court has indicated a leaning toward a construction, where possible, that would exclude from their operation causes of action not arising in the business done by them in the state.").

2. *Application.* Now we address the statutory text itself. Iowa Code section 490.1502(1) prohibits a foreign corporation from doing business in Iowa "until it registers" under chapter 490. Registration is achieved by delivering "a foreign registration statement to the secretary of state for filing." *Id.* § 490.1503(1). *But see* § 490.1503(2) (requiring filing of "certificate of existence"). The registration statement must state several facts about the foreign corporation, including the corporation's name, "jurisdiction of formation," the "street and mailing addresses of the foreign corporation's principal office," and—significant here—"the street and mailing addresses of the foreign corporation's registered office in this state and the name of its registered agent at that office." *Id.* § 490.1503(1)(*a*)–(*d*). The corporation's "registered agent," says the Code, "is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation." *Id.* § 490.504(1). So long as a foreign corporation remains registered in Iowa, it must "continuously maintain" an agent of this kind. *Id.* § 490.501(1)(*b*).

With these requirements in mind, we finally turn to the ultimate question: If a foreign corporation complies with these requirements by registering and appointing an agent, does that corporation consent to personal jurisdiction in Iowa for any and all suits—including suits for which traditional due-process principles would otherwise preclude a finding of personal jurisdiction here—so long as service is made on the appointed agent? The answer is "No." The relevant portions of chapter 490 include no mention of "consent" or "jurisdiction," much less "personal jurisdiction," nor any synonyms. Yet these terms, all of which carry familiar legal meanings, are well known to our legislature. They and their synonyms appear in many *other* provisions of our Code. *Id.* § 505.28 ("consent to jurisdiction"); *id.* § 542.20(7)(*a*) ("consents to the personal . . . jurisdiction");

*id.* § 85.71(2) ("personal jurisdiction"); *id.* § 252A.5(1) (same); *id.* § 489.14702 (same). For instance, under section 321.498(1)(*a*), a nonresident's operation of a motor vehicle in Iowa is "deemed to be . . . [a]n agreement by the nonresident that the nonresident shall be subject to the jurisdiction of" Iowa courts. And under section 505.28, engaging in certain insurance-related activities "constitutes consent . . . to the jurisdiction" of Iowa courts. And under section 542.20, paragraph (7)(*a*), if a nonresident firm wishes to practice public accounting in Iowa under a "practice privilege," that firm must "consent[] to the personal . . . jurisdiction" of Iowa's accountancy examining board. *See also id.* § 542.3(2) (defining "board").

Likewise, in chapter 490, if the legislature had chosen to require consent to personal jurisdiction from every foreign corporation that registers and appoints an agent in Iowa, the legislature could have said so in the same express terms. But it did not.

In short, chapter 490's unambiguous text shows that the legislature chose not to require consent to personal jurisdiction from foreign corporations that register and appoint an agent for service. Moreover, even if chapter 490 were ambiguous because it was susceptible to more than one reasonable interpretation as to the question before us (it is not), we would select the stricter interpretation, and we would still hold that compliance with Iowa's registration-and-agent-appointment requirements *does not* constitute consent to personal jurisdiction in Iowa. *L.F. Noll Inc.,* 816 N.W.2d at 393–94; *see Morris & Co.,* 279 U.S. at 409; *Mo. Pac. R.R.,* 257 U.S. at 535.

We note that several other courts have reached similar conclusions when interpreting similar statutes in other jurisdictions. *See, e.g.*, *Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, 691 F. Supp. 3d 1282, 1291 (D. Colo. 2023) (rejecting

registration-based consent because "neither § 7-90-801 nor § 7-90-805 expressly informs foreign entities that by registering to do business in Colorado, or by designating a Colorado registered agent, they are consenting to the personal jurisdiction of Colorado courts"); *Aspen Am. Ins. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 446–47 (Ill. 2017) (rejecting registration-based consent because "[n]one of the [Illinois] provisions require foreign corporations to consent to general jurisdiction as a condition of doing business in Illinois, nor do they indicate that, by registering in Illinois or appointing a registered agent, a corporation waives any due process limitations on this state's exercise of general jurisdiction"); *Lanham v. BNSF Ry.*, 939 N.W.2d 363, 370–71 (Neb. 2020) (rejecting registration-based consent because "Section 21-19,152 does not explicitly state that compliance with the statute constitutes a waiver of the foreign corporation's right to require personal jurisdiction," and a theory of implied consent would exceed due-process limitations); *Chavez v. Bridgestone Ams. Tire Operations, LLC*, 503 P.3d 332, 345–46 (N.M. 2021) (rejecting registration-based consent because "[a]t no point does the BCA state that a foreign corporation consents to general personal jurisdiction by registering and appointing a registered agent under the Act"); *Aybar v. Aybar*, 177 N.E.3d 1257, 1260 (N.Y. 2021) (rejecting registration-based consent because "[t]he [registration and agent appointment] statutes do not, however, condition the right to do business on consent to the general jurisdiction of New York courts"); *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 73 (Wis. 2017) ("Because the text of § 180.1507 does not even mention jurisdiction, much less consent, Countrywide's compliance with the statute does not, on its own, confer jurisdiction."). *But see, e.g., Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021) (noting that although

Georgia's code "does not expressly notify out-of-state corporations that . . . maintaining a registered office or registered agent . . . subjects them to general jurisdiction," other precedent did serve as sufficient notice that registration equates consent to jurisdiction).

For example, the Eleventh Circuit said this about Florida's registration statute:

> [N]othing in [the Florida statute's] plain language indicates that a foreign corporation that has appointed an agent to receive service of process consents to general jurisdiction in Florida. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (explaining that to discover the Florida legislature's intent, "we first examine the statute's plain language" (citing *Atwater v. Kortum*, 95 So. 3d 85, 90 (Fla. 2012))). Indeed, "consent" and "personal jurisdiction" are never mentioned in the provisions the [plaintiffs] cite. Instead, these provisions simply require foreign corporations to maintain an agent to receive service of process and to allow complaining parties to serve documents upon that agent. Nothing in these provisions would alert a corporation that its compliance would be construed as consent to answer in Florida's courts for any purpose.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1320 (11th Cir. 2018).

Likewise, nothing in the Iowa Code's plain language suggests that registration plus agent appointment equals consent to personal jurisdiction for foreign corporations. And so our answer to the certified question must be "No."

3. *Counterarguments.* We have considered all of Kelchner's responses. He places most of his focus on two (somewhat overlapping) theories. First, Kelchner suggests that because service is always sufficient to establish personal jurisdiction, appointment of an agent for service in Iowa must constitute consent to personal jurisdiction in Iowa for any and all cases. We disagree. We reject Kelchner's essential premise: the notion that service—without more—is sufficient to establish personal jurisdiction. We recognize, of course, that some language in prior opinions may seem to support Kelchner's premise if that

language is taken out of context. *See, e.g.*, *Schoulte v. Great Lakes Forwarding Corp.*, 298 N.W. 914, 916 (Iowa 1941) ("One of these methods of securing jurisdiction is by service upon an agent, who admittedly was qualified for that purpose."). As Specialized points out, though, that language probably just reflects the fact that service is "a *necessary* prerequisite to a court exercising jurisdiction," not that service is "*sufficient*, in and of itself, to confer jurisdiction." (Emphases added.) In any event, we now clarify that service alone does not establish personal jurisdiction over a foreign corporate defendant. *But cf. Burnham*, 495 U.S. at 616 (permitting tag jurisdiction on natural person); *Mallory*, 600 U.S. at 129 (noting that tag jurisdiction applies to natural persons). Rather, as we discussed earlier, courts can assert personal jurisdiction over a corporate defendant only if *multiple* requirements are met. Those multiple requirements include *both* the satisfaction of constitutional due-process limitations *and* lawful service of process. *See Waldman*, 835 F.3d at 327. So, although service is the way that a defendant is brought into court, that service is only *effective* if that defendant is already subject to the court's jurisdiction. Indeed, we made it clear more than a century ago that "[u]nless the defendant is [already] subject to the [court's] jurisdiction, the service of process does not confer jurisdiction." *Jones v. Ill. Cent. R. Co.*, 175 N.W. 316, 318 (Iowa 1919). The same is true today. Service alone is not enough unless, as Kelchner argues here, the defendant has consented to personal jurisdiction. As explained, though, we do not believe that Iowa's registration-and-agent-appointment requirements involve that sort of consent.

This brings us to Kelchner's second response. Although chapter 490 does not *expressly* require consent to personal jurisdiction, Kelchner asserts that a consent requirement is nevertheless *implied* by Iowa's agent-appointment

requirement. This implied-consent approach finds support in Eighth Circuit decisions such as *Knowlton v. Allied Van Lines, Inc.*, in which the court interpreted Minnesota law. 900 F.2d 1196, 1199 (8th Cir. 1990); *see also Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1394 (8th Cir. 1993) (applying a similar approach to South Dakota law). Although Minnesota's statute required foreign corporations to appoint an agent for service, it created no express tie between agent appointment and personal jurisdiction. *Id.* at 1199–200. Even so, the Eighth Circuit believed that "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." *Knowlton*, 900 F.2d at 1199. Moreover, the relevant Minnesota statute contained "no words of limitation to indicate that this type of service is limited to claims arising out of activities within the state." *Id.* And so, the court concluded, "appointment of an agent for service of process . . . gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state." *Id.* at 1200.

We respectfully decline to apply this approach when interpreting Iowa's law.[3] First, as explained, we believe the plain language of Iowa's registration statutes—which includes no mention of "consent" or "personal jurisdiction"—is dispositive. It shows that Iowa's legislature chose not to require consent to personal jurisdiction.

---

[3]Iowa's federal district courts have (understandably) viewed *Knowlton*'s approach as "controlling circuit law" and, therefore, have applied that approach when interpreting Iowa law. *Scott v. Milosevic*, No. C17–4004–LTS, 2018 WL 11304191, at *8 (N.D. Iowa May 2, 2018); *accord Daughetee v. CHR Hansen, Inc.*, No. C09–4100–MWB, 2011 WL 1113868, at *7 (N.D. Iowa Mar. 25, 2011); *Constr. Prods. Distribs., LLC v. Onward Techs., Inc.*, No. 4:07–CV–00343–JAJ, 2007 WL 3287299, at *6 (S.D. Iowa Nov. 6, 2007); *Jacobson Distrib. Co. v. Am. Standard, Inc.*, No. 4:07–CV–00208–JAJ, 2007 WL 3208562, at *4 (S.D. Iowa Sep. 5, 2007). As explained, however, we decline to apply *Knowlton*'s approach when interpreting Iowa law. Accordingly, we decline to follow *Knowlton*-based decisions by Iowa's federal district courts.

Second, and in any event, we do not believe that "[t]he *whole* purpose" of Iowa's agent-designation requirement "is to make a nonresident suable" in Iowa courts in every sort of case. *Knowlton*, 900 F.2d at 1199 (emphasis added). As a preliminary matter, we note that Iowa's statute requires a foreign corporation's agent to receive *not only* service of process *but also* any "notice" or "demand required or permitted by law." Iowa Code § 490.504(1). So it is not even clear that accepting service of suit papers is the "whole" purpose of Iowa's agent requirement.

Moreover, even if service acceptance were the only purpose for an appointed agent, service alone does not make a corporate defendant "suable" in Iowa. Rather, as discussed, for a foreign corporation to be suable in Iowa, traditional due-process personal jurisdiction requirements must *also* be satisfied. *See Jones*, 175 N.W. at 318.

Likewise, even if an agent's only purpose is to accept service, appointing a service agent still isn't the same as consenting to personal jurisdiction. *Cf.* Fed. R. Civ. P. 4(*d*)(5) (stating that waiver of service "does not waive any objection to personal jurisdiction"). This distinction is understood by our legislature. As we've discussed, under Iowa Code section 542.20, paragraph (7)(*a*), if a nonresident firm wishes to practice public accounting in Iowa under a "practice privilege," that firm must "consent[] to the personal . . . jurisdiction" of Iowa's accountancy examining board. In the very next paragraph, (7)(*b*), the legislature *separately* requires those same practice-privilege firms to "appoint" an Iowa regulatory agency as the firm's "agent upon whom process can be served." Yet if, as Kelchner suggests, agent appointment under paragraph 7(*b*) *equals* consent to personal jurisdiction in Iowa, then the *separate* jurisdictional consent in paragraph 7(*a*) would serve no purpose. But we usually don't treat statutory

provisions as if they serve no purpose. *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 703 (Iowa 2022). The better reading, then, is that paragraphs 7(*a*) and 7(*b*) each have independent importance. They're each important because agent appointment *is not* the same as consent to personal jurisdiction.

And only one of those things—appointment of an agent—is required of foreign corporations like Specialized. Consent to personal jurisdiction is not.

### IV. Conclusion.

The United States District Court for the Northern District of Iowa certified this question to us: "Under Iowa law, does a foreign corporation consent to the personal jurisdiction of the Iowa courts by registering to do business in Iowa and appointing an agent for service of process in Iowa when a plaintiff then serves the foreign corporation's designated agent?" We have answered that question in the negative. Costs shall be equally divided between the parties. Iowa Code § 684A.5.

**Certified Question Answered.**



State of Iowa Courts

| Case Number | Case Title |
| --- | --- |
| 25-0607 | Kelchner v. CRST Expedited, Inc. |

Electronically signed on 2025-12-19 13:21:34