**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CRST International Holdings LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc., CRST Lincoln Sales, Inc., John Smith, an individual, and Michael Gannon, an individual. <br><br> Defendants. | CASE NO. 1:24-cv-00082-CJW-KEM <br><br> Honorable Chief Judge C.J. Williams <br><br> Honorable Chief Magistrate Judge Kelly K.E. Mahoney |

**PLAINTIFFS' RESISTANCE TO INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    BACKGROUND ..................................................................................................... 1

    A.   Procedural History.................................................................................... 1

    B.   Defendants' Fraudulent Scheme.............................................................. 2

II.   LEGAL STANDARD........................................................................................... 7

III.  ARGUMENT....................................................................................................... 8

    A.   The Individual Defendants Are Control Persons, and Thus Jointly and Severally Liable, or, in the alternative, Plaintiffs Allege They Materially Aided In the Underlying Violation............................................................................................................. 8

    B.   The Individual Defendants Improperly Attempt to Incorporate the Corporate Defendants' Motion to Dismiss. ..............................................................................11

IV.  CONCLUSION ................................................................................................. 12

**TABLE OF AUTHORITIES**

**Cases**                                                                       **Page(s)**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................7

*Cherrington v. Wild Noodles Franchise Co.*,
No. 04-4572, 2006 U.S. Dist. LEXIS 39981 (D. Minn. June 15, 2006) ....................9

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
890 F.2d 165 (9th Cir. 1989) ..................................................................................10

*Dr. Performance of Minn., Inc. v. Dr. Performance Mgmt., L.L.C.*,
No. 01-1524, 2002 U.S. Dist. LEXIS 22501 (D. Minn. Nov. 12, 2002) ....................9

*Enervations, Inc. v. Minn. Mining & Mfg. Co.*,
380 F.3d 1066 (8th Cir. 2004) ...................................................................................4

*Hallman v. Flagship Rest. Grp., LLC*,
762 F. Supp. 3d 830 (D. Neb. 2025) ...........................................................................8

*In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 4:20-MD-02936, 2022 U.S. Dist. LEXIS 41477 (W.D. Mo. Mar. 8, 2022) .......12

*In re Syntex Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996) ..........................................................................4, 5, 6, 7

*Kushner v. Beverly Enters., Inc.*,
317 F.3d 820 (8th Cir. 2003) .....................................................................................4

*Lustgraaf v. Behrens*,
619 F.3d 867 (8th Cir. 2010) .....................................................................................9

*Quinn-Hunt v. Bennett Enters., Inc.*,
122 F. App'x 205 (6th Cir. 2005) ...............................................................................8

*Simes v. Ark. Judicial Discipline & Disability Comm'n*,
734 F.3d 830 (8th Cir. 2013) .....................................................................................7

*Topchian v. JPMorgan Chase Bank, N.A.*,
760 F.3d 843 (8th Cir. 2014) ..................................................................................7, 8

ii

*Warner v. Wartburg Coll.*,
  No. 21-CV-2029, 2021 U.S. Dist. LEXIS 142458 (N.D. Iowa July 30, 2021) ............................7

**Statutes**

Cal. Corp. Code § 31302 ......................................................................................................11

Iowa Code § 502.509 ...........................................................................................................9

Iowa Code § 551A.8 ....................................................................................................8, 9, 10, 11

Minn. Stat. § 80C.17, subd. 2 ...............................................................................................9

Neb. Rev. Stat. § 8-1118 .....................................................................................................9

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................7, 8

Fed. R. Civ. P. 12 ...........................................................................................................4, 7

iii

The Individual Defendants' motion to dismiss should be denied. Plaintiffs allege a fraudulent scheme whereby Corporate Defendants, at the direction of part owner and Chairman of the Board, John Smith, and International President and CEO, Michael Gannon, lured Plaintiffs and other Driver candidates to purchase a "lease purchase program" (the "Driving Opportunity") through uniform misrepresentations about income, mileage, and success rates which concealed the reality of the Driving Opportunity, specifically the extraordinarily high driver turnover rates and extraordinarily low driver earnings. Iowa's Business Opportunity Promotions Act ("BOPA") was enacted precisely to prevent such schemes by requiring sellers to make comprehensive disclosures before purchasers commit their livelihoods to a business opportunity. Defendants failed to comply with BOPA and now seek dismissal.

The Individual Defendants argue that Plaintiffs' fail to allege they "materially aided" Defendants' fraudulent scheme. But there is no such requirement for senior executives and directors that control a liable party, including Smith and Gannon. And even if a "material aid" requirement exists, the Individual Defendants simply ignore Plaintiffs' voluminous allegations that Smith and Gannon oversee, direct, manage, and help implement every aspect of the Driving Opportunity, including the very advertising, recruiting, and orientation practices that form the core of Defendants' fraudulent scheme. The motion should be denied in its entirety.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff Harley Kelchner, individually and on behalf of all others similarly situated, filed this action on August 23, 2024, against CRST Expedited, Inc. ("Expedited"), CRST Specialized Transportation, Inc. ("Specialized"), CRST Lincoln Sales, Inc. ("Lincoln Sales") and John Smith for directing and implementing deceptive "lease purchase" Driving Opportunities in violation of the Iowa Business Opportunity Promotions Act. *See* Dkt. No. 1. All Defendants

answered the complaint. Dkt. Nos. 25-27, 55. On September 9, 2025, Defendants filed a Motion for Judgment on the Pleadings or to Strike, making arguments *for the first time* as to particularity and Kelchner's adequacy as a class representative. Dkt. No. 103-1 at 12, 17. Though Smith has been a defendant since the outset of this case, he did not argue in the Motion for Judgment on the Pleadings that the original complaint failed to allege he materially aided in the unlawful scheme. *See generally id.* Additional Plaintiffs, Daniel Weche and Anthony Hicks, then joined and, collectively, Plaintiffs filed an amended complaint, adding CRST International Holdings LLC ("International") and Michael Gannon as defendants[1] and over *31 pages* of allegations about Defendants' fraudulent scheme, including dozens of citations to, and quotations from, materials obtained in discovery that substantiate and bolster Plaintiffs' claims. Dkt. No. 113. Now, Gannon and Smith (the "Individual Defendants") move to dismiss. Dkt. No. 121.

B.      **Defendants' Fraudulent Scheme**

Expedited, Specialized, and Lincoln Sales—at the direction and under the control of Gannon, Smith, International, its Board of Directors, and Defendants' common officers and executives—implemented a fraudulent scheme to induce Drivers to purchase the Driving Opportunity. This scheme, detailed in Plaintiffs' concurrently filed Resistance to Corporate Defendants' Motion to Dismiss Amended Complaint, involved a pattern of making false representations in online job postings, by recruiters, in documents shared with Driver candidates, and during in-person Orientation about the profitability and income to be earned in the Driving Opportunity. Dkt No. 113 ¶¶ 34-52. All activities concealed the high turnover, low income, short tenures, and other poor outcomes suffered by Plaintiffs and Drivers, all of which were well known to Defendants, according to Defendants' own internal records and data. *Id.* ¶¶ 53-57, 67.The

---

[1] Contrary to Defendants' assertion, Mot. at 6, Smith was named as a Defendant from the outset of this case. *See* Dkt. No. 1.

2

### 1. Individual Defendants' Direction and Control of International, Expedited, Specialized, and Lincoln Sales

International controls its subsidiary corporate co-Defendants Expedited, Specialized, and Lincoln Sales through a single Board of Directors. *Id.* ¶ 24. Indeed, Expedited, Specialized, and Lincoln Sales do not observe corporate formalities or have their own Board. *Id.* Smith, as partial owner and Chairman of International's Board, *id.* ¶ 19, personally sets and oversees corporate strategy for the CRST subsidiary Defendants (Expedited, Specialized, and Lincoln Sales). *Id.* ¶ 24. The Board, under Smith's direction and control, sets corporate policy for all subsidiaries, assesses the revenue and operating income of the subsidiaries, including as to the Driving Opportunity, and establishes related quarterly targets and monthly reporting standards. *Id.* Gannon, CEO and Director of International, *id.* ¶ 20, regularly attends these Board meetings, along with the Corporate Defendants' other common officers and directors. *Id.* ¶ 24. Gannon is responsible for "oversight of the five CRST business units [Home Solutions, Specialized, Expedited, Flatbed, and Dedicated], our safety … and the overall success of the business units." *Id.* ¶ 25. The Expedited, Specialized, and Lincoln Sales controllers all report to a designated common officer or director, who then report to Gannon. *Id.* Gannon is Smith's sole report. *Id.* As to the Driving Opportunity specifically, the Individual Defendants regularly attend joint strategy and planning meetings to discuss the Driving Opportunity and the content of the contracts that govern Defendants' relationship with Drivers. *Id.* ¶ 27. And, once Drivers purchase the Driving Opportunity, Smith and Gannon move Drivers freely among CRST's subsidiaries/affiliates. *Id.* ¶ 31.

### 2. The Individual Defendants' Direction and Control of Routine Misrepresentations About the Driving Opportunity

The Individual Defendants also control and direct the specific, routine misrepresentations made to Driver candidates about the Driving Opportunity. Gannon and Smith supervise Defendants' enterprise-wide marketing, advertising, and recruiting services, *id.* ¶ 28, which are

3

used to make Driver candidates aware of the Driving Opportunity across all CRST subsidiaries. *Id.* ¶ 29; **Ex. A** (cited at ¶ 29)[2, 3] at 244:15-16 (Michael Gannon Dep., May 29, 2025) ("I [Gannon] want them to be aware of the other driving positions within CRST"). Recruiting leads are then pursued through systematic efforts, whereby the enterprise-wide recruiting team (including the shared 10-12 recruiters, including recruiters based in Iowa) determines which subsidiary/affiliate (e.g., Expedited, Specialized, Flatbed) is a better fit for the Driver or CRST, *id.* ¶¶ 28-29, 48, and entices Driver candidates to come to CRST's in-person Driver Orientation, where Defendants continue to misrepresent the Driving Opportunity. *Id.* ¶ 49.

The individuals responsible for leading the "CRST Driving Recruiting Team," including Jennifer Abernathy, are primarily based in Iowa. *id.* ¶¶ 28, 30, and report directly to Gannon. *Id.* ¶ 30. To entice Driver candidates to purchase the Driving Opportunity, Gannon strategizes how to best utilize the enterprise-wide marketing, advertising, and recruiting services. For example, Gannon coordinates directly with Abernathy, in one-on-one meetings, regarding the tracking of hires and Driver hiring targets on an enterprise-wide basis. *Id.* ¶ 30; **Ex. B** (cited at ¶ 30) (email ahead of 1:1 meeting with Abernathy and Gannon to discuss enterprise-wide recruiting). Gannon, along with Defendants' common officers and executives, also attend monthly calls with Abernathy to discuss staffing updates and Key Performance Indicators for each affiliate/subsidiary's advertising and recruitment. *Id.*; **Ex. C** (cited at ¶ 30) (email and slides from enterprise-wide

---

[2] All reference to exhibits herein are exhibits to the Declaration of Michael von Klemperer.

[3] "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). Documents necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (citing *In re Syntex Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Each of the exhibits included with this brief is cited and discussed in the Complaint.

recruiting call). All such information is then shared with Smith via Gannon. *Id.* ¶ 25.

Abernathy's recruiting team, overseen by Smith and Gannon, induces Drivers to purchase the Driving Opportunity through uniform misrepresentations. The first step in the enterprise-wide recruitment process is to get Driver candidates, like Plaintiffs, to contact CRST, by way of nation-wide advertisements across multiple platforms, including their website at crst.com and job-seeker websites like LinkedIn. *Id.* ¶¶ 34-39. Such advertisements contain false and misleading representations about the profitability and income to be earned in the Driving Opportunity, as well as the success to be had. *Id.* ¶ 34. Specifically, all advertisements represent that Drivers will have consistent and profitable freight to haul, and that average drivers in the program earned at least six figures. *Id.* ¶ 53, ¶ 36 (indicating solo Drivers would make up to $190,000 (or $3,654 weekly)), ¶ 39 (Drivers earn "AN AVERAGE OF $215,000/YEAR" (or $4,135 weekly)). After a Driver contacts CRST, recruiters follow up by email or telephone with the same core misrepresentations. *Id.* ¶ 43-46. On numerous occasions, recruiters represented to Plaintiffs that they would "[e]arn $210,000 - $248,000 per year," *id.* ¶ 47, $2500-$3000 per week. *Id.* ¶ 48. These same misrepresentations are made via the Lease Purchase Information Packet ("LPIP"), which recruiters provide to all Driver candidates, *id.* ¶¶ 40, 75, and at Orientation. *Id.* ¶ 50.

Gannon expects his recruiters to provide accurate information to Driver candidates, **Ex. A** (first cited at ¶ 21), Gannon Dep. at 116:14-21, and asserts that LPIPs are intended to provide information about what a Driver can expect from the Driving Opportunity. *Id.* ¶ 40. Indeed, Defendants have judicially admitted that LPIP income projections are updated quarterly. *Id.* ¶ 75. However, Gannon and Smith knew that the representations made to Driver candidates were false. Although the relevant data is in Defendants' sole possession, *id.* ¶ 54, available income metrics for the Flatbed fleet show that, in fact, the bottom 25% of Drivers netted only <u>$171.47 per</u>

5

week. *Id.* ¶ 57. Indeed, all Plaintiffs regularly received negative paychecks (total deductions and/or set offs exceeded gross earnings)—a reality that was acknowledged in U.S. Department of Transportation Truck Leasing Task Force's January 2025 report to Congress which discussed the predatory nature of CRST's Driving Opportunity. *Id.* ¶ 67. Defendants, including Gannon specifically, were also aware that 75% of solo Drivers were unsuccessful and likely to quit. *Id.* ¶ 55; **Ex. D** (cited at ¶ 55) (Correspondence with CRST's President and CEO regarding retention and business success). Indeed, as Defendants judicially admitted, the annualized turnover rate in CRST's lease purchase program from 2020 to 2023 was between 90% and 130%. *Id.* ¶ 56. For Expedited, annualized turnover rates were 84%, 80%, and 87% in 2024, 2023, and 2022, respectively. *Id.* Turnover rates were even worse for Flatbed (an Expedited division), reaching 201%, 119%, and 132% in 2023 (7 months data), 2022, and 2021, respectfully. *Id.* This information is concealed from Drivers throughout the recruiting processes, overseen by Smith and Gannon. *Id.* ¶¶ 55-57.

Despite overseeing the Corporate Defendants and corporate strategy, including as to the Driving Opportunity, Smith and Gannon also did not ensure that broad disclosures were provided to Drivers, as mandated by BOPA. *Id.* ¶¶ 4-5, 72. This disclosure would have provided Plaintiffs (and other Drivers) with critical information prior to purchasing the Driving Opportunity, including substantiation for all earning claims and data on the sky-high failure rates for Drivers entering the program. *Id.* ¶¶ 4, 56-57 & nn. 9-10, 72. Had they known what Gannon and Smith knew, *id.* ¶¶ 54-56, Plaintiffs (and other Drivers) almost certainly would not have signed Defendants' contracts. *Id.* ¶ 72.

Denied the mandatory disclosure, Plaintiffs (and other Drivers) relied on Defendants' misrepresentations—directed by Gannon and Smith—to continue the recruiting process and,

6

ultimately, purchase the Driving Opportunity. *Id.* ¶¶ 34-35, 40, 47, 49-50, 52-53. Contrary to promises of consistent mileage and six-figure earnings, Plaintiffs were subject to excessive deductions or setoffs, in addition to costs of repairs and maintenance due to being leased years-old recycled trucks. *Id.* ¶¶ 58-66. Plaintiffs regularly found themselves earning negative paychecks— consistent with the predatory nature of CRST's Driving Opportunity described in the U.S. Department of Transportation Truck Leasing Task Force's January 2025 report to Congress. *Id.* ¶ 67. Unable to make a living or complete their lease terms to become a "business owner," *id.* ¶¶ 68, Plaintiffs were forced to leave their employment with Defendants. *Id.* ¶¶ 12-14.

## II. LEGAL STANDARD

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848-49 (8th Cir. 2014) (cleaned up). A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitle to relief." Fed. R. Civ. P. 8(a)(2). "A party may set out two or more statements of a claim . . . in a single count," and the "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

A Rule 12(b)(6) motion tests whether the complaint contains sufficient factual matter to state a claim to relief. *Warner v. Wartburg Coll.*, No. 21-CV-2029, 2021 U.S. Dist. LEXIS 142458, at *5 (N.D. Iowa July 30, 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Id.* at *4-5 (citing *Simes v. Ark. Judicial Discipline & Disability Comm'n*, 734 F.3d 830, 834 (8th Cir. 2013)).

"The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal

7

conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Topchian*, 760 F.3d at 848. "Factual allegations alone are what matters," not particular legal theories. *Id.* (quoting *Quinn-Hunt v. Bennett Enters., Inc.*, 122 F. App'x 205, 207 (6th Cir. 2005)); *accord Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 846-47 (D. Neb. 2025). "[A] complaint should not be dismissed. . . if the allegations provide for relief on any possible theory." *Topchian*, 760 F.3d at 848-49 (cleaned up); *accord* Fed. R. Civ. P. 8(d)(2).

## III. ARGUMENT

### A. The Individual Defendants Are Control Persons, and Thus Jointly and Severally Liable, or, in the Alternative, Plaintiffs Allege They Materially Aided In the Underlying Violation.

The Individual Defendants argue that Plaintiffs fail to plead that Smith or Gannon "materially aided" in Defendants' unlawful scheme. They are mistaken.

BOPA extends liability not just to business that fail to make the required disclosure or deceptively market business opportunities, but also imposes joint and several liability on:

> [1] Every person who directly or indirectly controls a party liable under this section, [2] every partner in a partnership so liable, [3] every principal executive officer or director of a corporation so liable, [4] every person occupying a similar status in, or performing similar functions for, and [5] every employee of, a party so liable who materially aids in the act or transaction constituting the violation . . . .

Iowa Code § 551A.8(2). BOPA creates an affirmative defense for these individuals if they can prove they "did not know, and in the exercise of reasonable care could not have known of the existence of the facts giving rise to the alleged liability." *Id.*

Discussing a materially identical provision of the Nebraska Securities Act, the Eighth Circuit has held that this language imposes liability on two groups: "if a plaintiff proves direct or indirect control," which includes "partners, limited liability company members, officers, and

directors, or persons performing similar roles and functions," "the plaintiff is not required to prove that the alleged control person provided material aid." *Lustgraaf v. Behrens*, 619 F.3d 867, 880 (8th Cir. 2010) (discussing Neb. Rev. Stat. § 8-1118(3)). "If a plaintiff cannot prove direct or indirect control," the statute "provides an alternative means of liability as to certain persons: proof that the alleged control person provided material aid to the primary violator." *Id.* The Eighth Circuit reached the same conclusion about the similarly worded Iowa Securities Act. *Id.* at 881 (holding that under Iowa Securities Act, Iowa Code § 502.509(7)(a), persons who "directly or indirectly" control the primary violator may be liable "without reference to material aid").

Courts interpreting Minnesota's similarly worded Franchise Act have likewise concluded that the act imposes liability on (1) "control person[s]" "or" (2) those who "materially participated in the violation." *Cherrington v. Wild Noodles Franchise Co.*, No. 04-4572, 2006 U.S. Dist. LEXIS 39981, at *15 (D. Minn. June 15, 2006) (citing Minn. Stat. § 80C.17, subd. 2); *accord Dr. Performance of Minn., Inc. v. Dr. Performance Mgmt., L.L.C.*, No. 01-1524, 2002 U.S. Dist. LEXIS 22501, at *12 (D. Minn. Nov. 12, 2002).

A plain reading of BOPA confirms that the same is true here. "[M]aterially aid" modifies only the fifth category of persons jointly and severally liable for a violation under BOPA: the employees of a liable party that materially aid in the party's violation. A plaintiff need not show that those in the control group, including "every principal executive officer or director of a corporation" materially aided in the violation to establish their liability.[4] Here, there is no dispute that Smith, part owner and Chairman of the Board, and Gannon, International's President and

---

[4] But even those in the control group will be able to avoid liability if they prove at trial that they "did not know, and in the exercise of reasonable care could not have known of the existence of the facts" establishing the other Defendants' liability. Iowa Code § 551A.8(2) Of course, Smith and Gannon will be unable to do so given their central role in Defendants' unlawful scheme, as alleged in detail throughout the Complaint.

CEO, fall within this control group. Dkt. No. 113 ¶¶ 19-20. Nothing further is required—Plaintiffs have stated a claim against Smith and Gannon.

In the alternative, and to the extent the Court concludes that "materially aid" modifies every category of person liable under Iowa Code § 551A.8, Plaintiffs have more than satisfied their pleading burden, as the Complaint is replete with allegations that both Smith and Gannon materially aided Defendants' fraudulent scheme.

As Plaintiffs detail, Defendants induced Drivers to purchase the Driving Opportunity by way of scripted, uniform misrepresentations in advertising, marketing, recruitment, and orientation. *Id.* ¶ 34. Gannon and Smith played a central role in these misrepresentations. Indeed, Plaintiffs allege that, as Defendants' two most senior executives, Smith and Gannon set the strategy and directed the entire unlawful scheme at issue in this case. *Id.* ¶¶ 21-32. Plaintiffs also allege the "CRST Driving Recruiting Team" and individuals responsible for this team report directly to Gannon, *id.* ¶¶ 28, 30, who then reports to Smith. *Id.* ¶ 25. Gannon is also responsible for directing and strategizing how best to utilize the enterprise-wide marketing, advertising, and recruiting services. As Plaintiffs allege, Gannon meets one-on-one with head of recruiting, Iowa-based Abernathy, and attends monthly calls with other executives to discuss recruiting staffing, hiring targets, and how to improve each affiliate/subsidiary's advertising and recruitment. *Id.* ¶ 30; **Exs. B-C** (cited at ¶ 30)**.** All of this information and strategy is reported to Smith by way of Gannon. *Id.* ¶ 25 (Gannon is Smith's sole report). Thus, far from what Defendants describe as "purely structural and conclusory," Dkt. No. 121-1 at 7, Plaintiffs allege the Individual Defendants oversight of the enterprise-wide recruiting and advertising services used to misrepresent the Driving Opportunity. Such allegations are sufficient to support liability under Iowa Code § 551A.8(2). *See e.g.*, *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 168, 176 (9th Cir.

1989) (finding principal executives materially aided under California's similarly worded Franchise Investment Law (Cal.Corp.Code § 31302) because they were directors of the company, responsible for franchise sales, and present during discussion of a possible franchise sale).

The Individual Defendants also materially aided the fraudulent scheme by approving the distribution of false statements to Drivers throughout the recruiting process. Not only do Plaintiffs allege that the Individual Defendants regularly attend joint strategy and planning meetings regarding the Driving Opportunity, Dkt. No. 113. ¶ 27, but also that Gannon attended meetings with International's previous President and CEO to discuss the reality of the Business Opportunity. *Id.* ¶ 55. During these meetings, the high turnover rates and lack of success achieved by Drivers in the Driving Opportunity were disclosed, *id.* ¶ 55; **Ex. D** (cited at ¶ 55), thereby demonstrating the inaccuracy of representations made to Drivers about Driving Opportunity. *See id.* ¶¶ 55-57. Despite their responsibility for the enterprise-wide recruiting and advertising teams and expectation that recruiters should provide accurate information that Driver candidates can rely on, *id.* ¶ 40; **Ex. A**, Gannon Dep. (first cited at ¶ 21), the Individual Defendants concealed this information from Drivers, *id.* ¶¶ 55-57, and updated Lease Purchase Information Packets quarterly without removing the misrepresentations. *Id.* ¶ 75. Such allegations, that the Individual Defendants approved the mass misrepresentations made to Driver candidates about the Driving Opportunity, clearly support liability under Iowa Code § 551A.8(2).

In short, Plaintiffs have stated a claim against Smith and Gannon, whether the Court requires a showing of "material aid" or not. Frankly, it is difficult to imagine what more a plaintiff would need to plead to state a claim under Iowa Code § 551A.8(2).

### B. The Individual Defendants Improperly Attempt to Incorporate the Corporate Defendants' Motion to Dismiss.

In addition to the argument addressed above, the Individual Defendants' purport

"incorporate . . . by reference" every argument advanced in the Corporate Defendants' motion to dismiss by way of footnote. Mem. at 1 n.1 (Dkt. No. 121-1). This is procedurally improper and should be rejected. *See, e.g.*, *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 4:20-MD-02936, 2022 U.S. Dist. LEXIS 41477, *89-90 (W.D. Mo. Mar. 8, 2022) ("incorporation [of a defendants' earlier motion to dismiss] is a pointless imposition on the court's time. A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record . . . the Court will not consider these incorporated arguments.") (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Dismiss be denied in full. To the extent the Court grants any portion of the Motion, Plaintiffs respectfully request that it be without prejudice and that Plaintiffs be granted leave to amend.

Date: January 26, 2026

Respectfully Submitted,

SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.

*/s/ J. Barton Goplerud*
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

*/s/ Michael von Klemperer*
Michael von Klemperer (pro hac vice)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 2009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

Elizabeth A. Fegan (pro hac vice)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

Georgia J. Zacest (pro hac vice)
FEGAN SCOTT LLC
708 Main, 10th Floor
Houston, TX 77002
Ph: (830) 212-4042
Fax: (312) 264-0100
georgia@feganscott.com

13

Robert S. Boulter (pro hac vice)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 450-5189
rsb@boulter-law.com

*Attorneys for Plaintiffs and the Putative Class*

14