| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST INTERNATIONAL HOLDINGS LLC, CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC. and JOHN SMITH, an individual, and MICHAEL GANNON, an individual,<br><br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**JOINT STATUS REPORT ON IOWA SUPREME COURT DECISION ON CERTIFIED QUESTION AND SUPPLEMENTAL BRIEFING SCHEDULE**

Pursuant to Judge Williams's April 2, 2025 Order (ECF No. 66), Plaintiffs, Harley Kelcher, Anthony Hicks, and Daniel Weche, and Defendants, CRST International Holdings LLC (CRST International Holdings), CRST Expedited, Inc. d/b/a CRST The Transportation Solution, Inc. (CRST Expedited), CRST Lincoln Sales, Inc. (Lincoln Sales), CRST Specialized Transportation, Inc. (CRST Specialized), John Smith, and Michael Gannon, hereby jointly submit this status report to provide their respective positions:

***Defendants' Position.*** On December 19, 2025, the Iowa Supreme Court answered the Court's certified question in the negative and held that, under Iowa law, a foreign corporation does not consent to personal jurisdiction simply by registering to do business in Iowa, appointing an agent for service of process in Iowa, or receiving service through that agent. *See Kelchner v. CRST Expedited, Inc.*, Case No. 25-0607 (Iowa Dec. 19, 2025) (ECF No. 124). Accordingly, this Court cannot exercise general personal jurisdiction over CRST Specialized.

1

The Parties have since conferred on the Iowa Supreme Court's Order and have reached an impasse as to the appropriate next steps, including any briefing schedule on a renewed motion.[1] As Judge Williams explained when certifying the general personal jurisdiction question to the Iowa Supreme Court, this Court previously "punted on" the parties' *specific* personal jurisdiction arguments, and the "reason the Court relied on [the general personal jurisdiction] finding for its disposition" alone was because, "candidly, plaintiff did not have the strongest argument under the minimum contacts analysis." ECF No. 66 at 8. Because Judge Williams has not formally resolved the parties' arguments on specific personal jurisdiction and the pleadings have since been amended to add additional relevant allegations, some additional briefing on Defendant CRST Specialized's Motion to Dismiss for Want of Personal Jurisdiction (ECF No. 28) is appropriate to address whether this Court can exercise specific personal jurisdiction over CRST Specialized. Defendants therefore intend to promptly file a renewed motion to dismiss for want of personal jurisdiction to address those additional allegations.

Defendants do not believe additional discovery as to personal jurisdiction is necessary or appropriate prior to briefing and resolving CRST Specialized's jurisdictional challenge—including Plaintiffs' proposed Rule 30(b)(6) deposition for the parent holding company, CRST International Holdings, or the deposition of CRST Specialized's recruiting manager, Lyndsay Perez Navarro. This case was filed in October 2024, and CRST Specialized has challenged personal jurisdiction

---

[1] On December 23, 2025, shortly after the Iowa Supreme Court's decision, Defendants first circulated a draft joint status report to provide the Court notice of the decision and propose a briefing schedule on the personal jurisdiction issue. However, Plaintiffs repeatedly refused to give any position on the matter until ultimately circulating their draft some 31 days later on January 23, 2025. They took the position that no briefing should occur until additional discovery is completed. Based on the Parties' unfruitful meet and confer efforts, Plaintiffs' repeated delay in giving any position, and the lack of any agreement about briefing the issue, Defendants have no choice but to proceed with filing their renewed motion to finally resolve this issue. Although Plaintiffs suggest that CRST Specialized must first seek leave to renew its unresolved personal jurisdiction challenge, CRST Specialized's motion is proper under Rule 12(b)(2).

2

from the outset of the case. In the year since the Court's certification order, Plaintiffs admit below that they "have obtained significant evidence over the past year supporting their jurisdictional arguments." Among other things, they have already received more than 15,000 unique documents in discovery based on search terms proposed by Plaintiffs and ordered by the Court—terms which were run against a corpus of nearly 5 million documents from custodian employees from each of the Corporate Defendants. Plaintiffs have also taken the full-day deposition of the Corporate Defendants' Chief Executive Officer and President, Michael Gannon. And Plaintiffs have received lengthy written responses to several sets of interrogatories served on CRST Specialized and the other Corporate Defendants and have also received the names of every putative class member who contracted with CRST Specialized and, separately, every putative class member who contracted with CRST Expedited.

While Plaintiffs suggest there is no "undue prejudice" to further discovery for "the next month or so," even at the outset of a case when a jurisdictional challenge is ordinarily made, discovery is warranted only when the necessary facts "are either unknown or can be genuinely disputed." *Jesski v. Dakota, Minnesota & E. R.R. Corp.*, No. 19-CV-2070-CJW-MAR, 2020 WL 3913528, at *5 (N.D. Iowa July 10, 2020). "There is no requirement that jurisdictional discovery be permitted where a plaintiff merely suspects supportive facts might be revealed." *Goellner-Grant v. Platinum Equity LLC*, 341 F.Supp.3d 1022, 1030 (E.D. Mo. 2018). This avoids the prejudice of a foreign defendant litigating a case in an improper forum—something CRST Specialized has endured and consistently objected to since October 2024. Although Plaintiffs had previously argued that facts about CRST Specialized remain undiscovered, they have failed to explain how those facts would change the outcome of Defendants' motion. *See* ECF No. 40 at 17.[2] Discovery

---

[2] The facts Plaintiffs seek additional discovery on are not even relevant to the issue. Plaintiffs improperly rely on *Anderson v. Dassault Aviation*, 361 F.3d 449, 452–53 (8th Cir. 2004) suggesting

is also not "warranted . . . merely to 'test the veracity' of the affidavits" submitted with Defendants' motion. *Jesski*, 2020 WL 3913528, at \*5. The pertinent facts necessary to resolve CRST Specialized's motion are not reasonably in dispute, and the Court should therefore deny Plaintiffs' request for additional discovery prior to briefing on this jurisdictional issue.

***Plaintiffs' Position.*** Plaintiffs do not seek to deny Defendants an opportunity to further brief personal jurisdiction. Rather, Plaintiffs seek only to defer that briefing until the relevant and already-noticed discovery is complete. Having received relevant documents and interrogatories responses after months of delay by Defendants, Plaintiffs are now prepared to take—and have noticed—three depositions that will extensively explore facts relevant to jurisdictional issues, including a Rule 30(b)(6) deposition that seeks testimony on the interrelated operations of the CRST Defendants, particularly as to the enterprise-wide advertising and recruiting operations that are largely based in and directed from Iowa. Under the relevant legal standards, Plaintiffs are entitled to complete this discovery. Moreover, there is no practical impediment to completing it— Defendants do not contend, for instance, that they will suffer any undue prejudice from simply spending the next month or so completing this discovery before the parties brief this issue. Because

---

that personal jurisdiction might be established here because Defendants share a "'close, synergistic relationship.'" But Plaintiffs ignore that the Eighth Circuit later clarified that such a relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent; instead, the question was whether the *parent* has its *own* contacts with the forum. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011); *see also Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F.Supp.3d 985, 991 (D. Minn. 2016) ("The Eighth Circuit has cautioned against overreliance on *Anderson*."); *Arnold v. AT&T, Inc.*, 874 F.Supp.2d 825, 835 (E.D. Mo. 2012) (same). Contrary to Plaintiffs' arguments, "the weight of the authority . . . has determined that the [single integrated enterprise] theory applies only to liability and cannot be relied upon to create personal jurisdiction." *Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at \*11 (D.S.C. July 25, 2019) (collecting cases). For that reason, ties between entities like some shared officers, company names, and logos are not sufficient to establish personal jurisdiction. *See, e.g.*, *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at \*6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman).

4

there is none. Rather, Defendants presumably seek to avoid this discovery because they are well aware it will support this Court's personal jurisdiction over Specialized. Of course, that is a reason to permit the discovery, not deny it.

Even at the outset of a case, courts permit jurisdictional discovery where the factual record is "ambiguous or unclear on the jurisdiction issue," *First Nat'l Equip. Fin. v. Cameron Ins. Cos.*, No. 8:10CV370, 2010 U.S. Dist. LEXIS 128720, at \*3 (D. Neb. Dec. 6, 2010), and can be "genuinely disputed." *Doshier v. Twitter, Inc.*, No. 4:18-cv-00700, 2019 U.S. Dist. LEXIS 159749, at \*3 (E.D. Ark. Sep. 19, 2019). This is particularly appropriate where the "facts establishing personal jurisdiction" are "in the exclusive control of the defendant." *First Nat'l*, 2010 U.S. Dist. LEXIS 128720, at \*3. Defendants' authorities cited above do not suggest otherwise. Where a plaintiff can make an initial evidentiary showing supporting jurisdiction, dismissing a case after denying that plaintiff an opportunity to develop the record necessary to establish personal jurisdiction may constitute reversible error. *See Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (reversing dismissal with instruction to permit jurisdictional discovery where plaintiff "offered documentary evidence, and not merely speculations or conclusory allegations").

This Court has personal jurisdiction over Specialized for a host of reasons, including the "close, synergistic relationship," it maintains with its Iowa-based parent International, and sisters Expedited and Lincoln Sales. *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452 – 53 (8th Cir. 2004), *cert. denied.*, 543 U.S. 1015 (2004). Contrary to Defendants' arguments, the Eighth Circuit found the relationship between related corporate entities "clearly relevant to the jurisdictional question." *Id.* And both *Anderson* and the authorities Defendants cite above recognize this is a highly fact-specific inquiry. Defendants do not contend that the relevant facts are not genuinely disputed.

Yet beyond a few public filings, the evidence of Defendants' internal structure and operations is exclusively in Defendants' possession. Plaintiffs have obtained significant evidence over the past year supporting their jurisdictional arguments, including interrogatories responses that detail how Specialized shares Iowa-based services (including legal, human resources, marketing and advertising, recruiting, and IT) with the other Corporate Defendants and all are overseen by CRST's International's board of directors. **Ex. A** (Specialized's Supp. Responses to Plaintiffs' First Set of Interrogatories). Other important evidence of Defendants' common enterprise is summarized in Plaintiffs' Amended Complaint, paragraphs 21-32 (Dkt. No. 113).

But Plaintiffs efforts have been stymied by Defendants' well-documented discovery obstruction and foot-dragging. *See, e.g.*, ESI Order at 3-4, ECF No. 79 (ordering, *sua sponte*, that CRST immediately begin reviewing ESI and rolling productions in light of CRST's failure to "act[] diligently" and its "delay in producing any ESI in this case."). As but one example, after Plaintiffs received deficient responses to the foregoing interrogatories and met and conferred with Defendants in July, it took Defendants *four months* to substantively respond by letter (despite repeatedly promising that its response was coming "next week" for months). That letter largely failed to address the deficiencies Plaintiffs had raised and Defendants' interrogatory responses remain incomplete. *See* **Ex. B** (Specialized's November 21 Response to Plaintiffs' July 22 Discovery Letter). Notably, Specialized continues to resist a fulsome response to Interrogatory No. 6 which concerns Defendants' interrelated operations and shared staff.

Accordingly, on December 12, Plaintiffs served a Rule 30(b)(6) deposition notice, seeking testimony on, *inter alia*, Defendants' integrated operations and shared personnel (particularly as to enterprise-wide marketing, advertising, and recruiting for the Driving Opportunity) and how Specialized relies on departments, services, personnel, and infrastructure in Iowa. *See* **Ex. C**, Matter Nos. 1-5, 7-14, 23-24 (Plaintiffs' Rule 30(b)(6) Deposition Notice). These topics go to the

6

heart of Plaintiffs' anticipated personal jurisdiction arguments and cover facts and details that Defendants have largely shielded from discovery to-date. These are genuinely disputed issues that can only be resolved through further discovery.

Plaintiffs concurrently requested to meet and confer on the notice during the week of December 15 and for dates for Defendants' designated witness(es). Yet not only did Defendants wait *over a month* before serving 20 pages of legally baseless and largely boilerplate objections, likely necessitating motion practice, **Ex. D** (International's Objections to Rule 30(b)(6) Notice), they also refused to provide dates for a single designated witness, causing further delay. On January 23, Plaintiffs requested a discovery conference with Judge Mahoney to discuss the Rule 30(b)(6) Notice, which is scheduled for February 4, 2026.

Plaintiffs have also noticed depositions of Specialized's recruiting manager, Lyndsay Perez Navarro, and Defendants' head of recruiting, Jennifer Abernathy, which are scheduled to go forward on February 10 and 19, respectively.

When Defendants originally circulated a draft of this status report,[3] they proposed the following briefing schedule:

- CRST Specialized's supplemental brief: Due 21 days after the Court enters an order adopting this schedule; 15 pages.
- Plaintiffs' response: Due 21 days after Defendants' supplemental brief is filed; 15 pages.
- CRST Specialized's reply: Due 14 days after Plaintiffs' response is filed; 10 pages.

---

[3] Defendants falsely contend that Plaintiffs delayed the filing of this report. In truth, Plaintiffs simply requested that the parties meet and confer before submitting it to discuss Defendants' briefing proposal. Defendants circulated an initial draft of this report on Friday, January 16, 2026. The parties met and conferred the following Tuesday and Plaintiffs circulated their portion of the

Defendants have since abandoned even that proposal, and now intend to immediately file yet another Rule 12 motion without leave of court and without allowing any time to complete the already-noticed discovery. But Plaintiffs should have an opportunity to complete these key depositions before further briefing on personal jurisdiction. At a bare minimum, Plaintiffs' deadline to response to Defendants' forthcoming motion should be stayed until these depositions are complete. Defendants' effort to ram its personal jurisdiction briefing through without leave of court and before the noticed discovery is complete raises the inescapable conclusion that the discovery is likely to support Plaintiffs' position and undermine Defendants'.

Dated: January 27, 2026

Respectfully Submitted,

/s/ Michael von Klemperer
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: 202-921-0002 | Fax: 312-264-0100
mike@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: 515-223-4567 | Fax: 515-223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Ph: 312-741-1019 | Fax: 312-264-0100
beth@feganscott.com

/s/ James H. Hanson
James H. Hanson (*pro hac vice*)
Angela S. Cash (*pro hac vice*)
Andrew J. Ireland (*pro hac vice*)
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205 | F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas D. Wolle
SIMMONS PERRINE PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-896-4007
F: 319-366-1917
twolle@sp.law

*Attorneys for Defendants*

---

report on Thursday. Defendants then revised the report again on Monday, January 26, and Plaintiffs provided further revisions in response on Tuesday, January 27.

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Avenue #310
San Rafael, CA 94901
Ph: (415) 450-5189
rsb@boulter-law.com

*Attorneys for Plaintiffs and the Putative Class*

# EXHIBIT A

| | |
|---|---|
| HARLEY KELCHNER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC., and JOHN SMITH, an individual,<br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

## SUPPLEMENTAL RESPONSES OF DEFENDANT, CRST SPECIALIZED TRANSPORTATION, INC., TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, CRST Specialized Transportation, Inc., pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and by agreement of the parties, submits its Supplemental Responses to Plaintiff's First Set of Interrogatories, including information designated as Confidential pursuant to Paragraph 2 of the Stipulated Protective Order (ECF No. 49-01) and Order Granting Motion for Protective Order (ECF No. 50) as follows:

## OBJECTIONS TO INSTRUCTIONS

Defendant objects to the Instructions contained in Plaintiff's First Set of Interrogatories as follows:

1.     Instruction No. 2 (Full Answer Under Oath). This instruction improperly requires Defendant to answer each interrogatory "fully under oath" without acknowledging the limitations imposed by Rule 33(a)(2) of the Federal Rules of Civil Procedure, which allows an answering party to object to any interrogatory that is overly broad, unduly burdensome, or calls for

speculation. Furthermore, Defendant objects to any implication that responses must be provided beyond the reasonable scope of Rule 26(b)(1), which limits discovery to relevant and proportional matters.

2.     Instruction No. 6 (Business Records Production). This instruction improperly expands the requirements of Rule 33(d) by mandating that Defendant produce business records with "sufficient detail" and "at the same time it provides its response." Rule 33(d) permits a responding party to identify and refer to business records in lieu of providing a written response, but it does not mandate simultaneous production. Furthermore, the requirement that production must adhere to Plaintiff's formatting instructions is unduly burdensome and not required by the Federal Rules.

3.     Instruction No. 13 (Availability of Information from Other Entities). This instruction improperly expands Defendant's discovery obligations by requiring Defendant to identify other CRST entities that may possess responsive information. Under Rule 33(a)(2), interrogatories must be limited to the knowledge, possession, custody, or control of the responding party. Defendant is not obligated to act as a records custodian for other entities not named in this lawsuit.

4.     Instruction No. 14 (Continuing Duty to Supplement). Defendant objects to this instruction to the extent that it misstates the supplementation requirements under Rule 26(e). Rule 26(e) requires supplementation only when a party learns that its prior response is incomplete or incorrect in a material way, not an ongoing duty to continually monitor and update responses absent such a trigger. This instruction is overly broad and unduly burdensome.

2

## OBJECTIONS TO DEFINITIONS

Defendant objects to the definitions set forth in Plaintiff's First Set of Interrogatories on the following grounds:

1. Definition No. 3 ("Document"). Defendant objects to this definition to the extent that it exceeds the scope of Federal Rule of Civil Procedure 34(a) by requiring production of materials beyond what is permitted under the Federal Rules. The definition's inclusion of "post cards, post-it notes, telephone usage records or logs, messaging usage records or logs (including text or instant messaging), and all other written, graphic, or electronic materials of any nature whatsoever" is overly broad and unduly burdensome, as it may encompass irrelevant, privileged, or otherwise non-discoverable information.

2. Definition No. 4 ("Identify" with respect to persons). This definition improperly expands Defendant's obligations by requiring it to produce "the person's full name, present or last known physical and/or P.O. Box address, present or last known cellular and/or landline telephone number, present or last known physical and/or email address, and when referring to a natural person, additionally, the present or last known place of employment." This requirement is overly broad, unduly burdensome, and intrusive, particularly where the interrogatories may request information about individuals who are not parties to the litigation. Furthermore, requiring disclosure of individuals' last known contact information may implicate privacy concerns under federal and state laws.

3. Definition No. 5 ("Identify" with respect to documents). This definition imposes excessive burdens beyond what is required under Rule 33(d) and Rule 34(a) by demanding that Defendant "furnish a clear and legible copy" or describe documents with such specificity that a subpoena could be issued. The Federal Rules do not require this level of detail in response to

3

interrogatories, and this definition creates undue burdens by requiring extensive metadata (e.g., "the identity of the document's custodian," "the identity of the Person whose testimony could be used to authenticate each document") that may not be readily available.

4.      Definition No. 6 ("Identify" with respect to entities). Defendant objects to this definition to the extent that it requires information beyond what is necessary for identifying a legal entity. The requirement to provide "the legal form of the entity (whether it is a corporation, partnership, etc.), state of incorporation (if any), date of incorporation or the date the business relationship was established, address and telephone number of the headquarters, address and telephone number of the principal place of business, person designated for service process, and address designated for service of process" is overly broad, unduly burdensome, and not proportional to the needs of this case under Rule 26(b)(1).

5.      Definition No. 8 ("Driving Opportunity/Lease Purchase Program"). Defendant objects to this definition as vague, ambiguous, and overbroad because it lumps together multiple business programs and legal entities without proper differentiation. The definition includes "any of its subsidiaries/divisions/affiliates," which improperly suggests that Defendant has an obligation to provide discovery regarding separate legal entities that may not be parties to this litigation.

6.      Definition No. 10 ("Evidence"). Defendant objects to this definition as vague and ambiguous, as it seeks to define "evidence" broadly as "testimony, documents, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." This definition does not provide sufficient clarity as to whether it refers only to admissible evidence or whether it improperly seeks to include all potentially discoverable materials, some of which may be privileged or irrelevant.

4

7.      Definition No. 11 ("Concern and Concerning"). Defendant objects to this definition as impermissibly broad and vague because it defines "concern[ing]" as "relating to, referring to, describing, evidencing or constituting." This expansive definition improperly broadens the scope of discovery by attempting to include documents and information that may be only tangentially related to the subject matter of the litigation. Such an overly broad definition fails to comply with the proportionality requirement of Rule 26(b)(1).

8.      Definition No. 16 ("Defendant, You, and Your"). Defendant objects to this definition as overly broad and misleading because it seeks to define "Defendant," "you," and "your" as including "all of its divisions, subsidiaries, affiliated or related or predecessor companies." This improperly attempts to expand Defendant's discovery obligations to include information and documents in the possession of separate legal entities that are not parties to this action, in violation of Rule 33(a)(2) and Rule 34(a), which limit discovery to information within a party's knowledge, possession, custody, or control.

9.      Definition No. 19 ("Class Period"). Defendant objects to this definition as overly broad and vague, as it defines "class period" as "between August 23, 2021, and the present time." This fails to account for whether the class definition is legally valid, whether the class has been certified, and whether all individuals within this time period are properly part of the class under Rule 23. Defendant further objects to any implication that it must treat all individuals within this time frame as class members without a court determination.

## INTERROGATORIES

1.      Identify all corporate officers and directors for each of the CRST Entities and for each, identify their tenure as officers or directors and their home and work addresses.

5

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, particularly because it seeks identification of "all corporate officers and directors for each of the CRST Entities," a term that includes a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). Moreover, this interrogatory improperly seeks the "home addresses" of individuals who are not parties to the litigation, which raises significant privacy and security concerns and implicates the protections afforded by federal and state privacy laws. Such personal information is not relevant to any claim or defense in this action and is not proportional to the needs of the case under Rule 26(b)(1). It is also irrelevant to the extent it seeks information on corporate officers and directors anytime subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).  Any overlap of corporate officers or directors is also not relevant to Plaintiff's specific personal jurisdiction arguments. *See, e.g.*, *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that its officers and directors during the alleged class period are as follows:

| Name | Approx. Tenure | Principal Work Location |
|---|---|---|
| Andrew Hadland | 2012 to 2021 | Fort Wayne, Indiana |
| Tom McKerr | 2013 to present | Fort Wayne, Indiana |
| Mike Gannon | 2013 to present | Cedar Rapids, Iowa |
| David Souza | 2016 to 2021 | Cedar Rapids, Iowa |
| Hugh Ekberg | 2016 to 2024 | Cedar Rapids, Iowa |

| | | |
|---|---|---|
| Lisa Stephenson | 2016 to present | Cedar Rapids, Iowa |
| Bill Clement | 2018 to present | Fort Wayne, Indiana (until September 2024); Jacksonville, Florida (September 2024 to present) |
| Rick Burton | 2019 to 2023 | Fort Wayne, Indiana |
| Brent Mohasci | 2021 to present | Cedar Rapids, Iowa |

Notwithstanding these objections and without waiving them, Defendant further states that it is overseen by the Board of Directors of its parent company, CRST International Holdings, LLC. During the class period, the Board of Directors for CRST International Holdings, LLC has consisted of the following individuals:

| Name | Approx. Tenure | State of Residence |
|---|---|---|
| John Smith | 1978 - Present | Iowa |
| Dyan Smith | 1997 - Present | |
| Ian Smith | 2015 - Present | |
| Tony Golobic | 2002 - Present | Not Iowa |
| Peter Latta | 2018 - Present | Not Iowa |
| John Larkin | 2013 - Present | Not Iowa |
| John Bowron | 2000 - Present | Not Iowa |
| Greg Swienton | 2020 - Present | |
| Tom Sanderson | 2022 - Present | Not Iowa |
| Terri Pizzuto | 2023 - Present | Not Iowa |
| Bob Lake | 2002 – 2022 | Not Iowa |
| Dave Kulik | 2014 – 2021 | Not Iowa |
| Henry Royer | 1994 – 2019 | |
| Dave Rush | | |

Investigation is ongoing, and Defendant intends to supplement this response with additional information about the missing tenure and residency of the board members when it becomes available.

**SUPPLEMENTAL RESPONSE**: Notwithstanding these objections and without waiving them, Defendant states that its officers and directors during the alleged class period are reflected in the document prepared by counsel produced as SPEC014658.

2.      Identify all board(s) of directors that manage Your operations in any capacity, and for each, list the date and location of each meeting of the board.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify all board(s) of directors that manage Your operations in any capacity" is vague and ambiguous, particularly as it fails to define the scope of "manage Your operations." To the extent this interrogatory seeks information outside of Defendant's knowledge, possession, custody, or control—particularly regarding other entities—it exceeds the permissible scope of discovery. Finally, a parent entity's contacts with the forum state is not relevant to Plaintiff's specific personal jurisdiction arguments. *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent). It is also irrelevant to the extent it seeks information about boards of directors anytime subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that, in lieu of an annual meeting of its Board of Directors, resolutions have been adopted by consent during the alleged class period.

Notwithstanding these objections and without waiving them, Defendant further states that it is also overseen by the Board of Directors of its parent company, CRST International Holdings, LLC. During the alleged class period, the Board of Directors for CRST International Holdings, LLC has met at the following locations on the following dates:

- February 23rd & 24th 2022 – Naples, FL 34102
- May 11th & 12th 2022 – Milpitas, CA 95035 (11th) & American Canyon, CA 94503 (12th)
- August 17th & 18th 2022 – Cedar Rapids, IA
- December 14th & 15th 2022 - Naples, FL 34102
- March 8th & 9th 2023 – Naples, FL 34102
- May 24th & 25th 2023 – Birmingham, AL 35214
- August 23rd & 24th 2023 – Cedar Rapids, IA
- December 13th & 14th 2023 - Naples, FL 34102
- February 21st & 22nd 2024 – Naples, FL 34102
- May 15th & 16th 2024 – Amherst, NY 14228
- August 22nd & 23rd 2024 – Cedar Rapids, IA
- December 18th & 19th 2024 – Naples, FL 34102
- February 26th & 27th 2025 – Naples, FL 34102
- May 15th, 2025 – Cedar Rapids, IA
- August 20th & 21st, 2025 – Cedar Rapids, IA
- December 10th & 11th 2025 - Naples, FL 34102

3. Identify by address and function (e.g. office building, warehouse) all real property You own, lease, or utilize in any capacity in Iowa, including real property shared with other CRST Entities.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify by address and function all real property You own, lease, or utilize in any capacity in Iowa" is vague and ambiguous, particularly because it seeks information regarding property that may be used only tangentially or incidentally in connection with Defendant's operations. Additionally, the request improperly seeks information about "real property shared with other CRST Entities," a term that includes a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). Furthermore, to the extent the request seeks information about real property used solely by separate legal entities, such information is irrelevant to the claims and defenses in this action and is not proportional to the needs of the case. *See, e.g.,*

9

*Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks information on "real property [] own[ed], lease[d], or utilize[d]" anytime subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that during the alleged class period, it has not owned or leased any real property in Iowa. CRST Specialized lease purchase contractors have the option of utilizing maintenance services at a facility leased by CRST Lincoln Sales, Inc. in Cedar Rapids, Iowa (among other facilities in other cities throughout the United States). Investigation is ongoing, and Defendant reserves the right to supplement this response if additional responsive information becomes available.

**SUPPLEMENTAL RESPONSE**: No additional responsive information was identified, and CRST Specialized's investigation is completed.

4. Identify all of Your officers, directors, and employees who live or work in Iowa.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify all of Your officers, directors, and employees who live or work in Iowa" is not limited by any relevant position or function and thus is not reasonably tailored to the claims or defenses in this action. Furthermore, this interrogatory improperly seeks personal information of individuals who are not parties to the litigation, raising significant privacy concerns and potentially implicating protections under federal and state privacy laws. Additionally, the request seeks information about officers, directors, or employees of other CRST Entities, a term that includes a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not

11

"parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks the identities of "officers, directors, and employees" for anytime subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that during the alleged class period, it has only employed one individual in Iowa: Tonya Cornelius, the former CRST Specialized Supervisor of Incident Response (*i.e.*, accident team), from approximately 2021 until the first quarter of 2023. Investigation is ongoing, and Defendant reserves the right to supplement this response if additional responsive information becomes available.

**SUPPLEMENTAL RESPONSE**: No additional responsive information was identified, and CRST Specialized's investigation is completed.

5.     Identify by date and describe the purpose of each instance on which any of Your officers, directors, or employees have entered Iowa for business purposes.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify by date and describe the purpose of each instance on which any of Your officers, directors, or employees have entered Iowa for business purposes" is not limited in subject matter or relevance and thus improperly seeks an exhaustive and burdensome accounting of corporate activities that are not reasonably related to any claim or defense in this action. Furthermore, the request implicates privacy and security concerns, particularly as it seeks to track movements of individuals not parties

to this litigation. Additionally, to the extent this interrogatory seeks information outside of Defendant's knowledge, possession, custody, or control—particularly regarding activities of other CRST Entities—it exceeds the permissible scope of discovery under Rule 26(b)(1). *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). CRST Entities, as Plaintiff defines it, is a term that includes a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks information on the travel of "officers, directors, or employees" subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that it does not maintain records reflecting each instance of entry into Iowa by officers, directors, and employees and therefore cannot provide a complete or precise list of dates and purposes. Investigation is ongoing, and Defendant reserves the right to supplement this response if additional responsive information becomes available.

**SUPPLEMENTAL RESPONSE**: No additional responsive information was identified, and CRST Specialized's investigation is completed.

6.      Identify all shared employees, officers, directors, facilities, resources, departments, third-party vendors, and administrative services (e.g., marketing, legal, human resources, IT, billing, dispatch, customer service, recruiting) with any other /CRST Entity, including, for all individuals, their home and work address, and for all facilities, resources, departments, and services, their physical location(s).

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify all shared employees, officers, directors, facilities, resources, departments, third-party vendors, and administrative services" with any other CRST Entity, and to provide for all individuals their home and work addresses, is not limited by time, subject matter, or relevance. It improperly seeks an exhaustive accounting of internal business operations, including personal information about individuals who are not parties to this litigation, raising significant privacy concerns and implicating protections under federal and state privacy laws. Additionally, the request impermissibly seeks information about other CRST Entities, a term that includes a non-party, and seeks information that is in the knowledge, possession, custody, or control of entities other than

14

Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). This information is not relevant to the claims or defenses at issue, including Plaintiff's specific personal jurisdiction arguments. *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks information on "shared employees, officers, directors, facilities, resources, departments, third-party vendors, and administrative services" subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added). To the extent this request seeks information that is proprietary, confidential, or protected by trade secret or other privileges, Defendant further objects.

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that during the alleged class period, billing, collections, dispatching, and customer service is handled by CRST Specialized personnel. Defendant has shared certain limited administrative services with other entities under the common ownership of its parent company, CRST International Holdings, LLC. These shared services include the following, the costs of which are generally allocated across the supported entities:

- Legal: Legal personnel are generally based in Cedar Rapids, Iowa; however, some staff work remotely from other states. Associated costs are allocated across supported entities.

- Human Resources: Human resources support for staff (*i.e.*, not contractors) is a shared service, and CRST Specialized's primary human resources contact, Laura Gawron, operates out of Buffalo, New York. Previously, there was an HR representative on-site in Fort Wayne, Indiana. Associated costs are allocated across supported entities.

- Marketing & Advertising: Some marketing and advertising services are generally performed on an enterprise basis, including most recruiting-related marketing and advertising with input from personnel from the operating entities. Enterprise-wide advertising is currently led by Chris Thomas who works remotely from Louisville, Kentucky. Associated costs are allocated across supported entities. However, Julie Eck, a CRST Specialized employee who works out of Fort Wayne, Indiana, is also responsible for coordinating various marketing initiatives specific to CRST Specialized including website updates on behalf of CRST Specialized along with marketing efforts directed toward CRST Specialized customers and agents.

- Information Technology (IT): During the class period, some IT personnel have been dedicated to CRST Specialized, including for maintaining legacy systems and electronic

16

data interchange functions specific to CRST Specialized; however, other IT infrastructure and support is shared with other CRST entities. Associated costs for shared IT support and infrastructure are allocated across supported entities.

- Recruiting: Recruiting is done by CRST Specialized's Manager of Recruiting, Lyndsay Perez, who works out of its Fort Wayne, Indiana office and Brooke McGivern, who works remotely out of her home in North Carolina (and was the recruiter who spoke with Mr. Kelchner). However, other recruiters affiliated with other CRST entities are also educated on contracting opportunities with CRST Specialized and therefore may also work with prospective drivers who express interest in those opportunities. Associated costs for shared recruiting services are allocated across supported entities.

- Safety: Specialized has 4 safety employees that it employs and carries on its P&L. It also receives support from a Safety Director and other safety resources that are located in Cedar Rapids, Iowa and an employee who works remotely from his home in Memphis, Tennessee.

Investigation is ongoing, and Defendant reserves the right to supplement this response if additional responsive information becomes available.

**SUPPLEMENTAL RESPONSE**: No additional responsive information was identified, and CRST Specialized's investigation is completed.

7. State and describe whether you maintain or have ever maintained any licenses, permits, registrations, or have filed taxes in Iowa.

**OBJECTIONS:** Defendant objects to this interrogatory to the extent it is overly broad and not proportional to the needs of the case. The request to "state and describe whether you maintain

17

or have ever maintained any licenses, permits, registrations, or have filed taxes in Iowa" is not limited by time or subject matter, and seeks information that is not relevant to any claim or defense in this action. To the extent the request seeks information about licenses, permits, registrations, or taxes for activities unrelated to the allegations in this lawsuit, it exceeds the permissible scope of discovery under Rule 26(b)(1). Additionally, Defendant objects to the extent this interrogatory seeks information beyond its own knowledge, possession, custody, or control, particularly regarding activities of other CRST entities, a term that includes a non-party and the Co-Defendants; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks information on "licenses, permits, registrations, or … taxes" subsequent to the filing of this case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court

has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Notwithstanding these objections and without waiving them, Defendant states that it is registered as a foreign corporation with the Iowa Secretary of State and that it has filed taxes in Iowa, including (1) International Fuel Tax Agreement (IFTA) taxes, in connection contractors' activities in the state and (2) payroll taxes for the one employee identified in Defendant's response to Interrogatory No. 4. Investigation is ongoing, and Defendant reserves the right to supplement this response if additional responsive information becomes available.

**SUPPLEMENTAL RESPONSE**: No additional responsive information was identified, and CRST Specialized's investigation is completed.

8. Identify all business activities you have conducted in Iowa, including the nature of the activity, the dates conducted, and the persons or entities involved.

**OBJECTIONS:** Defendant objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case. The phrase "business activities" is undefined, lacks reasonable specificity, and could be interpreted to encompass every time a truck operating under Defendant's authority traveled in Iowa, regardless of relevance to the claims or defenses in this lawsuit. Additionally, the request to "identify the nature of the activity, the dates conducted, and the persons or entities involved" improperly seeks an exhaustive and burdensome accounting of all business activity in Iowa, without limitation as to time, scope, or relevance. The interrogatory also appears to improperly call for a legal conclusion regarding what constitutes a "business activity," which is not a proper subject for an interrogatory under Rule 33(a)(2). It is also improper to the extent the request seeks information about other CRST entities,

19

a term that Plaintiff defines to include a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks information about "business activities" subsequent to the filing of the case; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added).

**RESPONSE:** Given the vague, ambiguous, and overbroad nature of this interrogatory, Defendant is unable to provide a response without further clarification or narrowing by Plaintiff. Defendant reserves all rights to supplement or amend this response if additional information

becomes available or if the scope of the interrogatory is narrowed to reasonably relate to the issues in this action.

9. Identify all contracts or agreements entered into with any person or entity located in Iowa, or that contain an Iowa choice of law of forum selection clause.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify all contracts or agreements entered into with any person or entity who may have a location in Iowa, or that contain an Iowa choice of law or forum selection clause" is not limited by time, subject matter, or relevance to the specific claims or defenses in this action. Defendant is a trucking company that conducts business nationwide, and this interrogatory seeks an exhaustive identification of contracts and agreements—many of which have no bearing on the issues raised by Plaintiff's claims. The request imposes an undue burden and would require Defendant to engage in an expansive search, review, and disclosure of voluminous business records that are not reasonably proportional to the needs of this case under Rule 26(b)(1). Additionally, to the extent the request seeks information about contracts or agreements involving other CRST entities, it is improper. Plaintiff defines that term to includes a non-party and also seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). That information is also irrelevant to Plaintiff's specific personal jurisdiction arguments. *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6

21

(E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). It is also irrelevant to the extent it seeks contracts or agreements not in effect on the date the case was filed; the lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced*." *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added). Finally, to the extent this interrogatory seeks information about confidential, proprietary, or privileged contracts, Defendant objects on the basis that such disclosure is inappropriate absent further demonstration of relevance and necessity.

**RESPONSE:** Given the vague, overbroad, and burdensome nature of this interrogatory, Defendant is unable to provide a response without further clarification or narrowing by Plaintiff. Defendant reserves all rights to supplement or amend this response if the scope of the interrogatory is properly narrowed to reasonably relate to the issues in this action.

**SUPPLEMENTAL RESPONSE**: In his July 22, 2025 letter, Plaintiff agreed to narrow his overbroad interrogatory to "formal written contracts" and to "eliminate[] the word 'agreement.'" Subject to that limitation, in-house counsel for CRST Specialized is searching for

responsive formally written contracts and will produce those documents on or before December 5, 2025.

10.     Identify and describe any litigation in which You have been a party in Iowa federal or state courts within the past ten (10) years, including Your role (e.g., plaintiff, defendant), the case name, court name, case number, nature of the dispute, outcome, and whether you contested personal jurisdiction, and, if so, the result.

**OBJECTIONS:** Defendant objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The request to "identify and describe any litigation in which You have been a party in Iowa federal or state courts within the past ten (10) years," including whether Defendant contested personal jurisdiction, seeks information that is irrelevant to the claims and defenses in this case. Caselaw establishes that whether a party contested personal jurisdiction in other, unrelated cases is not relevant to the question of specific personal jurisdiction or waiver in the instant matter. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir.1991) ("A party's consent to jurisdiction in one case . . . extends to that case alone."); *Magee v. Fla. Marine, LLC*, 711 F.Supp.3d 614, 627 (E.D. La. 2024) ("Florida Marine has not cited to, nor is this Court aware of, any law that would permit the Court to find that McNational waived it's right to object to the Court's exercise of personal jurisdiction over it in this case by failing to raise the objection in a prior, unrelated case."); *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F.Supp.3d 515, 530 (E.D. Tex. 2021) ("In general, consent to suit in one instance does not operate as a waiver of jurisdiction forevermore."); *Simpson v. Wright Med. Grp., Inc.*, No. 5:17-CV-00062-KGB, 2018 WL 1570795, at *6 (E.D. Ark. Mar. 30, 2018) ("Consent to a forum's personal

23

jurisdiction in a prior case does not, by itself, constitute indefinite consent to be haled into court in that jurisdiction."); *Torrent Pharms. Ltd. v. Daiichi Sankyo, Inc.*, 196 F.Supp.3d 871, 877 (N.D. Ill. 2016) (same). The lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced.*" *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added). Meaning, any litigation position prior or subsequent to the filing of this case is irrelevant. Additionally, this information is equally available to Plaintiff through publicly accessible court records and does not justify imposing an undue burden on Defendant to compile, review, and produce it. The request also lacks reasonable limitations on subject matter or relevance, further compounding the undue burden. To the extent the request seeks information about other CRST entities not named as parties in this lawsuit, it is not within the scope of permissible discovery under Rule 26(b)(1) and is improper. *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman). CRST entities, as Plaintiff defines the term, includes a non-party and seeks information that is in the knowledge, possession, custody, or control of entities other than Defendant; Defendant is not required to respond beyond its knowledge, possession, custody, or control under Rule 33(a)(2). The sought after information is also irrelevant to the extent it is unconnected to Plaintiff's Iowa BOPA claim. *See Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006) (specific personal jurisdiction inquiry turned on whether the plaintiff "felt the brunt of that harm in Iowa," "Iowa was [] the focal

24

point of the tortuous activity," or the defendant "expressly aimed the alleged tortuous conduct at Iowa."); *see also In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases for the proposition that putative class members are not "parties" for jurisdictional purposes). Defendant further objects to the extent this interrogatory seeks information about confidential or privileged aspects of litigation strategy, including Defendant's litigation positions in prior, unrelated cases.

**RESPONSE:** Given the vague, irrelevant, and unduly burdensome nature of this interrogatory, Defendant declines to provide a response. Defendant reserves all rights to supplement or amend this response if the scope of the interrogatory is properly narrowed to reasonably relate to the claims and defenses in this action.

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving these objections, Defendant states that after its investigation the following two matters were filed against it (among other defendants):

- In *Cheatham v. CRST International Holdings, LLC*, No. 1:24-cv-00109-MAR (N.D. Iowa), CRST Specialized was among the named defendants in the initial complaint. However, prior to answering, Plaintiff's counsel stipulated to dismiss CRST Specialized from the case. *Cheatham*, ECF No. 33.

- In *Conway v. CRST Expedited, Inc.*, No. LACE134791 (Scott Co.), filed in 2022, CRST Specialized was named among several sister entities in a personal-injury case arising from a vehicle accident. The case settled out-of-court and was dismissed with prejudice on or about June 12, 2023.

Because of the litigation posture of the two cases, CRST Specialized did not formally contest personal jurisdiction in either matter.

# SIGNATURE AS TO RESPONSES TO INTERROGATORIES

I affirm, under the penalties of perjury that I have read the Supplemental Responses of Defendant, CRST Specialized Transportation, Inc., to Plaintiff's First Set of Interrogatories, know its contents, and am informed and believe that the foregoing responses are true based on my knowledge, on information reflected in documents and on information supplied by others.

CRST SPECIALIZED TRANSPORTATION, INC.

By: _____

Printed: Tom McKerr

Dated: 11/25/25

AS TO OBJECTIONS

*/s/ Angela S. Cash*
Angela S. Cash

Dated: December 1, 2025

Respectfully submitted,

/s/   Angela S. Cash
James H. Hanson (admitted pro hac vice)
Angela S. Cash (admitted pro hac vice)
Andrew J. Ireland (admitted pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas Wolle
SIMMONS PERRINE MOYER BERGMAN PLC
115 3rd Street SE, Suite 1
Cedar Rapids, IA 52401
twolle@sp.law

*Attorneys for Defendant,*
*CRST Specialized Transportation, Inc.*

27

**CERTIFICATE OF SERVICE**

I certify that on December 1, 2025, I served a true and correct copy of the forgoing

document to the following via e-mail to the following counsel of record:

J. Barton Goplerud,
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
beth@feganscott.com

Georgia J. Zacest
FEGAN SCOTT LLC
708 Main Street, 10th Floor
Houston, TX 77002
georgia@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Avenue #310
San Rafael, CA 94901
rsb@boulter-law.com

Michael von Klemperer
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
mike@feganscott.com

*/s/ Angela S. Cash*
Angela S. Cash

28

# EXHIBIT B



The Transportation Law Firm

10 West Market Street
Suite 1400
Indianapolis, IN 46204

Main: 317.637.1777
Fax: 317.687.2414
scopelitis.com

**ANGELA S. CASH**
acash@scopelitis.com
Direct Dial: 317.492.9229

November 21, 2025

*VIA EMAIL* mike@feganscott.com

Michael von Klemperer
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009

> RE: *Kelchner v. CRST Expedited, Inc., et al.*
> USDC N.D. Iowa, Case No. 1:24-cv-00082-CJW-KEM
> Discovery Issues

Counsel:

I write on behalf of Defendants, CRST International Holdings, LLC (International Holdings), CRST Expedited, Inc. (CRST Expedited), CRST Specialized, Inc. (CRST Specialized), CRST Lincoln Sales, Inc. (Lincoln Sales), Michael Gannon, and John Smith, to address a number of discovery issues including those raised by your July 22, 2025 letter and other more recent meet and confer communications.

## I. ESI Custodians

In your July 22, 2025 letter, you ask what happened to the electronically stored information (ESI) of three individuals initially identified as potential custodians—Andrew Hadland (former president of CRST Specialized), David Malinowski (former asset administrator for CRST Expedited) and Alysha Patterson (former internal audit analyst for CRST Expedited)—and whether substitute custodians are required. As Defendants previously disclosed, each of the individuals left their employment with Defendants long before this case was initiated, and no document retention requirements were in place then. Accordingly, the ESI for all three individuals was deleted consistent with standard company and vendor retention policies, and the information is not archived in any form.

Even though the three potential custodians' individual accounts were purged, many communications to or from them and various documents remain in the accounts of other custodians. As we previously disclosed, roughly 1,800 of the approximately

SERVICES OUTSIDE CALIFORNIA AND MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL CORPORATION
SERVICES IN MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL LIMITED LIABILITY COMPANY
SERVICES IN CALIFORNIA PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LIMITED LIABILITY PARTNERSHIP

61,060 document families collected for review are messages or attachments either sent to or received from these three individuals. Moreover, out of the more than five million documents collected and searched against in the overall ESI corpus, more than 190,000 documents reference Hadland, Malinowski, or Patterson because they authored the document, are listed in the to/from/cc/bcc fields of an e-mail, or they otherwise appear in the metadata. These documents were subject to the same negotiated search terms as the rest of the corpus and were reviewed on an equal footing.

Early next week, Defendants will be producing all relevant written document retention policies for the three classes of ESI:

- **Email**. As a policy, user mailboxes are automatically deleted after 12 months, with a six-month archive period. Employees are instructed to copy any email they deem important to shared drives or print it for their workspace. Consistent with this policy, the mailboxes of Hadland, Malinowski, and Patterson were deleted during off-boarding.

- **Cloud-storage documents and shared drives**. Defendants do not maintain a centralized archive of every document ever stored on individual OneDrive or network folders. Rather, employees are instructed to regularly review and delete outdated files and store any documents they deem vital to a shared drive. Any other documents for Hadland, Malinowski, and Patterson would have been deleted.

- **Microsoft Teams messages**. Teams communications are governed by a separate retention schedule from email and do not have a formal written policy. However, our clients have confirmed that, prior to July 2024, Defendants retained Teams conversations involving terminated employees for only 30 days unless an active litigation hold applied. Since July 2024, however, those messages are retained for seven years. Because the former custodians left before the policy change in July 2024, their Teams messages were purged after 30 days and cannot be recovered. Teams chats involving these individuals that were sent or received by current custodians will be captured in our existing ESI collection, and we have produced any responsive Teams messages.

Given the significant amount of ESI collected for the three proposed custodians, Defendants do not believe substitute custodians are necessary. This position is further underscored by the fact that Hadland left CRST Specialized in December 2021—shortly after the class period began—and his successor, Bill Clement, was included as a custodian. Moreover, Malinowski left in June of 2021 and therefore predates the class period. Finally, Alysha Patterson left in early December 2023; Jan

O'Connell, the Internal Audit manager, was also an ESI custodian and worked from October 2022 through March 2025.

## II. Request for Supplemental Privilege Log

Defendants provided a master privilege log for all custodial ESI on September 30, 2025. Subject to Plaintiff's email October 27, 2025, we agree to produce a supplemental privilege log including for the document stamped EXPEDITED016720 and, for all prior documents, to (a) include a document custodian field, (b) include a field identifying attachment family relationships, and (c) include a field identifying attorneys. Because identifying attorneys requires additional manual document review, we anticipate producing the supplemental privilege log on or before November 26, 2025.

## III. First Set of Interrogatories to CRST Specialized

We respond below to the various questions raised for each interrogatory addressed in your July 22, 2025 letter, and CRST Specialized will be serving supplemental responses to Plaintiff Kelchner's interrogatories next week.

### Interrogatory No. 1

"Identify all corporate officers and directors for each of the CRST Entities and for each, identify their tenure as officers or directors and their home and work addresses."

Subject to and without waiving the objections made to this Interrogatory, included in the forthcoming supplemental production of documents is an updated table of officers and directors for CRST Specialized, CRST Expedited, CRST Lincoln Sales, and CRST International Holdings. For each individual, the table identifies whether they are an officer or director, their title, their state of residence, and their approximate tenure. For the reasons explained in its objections, CRST Specialized declines to provide the remaining requested information, including the home addresses of these individuals. Our investigation on this topic is complete.

### Interrogatory No. 3

"Identify by address and function (e.g. office building, warehouse) all real property You own, lease, or utilize in any capacity in Iowa, including real property shared with other CRST Entities."

We are not aware of any additional information responsive to this interrogatory beyond what has already been provided. CRST Specialized does not own or lease

property in Iowa; however, contractors may occasionally utilize maintenance services at a facility leased by CRST Lincoln Sales in Cedar Rapids. Accordingly, no supplemental response is necessary, and our investigation is complete.

**Interrogatory No. 4**

"Identify all of Your officers, directors, and employees who live or work in Iowa."

As noted above, included in the forthcoming supplemental production of documents served today is an updated table of officers and directors for CRST Specialized, CRST Expedited, Lincoln Sales, and International Holdings. For each individual, the table identifies whether they are an officer or director, their title, their state of residence, and their approximate tenure. Our investigation confirms that CRST Specialized currently has no other employees living or working in Iowa and that its only employee who lived or worked in Iowa during the class period was Tonya Cornelius until early 2023. Our investigation is complete.

**Interrogatory No. 5**

"Identify by date and describe the purpose of each instance on which any of Your officers, directors, or employees have entered Iowa for business purposes."

As explained in our prior response, CRST Specialized does not maintain logs or travel records reflecting every instance in which its officers, directors, or employees entered Iowa for business purposes. We therefore cannot provide a precise list of dates and purposes. Our investigation is complete.

**Interrogatory No. 6**

"Identify all shared employees, officers, directors, facilities, resources, departments, third-party vendors, and administrative services (e.g., marketing, legal, human resources, IT, billing, dispatch, customer service, recruiting) with any other CRST Entity, including, for all individuals, their home and work address, and for all facilities, resources, departments, and services, their physical location(s)."

Without waiving its objections, CRST Specialized intends to supplement its response to reflect that CRST Specialized does not maintain its own contracts with third-party marketing vendors. However, we disagree that its prior response is "largely incomplete" and maintain that Plaintiff Kelchner is not entitled to the information sought, including the home addresses of employees. To the extent that Plaintiff seeks further information above the multi-page response served, it is more appropriate for a deposition.

**Interrogatory No. 7**

"State and describe whether you maintain or have ever maintained any licenses, permits, registrations, or have filed taxes in Iowa."

CRST Specialized will be producing additional documents related to this topic in response to the relevant requests for production. Its investigation as to this Interrogatory, consistent with its objections, is complete.

**Interrogatory No. 9**

"Identify all contracts or agreements entered into with any person or entity located in Iowa, or that contain an Iowa choice of law or forum selection clause."

Plaintiff has limited this interrogatory to formal written contracts. Subject to that limitation, CRST Specialized is in the process of searching for responsive documents and anticipates completing that search and producing any responsive documents on or before December 5, 2025.

**Interrogatory No. 10**

"Identify and describe any litigation in which You have been a party in Iowa federal or state courts within the past ten (10) years, including Your role (e.g., plaintiff, defendant), the case name, court name, case number, nature of the dispute, outcome, and whether you contested personal jurisdiction, and, if so, the result."

Following a search, CRST Specialized identified only two responsive cases. First, in *Conway v. CRST Expedited, Inc.*, No. LACE134791 (Scott Co. Dist. Ct.), a personal-injury case was filed in Scott County, Iowa in 2022, arising from a vehicle accident. CRST Specialized was named along with numerous sister entities, and the matter settled out-of-court and was dismissed with prejudice on or about June 12, 2023. Moreover, in *Cheatham v. CRST International Holdings, LLC*, No. 1:24-cv-00109-MAR (N.D. Iowa), CRST Specialized was initially named as a defendant but was voluntarily dismissed before answering on December 9, 2024. Dismissal documents for both cases are being produced with the supplemental production next week. Because of the litigation posture of the cases, CRST Specialized did not formally contest personal jurisdiction in either matter.

**IV.    Third Set of Requests for Production to CRST Specialized**

We respond below to the various questions raised for each request for production addressed in your July 22, 2025 letter, and early next week, CRST Specialized will

be serving  supplemental responses to and another production related to Plaintiff Kelchner's requests.

**RFP Nos. 10 & 15**

"All contracts, memoranda of understanding, operating agreements, shared services agreements, and other agreements (including amendments) (a) that govern the legal and/or business relationship between the CRST Entities, (b) that govern the services and resources provided by one of the CRST Entities to another, (c) that reflect services (including services provided by third-party vendors such as advertising firms), resources, or personnel shared between multiple CRST Entities, or (d) that concern the operation of, the right, responsibilities, and benefits and liabilities derived from the Driving Opportunity/Lease Purchase Program by and among the CRST Entities."

"All contracts or agreements with any business or entity located in Iowa, including service agreements, transportation contracts, and vendor arrangements."

We decline to disclose the scope and methodology of our search because discovery into another party's discovery process is disfavored absent a showing that the production is deficient. *See, e.g.*, *ImprimisRx, LLC v. OSRX, Inc.*, 2022 WL 17824006, at *2 (S.D. Cal. Dec. 19, 2022). Plaintiff's cited authorities do not hold otherwise; at most, those cases suggest that parties must cooperate in searching ESI such as negotiating and sharing search terms. That says nothing about traditional document searches. However, CRST Specialized is in the process of searching for additional responsive documents to these requests, and we anticipate a small supplemental production of responsive written agreements on or before December 5, 2025.

**RFP No. 13**

"All contracts, agreements, and other documents concerning the control, management of, and ability of any CRST Entity to post to the website CRST.com."

The search for responsive documents to this Request continues, and we anticipate a small supplemental production of responsive documents on or before December 5, 2025.

**RFP No. 16**

"Documents sufficient to show all real property You own, lease, or utilized in any capacity in Iowa, including real property shared with other CRST Entities."

CRST Specialized does not own or lease property in Iowa. To the extent the company utilizes shared facilities in Iowa, those facilities are listed in our responses to

**Scopelitis**

Interrogatory 6. There are no additional documents responsive to this Request, and our search is complete.

## RFP No. 17

"All advertising and marketing materials related to the Driving Opportunity that were directed to, published in, or accessible in Iowa, including online content."

Defendants are working with their third-party vendor to extract marketing information used for recruiting drivers in Iowa and are searching for archived copies of the CRST.com website. We anticipate producing responsive documents as part of a supplemental production on or before December 5, 2025.

## RFP No. 18

"All contracts with third-party vendors providing advertising or marketing services related to the Driving Opportunity."

CRST Specialized did not identify any agreements with third-party marketing vendors; thus, there are no responsive documents.

## RFP Nos. 19–20

"All documents regarding advertising and marketing strategies, goals, or objectives for the Driving Opportunity."

"All documents regarding Your or any other of the CRST Entities' strategies, goals, plans, or objectives for the Driving Opportunity."

Any responsive documents are captured by the broad ESI search that the parties previously negotiated. Because additional searches would be cumulative and unduly burdensome, CRST Specialized will not conduct a separate search for these requests.

## RFP Nos. 21–22

"All documents regarding Your licenses, permits, and registrations with the State of Iowa (including any Iowa agencies) or the United States (including any federal agencies)."

"All documents, including communications, concerning Your registration to do business in Iowa."

With its forthcoming supplemental production, CRST Specialized will be producing documents reflecting its registration to do business as a foreign corporation in in Iowa.

## RFP No. 23

"All documents concerning Your consideration of or any discussion regarding relocating to or reincorporating in Iowa or remaining located and incorporated in Indiana from 2011 through the present."

CRST Specialized has never considered relocating its headquarters to Iowa or reincorporating there, and there are no documents responsive to this Request.

## RFP Nos. 25–26

"All documents concerning any investigations, studies, audits, or analysis by you (or any third party acting on your behalf) concerning whether the Lease Purchase Program was a business opportunity under Iowa, Indiana, or federal law."

"All documents concerning the Iowa Business Opportunity Promotions Act, Iowa Code §§ 551A.1-551A.10."

We have searched for and have not identified any documents responsive to this Request including any communications addressing whether CRST Specialized's lease purchase program constitutes a business opportunity under Iowa law or any other state's business-opportunity laws.

***

In summary, next week's supplemental production of documents will include:

- A table of officers and directors for CRST Specialized, CRST Expedited, Lincoln Sales, and International Holdings;

- Defendants' written document-retention policies;

- CRST Specialized's foreign corporation registration materials for Iowa; and

- Dismissal filings from the *Conway* and *Cheatham* cases noted above.

Again, we anticipate producing additional documents concerning agreements with Iowa entities or Iowa law provisions, control of the CRST.com website, and marketing data and materials on or before December 5, 2025.

Please let us know if you have any questions. We remain committed to cooperating in discovery and will continue to work with you to resolve any issues.

Sincerely,

*/s/ Angela S. Cash*


ASC/AJI/nb

Copies to:

J. Barton Goplerud,
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
beth@feganscott.com

Georgia J. Zacest
FEGAN SCOTT LLC
708 Main Street, 10th Floor
Houston, TX 77002
georgia@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Avenue #310
San Rafael, CA 94901
rsb@boulter-law.com

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, DANIEL WECHE, and ANTHONY HICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST International Holdings, LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc., John Smith, an individual, and Michael Gannon, an individual.<br><br>Defendant(s). | CASE NO. 1:24-cv-00082-CJW-KEM |

**PLAINTIFFS' NOTICE OF TAKING DEPOSITION UNDER FED. R. CIV. P. 30(b)(6) TO DEFENDANT CRST INTERNATIONAL HOLDINGS, LLC**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, by and through their undersigned counsel, Plaintiff Harley Kelchner, Daniel Weche, and Anthony Hicks (collectively "Plaintiffs") will take the deposition of the designee(s) of Defendant CRST International Holdings, LLC ("CRST International") on the matters identified in the accompanying **Exhibit A**, which is incorporated by reference into this Notice of Taking Deposition. Plaintiffs reserve the right to notice additional topics pursuant to Rule 30(b)(6).

Further, pursuant to Rules 30(b)(2) and 34, Plaintiffs request that CRST International produce the documents requested in **Exhibit A**.

The deposition will take place at a mutually agreeable date and time at the Offices of Shindler, Anderson, Goplerud & Weese, PC, 5015 Grand Ridge Drive, Suite 100, West Des Moines, Iowa 50265 (unless otherwise mutually agreed).

This deposition will be recorded by stenographic and videographic means before an officer authorized to administer oaths and will continue from day to day for each designated witness, Saturdays, Sundays, and holidays excepted, until completed, in accordance with Fed. R. Civ. P. 26, 28, and 30.

The deposition will be taken for the purposes of discovery, for use at trial, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Dated: December 12, 2025

Respectfully Submitted,

*/s/ Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 450-5189
rsb@boulter-law.com

*Attorneys for Plaintiffs Kelchner, Hicks, and
Weche and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Michael von Klemperer, certify that the foregoing document was served on Defendant

CRST International Holdings, LLC, and all counsel of record via email on December 12, 2025.

*/s/Michael von Klemperer*
Michael von Klemperer

# EXHIBIT A

## I.    DEFINITIONS

1.      Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

2.      All/Each. The terms "all" and "each" shall be construed as all and each.

3.      "Any" includes and encompasses the term "all."

4.      And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      Drivers. The term "Drivers" means all current and former independent contractor drivers for Defendants and/or any of their subsidiaries/divisions/affiliates and that leased trucks from CRST Lincoln Sales, Inc. between August 23, 2021, and the present.

6.      Lease Purchase Program. This term means the Lease Purchase Program that Defendants and/or any of their subsidiaries/divisions/affiliates provided Drivers whereby Drivers leased trucks from CRST Lincoln Sales, Inc. and concurrently agreed to provide driving services to Defendants and/or any of their subsidiaries/divisions/affiliates utilizing such trucks.

7.      Contracts. The term "contracts" means the contracts related to the Driving Opportunity, as that term is used in the complaint, and includes the Lease Agreement and Contractor Agreement as also used in the complaint.

8.      Settlement Statements. The term "settlement statements" means the statements related to Drivers reflecting income, expenses, and deductions and includes, but is not limited to, Commission Statements, Fuel Card Detail statements, Mileage Compensation and Expense Voucher statements, and Contract Activity statements.

9.     CRST Defendants. The term "CRST Defendants" refers to CRST International Holdings, LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc., and CRST Lincoln Sales, Inc.

10.     Subsidiary Defendants. The Term "Subsidiary Defendant" or "Subsidiary Defendants" refers to CRST International's affiliates/subsidiaries/divisions, including CRST Expedited, Inc., CRST Specialized Transportation, Inc., and CRST Lincoln Sales, Inc.

11.     CRST Specialized. The term "CRST Specialized" refers to Defendant CRST Specialized Transportation, Inc. and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

12.     CRST Lincoln Sales. The term "CRST Lincoln Sales" refers to Defendant CRST Lincoln Sales, Inc. and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

13.     CRST International, You and your. The terms "CRST International," "you," and "your" refer to Defendant CRST International Holdings, LLC, and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

## II.     RELEVANT TIME PERIOD

1.     Unless otherwise limited, the relevant time period is August 23, 2021, to present.

## III.     REQUEST FOR DOCUMENTS

1.     No less than 2 business days before each witness designated by You in response to this deposition notice is scheduled to testify, produce or, if already produced, identify by Bates

number, all Documents used, referenced, created by, or otherwise relied upon by the witness to educate or prepare themselves to testify or to refresh his or her recollection.

## IV. MATTERS FOR EXAMINATION

1. All ways in which the operations of the CRST Defendants are integrated, including, but not limited to, shared services, departments, governance and management, officers, personnel, facilities or real property, equipment, vendors, recruiters, suppliers, service providers, accounting, banking, policies, practices, resources, logos, branding, websites, intellectual property, and electronic systems.

2. All ways in which CRST Specialized relies on personnel, departments, services, or infrastructure located in whole or in part in Iowa, including, but not limited to, the identities, roles, responsibilities, employer, reporting structure, work address, and home city of those personnel, the function and organizational structure of those departments, and the function and location of that infrastructure, and any ways in which those personnel, departments, services, or infrastructure are involved in supporting, directing, operating, managing, or otherwise assisting with the Lease Purchase Program, including the recruiting and management of Drivers.

3. CRST Specialized's Response to Interrogatory No. 6, including, for all the departments listed, the identities, roles, responsibilities, and location of all personnel who provide services to CRST Specialized (including, but not limited to, Laura Gawron, Chris Thomas, Lyndsay Perez, and Brooke McGivern), what specific services they provide, which CRST Defendant employs the person or houses the department, and the identities, roles, responsibilities, and location of the persons they report to.

4. The process by which the CRST Defendants are "integrated to create complete transportation and supply chain solutions and provide deep industry experience" (Michael Gannon

Dep., Ex. 1 (May 29, 2025)), and the roles that each of the CRST Defendants plays in achieving this goal.

5. The role and responsibilities of CRST International (through its executives, Board of Directors, or otherwise) in managing, directing, or otherwise overseeing the Subsidiary Defendants, including but not limited to, with respect to the Lease Purchase Program, business strategy, objectives, goals, revenue, and operating income; how frequently the Subsidiary Defendants are required to report to the Board and what they are required to report; and which CRST Defendants (including the identities, roles, responsibilities, and location of specific persons) attend and/or present at Board meetings.

6. The organization, make-up, and practices of the CRST International Board of Directors, including the name and purpose of all Board committees, the frequency, location, and conduct of Board meetings, the identity and general content of reports and presentations regularly provided to the Board and the names, roles, responsibilities, and location of the persons and departments involved in creating or presenting those reports and presentations, and what documents are created for or by the Board.

7. The process by which the CRST Defendants develop and implement strategy, goals, and objectives of the Lease Purchase Program, including, but not limited to, how the CRST Defendants coordinate during this process; the identities, roles, responsibilities, and location of each person and department responsible for developing and implementing the strategy, goals, and objectives; and what documents are created as part of this process.

8. The financial relationship between CRST International and the Subsidiary Defendants, including, but not limited to, the role CRST International plays in capital expenditure decisions and/or budget approvals; the allocation of profits, losses, and tax liabilities; any financial

reporting requirements imposed by CRST International; the process for transferring funds between CRST Specialized and the Subsidiary Defendants; and whether the Subsidiary Defendants and CRST International have separate or consolidated financial statements.

9. The process by which the CRST website (https://www.crst.com/) and webpages associated with the Lease Purchase Program, including job postings on https://crstrecruiter.crst.com/jobs, are operated, including, but not limited to, the process for drafting, publishing, editing, or removing the website and/or webpages; whether back-ups of this website and/or webpages are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

10. The process by which CRST drafts, publishes, edits, or removes web postings and/or advertisements for the Lease Purchase Program on third party systems (e.g., LinkedIn, Indeed, Glassdoor, Zip Recruiter), including, but not limited to, whether backups of these web postings and/or advertisements are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

11. The process by which the CRST Defendants draft, revise, and validate or verify the factual representations in its Lease Purchase Program advertisements, Driver orientation materials (such as presentations given, scripts, talking points), and recruiting materials (such as the Lease Purchase Information Packet), including, but not limited to, what data and information is used and/or relied upon in the process; whether these factual representations are updated for accuracy and, if so, how frequently; what documents exist to support these factual validations; and the

identities, roles, responsibilities, and location of all personnel and departments involved in the process (including which CRST Defendant employs the person or houses the department).

12. The process by which each CRST Defendant approves marketing and advertising materials, including the identities, roles, responsibilities, and location of those personnel and departments involved (including which CRST Defendant employs the person or houses the department) and whether marketing, advertising, and/or branding is controlled by or integrated with CRST International's or any other CRST Defendants' marketing, advertising, and/or branding.

13. The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via 3rd party recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons responsible for coordinating 3rd party recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to 3rd party recruiters and by whom; which CRST Defendant the 3rd party recruiters work for and/or report to; and what documents are created as a part of this process.

14. The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via in-house recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons and departments responsible for recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to in-house recruiters and by whom; which CRST Defendant the in-house recruiters work for and/or report to; whether customer leads are generated on an enterprise-wide basis; what documents are created as a part of this process.

15. The process by which the IOCA, lease agreements, and any other written agreement and/or contracts entered into with Drivers are drafted, revised, or enforced, including which CRST

Defendants are involved in the process and the identities, roles, responsibilities, and location of each person and department involved in the process.

16. The process for defining (and modifying the definitions of) gross revenue, adjusted gross revenue, and gross compensation, as those terms are used in the IOCA, including the identities, roles, responsibilities, and location of those persons responsible for such definitions and which CRST Defendant they work for and/or report to.

17. The policies, practices, procedures, and processes for setting and changing compensation rates for Drivers, including charges and deductions outlined on Settlement Statements, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

18. The policies, practices, procedures, and processes for receiving and documenting Driver complaints (such as by the Retention Department), including, but not limited to, which CRST Defendants are involved in the process, the identities, roles, responsibilities, and location of each person and department involved, and what documents are created as part of this process.

19. The role that each individual identified on each CRST Defendants' initial disclosures plays in the Lease Purchase Program, if any.

20. Your relationship and interactions with American Trucking Business Services ("ATBS") including, but not limited to, points of contact, contracts you have had in place with ATBS, the subject matter of such contracts, types and contents of reports to and/or from ATBS, ATBS services provided to Drivers, and all efforts/activities to provide information to Drivers about ABTS and its services.

21. The policies, practices, procedures, and methods by which the purchase price for lease vehicles are determined, including whether and how depreciation claimed by CRST Lincoln

Sales is factored into purchase price, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person involved in this process.

22. The process by which money flows to and from CRST Lincoln Sales for lease and maintenance payments, including the accounting of the same and the banking institutions handling such transactions, in addition to which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

23. The roles and responsibilities of Lisa Stevenson as to each CRST Defendant, including, but not limited to, as Secretary of CRST Expedited, CRST Lincoln Sales, and CRST Specialized; Chief Risk Officer of CRST Expedited; and General Counsel of CRST Expedited and CRST International.

24. The identity of the person(s) most knowledgeable concerning the CRST Defendants' shared marketing and advertising practices and services; recruiting practices; legal personnel; human resources infrastructure and support; information technology infrastructure and support; safety resources; document management system; record keeping and retention; and facilities or real property.

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CRST INTERNATIONAL HOLDINGS LLC, CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC. and JOHN SMITH, an individual, and MICHAEL GANNON, an individual, <br><br> Defendants. | Case No. 1:24-cv-00082-CJW-KEM <br><br> Honorable Judge C.J. Williams |

## OBJECTIONS AND RESPONSES OF DEFENDANT, CRST INTERNATIONAL HOLDINGS, LLC, TO PLAINTIFFS' RULE 30(B)(6) NOTICE

Defendant, CRST International Holdings, LLC (CRST International Holdings), hereby objects to Plaintiffs' December 12, 2025 Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) and the accompanying request for documents. CRST International Holdings is a holding company that does not have operations of its own. Many of the topics in Plaintiffs' notice are directed to the operations of other defendants—CRST Expedited, Inc. (CRST Expedited), CRST Specialized Transportation, Inc. (CRST Specialized), and CRST Lincoln Sales, Inc. (CRST Lincoln Sales)—rather than to CRST International Holdings. To the extent a topic seeks information about or records of an entity other than CRST International Holdings, the topic is improperly directed to CRST International Holding. CRST International Holdings responds subject to the general objections below and without waiving any objections to Plaintiffs' discovery requests.

These objections are not intended to limit CRST International Holdings' ability to supplement, amend, or modify its objections or responses. CRST International Holdings expressly reserves all privileges and protections under the attorney-client privilege, the work-product doctrine, and any other applicable privilege or immunity.

## GENERAL OBJECTIONS

1.      **Overbreadth, Burden, and Proportionality.** Many topics purport to require CRST International Holdings to provide "all ways" or "all" information about broad areas of operations and to cover "including but not limited to" sub-topics. Such wording renders the topics overly broad, unduly burdensome, and disproportional to the needs of this case. A Rule 30(b)(6) notice must designate "with painstaking specificity" particular subject areas intended to be questioned, which are also relevant to the issues in dispute. *See, e.g., Kalis v. Colgate-Palmolive Co.*, 241 F.3d 1049, 1057 n.5 (7th Cir. 2001).

2.      **Vagueness and Ambiguity.** Terms such as "operations," "shared services," "all ways," "relating to," and "integrated" are vague and undefined. Ambiguous topics fail to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6) and therefore are improper. *See, e.g., Shapiro v. American Credit Union*, 2013 WL 12310679, at *2 (W.D. Wash. May 31, 2013) (noting that overbroad topics subject deponents to an "impossible task").

3.      **Irrelevance and Scope.** Plaintiffs' claims relate to the Lease Purchase Program administered by CRST Expedited, CRST Specialized, and CRST Lincoln Sales. Topics seeking information unrelated to the Lease Purchase Program or outside the August 23, 2021–present relevant period are not related to the issues in this case and are not proportional to the needs of the case. CRST International Holdings objects to producing testimony about matters (a) unrelated to

2

the Lease Purchase Program, (b) to the extent a topic seeks information predating August 23, 2021, or (c) unrelated to Plaintiffs' claims.

4. **Wrong Defendant**. As a holding company, CRST International Holdings does not employ drivers, recruiters, or marketing personnel, does not operate websites, and does not manage the day-to-day operations of CRST Expedited, CRST Specialized, or CRST Lincoln Sales. Topics directed at the operations, policies, and personnel of these subsidiaries are misdirected. CRST International Holdings will not prepare a corporate representative to testify about matters solely within the knowledge of other Defendants. For topics incorrectly directed to CRST International Holdings, Plaintiffs should serve notices on the appropriate entity.

5. **Privilege and Work-Product.** Plaintiffs request production of "[a]ll Documents used, referenced, created by, or otherwise relied upon by the witness to educate or prepare themselves to testify." CRST International Holdings objects to producing or identifying privileged attorney-client communications, attorney work product, or trial preparation materials. CRST International Holdings will identify only non-privileged materials used to prepare the witness that have been produced or will be produced in discovery.

6. **Identification of Individuals.** Several topics seek the identities, roles, and reporting lines of all personnel involved in various activities. This request is better addressed by interrogatories and is not appropriate for a Rule 30(b)(6) deposition. CRST International Holdings objects to providing granular personnel information for other defendants. To the extent a topic seeks the identity of individuals on CRST International Holdings' own disclosures, CRST International Holdings will direct Plaintiffs to its Rule 26(a)(1) disclosures.

7. **Requests for Legal Conclusions.** Topics asking about the "process for defining" contractual terms or the roles and responsibilities of CRST International Holdings' General

3

Counsel call for privileged communications or legal conclusions. CRST International Holdings objects to these topics to the extent they seek privileged advice or mental impressions.

8.      **Personal Jurisdiction.** The Court lacks both general and specific personal jurisdiction over CRST Specialized. It is undisputed that it is an Indiana corporation with its principal place of business in Indiana, and Plaintiffs have failed to show Iowa contacts relevant to their claims that are sufficient to exercise specific personal jurisdiction. Defendants object to the extent that Plaintiffs seek discovery as to specific personal jurisdiction. Even at the outset of a case when a jurisdictional challenge is ordinarily made, discovery is warranted only when the necessary facts "are either unknown or can be genuinely disputed." *Jesski v. Dakota, Minnesota & E. R.R. Corp.*, No. 19-CV-2070-CJW-MAR, 2020 WL 3913528, at *5 (N.D. Iowa July 10, 2020). "There is no requirement that jurisdictional discovery be permitted where a plaintiff merely suspects supportive facts might be revealed." *Goellner-Grant v. Platinum Equity LLC*, 341 F.Supp.3d 1022, 1030 (E.D. Mo. 2018). Nothing in these objections and responses or by the taking of this noticed deposition waives Defendants' personal jurisdiction defense or moots Defendants' motion to dismiss for want of personal jurisdiction.

9.      **Continuing Objections.** CRST International Holdings' objections are ongoing. By responding to any topic, CRST International Holdings does not waive objections to the admissibility of testimony, documents, or information, and reserves the right to supplement or amend these objections.

<u>**OBJECTIONS AND RESPONSES TO DOCUMENT REQUEST**</u>

No less than 2 business days before each witness designated by You in response to this deposition notice is scheduled to testify, produce or, if already produced, identify by Bates number, all Documents used, referenced, created by, or otherwise relied upon by the witness to educate or prepare themselves to testify or to refresh his or her recollection.

4

**OBJECTION & RESPONSE**: CRST International Holdings objects to this request to the extent it seeks attorney–client communications, work product, or other privileged materials. CRST International Holdings further objects to the extent the request is cumulative of Plaintiffs' prior discovery requests and disproportionate to the needs of the case. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8. Without waiving these objections, CRST International Holdings will, at least two business days before each designated witness is scheduled to testify, identify by Bates number any non-privileged documents used to prepare that witness that have been produced or will be produced in discovery.

## <u>MATTERS FOR EXAMINATION</u>

All ways in which the operations of the CRST Defendants are integrated, including, but not limited to, shared services, departments, governance and management, officers, personnel, facilities or real property, equipment, vendors, recruiters, suppliers, service providers, accounting, banking, policies, practices, resources, logos, branding, websites, intellectual property, and electronic systems.

**OBJECTIONS:** CRST International Holdings objects to Topic 1 because it is overly broad, unduly burdensome, not limited to the relevant time period, and seeks information beyond the scope of Plaintiffs' claims. The topic requests "all ways" in which the operations of the CRST Defendants are integrated and includes an expansive list of departments, services, and intangible assets. This open-ended language renders the topic improper and fails to describe the matter for examination with reasonable particularity. Moreover, the integration of operations relates primarily to the operating entities, not the holding company; CRST International Holdings has no employees and does not direct day-to-day operations of its subsidiaries. Defendants further object to the extent

5

Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will designate a corporate representative to testify at a high level only about the corporate structure of CRST International Holdings and its subsidiaries and the existence of certain shared services between the entities as those services relate to the Lease Purchase Program during the relevant period. CRST International Holdings' witness will not testify about operations unrelated to the Lease Purchase Program or matters solely within the control of other defendants.

All ways in which CRST Specialized relies on personnel, departments, services, or infrastructure located in whole or in part in Iowa, including, but not limited to, the identities, roles, responsibilities, employer, reporting structure, work address, and home city of those personnel, the function and organizational structure of those departments, and the function and location of that infrastructure, and any ways in which those personnel, departments, services, or infrastructure are involved in supporting, directing, operating, managing, or otherwise assisting with the Lease Purchase Program, including the recruiting and management of Drivers.

**OBJECTIONS**: This topic seeks testimony about how CRST Specialized relies on personnel, departments, services, or infrastructure located in Iowa. CRST Specialized is a separate defendant; CRST International Holdings does not maintain or control CRST Specialized's personnel records, recruiting departments, or infrastructure. Accordingly, the topic is directed to the wrong defendant and is beyond the knowledge of CRST International Holdings. The topic is also overly broad and seeks granular information (identities, roles, addresses, and reporting structures) that is more appropriately obtained through written discovery directed to the proper defendant. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

6

**RESPONSE**: CRST International Holdings objects to Topic 2 and will not designate a witness to testify regarding CRST Specialized's operations. CRST International Holdings refers Plaintiffs to CRST Specialized for discovery regarding this topic.

CRST Specialized's Response to Interrogatory No. 6, including, for all the departments listed, the identities, roles, responsibilities, and location of all personnel who provide services to CRST Specialized (including, but not limited to, Laura Gawron, Chris Thomas, Lyndsay Perez, and Brooke McGivern), what specific services they provide, which CRST Defendant employs the person or houses the department, and the identities, roles, responsibilities, and location of the persons they report to.

**OBJECTIONS**: Topic 3 expressly references CRST Specialized's response to an interrogatory and seeks testimony on the identities, roles, responsibilities, and locations of personnel who provide services to CRST Specialized. As with Topic 2, this topic is directed to another defendant. CRST International Holdings does not employ the personnel in question and has no independent knowledge of their roles, responsibilities, or reporting lines. The topic is thus misdirected, overly broad, and disproportionate. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects and will not designate a witness for Topic 3. Plaintiffs should direct this topic to CRST Specialized.

The process by which the CRST Defendants are "integrated to create complete transportation and supply chain solutions and provide deep industry experience" (Michael Gannon Dep., Ex. 1 (May 29, 2025)), and the roles that each of the CRST Defendants plays in achieving this goal.

**OBJECTIONS**: This topic asks about the process by which the CRST Defendants are "integrated to create complete transportation and supply chain solutions and provide deep industry experience." The topic is based on marketing language from another witness's deposition and is overly broad and vague. It is not limited to the Lease Purchase Program or to the relevant time

7

period. To the extent the topic seeks information about the operating subsidiaries' integration unrelated to the Lease Purchase Program, it is irrelevant and unduly burdensome. Furthermore, CRST International Holdings does not operate the subsidiaries' businesses and has limited knowledge regarding operational integration. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving its objections, CRST International Holdings will designate a corporate representative to testify generally about the organizational relationship among CRST International Holdings and its subsidiaries and about shared services relevant to the Lease Purchase Program during the relevant period. CRST International Holdings' witness will not provide marketing commentary or operational details unrelated to the Lease Purchase Program.

The role and responsibilities of CRST International (through its executives, Board of Directors, or otherwise) in managing, directing, or otherwise overseeing the Subsidiary Defendants, including but not limited to, with respect to the Lease Purchase Program, business strategy, objectives, goals, revenue, and operating income; how frequently the Subsidiary Defendants are required to report to the Board and what they are required to report; and which CRST Defendants (including the identities, roles, responsibilities, and location of specific persons) attend and/or present at Board meetings.

**OBJECTIONS**: The topic is overly broad, not limited to the Lease Purchase Program, and seeks information about revenues, operating income, and other business units unrelated to Plaintiffs' claims. It also seeks the identities, roles, responsibilities, and locations of persons attending Board meetings, which is irrelevant and unduly burdensome. To the extent the topic seeks privileged communications or materials prepared for the Board, CRST International Holdings objects on privilege grounds. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to these objections, CRST International Holdings will only designate a corporate representative who can describe, at a high level, the oversight role that CRST International Holdings' executives and Board play with respect to the Lease Purchase Program during the relevant period. The witness will not testify regarding other business lines and will not divulge privileged Board communications.

The organization, make-up, and practices of the CRST International Board of Directors, including the name and purpose of all Board committees, the frequency, location, and conduct of Board meetings, the identity and general content of reports and presentations regularly provided to the Board and the names, roles, responsibilities, and location of the persons and departments involved in creating or presenting those reports and presentations, and what documents are created for or by the Board.

**OBJECTIONS**: The topic is overly broad, not limited to the Lease Purchase Program, and seeks information protected by the attorney–client privilege and work-product doctrine, such as Board presentations prepared by or for counsel. It also requests the identities and locations of persons involved in creating those documents, which is irrelevant to Plaintiffs' claims. Further, as a holding company, CRST International Holdings has limited day-to-day involvement in the operating subsidiaries.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will designate a corporate representative to testify generally about the existence of the CRST International Holdings Board of Directors, the fact that the Board meets periodically, and the general nature of Board oversight of the Lease Purchase Program. The witness will not testify about privileged communications, detailed Board deliberations, or matters unrelated to the Lease Purchase Program.

The process by which the CRST Defendants develop and implement strategy, goals, and objectives of the Lease Purchase Program, including, but not limited to, how the CRST Defendants coordinate during this process; the identities, roles, responsibilities, and location of each person and department responsible for developing and implementing the strategy, goals, and objectives; and what documents are created as part of this process.

**OBJECTIONS**: To the extent the topic seeks granular details of operating practices within CRST Expedited, CRST Specialized, or CRST Lincoln Sales, it is directed to the wrong defendants. It also requests the identities, roles, and locations of "each person and department responsible," which is overly broad and better addressed by interrogatory. The topic is vague and ambiguous as to what the terms "strategy" and "objectives" encompass. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will only produce a corporate representative to testify at a general level about CRST International Holdings' oversight role with respect to the Lease Purchase Program's strategic objectives during the relevant period. CRST International Holdings' witness will not testify about operational details or identify every individual involved in strategy development at the subsidiary level.

The financial relationship between CRST International and the Subsidiary Defendants, including, but not limited to, the role CRST International plays in capital expenditure decisions and/or budget approvals; the allocation of profits, losses, and tax liabilities; any financial reporting requirements imposed by CRST International; the process for transferring funds between CRST Specialized and the Subsidiary Defendants; and whether the Subsidiary Defendants and CRST International have separate or consolidated financial statements.

**OBJECTIONS**: The topic is overly broad and seeks information not limited to the Lease Purchase Program. It also requests details of inter-company transfers and tax allocations that are irrelevant to Plaintiffs' claims. CRST International Holdings further objects to disclosure of sensitive banking information and the identities of banking institutions. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will only produce a corporate representative who can testify generally about the financial relationship between CRST International Holdings and its subsidiaries as it pertains to the Lease Purchase Program during the relevant period. The witness will not provide detailed financial data, tax allocations, or banking information unrelated to the claims, and will not identify banking institutions.

The process by which the CRST website (https://www.crst.com/) and webpages associated with the Lease Purchase Program, including job postings on https://crstrecruiter.crst.com/jobs, are operated, including, but not limited to, the process for drafting, publishing, editing, or removing the website and/or webpages; whether back-ups of this website and/or webpages are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

**OBJECTIONS**: CRST International Holdings does not own or operate the public-facing website; those activities are performed primarily by CRST Expedited's marketing department. Accordingly, this topic is directed to the wrong defendant. The requests for back-ups and the identity and location of each person involved are overly broad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects to Topic 9 and will not designate a witness to testify regarding the operation of CRST websites or webpages. Plaintiffs should direct this topic to CRST Expedited and CRST Specialized, the operating entities responsible for marketing and website operations. To the extent CRST International Holdings possesses any high-level information about the existence of a shared services marketing function, such information will be addressed in response to Topic 1.

11

The process by which CRST drafts, publishes, edits, or removes web postings and/or advertisements for the Lease Purchase Program on third party systems (e.g., LinkedIn, Indeed, Glassdoor, Zip Recruiter), including, but not limited to, whether backups of these web postings and/or advertisements are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

**OBJECTIONS**: As with Topic 9, these marketing activities are conducted by CRST Expedited and CRST Specialized. CRST International Holdings does not control or manage third-party advertisements and therefore lacks personal knowledge. The topic is also overly broad and unduly burdensome in requesting the identities and locations of each person involved. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects and will not designate a witness for Topic 10. Plaintiffs should pursue this information from CRST Expedited or CRST Specialized. Any testimony CRST International Holdings provides about shared marketing services will be within the scope of Topic 1.

The process by which the CRST Defendants draft, revise, and validate or verify the factual representations in its Lease Purchase Program advertisements, Driver orientation materials (such as presentations given, scripts, talking points), and recruiting materials (such as the Lease Purchase Information Packet), including, but not limited to, what data and information is used and/or relied upon in the process; whether these factual representations are updated for accuracy and, if so, how frequently; what documents exist to support these factual validations; and the identities, roles, responsibilities, and location of all personnel and departments involved in the process (including which CRST Defendant employs the person or houses the department).

**OBJECTIONS**: The topic is overly broad and is directed to operating entities whose recruiting and marketing functions are separate from CRST International Holdings. It also requests every piece of data used to validate statements and the identities and locations of all involved personnel, which is overly burdensome and disproportionate to the needs of the case. To the extent the topic seeks to compel production of documents supporting advertising statements, CRST

12

International Holdings further objects to the request as improper under Rule 30(b)(6). Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will only produce a corporate representative to testify at a general level regarding CRST International Holdings' oversight of marketing communications for the Lease Purchase Program. The witness will not testify about drafting or validating factual representations at the subsidiary level or identify individual recruiters or marketing personnel; such matters should be directed to CRST Expedited or CRST Specialized.

The process by which each CRST Defendant approves marketing and advertising materials, including the identities, roles, responsibilities, and location of those personnel and departments involved (including which CRST Defendant employs the person or houses the department) and whether marketing, advertising, and/or branding is controlled by or integrated with CRST International's or any other CRST Defendants' marketing, advertising, and/or branding.

**OBJECTIONS**: The topic is vague, ambiguous, overly broad, and not limited to the Lease Purchase Program. CRST International Holdings does not approve day-to-day marketing content; that responsibility resides with the operating subsidiaries. The topic's request for the identity and location of each person involved is unduly burdensome and misdirected. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving its objections, CRST International Holdings will only designate a corporate representative to testify generally about the existence of a shared services marketing function and the limited role, if any, that CRST International Holdings plays in reviewing or approving Lease Purchase Program marketing materials. CRST International

13

Holdings will not identify every individual involved in marketing approvals or testify about approval processes unrelated to the Lease Purchase Program.

The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via 3rd party recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons responsible for coordinating 3rd party recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to 3rd party recruiters and by whom; which CRST Defendant the 3rd party recruiters work for and/or report to; and what documents are created as a part of this process.

**OBJECTIONS**: Recruiting functions are performed by CRST Expedited or CRST Specialized; CRST International Holdings has no employees or recruiters. The topic is therefore directed to the wrong defendant, and the level of detail requested is overly broad and unduly burdensome. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects and will not designate a witness to testify about third-party recruiting practices. Plaintiffs should direct this topic to CRST Expedited or CRST Specialized, which manage recruiting for the Lease Purchase Program.

The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via in-house recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons and departments responsible for recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to in-house recruiters and by whom; which CRST Defendant the in-house recruiters work for and/or report to; whether customer leads are generated on an enterprise-wide basis; what documents are created as a part of this process.

**OBJECTIONS**: As with Topic 13, this topic relates to recruiting functions performed by CRST Expedited and/or CRST Specialized, not CRST International Holdings. The topic is overly broad, seeks irrelevant information beyond the Lease Purchase Program, and is directed at the wrong defendant. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects and will not designate a witness for Topic 14. Plaintiffs should direct this topic to the appropriate operating entity.

The process by which the IOCA, lease agreements, and any other written agreement and/or contracts entered into with Drivers are drafted, revised, or enforced, including which CRST Defendants are involved in the process and the identities, roles, responsibilities, and location of each person and department involved in the process.

**OBJECTIONS**: The topic is overly broad and seeks legal conclusions and privileged information about contract drafting and revisions. It is also directed to the wrong defendants—CRST Expedited, CRST Specialized, and CRST Lincoln Sales negotiate and administer the driver agreements. The request for identities and locations of individuals involved in drafting or enforcement is unduly burdensome and better suited to written discovery. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving these objections, CRST International Holdings will only designate a corporate representative to testify, at a general level, about CRST International Holdings' limited involvement, if any, in approving the form of the ICOA and lease agreements for the Lease Purchase Program. The witness will not testify about privileged communications or the identities of attorneys or other individuals involved in drafting or enforcing agreements and will refer Plaintiffs to the appropriate operating entities for details.

The process for defining (and modifying the definitions of) gross revenue, adjusted gross revenue, and gross compensation, as those terms are used in the IOCA, including the identities, roles, responsibilities, and location of those persons responsible for such definitions and which CRST Defendant they work for and/or report to.

**OBJECTIONS**: Topic 16 asks for the process for defining and modifying the definitions of "gross revenue," "adjusted gross revenue," and "gross compensation" as used in the ICOA, including the identities, roles, responsibilities, and locations of persons responsible. The

15

definitions of these terms are set forth in the ICOA itself; any modification would involve legal advice and privileged communications. The topic thus calls for privileged information and legal conclusions. It is also directed to the operating entities that draft and negotiate driver contracts, not to CRST International Holdings. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects on privilege and relevance grounds and will not designate a witness to testify about the process of defining or modifying contractual terms. Plaintiffs should look to the ICOA for the operative definitions and pursue any further information, if appropriate, through written discovery directed to the operating entities.

The policies, practices, procedures, and processes for setting and changing compensation rates for Drivers, including charges and deductions outlined on Settlement Statements, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

**OBJECTIONS**: Driver compensation decisions are made by CRST Expedited and CRST Specialized, not by CRST International Holdings. The topic is therefore directed to the wrong defendant. It is also overly broad, unduly burdensome, and not proportional to the needs of the case. To the extent the topic seeks information beyond the Lease Purchase Program, it is irrelevant. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects to and will not designate a witness for Topic 17. Plaintiffs should direct this topic to CRST Expedited and CRST Specialized.

The policies, practices, procedures, and processes for receiving and documenting Driver complaints (such as by the Retention Department), including, but not limited to, which CRST Defendants are involved in the process, the identities, roles, responsibilities, and location of each person and department involved, and what documents are created as part of this process.

16

**OBJECTIONS**: The handling of driver complaints is performed by CRST Expedited and CRST Specialized for the drivers they hire or with which they contract. CRST International Holdings does not administer complaint processes and lacks employees to do so. The topic is therefore misdirected, overly broad, and not limited to the Lease Purchase Program. The request to identify every person involved in complaint processes is unduly burdensome. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects to and will not designate a witness for Topic 18. Plaintiffs should direct this topic to CRST Expedited, Inc.

The role that each individual identified on each CRST Defendants' initial disclosures plays in the Lease Purchase Program, if any.

**OBJECTIONS**: This topic is overbroad and unduly burdensome, as it encompasses individuals identified by other defendants and asks CRST International Holdings to speak to roles in other entities. It is also vague as to which disclosures and individuals are encompassed. Information about roles and responsibilities is more appropriately obtained through interrogatories directed to the defendant who disclosed each individual. CRST International Holdings' Rule 26 disclosures identify no individuals with personal knowledge of the facts, so the topic is moot as to CRST International Holdings. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects to and will not designate a witness for Topic 19. Plaintiffs should direct inquiries about individuals identified by other defendants to those defendants.

17

Your relationship and interactions with American Trucking Business Services ("ATBS") including, but not limited to, points of contact, contracts you have had in place with ATBS, the subject matter of such contracts, types and contents of reports to and/or from ATBS, ATBS services provided to Drivers, and all efforts/activities to provide information to Drivers about ABTS and its services.

**OBJECTIONS**: CRST International Holdings is not a party to any ATBS agreement and does not interact with ATBS; any ATBS relationship is between ATBS and CRST Expedited, CRST Specialized, or CRST Lincoln Sales. The topic is therefore directed to the wrong defendant. The request for "all efforts/activities to provide information to drivers" is also overly broad and not limited to the Lease Purchase Program. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving its objections, CRST International Holdings will only designate a corporate representative to testify that CRST International Holdings has no contractual relationship with ATBS. For information regarding the operating entities' relationship with ATBS, Plaintiffs should direct discovery to CRST Expedited, CRST Specialized, and CRST Lincoln Sales.

The policies, practices, procedures, and methods by which the purchase price for lease vehicles are determined, including whether and how depreciation claimed by CRST Lincoln Sales is factored into purchase price, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person involved in this process.

**OBJECTIONS**: Determining vehicle purchase price is a function of CRST Lincoln Sales, not CRST International Holdings. The topic is therefore misdirected. It is also overly broad and seeks confidential commercial information (pricing methodology) that is irrelevant to Plaintiffs' claims. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

18

**RESPONSE**: CRST International Holdings objects to Topic 21 and will not designate a witness to testify on this topic. Plaintiffs should pursue this subject with CRST Lincoln Sales.

The process by which money flows to and from CRST Lincoln Sales for lease and maintenance payments, including the accounting of the same and the banking institutions handling such transactions, in addition to which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

**OBJECTIONS**: Accounting for lease and maintenance payments is handled by CRST Lincoln Sales, CRST Expedited, and CRST Specialized, not CRST International Holdings. The topic is misdirected and overly broad. The request for banking institution identities and locations implicates sensitive information and is disproportionate to the needs of the case. To the extent the topic seeks details about inter-company cash transfers, such information is irrelevant to Plaintiffs' claims. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: Subject to and without waiving its objections, CRST International Holdings will only produce a corporate representative to testify generally about the high-level flow of funds as it pertains to the Lease Purchase Program. The witness will not disclose confidential banking information or details beyond what is relevant to the Lease Purchase Program. For further detail, Plaintiffs should pursue discovery from CRST Lincoln Sales.

The roles and responsibilities of Lisa Stevenson as to each CRST Defendant, including, but not limited to, as Secretary of CRST Expedited, CRST Lincoln Sales, and CRST Specialized; Chief Risk Officer of CRST Expedited; and General Counsel of CRST Expedited and CRST International.

**OBJECTIONS**: Topic 23 requests testimony about the roles and responsibilities of Lisa Stevenson as to each CRST Defendant, including her positions as Secretary, Chief Risk Officer, and General Counsel. The topic is overbroad, intrusive, and seeks information protected by the attorney-client privilege and work-product doctrine, particularly with respect to Ms. Stevenson's

19

role as General Counsel. Her roles within other defendants are outside CRST International Holdings' control and knowledge. The topic is also not limited to the Lease Purchase Program or the relevant time period and therefore seeks information irrelevant to the claims. Moreover, a Rule 30(b)(6) deposition is not an appropriate vehicle for obtaining personal employment information or legal advice of counsel. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects to Topic 23 and will not designate a witness to testify regarding Ms. Stevenson's roles and responsibilities. To the extent that publicly available corporate records reflect her official titles, such records speak for themselves. CRST International Holdings will not provide testimony about Ms. Stevenson's legal duties or privileged communications.

The identity of the person(s) most knowledgeable concerning the CRST Defendants' shared marketing and advertising practices and services; recruiting practices; legal personnel; human resources infrastructure and support; information technology infrastructure and support; safety resources; document management system; record keeping and retention; and facilities or real property.

**OBJECTIONS**: This topic does not describe matters for examination as required by Rule 30(b)(6); instead, it is a disguised contention interrogatory seeking the identification of individuals. CRST International Holdings objects on that basis. The topic is also overly broad, not limited to the Lease Purchase Program, and directed to the wrong defendant. Identifying individuals across all CRST entities and subject areas is unduly burdensome and not proportional to the needs of the case. Defendants further object to the extent Plaintiffs seek discovery related to specific personal jurisdiction over CRST Specialized for the reasons stated in General Objection 8.

**RESPONSE**: CRST International Holdings objects and will not designate a witness to testify about Topic 24. To the extent Plaintiffs seek the identities of individuals knowledgeable about specific subject areas, they should serve interrogatories on the appropriate defendant.

## CONCLUSION

CRST International Holdings stands ready to produce a corporate representative for properly limited topics within its knowledge and control and relevant to the Lease Purchase Program.

Dated: January 16, 2026                        Respectfully submitted,

*/s/ Angela S. Cash*
James H. Hanson (admitted pro hac vice)
Angela S. Cash (admitted pro hac vice)
Andrew J. Ireland (admitted pro hac vice)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas D. Wolle
SIMMONS PERRINE PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-896-4007
F: 319-366-1917
twolle@sp.law

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on January 16, 2026, I served a true and correct copy of the forgoing document

to the following via e-mail to the following counsel of record:

J. Barton Goplerud,
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
beth@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Avenue #310
San Rafael, CA 94901
rsb@boulter-law.com

Michael von Klemperer
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
mike@feganscott.com

*/s/ Angela S. Cash*
Angela S. Cash

4896-8360-6408, v. 1

22