UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST INTERNATIONAL HOLDINGS LLC, CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC. and JOHN SMITH, an individual, and MICHAEL GANNON, an individual,<br><br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT, CRST SPECIALIZED TRANSPORTATION, INC., IN SUPPORT OF ITS RENEWED MOTION TO DISMISS FOR WANT OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ........................................................................................................ 3

    A. The Defendants ........................................................................................... 3

        1. CRST Specialized is an Indiana-based motor carrier specializing in high-touch and high-value deliveries across the United States. ................ 3

        2. Some CRST Specialized contractors choose to lease equipment from a sister company, Lincoln Sales ........................................................ 4

        3. CRST Expedited is a separate motor carrier that specializes in providing expedited deliveries for different customers. ............................. 4

        4. John Smith is the co-owner and chairman of the board of the CRST entities' parent company, CRST International Holdings, LLC, and Michael Gannon serves as the company's Chief Executive Officer. ........... 5

    B. The Plaintiffs ............................................................................................... 5

        1. Kelchner is an independent contractor for CRST Specialized. ................... 5

        2. Plaintiffs Hicks and Weche have no ties to CRST Specialized and are not Iowa residents. ................................................................... 6

    C. Procedural History ...................................................................................... 6

III. ARGUMENT ............................................................................................................ 8

    A. The Court should dismiss Plaintiffs' claims against CRST Specialized for want of personal jurisdiction ..................................................................... 8

        1. CRST Specialized is an Indiana corporation with its principal place of business in Indiana and therefore is not at home in Iowa. .................... 11

        2. The Iowa Supreme Court recently rejected Plaintiffs' consent-by-registration theory of personal jurisdiction. ............................................. 11

        3. The Court also cannot exercise specific personal jurisdiction over CRST Specialized. ................................................................... 12

        4. It would be unreasonable for the Court to exercise personal jurisdiction over CRST Specialized based on attenuated contacts with Iowa. ........................................................................................ 17

B. Any request for additional jurisdictional discovery should be denied because the necessary facts to resolve this motion are not in dispute. .................. 18

IV. CONCLUSION ........................................................................................................ 20

ii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aftanase v. Economy Baler Company*,
343 F.2d 187 (8th Cir. 1965) ...................................................................................... 9

*Anderson v. Dassault Aviation*,
361 F.3d 449 (8th Cir. 2004) .................................................................................... 15

*Arnold v. AT&T, Inc.*,
874 F.Supp.2d 825 (E.D. Mo. 2012)......................................................................... 16

*Block Indus. v. DHJ Indus., Inc.*,
495 F.2d 256 (8th Cir. 1974) ...................................................................................... 9

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
582 U.S. 255 (2017)................................................................................................... 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................................... 9

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
97 F.3d 1100 (8th Cir. 1996) ...................................................................................... 9

*Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*,
No. 4:11-CV-273 SNLJ, 2011 WL 5374747 (E.D. Mo. Nov. 8, 2011)..................... 16

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*,
799 F.3d 975 (8th Cir. 2015) ...................................................................................... 9

*Daimler AF v. Bauman*,
571 U.S. 117 (2014).................................................................................................... 10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).................................................................................................... 10

*Foscato v. Chaparral Boats, Inc.*,
No. 2:21-4240-NKL, 2022 WL 1322642 (W.D. Mo. May 3, 2022) ......................... 17

*Goellner-Grant v. Platinum Equity LLC*,
341 F.Supp.3d 1022 (E.D. Mo. 2018)........................................................................ 19

*Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*,
196 F.Supp.3d 985 (D. Minn. 2016).......................................................................... 16

Case 1:24-cv-00082-CJW-KEM    Document 134-1    Filed 01/27/26    Page 4 of 26

*In re Folgers Coffee*,
   No. 21-2984-MD-W-BP, 2021 WL 7004991 (W.D. Mo. Dec. 28, 2021)................................. 17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................................................. 9

*Jesski v. Dakota, Minnesota & E. R.R. Corp.*,
   No. 19-CV-2070-CJW-MAR, 2020 WL 3913528 (N.D. Iowa July 10, 2020) ....................... 19

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ........................................................................................................... 10

*Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*,
   74 F.4th 928 (8th Cir. 2023) .............................................................................................. 13

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
   648 F.3d 588 (8th Cir. 2011) ............................................................................................... 8

*LeGrand v. Abbott Laboratories*,
   655 F.Supp.3d 871 (N.D. Cal. 2023) ................................................................................... 8

*Lightfoot v. Cendant Mortg. Corp.*,
   580 U.S. 82 (2017)............................................................................................................... 8

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007).............................................................................................. 10

*Mitchell v. Jefferson Pilot Fin.*,
   No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577 (S.D. Iowa May 23, 2006)........................... 13

*O'Grady v. Johnson*,
   No. CIV05-2203 JNE/JJG, 2006 WL 2403579 (D. Minn. Aug. 18, 2006) ............................. 17

*Pope v. Elabo GmbH*,
   588 F.Supp.2d 1008 (D. Minn. 2008)................................................................................. 10

*Select Comfort Corp. v. Kittaneh*,
   161 F.Supp.3d 724 (D. Minn. 2014)................................................................................... 10

*Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ............................................................................................. 16

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................................................ 12

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)............................................................................................................. 9

*Wright v. Waste Pro USA Inc.*, No.,
2:17-CV-02654, 2019 WL 3344040 (D.S.C. July 25, 2019) ....................................... 15

*WTAS, LLC v. W. Tennessee Air Serv., LLC*,
No. 23-CV-2015 CJW-MAR, 2023 WL 3778716 (N.D. Iowa Apr. 24, 2023) ........................ 10

**Statutes**

28 U.S.C. § 1332 .......................................................................................................... 8
Ind. Code § 24-5-8-1 ................................................................................................... 17
Iowa Code § 551A.1 ...................................................................................................... 2

**Regulations**

49 C.F.R. § 395 ........................................................................................................... 4
49 C.F.R. Part 376 ....................................................................................................... 4

v

Defendant, CRST Specialized Transportation, Inc. (CRST Specialized), respectfully submits this memorandum of points and authorities in support of its renewed motion to dismiss for want of personal jurisdiction.

## I. INTRODUCTION

At the outset of this case, in October 2024, CRST Specialized filed a motion to dismiss for want of personal jurisdiction (ECF No. 28). The Court denied CRST Specialized's motion on the basis that the Indiana-based company had consented to general personal jurisdiction in Iowa by registering to do business as a foreign corporation and appointing an agent for service of process. ECF No. 53. Later, at Defendants' request, the Court certified a question on that issue to the Iowa Supreme Court. ECF No. 66. In its certification order, the Court also explained it had "punted on" the parties' specific personal jurisdiction arguments, and the "reason the Court relied on [the general personal jurisdiction] finding for its disposition" alone was because, "**candidly, plaintiff did not have the strongest argument under the minimum contacts analysis**." *Id.* at 8 (emphasis added).

Recently, the Iowa Supreme Court answered the Court's certified question in the negative and held that, under Iowa law, a foreign corporation does *not* consent to personal jurisdiction simply by registering to do business in Iowa, appointing an agent for service of process in Iowa, or receiving service through that agent. *See Kelchner v. CRST Expedited, Inc.*, Case No. 25-0607 (Iowa Dec. 19, 2025) (ECF No. 124). Accordingly, there is now no dispute that this Court cannot exercise general personal jurisdiction over CRST Specialized because it is an undisputed Indiana corporation with its principal place of business in Indiana.

CRST Specialized therefore respectfully renews its motion to dismiss for want of personal jurisdiction so the Court can resolve the specific personal jurisdiction arguments it did not address in its prior Order. As before, Plaintiffs' allegations and arguments are weak and do not support

exercising personal jurisdiction over CRST Specialized. Indeed, despite more than a year of intense discovery—including the Court-ordered search of more than 5 million documents, production of tens of thousands of documents, dozens of written discovery responses, the production of the names of every putative class member, and a full-day deposition of CRST Expedited's President and Chief Executive Officer—and a new First Amended Complaint (ECF No. 113), Plaintiffs' allegations and minimum contacts arguments largely mirror those from before. In fact, the new First Amended Complaint adds two additional named Plaintiffs, neither of whom are Iowa residents and neither of whom had any relationship with CRST Specialized. Instead, both contracted with and performed services for a different company, CRST Expedited, Inc. (CRST Expedited).

For the original Plaintiff, Harley Kelchner, the relevant facts remain the same. He is a Florida resident who contracted in 2022 in Indiana to perform interstate transportation services for CRST Specialized and agreed to provide all necessary equipment and tools under an Independent Contractor Operating Agreement (ICOA) with CRST Specialized. Because Kelchner did not own a tractor, he also elected to lease his equipment through a sister company, Defendant, CRST Lincoln Sales, Inc. (Lincoln Sales), under a Lease Purchase Agreement (LPA). He traveled to Fort Wayne, Indiana to review and sign the two agreements and to select what truck he would lease. Two years later, Kelchner brought this nationwide class action to unwind those agreements, including the ones he entered into in Indiana, under the Iowa Business Opportunity Promotions Act (IBOPA), Iowa Code § 551A.1, a consumer protection law targeted at predatory multi-level marketing schemes.

Whatever the merits of Kelchner's and the other Plaintiffs' IBOPA claims, they cannot proceed in this Court against CRST Specialized. As Plaintiffs admit, CRST Specialized is not at home in Iowa; it is an Indiana corporation with its principal place of business in Fort Wayne,

Indiana. CRST Specialized also has no material contacts with Iowa to support specific personal jurisdiction; all the alleged underlying fraudulent conduct for Kelchner's IBOPA claim occurred outside Iowa. The Court should therefore dismiss CRST Specialized for want of personal jurisdiction.

## II.     BACKGROUND

### A.     The Defendants

#### 1.     CRST Specialized is an Indiana-based motor carrier specializing in high-touch and high-value deliveries across the United States.

CRST Specialized is an Indiana corporation with its principal place of business in Fort Wayne, Indiana, and does business as CRST Specialized Solutions, Inc. *See Declaration of Tom McKerr* (McKerr Decl.) (ECF No. 28-2), ¶¶ 2–3; *see also* ECF No. 113, ¶ 17 ("CRST Specialized Transportation, Inc. is an Indiana corporation with its principal place of business in Fort Wayne, Indiana."). CRST Specialized is the successor of the 2011 acquisition of the Indiana-based company Specialized Transportation, Inc., which was previously the high-value products and logistics division of North American Van Lines, Inc., which was also based in Fort Wayne, Indiana. *McKerr Decl.*, ¶ 5. Accordingly, unlike its sister operating companies in this case (*i.e.*, CRST Expedited and Lincoln Sales), CRST Specialized does not have a physical presence in Cedar Rapids, Iowa. *Id.*, ¶¶ 6–7. Rather, its leadership team and operational staff, including its dispatchers, all work in Fort Wayne and live in the greater Fort Wayne, Indiana area. *Id.*, ¶ 8. CRST Specialized also has employees that work out of corporate distribution centers in Laurel, Maryland; Bolingbrook, Illinois; Columbus, Ohio; and Milpitas, California. *Id.*

CRST Specialized delivers goods throughout the country and specializes in high-value freight and logistics. *Id.*, ¶ 4. CRST Specialized is a for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration (FMCSA), an agency of the U.S. Department of Transportation (DOT). *Id.* CRST Specialized does not have any employee drivers. *Id.*, ¶ 10.

3

Instead, to meet its customers' needs and perform these deliveries, CRST Specialized partners with independent contractors who execute ICOAs, some who own their own trucks and others who lease trucks from Lincoln Sales. *Id.*, ¶¶ 10, 21; Ex. A. These agreements are all signed in Fort Wayne, Indiana during a one-week driver qualification onboarding process to ensure compliance with the Federal Motor Carrier Safety Regulations (FMCSR), 49 C.F.R. § 395. *Id.*, ¶¶ 11–12.

### 2. Some CRST Specialized contractors choose to lease equipment from a sister company, Lincoln Sales

Under their ICOAs, CRST Specialized's contractors agree to provide the equipment necessary to perform delivery services. *See id.*, Ex. A §§ 1(A), 9(C). To that end, approximately 40% of CRST Specialized's contractors already own their own truck or choose to lease their equipment from a third-party. *Id.*, ¶ 14. The remaining contractors elect to lease equipment through CRST Specialized's sister company, Lincoln Sales. *Id.* In either case, contractors lease their equipment to CRST Specialized within the meaning of the Federal Leasing Regulations, 49 C.F.R. Part 376. *See id.*, ¶ 13, Ex. A §§ 1(D), 16(E).

During CRST Specialized's one-week onboarding program to qualify the drivers under the FMCSR in Fort Wayne, Indiana, contractors that choose to lease equipment through Lincoln Sales have the opportunity to inspect several different trucks. *Id.*, ¶ 15. The equipment available to them is all located on-site at CRST Specialized's facilities in Fort Wayne. *Id.* Once the equipment is selected, contractors execute a Lease Purchase Agreement in Fort Wayne and take possession of that truck in Fort Wayne. *Id.*, ¶ 17.

### 3. CRST Expedited is a separate motor carrier that specializes in providing expedited deliveries for different customers.

CRST Expedited provides expedited delivery services throughout the 48 contiguous states. *See Declaration of Lee Coblentz* (Coblentz Decl.) (ECF No. 28-3), ¶ 3. CRST Expedited and CRST Specialized are sister companies, but each have their own operating authority, personnel,

headquarters, and customers. *Id.*, ¶¶ 2–6; *McKerr Decl.*, ¶¶ 3–4, 6, 8. Unlike CRST Specialized, CRST Expedited utilizes both contractors and employee drivers. *Coblentz Decl.*, ¶ 7. CRST Expedited's independent contractors enter into an ICOA specific to CRST Expedited. *Id.*, ¶ 8. Like CRST Specialized, some CRST Expedited contractors do elect to lease equipment from CRST Lincoln Sales. *Id.*, ¶ 9.

### 4. John Smith is the co-owner and chairman of the board of the CRST entities' parent company, CRST International Holdings, LLC, and Michael Gannon serves as CRST Expedited's Chief Executive Officer.

John Smith is a partial owner and the chairman of the board of CRST International Holdings, LLC, which is the parent company of CRST Specialized, Lincoln Sales, and CRST Expedited. *See Declaration of John Smith* (Smith Decl.) (ECF No. 28-4), ¶ 1. Smith does not directly own CRST Specialized, Lincoln Sales, or CRST Expedited. *Id.*, ¶ 2. Nor does he control any of the entities' day-to-day operations. *Id.*, ¶ 3. Gannon is CRST Expedited's President and Chief Executive Officer.

### B. The Plaintiffs

### 1. Kelchner is an independent contractor for CRST Specialized.

Kelchner is a Florida resident and a former independent contractor with CRST Specialized. ECF No. 113, ¶ 12; *McKerr Decl.*, ¶ 18. In early 2022, while working for another motor carrier, Kelchner contacted CRST Specialized to inquire about becoming an owner-operator with CRST Specialized. *McKerr Decl.*, ¶ 19. A CRST Specialized recruiter based out of North Carolina sent him a packet of information about the lease purchase program. *Id. See also* ECF No. 113, ¶ 41 (admitting a Lease Purchase Information Packet specific to CRST Specialized—not other entities—was emailed to Kelchner). Then, in March 2022, Kelchner visited Fort Wayne, Indiana to formalize his relationship with CRST Specialized and to complete the qualification process and attend its one-week onboarding program for new contractors. *Id.*, ¶ 20. During his week in Fort

Wayne, Kelchner executed the ICOA with CRST Specialized. ECF No. 113, ¶ 7; *McKerr Decl.*, ¶ 21, Ex. A. There, he also had the opportunity to inspect several different trucks available for lease from Lincoln Sales, ultimately selected his equipment, executed the LPA, and took possession of the equipment. *McKerr Decl.*, ¶ 22.

After completing his one-week qualification process and onboarding program for new contractors, Kelchner began performing services for CRST Specialized throughout the country. *Id.*, ¶ 23. Throughout his time with CRST Specialized, Kelchner's day-to-day contact has always been his fleet manager who is based in Fort Wayne, Indiana. *Id.*, ¶ 24. To get paid for his work, Kelchner also submits all of his paperwork for each load he delivers to CRST Specialized's offices in Fort Wayne, Indiana. *Id.*, ¶ 25. CRST Specialized processes his settlements as payment for his completed loads and pays him from its offices in Fort Wayne, Indiana. *Id.*

### 2. Plaintiffs Hicks and Weche have no ties to CRST Specialized and are not Iowa residents.

The two other recently added Plaintiffs, Hicks and Weche, never performed services for or contracted with CRST Specialized, and Plaintiffs' First Amended Complaint does not suggest otherwise. Rather, Hicks, through his business entity, W & J Brooke Transport LLC, briefly contracted to perform services for a different operating company, CRST Expedited. *See* ECF No. 120-2, ¶¶ 3–4 & Exs. A–B (signed leases showing carrier is CRST Expedited). Weche also briefly contracted with CRST Expedited. *Id.*, ¶¶ 3, 5 & Ex. C (signed lease showing carrier is CRST Expedited). Nor are Hicks and Weche Iowa residents. "Hicks is a resident of the State of North Carolina," ECF No. 113, ¶ 13, and "Weche is a resident of the State of Florida," *id.*, ¶ 14.

### C. Procedural History

Kelchner filed his Class Action Complaint in this Court on August 23, 2024. ECF No. 1. Therein, he alleged that Defendants, collectively, violated various provisions of IBOPA. *Id.*, ¶¶ 43–50. And he sought, among other remedies on behalf of himself and all current and former

6

contractors nationwide who leased any equipment through Lincoln Sales, "rescission, damages, interest, equitable, and injunctive relief." *Id.*, ¶¶ 6, 51–52.

As its response, CRST Specialized filed a motion to dismiss for want of personal jurisdiction. ECF No. 28. The Court denied CRST Specialized's motion on the basis that the Indiana-based company had consented to general personal jurisdiction in Iowa by registering to do business as a foreign corporation and appointing an agent for service of process. ECF No. 53. Later, at Defendants' request, the Court certified a question on that issue to the Iowa Supreme Court. ECF No. 66. In its certification order, the Court also explained it had "punted on" the parties' specific personal jurisdiction arguments, and the "reason the Court relied on [the general personal jurisdiction] finding for its disposition" alone was because, "**candidly, plaintiff did not have the strongest argument under the minimum contacts analysis**." *Id.* at 8 (emphasis added).

On October 29, 2025, Plaintiffs also filed a First Amended Complaint, which in relevant part added the two additional named Plaintiffs, Hicks and Weche, along with the corporate parent company, CRST International Holdings, and CRST Expedited's Chief Executive Officer, Michael Gannon. ECF No. 113. Prior to filing the new First Amended Complaint, the parties agreed that it "(a) does not moot Defendants' pending appeal at the Iowa Supreme Court challenging the District Court for the Northern District of Iowa's jurisdiction over Specialized and (b) does not waive Specialized's ongoing objection to the District Court's jurisdiction." ECF No. 111, ¶ 10.

Then, on December 19, 2025, the Iowa Supreme Court answered the Court's certified question in the negative and held that, under Iowa law, a foreign corporation does *not* consent to personal jurisdiction simply by registering to do business in Iowa, appointing an agent for service of process in Iowa, or receiving service through that agent. *See Kelchner v. CRST Expedited, Inc.*, Case No. 25-0607 (Iowa Dec. 19, 2025) (ECF No. 124).

By the time the Iowa Supreme Court issued its decision, Defendants had already filed a

7

motion to dismiss the First Amended Complaint. ECF No. 120. In that motion, however, CRST Specialized continued to object to the Court's exercise of personal jurisdiction, ECF No. 120-1 at 10 n.2, and indicated it would raise the issue with the Court if the Iowa Supreme Court answered "No" to the certified question.[1]

## III.   ARGUMENT

### A.   The Court should dismiss Plaintiffs' claims against CRST Specialized for want of personal jurisdiction.

This case is brought by three nonresident plaintiffs—on behalf of a proposed nationwide class—and is before this Court based on alleged diversity jurisdiction and jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). *See* ECF No. 113, ¶ 9. But before this Court can resolve the merits of this case or consider certifying the proposed nationwide class, it must also have personal jurisdiction over each of the Defendants. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 93–94 (2017); *LeGrand v. Abbott Laboratories*, 655 F.Supp.3d 871, 884 (N.D. Cal. 2023) ("[N]amed, out-of-state, class-action plaintiffs in cases based on diversity jurisdiction must establish personal jurisdiction." (collecting cases)).

Plaintiffs bear the burden of making a prima facie showing that the Court has personal jurisdiction over Indiana-based CRST Specialized. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). Courts consider the pleadings as well as affidavits and exhibits in determining if a plaintiff has made a prima facie showing of personal jurisdiction, *id.* at 591–92,

---

[1] On December 23, 2025, Defendants, consistent with the Court's certification order, circulated a draft joint status report to Plaintiffs' counsel to provide notice of the Iowa Supreme Court's decision and propose a supplemental briefing schedule on the remaining specific personal jurisdiction issue. However, Plaintiffs repeatedly declined to provide a written position on additional briefing and only did so 31 days later, on January 23, 2025. Plaintiffs have also taken the position that no briefing should occur until after significant additional discovery is completed, including, among other things, a wide-ranging deposition under Rule 30(b)(6) of designees for the corporate parent holding company, CRST International Holdings, along with the depositions of CRST Specialized's Manager of Recruiting and CRST Expedited, Inc.'s Chief People Officer.

which "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto," *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974). Plaintiffs have the burden of offering sufficient facts to support a reasonable inference that a defendant can be subjected to the Court's jurisdiction in the forum state. *Id.* at 259.

Because Iowa's long-arm statute authorizes personal jurisdiction to the fullest extent allowed by the United States Constitution, the Court need only analyze whether exercising personal jurisdiction comports with due process. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). "Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Id.* at 980 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). But the Court must also consider any contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Creative Calling Sols.*, 799 F.3d at 981–82 ("Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable. The Due Process Clause forbids the exercise of personal jurisdiction under circumstances that would offend traditional notions of fair play and substantial justice." (citations and internal quotation marks omitted)).

For cases like this that sound in tort, the Eighth Circuit Court of Appeals has long adopted a five-factor test to determine both if a defendant has sufficient minimum contacts with the forum state and whether the exercise of personal jurisdiction comports with due process. *Aftanase v. Economy Baler Company*, 343 F.2d 187, 197 (8th Cir. 1965). The five factors are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97

9

F.3d 1100, 1102 (8th Cir. 1996). The first two factors of the test address the minimum contacts portion of the personal jurisdictional analysis. *Pope v. Elabo GmbH*, 588 F.Supp.2d 1008, 1018 (D. Minn. 2008). The third factor differentiates between specific and general jurisdiction. *Burlington*, 97 F.3d at 1102. The final factors address other considerations, in addition to minimum contacts, that affect the reasonableness of a court exercising personal jurisdiction. *See Pope*, 588 F.Supp.2d at 1018.

"General jurisdiction," which allows the court to hear any claim against the defendant, exists when the defendant has "continuous and systematic" contacts with the forum state which render the defendant "essentially at home in the forum state." *Creative Calling Sols., Inc.*, 799 F.3d at 979 (quoting *Daimler AF v. Bauman*, 571 U.S. 117, 127 (2014)). Meanwhile, specific jurisdiction "is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Id.* at 979–80; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (specific jurisdiction is a claim-specific inquiry). "'Because [the specific jurisdiction] analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis.'" *WTAS, LLC v. W. Tennessee Air Serv., LLC*, No. 23-CV-2015 CJW-MAR, 2023 WL 3778716, at *3 (N.D. Iowa Apr. 24, 2023) (quoting *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). "Similarly, 'each defendant's contacts with the forum must be assessed individually.'" *Id.* (quoting *Select Comfort Corp. v. Kittaneh*, 161 F.Supp.3d 724, 731 (D. Minn. 2014)); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

Within this framework, Plaintiffs cannot show that the Court has general or specific personal jurisdiction over CRST Specialized for their IBOPA claims. As they admit, CRST Specialized is not at home in Iowa; its principal place of business is in Fort Wayne, Indiana. ECF No. 113, ¶ 17. The Iowa Supreme Court has also recently rejected Plaintiffs' consent-by-

registration theory. Finally, Plaintiffs, none of whom are Iowa residents and only one of whom even contracted with CRST Specialized (Kelchner), have not alleged and cannot show sufficient Iowa contacts related to their own IBOPAs claim to confer specific personal jurisdiction over CRST Specialized. The Court should therefore dismiss CRST Specialized from this case.

### 1. CRST Specialized is an Indiana corporation with its principal place of business in Indiana and therefore is not at home in Iowa.

General jurisdiction over a foreign corporation exists when the corporation has such continuous and systematic relations with the forum state that it may be fairly said the corporation is "at home in the forum state, i.e., comparable to a domestic enterprise in that state." *Daimler*, 571 U.S. at 125. Only "in an exceptional case" should a court find that a corporation is subject to general jurisdiction "in a forum other than its formal place of incorporation or principal place of business" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.19, n.20.

This case is not the exception, nor does Plaintiffs' First Amended Complaint allege otherwise. As they have admitted, CRST Specialized is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. ECF No. 113, ¶ 17; ECF No. 33 (Specialized Citizenship Disclosure). The facts on the ground confirm Plaintiffs' understanding. *See supra* **II(A)(1)**. Critically, CRST Specialized's management and operational employees live and work in Indiana, not Iowa. *McKerr Decl.*, ¶ 8. Its headquarters, primary facilities and operations are there, as well. *Id.*, ¶ 3. Accordingly, CRST Specialized does not have continuous and systematic contacts with Iowa from which it can be said that it is at home in Iowa. The Court therefore does not have general jurisdiction over CRST Specialized.

### 2. The Iowa Supreme Court recently rejected Plaintiffs' consent-by-registration theory of personal jurisdiction.

On December 19, 2025, the Iowa Supreme Court answered the Court's certified question

in the negative and held that, under Iowa law, a foreign corporation does not consent to personal jurisdiction simply by registering to do business in Iowa, appointing an agent for service of process in Iowa, or receiving service through that agent. *See Kelchner v. CRST Expedited, Inc.*, Case No. 25-0607 (Iowa Dec. 19, 2025) (ECF No. 124). Accordingly, this Court also does not have general personal jurisdiction over CRST Specialized under Plaintiffs' consent-by-registration theory.

> ### 3. The Court also cannot exercise specific personal jurisdiction over CRST Specialized.

Unlike general personal jurisdiction, which focuses on the breadth of the defendant's contacts with the forum, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 & n.6 (2014). To show the Court has specific jurisdiction over CRST Specialized, Plaintiffs cannot rely on CRST Specialized's "unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017); *Daimler*, 571 U.S. at 127. Instead, Plaintiffs must show that CRST Specialized intentionally engaged in conduct expressly aimed at Iowa knowing that the individuals in Iowa—Plaintiffs—would suffer harm from its conduct. *See Walden*, 571 U.S. at 283 (explaining that, for a court to have specific jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State"). Plaintiffs cannot meet this burden.

To begin, Plaintiffs cannot establish that CRST Specialized took any action in or directed any action to *Iowa* that harmed *them*. Hicks and Weche, neither of whom are Iowa residents, did not even contract with or perform services for CRST Specialized; instead, Hicks (through his business entity) and Weche contracted with CRST Expedited. ECF No. 120-2, ¶¶ 3–5 & Exs. A–C (signed leases showing carrier is CRST Expedited). Meanwhile, Kelchner, a Florida resident, executed his contracts with CRST Specialized in Indiana where the company is located, not Iowa. *McKerr Decl.*, ¶¶ 21–22. To the extent that Kelchner personally received any solicitation to be a

contractor for CRST Specialized, that did not occur in Iowa either. Rather, a CRST Specialized recruiter who works out of North Carolina contacted him with a Specialized-specific email with a Specialized-specific information packet. *Id.*, ¶ 19; ECF No. 113, ¶ 41. Moreover, as a Florida resident (ECF No. 113, ¶ 12), he presumably received these communications where he resided, not in Iowa. Tellingly, Kelchner does not allege otherwise. Finally, CRST Specialized's leadership and employees also all live and work in Indiana; meaning, any decisions that led to the allegedly fraudulent conduct were made in Indiana, not Iowa. *McKerr Decl.*, ¶ 8. Thus, none of CRST Specialized's activities with respect to Kelchner's IBOPA claim "create a substantial connection with" Iowa. *Walden*, 571 U.S. at 283–84 & n.6; *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023) (no specific personal jurisdiction where the "alleged wrongful conduct . . . took place in California," not Iowa).

Even if Kelchner's allegations could be credited, he fails to show how these alleged contacts gave rise to his IBOPA claims against CRST Specialized in Iowa. He does not allege that he "felt the brunt of that harm in Iowa," "Iowa was [] the focal point of the tortuous activity," or CRST Specialized "expressly aimed the alleged tortuous conduct at Iowa." *Mitchell v. Jefferson Pilot Fin.*, No. 4:05-CV-575 JEG-TJS, 2006 WL 8436577, at *8 (S.D. Iowa May 23, 2006). Plaintiffs' First Amended Complaint lacks any allegations of Iowa-contacts related to Kelchner's own claims against CRST Specialized. In fact, as to Kelchner specifically, all Plaintiffs offer is the conclusory assertion that Kelchner "regularly engaged in CRST Trucking's business in various locations, including within this judicial district." ECF No. 113, ¶ 12. But when asked during oral argument before the Iowa Supreme Court whether Kelchner had ever stepped foot in Iowa before the lawsuit was filed, Plaintiffs' counsel responded, "not to my knowledge." *Kelchner v. CRST Expedited*, No. 25–0607, Oral Arg. (Iowa Sup. Ct. November 13, 2025) (at minute marker 28:10 to 28:26), https://youtu.be/cSp5-oVZfhU?si=dX86AZXQ0-0xFuNi.

And other allegations in the First Amended Complaint clearly have nothing to do with Kelchner. *Id.*, ¶ 28 (citing unspecified emails, which Kelchner does not allege *he* received, that were signed "CRST Driver Recruiting Team"); *id.*, ¶ 43 (citing a June 2024 email, long after Kelchner was recruited, from a CRST Specialized employee and recruiting manager, Lyndsay Perez Navarro, that provided recruiters for different operating companies "sell" instructions and a script for recruiting for CRST Specialized). Others still speak only to the fact that CRST Specialized was engaged in some business "throughout the United States, including in Iowa," without ever identifying specifically what business in which CRST engaged in Iowa. *Id.*, ¶ 17 ("CRST Specialized has been registered to do business in Iowa since at least 2020."); *id.* ("CRST Specialized was and is engaged in business throughout the United States, including in Iowa.").

Without any meaningful connection between Iowa and Kelchner's (or the other Plaintiffs') claims against CRST Specialized and Iowa, Plaintiffs instead attempt to assert a "common enterprise theory" to manufacture specific personal jurisdiction. That too fails for multiple reasons. First, even accepting Plaintiffs' allegations as true, these reflect a typical parent-subsidiary relationship with limited, contractually-shared services among the operating companies including legal counsel, information technology, and some recruiting and advertising services—services that Plaintiffs concede the costs are allocated for among the subsidiary companies. *See* ECF No. 113, ¶ 17 (alleging CRST Specialized is wholly owned by its parent-company CRST International Holdings, and is operating a "common enterprise" with Iowa-based entities); *id.*, ¶ 21 (alleging CRST Specialized and the other entities share ownership (CRST International Holdings) and some overlapping corporate officers or directors); *id.*, ¶ 23 (alleging CRST Specialized uses the same registered agent for service of process in Iowa); *id.*, ¶ 23 (alleging CRST Specialized shares some corporate officers or directors who live in Iowa, including the General Counsel who was involved in revising a lease-purchase agreement for one of the subsidiaries); *id.*, ¶ 25 (alleging the

14

subsidiaries' financial controllers do some reporting to CRST International Holdings' finance leadership, the Chief Financial Officer, and the Chief Executive Officer); *id.*, ¶ 25 (alleging the Chief Executive Officer has some oversight of the subsidiary entities); *id.*, ¶ 26 (alleging CRST International Holdings allocates insurance costs across its subsidiaries); *id.*, ¶ 26 (alleging subsidiaries contractually share some administrative services such as legal, human resources, and information technology, with costs for those services allocated among the separate entities); *id.*, ¶ 27 (alleging some executives from the parent company and subsidiaries have met to plan strategy for lease-purchase programs and, in at least one instance, used a document storage folder to store and circulate a draft revised contractor agreement for one of the subsidiaries); *id.*, ¶ 28 (alleging recruiting-related marketing and advertising are a contractually shared service whose personnel ultimately reports to the Chief People Officer); *id.*, ¶ 29 (alleging the shared recruiting services include some telemarketing and lead referrals); *id.*, ¶ 30 (alleging the shared recruiting services include tracking recruiting performance); *id.*, ¶ 30 (alleging the personnel ultimately overseeing the shared recruiting services are "historically based in Iowa and report directly to" the Chief Executive Officer); *id.*, ¶ 31 (alleging the shared recruiting services has a dedicated 1-800 phone number); *id.*, ¶ 35 (alleging, generally, shared recruiting and advertising services were centralized in Iowa). But Plaintiffs do not connect those allegations to their claims under IBOPA.

Moreover, as other courts have observed, "the weight of the authority . . . has determined that the [single integrated enterprise] theory applies only to liability and cannot be relied upon to create personal jurisdiction." *Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at *11 (D.S.C. July 25, 2019) (collecting cases).[2] That is particularly true where, as here,

---

[2] Plaintiffs may argue, as Kelchner did when resisting CRST Specialized's original motion, that *Anderson v. Dassault Aviation*, 361 F.3d 449, 452–53 (8th Cir. 2004) holds that "personal jurisdiction may be proper where two corporate family members share a 'close, synergistic relationship.'" ECF No. 40 at 17. However, that ignores that the Eighth Circuit later clarified that such a relationship between a foreign corporation and its in-state subsidiary does not transfer the

CRST Specialized is a distinct legal entity. CRST Specialized has its own operating authority, personnel, headquarters, independent contractors, and customers. *See McKerr Decl.*, ¶ 3–4, 6, 8; *Coblentz Decl.*, ¶¶ 2–6. Likewise, ties between entities like some shared officers, company names, and logos are not sufficient to establish personal jurisdiction. *See, e.g.*, *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (plaintiff "failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding" despite the same name, logo and chairman).

*Bristol–Myers Squibb Co. v. Superior Court* provides a useful analog to this case. 582 U.S. 255. There, a group of plaintiffs sued an out-of-state pharmaceutical company in California alleging that the company's drug had damaged their health. *Id.* at 259. Although the company sold the drug and engaged in other business in California, it did not develop, manufacture, or label the drug in California. *Id.* Critically, the plaintiff group also included many nonresidents of California who did not obtain the drug from a California source. *Id.* The Supreme Court held that California had no jurisdiction to hear the nonresidents' claims because those claims lacked "a connection between the forum and the specific claims at issue." *Id.* at 265. What mattered is that the plaintiffs did not purchase, use, or suffer injuries in the state they brought their claims. *Id.* at 264.

The same is true here. Hicks and Weche never allege any connection to CRST Specialized. Meanwhile, Kelchner, a Florida-resident, was recruited only for the Indiana-based company (by a recruiter in North Carolina, managed by a CRST Specialized employee in Indiana), received by email only an information packet for CRST Specialized, executed all of his agreements in Indiana, inspected and took possession of his truck in Indiana, and received compensation only paid by the

---

subsidiary's contacts to the parent; instead, it is relevant to whether the *parent* has its *own* contacts with the forum. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011); *see also Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F.Supp.3d 985, 991 (D. Minn. 2016) ("The Eighth Circuit has cautioned against overreliance on *Anderson*."); *Arnold v. AT&T, Inc.*, 874 F.Supp.2d 825, 835 (E.D. Mo. 2012) (same).

Indiana-based company. Accordingly, that CRST Specialized may have some Iowa contacts unrelated to this case does not matter; Kelchner's alleged IBOPA consumer fraud claim and injury all stems from conduct centered in Indiana, not Iowa. The Court therefore does not have specific personal jurisdiction over CRST Specialized.

**4.      It would be unreasonable for the Court to exercise personal jurisdiction over CRST Specialized based on attenuated contacts with Iowa.**

Any exercise of personal jurisdiction over a nonresident defendant must also be reasonable and cannot "offend traditional notions of fair play and substantial justice." *Creative Calling Sols.*, 799 F.3d at 981–82. That too forecloses exercising personal jurisdiction over CRST Specialized.

First, Iowa also has little interest in policing a Florida resident's contract with an Indiana company. Kelchner previously argued that Iowa "has a strong interest in providing a forum for resident Drivers." ECF No. 40 at 19. But putative class members are not "parties" for jurisdictional purposes, *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *5 (W.D. Mo. Dec. 28, 2021) (collecting cases), and given Kelchner's Florida-residency and his travel to Indiana to contract with CRST Specialized, Iowa has no interest in providing him a forum. *See Foscato v. Chaparral Boats, Inc.*, No. 2:21-4240-NKL, 2022 WL 1322642, at *5 (W.D. Mo. May 3, 2022) ("Missouri's interest in the litigation is diminished because none of the parties are Missouri citizens."); *O'Grady v. Johnson*, No. CIV05-2203 JNE/JJG, 2006 WL 2403579, at *7 (D. Minn. Aug. 18, 2006) (Minnesota "has no such interest in providing a forum for litigation brought by a non-resident plaintiff"). Kelchner's argument also ignores that other states may have a *stronger* interest in enforcing their own laws—for example, Indiana has an interest in enforcing its own Business Opportunities Transactions Act, Ind. Code § 24-5-8-1, for contracts made in Indiana with an Indiana company by a Florida resident who came to Indiana to enter into that contract.

Second, it would be unduly burdensome for CRST Specialized to appear and defend itself in Iowa; all of its key witnesses reside in the greater Fort Wayne, Indiana area. *McKerr Decl.*, ¶ 8.

While Kelchner has argued this Court is a convenient forum, he can only cite the convenience of the personnel of CRST Specialized's parent company and the Co-Defendants, not himself (a Florida resident), his Co-Plaintiffs, or CRST Specialized, the moving party and an Indiana citizen. ECF No. 40 at 20. CRST Specialized's facilities are in Fort Wayne, Indiana; it has no physical presence in Iowa. ECF No. 28-2, ¶¶ 3, 7. Moreover, its employees, including its "leadership team, fleet managers (*i.e.*, dispatchers), and other operational and support staff," are based out of Fort Wayne or one of its distribution facilities—none of which are in Iowa and the presumptive key defense witness relevant to Kelchner's claims against CRST Specialized, his recruiter, also does not live or work in Iowa. *Id.*, ¶¶ 8, 19. Thus, Iowa is not a convenient forum for CRST Specialized. For this reason, too, the Court should decline to exercise jurisdiction over CRST Specialized.

**B.** **Any request for additional jurisdictional discovery should be denied because the necessary facts to resolve this motion are not in dispute.**

Since initiating this case in August 2024, Plaintiffs have received more than 15,000 documents in discovery (including from an ordered search of more than 5 million documents),[3] taken the full-day deposition of CRST Expedited's President and Chief Executive Officer, and have received lengthy substantive responses to several sets of interrogatories.[4] Nevertheless,

---

[3] These included more than 50 unique searches sought by Plaintiff against every email, Teams message, and document retained for more than 23 individuals, including Defendants' Chairman, President and Chief Executive Officer, Chief Financial Officer, and Chief People Officer along with the key witnesses for CRST Specialized, including its Vice President of Operations, Manager of Recruiting, and Kelchner's own recruiter.

[4] Among others, these include: Identifying each Defendants' officers and directors during the alleged class period along with a list of CRST International Holdings board members with approximate tenure and state-of-residence information (Specialized Interrogatory No. 1); identifying information on CRST Specialized's board actions and a detailed list of meeting dates and locations for CRST International Holdings' board meetings during the alleged class period (Specialized Interrogatory No. 2); affirming that CRST Specialized did not own or lease real property in Iowa during the alleged class period and that lease-purchase contractors may optionally use maintenance services at a facility leased by Lincoln Sales in Cedar Rapids, Iowa (Specialized Interrogatory No. 3); identifying the sole CRST Specialized employee residing in Iowa during the class period (Tonya Cornelius, a Supervisor of Incident Response from approximately 2021 through early 2023) (Specialized Interrogatory No. 4); identifying contractually shared services

Plaintiffs are likely to argue that even *more* discovery is necessary before the Court addresses a motion that it previously suggested would have been resolved against Kelchner in January 2025 but for his consent-by-registration theory that the Iowa Supreme Court has now also resolved against him.

As this Court has explained, even at the very outset of a case, no jurisdictional discovery is warranted unless the necessary facts "are either unknown or can be genuinely disputed." *Jesski v. Dakota, Minnesota & E. R.R. Corp.*, No. 19-CV-2070-CJW-MAR, 2020 WL 3913528, at *5 (N.D. Iowa July 10, 2020). Moreover, "[t]here is no requirement that jurisdictional discovery be permitted where a plaintiff merely suspects supportive facts might be revealed." *Goellner-Grant v. Platinum Equity LLC*, 341 F.Supp.3d 1022, 1030 (E.D. Mo. 2018). While Kelchner previously suggested a number of facts about CRST Specialized are "key" and "shielded from public view"—including CRST Specialized's relationship with the Co-Defendants and the location of its witnesses—Kelchner could not explain how those facts would change the outcome of this motion. *See* ECF No. 40 at 17. CRST Specialized also provided many of those facts in its motion by way of affidavits. *See generally* ECF Nos. 28-2–28-4; *see also Jesski*, 2020 WL 3913528, at *5 (discovery is not "warranted . . . merely to 'test the veracity' of the affidavits."). And after more than a year of intensive discovery, none of the "key" facts here are reasonably in dispute. The Court should therefore not further delay resolving the jurisdictional challenge and proceed with dismissing CRST Specialized.

---

among Defendants and identifying affiliated employees (Specialized Interrogatory No. 6); identifying all known Iowa registrations, permits, and taxes during the class period (Specialized Interrogatory No. 7); producing all known formal written contracts between CRST Specialized and Iowa-based companies or that contain Iowa law clauses (Specialized Interrogatory No. 9); a list of all known litigation with CRST Specialized within Iowa and CRST Specialized's litigation positions on personal jurisdiction taken in those matters (Specialized Interrogatory No. 10).

## IV.  CONCLUSION

For these reasons, the Court should dismiss CRST Specialized because it lacks personal jurisdiction over it.

Dated: January 27, 2026

Respectfully submitted,

*/s/ James H. Hanson*

James H. Hanson (*pro hac vice*)
Angela S. Cash (*pro hac vice*)
Andrew J. Ireland (*pro hac vice*)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas D. Wolle
SIMMONS PERRINE PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-896-4007
F: 319-366-1917
twolle@sp.law

*Attorneys for Defendant*
*CRST Specialized Transportation, Inc.*

20