**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CRST International Holdings LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc., CRST Lincoln Sales, Inc., John Smith, an individual, and Michael Gannon, an individual. <br><br> Defendants. | CASE NO. 1:24-cv-00082-CJW-KEM <br><br> Honorable Chief Judge C.J. Williams <br><br> Honorable Chief Magistrate Judge Kelly K.E. Mahoney <br><br><br> Expedited relief requested |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' EXPEDITED MOTION TO STAY BRIEFING ON**
**CRST SPECIALIZED'S RENEWED MOTION TO DISMISS**
**PENDING COMPLETION OF PERSONAL JURISDICTION DISCOVERY**

Pursuant to LR 7(i) and (j), Plaintiffs respectfully request that the Court stay briefing on CRST Specialized Transportation, Inc.'s Renewed Motion to Dismiss (Dkt. No. 134) until Plaintiffs complete three already-noticed depositions. Plaintiffs move on an expedited basis because their resistance to Specialized's hastily filed motion is due February 10, 2026.

The jurisdictional inquiry is highly fact specific and will turn on Specialized's ties to Iowa, and the relationship between Specialized and its Iowa-based corporate parent and sisters. While Plaintiffs have obtained some discovery to support their jurisdictional arguments, the facts establishing jurisdiction over Specialized are in Defendants' exclusive control. Plaintiffs have noticed three depositions that will explore genuinely disputed jurisdictional issues and are entitled to complete this discovery before further briefing on personal jurisdiction.

1

Specialized does not consent to the requested relief. On the contrary, after initially proposing a reasonable briefing schedule after obtaining leave of Court, Specialized suddenly reversed course and rushed its motion before the Court without leave or an agreed briefing schedule in an effort to deny Plaintiffs the opportunity to take any of the noticed depositions before their resistance was due.

The Court should not countenance Specialized's gamesmanship. Briefing should be stayed until the three highlight relevant depositions are complete.

## I. BACKGROUND

Plaintiff Harley Kelchner, individually and on behalf of all others similarly situated, filed this action on August 23, 2024, against CRST Expedited, Inc. ("Expedited"), CRST Specialized Transportation, Inc. ("Specialized"), CRST Lincoln Sales, Inc. ("Lincoln Sales") and John Smith for directing and implementing deceptive "lease purchase" Driving Opportunities in violation of the Iowa Business Opportunity Promotions Act ("BOPA"). *See* Dkt. No. 1. Additional Plaintiffs, Daniel Weche and Anthony Hicks, later joined and Plaintiffs filed an amended complaint, adding CRST International Holdings LLC ("International") and Michael Gannon as defendants and substantial allegations about Defendants' fraudulent scheme—including the relationship between Defendants as well as International's control and domination over its subsidiaries—with citations to, and quotations from, materials obtained in discovery that form the basis of Plaintiffs' jurisdictional arguments. *See* Dkt. No. 113.

Beyond a few public filings, evidence of Defendants' internal structure and operations is exclusively in Defendants' possession. While discovery has been underway since the fall of 2024, Plaintiffs' discovery efforts have been stymied by Defendants' well-documented discovery obstruction and foot-dragging. *See, e.g.*, ESI Order at 3, Dkt. No. 79 (finding that Defendants had

not "acted diligently" in producing discovery). As but one example, Plaintiffs served Specialized with interrogatories related to personal jurisdiction issues on May 6, 2025. Specialized provided largely deficient responses on June 19 that nevertheless shed light on how Specialized shares Iowa-based services and staff (including legal, human resources, marketing and advertising, recruiting, and IT) with the other Corporate Defendants and that all subsidiaries are overseen by CRST's International's board of directors. **Ex. A**[1] (Specialized's Supp. Responses to Plaintiffs' First Set of Interrogatories). The parties then met and conferred on June 27, and Plaintiffs followed up in writing on July 22. It took Defendants *four months* to substantively respond by letter (despite repeatedly promising that its response was coming "next week" for months), and that letter largely failed to address the deficiencies Plaintiffs had raised. And though, during the parties' January 20 meet and confer, Specialized promised further supplementation by January 23, as is typical with Specialized's promises, those supplemental responses have still not been served.

To obtain additional relevant discovery, on December 12, Plaintiffs served CRST International—Specialized's parent—with a Rule 30(b)(6) deposition notice, covering 24 topics, and seeking testimony on, *inter alia*, Defendants' overlapping management, operations, and finances (Matter Nos. 1-6, 8, 23-24), common officers and directors (Matter Nos. 1-3, 5-6, 19, 23), consolidated financial statements/joint tax returns (Matter No. 8), the sharing of offices (Mater Nos. 1-2, 24), Specialized's lack of corporate formalities (Matter Nos. 1-6), International's funding of Specialized (Matter Nos. 8), and International's control of Specialized's operations (Matter Nos. 1, 4-18, 23-24). *See* **Ex. B** (Plaintiffs' Rule 30(b)(6) Deposition Notice). Plaintiffs concurrently requested to meet and confer on the notice and for dates for Defendants' designated witness(es). Not only did Defendants wait *over a month* before serving 20 pages of legally baseless and largely

---

[1] All exhibits herein are exhibits to the Declaration of Michael von Klemperer.

boilerplate objections, **Ex. C** (International's Objections to Rule 30(b)(6) Notice), they also refused to provide dates for a single designated witness on a noticed single topic, causing further delay. The parties met and conferred on January 20, and, that same day, Plaintiffs followed up in writing, explaining why International's objections were meritless. **Ex. D** (email follow-up regarding International's 30(b)(6) objections). A discovery conference before Judge Mahoney is scheduled for February 4 to address the parties' dispute.

On December 12, Plaintiffs also requested the availability of Specialized's recruiting manager, Lyndsay Perez Navarro, and Defendants' head of recruiting, Jennifer Abernathy. Those depositions have since been noticed for February 10 and 19, respectively, *see* **Ex. E** (Perez Navarro Dep. Notice); **Ex. F** (Abernathy Dep. Notice), and will explore jurisdictional issues regarding Defendants' enterprise-wide recruiting operations and Specialized's relationship with Iowa-based recruiting staff. Indeed, Plaintiffs will inquire on information obtained discovery revealing an enterprise-wide recruiting team, led by Iowa-based Abernathy, who reports to Iowa-based Gannon, who reports to Iowa-based Smith, *see* **Ex. G**, Michael Gannon Dep. (May 29, 2025) at 13:11-15 (Gannon is Smith's sole direct report); 74:10-75:24, 76:19-25, 117:8-14 (individuals responsible for recruiting, including Abernathy, are based in Iowa and report to Gannon); 244:15-16 (recruiters make Driver candidates aware of positions across all CRST entities), and how this team misrepresented the Driving Opportunity to Plaintiffs. *See* Dkt. No. 113 ¶¶ 41-42, 47-48; **Ex. H** (Lease Purchase Information Packet received by Kelchner by Iowa-based Brooke McGivern,[2]

---

[2] While Specialized asserts that Brooke McGivern is based in North Carolina, Dkt. No. 134-1 at 11 (citing McKerr Decl., ¶ 19), the record indicates otherwise. McGivern, an Expedited employee, emailed Kelchner *Specialized's* Lease Purchase Information Packet (containing misrepresentations about the Driving Opportunity) from an email listing an Iowa physical address and phone number: Expedited's corporate office. *See* **Ex. H.** At minimum, McGivern was Specialized's agent in soliciting Kelchner from Iowa, rendering Specialized subject to BOPA and the Court's jurisdiction. *See* Iowa Code §§ 551A.2(1)(a), (2)(a)–(b); §§ 551A.1(7), (13); *Burger*

4

Case 1:24-cv-00082-CJW-KEM    Document 136-1    Filed 01/29/26    Page 4 of 11

cited at Dkt. No. 113 ¶ 41). There is also evidence that Perrez Navarro is deeply involved in recruiting across numerous CRST subsidiaries and communicating with Iowa-based recruiting staff. **Ex. I (**Specialized recruiting script sent to enterprise-wide recruiters, including Iowa-based Jon Brown and Brooke McGivern, cited at Dkt. No. 113 ¶ 43); **Ex. J** (Flatbed recruiting documents sent to enterprise-wide recruiters, including Jon Brown and Brooke McGivern, cited at Dkt. No. 113 ¶ 45).

The parties met and conferred on January 20 to discuss Defendants' intent to request supplemental briefing on personal jurisdiction and subsequently agreed to file a joint status report with position statements. Defendants' initial draft proposed a coherent briefing schedule with Specialized's brief due 21 days after the Court entered an order permitting supplemental briefing. After reviewing Plaintiffs' draft report, Specialized abandoned this proposal and elected to ram its personal jurisdiction briefing through without leave of Court and before allowing Plaintiffs time to complete the already-noticed discovery.

## II.   LEGAL STANDARD

Even at the outset of a case, courts permit jurisdictional discovery where the factual record is "ambiguous or unclear on the jurisdiction issue," *First Nat'l Equip. Fin. v. Cameron Ins. Cos.*, No. 8:10CV370, 2010 U.S. Dist. LEXIS 128720, at *3 (D. Neb. Dec. 6, 2010), and can be "genuinely disputed." *Doshier v. Twitter, Inc.*, No. 4:18-cv-00700, 2019 U.S. Dist. LEXIS 159749, at *3 (E.D. Ark. Sep. 19, 2019). This is particularly appropriate where the "facts establishing personal jurisdiction" are "in the exclusive control of the defendant." *First Nat'l*, 2010 U.S. Dist. LEXIS 128720, at *3. "[C]ourts should assist the plaintiff by allowing jurisdictional discovery

---

*King Corp. v. Rudzewicz*, 471 U.S. 462, 479, n.22 (1985) (an agent's contacts are imputed to the principal for jurisdictional purposes).

unless the plaintiff's claim is clearly frivolous." *1st Tech., LLC v. Digit. Gaming Sols. S.A.*, No. 4:08 CV 586, 2008 U.S. Dist. LEXIS 88341, at *17 (E.D. Mo. Oct. 31, 2008) (internal citations omitted). Where a plaintiff can make an initial evidentiary showing supporting jurisdiction, dismissal after denying that plaintiff an opportunity to develop the record necessary to establish personal jurisdiction may constitute reversible error. *See Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (reversing dismissal with instruction to permit jurisdictional discovery where plaintiff "offered documentary evidence, and not merely speculations or conclusory allegations").

Jurisdictional discovery is particularly important where, as here, Specialized makes a factual challenge to this Court's jurisdiction under Rule 12(b)(2). *Osborn v. United States*, 918 F.2d 724, 729-30, fn. 6 (8th Cir. 1990) ("[i]n a factual attack, the court considers matters outside the pleadings."). Where a defendant makes a factual challenge to jurisdiction, the plaintiff may not rely on "the pleadings alone," but must submit evidence and "carries the burden of proof." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

## III. ARGUMENT

Courts in the Eighth Circuit consider five fact-intensive factors to determine whether they have personal jurisdiction over a nonresident corporation: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Coen v. Coen*, 509 F.3d 900, 902 (8th Cir. 2007). The relationship between corporate defendants can be relevant to this analysis, including where a nonresident corporation and a resident corporation share a "close, synergistic relationship." *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452 – 53 (8th Cir. 2004). In *Anderson*, the Eighth Circuit found common officers, directors, logo, brand, and website, and a unified marketing

6

strategy to be relevant to this jurisdictional inquiry. *Id.* at 454. Jurisdiction over a nonresident corporation may also exist where the nonresident is an alter-ego of the resident. *See Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, 89 F.4th 1023, 1035 (8th Cir. 2023) (explaining that subsidiary conduct can be attributed to a parent entity for jurisdictional purposes where a degree of parental control and domination is shown). Factors relevant to the alter-ego theory include "whether (1) the corporation is undercapitalized, (2) the corporation lacks separate books, (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, or (6) the corporation is a mere sham." *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978); *Kruger v. Lely N. Am.*, No. 20-CV-629, 2020 U.S. Dist. LEXIS 262023, at *7-8 (D. Minn. Dec. 14, 2020).

Under both theories, the relationship between corporate defendants is centrally relevant. *See State ex rel. Griffin v. Syngenta Crop Prot. AG*, No. 4:22-CV-01287, 2025 U.S. Dist. LEXIS 29062, at *22-24 (E.D. Ark. Feb. 19, 2025) (finding that the State survives dismissal by plausibly alleging a "synergistic" relationship and "common name, website, and marketing for all entities such that there is no distinguishing" between defendants); *Warren v. Millennia Hous. Mgmt., Ltd.*, No. 4:23-cv-00977, 2024 U.S. Dist. LEXIS 178393, at *18 (E.D. Ark. Sep. 30, 2024) (denying motion to dismiss on jurisdictional grounds because plaintiff alleges that defendants "operate functionally as a single unified enterprise … [as] reflected in their marketing, leadership, and organization."). And this is "a factually intensive inquiry" which is typically premature on a motion to dismiss. *Warren*, 2024 U.S. Dist. LEXIS 178393, at *18

Although evidence of Defendants' internal structure and operations is exclusively in Defendants' possession, Plaintiffs have obtained sufficient "documentary evidence" to permit

jurisdictional discovery. *See Steinbuch*, 518 F.3d at 589. This includes evidence of Specialized's direct ties to Iowa, including evidence reflecting the presence of recruiter Brooke McGivern in Iowa when she recruited Kelchner. **Ex. H**. It also includes evidence supporting both the "close, synergistic relationship" and "alter ego" theories, such as Specialized's own interrogatory responses which detail Iowa-based officers and directors, **Ex. A** (Interrogatory No. 1), that International's Board of Directors (led by Smith) oversees Specialized, *id*., and that Specialized shares various services with the other Corporate Defendants, including marketing and advertising for the Driving Opportunity. *Id*. (Interrogatory No. 6). Similar facts regarding Defendants' common enterprise are included in Plaintiffs' complaint, along with citations to documents produced in discovery. *See* Dkt. No. 113, ¶¶ 21-32.

This evidence is "genuinely disputed." *Doshier*, 2019 U.S. Dist. LEXIS 159749, at *3. Specialized's renewed motion is replete with citations to self-serving affidavits from its own executives drafted for the express purpose of avoiding this Court's jurisdiction. Much of their factual contentions, including that "its leadership team and operational staff all work in Fort Wayne," Dkt. No. 134-1 at 9, that Smith does not control any of the entities' operations, *id.* at 11, and that Specialized has "no material contacts with Iowa," *id.* at 8-9, are contradicted by contemporaneous documents. These include misrepresentations to Kelchner made from Iowa, *see* **Ex. H,** Specialized's Recruiting Manager, Perez Navarro, circulating recruiting scripts for numerous CRST subsidiaries to the enterprise-wide recruiting team (including Iowa-based recruiters), *see* **Exs. I-J**, and testimony from Gannon confirming that Defendants' enterprise-wide recruiting operations are based in Iowa and that key recruiting individuals report directly to him, who then reports to Smith). *See* **Ex. G** at 13:11-15, 74:10-75:24, 76:19-25, 117:8-14, 244:15-16.

Plaintiffs are entitled to explore these contradictions and flesh-out Defendants' deficient written discovery responses with testimony from live witnesses, including the Rule 30(b)(6) designee(s), Abernathy, and Perez Navarro. These depositions will extensively cover facts relevant to this Court's personal jurisdiction analysis. And, unlike interrogatory responses or affidavits, this testimony will not be carefully drafted by lawyers to meet litigation objectives:

> [A] deposition is incomparably preferable to written interrogatories as a vehicle for seeking out useful evidence, not only because of the greater ease in shaping later questions based on earlier answers but also because the interrogatory answers are typically prepared by lawyers rather than through the uncounseled responses of the witnesses.

*Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997).

Moreover, Specialized's tactics smack of gamesmanship and suggest the inescapable conclusion that any testimony would be favorable to Plaintiffs and unfavorable to Specialized. Indeed, Specialized initially planned to seek leave of Court *before* further personal jurisdiction briefing. Yet, as the parties exchanged drafts of the status report and Plaintiffs shared a condensed form of the arguments set forth above, Specialized suddenly changed positions and elected to immediately file their motion without leave of Court. Specialized presumably recognized the weakness of the factual bases underlying their arguments and sought to ram its motion through before Plaintiffs could complete any further discovery.

Finally, Specialized will incur no undue prejudice from short stay of briefing while the parties complete noticed depositions over the coming few weeks. On the other hand, if denied the opportunity to complete the noticed discovery, Plaintiffs could suffer significant prejudice, including the prospect of splitting this case between two jurisdictions (Iowa and Indiana) and proceeding in parallel, a tremendous waste of party and judicial resources.

Defendants should not be rewarded for their discovery obstruction and efforts to railroad Plaintiffs. To ensure that Plaintiffs can adequately respond to Specialized's factual jurisdictional

9

challenge, Plaintiffs should have an opportunity to complete these key depositions before further briefing on personal jurisdiction.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request expedited relief in that this Court stay briefing of Specialized's Renewed Motion to Dismiss (Dkt. No. 134) until the completion of the already-noticed jurisdictional discovery.

Dated: January 29, 2026

Respectfully submitted

*/s/ Michael von Klemperer*

Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 450-5189
rsb@boulter-law.com

*Attorneys for Plaintiffs Kelchner, Hicks,
Weche and the Putative Class*

11