# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, DANIEL WECHE, and ANTHONY HICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST International Holdings, LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc. CRST Lincoln Sales, Inc., John Smith, an individual, and Michael Gannon, an individual.<br><br>Defendant(s). | CASE NO. 1:24-cv-00082-CJW-KEM |

## PLAINTIFFS' NOTICE OF TAKING DEPOSITION UNDER FED. R. CIV. P. 30(b)(6) TO DEFENDANT CRST INTERNATIONAL HOLDINGS, LLC

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, by and through their undersigned counsel, Plaintiff Harley Kelchner, Daniel Weche, and Anthony Hicks (collectively "Plaintiffs") will take the deposition of the designee(s) of Defendant CRST International Holdings, LLC ("CRST International") on the matters identified in the accompanying **Exhibit A**, which is incorporated by reference into this Notice of Taking Deposition. Plaintiffs reserve the right to notice additional topics pursuant to Rule 30(b)(6).

Further, pursuant to Rules 30(b)(2) and 34, Plaintiffs request that CRST International produce the documents requested in **Exhibit A**.

The deposition will take place at a mutually agreeable date and time at the Offices of Shindler, Anderson, Goplerud & Weese, PC, 5015 Grand Ridge Drive, Suite 100, West Des Moines, Iowa 50265 (unless otherwise mutually agreed).

This deposition will be recorded by stenographic and videographic means before an officer authorized to administer oaths and will continue from day to day for each designated witness, Saturdays, Sundays, and holidays excepted, until completed, in accordance with Fed. R. Civ. P. 26, 28, and 30.

The deposition will be taken for the purposes of discovery, for use at trial, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Dated: December 12, 2025

Respectfully Submitted,

*/s/ Michael von Klemperer*
Michael von Klemperer (*pro hac vice*)
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Ph: (202) 921-0002
Fax: (312) 264-0100
mike@feganscott.com

J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

Robert S. Boulter
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Ph: (415) 450-5189
rsb@boulter-law.com

*Attorneys for Plaintiffs Kelchner, Hicks, and
Weche and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Michael von Klemperer, certify that the foregoing document was served on Defendant

CRST International Holdings, LLC, and all counsel of record via email on December 12, 2025.

*/s/Michael von Klemperer*
Michael von Klemperer

**EXHIBIT A**

## I. DEFINITIONS

1. Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

2. All/Each. The terms "all" and "each" shall be construed as all and each.

3. "Any" includes and encompasses the term "all."

4. And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. Drivers. The term "Drivers" means all current and former independent contractor drivers for Defendants and/or any of their subsidiaries/divisions/affiliates and that leased trucks from CRST Lincoln Sales, Inc. between August 23, 2021, and the present.

6. Lease Purchase Program. This term means the Lease Purchase Program that Defendants and/or any of their subsidiaries/divisions/affiliates provided Drivers whereby Drivers leased trucks from CRST Lincoln Sales, Inc. and concurrently agreed to provide driving services to Defendants and/or any of their subsidiaries/divisions/affiliates utilizing such trucks.

7. Contracts. The term "contracts" means the contracts related to the Driving Opportunity, as that term is used in the complaint, and includes the Lease Agreement and Contractor Agreement as also used in the complaint.

8. Settlement Statements. The term "settlement statements" means the statements related to Drivers reflecting income, expenses, and deductions and includes, but is not limited to, Commission Statements, Fuel Card Detail statements, Mileage Compensation and Expense Voucher statements, and Contract Activity statements.

9. CRST Defendants. The term "CRST Defendants" refers to CRST International Holdings, LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc., and CRST Lincoln Sales, Inc.

10. Subsidiary Defendants. The Term "Subsidiary Defendant" or "Subsidiary Defendants" refers to CRST International's affiliates/subsidiaries/divisions, including CRST Expedited, Inc., CRST Specialized Transportation, Inc., and CRST Lincoln Sales, Inc.

11. CRST Specialized. The term "CRST Specialized" refers to Defendant CRST Specialized Transportation, Inc. and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

12. CRST Lincoln Sales. The term "CRST Lincoln Sales" refers to Defendant CRST Lincoln Sales, Inc. and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

13. CRST International, You and your. The terms "CRST International," "you," and "your" refer to Defendant CRST International Holdings, LLC, and/or to any past or present officers, directors, employees and/or agents of said-named entity, and/or all of its divisions, subsidiaries, affiliated or related or predecessor companies.

## II. RELEVANT TIME PERIOD

1. Unless otherwise limited, the relevant time period is August 23, 2021, to present.

## III. REQUEST FOR DOCUMENTS

1. No less than 2 business days before each witness designated by You in response to this deposition notice is scheduled to testify, produce or, if already produced, identify by Bates

number, all Documents used, referenced, created by, or otherwise relied upon by the witness to educate or prepare themselves to testify or to refresh his or her recollection.

## IV.      MATTERS FOR EXAMINATION

1.      All ways in which the operations of the CRST Defendants are integrated, including, but not limited to, shared services, departments, governance and management, officers, personnel, facilities or real property, equipment, vendors, recruiters, suppliers, service providers, accounting, banking, policies, practices, resources, logos, branding, websites, intellectual property, and electronic systems.

2.      All ways in which CRST Specialized relies on personnel, departments, services, or infrastructure located in whole or in part in Iowa, including, but not limited to, the identities, roles, responsibilities, employer, reporting structure, work address, and home city of those personnel, the function and organizational structure of those departments, and the function and location of that infrastructure, and any ways in which those personnel, departments, services, or infrastructure are involved in supporting, directing, operating, managing, or otherwise assisting with the Lease Purchase Program, including the recruiting and management of Drivers.

3.      CRST Specialized's Response to Interrogatory No. 6, including, for all the departments listed, the identities, roles, responsibilities, and location of all personnel who provide services to CRST Specialized (including, but not limited to, Laura Gawron, Chris Thomas, Lyndsay Perez, and Brooke McGivern), what specific services they provide, which CRST Defendant employs the person or houses the department, and the identities, roles, responsibilities, and location of the persons they report to.

4.      The process by which the CRST Defendants are "integrated to create complete transportation and supply chain solutions and provide deep industry experience" (Michael Gannon

Dep., Ex. 1 (May 29, 2025)), and the roles that each of the CRST Defendants plays in achieving this goal.

5. The role and responsibilities of CRST International (through its executives, Board of Directors, or otherwise) in managing, directing, or otherwise overseeing the Subsidiary Defendants, including but not limited to, with respect to the Lease Purchase Program, business strategy, objectives, goals, revenue, and operating income; how frequently the Subsidiary Defendants are required to report to the Board and what they are required to report; and which CRST Defendants (including the identities, roles, responsibilities, and location of specific persons) attend and/or present at Board meetings.

6. The organization, make-up, and practices of the CRST International Board of Directors, including the name and purpose of all Board committees, the frequency, location, and conduct of Board meetings, the identity and general content of reports and presentations regularly provided to the Board and the names, roles, responsibilities, and location of the persons and departments involved in creating or presenting those reports and presentations, and what documents are created for or by the Board.

7. The process by which the CRST Defendants develop and implement strategy, goals, and objectives of the Lease Purchase Program, including, but not limited to, how the CRST Defendants coordinate during this process; the identities, roles, responsibilities, and location of each person and department responsible for developing and implementing the strategy, goals, and objectives; and what documents are created as part of this process.

8. The financial relationship between CRST International and the Subsidiary Defendants, including, but not limited to, the role CRST International plays in capital expenditure decisions and/or budget approvals; the allocation of profits, losses, and tax liabilities; any financial

reporting requirements imposed by CRST International; the process for transferring funds between CRST Specialized and the Subsidiary Defendants; and whether the Subsidiary Defendants and CRST International have separate or consolidated financial statements.

9. The process by which the CRST website (https://www.crst.com/) and webpages associated with the Lease Purchase Program, including job postings on https://crstrecruiter.crst.com/jobs, are operated, including, but not limited to, the process for drafting, publishing, editing, or removing the website and/or webpages; whether back-ups of this website and/or webpages are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

10. The process by which CRST drafts, publishes, edits, or removes web postings and/or advertisements for the Lease Purchase Program on third party systems (e.g., LinkedIn, Indeed, Glassdoor, Zip Recruiter), including, but not limited to, whether backups of these web postings and/or advertisements are stored and/or consulted; and the identities, roles, responsibilities, and location of each person and department involved in the process (including which CRST Defendant employs the person or houses the department).

11. The process by which the CRST Defendants draft, revise, and validate or verify the factual representations in its Lease Purchase Program advertisements, Driver orientation materials (such as presentations given, scripts, talking points), and recruiting materials (such as the Lease Purchase Information Packet), including, but not limited to, what data and information is used and/or relied upon in the process; whether these factual representations are updated for accuracy and, if so, how frequently; what documents exist to support these factual validations; and the

identities, roles, responsibilities, and location of all personnel and departments involved in the process (including which CRST Defendant employs the person or houses the department).

12. The process by which each CRST Defendant approves marketing and advertising materials, including the identities, roles, responsibilities, and location of those personnel and departments involved (including which CRST Defendant employs the person or houses the department) and whether marketing, advertising, and/or branding is controlled by or integrated with CRST International's or any other CRST Defendants' marketing, advertising, and/or branding.

13. The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via 3rd party recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons responsible for coordinating 3rd party recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to 3rd party recruiters and by whom; which CRST Defendant the 3rd party recruiters work for and/or report to; and what documents are created as a part of this process.

14. The policies, practices, procedures, and processes for recruiting Drivers for the Lease Purchase Program via in-house recruiters, including, but not limited to, the identities, roles, responsibilities, and location of those persons and departments responsible for recruiting efforts and which CRST Defendant they are employed by/report to; what training and/or instructions are provided to in-house recruiters and by whom; which CRST Defendant the in-house recruiters work for and/or report to; whether customer leads are generated on an enterprise-wide basis; what documents are created as a part of this process.

15. The process by which the IOCA, lease agreements, and any other written agreement and/or contracts entered into with Drivers are drafted, revised, or enforced, including which CRST

Defendants are involved in the process and the identities, roles, responsibilities, and location of each person and department involved in the process.

16. The process for defining (and modifying the definitions of) gross revenue, adjusted gross revenue, and gross compensation, as those terms are used in the IOCA, including the identities, roles, responsibilities, and location of those persons responsible for such definitions and which CRST Defendant they work for and/or report to.

17. The policies, practices, procedures, and processes for setting and changing compensation rates for Drivers, including charges and deductions outlined on Settlement Statements, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

18. The policies, practices, procedures, and processes for receiving and documenting Driver complaints (such as by the Retention Department), including, but not limited to, which CRST Defendants are involved in the process, the identities, roles, responsibilities, and location of each person and department involved, and what documents are created as part of this process.

19. The role that each individual identified on each CRST Defendants' initial disclosures plays in the Lease Purchase Program, if any.

20. Your relationship and interactions with American Trucking Business Services ("ATBS") including, but not limited to, points of contact, contracts you have had in place with ATBS, the subject matter of such contracts, types and contents of reports to and/or from ATBS, ATBS services provided to Drivers, and all efforts/activities to provide information to Drivers about ABTS and its services.

21. The policies, practices, procedures, and methods by which the purchase price for lease vehicles are determined, including whether and how depreciation claimed by CRST Lincoln

Sales is factored into purchase price, which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person involved in this process.

22. The process by which money flows to and from CRST Lincoln Sales for lease and maintenance payments, including the accounting of the same and the banking institutions handling such transactions, in addition to which CRST Defendants are involved in this process, and the identities, roles, responsibilities, and location of each person and department involved in this process.

23. The roles and responsibilities of Lisa Stevenson as to each CRST Defendant, including, but not limited to, as Secretary of CRST Expedited, CRST Lincoln Sales, and CRST Specialized; Chief Risk Officer of CRST Expedited; and General Counsel of CRST Expedited and CRST International.

24. The identity of the person(s) most knowledgeable concerning the CRST Defendants' shared marketing and advertising practices and services; recruiting practices; legal personnel; human resources infrastructure and support; information technology infrastructure and support; safety resources; document management system; record keeping and retention; and facilities or real property.