UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| HARLEY KELCHNER, ANTHONY HICKS, DANIEL WECHE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRST INTERNATIONAL HOLDINGS LLC, CRST EXPEDITED, INC., CRST SPECIALIZED TRANSPORTATION, INC., CRST LINCOLN SALES, INC. and JOHN SMITH, an individual, and MICHAEL GANNON, an individual,<br><br>Defendants. | Case No. 1:24-cv-00082-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**REPLY OF CORPORATE DEFENDANTS IN SUPPORT OF
THEIR MOTION TO DISMISS (ECF NO. 120)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT...................................................................................................... 1

        A.      Plaintiffs have not plausibly pleaded BOPA's territorial predicates. .................... 1

                1.      Section 551A.2 is a gatekeeping provision tied to specific transactional events, not corporate geography or "enterprise" allegations. ....................................................................................... 2

                2.      Plaintiffs cannot invoke § 551A.2(1)(c) and do not seriously try.............. 2

                3.      Plaintiffs also do not plausibly plead their offer "originates from" Iowa...................................................................................................... 2

                4.      Plaintiffs also do not allege an offer "made and accepted" in Iowa. .......... 4

                5.      Choice-of-law provisions cannot manufacture BOPA applicability. ......... 4

        B.      Plaintiffs lack Article III standing to seek injunctive or declaratory relief............. 4

        C.      Plaintiffs have also not established standing for a "failure-to-disclose" theory. ....................................................................................................... 5

                1.      Plaintiffs must plausibly allege their individual injuries are fairly traceable to the omission of a BOPA disclosure......................................... 6

                2.      A statutory violation is also not a concrete injury in itself. ....................... 7

        D.      Plaintiffs did not plead fraud-based theories with the particularity required.......... 8

                1.      Prior participation in the case is not a Rule 9(b) exception. ...................... 8

                2.      Plaintiffs' "scheme" theory does not eliminate the need for defendant-specific and plaintiff-specific particulars.................................. 9

                3.      Group pleading across multiple corporate defendants is fatal. ................. 10

                4.      "Information and belief" cannot cure missing Rule 9(b) facts. ................ 11

        E.      Defendants' preemption arguments are well founded. ........................................ 12

                1.      FAAAA: Plaintiffs expressly seek to regulate Defendants' economics and capacity. ......................................................................... 12

                2.      Truth-in-Leasing: Plaintiffs' "complementary" framing of BOPA ignores the obstacles created by their theory and remedies...................... 13

III.    CONCLUSION.................................................................................................. 13

**TABLE OF AUTHORITIES**
**Cases**

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*,
728 F.3d 853 (8th Cir. 2013) ......................................................................... 13

*Arizona v. United States*,
567 U.S. 387 (2012) ...................................................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 6

*Boyd v. Target Corp.*,
750 F.Supp.3d 999 (D. Minn. 2024) ............................................................... 5

*Braitberg v. Charter Commc'ns, Inc.*,
836 F.3d 925 (8th Cir. 2016) ...................................................................... 7, 8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................................... 4, 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................................ 5

*Clark v. McDaniel*,
546 N.W.2d 590 (Iowa 1996) .......................................................................... 7

*Commercial Property Investments v. Quality Inns Intern, Inc.*,
61 F.3d 639 (8th Cir. 1995) ............................................................................. 9

*Dolphin Kickboxing Co. v. FranChoice, Inc.*,
No. 19-CV-1477 (MJD/ECW), 2019 WL 7598649 (D. Minn. Dec. 19, 2019) .......................... 3

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
323 F.3d 1219 (9th Cir. 2003) ......................................................................... 4

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ........................................................................................ 13

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ........................................................................... 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................. 4, 6, 8

*Mekhail v. N. Mem'l Health Care*,
726 F.Supp.3d 916 (D. Minn. 2024) ............................................................... 5

*Miller v. Marshall County*,
641 N.W.2d 742 (Iowa 2002) ......................................................................................... 3

*Nw., Inc. v. Ginsberg*,
572 U.S. 273 (2014) ...................................................................................................... 12

*Olsen v. Nelnet, Inc.*,
392 F.Supp.3d 1006 (D. Neb. 2019) ....................................................................... 10, 11

*Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*,
407 F.Supp.3d 59 (D. Mass. 2019) ................................................................................ 4

*Roberts v. C.R. England, Inc.*,
318 F.R.D. 457 (D. Utah 2017) .................................................................................... 13

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008) ...................................................................................................... 12

*Schumacher v. SC Data Ctr., Inc.*,
33 F.4th 504 (8th Cir. 2022) ....................................................................................... 7, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..................................................................................................... 5, 7

*St. Louis Heart Center, Inc. v. Nomax, Inc.*,
899 F.3d 500 (8th Cir. 2018) ......................................................................................... 6

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
781 F.3d 1003 (8th Cir. 2015) ................................................................................... 9, 10

*Tousley v. North American Van Lines, Inc.*,
752 F.2d 96 (4th Cir. 1985) .......................................................................................... 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................................................ 5, 7, 8

*Trooien v. Mansour*,
608 F.3d 1020 (8th Cir. 2010) ................................................................................... 9, 10

*United States ex rel. Benaissa v. Trinity Health*,
963 F.3d 733 (8th Cir. 2020) ......................................................................................... 9

*United States ex rel. Thayer v. Planned Parenthood of the Heartland*,
765 F.3d 914 (8th Cir. 2014) ...................................................................................... 9, 12

*United States v. Consumer Law Protection, LLC*,
No. 4:22-cv-1243, 2024 WL 6881525 (E.D. Mo. Oct. 18, 2024) ........................................ 11

**Statutes**

49 U.S.C. § 14501 ........................................................................................................... 12

Iowa Code § 551A ............................................................................... 1, 2, 3, 4, 13

**Rules**

Fed. R. Civ. P. 9 ............................................................................... 8, 9, 10, 11, 12

**Other Authorities**

Restatement (Second) of Torts § 551 ........................................................................ 7

Defendants, CRST International Holdings, LLC (CRST International Holdings), CRST Expedited, Inc. (CRST Expedited), CRST Specialized Transportation, Inc. (CRST Specialized), and CRST Lincoln Sales, Inc. (CRST Lincoln Sales), respectfully submit this reply in support of their Motion to Dismiss (ECF No. 120).

## I.     INTRODUCTION

Plaintiffs' Resistance only confirms that this case can be resolved on several threshold defects. First, Iowa's BOPA does not apply to *every* transaction involving an Iowa-based company; it applies only when Plaintiffs meet one of the territorial predicates in Iowa Code § 551A.2. Here, Plaintiffs are not Iowa domiciliaries, do not allege they operated the purported "business opportunity" in Iowa, and do not otherwise plead the transaction-specific facts BOPA requires. Second, even if BOPA's territorial gatekeeping was satisfied, Plaintiffs still lack Article III standing in two independent respects. They seek injunctive relief based on speculation that they might someday re-engage with Defendants or encounter recruiting materials again—allegations insufficient for prospective relief. And they cannot establish standing for a stand-alone "failure-to-disclose" theory by presuming causation from a missing disclosure and later unfavorable outcomes; Article III requires a plausible showing of traceability and redressability. Third, Plaintiffs press fraud-based theories without pleading who said what to whom, when, and how each named Plaintiff encountered and relied on the alleged statements—defects magnified by their lumping of distinct entities into a single amalgamation. Finally, Plaintiffs' Resistance does not defeat federal preemption: The remedies they seek—rescission-like restitution and sweeping injunctive relief—would operate as direct regulation of the economics and structure of Defendants' prices and services. For these reasons, the Court should dismiss Plaintiffs' claims.

## II.     ARGUMENT

### A.     Plaintiffs have not plausibly pleaded BOPA's territorial predicates.

Plaintiffs attempt to convert BOPA's territorial limitation into a nationwide regulatory hook for any multistate business practice allegedly run "from Iowa." ECF No. 131 at 23. But that is not what the statute says. BOPA applies only if one of the territorial triggers in Iowa Code § 551A.2(1) is satisfied, and the statute then defines—transactionally—when an "offer to sell" is

"made in this state" and when an "offer to purchase" is "made and accepted" in this state. Iowa Code § 551A.2(1)–(4). Plaintiffs' resistance does nothing to advance those statutory predicates.

1.  **Section 551A.2 is a gatekeeping provision tied to specific transactional events, not corporate geography or "enterprise" allegations.**

Plaintiffs correctly quote § 551A.2(1)(a): BOPA applies when "an offer to sell is made in this state." Iowa Code § 551A.2(1)(a). But then they pivot away from the statutory inquiry and erroneously argue instead that BOPA applies because Defendants are "Iowa-based," share Iowa officers, and allegedly centralized recruiting strategy in Iowa. ECF No. 131 at 23-25.

Section 551A.2 does not ask where a company's headquarters are, where officers sit, or where "strategy" is set. It asks whether one of three defined territorial predicates exists: The offer to sell was made in Iowa; the purchaser's offer to purchase was made and accepted in Iowa; or the purchaser is domiciled in Iowa and the opportunity is to be operated in Iowa. Iowa Code § 551A.2(1)(a)–(c). The statute's definitional subsections confirm this is a transaction-focused inquiry: An offer is "made in this state" when (among other things) "the offer originates from this state," or when it is "directed … to this state and received" here; acceptance is "in this state" only when acceptance is "communicated to the offeror in this state." Iowa Code § 551A.2(2)–(4). Plaintiffs failed to plead anything to support these elements.

2.  **Plaintiffs cannot invoke § 551A.2(1)(c) and do not seriously try.**

Section 551A.2(1)(c) is purchaser-focused: It requires that "the purchaser is domiciled in this state and the business opportunity is to be operated in this state." Iowa Code § 551A.2(1)(c). Yet Plaintiffs do not allege Iowa domicile for the named Plaintiffs, nor do they allege their purported opportunities were to be operated in Iowa. And they cannot satisfy subsection (c) by pointing to Defendants' Iowa offices or some decision-making in Iowa.

3.  **Plaintiffs also do not plausibly plead their offer "originates from" Iowa.**

Plaintiffs lean heavily on § 551A.2(2)(a) ("[t]he offer originates from this state") and argue that the alleged "offers" originated from Iowa because recruiting operations and executives were in Iowa. ECF No. 131 at 24-25. But the statutory phrase "offer originates from this state" modifies a defined term: "offer," which means the "attempt to dispose of a business opportunity for value,

or solicitation of an offer to purchase a business opportunity." Iowa Code § 551A.1(7); *id.* § 551A.2(2)(a). So the question is not where Defendants' *policies* were conceived. Rather, it is what was the actual "offer" to each named Plaintiff, who made it, and from where did *that* communication originate? Plaintiffs do nothing to plead those facts for themselves. At most, they rely on generalized "enterprise" allegations and the label "Iowa-based recruiters," without tying the operative "offer to sell" to an Iowa origin. That is not enough.

Not every recruiting touchpoint is a statutory "offer to sell" that triggers BOPA. BOPA defines an "offer" as an attempt to dispose of a business opportunity for value, or a solicitation of an offer to purchase. Iowa Code § 551A.1(7). And § 551A.2 does not ask whether any communication came from Iowa in some generic sense; it asks whether the offer "originates from this state" or is "directed … to this state and received" here. Iowa Code § 551A.2(2)(a)–(b). Thus, isolated communications with personnel Plaintiffs label "Iowa-based" does not plausibly plead the territorial predicate unless Plaintiffs also allege, for each named Plaintiff, the offer to sell the business opportunity—the operative solicitation attempting to dispose of the Driving Opportunity for value—originated from Iowa (or was directed to and received in Iowa). They fail to do so.

Plaintiffs' reliance on non-Iowa cases interpreting different statutory schemes does not help them on this point. Those cases focus on the locus of the solicitation itself—whether solicitations "originated" from the forum state—rather than on where a company has directors, executives, or certain shared services. *See, e.g.*, *Dolphin Kickboxing Co. v. FranChoice, Inc.*, No. 19-CV-1477 (MJD/ECW), 2019 WL 7598649, at *9 (D. Minn. Dec. 19, 2019) (focusing on whether solicitations originated from Minnesota). Unlike these cases, Plaintiffs' problem is they do not allege, nonconclusory and by Plaintiff, the origin of the operative offer communications. More fundamentally, Plaintiffs' approach would effectively make BOPA apply nationwide whenever an Iowa entity recruits out-of-state purchasers for out-of-state opportunities. That would collapse § 551A.2's carefully drawn triggers (including the distinct acceptance trigger in § 551A.2(1)(b) and the domicile trigger in § 551A.2(1)(c)). Iowa courts do not interpret statutes to render key provisions superfluous. *See Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002).

3

### 4. Plaintiffs also do not allege an offer "made and accepted" in Iowa.

Plaintiffs' last option, Section 551A.2(1)(b), demands a separate, specific nexus: An "offer to purchase" must be "made *and* accepted in this state." Iowa Code § 551A.2(1)(b) (emphasis added). The statute defines when an offer to purchase is "made" and when it is "accepted" in Iowa, focusing on where the communication is directed and received and where acceptance is communicated. Iowa Code § 551A.2(3)–(4). Plaintiffs do nothing to plead those statutory facts. They do not allege that any named Plaintiff's offer to purchase was directed to and received in Iowa, nor do they allege that acceptance was communicated to the purchaser in Iowa in the manner § 551A.2(4) requires. Instead, they again point only to Iowa corporate governance and alleged centralized recruiting. That is not what § 551A.2(1)(b) requires.

### 5. Choice-of-law provisions cannot manufacture BOPA applicability.

It is well-settled that a contractual choice-of-law clause cannot expand a statute's territorial reach. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003); *Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F.Supp.3d 59, 78–80 (D. Mass. 2019). Here, Section 551A.2 is the Iowa legislature's express decision about when BOPA applies. Parties cannot "opt in" to statutory coverage when the statute itself limits its scope to defined territorial events. Allowing a contractual choice-of-law clause—which, here, only expressly governs "[t]his Lease," not alleged torts between the Parties—to substitute § 551A.2 would nullify those statutory limits.

### B. Plaintiffs lack Article III standing to seek injunctive or declaratory relief.

The Supreme Court has consistently held that a plaintiff seeking injunctive relief must show a "real and immediate threat of future injury," and that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" without "continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105–07 (1983). Plaintiffs' allegation that they "would like to drive for Defendants again if their practices improve" is the paradigmatic "some day" intention that cannot establish imminence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). That defect is dispositive of their "advertising" theory: The claim depends on a speculative chain—Plaintiffs might re-engage, might be recruited, might be misled—when Article III requires threatened harm to be "certainly impending" or to present a "substantial risk" of

4

occurring. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013); *In re SuperValu, Inc.*, 870 F.3d 763, 769–71 (8th Cir. 2017) (rejecting future-harm standing based on generalized assertions that a practice "facilitates" injury). Plaintiffs' reliance on a pair of nonbinding District of Minnesota consumer-labeling decisions is misplaced because those cases involved ongoing market purchases and did not extend *Lyons* to former participants with no concrete plan to return: *Boyd v. Target Corp.*, 750 F.Supp.3d 999 (D. Minn. 2024); *Mekhail v. N. Mem'l Health Care*, 726 F.Supp.3d 916 (D. Minn. 2024). Nor do Plaintiffs' credit, collections, or reporting theories supply standing for prospective relief, because they rest on conditional, discretionary, or merely possible future actions and not any imminent, plaintiff-specific inaccurate report; *TransUnion* does not loosen the distinct imminence requirement for equitable relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021). Finally, redressability and traceability fail independently: An injunction compelling future BOPA disclosures would not redress speculative downstream disputes (*e.g.*, collections decisions) for former drivers who do not plausibly allege any imminent re-engagement in a covered transaction. *Lyons*, 461 U.S. at 105–07.

C.      **Plaintiffs have also not established standing for a "failure-to-disclose" theory.**

In their Resistance, Plaintiffs' Article III standing discussion conflates two distinct propositions: (1) BOPA requires a disclosure form and (2) any alleged downstream disappointment in a multi-variable commercial relationship is therefore "caused" by the absence of the statutory disclosure form.[1] Article III requires more. Even where a legislature creates statutory rights and remedies, federal jurisdiction still turns on the familiar elements—injury in fact, traceability, and redressability—and courts "do not automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). And the Supreme Court has reaffirmed that "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 426. Plaintiffs' attempt to convert an alleged "missing disclosure" into presumptive causation for all asserted economic harm fails to

---

[1] Plaintiffs also try to have it both ways on "registration": They disclaim a "registration-based theory" while insisting non-registration is "relevant" to assorted issues. ECF No. 131 at 18. Plaintiffs cannot avoid standing and pleading defects in their disclosure theory by keeping registration as a narrative of noncompliance. Standing is claim- and theory-specific; it is not satisfied by generalized allegations that Defendants "disregarded" BOPA.

demonstrate traceability and redressability.

### 1. Plaintiffs must plausibly allege their individual injuries are fairly traceable to the omission of a BOPA disclosure.

Plaintiffs correctly recite *Lujan*'s framework, but their application effectively deletes its traceability requirement. Article III requires a "causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560–61, and that causal link must be plausibly alleged—especially where, as here, the claimed injury is economic loss from a complex commercial arrangement affected by countless variables (market rates, miles, dispatches, fuel, maintenance, settlement deductions, when loads are completed in relation to payment dates, time off, and the parties' other contractual choices). Yet Plaintiffs' brief treats traceability as automatic: If BOPA required a disclosure and Defendants allegedly did not provide it, then Plaintiffs' negative net settlements are "caused" by that omission. But that is not how traceability works.

The Eighth Circuit's traceability cases illustrate that point. In *St. Louis Heart Center, Inc. v. Nomax, Inc.*, the plaintiff alleged classic tangible harms (paper/toner/time) from receiving fax ads, but the Eighth Circuit held those harms were not "traceable" to the specific statutory defect alleged—an opt-out notice that was technically non-compliant—because the same injury would have occurred whether or not the notice complied. 899 F.3d 500, 504–05 (8th Cir. 2018). Put simply: When the alleged injury would have occurred even absent the asserted statutory violation, traceability fails. *Id.* That logic applies here with force. Plaintiffs' alleged injury is not "I was deprived of information and therefore suffered a concrete informational harm"; it is "I entered a trucking lease and owner-operator relationship and later had poor financial results." Those results are not plausibly traceable to the absence of a disclosure document as opposed to the economics of the arrangement, contractual terms that Plaintiffs accepted, and the inherent risks of the venture.

To bridge that gap, Plaintiffs rely on the conclusory assertion that they "would not have contracted" had Defendants provided the BOPA disclosure. ECF No. 131 at 19. But "[t]hreadbare recitals" and "conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs do not plead nonconclusory facts showing (a) what specific, decision-changing information each Plaintiff lacked (as opposed to information already alleged in their

misrepresentation theories), (b) when and how each Plaintiff would have processed it, and (c) how that would have avoided the particular "negative paychecks" they cite—rather than merely changing whether they would have taken the job or lease in the first place. A "but-for I would have walked away" allegation is not a substitute for plausibly alleging the omission itself caused the concrete harm they seek to recover.

### 2. A statutory violation is also not a concrete injury in itself.

Recognizing the weakness of their causal story, Plaintiffs also argue that the bare violation of BOPA's disclosure requirement—standing alone—qualifies as a concrete injury because it "poses a harm or risk of real harm" and is "conceivably similar" to common-law nondisclosure under Restatement (Second) of Torts § 551. ECF No. 131 at 19. That framing overstates what Article III permits.

First, *Spokeo* and *TransUnion* reject the idea that a legislature can "convert" a procedural requirement into Article III standing without "real" harm (or at least a sufficiently material risk of real harm) that is actually tied to the plaintiff. *Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 426. The Eighth Circuit has applied that principle to disclosure-adjacent statutory regimes; for example, technical noncompliance, without "something more" showing concrete harm to the plaintiff, does not confer standing. *See, e.g.*, *Schumacher v. SC Data Ctr., Inc.*, 33 F.4th 504, 507–10 (8th Cir. 2022) (no standing where plaintiff alleged at most technical violations without facts showing concrete harm); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929–30 (8th Cir. 2016) (statutory violation without concrete harm does not suffice after *Spokeo*). Plaintiffs cite *TransUnion* for the uncontroversial proposition that monetary loss is concrete (ECF No. 131 at 18), but that does not answer the question whether a procedural disclosure omission is itself a concrete injury absent a pleaded, plaintiff-specific real-world consequence.

Second, Plaintiffs' Restatement analogy does not do the work they claim. Common-law fraudulent nondisclosure is not triggered by a missing formality in the abstract; it turns on materiality, falsity, representation, scienter, intent to deceive, justifiable reliance, and resulting injury and damage. *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996). Plaintiffs cannot invoke Section 551 as an analogy while simultaneously avoiding the reliance and causation showing that

7

makes nondisclosure actionable. If the "closest traditional tort" is nondisclosure, Plaintiffs' theory must plausibly connect the alleged omission to a concrete effect on them—not just to a generalized policy interest in enforcing BOPA. *TransUnion* cautions against treating a statutory violation as standing where it amounts to an abstract interest in enforcement. 594 U.S. at 423–26.

Third, even if one could conceptualize a freestanding "informational injury" in some contexts, Plaintiffs have not pleaded it here. They do not allege they requested and were denied information they had a right to obtain and then suffered a concrete downstream impairment from that denial; they allege the absence of BOPA disclosures as a litigation hook to recover money for an allegedly uneconomic relationship. That is precisely the kind of "injury in law" theory *Spokeo*, *TransUnion*, and Eighth Circuit cases reject without additional, concrete harm flowing from the alleged statutory defect. *Schumacher*, 33 F.4th at 507–10; *Braitberg*, 836 F.3d at 929–30.[2]

**D.      Plaintiffs did not plead fraud-based theories with the particularity required.**

Plaintiffs' Rule 9(b) argument rests on two false premises: (1) Defendants' ability to "understand the factual core" from litigation history substitutes for Rule 9(b) pleading and (2) labeling allegations a "scheme" excuses the need to plead, with particularity, who made which statements or omissions, to whom, when/where/how, and how those statements actually induced each Plaintiff's decisions. ECF No. 131 at 21-22. Neither premise is correct.

**1.      Prior participation in the case is not a Rule 9(b) exception.**

Plaintiffs lead with the assertion that Defendants have been "actively litigating" since late 2024 and therefore their particularity objections should be denied. ECF No. 131 at 20. But Rule 9(b) is not keyed to a defendant's familiarity with a dispute; it is a pleading standard designed to require a plaintiff to state fraud "with particularity." Fed. R. Civ. P. 9(b). That Defendants answered a prior complaint does not relieve Plaintiffs of the obligation to plead fraud with the precision that Rule 9(b) demands. For this point, Plaintiffs also cite *Commercial Property Investments v. Quality Inns Intern, Inc.* for the general purpose of Rule 9(b)—to facilitate a

---

[2] Even accepting Plaintiffs' asserted financial harms as concrete, they must still plausibly allege those harms are "likely" to be redressed by a favorable decision on the challenged conduct. *Lujan*, 504 U.S. at 561. Plaintiffs' requested monetary relief is framed as damages for "money paid for the business opportunity." But their theory of redress assumes—without plausible factual support—that those payments were made because of the missing disclosure, not because Plaintiffs chose to enter and continue in the relationship for reasons independent of any BOPA disclosure document. Absent plausible traceability, redressability is also necessarily speculative.

defendant's response and defense. 61 F.3d 639, 644 (8th Cir. 1995). That is true as far as it goes, but it also does not create a "they already know what this is about" exception. Litigation posture cannot substitute for those required allegations; Plaintiffs must allege the "who, what, where, when, and how" with sufficient specificity. *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015); *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917 (8th Cir. 2014) (same); *Trooien v. Mansour*, 608 F.3d 1020, 1028–30 (8th Cir. 2010) (same).

### 2. Plaintiffs' "scheme" theory does not eliminate the need for defendant-specific and plaintiff-specific particulars.

Plaintiffs misapply the "scheme" language from *Benaissa* to argue they need not plead "specific details of *every* alleged fraudulent act." *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020). *Benaissa* does not authorize enterprise-level lumping or reliance-by-assumption. It recognizes that, in some False Claims Act contexts, a relator may satisfy Rule 9(b) either by pleading representative examples of fraudulent conduct or by pleading particular details of a scheme coupled with reliable indicia that fraudulent acts occurred. *Id.* But even under that formulation, Rule 9(b) still requires "particular details" and "reliable indicia" tied to the alleged misconduct—not generalized assertions that "there were scripts," "there were packets," and "there was orientation," followed by a conclusion that each Plaintiff relied.

That is the defect here. Plaintiffs allege broad categories of communications (advertising, recruiting, information packets, orientation materials, scripts) and then assert, in conclusory fashion, that Plaintiffs all relied on and were induced by these communications. What is missing is the Rule 9(b) connective tissue: Which specific statements (or materially misleading omissions) are actionable as to which statutory theory; which Defendant is responsible for which statement (or for the omission); how and when each Plaintiff encountered the statement(s); what each Plaintiff did because of it (and why that reliance is plausible given the timing and content); and how the alleged misrepresentation or omission caused the claimed economic injury (rather than the economics of a multi-variable commercial relationship). Eighth Circuit law requires those particulars in substance even where a plaintiff alleges a "systematic practice." *Thayer*, 765 F.3d at

917; *Streambend*, 781 F.3d at 1013. Plaintiffs cannot avoid this by asserting that the scheme was "uniform." Uniformity is not particularity, and a "scheme" label does not plead the "who, what, where, when, and how." *Trooien*, 608 F.3d at 1028–30.

### 3. Group pleading across multiple corporate defendants is fatal.

The most persistent Rule 9(b) defect is Plaintiffs' repeated lumping of distinct corporate defendants into a single undifferentiated "Defendants" actor. Rule 9(b) requires notice of "what each defendant did." *Streambend*, 781 F.3d at 1013. When multiple defendants are sued for fraud, the pleading must, at minimum, attribute the misrepresentation or omission to the defendant who made it, including the time, place, and content. *Trooien*, 608 F.3d at 1028–30.

Plaintiffs' response is essentially: "we can group them because they acted together," supported by allegations of shared leadership, a centralized recruiting team, and common materials. But corporate overlap is not a pleading substitute for the elements Rule 9(b) requires. If Plaintiffs are suing multiple corporations, then they must plead (with particularity) which corporate entity made which representations (through which agents), and which entities they contend are liable for those statements under the legal theories actually pleaded (*e.g.*, direct speaker liability, principal-agent, joint venture, alter ego). Vague allegations that there is a "common enterprise" do not provide Rule 9(b) clarity as to each defendant's purported fraudulent conduct.

Plaintiffs' cited district court decisions do not excuse the Eighth Circuit's attribution and reliance requirements. For example, Plaintiffs' reliance on *Olsen v. Nelnet, Inc.*, 392 F.Supp.3d 1006, 1019–20 (D. Neb. 2019), is misplaced. *Olsen* arose in a narrow, highly regulated loan-servicing context involving a small number of closely related entities operating under a single "Nelnet" banner and communicating standardized, transaction-specific notices to identified borrowers. There, the complaint alleged concrete, plaintiff-specific misrepresentations tied to defined time periods, specific renewal applications, and identifiable adverse consequences. On those facts, the court concluded that further parsing which subsidiary employee sent which notice added little to Rule 9(b)'s notice function.

This case also bears no resemblance to *Olsen*. Plaintiffs here allege a sprawling, multi-channel "enterprise" scheme involving advertising, recruiting calls, scripts, packets, orientation

materials, and purported "net impressions," across multiple legally distinct corporate defendants. They do not tie most of those categories to specific plaintiffs, specific statements, or specific entities. Unlike *Olsen*, this is not a case involving uniform statutory notices sent in connection with discrete transactions; it is an attempt to impose enterprise-wide fraud liability based on generalized marketing practices. Nothing in *Olsen* suggests that Rule 9(b) permits plaintiffs, in that setting, to dispense with defendant-specific attribution and plaintiff-specific exposure and reliance.

Plaintiffs' reliance on *United States v. Consumer Law Protection, LLC*, No. 4:22-cv-1243, 2024 WL 6881525 (E.D. Mo. Oct. 18, 2024), is even further afield. That case was a government enforcement action brought by the United States and a state attorney general under the FTC Act and related statutes, alleging a coordinated fraudulent operation involving sham entities and individual defendants. The court evaluated Rule 9(b) in the context of sovereign plaintiffs pursuing public enforcement remedies based on detailed allegations of a unified scam, not private plaintiffs seeking damages and restitution based on individualized reliance. Critically, that case did not involve the pleading of private reliance, causation, or individualized exposure—elements that are central to Plaintiffs' BOPA and fraud-based theories here. Nor did it authorize private plaintiffs to lump multiple defendants together and defer attribution and reliance to discovery. The court merely concluded that the government had sufficiently alleged a common enterprise and deceptive practices for enforcement purposes. That holding does not relax Rule 9(b)'s requirements.

### 4. "Information and belief" cannot cure missing Rule 9(b) facts.

Plaintiffs argue that turnover and earnings "raw data" are in Defendants' possession, and they cite a decision suggesting information-and-belief allegations can suffice where facts are peculiarly within the opposing party's knowledge. ECF No. 131 at 21. Even accepting that narrow principle, it does not save Plaintiffs' Complaint. Here, Plaintiffs use the "peculiarly within Defendants' knowledge" trope to excuse gaps that are not in Defendants' exclusive possession— *e.g.*, what each Plaintiff saw, heard, read, when they saw it, who communicated it to them, and how it influenced their decisions. Rule 9(b) allows knowledge and intent to be pleaded generally, Fed. R. Civ. P. 9(b), but the circumstances constituting fraud—the actionable statement or omission, the speaker, the medium, the timing, and the named Plaintiff's exposure—must still be

pleaded with particularity. *Thayer*, 765 F.3d at 917.

To be sure, Defendants are not demanding an encyclopedic list of every advertisement or every phone call. But where the named Plaintiffs assert fraud-like BOPA theories against multiple corporate defendants based on multi-channel communications, Rule 9(b) requires—at minimum—representative examples tied to (a) each defendant and (b) each named plaintiff's exposure and reliance. That means identifying, for each Plaintiff, the concrete statements (or omissions) that allegedly induced them, who made them (and for which entity), the approximate dates/timeframes, the channel (e.g., an ad, call, packet, orientation), and how each named Plaintiff acted in reliance. That is precisely the information Rule 9(b) demands. Without those particulars, Plaintiffs' fraud theories remain impermissibly "scheme-level"—a narrative that invites discovery to find a viable fraud claim rather than pleading one. Rule 9(b) exists to prevent exactly that.

### E. Defendants' preemption arguments are well founded.

#### 1. FAAAA: Plaintiffs expressly seek to regulate Defendants' economics and capacity.

The FAAAA provides that a State "may not enact or enforce a law … related to a price, route, or service of any motor carrier … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has repeatedly interpreted this "related to" language broadly, preempting state rules related to carrier prices, routes, or services—even if the state law operates indirectly—so long as the connection is not merely "tenuous, remote, or peripheral." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008).[3] Plaintiffs' opposition misapplies those principles by treating "general applicability" as a categorical safe harbor.

The inquiry is whether the challenged state-law regime, as Plaintiffs would enforce it, materially affects a carrier's prices or services. Here, Plaintiffs seek far more than damages for a discrete misstatement. They invoke BOPA to impose a state-law disclosure regime and pair it with rescission-like restitution ("all money or other valuable consideration paid") and broad equitable relief—remedies that would predictably and directly alter the economics and availability of

---

[3] Plaintiffs also attempt to narrow the preemption inquiry around "services." But the Supreme Court has specifically rejected Plaintiffs' crabbed reading, emphasizing that state-law claims that seek to enlarge or impose obligations affecting core economic choices in deregulated industries are often preempted. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281–87 (2014) (reversing Plaintiffs' cited Ninth Circuit case, finding ADA preemption barred state-law implied-covenant claim where it would impose state policy-based obligations beyond the parties' voluntary undertakings).

Defendants' capacity-sourcing model. *See* Iowa Code § 551A.8(1), (4). That is not a law operating "one or more steps away" from the market-facing offering; Plaintiffs seek to use BOPA to regulate whether and how Defendants may offer and structure the very model by which transportation capacity is procured and provided.[4]

Plaintiffs also rely heavily on *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457 (D. Utah 2017), to argue "BOPA-like" statutes cannot be preempted. But *Roberts* is not binding on this Court and arose in a very different procedural and factual posture. Indeed, *Roberts* repeatedly emphasized the lack of the asserted economic effects of enforcement. *Id.* at 499–501. Unlike in *Roberts*, however, the relief that Plaintiffs seek here—program-wide restitution and injunctions around future operations—would directly impact carrier economics and capacity.

### 2. Truth-in-Leasing: Plaintiffs' "complementary" framing of BOPA ignores the obstacles created by their theory and remedies.

Plaintiffs argue BOPA "complements" the federal Truth-in-Leasing regulations. But the relevant question under conflict and obstacle preemption is whether BOPA, as applied, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Arizona v. United States*, 567 U.S. 387, 399 (2012). Plaintiffs seek to impose an additional state-law disclosure regime with its own timing, content requirements, and remedies—including restitutionary unwinding and injunctive relief—over a field Congress and federal regulators already govern. That overlay is precisely the kind of state-law enforcement mechanism that raises obstacle concerns.[5]

### III. CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' claims against the Corporate Defendants.

---

[4] Plaintiffs' procedural point that preemption is an "affirmative defense" does not insulate their claims at the pleading stage. Courts routinely resolve preemption on a Rule 12 motion when the defense is apparent on the face of the complaint and the relief sought. *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 861 (8th Cir. 2013) (explaining that "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)"). Plaintiffs' own allegations and remedies present the preemption issue.

[5] Plaintiffs' reliance on *Tousley v. North American Van Lines, Inc.*, 752 F.2d 96 (4th Cir. 1985), does not change that result. *Tousley* is an out-of-circuit, decades-old decision applying a different state statute in a different regulatory landscape against a different party, and it is not binding precedent here. *Id.* at 98–103.

Dated: February 9, 2026

Respectfully submitted,

*/s/ James H. Hanson*

James H. Hanson (*pro hac vice*)
Angela S. Cash (*pro hac vice*)
Andrew J. Ireland (*pro hac vice*)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-492-9205
F: 317-684-2414
jhanson@scopelitis.com
acash@scopelitis.com
aireland@scopelitis.com

Thomas D. Wolle
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
twolle@spmblaw.com

*Attorneys for Defendants,*
*CRST International Holdings, LLC, CRST Expedited, Inc., CRST Specialized Transportation, Inc., and CRST Lincoln Sales, Inc.*