**TRANSCRIBED FROM DIGITAL RECORDING.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HARLEY KELCHNER, individually
and on behalf of all others
similarly situated,

      Plaintiff,

    vs.                           No. C24-0082-CJW

CRST EXPEDITED, INC., et al.,      TRANSCRIPT OF
                                 STATUS CONFERENCE
      Defendants.
_____/


      The Status Conference held before the Honorable
Kelly K.E. Mahoney, Chief Magistrate Judge of the United
States District Court for the Northern District of Iowa,
at the Federal Courthouse, 320 Sixth Street, Sioux City,
Iowa, February 4, 2026, commencing at 1:30 p.m.

Case 1:24-cv-00082-CJW-KEM    Document 144    Filed 02/12/26    Page 1 of 41

APPEARANCES:

For the Plaintiff:     BRIAN O. MARTY, ESQ.
                       J. BARTON GOPLERUD, ESQ.
                       Shindler, Anderson,
                         Goplerud & Weese
                       Suite 100
                       5015 Grand Ridge Drive
                       West Des Moines, IA 50265-5749

                       MICHAEL VON KLEMPERER, ESQ.
                       Fegan Scott
                       Suite 100
                       1763 Columbia Road Northwest
                       Washington, DC 20009

                       GEORGIA J. ZACEST, ESQ.
                       Fegan Scott
                       10th Floor
                       708 Main Street
                       Houston, TX 77002

For the Defendants:    THOMAS D. WOLLE, ESQ.
                       Simmons, Perrine, Moyer & Bergman
                       Suite 1200
                       115 Third Street Southeast
                       Cedar Rapids, IA 52401

                       ANGELA S. CASH, ESQ.
                       ANDREW J. IRELAND, ESQ.
                       JAMES H. HANSON, ESQ.
                       Scopelitis, Garvin, Light,
                         Hanson & Feary
                       Suite 1400
                       10 West Market Street
                       Indianapolis, IN 46204

Transcribed from       Shelly Semmler, RDR, CRR
digital recording by:  320 Sixth Street
                       Sioux City, IA 51101
                       (712) 233-3846

(The following transcript was prepared from a digital recording.)

                              * * * *

                    P R O C E E D I N G S

THE COURT:  Good afternoon.  We are here in the matter of Kelchner --

CONFERENCE CALL OPERATOR:  Joined the meeting.

THE COURT:  We're here in the matter of Kelchner, et al., versus CRST Expedited, Inc., et al., Case Number 24-CV-82.  Do we have on behalf of plaintiff Brian Marty?

MR. GOPLERUD:  He's present with myself, Bart Goplerud, Your Honor.

THE COURT:  All right.  And do we have Elizabeth Fegan?  Robert Boulter?  Michael Von Klemperer?

MR. VON KLEMPERER:  I am present, Your Honor.

THE COURT:  And Georgia Zacest?

MS. ZACEST:  Yes, I'm here too, Your Honor.

THE COURT:  All right.  And who plans to speak on behalf of plaintiffs?

MR. VON KLEMPERER:  Your Honor, this is Mike Von Klemperer.  I assume I'll be doing most of the talking.

THE COURT:  Sounds good.

On behalf of defendants, do we have Thomas Wolle?

MR. WOLLE: Yes, Your Honor.

THE COURT: Andrew Ireland?

MR. IRELAND: Yes, Your Honor.

THE COURT: Angela Cash?

MS. CASH: Yes, Your Honor.

THE COURT: And James Hanson.

MR. HANSON: Yes, Your Honor.

THE COURT: Who will primarily be speaking for defendants?

MR. HANSON: Either I will be speaking, or Angela Cash will be.

THE COURT: And is "I" . . .

MR. HANSON: That's James Hanson.

THE COURT: All right. Thank you.

So we're here at the parties' request for a status conference. Plaintiffs requested the status conference. Then defendants indicated they had not fully met and conferred and did not think they were ready for one. So I set this status conference a little while ago.

What have the parties done to try to work to narrow the issues or resolve them in the meantime? Where are we at? And I guess, Mr. -- or, Miss Cash or Mr. Hanson, I'll start with you.

MR. HANSON: Your Honor, we -- we have met with them briefly one day, but we were still working through

some potential resolution of the dispute regarding the 30(b)(6) notices, and then they filed the motion to have the discovery dispute brought before you. So that's -- we've done -- we have not been able to resolve anything. No efforts have been taken on either side to resolve this dispute just other than what we said yesterday in our paper.

THE COURT: All right. It kind of seems like there are interrelated issues here. The discovery dispute stems from noticing of deposition of CRST International, and it seems like defendants' proposal is that rather than having CRST International deposed at this point to depose instead the operating entities which would be CRST Expedited, CRST Specialized, and CRST Lincoln Sales first is what I understand their proposal is.

The second issue -- and this isn't actually necessarily before the Court. I know the resistance has been filed, but there is the pending motion to stay briefing on the pending motions to dismiss to allow plaintiffs to conduct jurisdictional discovery. That appears to be based on plaintiffs' request -- and I want to make sure I understand this, I guess. I'll start with plaintiffs here too, but your request to depose CRST International as well as Lyndsay Navarro Perez and

Jennifer Abernathy.

So is that your understanding kind of of what the issues are, Mr. Von Klemperer?

MR. VON KLEMPERER: Yes. I think that's a fair rundown of the issues.

THE COURT: So I looked at the parties' -- the joint status report that was filed in this case -- I think it's docket 133 -- updating the Court on things, and in that it appeared the plaintiffs were kind of taking issue that defendants originally had agreed to more of a delayed briefing schedule on motions to dismiss. Was that accurate, Mr. Von Klemperer?

MR. VON KLEMPERER: Well, Your Honor, when the defendants first proposed filing renewed motions on the personal jurisdiction issue, they proposed seeking leave of Court to file that and then after which they filed their motion, I think, three weeks later followed by our resistance three weeks after that and a reply brief. Once we made it clear that we wanted to take this deposition before any briefing occurred, they essentially turned around, scrapped that original proposal, and immediately filed their motion and then unsurprisingly opposed our request to stay the briefing while we took this discovery.

THE COURT: Okay.

MR. VON KLEMPERER: I'm happy to get into the merits of that request, but that's the -- that's a high-level summary of that.

THE COURT: All right. And, Mr. Hanson or Miss Cash, you -- your proposal that the three operating entities be deposed before CRST International would be deposed, I guess are you opposing any depositions at this point pending ruling on the motion to dismiss?

MR. HANSON: That's our position, Your Honor. I realize that discovery is not stayed with respect to Ex -- CRST Expedited nor is CRST Lincoln Sales. But we've got a pending -- we have challenged jurisdiction since the case was filed, and Judge Williams ruled against us on the registration being considered consent to jurisdiction. We took that to the Iowa Supreme Court. We got clarification on it saying that no, registration to do business does not consent to jurisdiction.

So we were back to the beginning where Judge Williams had not ruled on the issue of the due process minimum contacts analysis, and so we filed our motion because that needs to be decided. The plaintiff should know what the facts are that support their position on jurisdiction, and they don't need to do discovery on it. That's not normally done in cases where jurisdiction is challenged. And they want to get -- they want to get

involved in doing discovery when they should have had it originally.

And so we -- we object to it. We don't think Specialized should be put to the -- to the burden of discovery in Iowa on these issues.

THE COURT: Okay. One moment.

Okay. And I guess, Mr. Von Klemperer, on -- as to moving forward with jurisdictional discovery, you know, in the defendants' resistance they point out that previously, you know, you had -- or they basically assert that you should make a prima facie showing of jurisdiction that there's personal contacts before jurisdictional discovery be allowed. What's your response to that?

MR. VON KLEMPERER: Your Honor, we cite a host of evidence in our -- in our motion that we believe creates genuine disputes of fact and that we believe meet the standard for providing for jurisdictional discovery. You know, that -- these cases generally discuss why the jurisdictional discovery's available at the outset of a case. Here we're over a year into discovery. Our -- our request is very reasonable, we believe. We're trying to take three depositions that have been previously noticed. There are a host of disputed facts. They rely on declarations from individuals that we believe the

documentary evidence rebuts, and we would like to take the discovery to establish Iowa's ties -- to establish Specialized's ties to Iowa to understand the operations of the -- of the defendants, how they are managed, where those decisions are being made. The evidence we have so far suggests that they are being managed from Iowa by CRST International and its board of directors. You know, and we highlighted all of these facts in our motion. We think it's a very reasonable request. We could take this deposition as soon as they designate the witnesses. And we don't see that there's any significant prejudice to them. They've been litigating this case for about a year and a half at this point. We should have the opportunity to take this very reasonable and limited amount of discovery to -- to make our evidentiary showing to carry our burden on personal jurisdiction.

And if the facts are what they say, then they should welcome the discovery because it presumably will support their motion. But we think that the way this was handled with their effort to rush the motion through after originally proposing a reasonable briefing process only highlights that the evidence is almost certainly going to be helpful for plaintiffs and not the defendants.

And so we would request that the briefing be stayed for a short period of time while we complete these

already-noticed depositions.

THE COURT: And Mr. Hanson?

MR. HANSON: Yeah. I mean, we originally made a proposal back in December, and they delayed and delayed and delayed. And the prima facie case is not about resolving is there disputed issues of fact. We -- we -- we have been waiting for them to put their facts forward that they think creates personal jurisdiction. We haven't created factual disputes. We're -- we're waiting for them to respond to our motion. And we're not required to wait months and months in order to raise the issue of personal jurisdiction. In fact, the rules contemplate that it be done at the very beginning of the case. If you don't raise it at the very beginning, you waive it. And as the Court knows, we have raised it at every step of this case. We have tried to get Specialized out on personal jurisdiction grounds and have the case, if they want to pursue it, either refiled in Indiana where the case belongs against Specialized where its principal office is, where it is at home, and they just refuse. They just want to go forward, and then they want to do a deposition in which they ask Holdings which is a holding company to give detailed information regarding the operating entities and what they do.

So it's up to them. They should have had the facts

if they thought they had personal jurisdiction.  They don't have it.  And they think it's just an easy -- an easy thing to get a deposition, but it's not based on the topics that they have -- that they have cre -- that they are -- that they have listed in their notice for all three companies.  And we think the jurisdictional issue needs to be decided first before we go any further in the case.

THE COURT:  All right.  So they are basically saying, I think, that -- in their motion to stay they're asserting why they think they've made their prima facie showing, that those facts are enough for a prima facie showing.

I hear you saying that you think they need to do that in a resistance to the motion to dismiss.  I guess what's the difference there?  I mean, is what they've alleged in their motion to stay sufficient to make the prima facie showing?

MR. HANSON:  I don't think that they have made a prima facie showing.  What they're doing is relying on the contacts of the affiliated companies, and what they -- what they need to do is if they've got enough -- if what you're saying, Your Honor, is correct, why can't they put that in their resistance and let Judge Williams decide whether that's enough to make a prima facie

showing of specific personal jurisdiction?

THE COURT: I think the thing is we're going to end up right back here -- if he does find that, then we're right back here where we are as to whether or not then they get to do jurisdictional discovery. So for --

MR. HANSON: I don't think they're allowed to do that, Your Honor.

THE COURT: You don't think what?

MR. HANSON: I don't think they'll be allowed to do that.

THE COURT: Because you don't think they can make the prima facie showing.

MR. HANSON: Right.

THE COURT: Okay. Mr. Von Klemperer, response?

MR. VON KLEMPERER: Your Honor, it's correct. We have summarized some of the evidence in our motion. Our effort there was to show that we satisfied the standard to obtain jurisdictional discovery which the Eighth Circuit has said is appropriate as long as you can req -- present some documentary proof rather than mere speculation and conclusory allegations that would support jurisdiction. We -- we cite a host of that evidence in our motion, and we have -- you know, they're making a factual challenge which means we have an evidentiary burden to resist their motion to dismiss on personal

jurisdiction grounds. They rely on a host of declarations, self-serving declarations presumably crafted by and with counsel. And the evidence in many cases is con -- the documents we've obtained contradict many of those allegations.

We want to explore the inconsistencies, and we want to explore Specialized's ties to Iowa. There's a host of evidence, Your Honor, that this company was managed from the top by executives in Iowa. There's a recruiting team in Iowa that recruits for the entire entity including Specialized and Expedited. Those folks report up to individuals at the CRST International Holdings, and CRST International Holdings board is managing the entire operation. The subsidiaries do not even have their own board. And this is a -- this is an Iowa-run operation, and that's the showing we are attempting to establish, and that's what our 30(b)(6) notice is covering in large part.

THE COURT: And I guess, Mr. -- I guess I'll ask both parties. I understand, I guess, Mr. Hanson, your position is they don't -- they're not entitled to any jurisdictional discovery, period. You don't think they would ever be entitled to that because they can't make the prima facie showing. Go ahead.

MR. HANSON: Your Honor, may I just add one

point?

THE COURT: Yes.

MR. HANSON: You know, they talk about -- they talk about they've got information that contradicts the affidavit -- or the declarations that we've provided back in October of 2024. We're now, you know, 15, 16 months later, and yet they don't tell you what those -- what those disputes are, what they -- what they say is contradicted by documents that they have.

The mere fact that you've got a parent company or affiliated companies who are located in one state and are affiliated doesn't mean that the company itself, CRST Specialized, incorporated in Indiana, based in Indiana, its principal office is in Indiana, and it has officers and employees that run the operation from Fort Wayne, Indiana, they have no evidence to say -- you know, this is all speculation and legal conclusions that because there is a holding company that the holding company dictates everything. And that just -- it isn't -- they haven't shown that. They haven't shown what decisions are made in Iowa that the company carries out on its day-to-day operations. It's all pure conjecture on their part. They don't have any basis for making those statements.

And we believe they haven't made the prima facie showing,

and they should be required to come forward with their evidence, show the contradictions they believe they have that just -- you know, I haven't seen them articulate one. Even -- even Judge Williams said that their -- that their specific personal jurisdiction was very weak.

THE COURT: All right. I guess, Mr. Von Klem --

MR. HANSON: And that --

THE COURT: Or go ahead. Yep. Nope. And I --

MR. VON KLEMPERER: Your Honor, can I -- can I -- can I respond to that, please?

THE COURT: Sure.

MR. VON KLEMPERER: Your Honor, we cite a host of evidence. It's on page 8 of our memorandum in support. It includes extensive testimony from the -- International's president, Michael Gannon, as well as a bunch of additional exhibits that directly contradict what is in the decla -- these declarations that they submit. So it's just absolutely false that we haven't -- that we're just relying on speculation. We included a lot of exhibits and other evidence.

THE COURT: And is that page 8 of your brief in support of your motion to stay?

MR. VON KLEMPERER: Correct.

THE COURT: Okay.

MR. VON KLEMPERER: That is docket 136-1.

THE COURT: Yes.

MR. VON KLEMPERER: On page 8 of 11.

THE COURT: Yep. Okay. Just making sure I was tracking what you're saying there.

And I guess, Mr. Von Klemperer, I guess what is the harm if I deny the motion to stay at this point, you respond to their motion to dismiss and put this in that and let Judge Williams decide whether or not that's a prima facie showing?

MR. VON KLEMPERER: Well, Your Honor, if we -- if we lose after being denied the evidence necessary to challenge what's in the declarations, then we're out; right? The case is dismissed against Specialized, and we have the opportunity to potentially file in Indiana, and then what? We're going to -- we're going to split the case into two jurisdictions and litigate them simultaneously? That -- that would be an enormous prejudice to plaintiff to have to do that. It'd be a huge waste of judicial and party resources, whereas all we're asking here is to just have the opportunity to complete -- it's a very reasonable limited amount of additional discovery, three depositions, two of which are scheduled to occur in the next few weeks, and -- and then make that showing; right? We think it's a pretty

reasonable request, Your Honor.

THE COURT: Is the standard, though, like, judicial economy and those types of issues, or is it that you do have to make a prima facie showing before you can get the jurisdictional discovery?

MR. VON KLEMPERER: We cite the case law from the Eighth Circuit, Your Honor -- I think it's Steinbuch versus Cutler on page 6 -- where the Eighth Circuit reversed a dismissal on lack of personal jurisdiction and explained that as long as the plaintiff can offer documentary evidence and not merely speculation and conclusions they should be entitled to obtain jurisdictional discovery. And we think we've easily met that standard including all of the evidence that we cite on page 8 of the memorandum.

THE COURT: And, Mr. Hanson, why is page 8, that information, not sufficient to make the prima facie showing?

MR. HANSON: Your Honor, here's what -- you know, they've got -- they're trying to make the connection between, you know, the International board of directors oversee Specialized. That doesn't get into -- overseeing is not getting into the day-to-day operations of what Specialized does. And they talk about marketing and advertising. But when they referred to that, they

then go back and point to misrepresentations to Kelchner made from Iowa, and then they say, See Specialized recruiting manager, Perez Navarro, circulating recruiting scripts from numerous CRST subsidiaries to the enterprise-wide marketing team.

The problem with it, first of all, tell us -- at best they don't say who made those misrepresentations or what those misrepresentations are. But that's done by telephone, and telephone conversations are not enough as a general rule to establish personal jurisdiction. Even if there was a telephone conversation, I mean, he doesn't claim that he spoke to the recruiting manager, Perez Navarro, who was located in Fort Wayne, Indiana, at CRST Specialized offices. If they talked to somebody from recruiting and we happen to have somebody from recruiting that lives in Central America as an example, does that establish jurisdiction in Iowa? Absolutely not.

They've got to do something more than telephone conversations to establish jurisdiction in Iowa, and they can't because the plaintiff contacted CRST, discussed with CRST Specialized the lease purchase opportunity, and he came to Indiana to sign his con -- to go through the orientation process to sign the contract, and then he was -- he was dispatched from Fort Wayne. He didn't go to Iowa. He's got no connection with Iowa. He's a

Florida resident. And he comes to Iowa, and he gets -- gets dispatched out of Indiana, and he gets paid out of Indiana. And he has contact with people in Indiana.

The kind of prima facie showing they would need to make is to say, oh, I went to Iowa, I signed the contract in Iowa, I was directed and controlled from Iowa. They don't make any of those facts. All they have is they're saying that there was some type of corporate governance where Mike Gannon as a director and an officer of International Holdings, that things reported up to him and, therefore, there's contacts with Indiana. And that is simply insufficient on its face to establish jurisdiction. They have not made a prima facie showing of jurisdiction in Iowa. And they shouldn't be allowed to go fishing.

THE COURT: Okay. One moment.

MR. HANSON: They had a chance to come forward. They didn't. And now they need to go to Indiana if they want to pursue the claim against CRST Specialized.

MR. VON KLEMPERER: Your Honor, can I respond to that, please?

THE COURT: Sure.

MR. VON KLEMPERER: Very briefly, Your Honor. Exhibit H which is ECF-3 -- 136-10 is an email from a Brooke McGivern to Plaintiff Kelchner. She is --

represents herself as a driver recruiter, and she is located in Cedar Rapids, Iowa, and she is providing him with a lease purchase packet from Iowa. That is documentary evidence that ties Specialized to Iowa. That's just one example of what we have, and we cite a host of additional exhibits.

THE COURT: All right.

MR. HANSON: An email doesn't establish jurisdiction, Your Honor.

THE COURT: All right. And I guess another question I have, Mr. Hanson, is it looks like Lyndsay Perez Navarro is an employee or works for Specialized. Is that -- I guess what I'm understanding is that she is with Specialized but that Jennifer Abernathy -- who does she work with? It just says defendant's head of recruiting.

MR. HANSON: Jennifer Abernathy works for CRST Expedited. She's an employee of CR -- CRST Expedited, and she is -- she is the -- kind of the director of recruiting for the various companies within the -- that are the affiliated companies.

THE COURT: Including --

MR. HANSON: She is involved in the hiring of drivers. This is a -- this is a lease purchase. This isn't an employee driver. This is a contractor who

signed a lease purchase contract to purchase the equipment that he needs in order to be -- to be a contractor for Specialized.

THE COURT: Okay.

MR. HANSON: She doesn't have any con -- she doesn't have any involvement in this. It was -- it was Lyndsay Perez Navarro who is -- like I said, works for CRST Specialized in its offices in Fort Wayne in Indiana. That's where she lives, lives and works.

THE COURT: All right. Mr. Von Klemperer?

MR. VON KLEMPERER: Your Honor, I would -- I would just say that there's a host of evidence showing that -- and as present counsel just mentioned, that there's evidence suggesting that recruiting is run on an enterprise-wide basis for all of the subsidiaries. That is exactly why we served this notice on International. The topics -- you know, topics 1, 2, 3, 4, 5, 6, they are all touching on this exact issue, that -- the interrelated operations of the different entities, how the responsibilities are divided up, how the joint recruiting efforts are managed. This is the type of information we need to obtain and that we would like to obtain through this notice.

THE COURT: I guess, Mr. Hanson, if I were to find or if the Court were to find that there was a prima

facie showing, how are the requested depositions not -- I guess do you agree that those would be pertinent to jurisdictional discovery?

MR. HANSON: As to which -- which would be important, Your Honor?

THE COURT: I guess the deposition notice for International and then also for Navarro Perez and also for Miss Abernathy.

MR. HANSON: Well, you know, the problem is, you know, you -- we've got an Indiana company that gives an Indiana packet for the operations that they -- the lease -- the lease purchase opportunity that is given to various drivers who want to become contractors. There's an Indiana recruiting manager. That's Lyndsay Perez Navarro. We've got a North Carolina recruiter. We've got a Florida contractor who signed his truck -- who signed his agreements and took his truck in Indiana.

The person who he cited in the email, she actually lives in North Carolina. She's got a remote job. But the packet that she sent was for an Indiana company. We don't dispute that recruiting is a contractually shared service among the operating companies. But the people that work for it live in different places. Lyndsay Perez Navarro lives in Indiana. The other person lives in North Carolina.

And even if all of those allegations were true, we still win on personal jurisdiction. They haven't established a prima facie case of personal jurisdiction. And taking -- taking depositions about the recruiting, the interrelated nature of recruiting, what may exist is not enough to establish jurisdiction. They've gotta have something that shows a connection with Iowa, and they haven't done that. All they're showing is an email or a telephone call, and those are generally not enough to establish jurisdiction.

THE COURT: And I guess my question was, though, if I -- if the Court were to find the prima facie case was made, do you agree that the requested depositions go to jurisdiction?

MR. HANSON: I'm sorry. Can you repeat that, Your Honor?

THE COURT: I under -- what your answer was is that they've not made their prima facie showing. My question was if the Court --

MR. HANSON: That's correct.

THE COURT: If the Court found they did make a prima facie showing, aren't the requested depositions relevant to jurisdiction?

MR. HANSON: I don't really think they are, Your Honor.

THE COURT: Okay.

MR. HANSON: You're talking about affiliated companies. And their connections with each other are not enough to, you know -- are not enough to establish jurisdiction. There's gotta be a material factual dispute, and there isn't one here. And they haven't made the prima facie showing to establish jurisdiction in this case.

THE COURT: So, Mr. Abernathy (sic), I guess what is the actual material factual dispute that gets you jurisdictional discovery or disputes, plural?

MR. VON KLEMPERER: I'm sorry. You said Mr. Abernathy, I believe, Your Honor.

THE COURT: I'm sorry. Mr. Von Klemperer, not Mr. Abernathy. Abernathy is one of the deponents.

MR. VON KLEMPERER: Oh.

THE COURT: Sorry.

MR. VON KLEMPERER: Oh. No problem, Your Honor. What is the factual dispute that gets us jurisdictional discovery?

THE COURT: Right. I know you've mentioned e -- Iowa on the email. You've mentioned the deposition references on page 8 and then the attachment to that. But I guess just bullet point it for me or summarize for me what you think the material disputes are that get you

to jurisdictional discovery.

MR. VON KLEMPERER: Right. Right. So it is our understanding that the recruiting efforts are managed, overseen, and the executives who are running those recruiting operations are based in Iowa. The board of directors for the -- for International which is an Iowa corporation are overseeing the operations of the subsidiaries, International's executives. All of the presidents from the subsidiaries are reporting up to the International president, Mike Gannon. There are -- you know, we cite Mike in his testimony about their recruiting efforts being centralized in Iowa.

And they are submitting declarations which we discuss on page 8 and also in the background section where they are contesting all of these underlying facts. And we believe that's sufficient to meet the standard. There's a genuine dispute of these facts, and we want to explore the inconsistencies, and we want to take the testimony.

THE COURT: And I guess what documents do you have showing that International oversees operations for Specialized or that specific connection? Is it just the recruiting efforts?

MR. VON KLEMPERER: We have interrogatory responses that admit that there's only a single board of

directors, for example. We have meeting minutes from the board of directors that show that they're meeting on enterprise-wide operations and strategies and policies. There's the testimony from Mike Gannon, and then there's the other exhibits we cite. And we also summarized some additional evidence, I believe, in our complaint, and that's also cited in the motion.

THE COURT: And I guess, Mr. Hanson, if the Court found -- well, actually I'm not going to even ask that question. I don't think that's necessary.

Okay. I'm going to take this under advisement. Is there anything else you wish to add, Mr. Hanson?

MR. HANSON: No, I don't believe so, Your Honor -- well, let me just make a summary comment.

THE COURT: Sure.

MR. HANSON: They have not shown that anything occurs in Iowa that governs the work that Mr. Kelchner did, the contract he signed. You know, it just -- there's nothing there. They have not come forward with any facts that show that there is some type of connection, suit-related connection, between the plaintiff and Iowa.

THE COURT: I guess, Mr. Von Klemperer?

MS. CASH: Your Honor?

THE COURT: Yeah. Go ahead.

MS. CASH: Angela Cash. May I just add one thing that occurred to me that you might not be aware?

THE COURT: Sure.

MS. CASH: The depositions of Miss Abernathy and Miss Navarro are proceeding, and I just wanted to make sure the Court was aware of that. We aren't contesting them. We do take the position that they shouldn't be allowed to use anything they gain from those depositions for jurisdictional purposes. But we are proceeding with those depositions within the coming weeks, and then we just have objected to the scope of the 30(b)(6) and it being directed to the parent, so that one we're still trying to work through. I'm sorry to interrupt, but thank you.

THE COURT: No, no. I appreciate that. That's helpful.

I think the problem is, frankly, the parties are not great in this case, have not been great in this case at working things out amongst yourselves. That's why the Court's been involved repeatedly in this case on these types of issues.

I mean, I understand the threshold of, you know, a party shouldn't get discovery if they haven't met the threshold to get the discovery. At the same time, this is not a new case. I mean, we've been -- and that cuts

both ways. I mean, there has been substantial discovery done in the case.

But, you know, at the end of the day, if we're trying to get to the just, expeditious resolution, I mean, you're already doing discovery of witnesses that are going to have the discovery that the plaintiffs are requesting on this. It just -- the efficiencies of it seem to favor strongly just allowing the jurisdictional discovery to -- to commence with the depositions that are already scheduled.

So I guess aside from them not making the prima facie case, Mr. Hanson or Miss Cash, thoughts on that?

MR. HANSON: I -- you know, Your Honor, the part about allowing discovery to go through to do jurisdictional discovery I think because the motion to dismiss is pending before Judge Williams is really a question for him as opposed to Your Honor.

THE COURT: Yeah. He referred --

MR. HANSON: We don't -- we don't think --

THE COURT: Sure.

MR. HANSON: I'm sorry. I didn't mean to interrupt you.

THE COURT: No, go ahead. No. Yeah. He referred the motion to stay to me, so it's before me. So . . .

Mr. Von Klemperer, anything else?

MR. VON KLEMPERER: Well, I'm not sure. Are you planning to address separately the objections on the 30(b)(6) or . . .

THE COURT: So I guess let me understand. Is the 30(b)(6) deposition going forward, or do you -- is there a dispute about it even being able to go forward on International?

MR. VON KLEMPERER: Your Honor, we served a notice, I believe, on December 12, and we have not received a witness -- dates for a single witness on a single topic. The issue is in response to almost every single topic they have objected that we served, you know, purportedly the wrong entity and we need to direct the discovery to the subsidiaries. And frankly, Your Honor, this is the sort of shell game that we've experienced in this case before unfortunately where we're pointed to other entities.

You know, International is the parent organization. The standard under Rule 30(b)(6) is very similar to the possession, custody, or control standard under Rule 34 which is that organization must provide testimony that includes any -- any information that the organization has access to or knowledge of or can reasonably obtain.

We cite a host of cases in Exhibit D to the

submission that we submitted yesterday to the Court where courts are consistently finding that a parent organization is obligated to provide information when that information is in the possession of its wholly owned subsidiaries. And I asked them during our meet-and-confer is there some legal or practical impediment to International obtaining information from its subsidiaries, and they very clearly said no.

And so we think that's dispositive, Your Honor. I think it would be far more efficient to go forward with this deposition as noticed, and we would request that the Court overrule their objections based on the distinction between the different entities because International clearly has access to the information of its subsidiaries.

We have no objection to them using the -- you know, designating witnesses from the subsidiaries that they want. But they ultimately have access to that information.

And one other thing that I would say on that, Your Honor, is it's their con -- they contend that International is simply a holding company. In truth it's really a management company. It has a board of directors. It has executives that manage the subsidiaries. And ultimately, regardless of whether it's

a holding company or management company, there's really no dispute that they have access to the information from the subsidiaries.

This is an issue that was addressed specifically in the Rouse versus H.B. Fuller case from the District of Minnesota that we cite in Exhibit D. And it explicitly held that a company cannot avoid testifying by claiming that the question is related to the business activities of its subsidiary.

And so we think that the simplest and quickest and most efficient and legally appropriate solution here is for the Court to simply overrule those objections and to order that the deposition could move forward.

We disagree with the defendants' proposal in their email yesterday that we just direct targeted discovery to the subsidiaries for many of the reasons already discussed here. The deposition notice here is seeking to obtain information about the joint and interrelated operations of the businesses. And that's relevant to the merits. That's relevant to class certification. And that's also, of course, relevant to personal jurisdiction.

THE COURT: No, and that's a good point to circle back to where we kind of started. I guess, Mr. Hanson -- yeah. Thoughts on that.

MR. HANSON: May I make a few comments about this? You know, the 30(b)(6), there are cases that go both ways on this. And oftentimes it becomes a factual issue, a factual issue that arises in the cases as to whether a holding company can be required to provide a witness to testify as to the subsidiary's operations.

In this case we don't think that's appropriate because you've got operating companies that do different things. You've got CRST Expedited which is a truckload shipper that provides transportation services, you know, across the United States.

Then you also have Specialized which does specialized moving, oftentimes for, like -- like trade shows and things like that. Its operations are totally different, are run out of a totally different location in Fort Wayne. It has its own managers. It acquires its own business. It dispatches -- it -- the work that it has, it dispatches it itself. It is not and there's no evidence to show that it is, quote, unquote, controlled by a parent holding company. Does it -- does it report to a parent holding company? Absolutely, because ultimately, you know, that's how parent holding companies work is they want to know that their subsidiaries are actually doing what they are set out to do.

In this case Specialized, as its name implies, is a

specialized transportation company. It's not like CRST or the old CRST Expedited that moved things on an expedited basis. CRST Specialized, like I said, does trade shows, you know, different things where they set up -- set up in different locations that are transported around the country. It is not anywhere like what CRST -- the current CRST, the transportation solution, does.

And to try and say that they're going to link those is just -- they don't have any evidence of that. Do they -- do they report up to the holding company to say yeah, we're making money, we're losing money, we're whatever? That's the way holding companies work is that they provide the overall budget and are reported to on the results of what they do. But they're not involved in the day-to-day operations. They don't get in and tell the president and the -- and the transportation managers at Specialized what to do or how to do it. Those people are all ones that have been in the business for a long time, and they don't need somebody to look over their shoulder. They just simply report the results.

But that's not management and control that they can show that really it's one big happy family and it's all controlled by Mike Gannon from Iowa. That is -- there is just no evidence of that, and they -- they -- any time they say something like that, they are -- it's pure

speculation. It's pure mischaracterizing the operation.

And they say we filed self-serving declarations. I guess, Your Honor, I've been practicing law for 44 years, and I don't know that I have seen a declaration submitted in any case that wasn't self-serving to the party that filed it. That doesn't make it somehow wrong.

THE COURT: All right.

MR. HANSON: It's just telling facts that we have. He wants to make it seem like we provided declarations that weren't true. Well, they are true. They're all true.

THE COURT: All right.

MR. HANSON: And we've gone over --

THE COURT: So --

MR. HANSON: -- it with our witnesses and believe that they do not have the information or they do not have the facts to establish a prima facie case, and they shouldn't get -- get -- you know, with this whole thing on the 30(b)(6), they don't notice the different companies. They notice the holding company, expect the holding company to gather all of the information to answer all of the topics included. And there were many topics --

THE COURT: Okay.

MR. HANSON: -- in that -- in that deposition

notice.

THE COURT: And I don't mean to cut you off, but I'm going to just cut to the chase here.

It seems like discovery -- they're going to be entitled to this discovery. And it's a matter of who you want to notice for it or who you want them to do the deposition notice to. There are multiple entities here, so it seems like multiple entities may have different information. I think they're probably entitled to information they're requesting. It's just a matter of who's going to provide that information. Is it going to be the holding company? Is it going to be the holding company for what pieces they have and then the operating companies for what pieces they have?

I think at the end of the day, they're going to be entitled to that information. It's a matter of who provides it. And if that means that there's going to maybe be a couple extra depositions because of that like with the 30(b)(6) depositions for each of the entities, I think that might be appropriate. So I think that that's something the parties can and should be able to resolve themselves.

At the end of the day, I think we're going to get to the same place, and especially, you know, when the parties are saying there's cases that go both ways,

that's what often happens with discovery disputes. That's why the parties should work to just work it out themselves because the Court can go either way. It's not -- you know, it's not like a clear legal issue. And it's, frankly, a lot of discretion of how do we get to the end result we need to get to?

So when it comes to the 30(b)(6) deposition at this point I -- the parties need to work it out. I think that plaintiffs were trying to be efficient and trying to just go to one entity to get the information because they probably do have access to that information through the separate operating entities.

But if that is difficult for defendants to do, then if they want to arrange for persons from each of the entities, the holding company and the operating entities, to provide different information, then maybe that's the answer. I think at this point the parties haven't really -- you need to fully explore that and be reasonable in doing it.

So I -- I'm going to send you back to the drawing board on the 30(b)(6) deposition. It sounds like these are going to go forward no matter what on the motion to stay, on the motion to dismiss. The only exception would be perhaps whether or not there's discovery that's going to come from Specialized because, again, that's pending

whether or not there's personal jurisdiction which is kind of a separate issue.

But other than that, to the extent, you know, there's going to be depositions of CRST International, Expedited, Specialized, Lincoln Sales -- well, not Specialized but Lincoln Sales, Expedited, and International, that's something the parties need to work through and figure out how they're going to get that done.

I guess, Mr. Von Klemperer, there is a resistance filed now on your motion to stay. Did you intend to file a reply to that or no?

MR. VON KLEMPERER: Your Honor, I think in our motion and the argument today, we can rest on the papers as they are.

THE COURT: All right. So that motion to stay then, it's submitted. I'll take it under advisement.

What else do we need to talk about, Mr. Von Klemperer?

MR. VON KLEMPERER: Your Honor, I think your guidance was very helpful today. We really appreciate it. Our only concern on -- on noticing, you know, 30(b)(6)s of all of the other entities is -- well, there's several issues. One, we're concerned about further delay. We want to move discovery forward,

especially with this motion to dismiss pending.

If that briefing was stayed, it would give the parties a lot more breathing room to work out the nuances on the notice. And that's one of the reasons we felt that we were obligated to come to the Court as soon as possible. We understand it's not ideal, but given that they filed that motion, we felt compelled to raise this issue as quickly as possible. So we're happy to go back and talk to them. We are concerned about injecting further delay.

The other -- the other concern is that we are, of course, you know, under the federal rules limited to a default ten depositions. If we notice all of the defendants, suddenly, you know, we're going from one deposition theoretically to four. We have approached the defendants about stipulating to a higher number of depositions in this case which we think is appropriate for a wide number of reasons including the number of defendants, the number of relevant witnesses. But if we're going to notice all of the entities here, we would want to make sure that the limit is at least increased accordingly on that basis.

THE COURT: No, and I think that's kind of --

MR. VON KLEMPERER: With that --

THE COURT: No, no. That makes sense. And I

think that that's the thing. If they don't think that the holding company can get this information as appropriate party to be noticed for all of this, then you're going to need to notice the additional entities. And I think then that warrants additional depositions I guess is the position I'm at right now.

I guess, Mr. Hanson?

MR. HANSON: Your Honor, if I might, what we told the -- Mr. Von Klemperer is that you haven't even reached ten. You've noticed a few depositions. We'll revisit it once you get to the point of either exceeding or nearly exceeding and you explain the reason why you need these extra depositions. And they haven't done that. So it's a matter that needs to be considered at a later date when they -- when they show that ten won't be enough. We don't know that ten's not going to be enough.

THE COURT: All right. Well, it sounds like if they -- I mean, yeah. This is a little premature, but if they're having to notice each of the entities separately and if there's three to four of those, then I think it's probably going to be likely that maybe there are -- it's going to be more than the normal ten depositions you have if you just have two parties in the case.

So I expect the parties to be reasonable on that when that does come up if it does come up, in fact.

Maybe it doesn't. Hopefully it doesn't. But I don't have a whole lot of faith, frankly, about the parties being reasonable in this case, period. That's why we keep getting together.

What else do we need to talk about, Mr. Hanson?

MR. HANSON: Nothing, Your Honor. I just want you to realize that Specialized has spent an extreme amount of time and money in defending this case when we think it should be in Indiana, and we've had to defend ourselves in a location that is outside of our -- of our home base and believe that that is inequitable for us. And we think that the motion to dismiss needs to be decided, and I realize the timing is not in your -- in your court. It's in Judge Williams' court. And we'll have to wait for that. But we think that's an important thing that has to be done before this case really can move forward against Specialized.

THE COURT: All right. Anything else, Mr. Von Klemperer?

MR. VON KLEMPERER: Not from the plaintiffs, Your Honor. Thank you.

THE COURT: All right. Thank you. That will conclude this hearing.

(The foregoing hearing was
concluded at 2:22 p.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital recording system.

*S/Shelly Semmler*          2-7-26
Shelly Semmler, RDR, CRR          Date